**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____Southern District of New York_____
(State)

Case number *(if known)*: _____    Chapter __11__

☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | **Aegean Marine Petroleum Network Inc.** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | **N/A** |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | **N/A** |

| | | |
|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** |

**10 Akti Kondili**
Number         Street

**Piraeus, Greece 185 45**
City                              State      Zip Code

County

**Mailing address, if different from principal place of business**

Number              Street

P.O. Box

City                              State      Zip Code

**Location of principal assets, if different from principal place of business**

Number              Street

City                              State      Zip Code

| | | |
|---|---|---|
| 5. | **Debtor's website (URL)** | **http://www.ampni.com/** |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

Debtor    **Aegean Marine Petroleum Network Inc.**                                    Case number *(if known)* _____
Name

---

**7.  Describe debtor's business**

A.  *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

---

B.  *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

---

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**4247 (Petroleum and Petroleum Products Merchant Wholesalers)**

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11.  *Check all that apply:*

  ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).  If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934.  File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.    District _____    When _____    Case number _____
                                                    MM/DD/YYYY
          District _____    When _____    Case number _____
                                                    MM/DD/YYYY

**10.  Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases.  If more than 1, attach a separate list.

☐ No
☒ Yes.    Debtor    **See Rider 1**                          Relationship    **Affiliate**

          District    **Southern District of New York**       When    **11/06/2018**
                                                                      MM / DD / YYYY
          Case number, if known _____

---

| Debtor | **Aegean Marine Petroleum Network Inc.** | Case number *(if known)* | |
|--------|------------------------------------------|--------------------------|--|
| | Name | | |

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____
Number        Street

_____
City                                        State        Zip Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☒ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets (on a consolidated basis)**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Debtor    **Aegean Marine Petroleum Network Inc.**    Case number *(if known)* _____

_____
Name

| | | | | | |
|---|---|---|---|---|---|
| **16. Estimated liabilities (on a consolidated basis)** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☒ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --**    Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **11/06/2018**
_____
MM/ DD / YYYY

✗    **/s/ Spyridon Fokas**                            **Spyridon Fokas**
_____                                  _____
Signature of authorized representative of debtor          Printed name

Title    **Authorized Signatory**
_____

**18. Signature of attorney**

✗    **/s/ Jonathan S. Henes**            Date    **11/06/2018**
_____                              _____
Signature of attorney for debtor                  MM/ DD/YYYY

**Jonathan S. Henes**
_____
Printed name

**Kirkland & Ellis LLP**
_____
Firm name

**601 Lexington Avenue**
_____
Number            Street

**New York**                                  **New York**    **10022**
_____                              _____
City                                      State        ZIP Code

**(212) 446-4800**                              **jonathan.henes@kirkland.com**
_____                              _____
Contact phone                                  Email address

**2822203**                    **New York**
_____
Bar number                    State

| Fill in this information to identify the case: |
|---|

United States Bankruptcy Court for the:

Southern District of New York
(State)

Case number (if known): _____    Chapter    11

☐ Check if this is an
amended filing

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of New York for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Aegean Marine Petroleum Network Inc.

| | | |
|---|---|---|
| Aegean Marine Petroleum Network Inc. | Aegean (Fujairah) Bunkering S.A. | Aegean Ace Maritime Company |
| Aegean Agency (Gibraltar) Limited | Aegean Breeze Maritime Company | Aegean Bunkering (Gibraltar) Limited |
| Aegean Bunkering (Hong Kong) Limited | Aegean Bunkering (Jamaica) Limited | Aegean Bunkering (Singapore) Pte. Ltd. |
| Aegean Bunkering (Trinidad) Ltd. | Aegean Bunkering (USA) LLC | Aegean Bunkering Combustibles Las Palmas S.A. |
| Aegean Bunkering Morocco SARL AU | Aegean Bunkering Services Inc. | Aegean Caribbean Holdings, Inc. |
| Aegean Gas Maritime Company | Aegean Holdings S.A. | Aegean Investments S.A. |
| Aegean Maistros Maritime Company | Aegean Management Services M.C. | Aegean Marine Petroleum S.A. |
| Aegean Oil (USA), LLC | Aegean Oil Terminal Corporation | Aegean Petroleum International Inc. |
| Aegean Ship III Maritime Company | Aegean Ship VIII Maritime Company | Aegean Ship XII Maritime Company |
| Aegean Shipholdings Inc. | Aegean Tankfarms Holdings S.A. | Aegean Tanking S.A. |
| Aegean Tiffany Maritime Company | Aegean VII Shipping Ltd. | Amorgos Maritime Inc. |
| AMPN USA, LLC | AMPNI Holdings Co. Limited | AMPNI Investments Co. Limited |
| Andros Marine Limited | Benmore Services S.A. | Caribbean Renewable Energy Sources Inc. |
| Cephallonia Marine S.A. | Dilos Marine Inc. | Eton Marine Ltd. |
| Halki Navigation S.A. | I.C.S. Petroleum (Montreal) Ltd. | I.C.S. Petroleum (USA) Ltd. |
| Ingram Enterprises Co. | Ios Marine Inc. | Ios Shipping Ltd |
| Ithaki Marine S.A. | Kassos Navigation S.A. | Kerkyra Marine S.A. |
| Kimolos Maritime Inc. | Kithnos Maritime Inc. | Kythira Marine S.A. |
| Lefkas Marine S.A. | Maistros Roro Shipholdings Ltd. | Milos Shipping (Pte.) Ltd. |
| Mykonos I Maritime Limited | Nevado Navigation S.A. | Ostria Roro Shipholdings Ltd. |
| Paros Maritime Inc. | Paxoi Marine S.A. | Santon Limited |
| Santorini I Maritime Limited | Sealand Navigation Inc. | Serifos Maritime Inc. |
| Serifos Shipping (Pte.) Ltd. | Sifnos Marine Inc. | Symi Navigation S.A. |
| Tasman Seaways Inc. | Tempest Shiptrade Ltd | Tilos Shipping (Pte.) Ltd. |
| Tinos Marine Inc. | West Coast Fuel Transport Ltd. | Zakynthos Marine Limited |

**Fill in this information to identify the case:**

Debtor name        Aegean Marine Petroleum Network Inc., *et al.*

United States Bankruptcy Court for the:        Southern District of New York

Case number *(If known)*:        _____        (State)

☐ Check if this is an amended filing

Official Form 204

Chapter 11 or Chapter 9 Cases:  List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders                    12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes.  Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 1 | 4.25% CONVERTIBLE UNSECURED NOTES DUE 2021 U.S. BANK NATIONAL ASSOCIATION 1000 WALL ST., STE 1600 NEW YORK, NY 10005 | EMAIL – TRUSTCORPORATEACTIONS@USBANK.COM | UNSECURED BOND DEBT | | | | $172,500,000 |
| 2 | 4.00% CONVERTIBLE UNSECURED NOTES DUE 2018 DEUTSCHE BANK TRUST COMPANY AMERICAS 60 WALL ST., MSNYC60-2710 NEW YORK, NY 10005 | ATTN: TRUST AND AGENCY SERVICES CORPORATE TEAM DEAL MANAGER EMAIL – PROXY.MUMBAI@DB.COM | UNSECURED BOND DEBT | | | | $94,550,000 |
| 3 | AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. ATTN: JEFFREY C. CAMPBELL, CFO 200 VESEY STREET NEW YORK, NY 10285 | ATTN: JEFFREY C. CAMPBELL, CFO EMAIL - KEN.F.PAUKOWITS@AEXP.COM; RICHARD.PETRINO@AEXP.COM PHONE - (212) 640-5130 FAX - (212) 640-0404 | CONTRACT CLAIM | C/U/D | | | $20,000,000 |
| 4 | PETROJAM LTD ATTN: SHANETT BROMFIELD, ARO 96, MARCUS GARVEY DRIVE P.O. BOX 241 KINGSTON, 15, JAMAICA | SHANETT BROMFIELD, ARO EMAIL - SHANETT.BROMFIELD@PETROJAM.COM PHONE -+(876) 923-8611-5 FAX -+(876) 923-5698 | TRADE | | | | $3,176,047 |
| 5 | BP EUROPA SE WITTENER STRABE 45 BOCHUM, GERMANY 44789 | MICHAEL SCHMIDT, CEO PHONE -+49 234 315-0 FAX -+49 234 315 2679 | TRADE | | | | $1,133,079 |
| 6 | AEGEAN OIL SA ATTN: ANTONIS PAPADAKIS, CEO 10, AKTI KONDYLI PIRAEUS, 185 45 GREECE | ANTONIS PAPADAKIS, CEO EMAIL - OPERATION@AEGEANOIL.GR PHONE - +30 210 45 86 000 FAX - +30 210 45 86 245 | TRADE | | | | $475,600 |

[1] The Debtors reserve the right to assert setoff and other rights with respect to any of the claims listed herein.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
|---|---|---|---|---|---|---|---|
| 7 | PORT OF FUJAIRAH ATTN: KHALIL EBRAHEIM HASSAN, CFO FUJAIRAH PORT ROAD, FUJAIRAH SEA PORT FUJAIRAH UNITED ARAB EMIRATES | KHALIL EBRAHEIM HASSAN, CFO EMAIL - FIN_POF@FUJAIRAHPORT.AE PHONE - +09-2070122 FAX - +09-2228811 | TRADE | | | | $395,792 |
| 8 | ANTIPOLLUTION A.N.E. ATTN: IOANNIS KONSTANTINIDIS, VP 57, AKTI MIAOULI PIRAEUS GREECE | IOANNIS KONSTANTINIDIS, VP EMAIL - INFO@ANTIPOLLUTION.GR PHONE - +210 42.92.426-7 FAX - +210 42.92.710 | TRADE | | | | $375,334 |
| 9 | VANE LINE ATTN: ROBERT DAVIS, MANAGER 2100 FRANKFURST AVENUE BALTIMORE, MD 21226 | ROBERT DAVIS, MANGER EMAIL - IBOOTH@VANEBROTHERS.COM PHONE - (410) 631-8100 FAX - (410) 631-5099 | TRADE | | | | $295,000 |
| 10 | ORIENT INSURANCE CO. PJSC ATTN: OMER HASSAN ELAMIN, PRESIDENT ORIENT BUILDING, AL BADIA BUSINESS PARK DUBAI FESTIVAL CITY DUBAI UNITED ARAB EMIRATES | OMER HASSAN ELAMIN, PRESIDENT EMAIL - OMER.ELAMIN@ALFUTTAIM.COM PHONE - +971 4253 1300 FAX - +971 4253 1500 | INSURANCE CLAIM | | | | $288,485 |
| 11 | AGAAT BOTERHAMVAARTWEG 2 ANTWERP, BELGIUM 2030 | ROBERT VAN DER MEIRSSCHE, DIRECTOR FAX - +32 3 544 88 83 | TRADE | | | | $274,999 |
| 12 | AEGEAN AGENCY LTD ATTN: FIRIPPIS NIKOLAOS, VP 10, AKTI KONDYLI PIRAEUS, 185 45 GREECE | FIRIPPIS NIKOLAOS, VP EMAIL - AGENCY@AEGEANOIL.COM PHONE - +30 210 45 86 000 FAX - +30 210 45 86 242 | TRADE | | | | $263,028 |
| 13 | AP OIL PTE LTD ATTN: HO CHEE HON, CEO 30 GUL CRESCENT JURONG, 629535 SINGAPORE | HO CHEE HON, CEO EMAIL - ENQUIRY@APOIL.COM.SG PHONE - +65 6861 5503 FAX - +65 6861 9162 | TRADE | | | | $213,996 |
| 14 | OILCHART OFFSHORE - OILCHART UK LTD ATTN: OWEN WEBBER, MANAGING DIR. 90 LONG ACRE, COVENT GARDEN LONDON UNITED KINGDOM | OWEN WEBBER, MANAGING DIR. EMAIL - OFFSHORE@OILCHART.COM PHONE - +44 20 3002 1783 | TRADE | | | | $208,340 |
| 15 | ELPE (ELL.PETRELAIA SA) 54, AMALIAS AVENUE ATHENS, GREECE 10558 | FAX: +30 210 63 02 510 | TRADE | | | | $183,394 |
| 16 | GREEN PORTS (GIBRALTAR) LTD UNIT 5.23, WORLD TRADE CENTRE, GIBRALTAR GIBRALTAR | PHONE - +44 1329 825335 EMAIL – SALES@GREENPORT.COM FAX - +44 1329 550192 | TRADE | | | | $179,800 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 17 | PEARL MARINE DMCC PLATINUM TOWER, 12 CLUSTER I STREET, JUMEIRAH LAKES TOWERS, AL THANYAH 5-393, HADAEQ DUBAI UNITED ARAB EMIRATES | PHONE - +97 1436 38721 FAX - +97 1 4362 6346 | TRADE | | | | $170,300 |
| 18 | ALFASHIP SHIPPING AGENCY S.L. ATTN: ANTONIO CASTANEDA, REG. MGR. C/LEON Y CASTILLO, 367-PISO 1 CANARY ISLANDS SPAIN | ANTONIO CASTANEDA, REG. MGR EMAIL - ANTONIO.CASTANEDA@ALFASHIP.COM PHONE -+34 09 2824 7978 FAX - +34 09 2898 0650 | TRADE | | | | $166,573 |
| 19 | SCHEEPVAARTBEDRIJF ANT. KOREN BV DE NOORDBANK 36 ROZENBURG (NL) THE NETHERLANDS | PHONE - +31 10-2954795 FAX - +31 10-2954799 | TRADE | | | | $160,941 |
| 20 | MELCO PETROLEUM SA AKTI KONDYLI 10 PIRAEUS, 18545 GREECE | PHONE - +30 2105 5380 FAX - +30 2105 5775 | TRADE | | | | $157,336 |
| 21 | ASM INTERNATIONAL NV VERSTERKERSTRAAT 8 AP ALMERE, THE NETHERLANDS 1322 | ATTN: CHARLES DEL PRADO, CEO PHONE - +31 (0)8810 08569 FAX - +31 (0)8810 08820 | TRADE | | | | $136,117 |
| 22 | KYVERNITIS TRAVEL & SHIPPING S.A. 139 VOULIGMENIS AVENUE GLYFADA, 16674 GREECE | EMAIL – KYVERNITIS@KYVERNITIS.GR PHONE - +30 21 0900 1100 FAX - +30 21 0900 1100 | TRADE | | | | $132,706 |
| 23 | DNV GL VERITASVEIEN 1, HOVIK HOVIK 1363 NORWAY | PHONE - +47 6757 9900 EMAIL – SIGRID.WETTWER@DNVGL.COM | TRADE | | | | $131,591 |
| 24 | AMERICAN BUREAU OF SHIP. (FOREIGN) ABS PLAZA,NORTHCHASE DRIVE HOUSTON, TX 16855 | PHONE - 281-877-6000 EMAIL – ABS-WorldHQ@EAGLE.ORG FAX - 281-877-5976 | TRADE | | | | $131,428 |
| 25 | COLLECTOR OF CUSTOMS 15 NEWPORT EAST KINGSTON JAMAICA | VELMA RICKETTS WALKER PHONE - 876-922-5140-8 EMAIL – QUICK.RESPONSE@JACUSTOMS.GOV.JM | TRADE | | | | $126,999 |
| 26 | GOVT. OF FUJAIRAH - DEPT.OF INDUSTRY & ECONOMY P.O. BOX 1 FUJAIRAH UNITED ARAB EMIRATES | PHONE -  971-9-333-0555 EMAIL –  MAIL@EGOV.FUJAIRAH.AE FAX - 971-9-222-0333 | TRADE | | | | $125,000 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 27 | PENINSULA PETROLEUM LTD 2 SHELBOUME BUILDINGS, SHELBOUME ROAD BALLSBRIDGE DUBLIN 4 REPUBLIC OF IRELAND | PHONE - +353 (0) 668-7330 EMAIL - DUBLIN@PENINSULAPETROLEUM.COM FAX - +353 (0) 668-7331 | TRADE | | | | $123,000 |
| 28 | TRIDENT NAVIGATION LTD. 10 ORWELL STREET NORTH VANCOUVER, BC V7J 2G1 CANADA | PHONE -  604-696-2992 EMAIL – INFO@TRIDENTNAV.COM | TRADE | | | | $119,896 |
| 29 | BAYPORT EX PUERTO BAHIA POLIGONO INDUSTRIAL TRES CAMINOS, C/LA DORADA, S/N, 11510 PUERTO REAL CADIZ ESPANA PUERTO REAL CADIZ 11510 SPAIN | PHONE -  +34-956-282-807 EMAIL – SPAIN@BAYPORT.EU FAX - +34-956-2550-454 | TRADE | | | | $110,526 |
| 30 | WILHELMSEN SHIPS SERVICE ATTN: ZARIFA ISTROU FOUANT BISSARA, CEO 100 MOUTSOPOULOU KAMINIA, PIRAEUS GREECE 18541 | EMAIL - WSS.PIRAEUS@WILHELMSEN.COM PHONE - +30 2104 239100 FAX - +30 210 4212480 | TRADE | | | | $ 109,495 |

### RESOLUTION OF THE BOARD OF
### DIRECTORS OF AEGEAN MARINE PETROLEUM NETWORK INC.

**November 5, 2018**

Pursuant to the organizational documents of Aegean Marine Petroleum Network Inc. (the "Company"), the board of directors (the "Board") of the Company, after reviewing and considering certain materials provided by the Company's financial and legal advisors, held a meeting of the Board on November 2, 2018, and voted to approve, adopt, and consent to the resolutions attached hereto as **Exhibit A** and the actions set forth therein with respect to the Company and its equity holders.

[*Signature page follows*]

IN WITNESS WHEREOF, do hereby certify that the Board has adopted the resolution at the November 2, 2018 meeting of the Board.

By:_____

Name: Spyros Fokas

Title: Director & General Counsel
Authorised Person

# **EXHIBIT A**

## **Resolution**

**RESOLUTIONS OF AEGEAN MARINE PETROLEUM NETWORK INC.**

November 2, 2018

The undersigned, being all of the members of the board of directors or similar governing body (the "Board") of the above-listed company (the "Company"), in lieu of holding a meeting, hereby approved the following actions and adopt the following resolutions (the "Resolutions"), by written consent (this "Consent") pursuant to the organizational documents of the Company:

## 1.  RESTRUCTURING TRANSACTIONS AND DOCUMENTS

WHEREAS, the Board has considered the liabilities and liquidity profile of the Company, and the effect of the foregoing on the Company's business; and having considered each of the strategic alternatives available to the Company;

NOW, THEREFORE, BE IT:

RESOLVED, that Kostas Polydakis, John Mystakidis, Spyros Fokas, and all duly appointed officers of the Company, as well as any person to whom Kostas Polydakis, John Mystakidis, Spyros Fokas, or any duly appointed officers of the Company delegate certain responsibilities (collectively, the "Authorized Persons"), acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to enter into, on behalf of the Company, a restructuring transaction or series of restructuring transactions by which the Company will restructure its debt obligations or other liabilities (collectively, the "Restructuring Transactions");

RESOLVED, that each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to take, or cause to be taken, any and all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents in furtherance of the Restructuring Transactions to which the Company is or will be a party (collectively, the "Restructuring Documents"), to incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Board, with such changes, additions and modifications thereto as the Authorized Persons executing the same shall, in their absolute discretion approve, such approval to be conclusively evidenced by such Authorized Person's execution and delivery thereof; and

RESOLVED, that each of the Authorized Persons be, acting alone or with one or more other Authorized Persons, and hereby are, authorized, directed and empowered in the name of, and on behalf of, the Company to take any and all actions to (i) obtain approval by a court of competent jurisdiction or any other regulatory or governmental entity of the Restructuring Documents in connection with the Restructuring Transactions, and (ii) obtain approval by any court of competent jurisdiction or any other regulatory or governmental entity of any Restructuring Transactions.

## 2.  VOLUNTARY PETITION FOR RELIEF UNDER APPLICABLE BANKRUPTCY LAW AND SEEKING NECESSARY RELIEF

RESOLVED, that in the judgment of the Board it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, that the Company file or cause to be filed voluntary petitions for relief (the "Bankruptcy Petitions") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code") for the Company and any of its subsidiaries, any applicable foreign ancillary proceedings for the Company; and, in accordance with the requirements in the Company's governing documents and applicable law, hereby consents to, authorizes and approves, the filing of the Bankruptcy Petitions and the foreign ancillary proceedings, if any; and

RESOLVED, that each of the Authorized Persons, officers of the Company, and/or any persons to whom such Authorized Persons and/or officers delegate certain responsibilities, be, and hereby are, authorized to execute (under the common seal of the Company, if appropriate) and file on behalf of the Company and its subsidiaries all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company's or any of its subsidiary's businesses.

## 3.   RETENTION OF PROFESSIONALS

RESOLVED, that each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to employ: (i) the law firm of Kirkland & Ellis LLP as general bankruptcy counsel, (ii) Moelis & Company as financial advisor, (iii) Ernst & Young LLP as restructuring advisor, (iv) Epiq Bankruptcy Solutions, LLC as notice and claims agent, and (v) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorized Persons deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons, be, and hereby are, authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

RESOLVED, that each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to execute (under the common seal of the Company, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute (under the common seal of the Company, if appropriate) such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

## 4.   DEBTOR-IN-POSSESSION FINANCING AND CASH COLLATERAL

### US DIP Financing Agreement

RESOLVED, that to the extent applicable to the Company, in the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, to obtain the benefits from the incurrence of debtor-in-possession financing

obligations by and among Aegean Bunkering (USA) LLC, a Delaware limited liability company, as Borrower, the various lenders from time to time party thereto (collectively, the "Lenders" and each individually, a "Lender"), ABN AMRO Capital USA LLC, as Administrative Agent for the Lenders (in such capacity, the "Administrative Agent"), and propose to enter into that certain Super-Priority Secured Debtor-in-Possession Credit  Agreement (the "U.S. DIP Financing Agreement"), as documented in a proposed order in interim and final form (the "DIP Order") and submitted for approval to a court of competent jurisdiction;

RESOLVED, that the form, terms and provisions of the U.S. DIP Financing Agreement and each of the other U.S. DIP Financing Documents (as defined below), and the Company's incurrence and performance of its obligations under the U.S. DIP Financing Agreement and each of the other U.S. DIP Financing Documents (as defined below), including (i) any borrowings thereunder, (ii) any guarantees contemplated thereunder, (iii) the grant of security thereunder, and (iv) the consummation of the transactions contemplated thereby, be, and hereby are, in all respects, authorized and approved; and further resolved, that each of the **Company's** Authorized Persons, acting alone or with one or more Authorized Persons be, and hereby is, authorized and empowered to execute and deliver, and to cause the Company to incur and perform its obligations under, the U.S. DIP Financing Agreement and each of the instruments and documents listed below and all other agreements, documents and instruments contemplated by any of the foregoing or requested by the Administrative Agent in connection with any of the foregoing (together with the U.S. DIP Financing Agreement, collectively, the "U.S. DIP Financing Documents"), and each of the documents and instruments contemplated thereby, in the name and on behalf of the Company under its seal or otherwise, substantially in the forms presented to the Board, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof:

(a)      the promissory notes executed in connection therewith, if any;

(b)      the Security Documents;

(c)      the Guaranty;

(d)      the DIP Order;

(e)      the Intercreditor Agreement (as defined in the U.S. DIP Financing Agreement (to which the Company will acknowledge));

(f)      such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, and other instruments as the Administrative Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the Liens purported to be required pursuant to the U.S. DIP Financing Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to the Company's obligations;

(g)        such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, landlord agreements and warehouse letters) relating to the Collateral;

(h)        the Loan Documents (as defined in the U.S. DIP Financing Agreement); and

(i)        such other documents, agreements, instruments, certificates, **notices, assignments** and documents as may be reasonably requested by the Administrative Agent or required by the U.S. DIP Financing Agreement or any other U.S. DIP Financing Documents.

**RESOLVED,** that the Company will receive value and obtain benefits from the incurrence of the Loans by the Borrower and the other obligations under the U.S. DIP Financing Agreement and the U.S. DIP Financing Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company.

**RESOLVED,** that each of the Authorized Persons be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to grant a security interest in all of the Company's assets pursuant to the terms of the U.S. DIP Financing Documents, including, without limitation, a pledge of all of the equity interests now owned or hereafter acquired by the Company to the Administrative Agent, and all personal and real property of the Company now owned or hereafter acquired by the Company, and the Administrative Agent is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral without the signature of the Company in such form and in such offices as the Administrative Agent or any Authorized Officer determines appropriate or necessary to perfect the perfection of the security interests of the Administrative Agent under the U.S. DIP Financing Agreement and the other U.S. DIP Financing Documents. Without limiting the generality of the foregoing, the Administrative Agent is expressly authorized to use a collateral description that encompasses "all assets" or "all personal property" of the Company, wheresoever located, whether now owned and existing or hereafter acquired, together with all proceeds thereof or any similar all assets description in any such financing statements or other filing or recording documents or instruments.

**RESOLVED,** that each of the Authorized Persons be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions and extensions of the U.S. DIP Financing Agreement and any of the U.S. DIP Financing Documents which shall in their sole judgment be necessary, proper or advisable.

**RESOLVED,** that all acts and actions taken by the Authorized Persons prior to the date hereof with respect to the transactions contemplated by the U.S. DIP Financing Agreement and any of the other U.S. DIP Financing Documents be, and hereby are, in all respects confirmed, approved and ratified.

**<u>The Amendment and Restatement Agreement or the Amended and Restated Facility Agreement</u>**

7

RESOLVED, that to the extent applicable to the Company, in the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, to obtain the benefits from the incurrence of debtor-in-possession financing obligations by and among Aegean Marine Petroleum S.A., a corporation incorporated under the laws of Liberia with registered office at 80 Broad Street, Monrovia, Republic of Liberia, Aegean Petroleum International Inc., a corporation incorporated under the laws of the Marshall Islands with registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, MH96960, Marshall Islands, Aegean NWE N.V., a limited liability company incorporated under the laws of Belgium with registered office at Nijverheidsstraat 7, B-2960 Brecht, Belgium, Aegean Bunkering German GmbH, a limited liability company incorporated under the laws of the Federal Republic of Germany, having its business address at Holstenwall 5, 20355 Hamburg, Germany which is registered in the commercial register (*Handelsregister*) kept at the local court (*Amtsgericht*) of Kiel under registration number HRB 16326 KI, and OBAST Bunkering & Trading GmbH, a limited liability company incorporated under the laws of the Federal Republic of Germany, having its business address at Dalwitzhofer Weg 22 a, 18055 Rostock, Germany which is registered in the commercial register (*Handelsregister*) kept at the local court (*Amtsgericht*) of Rostock under registration number HRB 13560, collectively, as Borrowers, the various lenders from time to time party thereto (collectively, the "<u>Lenders</u>" and each individually, a "<u>Lender</u>"), ABN AMRO BANK N.V., as Facility Agent for the Lenders (in such capacity, the "<u>Facility Agent</u>"), and propose to enter into an amendment and restatement agreement ("<u>Amendment and Restatement Agreement</u>") in relation to the borrowing base facility agreement dated 30 November 2017 between, among others, the Borrowers, the Lenders and the Agent (such agreement as amended by the Amendment and Restatement Agreement being the "<u>Amended and Restated Facility Agreement</u>") as a Guarantor, as documented in the DIP Order and submitted for approval to a court of competent jurisdiction, or accede to the Amended and Restated Facility Agreement as a Guarantor pursuant to the Accession Letter in the form of Schedule 9 (*Form of Accession Letter*) of the Amended and Restated Facility Agreement;

RESOLVED**,** that the form, terms and provisions of the Amendment and Restatement Agreement or the Accession Letter (as applicable), and each of the other Global DIP Financing Documents (as defined below), and the Company's incurrence and performance of its obligations under the Global DIP Financing Documents (as defined below), including (i) any borrowings thereunder, (ii) any guarantees contemplated thereunder, (iii) the grant of security thereunder, and (iv) the consummation of the transactions contemplated thereby, be, and hereby are, in all respects, authorized and approved; and further resolved, that each of the **Company's** Authorized Persons, acting alone or with one or more Authorized Persons be, and hereby is, authorized and empowered to execute and deliver, and to cause the Company to incur and perform its obligations under, the Amendment and Restatement Agreement or the Accession Letter (as applicable), and each of the instruments and documents listed below and all other agreements, documents and instruments contemplated by any of the foregoing or requested by the Facility Agent in connection with any of the foregoing (together with the Amendment and Restatement Agreement or the Accession Letter (as applicable), collectively, the "<u>Global DIP Financing Documents</u>"), and each of the documents and instruments contemplated thereby, in the name and on behalf of the Company under its seal or otherwise, substantially in the forms presented to the Board, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her

sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof:

(a)      the First Security Documents (as defined in the Amendment and Restatement Agreement) (to which the Company is or will be a party);

(b)      the Second Security Documents (as defined in the Amendment and Restatement Agreement) (to which the Company is or will be a party);

(c)      the Intercreditor Agreement (to which the Company will acknowledge);

(d)      the DIP Order;

(e)      such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, and other instruments as the Facility Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the liens purported to be required pursuant to the Global DIP Financing Documents to be created in the Debtors' Collateral (as defined in the Amendment and Restatement Agreement) as collateral security for the payment of obligations, advances, debts or liabilities related to the Company's obligations;

(f)      such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, landlord agreements and warehouse letters) relating to the Debtors' Collateral; and

(g)      such other documents, agreements, instruments, certificates**, notices, assignments** and documents as may be reasonably requested by the Facility Agent or required by the Global DIP Financing Documents.

RESOLVED**,** that the Company will receive value and obtain benefits from the incurrence of the Loans by the Borrowers and the other obligations under the Global DIP Financing Agreement and the Global DIP Financing Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company.

RESOLVED**,** that each of the Authorized Persons be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to grant a security interest in all of the Company's assets pursuant to the terms of the Global DIP Financing Documents, including, without limitation, a pledge of all of the equity interests now owned or hereafter acquired by the Company to the Facility Agent, and all personal and real property of the Company now owned or hereafter acquired by the Company, and the Facility Agent is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Debtors' Collateral without the signature of the Company in such form and in such offices as the Facility Agent or any Authorized Officer determines appropriate or necessary to perfect the perfection of the security interests of the Facility Agent under the Global DIP Financing Documents. Without limiting the generality of the foregoing, the Facility Agent is expressly authorized to use a collateral description that encompasses "all assets" or "all personal property" of the Company, wheresoever located, whether now owned and existing or hereafter acquired, together with all

proceeds thereof or any similar all assets description in any such financing statements or other filing or recording documents or instruments.

RESOLVED, that each of the Authorized Persons be, and hereby is, authorized and empowered, on behalf of the Company to sign and/or dispatch all documents and notices to be signed and/or dispatched by it under or in connection with the Global DIP Financing Documents.

RESOLVED, that each of the Authorized Persons be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions and extensions of the Global DIP Financing Documents which shall in their sole judgment be necessary, proper or advisable.

RESOLVED, that all acts and actions taken by the Authorized Persons prior to the date hereof with respect to the transactions contemplated by the Global DIP Financing Documents be, and hereby are, in all respects confirmed, approved and ratified.

RESOLVED, that Aegean Marine Petroleum S.A. be, and hereby is, appointed to act as the Company's agent in connection with the Global DIP Financing Documents.

**Other**

RESOLVED, that the form, terms, and provisions of the DIP Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are authorized, adopted, and approved, and each of the Authorized Persons be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the DIP Order, and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents to which the Company is or will be a party, including, but not limited to, any security and pledge agreement or guaranty agreement (collectively with the DIP Order, the "DIP Documents"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, as such Authorized Person shall in his or her judgment determine to be necessary or appropriate to consummate the transactions contemplated by the DIP Documents, which determination shall be conclusively evidenced by such officers' execution and delivery thereof;

RESOLVED, that the Company, as debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations (as defined below) and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "DIP Transactions"), including granting liens on its assets to secure such obligations;

RESOLVED, that each of the Authorized Persons be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Transactions and all fees and expenses incurred by or on behalf of the Company in connection with the foregoing resolutions, in accordance with the terms of the U.S. DIP Financing Documents and Global DIP Financing Documents, as applicable, which shall in their sole judgment be necessary, proper, or advisable to perform the Company's obligations under or in connection with the DIP Order or any of the other U.S. DIP Financing Documents and Global

DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions;

RESOLVED, that to the extent applicable to the Company, in the judgment of the Board, it is desirable and in the best interest of the Company, its interest holders, its creditors, and other parties in interest, to obtain the benefits from the use of cash collateral (the "Cash Collateral," as such term is defined in section 363(a) of the Bankruptcy Code), which is security for certain of the Company's prepetition secured lenders under certain credit facilities by and among the Company, the guarantors party thereto, and the lenders party thereto (the "Prepetition Secured Lenders");

RESOLVED, that to the extent applicable to the Company, the Authorized Persons be, and hereby are, authorized, directed and empowered in the name of, and on behalf of, the Company to seek approval of the use of cash collateral pursuant to a cash collateral order in interim and final form (a "Cash Collateral Order"), and, to the extent applicable to the Company, any Authorized Person be, and hereby is, authorized, empowered, and directed to negotiate, execute (under the common seal of the Company, if appropriate), and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary or advisable to implement the Cash Collateral Order, including providing for adequate protection to the Prepetition Secured Lenders in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for the use of cash collateral in connection with the Company's chapter 11 cases, which agreement(s) may require the Company to grant adequate protection and security interests to the Prepetition Secured Lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Person in his absolute discretion approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

RESOLVED, that each of the Authorized Persons be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute (under the common seal of the Company, if appropriate) and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Cash Collateral Order or to do such other things which shall in his/her absolute discretion be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his or their execution thereof; and

RESOLVED, that in order to use and obtain the benefits of (a) the U.S. DIP Financing, (b) the Global DIP Financing and (b) the use of Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the Company's Prepetition Secured Lenders (the "Adequate Protection Obligations"), as documented in the DIP Order.

RESOLVED, that the capitalized terms used in the resolutions under the caption "DEBTOR-IN-POSSESSION FINANCING AND CASH COLLATERAL" and not otherwise defined herein shall have the meanings ascribed to such terms in the respective U.S. DIP Financing Agreement and/or Amended and Restatement Agreement.

## 5.  ENTRY INTO STALKING HORSE ASSET PURCHASE AGREEMENT AND APPROVAL OF MARKETING PROCESS

WHEREAS, Mercuria Energy Group Limited ("Mercuria") has provided the Company with an indication of interest with respect to Mercuria's proposed purchase, from the Company and certain of its subsidiaries, of certain assets used in the marketing and supplying of marine fuel and lubricants to vessels in port, at sea and on rivers and equity in certain subsidiaries engaged in the foregoing (collectively referred to as the "Business"). Mercuria and the Company have negotiated an asset purchase agreement to govern the terms of Mercuria's purchase of the Business (the "APA"), subject to the Company's receipt of a higher or otherwise better offer and a robust "fiduciary out";

WHEREAS, the sale of the Business is subject to the Company filing a motion with the Bankruptcy Court (the "Motion"), seeking, among other things, approval of (i) an auction process (the "Auction") that will govern the marketing of the Business to Mercuria or another bidder with the highest or otherwise best offer (such bidder, the "Successful Bidder") and (ii) Mercuria as the stalking horse bidder and certain related bid protections;  and

WHEREAS, the Board of the Company reviewed the materials presented by management and the advisors of the Company to the Board at meetings that have been held on these Resolutions. The Board has had the opportunity to consult with management and the advisors of the Company and fully consider the APA and the Auction contemplated by the Motion as well as certain alternatives available to the Company regarding the Business.

NOW, THEREFORE, BE IT RESOLVED, that the Company is authorized to enter into the APA with Mercuria for the sale of the Business and to undertake any and all related transactions contemplated thereby, including the Auction and the bid protections, on the terms contained therein or on such other terms and conditions as the officers of the Company, or any of them, in their, his or her sole discretion, determine to be necessary, appropriate or desirable;

RESOLVED, that each of the Authorized Persons be, and hereby are, authorized, empowered and directed to execute and file, on behalf of the Company, the Motion with the Bankruptcy Court; and

RESOLVED, that each of the Authorized Persons be, and hereby are, authorized, empowered and directed to conduct the Auction as approved by the Bankruptcy Court pursuant to the Motion and to negotiate, for and on behalf of the Company, such agreements, documents, assignments and instruments as may be necessary, appropriate or desirable in connection with the sale of the Business to Mercuria or the Successful Bidder.

## 6.  FURTHER ACTIONS AND PRIOR ACTIONS

RESOLVED, that the Company is hereby authorized to authorize (and the Company hereby authorizes and directs) any direct or indirect subsidiary of the Company or any entity of which the Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or the Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law);

RESOLVED, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute (under hand or under the common seal of the Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Bankruptcy Petitions or the Restructuring Documents;

RESOLVED, that each of the Authorized Persons be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein; The Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the governing documents of the Company, or hereby waives any right to have received such notice;

RESOLVED, that all acts, actions, and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before the adoption of these Resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Board, as applicable; and

RESOLVED, that any Authorized Person be, and each of them hereby is, authorized to do all such other acts, deeds and other things as the Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution (under hand or common seal, whether or not expressed to be a deed, as may be necessary or appropriate) and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) |
| | ) Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., | ) ) Case No. 18-_____(___) |
| | ) |
| Debtor. | ) |
| | ) |

### LIST OF EQUITY SECURITY HOLDERS[1]

| Debtor | Equity Holders | Address of Equity Holder | Percentage of Equity Held[2] |
|---|---|---|---|
| Aegean Marine Petroleum Network Inc. | Mercuria Asset Holdings Hong Kong | Jumeirah Lake Towers Unit n° Almas 63-a-1 Almas Tower - Plot n° JLT PH1-A0 Dubai UAE | 30.00% |
| | Shah Capital Management Inc. | 8601 Six Forks Road, Suite 630 Raleigh, NC 27615 | 10.26% |
| | Peter C. Georgiopoulos | [REDACTED] | 9.314% |
| | RBM Holdings LLC | 2000 Morris Avenue, Suite 1200 Birmingham, AL 35203 | 3.105% |
| | Schneider Capital Management Corp. | 460 East Swedesford Road, Suite 2000 Wayne, PA 19087 | 2.752% |
| | B. Riley Capital Management, LLC | 299 Park Avenue, 7th Floor New York, NY 10171 | 2.042% |
| | Global X Management Co LLC | 101 E 52nd St New York, NY 10022 | 1.651% |
| | Owl Creek Asset Management, L.P. | 640 Fifth Avenue, 20th Fl New York, NY 10019-6102 | 1.598% |
| | Lombard Odier Darier Hentsch & Cie Asset Management USA | 452 Fifth Ave, 25th Fl New York, NY 10018 | 1.349% |
| | Arrowstreet Capital LP | 200 Clarendon St, 30th Fl Boston, MA 02116 | 1.275% |

---

[1]    This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed are as of the date of commencement of the chapter 11 case. By the *Debtors' Motion for Entry of an Order (I) Extending Time to (A) File Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (E) Rule 2015.3 Financial Reports, (II) Waiving the Requirement to File a List of Equity Security Holders, and (III) Granting Related Relief* filed contemporaneously herewith, the debtor is requesting a waiver of the requirement under rule 1007 to file a list of all of its equity security holders.

[2]    This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed are correct as of October 29, 2018.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AEGEAN MARINE PETROLEUM NETWORK INC., | ) | Case No. 18-_____(___) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

<u>**CORPORATE OWNERSHIP STATEMENT**</u>

      Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Mercuria Asset Holdings Hong Kong | 30.00% |
| Shah Capital Management Inc. | 10.26% |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | Aegean Marine Petroleum Network Inc. |
| United States Bankruptcy Court for the: | Southern District of New York |
| | (State) |
| Case number (If known): | |

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration   List of Equity Security Holders, Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| **11/06/2018** | ☒ */s/ Spyridon Fokas* |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Spyridon Fokas** |
| | Printed name |
| | **Authorized Signatory** |
| | Position or relationship to debtor |

**Official Form 202**          **Declaration Under Penalty of Perjury for Non-Individual Debtors**