Marc Kieselstein, P.C.
Jonathan S. Henes, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Adam C. Paul, P.C. (*pro hac vice* pending)
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | Case No. 18-13374 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**PREPETITION HEDGING PRACTICES, (B) COMMENCE POSTPETITION**
**HEDGING PRACTICES, (C) GRANT SUPERPRIORITY CLAIMS, AND (D) PAY**
**PREPETITION HEDGING OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this motion (this "<u>Motion</u>"):[2]

---

[1]    Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]    The facts and circumstances supporting this Motion are set forth in the *Declaration of Tyler Baron, Director of Aegean Marine Petroleum Network Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>Baron First Day Declaration</u>"), and the *Declaration of Andrew Hede, Financial Advisor to Aegean Marine Petroleum Network Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>Hede First Day Declaration</u>"), filed contemporaneously herewith and incorporated by reference herein (collectively, the "<u>First Day Declarations</u>").

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), (a) authorizing, but not directing, the Debtors to (i) continue the Prepetition Hedging Practices, (ii) commence Postpetition Hedging Practices, (iii) grant Superpriority Claims on account of the Postpetition Hedging Obligations, and (iv) pay Hedging Obligations, whether they arose prepetition or postpetition, in the ordinary course of business, and (b) granting related relief.

2.      In addition, the Debtors request that the court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and any applicable rule of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

6.      Aegean Marine Petroleum Network Inc., together with its Debtor and non-Debtor subsidiaries, is a leading marine fuel logistics company with approximately 850 employees and active operations in 20 countries worldwide.  The Debtors' core business involves marketing and physically supplying marine fuel and lubricants to vessels in port, at sea, on rivers and other waterways.  The Debtors own and/or operate a fleet of 57 vessels, including 37 owned double hull bunkering tankers, covering more than 50 ports worldwide, including Northern Europe and the Antwerp-Rotterdam-Amsterdam region, the U.S. East and West Coasts, Gibraltar, Greece, Morocco, Canada, Jamaica, Trinidad and Tobago, the Gulf of Mexico, Germany, South Africa, and the U.S. Virgin Islands.  The Debtors also own or lease land-based storage facilities—consisting of two terminals and more than 1,000,000 cubic meters of storage capacity—in the United States, Morocco, Canary Islands, Germany, and the United Arab Emirates.  The Debtors are headquartered in Athens, Greece, and have a corporate office in New York, New York.  As of the date hereof (the "Petition Date"), the Debtors' funded debt obligations totaled approximately $855 million consisting of 12 secured credit facilities and two issuances of unsecured convertible notes.

7.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.  Additional information

regarding the Debtors and their prepetition operations and capital structure is set forth in the Baron

First Day Declaration, filed in connection herewith.

## The Hedging Arrangements

I. **The Debtors Have Historically Entered into Hedging Arrangements to Mitigate Marine Fuel Price Risk.**

8.      The Debtors operate in a world of commodity price volatility.  The Debtors'

earnings and cash flows from operations are dependent upon the prevailing price of marine fuel,

which may vary by geographic region and fluctuate materially between the time the Debtors take

the fuel as inventory and later sell it to customers (e.g., up to 60 days).  To provide long-term cash

flow predictability and protect the Debtors from price volatility, the Debtors purchase financial

derivative instruments—primarily swaps and futures contracts—from third parties (the

"Prepetition Hedging Counterparties").[3]  The Debtors have historically purchased these derivative

instruments through clearing brokers with whom the Debtors had cash accounts (the

"Brokerage Accounts") that were used to satisfy margin calls, as necessary (the "Historic Hedging

Practices").  On August 23, 2018, however, the Debtors entered into a ISDA 2002 Master

Agreement with Mercuria Energy Trading, Inc. ("Mercuria"), which governs the terms of all of

their current hedging arrangements.  The Debtors pay margin to Mercuria, as necessary (this

arrangement, together with the Historic Hedging Practices, the "Prepetition Hedging Practices").

In addition, to ensure that the Prepetition Hedging Practices are closely monitored and being

utilized in the best interests of the Debtors' stakeholders, the Debtors operate under comprehensive

risk management policies (the "Risk Management Policies"), which are promulgated by Aegean

Marine Petroleum Network Inc.'s Chief Financial Officer, in consultation with the audit committee

---

[3]      As of now, Mercuria is the Debtors' only Prepetition Hedging Counterparty.

of its board of directors.  The Debtors generally maintain a "balanced" hedging portfolio in that, on a net basis, they neither hold a long nor short position.

9.       The Debtors do not enter into hedging arrangements with respect to the fuel they sell in the Gulf of Mexico, Las Palmas, and Gibraltar because Mercuria or its affiliates provide inventory "sleeves" that effectively remove the price volatility that the Debtors would otherwise mitigate through hedging arrangements.  Inventory "sleeving" here refers to the process whereby Mercuria purchases fuel on behalf of the Debtors, stores the fuel in the Debtors' storage terminals, and then sells the fuel to the Debtors on an "as needed" basis as the Debtors sell the fuel to customers.  The Debtors have custody, but not title, to the fuel in the storage terminal and on the barge that delivers the fuel to the customer.  "Flash title" to the fuel passes from Mercuria to the Debtors as the delivery barge transfers the fuel to the Debtors' customer.  Title passes from the Debtors to their customer moments after title passes to the Debtors.  Ultimately, Mercuria provides the sleeve to enhance the Debtors' liquidity for the benefit of all of the Debtors' stakeholders.

10.       Maintaining the Prepetition Hedging Practices on a postpetition basis, subject to the Risk Management Procedures, is essential for the Debtors to minimize their exposure to fuel price fluctuations so as to maintain predictable cash flows and uninterrupted operations.  If the Debtors determine it is necessary to enter into hedging arrangements with counterparties other than Mercuria, those potential counterparties may be reluctant to enter into hedging arrangements with the Debtors on a postpetition basis if the Debtors do not pay all amounts they owe, if any, on account of the Prepetition Hedging Practices, including satisfying margin calls (the "Prepetition Hedging Obligations").  The Debtors, therefore, respectfully request authorization to pay all Prepetition Hedging Obligations in the ordinary course of business.[4]

---

[4]    Because the Debtors' hedging obligations fluctuate on a daily basis, the Debtors are unable to provide the exact amount they owe on account of Prepetition Hedging Obligations.  However, in the last month, margin calls have

## II. The Prepetition Hedging Practices Significantly Reduce the Effect of Marine Fuel Price Volatility on the Debtors' Cash Flow Stream.

11.     The Prepetition Hedging Practices are a significant and low-risk means to reduce the impact of fuel price volatility on the Debtors' cash flow stream.  If the underlying value of marine fuel declines, the Debtors' losses on the value of the fuel will be offset by gains on their "short" derivative positions (*i.e.*, derivatives in this case that compensate the holder if fuel declines in value).  Conversely, the Debtors' short derivative positions experience losses when fuel increases in value, which is, in turn, offset by the corresponding gain that occurs from selling the fuel to customers at a higher price.  As set forth in the chart below, the hedging gains and losses experienced by the Debtors' U.S. business have largely corresponded, as expected, to market movements, resulting in gains when fuel prices decline and losses when fuel prices increase.



12.     The Debtors do not engage in proprietary or speculative trading activities.  The Prepetition Hedging Activities are directly tied to the Debtors' anticipated level of marine fuel inventory.  To hedge fuel price exposure, the Debtors have entered into transactions under the

---

not exceeded $4.9 million and the maximum amount maintained in the Brokerage Accounts to offset hedging positions has not exceeded $4.7 million.

Prepetition Hedging Practices for up to 100% of their physical inventory, exclusive of the inventory subject to the sleeving arrangement and related chain of title. The Debtors continually monitor the relevant hedging market. As future inventory estimates change, the Debtors adjust the level of hedging activity accordingly.

III.    **It Is Critical that the Debtors Be Permitted to Enter into Postpetition Hedging Arrangements in the Ordinary Course of Business.**

13.    For the reasons discussed above, it is critical that the Debtors are permitted to continue their prepetition hedging activity, including satisfying margin calls, on a postpetition basis. In particular, the Debtors propose to enter into new postpetition hedging positions of a type generally consistent with the Prepetition Hedging Practices (the "Postpetition Hedging Practices" and, together with the Prepetition Hedging Practices, the "Hedging Practices") in the ordinary course of business on terms to be mutually agreed upon between the Debtors and their postpetition hedging counterparties (the "Postpetition Hedging Counterparties," and together with the Prepetition Hedging Counterparties, the "Hedging Counterparties"). The Debtors are also seeking authority to secure and otherwise ensure payment of the obligations under the Postpetition Hedging Practices (the "Postpetition Hedging Obligations" and, together with the Prepetition Hedging Obligations, the "Hedging Obligations"), including the Debtors' payment of additional funds into Brokerage Accounts and the satisfaction of margin calls, as necessary, and by providing their Postpetition Hedging Counterparties with superpriority administrative claims on account of the Postpetition Hedging Obligations under section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claims").

14.    The Debtors intend to (and are able to) honor their obligations under the Hedging Practices. The Debtors are concerned, however, that because certain of their Hedging Counterparties may believe they are entitled to certain safe-harbor provisions with respect to the

automatic stay (described in more detail below), these Hedging Counterparties may seek to terminate arrangements and contracts entered into as part of the Prepetition Hedging Practices or take other adverse actions against the Debtors or their non-Debtor affiliates.  The Debtors intend through this Motion to provide assurances to their present and future Hedging Counterparties that the Debtors may continue trading activity, including the posting of daily margin calls, as necessary, without further order from the Court.  As detailed above, the ability to continue the Hedging Practices is critical to the Debtors' uninterrupted operations and cash flow predictability. Accordingly, by this Motion, the Debtors request authority, but not direction, to continue honoring their obligations under the Hedging Practices in the ordinary course of business.[5]

### Basis for Relief[6]

15.    Certain hedging and trading contracts are granted unique rights under the Bankruptcy Code, primarily by sections 546, 555, 556, and 559.  Specifically, sections 546(e)–(g) (providing relief from certain avoidance actions), section 555 (providing for the liquidation of certain security accounts), section 556 (providing for the liquidation of forward and commodity contracts), section 559 (providing for the liquidation of certain repurchase agreements) of the Bankruptcy Code, in combination with sections 362(b)(6), (7) and (17) of the Bankruptcy Code— often referred to as the "safe harbors"—contain special protections granted to counterparties to future, forward, and financial contracts that enable financial contract counterparties to:

---

[5]    The Debtors believe that the Postpetition Hedging Practices are already authorized as ordinary course transactions pursuant to section 363(c)(1) of the Bankruptcy Code.  Nonetheless, the Debtors file this Motion in an effort give further clarity to the Hedging Counterparties.

[6]    This Motion is without prejudice to any argument available to the Debtors that (i) any Hedging Counterparty may be appropriately characterized as a "utility" within the scope of section 366 of the Bankruptcy Code; and (ii) the terms of any hedging arrangement, course of dealing, or course of performance, precludes a Hedging Counterparty from altering, refusing or discontinuing service to any of the Debtors solely on the basis of the commencement of the Debtors' chapter 11 cases.

(a)     terminate, liquidate, and/or accelerate a commodities contract, forward contract, or swap agreement upon the bankruptcy filing of the other party, notwithstanding the anti-*ipso-facto* protections of section 365(e)(1) of the Bankruptcy Code;

(b)     protect prepetition payments made under a commodity, forward, or swap contract by the debtor to the non-debtor party from the avoidance powers of a trustee or debtor in possession, except in particular cases of actual intent to defraud other creditors; and

(c)     provided the underlying agreement allows for such setoff, to setoff mutual debts and claims against the debtor under a commodity contract without the need to obtain relief from the automatic stay.

16.     The Debtors are cognizant that future Hedging Counterparties may be reluctant to enter into contracts under the Hedging Practices with the Debtors without specific authorization from the Court.  Further, because of the above described unique rights available for certain hedging and trading contracts under the Bankruptcy Code, the Debtors also believe that Mercuria may, under certain circumstances, seek to terminate contracts or agreements entered into under the Prepetition Hedging Practices or take other adverse actions, including making a demand for additional collateral, against the Debtors or their non-Debtor affiliates, whether or not any special rights actually apply to any contracts or agreements entered into under the Prepetition Hedging Practices.  The Debtors believe that preservation of the Hedging Practices can only be maintained by assuring Mercuria and other future Hedging Counterparties that the Debtors will perform.  Accordingly, the Debtors request authority, but not direction, to continue to perform under the Hedging Practices, including the posting of daily margin calls, and the provision of Superpriority Claims to Hedging Counterparties, as appropriate.

**I.     Section 363(c) of the Bankruptcy Code Authorizes the Debtors to Continue and Enter into the Hedging Practices.**

17.     Section 363(c)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or

a hearing, and may use property of the estate in the ordinary course of business without notice or

a hearing." The ordinary course of business standard embodied in this provision is intended to

allow a debtor in possession the flexibility to run its business during its chapter 11 proceedings.

*Moore v. Brewer (In re HMH Motor Servs., Inc.)*, 259 B.R. 440, 448–49 (Bankr. S.D. Ga. 2000).

18.      The Bankruptcy Code does not define "ordinary course of business."

*In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009). However, courts

have clarified that the standard is meant "to embrace the reasonable expectations of interested

parties of the nature of transactions that the debtor would likely enter in the course of its normal,

daily business." *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir.

1997) (quoting *In re Watford*, 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Roth American, Inc.*, 975

F.2d 949, 952 (3rd Cir. 1992) (stating that section 363 of the Bankruptcy Code is designed to allow

a debtor in possession "flexibility to engage in ordinary transactions without unnecessary . . .

oversight"). The two tests ordinarily applied by the courts to determine the ordinary course of

business are the "horizontal" test and the "vertical" test. *Denton Cnty. Elec. Co-Op., Inc. v.

Eldorado Ranch (In re Denton Cnty. Elec. Coop., Inc.)*, 281 B.R. 876, 882 & n.12 (Bankr. N.D.

Tex. 2002); *In re Springfield Contracting Corp.*, 154 B.R. 214, 225–26 (Bankr. E.D.V.A. 1993).

"The 'horizontal test' focuses on the way businesses operate within a given industry. The 'vertical

test' focuses on the expectations of creditors." *Id.*

19.      Continuation of the Prepetition Hedging Practices and entry into the Postpetition

Hedging Practices satisfies both tests. Under the horizontal test, the Hedging Practices are typical

arrangements and ubiquitous among companies in the Debtors' industry. For the reasons set forth

above, marine fuel supply companies rarely operate without hedging arrangements. Accordingly,

the Debtors believe continuation of the Prepetition Hedging Practices, entry into the Postpetition

Hedging Practices, and incurrence or payment of the Hedging Obligations fall within the standard, ordinary course practice of companies in the Debtors' industry.

20.    Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the debtor's specific prepetition business practices and norms, and the expectation that the debtor will conform to those practices and norms while operating as a debtor in possession. *In re Garofalo's Finer Foods, Inc.*, 185 B.R. 414, 425 (ND. Ill. 1995). Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice. *Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*, 184 B.R. 74, 79 (9th Cir. B.A.P. 1995); *James A. Phillips*, 29 B.R. at 394. The size, nature and type of business, and the size and nature of the transactions in question, are all relevant to determining whether the transactions at issue are ordinary. *U.S. ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *Johns-Manville Corp.*, 60 B.R. at 617. "Accordingly, a postpetition transaction undertaken by the debtor that is similar in size and nature to prepetition transactions undertaken by the debtor would be within the ordinary course of business." *Garofalo's*, 186 B.R. at 426.

21.    Moreover, courts in this and other jurisdictions have authorized debtors in commodities industries to continue or initiate hedging arrangements similar to the Hedging Practices in the ordinary course of business, pursuant to section 363(c)(1). *See, e.g.*, *In re Patriot Coal Corp.*, Case No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 16, 2012); *In re Dynegy Holdings, LLC*, Case No. 11-38111 (Bankr. S.D.N.Y. Nov. 9, 2011) (granting authority to enter into and perform under derivative contracts); *In re Bos. Generating, LLC*, Case No. 10-14419 (Bankr. S.D.N.Y. Sept. 23, 2010) (granting authority to enter into and perform under its hedging and purchase and sale contracts); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.

Dec. 21, 2005) (granting authority to enter into and perform under its derivative contracts, including forward, futures, and options contracts); *see also In re Vanguard Natural Resources, LLC*, Case No. 17-30560 (MI) (Bankr. S.D. Tex. June 9, 2017); *In re Stone Energy Corporation*, Case No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 27, 2016)*; In re Ultra Petrol. Corp.*, Case No. 16-32202 (MI) (Bankr. S.D. Tex. Nov. 28, 2016); *In re Warren Res., Inc.*, Case No. 16-32760 (Bankr. S.D. Tex. July 13, 2016); *In re SandRidge Energy, Inc.*, Case No. 16-32488 (DRJ) (Bankr. S.D. Tex. June 30, 2016); *In re Penn Va. Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. May 13, 2016).[7]

22.     Accordingly, the Debtors believe that continuing the Prepetition Hedging Practices and honoring Hedging Obligations, including posting margin calls, as necessary, is within the ordinary course of business and consistent with standard industry practice.  The Debtors submit that authority to continue or enter into the Hedging Practices is appropriate and in the best interests of the Debtors, their estates, and all parties in interest in these chapter 11 cases and should be permitted.

## II.     Continued Performance of the Hedging Practices Is a Sound Exercise of the Debtors' Business Judgment.

23.     Even if continued performance under the Hedging Practices were not in the ordinary course of business, the Debtors are still authorized to perform under the Hedging Practices pursuant to section 363(b) of the Bankruptcy Code because continued performance of the Hedging Practices is a sound exercise of the Debtors' business judgment.

24.     Section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course

---

[7]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

of business, property of the estate." A debtor may use, sell, or lease property of the estate where a sound business purpose justifies such actions. *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248 n.8 (2d Cir. 2010); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (noting that the criteria for approval of a transaction under section 363(b) is whether the debtor has "an articulated business justification"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). Specifically, once a debtor articulates a valid business justification for a particular form of relief, the court reviews the debtor's request under the business judgment rule. *See Commercial Mortg. and Fin. Co.*, 414 B.R. at 394 (noting that a debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

25.    The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *See In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003). Consequently, a debtor's business decision "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, whim, or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (quoting *In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bankr. D. Mass. 1986) (citations omitted)).

26.    The decision to continue providing services under the Hedging Practices, including the posting of daily margin calls and granting of Superpriority Claims, is in the Debtors' sound business judgment because it is essential to continuing the Debtors' operations. The Debtors'

implementation of the Hedging Practices historically has been a strong source of cost savings (and in some instances, a source of revenue) for the Debtors, and so the benefits outweigh the costs of the Hedging Practices.  By contrast, a limitation on the Debtors' ability to commence the Hedging Practices will:  (a) cause disruption to the Debtors' operations; (b) require the immediate attention of the Debtors' management at a time when their resources are limited and better spent on the restructuring; (c) effectively prevent the Debtors from entering into any new contracts and agreements under the Hedging Practices because Hedging Counterparties may require credit support in the form of unduly burdensome collateral and security requirements; and (d) compromise the Debtors' ability to successfully reorganize because of their new exposure to previously-hedged fluctuations in marine fuel prices.

27.     The relief sought herein is intended to preserve the value of assets of these chapter 11 estates.  To effectively manage the financial risks inherent to the Debtors' business and fluctuating price of marine fuels, the Debtors must be able to continue the Hedging Practices.  The Debtors believe that the Court's authorizing the Debtors to continue the Hedging Practices will underscore the Debtors' intent and ability to continue performing under any contracts or agreements entered into under the Hedging Practices, minimize disruption by premature, unilateral termination of such contracts or agreements by certain of the Hedging Counterparties, and avoid the risks associated with Hedging Counterparties refusing to deal with the Debtors on a postpetition basis.  Accordingly, the Debtors believe the relief requested herein will yield benefits that are in the best interests of the Debtors, their estates, and creditors.

**III.    The Debtors Should Be Authorized to Provide the Superpriority Claims Pursuant to Section 364 of the Bankruptcy Code.**

28.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain "credit" on a superpriority or senior secured basis when obtaining such credit on other terms is unavailable.

11 U.S.C. §§ 364(c), (d).  Courts generally afford debtors considerable deference to determine, in

their business judgment, the terms under which they obtain postpetition secured credit.  *See, e.g.*,

*In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011); *In re Curlew Valley Assocs.*,

14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

29.    To provide the necessary comfort to the Hedging Counterparties that the Debtors

will be able to honor commitments under the Postpetition Hedging Practices, the Debtors seek

authority to provide the Superpriority Claims on account of the Postpetition Hedging Obligations.

Courts in various jurisdictions have approved similar relief.  *See, e.g.*, *In re PES Holdings, LLC*,

Case No. 18-10122 (KG) (Bankr. D. Del. Feb. 26, 2018); *In re Linn Energy, LLC*, Case No.

16-60040 (DRJ) (Bankr. S.D. Tex. May 17, 2016); *In re Penn Va. Corp., et al.*, Case No. 16-32395

(KLP) (Bankr. E.D. Va. May 13, 2016); *In re Energy Future Holdings Corp.*, Case No. 14-10979

(CSS)  (Bankr. D. Del. June 30, 2014);  *In re  Calpine  Corp.*,  Case  No. 05-60200  (BRL)

(Bankr. S.D.N.Y. Dec. 21, 2005).

30.    Providing the Superpriority Claims is not unduly burdensome on the Debtors, and

the Debtors believe these grants are necessary to commence the Postpetition Hedging Practices,

which are essential both to the stability of the Debtors' businesses and the success of the Debtors'

restructuring.  In light of the foregoing, the Debtors believe that authorizing the Debtors to provide

the Superpriority Claims on account of the Postpetition Hedging Practices will preserve the value

of the Debtors' estates and is, therefore, appropriate and in the best interests of the Debtors, their

estates, and all parties in interest in these chapter 11 cases.

## IV.    The Debtors Should Be Authorized to Pay Prepetition Hedging Obligations.

31.    There is substantial authority under the Bankruptcy Code to support payment of

any Prepetition Hedging Obligations.  There are numerous provisions of the Bankruptcy Code that

may permit termination of prepetition hedges notwithstanding the automatic stay and provide other

protections to hedging counterparties.  *See* 11 U.S.C. § 546(e)–(g) (providing relief from certain avoidance actions); *id.* § 555 (providing for the liquidation of certain security accounts); *id.* § 556 (providing for the liquidation of forward and commodity contracts); *id.*§§ 362(b)(6), (7), (17) & 559 (providing for the liquidation of certain repurchase agreements); *id.* § 560 (providing for the liquidation, termination, and acceleration of swap agreements); *id.* § 561 (providing for the termination, liquidation, and acceleration of master netting agreements).

32.     Moreover, courts in the Second Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).

33.     It is well within the Court's authority, therefore, to authorize the payment of prepetition amounts, including the posting of margin calls.  Granting such relief will ensure that Hedging Counterparties maintain confidence in the Debtors' ability to fulfill their broader Hedging Obligations.  The Debtors, therefore, respectfully submit that the Court should authorize payment of the Prepetition Hedging Obligations.

## V.     The Requirements of Bankruptcy Rule 6003 Are Satisfied.

34.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to

16

receive the requested relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

35.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

36.    Nothing contained herein is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity.

### Motion Practice

37.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

### Notice

38.    Notice of the hearing on the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the

Local Rules, and is sufficient under the circumstances.  Without limiting the forgoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including (a) the Office of the United States Trustee for the Southern District of New York; (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents for each of the Debtors' secured credit facilities; (d) the indenture trustee for each of the Debtors' unsecured notes; (e) counsel to the ad hoc group of unsecured noteholders; (f) counsel to the Stalking Horse Bidder; (g) counsel to the agent under the Debtors' debtor-in-possession financing facility; (h) counsel to the parties (if known) referenced in clauses (c) and (d); (i) the Office of the United States Attorney for the Southern District of New York; (j) the state attorneys general for states in which the Debtors conduct business; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request entry of the Interim and Final Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated:  November 6, 2018 | */s/ Jonathan S. Henes, P.C.* |

Marc Kieselstein, P.C.
Jonathan S. Henes, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Adam C. Paul, P.C. (*pro hac vice* pending)
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | ) | Case No. 18-13374 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE PREPETITION HEDGING PRACTICES, (B) COMMENCE POSTPETITION HEDGING PRACTICES, (C) GRANT SUPERPRIORITY CLAIMS, AND (D) PAY PREPETITION HEDGING OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing but not directing the Debtors to, (i) continue the Prepetition Hedging Practices, (ii) commence the Postpetition Hedging Practices, (iii) grant Superpriority Claims on account of the Postpetition Hedging Obligations, and (iv) pay Hedging Obligations, whether they arose prepetition or postpetition, in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United

---

[1]   Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

States Constitution; and this Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth in this Interim Order.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2018, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2018,

and shall be served on:  (a) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington

Avenue, New York, New York 10022, Attn:  Jonathan S. Henes, P.C. and Cristine Pirro

Schwarzman, and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn:

Marc Kieselstein, P.C., Ross M. Kwasteniet, P.C., Adam C. Paul, P.C., and W. Benjamin Winger;

(b) the Office of The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite

1006, New York, New York 10014, Attn: Brian S. Matsumoto and Andrew Velez-Rivera;

(c) counsel to any statutory committee appointed in these cases; (d) counsel to the agents for each

of the Debtors' secured credit facilities; (e) counsel to the Stalking Horse Bidder, Millbank,

Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 10005 (Attn: Abhilash Raval, Esq. and Lauren C. Doyle, Esq.); (f) counsel to the agent under the Debtors' debtor-in-possession financing facility, Norton Rose Fulbright US LLP, 1301 McKinney, Suite 5100, Houston, Texas 77010-3095 (Attn: Louis Strubeck, Esq. and Josh Agrons, Esq.); and (g) counsel to the indenture trustee for each of the Debtors' unsecured notes. In the event no objections to entry of a final order on the Motion are timely received, the Court may enter such final order without need for the final hearing.

3.      The Debtors are authorized, but not directed, to continue operating, in the ordinary course of business, under the Prepetition Hedging Practices, and to: (a) pay or otherwise satisfy Hedging Obligations, whether they arose before or after the Petition Date, in the ordinary course of business; (b) commence the Postpetition Hedging Practices with the Postpetition Hedging Counterparties on terms mutually agreed between the Debtors and the Postpetition Hedging Counterparties; and (c) grant allowed Superpriority Claims on account of the Postpetition Hedging Obligations.

4.      In accordance with this Interim Order and any other order of this Court, each of the financial institutions at which the Debtors (or entities acting on behalf of the Debtors through a lawful delegation of authority) maintain their accounts relating to the payment of the obligations described in the Motion is directed to receive, process, honor, and pay any and all checks, drafts, wire transfers, and automated clearing house transfers issued, whether before or after the Petition Date, for payment of obligations described in the Motion to the extent that sufficient funds are on deposit in such amounts.

5.      As security and assurance of the Postpetition Hedging Obligations, and in exchange for providing benefits to the Debtors in accordance with this Interim Order, the Debtors are

authorized to satisfy margin calls and place funds into Brokerage Accounts, if necessary, and the

Postpetition Hedging Obligations shall constitute Superpriority Claims against each of the

Debtors, jointly and severally; *provided*, that such claims shall be subordinated to the superpriority

claims of the DIP Lenders.

6.      If any or all of the provisions of this Interim Order are stayed, modified in a manner

adverse to a Postpetition Hedging Counterparty, or vacated, or if this Interim Order otherwise

terminates, then such stay, modification, vacation, or termination will not affect:  (a) the validity

of any indebtedness, obligation, or liability incurred by the Debtors to each of the Postpetition

Hedging Counterparties before the receipt of written notice by the Postpetition Hedging

Counterparties of the effective date of such stay, modification, vacation, or termination; (b) the

validity or enforceability of the security interests, administrative claims, and netting and

termination rights authorized or created hereby or pursuant to any contract or agreement entered

into under the Postpetition Hedging Practices, or any related documents; and (c) the rights of the

Postpetition Hedging Counterparties to exercise remedies as set forth in any contract or agreement

entered into under the Postpetition Hedging Practices, and each of the Postpetition Hedging

Counterparties shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy

Code.

7.      The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this

Interim Order.

8.      Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

9.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2018

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AEGEAN MARINE PETROLEUM NETWORK | ) | Case No. 18-13374 (___) |
| INC., *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
PREPETITION HEDGING PRACTICES, (B) COMMENCE POSTPETITION
HEDGING PRACTICES, (C) GRANT SUPERPRIORITY CLAIMS, AND (D) PAY
PREPETITION HEDGING OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing but not directing the Debtors to, (i) continue the Prepetition Hedging Practices, (ii) commence the Postpetition Hedging Practices, (iii) grant Superpriority Claims on account of the Postpetition Hedging Obligations, and (iv) pay Hedging Obligations, whether they arose prepetition or postpetition, in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United

---

[1]    Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

States Constitution; and this Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted on a final basis as set forth in this Final Order.

2.      The Debtors are authorized, but not directed, to continue operating, in the ordinary

course of business, under the Prepetition Hedging Practices, and to:  (a) pay or otherwise satisfy

Hedging Obligations, whether they arose before or after the Petition Date, in the ordinary course

of business; (b) commence the Postpetition Hedging Practices with the Postpetition Hedging

Counterparties on terms mutually agreed between the Debtors and the Postpetition Hedging

Counterparties; and (c) grant allowed Superpriority Claims on account of the Postpetition Hedging

Obligations.

3.      In accordance with this Final Order and any other order of this Court, each of the

financial institutions at which the Debtors (or entities acting on behalf of the Debtors through a

lawful delegation of authority) maintain their accounts relating to the payment of the obligations

described in the Motion is directed to receive, process, honor, and pay any and all checks, drafts,

wire transfers, and automated clearing house transfers issued, whether before or after the Petition Date, for payment of obligations described in the Motion to the extent that sufficient funds are on deposit in such amounts.

4.      As security and assurance of the Postpetition Hedging Obligations, and in exchange for providing benefits to the Debtors in accordance with this Final Order, the Debtors are authorized to satisfy margin calls and place funds into Brokerage Accounts, if necessary, and the Postpetition Hedging Obligations shall constitute Superpriority Claims against each of the Debtors, jointly and severally; *provided*, that such claims shall be subordinated to the superpriority claims of the DIP Lenders.

5.      If any or all of the provisions of this Final Order are stayed, modified in a manner adverse to a Postpetition Hedging Counterparty, or vacated, or if this Final Order otherwise terminates, then such stay, modification, vacation, or termination will not affect (a) the validity of any indebtedness, obligation, or liability incurred by the Debtors to each of the Postpetition Hedging Counterparties before the receipt of written notice by the Postpetition Hedging Counterparties of the effective date of such stay, modification, vacation, or termination; (b) the validity or enforceability of the security interests, administrative claims, and netting and termination rights authorized or created hereby or pursuant to any contract or agreement entered into under the Postpetition Hedging Practices, or any related documents; and (c) the rights of the Postpetition Hedging Counterparties to exercise remedies as set forth in any contract or agreement entered into under the Postpetition Hedging Practices, and each of the Postpetition Hedging Counterparties shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

7.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order").  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

     12.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2018

_____
     UNITED STATES BANKRUPTCY JUDGE