Marc Kieselstein, P.C.
Jonathan S. Henes, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Adam C. Paul, P.C. (admitted *pro hac vice* )
W. Benjamin Winger (admitted *pro hac vice* )
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | ) Case No. 18-13374 (MEW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF FILING OF**
**REVISED INTERIM ORDER (I) AUTHORIZING THE DEBTORS**
**TO OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION**
**FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV)**
**GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,**
**(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

     **PLEASE TAKE NOTICE** that on November 6, 2018, the above-captioned debtors and

debtors in possession (the "<u>Debtors</u>") filed the *Debtors' Motion for Entry of Interim and Final*

*Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors*

*to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and*

---

[1]    Due to the large number of Debtors in these chapter 11 cases, which cases are being jointly administered from procedural purposes a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

*Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (IV) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 17] (the  "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that attached as Exhibit B to the Motion was a proposed *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* (the "<u>Initial Proposed Order</u>").

**PLEASE TAKE FURTHER NOTICE** that on November 8, 2018, the Debtors filed a revised proposed *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No**.** 40] (the "<u>Revised Proposed Interim Order</u>").

**PLEASE TAKE FURTHER NOTICE** the Debtors hereby file a further revised proposed *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief (the "*<u>Further Revised Proposed Interim Order</u>*")* attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that a redline reflecting the changes from the Initial Proposed Order is attached hereto as **Exhibit B**.

New York, New York
Dated: November 9, 2018

/s/ Jonathan S. Henes, P.C.

Marc Kieselstein, P.C.
Jonathan S. Henes, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Adam C. Paul, P.C. (admitted *pro hac vice*)
W. Benjamin Winger (admitted *pro hac vice* )
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | Case No. 18-13374 (MEW) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105,**
**361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING**
**THE DEBTORS TO OBTAIN SENIOR SECURED PRIMING**
**SUPERPRIORITY POSTPETITION FINANCING, (II) GRANTING**
**LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS,**
**(III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING**
**ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY;**
**(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (this "Court"), *inter alia* requesting, among other things:

(1) authorization for the Borrowers (as defined in DIP Loan Agreements) to obtain postpetition financing pursuant to the DIP Facilities (defined below), and for each of the Debtors

---

[1] A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or DIP Loan Documents (as defined herein), as applicable.

to guarantee unconditionally (the "Guarantors"), on a joint and several basis, and subject to the terms and limitations set forth in the DIP Loan Documents in all respects the Borrowers' obligations in connection with the DIP Facilities, consisting of:

a) a senior secured super-priority multiple delayed draw term loan credit facility (the "DIP Term Loan Facility"), on the terms and conditions to be set forth in the U.S. DIP Agreement (as defined below), in an aggregate principal amount of **$72,000,000** in term loan commitments (the "DIP Term Loan Commitment") which shall be available as term loans (the "DIP Term Loans") to the U.S. Borrower upon entry of the Interim Order, and subject to the Closing Date (as defined in the U.S. DIP Agreement), in an amount not to exceed **$40,000,000** (the "Initial DIP Term Loan") and the maximum amount allowed to be drawn by the U.S. Borrower for such period consistent with the U.S. DIP Credit Agreement.

b) a senior secured super-priority asset-based revolving credit facility (the "U.S. DIP Revolving Credit Facility," and together with the DIP Term Loan Facility, the "U.S. DIP Credit Facilities"), on the terms and conditions to be set forth in a Superpriority Secured Debtor-In-Possession Credit Agreement substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, supplemented, waived, extended or otherwise modified from time to time, the "U.S. DIP Agreement," and together with any other related agreements, documents, security agreements, or pledge agreements, the "U.S. DIP Documents"), by and among Aegean Bunkering (USA) LLC, as U.S. Borrower, the Guarantors, ABN AMRO Capital USA LLC, as Administrative Agent, Collateral Agent, Swing Line Lender and Issuing Bank, and Mercuria US Asset Holdings LLC, as U.S. Lender, in an initial aggregate principal amount (subject to availability), and together with the outstanding amounts under the U.S. Prepetition Credit Facility (as defined in the Motion), of $**160,000,000** in revolving commitments (the "U.S. Revolving Commitments", and the loans outstanding under the U.S. Revolving Commitments from time to time, the "U.S. Revolving Loans"), including a **$50,000,000** million sublimit for the issuance of letters of credit ("U.S. Letters of Credit") and Swing Line Loans (as defined in US DIP Credit Facilities), available from time to time until the maturity date of the U.S. DIP Revolving Credit Facility; and

c) a senior secured super-priority asset-based revolving credit facility (the "Global DIP Revolving Credit Facility," and together with the U.S. DIP Credit Facilities, the "DIP Facilities"), on the terms and conditions to be set forth in an Amendment and Restatement Agreement substantially in the form annexed as **Exhibit B** hereto (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "Global DIP Agreement,"[3] and together with any other related agreements, documents, security agreements, or pledge agreements, the "Global DIP

---

[3] The Global DIP Agreement and the U.S. DIP Agreement are referred to collectively herein as the "DIP Loan Agreements."

Documents"), by and among the Global Borrowers, the Guarantors, non-debtor guarantors party thereto, ABN AMRO Bank, N.V., as Facility Agent, Collateral Management Agent, Security Agent, Issuing Bank and Overdraft Bank, and Mercuria Energy Trading S.A., as Lender, in an initial aggregate principal amount (subject to availability), together with the outstanding amounts under the Global Prepetition Credit Facility (as defined in the Motion and, together with the U.S. Prepetition Credit Facility, the "Prepetition Credit Facilities"), of **$300,000,000** in revolving commitments (the "Global Revolving Commitments" and the loans outstanding under the Global Revolving Commitments from time to time, the "Global Revolving Loans," together with the U.S. Revolving Loans, the "Revolving Loans"), including a **$100,000,000** million sublimit for the issuance of letters of credit ("Global Letters of Credit" and, together with the U.S. Letters of Credit, collectively, the "Letters of Credit"), available from time to time until the maturity date under the Global DIP Revolving Credit Facility; and

d) a Roll-Up (as defined below) of the Prepetition Secured Obligations (as defined below) whereby the Prepetition Secured Obligations shall become DIP Obligations (as defined below) in the amounts and at the intervals set forth herein, and subject to the terms and conditions hereof and as set forth in the DIP Loan Documents (as defined below).

(2)    authorization for Debtors to execute, deliver, and enter into the U.S. DIP Documents and the Global DIP Documents (collectively, the "DIP Loan Documents") and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)    authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to any agents under the DIP Loan Documents (collectively, the "DIP Agents") and the issuing banks, swing line lenders, and any other lenders from time to time thereunder (collectively, the "DIP Lenders" and together with the DIP Agents, the "DIP Secured Parties") under the DIP Facilities pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges and disbursements of the respective DIP Secured Parties (including the reasonable and documented fees and expenses of each of the DIP Secured Parties' attorneys, advisors, accountants and other consultants), any

obligations in respect of indemnity claims, whether contingent or absolute, including, without limitation, any and all obligations in connection with any interest rate, currency swap or other hedging agreement or arrangement (including, without limitation, any such agreement or arrangement designed to, among other things, hedge against fluctuations in commodity prices) in each case constituting (a) all "Obligations" as defined in the U.S. DIP Agreement, (b) all "Outstandings" as defined in the Global DIP Agreement; and (c) all other Debtor and/or Guarantor obligations of any kind under the DIP Loan Documents (collectively, the "DIP Obligations");

(4)     authorization for the Debtors, immediately upon entry of this interim order (this "Interim Order"), to use proceeds of the DIP Facilities (collectively the "DIP Loan Proceeds") as permitted in the DIP Loan Documents and consistent with this Interim Order and the applicable Approved Budget;

(5)     authorization for the Debtors to implement a "roll-up" of the Prepetition ABL Obligations as follows: (a) between entry of the Interim Order and entry of the Final Order, all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; and (b) between entry of the Interim Order and entry of the Final Order, all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay-down outstanding obligations under the Global Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith,

increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount ((a) and (b), the "Roll-Up").

(6)　　the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 507(b) and 503(b)(1) of the Bankruptcy Code, to the DIP Agents, for the benefit of themselves and the other DIP Secured Parties, in respect of all DIP Obligations (as defined below), subject to the Carve Out (as defined below);

(7)　　granting the DIP Secured Parties valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting ABL Cash Collateral (as defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein;

(8)　　providing adequate protection to each of the Prepetition Secured Parties (as defined below) of their security interests in the collateral securing the Prepetition Credit Facilities, as applicable (including, without limitation, ABL Cash Collateral), and equal in amount to, any diminution in the value of such prepetition security interests of such Prepetition Secured Parties calculated in accordance with section 506(a) of the Bankruptcy Code ("Diminution in Value"), whether or not the Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition ABL Collateral (as defined herein), the priming of the prepetition security interests of such Prepetition Secured Parties or the stay of enforcement of any prepetition security interests arising from section 362 of the Bankruptcy Code, or otherwise;

(9)　　providing adequate protection to the secured parties (the "Prepetition Term Parties") under the Prepetition Term Loan Facilities (as defined in the Motion) of their security

interests in Prepetition Term Collateral, including Prepetition Term Cash Collateral, (the "Prepetition Term Liens") and equal in amount to, any Diminution in the Value of such prepetition security interests of such Prepetition Term Parties, subject in all respects to any subsequent orders of this Court including but not limited to that certain *Interim Order (I) Granting Adequate Protection to Aegean Baltic Bank S.A., as Agent, (II) Authorizing Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* and *Interim Order (I) Granting Adequate Protection to National Bank of Greece S.A., (II) Authorizing Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, each filed contemporaneously herewith (in respect of each of the Prepetition Term Parties identified in such interim order, a "Prepetition Term Adequate Protection Order" and collectively with any other order granting adequate protection to a Prepetition Term Party, the "Prepetition Term Adequate Protection Orders");

(10)  authorization for the Debtors to use ABL Cash Collateral and all other Prepetition ABL Collateral in which any of the Prepetition Secured Parties have an interest consistent with this Interim Order and providing adequate protection to the Prepetition Secured Parties to the extent set forth herein, including authorization for the Debtors to apply ABL Cash Collateral to permanently and indefeasibly pay the Prepetition ABL Obligations;

(11)  the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(12)  subject to entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order"), a waiver of the Debtors' ability to surcharge against any DIP

Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(13)     the scheduling of a final hearing on the Motion (the "<u>Final Hearing</u>") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(14)     granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on November 7 and 8, 2018 (the "<u>Interim Hearing</u>"), and upon the record made by the Debtors at the Interim Hearing, including the Motion, the testimony of Andrew D. Hede and Zul Jamal, any exhibits in connection with the foregoing, and the filings and pleadings in the above-captioned Cases (collectively, the "<u>Cases</u>"), the Court having found that the relief requested in the Motion is fair and reasonable and is in the best interests of Debtors, their Estates (defined below), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "<u>Notice</u>") was adequate under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on (a) the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"); (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "<u>30 Largest Unsecured Creditors</u>"); (c) the agents for each of the Debtors' prepetition

secured credit facilities (the "<u>Prepetition Agents</u>");[4] (d) the indenture trustee for each of the Debtors' unsecured notes; (e) the DIP Agents; (f) counsel to the parties referenced in clauses (c) through (e); (g) counsel to the ad hoc group of holders of convertible unsecured notes; (h) counsel to Mercuria US Asset Holdings LLC; (i) counsel to Mercuria Energy Trading S.A.; (j) the United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (n) the attorneys general in the states where the Debtors conduct their business operations; (o) counsel for the Prepetition Term Parties, (p) any other notice parties required under any Prepetition Term Loan Document; (q) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien in the Debtors' assets; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>") and the other parties set forth in the *Affidavit of Service* filed on November 8, 2018 [Docket No. 32]; and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

---

[4] The Prepetition Agents are the U.S. Prepetition Agent and the Global Prepetition Agent.

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.     Petition Date.  On November 6, 2018 (the "Petition Date"), each Debtor filed a voluntary petition (each, a "Petition") under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Cases.

B.     Jurisdiction and Venue.  This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2.

C.     Committee Formation.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "Committee") or any other statutory committee has been appointed in the Cases.

D.     Notice.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and the Local Rules.

E.     Parties' Acknowledgments, Agreements, and Stipulations.  In requesting the DIP Facilities, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facilities and access to the ABL Cash Collateral, and as a condition to providing financing under the DIP Facilities, subject to the rights of the parties set forth in section 4.1, the

Debtors, the Prepetition Obligors (as defined in the Motion),[6] and any other non-Debtor affiliates of the Debtors (the "Non-Debtor Affiliates")[7] receiving the benefits of the DIP Facilities permanently and irrevocably admit, stipulate, acknowledge and agree, as follows:

(i)     U.S. Prepetition Loan Documents.    The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that prior to the Petition Date, the "Secured Parties" (as defined in the U.S. Prepetition Credit Facility, and referred to herein as the "U.S. Prepetition Secured Parties") made loans, advances and/or provided other financial accommodations and/or services to Aegean Bunkering (USA) LLC (the "U.S. Borrower") pursuant to the terms and conditions set forth in (a) the U.S. Prepetition Credit Agreement; and (b) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the agent or agents under the U.S. Prepetition Credit Agreement (the "U.S. Prepetition Agent") or any other Secured Party in connection with the U.S. Prepetition Credit Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the U.S. Prepetition Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "U.S. Prepetition Loan Documents"). Aegean Marine Petroleum Network, Inc. (the "U.S. Guarantor") is jointly and severally liable for the U.S. Borrower's obligations under the U.S. Prepetition Loan Documents.

---

[6]     For the avoidance of doubt, all references to the Prepetition Obligors include all non-debtor affiliates of the Debtors, the Borrowers, and the Guarantors who are obligors under any of the Prepetition Credit Facilities, Prepetition Loan Documents, and the Prepetition ABL Obligations.

[7]     Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, and Aegean Petroleum Uruguay S.A. are non-Debtor affiliates of the Debtors.

(ii)  U.S. Prepetition ABL Obligations.  The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree, that as of the Petition Date, the U.S. Borrower and the U.S. Guarantor were jointly and severally indebted to the U.S. Prepetition Secured Parties under the U.S. Prepetition Loan Documents in respect of Revolving Loans, outstanding Letters of Credit, and Swing Line Loans in an aggregate outstanding principal amount of not less than approximately $131,688,116, plus interest accrued and accruing thereon, together with all costs, fees, expenses and other charges accrued, accruing or chargeable with respect thereto in accordance with the U.S. Prepetition Loan Documents (collectively, the "U.S. Prepetition ABL Obligations").  Subject to Section 4.1 hereof, the U.S. Prepetition ABL Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the U.S. Borrower and the U.S. Guarantor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization, recoupment, or subordination pursuant to the Bankruptcy Code or any other applicable law or any other claim or cause of action of any nature, and the Debtors and Prepetition Obligors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, cause of action, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the U.S. Prepetition ABL Obligations or the Prepetition Liens (as defined below) on the U.S. Prepetition ABL Collateral (as defined below).

(iii)  U.S. Prepetition ABL Collateral.  The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree, that as of the Petition Date, the U.S. Prepetition ABL Obligations were fully secured pursuant to the U.S. Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable, first-priority liens on and security interests in all of the U.S. Borrower's assets constituting "Collateral" (as defined in the

U.S. Prepetition Loan Documents (all such Collateral in existence on the Petition Date, or the identifiable proceeds thereof, the "U.S. Prepetition ABL Collateral"), subject only to the liens and security interests permitted under the U.S. Prepetition Credit Agreement to the extent that such security interests, liens or encumbrances are valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date. The Debtors and the Prepetition Obligors do not possess and will not assert any claim, cause of action, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the U.S. Prepetition Agent's and the U.S. Prepetition Lenders' liens, claims or security interests in the U.S. Prepetition ABL Collateral.

(iv)     Global Prepetition Loan Documents.   The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that prior to the Petition Date, the "Secured Parties" (as defined in the Global Prepetition Credit Facility, and referred to herein as the "Global Prepetition Secured Parties,"[8] and together with the U.S. Prepetition Secured Parties, the "Prepetition Secured Parties") made loans, advances and/or provided other financial accommodations and/or services to Aegean Marine Petroleum S.A., Aegean Petroleum International Inc., Aegean NWE N.V., Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, and Aegean Petroleum Uruguay S.A. (collectively, the "Global Borrowers")[9] pursuant to the terms and conditions set forth in (a) the Global Prepetition Credit Facility; and (b) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Global Prepetition Agent or any other Secured Party in connection with the Global

---

[8]     The Global Prepetition Secured Parties includes the agent or agents under the Global Prepetition Credit Facility (the "Global Prepetition Agent").

[9]     Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, Aegean NWE N.V. and Aegean Petroleum Uruguay S.A. are non-Debtor affiliates of the Debtors.

Prepetition Credit Facility, including, without limitation, all documents defined as "Finance Documents" in the Global Prepetition Credit Facility, and all security agreements, notes, guarantees, mortgages, financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Global Prepetition Credit Facility, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Global Prepetition Loan Documents").[10]    Aegean Marine Petroleum S.A., Aegean Petroleum International Inc., Aegean NWE N.V., Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, Aegean Petroleum Uruguay S.A., and Aegean Marine Petroleum Network Inc. (together, the "Global Guarantors" and each, a "Global Guarantor") are jointly and severally liable for the Global Borrowers' obligations under the Global Prepetition Loan Documents.

(v)    Global Prepetition ABL Obligations. The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that as of the Petition Date, the Global Borrowers and each of the other Global Guarantors were jointly and severally indebted under the Global Prepetition Loan Documents in respect of Global Revolving Loans,[11] outstanding Global Letters of Credit, Overdraft Facilities (each as defined in the Global Prepetition Credit Facility) and all other Credit Instruments (as defined in the Global Prepetition Credit Facility) in an aggregate outstanding principal amount of not less than approximately $249,569,260, plus interest accrued and accruing thereon, together with all costs, fees, expenses and other charges

---

[10]    The U.S. Prepetition Loan Documents and the Global Prepetition Loan Documents are collectively, the "Prepetition Loan Documents").

[11]    For the avoidance of doubt, the Global Revolving Loans shall include that certain over-advance provided to the Debtors on or about October 31, 2018 to fund certain working capital amounts needed to enable the Debtors to prepare for an orderly chapter 11 filing.

accrued, accruing or chargeable with respect thereto in accordance with the Global Prepetition Loan Documents (collectively, the "Global Prepetition ABL Obligations," and together with the U.S. Prepetition ABL Obligations, the "Prepetition Secured Obligations"). Subject to Section 4.1 hereof, the Global Prepetition ABL Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Global Borrowers and the Global Guarantors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization, recoupment, or subordination pursuant to the Bankruptcy Code or any other applicable law or any other claim or cause of action of any nature, and the Debtors and the Prepetition Obligors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, cause of action, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Global Prepetition ABL Obligations or the Prepetition Liens on the Global Prepetition ABL Collateral.

(vi)  _Global Prepetition ABL Collateral._ The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that as of the Petition Date, the Global Prepetition ABL Obligations were fully secured pursuant to the Global Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable, first-priority liens on and security interests in all of the "Transaction Security" (as defined in the Global Prepetition Loan Documents) (all such Transaction Security in existence on the Petition Date, or the identifiable proceeds thereof, the "Global Prepetition ABL Collateral" and collectively with the U.S. Prepetition ABL Collateral, the "Prepetition ABL Collateral"), and subject only to the liens and other security interests specifically permitted under the Global Prepetition Loan Documents to the extent that such security interests, liens or encumbrances are valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date.  The Debtors

do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Global Prepetition Secured Parties' liens, claims or security interests in the Global Prepetition ABL Collateral.

(vii)    <u>Validity of Prepetition Liens and Prepetition Secured Obligations</u>.   The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that:   (a) the Prepetition Secured Obligations constitute legal, valid, enforceable, non-avoidable and binding obligations of certain of the Debtors; (b) no offsets, challenges, objections, defenses, claims, causes of action, or counterclaims of any kind or nature whatsoever to the Prepetition Secured Obligations or Prepetition Liens exist, and no portion of the Prepetition Secured Obligations or Prepetition Liens is subject to any offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature whatsoever including, without limitation, avoidance, disallowance, reduction, surcharge, disgorgement, recharacterization, recoupment, or subordination, whether pursuant to the Bankruptcy Code or applicable non-bankruptcy law or any other claim or cause of action of any nature; (c) the Prepetition Loan Documents are valid and enforceable by the Prepetition Secured Parties against each of the applicable Debtors (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); and (d) the Prepetition Liens were fully perfected as of the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in and to the Prepetition ABL Collateral and are not subject to avoidance, disallowance, reduction, surcharge, disgorgement, recharacterization, recoupment, or subordination, whether pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(viii) <u>Sale and Credit Bidding</u>. The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that any of the DIP Lenders, DIP Agents, or Prepetition Secured Parties, as applicable, may credit bid the entirety of (or any portion of) the Prepetition Secured Obligations, or the DIP Obligations.

(ix) <u>Release</u>. Subject to Section 4.1 and the challenge rights granted thereunder, each of the Debtors, their Estates, the Borrowers, the Guarantors, and the Prepetition Obligors hereby forever, unconditionally, permanently, and irrevocably release, discharge and acquit each of the DIP Secured Parties, each of the Prepetition Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "<u>Released Parties</u>") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with or relating to the Prepetition Secured Obligations, the Prepetition Loan Documents, the DIP Facilities or the DIP Loan Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause

of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security and perfection of any of the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon or released to any and all acts, omissions, conduct undertaken or events occurring prior to entry of this Interim Order.

(x)     <u>ABL Cash Collateral</u>.  The Debtors admit, stipulate, acknowledge and agree that all of the cash of the Debtors who were obligors under the Prepetition Credit Facilities (the "<u>Debtor ABL Obligors</u>"), wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtor ABL Obligors, whether as Prepetition ABL Collateral or which represent income, proceeds, products, rents, or profits of other Prepetition ABL Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>ABL Cash Collateral</u>").

(xi)     <u>Term Loan Cash Collateral</u>.  The Debtors admit, stipulate, acknowledge and agree that all of the cash of the Debtors who were borrowers under the Prepetition Term Loan Facilities, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors who were borrowers under the Prepetition Term Loan Facilities, whether as Prepetition Term Collateral or which represent income, proceeds, products, rents, or profits of other Prepetition Term Collateral, constitutes "cash collateral" of the Prepetition Term Parties

within the meaning of section 363(a) of the Bankruptcy Code (the "Term Loan Cash Collateral").

        F.        <u>Findings Regarding the Postpetition Financing</u>.

        (i)    <u>Postpetition Financing</u>.  The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order, the DIP Loan Agreements and the other DIP Loan Documents, respectively (the "<u>DIP Loans</u>").

        (ii)    <u>Need for Postpetition Financing</u>.  The Debtors do not have sufficient liquidity, including cash collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties as set forth in this Interim Order, the DIP Loan Agreements, and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under

section 541 of the Bankruptcy Code, the "Estates") to maximize the recovery to all creditors of the Estates.

(iii)    [Reserved]

(iv)    Stalking Horse Bid.  Certain of the Debtors intend to enter into that certain Asset Purchase Agreement (as amended, restated, modified, or supplemented, from time to time, the "Stalking Horse Agreement") to purchase all or substantially all of the DIP Collateral (as defined below) on the terms and conditions set forth therein (collectively, the "Stalking Horse Bid").

(v)    No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtors assert in the Motion and in the Jamal Declaration, and demonstrated at the Interim Hearing, that they have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the DIP Secured Parties pursuant to the DIP Loan Documents.  In light of the foregoing, and considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best financing available to them at this time, and are in the best interests of all of their stakeholders.  After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best financing available to them at this time, and are in the best interests of all of their stakeholders.

(vi) <u>Budget</u>. The Debtors have prepared and delivered to the DIP Secured Parties initial budgets (the "<u>Initial Budgets</u>"), copies of which are attached hereto as **<u>Exhibits C and D</u>**. The Initial Budgets reflect the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date (the Initial Budgets and each subsequent approved Budget then in effect, an "<u>Approved Budget</u>"). The Debtors believe that the Initial Budgets are reasonable under the facts and circumstances. The DIP Secured Parties are relying upon the Debtors' agreement to comply with the Approved Budget, the other DIP Loan Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for herein. For the avoidance of doubt, all references to the Initial Budgets or the Approved Budget shall be subject in all respects to the Permitted Variance (as defined in the DIP Loan Documents).

(vii) <u>Certain Conditions to DIP Facilities</u>. The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things, (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of their obligations thereunder, and to confer upon the DIP Secured Parties all rights, powers and remedies thereunder in each case as modified by this Interim Order; (b) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition ABL Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code, subject to the terms and conditions of the Prepetition Term Adequate Protection Orders; (c) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents: (i) superpriority perfected security interests in and liens upon all of the Prepetition ABL Collateral and any unencumbered assets other than Excluded Assets (as defined in the

applicable DIP Loan Agreement), (ii) perfected security interests in and junior liens upon the remaining Debtors' assets, including, without limitation, the Prepetition Term Collateral (collectively hereinafter referred to as the "<u>DIP Collateral</u>," and for avoidance of doubt, the DIP Collateral shall include (w) all advances under the DIP Facilities, (x) the proceeds of the Litigation Claims (as defined in the U.S. DIP Agreement), (y) subject to entry of the Final Order (and only effective upon the entry of the Final Order), the proceeds of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "<u>Avoidance Actions</u>"), (z) 100% of the Equity Interests (as defined in the DIP Loan Agreements) of any Borrower, any Debtor, or any Guarantor owned (directly or indirectly), beneficially or of record, by the Borrower, any Debtor, or any Guarantor other than Aegean Oil Terminal Corp.; and (aa) 100% of the Equity Interests that any Borrower, any Debtor, or any Guarantor may own, beneficially or of record, directly or indirectly, other than Aegean Oil Terminal Corp. (i) in any subsidiary thereof (whether or not such entity is wholly owned or immaterial) and (ii) in any corporation, partnership (limited or general), joint venture, limited liability company, business trust, association or other legally recognized entity (a "Person" as defined in the DIP Loan Agreements), including joint venture interests and majority and minority interests in any Person owned by any Borrower, any Debtor and any Guarantor.

    (viii) <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. Any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued or made, as the case may be, in "good faith" within the meaning of section

364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facilities, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(ix)     Roll-Up of Prepetition Secured Obligations.  Upon entry of this Interim Order, without further action by the Debtors or any other party, (a) the letters of credit issued under the U.S. Prepetition Credit Facility and the Global Prepetition Credit Facility (collectively, the "Prepetition Letters of Credit") shall become Letters of Credit under the DIP Obligations; (b) all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; and (c) all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay-down outstanding obligations under the Global Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount.  The replacement and refinancing of the Prepetition Secured Obligations shall be authorized as compensation for, and in consideration for, and solely on account of, the agreement of the DIP Lenders to fund the DIP Loans and to provide other consideration to the Debtors and the other borrowers under the DIP Facilities. The

Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Secured Parties would not be willing to provide the DIP Facilities or extend credit to the Debtors thereunder without the inclusion of the Roll-Up in the DIP Obligations. Moreover, the replacement and refinancing (pursuant to the Roll-Up) will (a) create greater availability under the DIP Facilities, (b) benefit the Debtors and their estates as a result of the DIP Lenders' agreement to make certain revisions to the borrowing base and waiver certain defaults, and (c) will enable the Debtors to obtain urgently needed financing to administer these cases.

(x)     [Reserved]

(xi)     Debtors Will Not Challenge Credit Bid Rights.  No Debtor or Debtor's affiliate shall object to any DIP Lender's, DIP Agent's, Prepetition Secured Parties' right to credit bid up to the full amount of its DIP Obligations and/or Prepetition Secured Obligations, in each case including, without limitation, any accrued interest and expenses, in any sale, as applicable, whether such sale is effectuated through section 363 of the Bankruptcy Code, in a chapter 11 or chapter 7 proceeding, under section 1129 of the Bankruptcy Code, by a chapter 7 or chapter 11 trustee, or otherwise.

(xii)     Sections 506(c) and 552(b).  Subject to entry of a Final Order, and only effective upon entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facilities, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facilities to the extent set forth herein, (b) the DIP Agents' and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, and (c) the consensual use of ABL Cash Collateral consistent with the Approved Budget and the terms of

this Interim Order, and subject to the Final Order, and only effective upon entry of the Final Order, each of the DIP Secured Parties and the Prepetition Secured Parties are entitled to receive, (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code subject to the terms hereof.

(xiii)    <u>Good Cause</u>.   Good cause has been shown for the entry of this Interim Order. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.   The terms of the DIP Facilities (including the Roll-Up) are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

(xiv)    <u>Adequate Protection</u>.   The Prepetition Secured Parties are entitled pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition ABL Collateral (including ABL Cash Collateral), to the extent set forth in this Interim Order.

(xv)    <u>Immediate Entry</u>.   Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).   No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or

any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.   The Motion is granted to the extent provided in this Interim Order.  Any objections to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

1.2    <u>Authorization of DIP Financing</u>.   The Debtors are hereby authorized and empowered to immediately borrow, incur and guarantee (as applicable), (a) pursuant to the terms and conditions of the U.S. DIP Agreement, (i) loans under the U.S. Revolving Credit Facility, up to an initial aggregate principal amount, together with the outstanding amounts under the U.S. Prepetition Credit Facility, of $160,000,000 in U.S. Revolving Commitments, of which up to $50,000,000 shall constitute a sublimit for the issuance of U.S. Letters of Credit and Swing Line Loans; (ii) DIP Term Loans, pursuant to the terms and conditions of the U.S. DIP Agreement, in an aggregate principal amount not to exceed $40,000,000 prior to the entry of the Final Order to the U.S. Borrower, and the loans advanced under the DIP Loan Documents from time to time to the U.S. Borrower, with the right of the U.S. Borrower to make available, through approved inter-company loans, transfers and investments, such funds to the Global Borrowers, consistent with the applicable Approved Budget and (b) loans under the Global DIP Revolving Credit Facility, pursuant to the Global DIP Agreement, a committed senior secured super-priority asset-based credit facility will be made available to the Global Borrowers in an initial aggregate

principal amount, together with the outstanding amounts under the Global Prepetition Credit Facility, of $300,000,000 in Global Revolving Commitments, of which up to $100,000,000 shall constitute a sublimit for the issuance of the Global Letters of Credit.

1.3     The DIP Facilities may be borrowed by Debtors during the Interim Financing Period (as defined below) in accordance with the DIP Loan Documents, plus all interest, costs, and fees, accrued or accruing under the DIP Loan Agreements and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents, in each case during the period commencing on the date of this Interim Order through and including the entry of the Final Order (the "Interim Financing Period").  Subject to the terms and conditions contained in this Interim Order and the DIP Loan Documents, the Debtors shall use the proceeds of the DIP Facilities pursuant to the terms and conditions consistent with the Approved Budget, DIP Loan Documents and this Interim Order.

1.4     Financing Documents

(a)     Authorization.  The Debtors are hereby authorized and directed to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents.  Subject to Section 4.1 hereof, no obligation, payment, transfer or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or

any other challenge under the Bankruptcy Code or any applicable law, rule or regulation by any person or entity.

(b)     Approval; Evidence of Borrowing Arrangements.    All terms, conditions and covenants set forth in the DIP Loan Documents (including, without limitation, each of the DIP Loan Agreements) are approved.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Agents and the DIP Lenders, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of each DIP Loan Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of each DIP Agent's and DIP Lender's closing, arranger and administrative fees, consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the DIP Loan Documents.    Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding and enforceable against the Debtors, their Estates and any successors thereto, including, without limitation, any trustee appointed in any of these Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.

(c)     Payment of DIP Premiums and Other Expenses.  Any and all fees and expenses payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses, the "DIP Fees") shall be approved and the Debtors shall be authorized and

directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agents and the DIP Lenders incurred at any time, as provided by the DIP Loan Documents and this Interim Order in accordance with Section 6.14 hereof; *provided, however*, that payment of any commitment fee shall be limited to the fee payable on such borrowings or use of ABL Cash Collateral. The DIP Fees shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(d)     Non-Material Amendments to DIP Loan Documents. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the applicable DIP Secured Parties may make ministerial amendments, modifications, or supplements to any DIP Loan Document, and the DIP Agents and the DIP Lenders may waive any provisions in the DIP Loan Documents, without further approval of the Bankruptcy Court; *provided* that Debtors shall file a notice on the Court's docket of any such ministerial amendment, modification, or supplement, or waiver, not more than three (3) Business Days after the effective date thereof. Any amendments, modifications or supplements to any DIP Loan Documents, other than as set forth in the preceding sentence (collectively, "Material DIP Amendments"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Agents; (ii) counsel to the DIP Lenders, (iii) counsel for each of the Prepetition Term Parties; (iv) counsel to the Committee, or in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 Largest Unsecured Creditors, and (v) the U.S. Trustee. If no party in interest files an objection to the Material DIP Amendment with the Court within three (3) Business Days from the date the notice of the Material DIP Amendment is filed with the Court in accordance with this Section 1.4, the Debtors and the applicable DIP Secured Parties are authorized and empowered to implement, in accordance with

the terms of the applicable DIP Loan Documents, such Material DIP Amendment, without further notice, hearing or approval of this Court. Any Material DIP Amendment subject to a timely and unresolved objection must be approved by the Court to be effective.

1.5    <u>Payments and Application of Payments</u>.

(a)    All proceeds of the Prepetition ABL Collateral received by any Prepetition Secured Parties, or by any of the Debtors, and any other amounts or payments received by the DIP Agents, any DIP Lender or any of the Debtors in respect of the DIP Obligations, shall be applied or deemed to be applied on a dollar-for dollar basis by the DIP Agents first to repayment of the remaining Prepetition ABL Obligations, then to the repayment in full of the DIP Obligations until indefeasibly paid in full in accordance with the DIP Loan Agreements, the other DIP Loan Documents, and this Interim Order; *provided* that any repayment of the Prepetition ABL Obligations shall be subject to the terms of this remainder of this Interim Order and Section 4.1 hereof.

(b)    Upon entry of this Interim Order, without further action by the Debtors or any other party, (i) the Prepetition Letters of Credit shall become Letters of Credit under the DIP Obligations; (ii) all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; (iii) all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay-down outstanding obligations under the Global Prepetition Credit Facility on a

dollar-for-dollar basis and, contemporaneously therewith, increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; provided, however, that this section shall be subject to section 4.1 of this Interim Order and Local Rule 4001-2(g)(5).

1.6     _Continuation of Prepetition Procedures_.  Except to the extent expressly set forth in the Prepetition Loan Documents and DIP Loan Documents, all prepetition practices and procedures for the payment and collection of proceeds of the Prepetition ABL Collateral, sleeving, the turnover of cash, the delivery of property to the U.S. Prepetition Agents and the U.S. Prepetition Lenders, including the Deposit Account Control Agreements (as such term is defined in the U.S. Prepetition Credit Agreement) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption.

1.7     _Indemnification_.   The Debtors are authorized to indemnify and hold harmless the DIP Agents, each DIP Lender and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (each, an "_Indemnified Party_"), in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

Section 2.     _Postpetition Lien; Superpriority Administrative Claim Status._

2.1     _Postpetition Lien._

(a)     _Postpetition DIP Lien Granting_.   To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all

DIP Obligations of Debtors to the DIP Secured Parties of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agents, for the benefit of themselves and the DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "DIP Liens", and together with the Prepetition Liens on the DIP Collateral, the "DIP Liens") in and upon all DIP Collateral, subject to the priority set forth in Section 2.1(b), below.

(b)      DIP Lien Priority in Collateral.  The DIP Liens securing all DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens on the (i) DIP Collateral shall be subject to the Carve Out and Permitted Liens (as defined in the applicable DIP Loan Agreement) and (ii) Prepetition Term Collateral shall be subject to the Carve Out, Permitted Liens, Prepetition Term Liens, and any adequate protection liens or claims granted pursuant to the Prepetition Term Adequate Protection Orders (the "Prepetition Term Adequate Protection Liens and Claims"); provided, for the avoidance of doubt, the Prepetition Term Adequate Protection Liens and Claims shall be limited to the (i) prepetition collateral granted to any Prepetition Term Party under the respective Prepetition Term Loan Documents (as defined in the Motion) and (ii) the borrowers under the applicable Prepetition Term Loan Facility under which such Prepetition Term Party is a party and any other Debtor against whom such Prepetition Term Party has a Prepetition Term Lien.

(c)  <u>Postpetition Lien Perfection.</u>  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Deposit Account Control Agreement or other depository account consisting of DIP Collateral (a "<u>Perfection Act</u>").  Notwithstanding the foregoing, if either DIP Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then such DIP Agent is authorized to perform such act, and the Debtors and Guarantors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  The DIP Agents may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should either DIP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the DIP Agents' and the DIP Lenders' liens and security interests granted and created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the United States Bankruptcy Court; *provided, however,* that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Order, to the extent that any DIP Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Order without further action by the applicable DIP Agent.

(e)     The DIP Liens and the DIP Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of these Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee or any other estate representative appointed or elected in these Cases or any Successor Cases and/or upon the dismissal of any of these Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code; *provided, however,* that notwithstanding the foregoing, the DIP Liens and DIP Superpriority Claims shall be subject to the Carve Out, the Prepetition Term

Liens, and Prepetition Term Adequate Protection Liens and Claims; *provided further* that the DIP Lenders intend to require that the Final Order shall provide, and the Debtors have agreed as a condition to obtaining financing under the DIP Facilities, to seek Court approval at the Final Hearing that the DIP Liens and DIP Superpriority Claims shall not be subject to section 506(c) of the Bankruptcy Code; *provided further, for the avoidance of doubt,* that section 4.1 hereof shall apply to this section 2.1(e).

        2.2     <u>Superpriority Administrative Expenses.</u>

        (a)    <u>DIP Loans</u>.  For all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents or otherwise, the DIP Agents, for the benefit of themselves and the DIP Lenders, are granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (other than the Carve Out, Prepetition Term Liens, and Prepetition Term Adequate Protection Liens and Claims), whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113 or 1114 of the Bankruptcy Code (other than the Carve Out and Prepetition Term Adequate Protection Liens and Claims), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (other than the Carve Out, the Prepetition Term Liens and the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code) (the "<u>DIP Superpriority Claims</u>"); *provided, however,* that notwithstanding the foregoing, the DIP Superpriority Claims

shall be subject to the Carve Out, the Prepetition Term Liens, and the Prepetition Term Adequate Protection Liens and Claims.

      2.3    <u>Carve Out</u>.

      (a)    <u>Carve Out</u>.  The "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first Business Day following delivery by either DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Noti*ce; provided, however,* that the Carve Out shall not include amounts related to any completion fee, success fee, restructuring fee, or similar such fee or compensation in respect of any Professional Persons; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first Business Day following delivery by either DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>").  For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice

delivered by email (or other electronic means) by either DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of an obligation under the applicable DIP Facility stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for both revolving and any outstanding delayed draw term loans under the DIP Facilities (on a pro rata basis based on the then outstanding U.S. Revolving Commitments, DIP Term Loan Commitment, or Global Revolving Commitments (together, the "<u>Commitments</u>")), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for both revolving and any outstanding delayed draw term loans under the DIP Facilities (on a pro rata basis based on the then outstanding Commitments), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date

and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Facilities to the contrary, including with respect to the existence of a Default (as defined in the applicable DIP Facility) or Event of Default (as defined in the applicable DIP Facility), the failure of the Debtors to satisfy any or all of the conditions precedent for any of the DIP Loans under any of the DIP Facilities, any termination of the Commitments following an Event of Default, or the occurrence of the Maturity Date (as defined in the applicable DIP Facility), each DIP Lender with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the applicable DIP Facility. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agents for the benefit of the DIP Lenders, unless all DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties (as defined in the Motion), in accordance with their rights and priorities as of the Petition Date. All

funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agents for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Loan Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this Section 2.3, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this Section 2.3, prior to making any payments to the DIP Agents or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agents and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Loan Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Loan Agreements) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget,

Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facilities, or in any Prepetition Credit Facilities, the Carve Out shall be senior to all liens and claims securing all of the DIP Facilities, the Prepetition Replacement Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations. For the avoidance of doubt, the Carve Out shall not be senior to the Prepetition Term Liens or the Prepetition Term Adequate Protection Liens and Claims.

(c)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    No Direct Obligation To Pay Allowed Professional Fees. None of the DIP Agent, DIP Lenders, the Prepetition Secured Parties, or the Prepetition Term Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or the Prepetition Term Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

2.4    Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, none of the (i) Carve Out, (ii) DIP Facilities, (iii) DIP Collateral, Prepetition ABL Collateral, DIP Loans, ABL Cash Collateral, Revolving Loans, Letters of Credit, or (iv) any other credit or financial accommodations provided under or in connection with any of the DIP Loan Documents, nor the proceeds of any of the foregoing may be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional Person, directly or indirectly, or by any of the Debtors, the Committee, if any, or any trustee or other estate representative appointed in these Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any of the following unless, with respect to (ii)-(iv),  agreed to in writing by the DIP Lenders:

(a)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the (A) Prepetition Secured Obligations or Prepetition Secured Parties' liens on and security interests in the Prepetition ABL Collateral, and (B) the

40

DIP Obligations or any DIP Agent's or DIP Lender's liens on and security interests in the DIP Collateral; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, (A) the Prepetition Secured Obligations or Prepetition Secured Parties' liens on and security interests in the Prepetition ABL Collateral, and (B) the DIP Obligations or any DIP Agent's or DIP Lender's liens on and security interests in the DIP Collateral; or (iii) preventing, hindering or delaying either DIP Agent's or DIP Lenders' enforcement of any lien, claim, right or security interest or realization upon any DIP Collateral in accordance with the terms and conditions of either DIP Loan Agreement or any DIP Loan Documents, respectively, and this Interim Order;

(b)  (i) to use or seek to use ABL Cash Collateral; (ii) except as permitted by the DIP Loan Documents, to sell or otherwise dispose of the DIP Collateral (or any portion thereof) other than in accordance with the terms of this Interim Order; (iii) except to the extent permitted by the DIP Loan Documents, to use or seek to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents and the applicable Required DIP Lenders (as defined in the applicable DIP Loan Document); (iv) except to the extent expressly permitted by the DIP Loan Documents, to seek authorization to incur Indebtedness or Financial Indebtedness (as defined in the applicable DIP Loan Agreements) or to incur liens or security interests; (v) to object to or challenge in any way the rights granted or provided to the DIP Secured Parties under the terms of this Interim Order or the Bankruptcy Code, the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including ABL Cash Collateral or Prepetition ABL Collateral or any other claims or liens held by or on behalf of any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties, respectively, (vi) to prosecute or support any plan of liquidation or reorganization that crams down or reinstates the Prepetition Secured Obligations, (vii) to investigate (including by way of

examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against any of the Released Parties with respect to any transaction, occurrence, omission, action or other matter arising under, in connection with or related to this Interim Order, the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents or the transactions contemplated therein or thereby, including, without limitation, (A) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any challenge to, claim, or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the DIP Loan Documents, the Prepetition Loan Documents  or the Prepetition Secured Obligations, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, avoid, marshal, limit, restrict, subordinate, disallow, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Collateral, the Prepetition ABL Collateral, the Prepetition Secured Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either the DIP Agents or the DIP Lenders hereunder or under any of the DIP Loan Documents, the Prepetition Secured Parties under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's or the DIP Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and this Order and/or the Final Order (as applicable) (provided, however, and

subject to entry of the Final Order, that an amount no more than, $50,000 in the aggregate, to be incurred solely by the Committee (the "Investigation Budget Amount") of the DIP Collateral or proceeds from the borrowings under the DIP Facilities or any other amounts, may be used for allowed fees and expenses in investigating (but not objecting to, challenging, litigating (including by way of discovery), opposing, or seeking to subordinate or recharacterize) the validity, enforceability, perfection, priority or extent of the Prepetition Liens, the Prepetition Loan Documents, or the Prepetition Secured Obligations, within the applicable challenge period as set forth in Section 4.1.

2.5 Use of ABL Cash Collateral; Adequate Protection.

(a) Authorization to Use ABL Cash Collateral.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and consistent with the Approved Budget, the Debtors shall be and are hereby authorized to use the ABL Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Interim Order and terminating upon the occurrence of a DIP Termination Event.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of ABL Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the DIP Loan Documents and compliance with the Approved Budget.  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any ABL Cash Collateral shall not be used as a basis to challenge any of the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of any of the Prepetition Liens.

(b)    <u>Prepetition Replacement Liens</u>.  As adequate protection for the Diminution in Value of their interests in the Prepetition ABL Collateral (including ABL Cash Collateral) and the subordination to the Carve Out, the Prepetition Secured Parties for the benefit of themselves and the Prepetition Lenders, are hereby granted pursuant to sections 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all DIP Collateral other than the Prepetition Term Collateral (the "<u>Prepetition Replacement Lien</u>").  The Prepetition Replacement Lien shall be junior and subordinate only to (i) the Carve Out, (ii) the Permitted Liens (as defined in the DIP Loan Agreements) (iii) Prepetition Secured Parties and Prepetition Lenders' liens on the DIP Collateral to secure the Prepetition ABL Obligations, and (iv) the DIP Agents' and DIP Lenders' DIP Lien on the DIP Collateral.

(c)    <u>Prepetition 507(b) Priority Claims</u>.  As additional adequate protection for the Diminution in Value, the Prepetition Secured Parties for the benefit of themselves and the Prepetition Lenders, are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of these Cases and any successor bankruptcy cases (the "<u>Prepetition Adequate Protection Superpriority Claim</u>").  The Prepetition Adequate Protection Superpriority Claim shall be junior only to (i) the Carve Out, and (ii) the DIP Superpriority Claim, and (iii) the Prepetition Term Adequate Protection Liens and Claims, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)     Fees and Expenses.  Subject to entry of the Final Order (and only effective upon the entry of the Final Order), the Prepetition Secured Parties for themselves and for the benefit of the applicable Prepetition Lenders, shall receive from the Debtors current cash payments of all reasonable and documented out-of-pocket fees and expenses (whether incurred prepetition or post-petition) of Allen & Overy LLP; Willkie Farr & Gallaher LLP; Milbank, Tweed, Hadley & McCloy LLP; Norton Rose Fulbright LLP and such other local counsels and advisors as may be required thereby (the "Creditor's Counsel"); provided, that any invoices submitted to, and payments made by, the Debtors under this Section 2.5(d) shall be subject to the procedures set forth in Section 5.14 of this Interim Order; provided further that notwithstanding anything else in this Interim Order, no professional fees or expenses shall be allowed upon entry of this Interim Order.

(e)     Adequate Protection Payments. The Prepetition Secured Parties for themselves and for the benefit of the applicable Prepetition Lenders, shall receive from the Debtors periodic adequate protection payments (the "Adequate Protection Payments") in an amount resulting from applying a per annum rate equal to the non-default interest rate under the applicable Prepetition Credit Facility to the aggregate outstanding amount of Prepetition Secured Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date (and not, for the avoidance of doubt, at any different rate set forth in any of the applicable Prepetition Credit Facilities); provided, however, that any Adequate Protection Payment shall be without prejudice, and with a full reservation of rights, as to whether such payment should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as principal payments under the applicable Prepetition Credit Facilities (whether as to principal, interest or otherwise).  The Adequate Protection Payments will be calculated on a monthly basis, and be

due and payable on the first business day of each month occurring after the first full month following the Petition Date.

(f)    Adequate Protection Reservation.    The receipt by the Prepetition Secured Parties of the adequate protection provided pursuant to paragraph 2.5 of this Interim Order shall not be deemed an admission that the interests of the Prepetition Secured Parties are indeed adequately protected.    Further, nothing contained in this Interim Order shall prejudice or limit the rights of the Prepetition Secured Parties, subject to the Prepetition Intercreditor Agreements, to seek additional relief with respect to the use of ABL Cash Collateral or for additional adequate protection.

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default.    The occurrence of (a) any "Event of Default" as that term is defined in each of the DIP Loan Agreements; (b) any failure to meet or satisfy any Milestone in accordance with the applicable DIP Loan Agreement; (c) the Maturity Date under any DIP Loan Agreement; and/or (d) any violation, breach or default by any Debtor with respect to any of its obligations under this Interim Order, shall constitute a "DIP Termination Event" hereunder unless waived in writing by the applicable DIP Secured Parties and in accordance with the applicable DIP Loan Documents.

3.2    Rights and Remedies upon a DIP Termination Event.

(a)    Subject to the terms and provisions of the Prepetition Term Adequate Protection Orders, upon the occurrence of and during the continuance of a DIP Termination Event, the DIP Agents shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or any DIP Loan Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under their respective DIP Loan Documents to be immediately due and payable; (ii) terminate, reduce or restrict any commitment

to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any Letters of Credit); (iii) terminate the DIP Facilities and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) terminate and/or revoke the Debtors' right, if any, under this Interim Order and the other DIP Loan Documents to use any ABL Cash Collateral and all authority to use ABL Cash Collateral shall cease, subject to section 3.2(b); (v) invoke the right to charge interest at the default rate under the DIP Loan Documents; (vi) freeze monies or balances in the Debtors' accounts constituting Collateral; (vii) immediately setoff any and all amounts in accounts maintained by the Debtors with the applicable DIP Agents or the DIP Lenders against the DIP Obligations; (viii) otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Lenders, including, without limitation, disposition of the DIP Collateral for application towards the DIP Obligations, subject to section 3.2(b); and (A) take any other actions or exercise any other rights or remedies permitted under this Order, the DIP Loan Documents or applicable law; *provided, however*, that subsections 3(a)(vi)-(viii) shall not apply in the case of an "Event of Default" relating solely to the Bidding Procedures Order, the Sale Order, or the Sale (each as defined in the DIP Loan Agreements) without a further order of the Court; provided, that upon occurrence of such an event, the DIP Lenders shall no longer be required to fund pursuant to this Interim Order or the other DIP Loan Documents; provided further, however, that prior to the exercise of any right set forth in this paragraph, the applicable DIP Agent shall be required to provide three (3) Business Days' written notice (or such other notice period as may be ordered by the Court) to counsel to the Debtors, counsel to the Committee and the U.S. Trustee of its intent to exercise its rights and remedies (the "Enforcement Notice Period") other

than with respect to funding of the Carve Out. The DIP Secured Parties shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of a DIP Termination Event, or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute a DIP Termination Event. For the avoidance of doubt, notwithstanding the forgoing, the Debtors may use ABL Cash Collateral for (i) the Carve Out Reserves, as set forth in Section 2.3; and (ii) subject to the Approved Budget, amounts that the Debtors have determined in good faith are, in the ordinary course, critical to the preservation of the Debtors and their Estates and have approved in advance in writing by the applicable Required DIP Lenders.

(b)      Unless during such Enforcement Notice Period, the Debtors, the U.S. Trustee, the Committee, or any other party-in-interest files a motion seeking enforcement of the stay or seeking a determination that a DIP Termination Event has not occurred, the DIP Agents and the DIP Lenders shall be deemed to have received relief from the automatic stay, and subject in each case to the terms and conditions of the Prepetition Term Adequate Protection Orders, may (unless stayed) foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtor ABL Obligors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by the DIP Loan Documents in accordance with applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise. During the Enforcement Notice Period, the Debtors may use ABL Cash Collateral to pay, subject to the Approved Budget, only the following amounts

and expenses: (i) the Carve Out Reserves, as set forth in section 2.3; and (ii) subject to the Approved Budget, amounts that the Debtors have determined in good faith are, in the ordinary course, critical to the preservation of the Debtors and their Estates and have approved in advance in writing by the applicable Required DIP Lenders. The Debtors shall reasonably cooperate with the DIP Agents and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise, and the Debtors shall waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agents and the DIP Lenders set forth in this Interim Order and in the DIP Loan Documents, other than to dispute whether a DIP Termination Event has in fact occurred; *provided, however,* that none of the DIP Secured Parties shall object to a request by the Debtors for an expedited hearing before the Court to contest whether a DIP Termination Event has in fact occurred.

3.3     Modification of Automatic Stay.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to (i) permit the DIP Agents to perform any act authorized or permitted under or by virtue of this Interim Order, the DIP Loan Agreements, the DIP Security Agreements, or the other DIP Loan Documents, as applicable, including, without limitation, (A) to implement the postpetition financing arrangements authorized by this Interim Order, (B) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (C) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition ABL Obligations and DIP Obligations (or any portion thereof), including, without limitation, all

interests, fees, costs and expenses permitted under any of the DIP Loan Documents and apply such payments to the Prepetition ABL Obligations, and (D) immediately following the expiration of the Enforcement Notice Period (as referred to above), unless stayed, to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents or applicable law; *provided* that the authorization set forth in this paragraph 3.3(a) shall be subject in each case to the terms and conditions of the Prepetition Term Adequate Protection Orders and (ii) to permit the Stalking Horse Bidder to terminate the Stalking Horse Agreement in accordance with its terms and to deliver any notice or election contemplated thereunder.

Section 4.      Representations; Covenants; and Waivers.

       4.1      Reservation of Third Party Challenge Rights.

          (a)      Objections to Prepetition ABL Obligations.      Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, a "Prepetition Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind regarding: (i) the existence, validity or amount of the Prepetition ABL Obligations, as of the Petition Date, (including as to the value of a secured claim of the Prepetition Agent and Prepetition Lenders solely with respect to Prepetition ABL Obligations, pursuant to section 506(a) of the Bankruptcy Code) or (ii) the extent, legality, validity, perfection or enforceability of the Prepetition Secured Parties and Prepetition Lenders' respective prepetition liens and security interests in the Prepetition ABL Collateral solely with respect to Prepetition ABL Obligations, shall be properly filed with the Court (x) by the Committee, if a Committee is appointed and if the Court grants the Committee the requisite standing, within sixty (60) calendar days from the date of entry of the Final Order (the "Committee Challenge Period"), or (y) if no Committee is appointed, by any party in

interest with requisite standing within seventy-five (75) calendar days from the date of entry of the Final Order (such period, together with the Committee Challenge Period, the "Challenge Periods" and each, a "Challenge Period"); provided, however, that nothing herein shall permit any party to challenge the extent or validity of the DIP Obligations or any liens that secure such DIP Obligations or provide standing to any such party. If any such Prepetition Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Prepetition Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Prepetition ABL Obligations or the Prepetition Secured Parties or the Prepetition Lenders' liens on the Prepetition ABL Collateral. If no Prepetition Objection is timely and properly filed, or if a Prepetition Objection is timely and properly filed but denied, (i) the Prepetition ABL Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Secured Parties and the Prepetition Lenders' prepetition liens on and security interest in the Prepetition ABL Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Prepetition Secured Parties and the Prepetition Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and the Prepetition ABL Obligations, and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time. The stipulations set forth in Section E of this Interim Order shall be binding upon each party in

interest, including the Committee (if appointed) unless the any party in interest with requisite standing, or the Committee (which shall be deemed to have standing) (i) timely files a Prepetition Objection pursuant to Section 4.1(a)(x) or 4.1(a)(y) above, as applicable, and (ii) such Prepetition Objection is sustained by a final and non-appealable order. Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Prepetition Secured Parties or any Prepetition Lenders in connection with all postpetition Revolving Loans and Letters of Credit, and any other postpetition financial and credit accommodations provided by Prepetition Secured Parties to Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Prepetition Loan Documents. Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Agents or DIP Lenders in connection with all postpetition financial and credit accommodations provided by the DIP Agents or DIP Lenders in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the DIP Loan Documents.

(b)     [Reserved.]

(c)     If the DIP Facilities are not approved on a final basis due to the existence and approval of competing or alternative debtor-in-possession financing (a "Competing DIP Facility"), the Debtors, Guarantors, and Prepetition Obligors shall pay in cash within 15 days all amounts, obligations, and liabilities owing or payable to any Prepetition Secured Parties Prepetition Lenders, DIP Agents, or DIP Lenders, including any counsel or professionals retained by such Prepetition Secured Parties, Prepetition Lenders, DIP Agents, or DIP Lenders

under the Prepetition Loan Documents or DIP Loan Documents including, without limitation, (i) any and all DIP Obligations and (ii) any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges and disbursements of the respective Prepetition Secured Parties (including the reasonable and documented fees and expenses of each of the Prepetition Secured Parties' attorneys, advisors, accountants and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case constituting all "Obligations" as defined in the Prepetition Loan Documents.

(d)      For the avoidance of doubt, nothing in this Interim Order shall be deemed to preclude any party with standing from challenging the value of (i) liens on the Debtors' assets, (ii) the assets underlying such liens, or (iii) any other assets of the Debtors (including but not limited to any asserted total enterprise value).

4.2      Debtors' Waivers.  Prior to the payment in full of all Prepetition ABL Obligations and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (a) to use ABL Cash Collateral of DIP Agents, the DIP Lenders, or the Prepetition Secured Parties under section 363 of the Bankruptcy Code; (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations, other than as provided in this Interim Order or as may be otherwise permitted pursuant to the DIP Loan Documents;  (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Prepetition ABL Collateral is less than the Prepetition ABL Obligations; (d) to propose, support or have a plan of reorganization or liquidation that does not

provide for the payment in cash in full and satisfaction of all DIP Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Loan Documents; (e) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lenders or the Prepetition Lenders from exercising their credit bid rights in connection with the sale of any Assets of the Debtors; or (f) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (i) the rights and remedies of any of the DIP Agents or the DIP Lenders against the Debtors as provided in this Interim Order or any of the DIP Loan Documents or (ii) the exercise of such rights or remedies by any of the DIP Agents or the DIP Lenders against the Debtors in accordance with the DIP Loan Agreements or this Interim Order (other than to object to the exercise of the rights and remedies within the Enforcement Notice Period on the grounds set forth in Section 3.2 of this Interim Order); provided, however, that the DIP Agents may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Agents or any DIP Lender.

4.3     Collateral Rights.    Until all Prepetition ABL Obligations and DIP Obligations shall have been paid in full in accordance with the terms of the Prepetition Loan Documents and DIP Loan Documents, it shall be a DIP Termination Event pursuant to section 3.1 of this Interim Order if any Debtor takes any of the following actions, except to the extent permitted by, and subject in all respects to, the DIP Loan Documents and the Prepetition Term Adequate Protection Orders: take any action to foreclose upon or recover, in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, this Interim Order, or otherwise seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Prepetition Loan Documents or the

Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any DIP Termination Event.

**Section 5.**     Prepetition Term Lender Adequate Protection Liens and Claims

5.1     As adequate protection for the Prepetition Term Parties' respective interests in their respective Prepetition Term Collateral, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition for the Debtors' use of their Prepetition Term Collateral, including any Prepetition Term Cash Collateral, each of the Prepetition Term Parties is granted the adequate protection set forth in (a) the relevant Prepetition Term Adequate Protection Order or (b) if no Prepetition Term Adequate Protection Order has been entered with respect to any Prepetition Term Party, (i) cash payment of all accrued and unpaid interest, at the applicable non-default rates provided in the respective Prepetition Term Loan Document and (ii) continued maintenance of and appropriate insurance on the applicable collateral in amounts consistent with the Debtors' prepetition practices as set forth in the applicable Prepetition Term Loan Document; *provided, however,* that the Debtors reserve the right to seek recharacterization of adequate protection as being applied to principal and/or seek a determination on the value of the Prepetition Term Collateral.

5.2     Subject to the provision of the Prepetition Term Adequate Protection Liens and Claims, and the terms of the Prepetition Term Adequate Protection Orders, the Debtors are authorized to use the Prepetition Term Collateral, including the Prepetition Term Cash Collateral.

**Section 6.**     Other Rights and DIP Obligations.

6.1     No Modification or Stay of This Interim Order.  The DIP Agents and the DIP Lenders have acted in good faith in connection with the DIP Facilities, the Interim Financing, and with this Interim Order, and their reliance on this Interim Order is in good faith,

and the DIP Agents and the DIP Lenders are entitled to the protections of Bankruptcy Code section 364(e).

6.2     Rights of Access and Information.     The Debtors shall comply with the rights of access and information afforded to any DIP Secured Party under the DIP Loan Documents, the Debtors shall be and hereby are required to afford representatives, agents and/or employees of the DIP Agents and the DIP Lenders reasonable access to the Debtors' premises during normal business hours and without interference with the proper operation of the Debtors' businesses and their books and records, and shall reasonably cooperate, reasonably consult with, and reasonably provide to such persons all reasonable information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors; *provided* that (a) the costs and expenses of only one inspection per month will be reimbursed (if such inspection is not conducted by the DIP Agents), (b) representatives of the Debtors and the DIP Agents shall have been provided a reasonable opportunity to be present during the inspection, and (c) in no event shall such inspection rights require the Debtors to provide any such information (i) in respect of which disclosure is prohibited by law or (ii) is subject to attorney-client privilege or constitutes attorney work-product.

6.3     Power to Waive Rights; Duties to Third Parties.     The DIP Agents shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lenders (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by the DIP Agents of any DIP Lender Rights shall not be or constitute a continuing waiver unless otherwise provided therein.  Any delay in or failure to exercise or enforce any DIP  Lender Right shall neither constitute a waiver

of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

6.4     No Unauthorized Disposition of Collateral.     The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and ABL Cash Collateral), other than pursuant to the terms of this Interim Order, the DIP Loan Documents, and the Prepetition Term Adequate Protection Orders.

6.5     No Waiver.     The failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facilities, or the Interim Order, as applicable, shall not constitute a waiver of any of the DIP Lenders' rights hereunder, thereunder, or otherwise.   Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lenders to: (a) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases; or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders.

6.6     Maintenance of DIP Collateral.     Unless the DIP Agents, acting at the direction of the applicable Required DIP Lenders, otherwise consent in writing, until (x) the payment in full or otherwise acceptable satisfaction of all DIP Obligations and (y) the termination of the DIP Agents' and the DIP Lenders' obligations to extend credit under the DIP Facilities, the Debtors shall continue to maintain all property, operational and other insurance as

required and as specified in the DIP Loan Documents and in each case in accordance with the DIP Loan Documents. Upon entry of this Interim Order and to the fullest extent provided by applicable law, each of the DIP Agents (on behalf of the applicable DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

6.7 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates; *provided, however,* that all such rights shall be subject to the terms and conditions of the Prepetition Term Adequate Protection Orders.

6.8 <u>Binding Effect</u>.

(a) All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all Liens, and claims granted hereunder in favor of each of the DIP Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of each DIP Agent, DIP Lender, and Prepetition Secured Party set forth herein, including without limitation the parties' acknowledgements, stipulations, and agreements in paragraph E of

this Interim Order, subject to section 4.1 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming and use of ABL Cash Collateral provided for hereunder) provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any other order or action, including without limitation any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Cases, approving any sale of any or all of the DIP Collateral or the Prepetition ABL Collateral, or vacating, terminating, reconsidering, revoking or otherwise modifying this Interim Order or any provision hereof; *provided* that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; *provided further* that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)       Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) the DIP Superpriority Claim and the DIP Agents' and DIP Lenders' liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition ABL Obligations are

indefeasibly paid and satisfied in full, (ii) the DIP Superpriority Claim and DIP Agents' and DIP Lenders' liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)     Except as set forth in this Interim Order, in the event this Court modifies any of the provisions of this Interim Order or any of the DIP Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of any DIP Agent or DIP Lender pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications.

(d)     This Interim Order shall be binding upon Debtors, the Prepetition Obligors, all parties in interest in the Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Interim Order shall also inure to the benefit of Debtors, DIP Agents, DIP Lenders, Prepetition Secured Parties, and each of their respective successors and assigns.

6.9     Discharge.  The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in

full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties has otherwise agreed in writing. Prior to the payment in full of either DIP Facility, it shall be a DIP Termination Event under such DIP Facility if the Debtors propose or support any Chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the payment of the DIP Obligations (other than indemnities then due and payable) in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of such Chapter 11 plan or sale, without the written consent of the DIP Agents and the applicable Required DIP Lenders.

6.10    No Priming of Prepetition Secured Obligations. Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Lenders, no Debtor shall seek authorization from this Court to obtain or incur any Indebtedness or enter into a Competing DIP Facility seeking to impose liens on any Prepetition ABL Collateral ranking on a pari passu or priming basis with respect to the Prepetition Liens held by the Prepetition Lenders; *provided*, however, that nothing herein shall preclude the Debtors from seeking authorization to incur any Indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the Prepetition Secured Obligations.

6.11    Section 506(c) Waiver. Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that in consideration for, among other things, the Carve Out and the payments to be made under the Approved Budget to administer these Cases with the use of ABL

Cash Collateral, no costs or expenses of administration which have been or may be incurred in these Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection or enhancement of realization by the DIP Agents or the DIP Lenders upon the DIP Collateral, or by the Prepetition Secured Parties or the Prepetition Lenders upon the Prepetition ABL Collateral, as applicable) shall be charged against any of the DIP Agents, DIP Lenders, Prepetition Secured Parties or any Prepetition Lenders or any of the DIP Obligations or Prepetition Secured Obligations or the DIP Collateral or the Prepetition ABL Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

6.12    Section 552(b) Waiver.  Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that the Prepetition Secured Parties and the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) shall not apply to the DIP Agents, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, the Prepetition Lenders or the Prepetition Secured Obligations.

6.13    No Marshaling/Application of Proceeds.  Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that in no event shall the DIP Agents, the DIP

Lenders, Prepetition Secured Parties or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition ABL Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as applicable.

6.14     Final Order.  For the avoidance of doubt, nothing in this Interim Order shall be deemed to grant or approve (a) a waiver of the Debtors' ability to surcharge against any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; (c) the application of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition ABL Collateral; (d) a lien on the proceeds of Avoidance Actions; (e) the Investigation Budget Amount; or (f) payment of the fees and expenses of the counsel of the Prepetition Secured Parties.

6.15     Payment of Lender Fees and Expenses.  Subject to entry of the Final Order and effective only upon entry of the Final Order with respect to the entirety of this Section 6.15, the Debtor shall pay all fees and expenses that may be reasonably required or necessary for the Debtors' performance of their obligations under the U.S. Prepetition Loan Documents, the Global Prepetition Loan Documents, DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents, as applicable, including, without limitation, the reasonable and documented fees and expenses reimbursable under the DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents, as applicable, whether incurred before or after the Petition Date as set forth in this Section 6.15.

(a)     All reasonable and documented out-of-pocket costs and expenses of the DIP Agents including, without limitation, reasonable and documented fees and

disbursements of counsel to DIP Secured Parties and of counsel to the DIP Agents, incurred in connection with the enforcement or preservation of any rights under the DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents and any such other documents or any restructuring or "work-out" related hereto and thereto.

(b)     DIP Loan Documentation and Related Expenses.   Section 6.15(c) notwithstanding, reasonable documented out-of-pocket costs and expenses (including legal fees and expenses) incurred by the DIP Agents or DIP Lenders, as the case may be, in connection with (i) negotiating, drafting, and otherwise documenting this Interim Order, any of the DIP Loan Documents, and any matters related to the foregoing and (ii) the commencement of these Cases (including matters and amounts relating to any "first day" filings or related relief) including prepetition discussions and actions relating to any prepetition financing, including any defaults related thereto, other financing issues, and contingency preparations, shall be due, owing, and payable by the Debtors immediately upon the entry of this Interim Order.

(c)     Payment of Certain Fees and Expenses.   Under no circumstances shall professionals for any of the DIP Secured Parties be required to comply with the U.S. Trustee fee guidelines or otherwise file a fee or retention application with the Court; *provided, however*, the Debtors shall provide to the U.S. Trustee and the Committee (if appointed) a copy of any invoices received from the DIP Agents or the DIP Lenders for professional fees and expenses during the pendency of these Cases or under this Interim Order within two Business Days of the Debtors' counsel's receipt thereof.  The Debtors shall promptly pay, and/or the DIP Agents are hereby authorized to make an advance under the DIP Loan Documents to timely pay, the submitted invoices for any of the DIP Secured Parties within the ten (10) calendar days of receipt of such invoices.

6.16　Limits on Lender Liability.

(a)　Subject to entry of the Final Order and section 4.1 hereof, in determining to make any loan under the DIP Loan Agreements or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Agents and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

(b)　Nothing in this Interim Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)　As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

6.17　Survival.　The provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Cases, (b) converting any or all of these Cases to a case under chapter 7 of the Bankruptcy Code,

(c) dismissing any or all of these Cases, or (d) pursuant to which the Court abstains from hearing any of these Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Prepetition Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Cases, following dismissal of any of these Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facilities, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facilities which survive such discharge by their terms) and all commitments to extend credit under the DIP Facilities are terminated, and (ii) in respect of the Prepetition Secured Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties and the Prepetition Lenders provided for in this Interim Order have been indefeasibly paid in full in cash.

6.18    Proofs of Claim.    None of the Prepetition Secured Parties or the Prepetition Lenders shall be required to file proofs of claim in any of these Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Notwithstanding the foregoing, any Prepetition Agent (on behalf of itself and the Prepetition Lenders) is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim for any claims of any of the Prepetition Secured Parties arising from the Prepetition Loan Documents or in respect

of the Prepetition Secured Obligations; provided, however, that nothing in this Order shall waive the right of any Prepetition Lender to file its own proof of claim against any of the Debtors.

6.19  No Third Party Rights. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

6.20  No Avoidance.  Subject to section 4.1 hereof, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facilities shall be avoidable or recoverable from the DIP Agents or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; provided, for the avoidance of doubt, all such payments or transfers shall be subject to the terms and provisions of the Prepetition Term Adequate Protection Orders.

6.21  Reliance on Order.  All postpetition advances under the DIP Loan Documents are made in reliance on this Order.

6.22  Entry of this Order/Waiver of Applicable Stay.  This Interim Order shall be effective and enforceable upon its entry as of the Petition Date and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

6.23  Nunc Pro Tunc Effect of this Order.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

6.24    Limited Effect.    In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

6.25    Prepetition Term Adequate Protection Orders. The rights and remedies of the DIP Secured Parties under the DIP Loan Documents shall be subject in all respects to the terms and provisions of the Prepetition Term Adequate Protection Orders.

6.26    [Reserved].

6.27    General Authorization. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

6.28    Retention of Exclusive Jurisdiction.    This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Loan Agreements, and the other DIP Loan Documents; *provided, however,* that no party shall be prevented from seeking relief from this Court to take proceedings relating to the DIP Loan Agreements and the other DIP Loan Documents in any other courts with jurisdiction in accordance with the terms of such agreements.

6.29    Credit Agreements.    Notwithstanding anything contained in this Interim Order or any of the DIP Loan Documents to the contrary, the granting of any claims and/or liens to (i) the DIP Lenders on account of the Roll Up or (ii) the Prepetition Secured Parties as adequate protection, in each case at Debtors that were not Prepetition Obligors shall be subject to reconsideration at the Final Hearing to extent any party in interest (including without limitation the Committee) objects to the granting of such claims and/or liens.

Section 7.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____2018, at \_\_\_\_\_ \_\_.m. (prevailing Eastern Time) before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel, if same shall have filed a request for notice.  The Debtors may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at http://dm.epiq11.com/aegean, and such notice is deemed good and sufficient and no further notice need be given.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Jonathan S. Henes, P.C. and Cristine Pirro Schwarzman, and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Marc Kieselstein, P.C., Ross M. Kwasteniet, P.C., Adam C. Paul, P.C., and W. Benjamin Winger; (b) counsel to the DIP Lenders, Milbank, 28 Liberty Street, New York, NY 10005, Attn: Lauren Doyle and Norton Rose Fulbright US LLP, 2200 Ross Avenue Suite 3600, Dallas, Texas 75201, Attn: Louis R. Strubeck and Greg Wilkes; (c) counsel to Administrative Agents, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Ana Alfonso; (d) counsel to any Committee; and (e) the U.S. Trustee, Attn: Brian Masumoto; and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on _____, 2018.

Manhattan, New York
Dated: _____, 2018

_____

HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Redline Against Initial Proposed Order**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.,*[1] | ) | Case No. 18-13374 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (this "Court"), *inter alia* requesting, among other things:

(1)     authorization for the Borrowers (as defined in DIP Loan Agreements) to obtain postpetition financing pursuant to the DIP Facilities (defined below), and for each of the Debtors

---

[1]     A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or DIP Loan Documents (as defined herein), as applicable.

to guarantee unconditionally (the "<u>Guarantors</u>"), on a joint and several basis, and subject to the terms and limitations set forth in the DIP Loan Documents in all respects the Borrowers' obligations in connection with the DIP Facilities, consisting of:

a) a senior secured super-priority multiple delayed draw term loan credit facility (the "<u>DIP Term Loan Facility</u>"), on the terms and conditions to be set forth in the U.S. DIP Agreement (as defined below), in an aggregate principal amount of **$72,000,000** in term loan commitments (the "<u>DIP Term Loan Commitment</u>") which shall be available as term loans (the "<u>DIP Term Loans</u>") to the U.S. Borrower upon entry of the Interim Order, and subject to the Closing Date (as defined in the U.S. DIP Agreement), in an amount not to exceed **$40,000,000** (the "<u>Initial DIP Term Loan</u>") and the maximum amount allowed to be drawn by the U.S. Borrower for such period consistent with the U.S. DIP Credit Agreement.

b) a senior secured super-priority asset-based revolving credit facility (the "<u>U.S. DIP Revolving Credit Facility</u>," and together with the DIP Term Loan Facility, the "<u>U.S. DIP Credit Facilities</u>"), on the terms and conditions to be set forth in a Superpriority Secured Debtor-In-Possession Credit Agreement substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, supplemented, waived, extended or otherwise modified from time to time, the "<u>U.S. DIP Agreement</u>," and together with any other related agreements, documents, security agreements, or pledge agreements, the "<u>U.S. DIP Documents</u>"), by and among Aegean Bunkering (USA) LLC, as U.S. Borrower, the Guarantors, ABN AMRO Capital USA LLC, as Administrative Agent, Collateral Agent, Swing Line Lender and Issuing Bank, and Mercuria US Asset Holdings LLC, as U.S. Lender, in an initial aggregate principal amount (subject to availability), and together with the outstanding amounts under the U.S. Prepetition Credit Facility (as defined in the Motion), of $**160,000,000** in revolving commitments (the "<u>U.S. Revolving Commitments</u>", and the loans outstanding under the U.S. Revolving Commitments from time to time, the "<u>U.S. Revolving Loans</u>"), including a **$50,000,000** million sublimit for the issuance of letters of credit ("<u>U.S. Letters of Credit</u>") and Swing Line Loans (as defined in US DIP Credit Facilities), available from time to time until the maturity date of the U.S. DIP Revolving Credit Facility; and

c) a senior secured super-priority asset-based revolving credit facility (the "<u>Global DIP Revolving Credit Facility</u>," and together with the U.S. DIP Credit Facilities, the "<u>DIP Facilities</u>"), on the terms and conditions to be set forth in an Amendment and Restatement Agreement substantially in the form annexed as **Exhibit B** hereto (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "<u>Global DIP Agreement</u>,"[3] and together with any other related agreements, documents, security agreements, or pledge agreements, the "<u>Global DIP</u>

---

[3] The Global DIP Agreement and the U.S. DIP Agreement are referred to collectively herein as the "<u>DIP Loan Agreements</u>."

Documents"), by and among the Global Borrowers, the Guarantors, non-debtor guarantors party thereto, ABN AMRO Bank, N.V., as Facility Agent, Collateral Management Agent, Security Agent, Issuing Bank and Overdraft Bank, and Mercuria Energy Trading S.A., as Lender, in an initial aggregate principal amount (subject to availability), together with the outstanding amounts under the Global Prepetition Credit Facility (as defined in the Motion and, together with the U.S. Prepetition Credit Facility, the "Prepetition Credit Facilities"), of $**300,000,000** in revolving commitments (the "Global Revolving Commitments" and the loans outstanding under the Global Revolving Commitments from time to time, the "Global Revolving Loans," together with the U.S. Revolving Loans, the "Revolving Loans"), including a $**100,000,000** million sublimit for the issuance of letters of credit ("Global Letters of Credit" and, together with the U.S. Letters of Credit, collectively, the "Letters of Credit"), available from time to time until the maturity date under the Global DIP Revolving Credit Facility; and

d) a Roll-Up (as defined below) of the Prepetition Secured Obligations (as defined below) whereby the Prepetition Secured Obligations shall become DIP Obligations (as defined below) in the amounts and at the intervals set forth herein, and subject to the terms and conditions hereof and as set forth in the DIP Loan Documents (as defined below).

(2)    authorization for Debtors to execute, deliver, and enter into the U.S. DIP Documents and the Global DIP Documents (collectively, the "DIP Loan Documents") and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)    authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to any agents under the DIP Loan Documents (collectively, the "DIP Agents") and the issuing banks, swing line lenders, and any other lenders from time to time thereunder (collectively, the "DIP Lenders" and together with the DIP Agents, the "DIP Secured Parties") under the DIP Facilities pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges and disbursements of the respective DIP Secured Parties (including the reasonable and documented fees and expenses of each of the DIP Secured Parties' attorneys, advisors, accountants and other consultants), any

3

obligations in respect of indemnity claims, whether contingent or absolute, including, without limitation, any and all obligations in connection with any interest rate, currency swap or other hedging agreement or arrangement (including, without limitation, any such agreement or arrangement designed to, among other things, hedge against fluctuations in commodity prices) in each case constituting (a) all "Obligations" as defined in the U.S. DIP Agreement, (b) all "Outstandings" as defined in the Global DIP Agreement; and (c) all other Debtor and/or Guarantor obligations of any kind under the DIP Loan Documents (collectively, the "DIP Obligations");

(4)    authorization for the Debtors, immediately upon entry of this interim order (this "Interim Order"), to use proceeds of the DIP Facilities (collectively the "DIP Loan Proceeds") as permitted in the DIP Loan Documents and consistent with this Interim Order and the applicable Approved Budget;

(5)    authorization for the Debtors to implement a "roll-up" of the Prepetition ABL Obligations as follows: (a) ~~immediately upon entry of this Interim Order, 50% of the Prepetition Secured Obligations (as defined herein) shall become DIP Obligations; (b)~~ between entry of the Interim Order and entry of the Final Order, all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; (~~c~~and (b) between entry of the Interim Order and entry of the Final Order, all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to

pay-down outstanding obligations under the Global Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount~~; and (d) upon entry of the Final Order, all outstanding Prepetition ABL Obligations shall become DIP Obligations ((a) through (d~~ (a) and (b), the "Roll-Up").

(6) the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 507(b) and 503(b)(1) of the Bankruptcy Code, to the DIP Agents, for the benefit of themselves and the other DIP Secured Parties, in respect of all DIP Obligations (as defined below), subject to the Carve Out (as defined below);

(7) granting the DIP Secured Parties valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting ABL Cash Collateral (as defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein;

(8) providing adequate protection to each of the Prepetition Secured Parties (as defined below) of their security interests in the collateral securing the Prepetition Credit Facilities, as applicable (including, without limitation, ABL Cash Collateral), and equal in amount to, any diminution in the value of such prepetition security interests of such Prepetition Secured Parties calculated in accordance with section 506(a) of the Bankruptcy Code ("Diminution in Value"), whether or not the Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition ABL Collateral (as defined herein), the priming of the

prepetition security interests of such Prepetition Secured Parties or the stay of enforcement of any prepetition security interests arising from section 362 of the Bankruptcy Code, or otherwise;

(9)    providing adequate protection to the secured parties (the "<u>Prepetition Term Parties</u>") under the Prepetition Term Loan Facilities (as defined in the Motion) of their security interests in Prepetition Term Collateral, including Prepetition Term Cash Collateral, (the "<u>Prepetition Term Liens</u>") and equal in amount to, any Diminution in the Value of such prepetition security interests of such Prepetition Term Parties, subject in all respects to any subsequent orders of this Court including but not limited to that certain *Interim Order (I) Granting Adequate Protection to Aegean Baltic Bank S.A., as Agent, (II) Authorizing Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* and *Interim Order (I) Granting Adequate Protection to National Bank of Greece S.A., (II) Authorizing Use of Cash Collateral, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, each filed contemporaneously herewith (in respect of each of the Prepetition Term Parties identified in such interim order, a "<u>Prepetition Term Adequate Protection Order</u>" and collectively with any other order granting adequate protection to a Prepetition Term Party, the "<u>Prepetition Term Adequate Protection Orders</u>");

(10)    authorization for the Debtors to use ABL Cash Collateral and all other Prepetition ABL Collateral in which any of the Prepetition Secured Parties have an interest consistent with this Interim Order and providing adequate protection to the Prepetition Secured Parties to the extent set forth herein, including authorization for the Debtors to apply ABL Cash Collateral to permanently and indefeasibly pay the Prepetition ABL Obligations;

(11)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(12)     subject to entry of a final order granting the relief requested in the Motion on a final basis (the "<u>Final Order</u>"), a waiver of the Debtors' ability to surcharge against any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(13)     the scheduling of a final hearing on the Motion (the "<u>Final Hearing</u>") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(14)     granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on November [    ],7 and 8, 2018 (the "<u>Interim Hearing</u>"), and upon the record made by the Debtors at the Interim Hearing, including the Motion, the ~~Declaration of Andrew D. Hede (I) in Support of Chapter 11 Petitions and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2,~~ the ~~Declaration of Tyler Baron, Director of Aegean Marine Petroleum Network Inc., in Support of Chapter 11 Petitions and First Day Motions,~~ the ~~Declaration of Zul Jamal in Support of Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and (III) Authorizing Use of ABL Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief~~ ("the ~~Jamal Declaration~~"),testimony of Andrew D. Hede and Zul Jamal, any exhibits in connection with the foregoing, and the filings and pleadings in the above-captioned Cases (collectively, the "<u>Cases</u>"), the Court having found that

7

the relief requested in the Motion is fair and reasonable and is in the best interests of Debtors, their Estates (defined below), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") was adequate under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on (a) the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis) (the "30 Largest Unsecured Creditors"); (c) the agents for each of the Debtors' prepetition secured credit facilities (the "Prepetition Agents");[4] (d) the indenture trustee for each of the Debtors' unsecured notes; (e) the DIP Agents; (f) counsel to the parties referenced in clauses (c) through (e); (g) counsel to the ad hoc group of holders of convertible unsecured notes; (h) counsel to Mercuria US Asset Holdings LLC; (i) counsel to Mercuria Energy Trading S.A.; (j) the United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the Environmental Protection Agency and all similar state environmental agencies for states in which the Debtors conduct business; (n) the attorneys general in the states where the Debtors conduct their business operations; (o) counsel for the Prepetition Term Parties, (p) any other notice parties required under any Prepetition Term Loan Document; (q) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien in the

---

[4] The Prepetition Agents are the U.S. Prepetition Agent and the Global Prepetition Agent.

Debtors' assets; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties""); and the other parties set forth in the *Affidavit of Service* filed on November 8, 2018 [Docket No. 32]; and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.     <u>Petition Date</u>.  On November 6, 2018 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition (each, a "<u>Petition</u>") under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Cases.

B.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2.

---

[5]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    Committee Formation.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "Committee") or any other statutory committee has been appointed in the Cases.

D.    Notice.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and the Local Rules.

E.    Parties' Acknowledgments, Agreements, and Stipulations.  In requesting the DIP Facilities, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facilities and access to the ABL Cash Collateral, and as a condition to providing financing under the DIP Facilities, subject to the rights of the parties set forth in section 4.1, the Debtors, the Prepetition Obligors (as defined in the Motion),[6] and any other non-Debtor affiliates of the Debtors (the "Non-Debtor Affiliates")[7] receiving the benefits of the DIP Facilities permanently and irrevocably admit, stipulate, acknowledge and agree, as follows:

(i)    U.S. Prepetition Loan Documents.  The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that prior to the Petition Date, the "Secured Parties" (as defined in the U.S. Prepetition Credit Facility, and referred to herein as the "U.S. Prepetition Secured Parties") made loans, advances and/or provided other financial accommodations and/or services to Aegean Bunkering (USA) LLC (the "U.S. Borrower") pursuant to the terms and conditions set forth in (a) the U.S. Prepetition Credit Agreement; and

---

[6]    For the avoidance of doubt, all references to the Prepetition Obligors include all non-debtor affiliates of the Debtors, the Borrowers, and the Guarantors who are obligors under any of the Prepetition Credit Facilities, Prepetition Loan Documents, and the Prepetition ABL Obligations.

[7]    Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, and Aegean Petroleum Uruguay S.A. are non-Debtor affiliates of the Debtors.

(b) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the agent or agents under the U.S. Prepetition Credit Agreement (the "U.S. Prepetition Agent") or any other Secured Party in connection with the U.S. Prepetition Credit Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the U.S. Prepetition Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "U.S. Prepetition Loan Documents"). Aegean Marine Petroleum Network, Inc. (the "U.S. Guarantor") is jointly and severally liable for the U.S. Borrower's obligations under the U.S. Prepetition Loan Documents.

(ii)     U.S. Prepetition ABL Obligations.    The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree, that as of the Petition Date, the U.S. Borrower and the U.S. Guarantor were jointly and severally indebted to the U.S. Prepetition Secured Parties under the U.S. Prepetition Loan Documents in respect of Revolving Loans, outstanding Letters of Credit, and Swing Line Loans in an aggregate outstanding principal amount of not less than approximately $131,688,116, plus interest accrued and accruing thereon, together with all costs, fees, expenses and other charges accrued, accruing or chargeable with respect thereto in accordance with the U.S. Prepetition Loan Documents (collectively, the "U.S. Prepetition ABL Obligations").  Subject to Section 4.1 hereof, the U.S. Prepetition ABL Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the U.S. Borrower and the U.S. Guarantor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization, recoupment, or subordination pursuant to the Bankruptcy Code or any other

applicable law or any other claim or cause of action of any nature, and the Debtors and Prepetition Obligors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, cause of action, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the U.S. Prepetition ABL Obligations or the Prepetition Liens (as defined below) on the U.S. Prepetition ABL Collateral (as defined below).

(iii)    U.S. Prepetition ABL Collateral.    The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree, that as of the Petition Date, the U.S. Prepetition ABL Obligations were fully secured pursuant to the U.S. Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable, first-priority liens on and security interests in all of the U.S. Borrower's assets constituting "Collateral" (as defined in the U.S. Prepetition Loan Documents (all such Collateral in existence on the Petition Date, or the identifiable proceeds thereof, the "U.S. Prepetition ABL Collateral"), subject only to the liens and security interests permitted under the U.S. Prepetition Credit Agreement to the extent that such security interests, liens or encumbrances are valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date.  The Debtors and the Prepetition Obligors do not possess and will not assert any claim, cause of action, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the U.S. Prepetition Agent's and the U.S. Prepetition Lenders' liens, claims or security interests in the U.S. Prepetition ABL Collateral.

(iv)    Global Prepetition Loan Documents.    The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that prior to the Petition Date, the "Secured Parties" (as defined in the Global Prepetition Credit Facility, and referred to herein as the

"Global Prepetition Secured Parties,"[8] and together with the U.S. Prepetition Secured Parties, the "Prepetition Secured Parties") made loans, advances and/or provided other financial accommodations and/or services to Aegean Marine Petroleum S.A., Aegean Petroleum International Inc., Aegean NWE N.V., Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, and Aegean Petroleum Uruguay S.A. (collectively, the "Global Borrowers")[9] pursuant to the terms and conditions set forth in (a) the Global Prepetition Credit Facility; and (b) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Global Prepetition Agent or any other Secured Party in connection with the Global Prepetition Credit Facility, including, without limitation, all documents defined as "Finance Documents" in the Global Prepetition Credit Facility, and all security agreements, notes, guarantees, mortgages, financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Global Prepetition Credit Facility, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Global Prepetition Loan Documents").[10]   Aegean Marine Petroleum S.A., Aegean Petroleum International Inc., Aegean NWE N.V., Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, Aegean Petroleum Uruguay S.A., and Aegean Marine Petroleum Network Inc. (together, the "Global Guarantors" and each, a

---

[8]   The Global Prepetition Secured Parties includes the agent or agents under the Global Prepetition Credit Facility (the "Global Prepetition Agent").

[9]   Aegean Bunkering Germany GmbH, OBAST Bunkering & Trading GmbH, Aegean NWE N.V. and Aegean Petroleum Uruguay S.A. are non-Debtor affiliates of the Debtors.

[10]   The U.S. Prepetition Loan Documents and the Global Prepetition Loan Documents are collectively, the "Prepetition Loan Documents").

"Global Guarantor") are jointly and severally liable for the Global Borrowers' obligations under the Global Prepetition Loan Documents.

(v)     Global Prepetition ABL Obligations. The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that as of the Petition Date, the Global Borrowers and each of the other Global Guarantors were jointly and severally indebted under the Global Prepetition Loan Documents in respect of Global Revolving Loans,[11] outstanding Global Letters of Credit, Overdraft Facilities (each as defined in the Global Prepetition Credit Facility) and all other Credit Instruments (as defined in the Global Prepetition Credit Facility) in an aggregate outstanding principal amount of not less than approximately $249,569,260, plus interest accrued and accruing thereon, together with all costs, fees, expenses and other charges accrued, accruing or chargeable with respect thereto in accordance with the Global Prepetition Loan Documents (collectively, the "Global Prepetition ABL Obligations," and together with the U.S. Prepetition ABL Obligations, the "Prepetition Secured Obligations").  Subject to Section 4.1 hereof, the Global Prepetition ABL Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Global Borrowers and the Global Guarantors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization, recoupment, or subordination pursuant to the Bankruptcy Code or any other applicable law or any other claim or cause of action of any nature, and the Debtors and the Prepetition Obligors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, cause of action, setoff or defense of any kind, nature or description which

---

[11]     For the avoidance of doubt, the Global Revolving Loans shall include that certain over-advance provided to the Debtors on or about October 31, 2018 to fund certain working capital amounts needed to enable the Debtors to prepare for an orderly chapter 11 filing.

would in any way affect the validity, enforceability and non-avoidability of any of the Global Prepetition ABL Obligations or the Prepetition Liens on the Global Prepetition ABL Collateral.

(vi) <u>Global Prepetition ABL Collateral.</u> The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that as of the Petition Date, the Global Prepetition ABL Obligations were fully secured pursuant to the Global Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable, first-priority liens on and security interests in all of the "<u>Transaction Security</u>" (as defined in the Global Prepetition Loan Documents) (all such Transaction Security in existence on the Petition Date, or the identifiable proceeds thereof, the "<u>Global Prepetition ABL Collateral</u>" and collectively with the U.S. Prepetition ABL Collateral, the "<u>Prepetition ABL Collateral</u>"), and subject only to the liens and other security interests specifically permitted under the Global Prepetition Loan Documents to the extent that such security interests, liens or encumbrances are valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date. The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Global Prepetition Secured Parties' liens, claims or security interests in the Global Prepetition ABL Collateral.

(vii) <u>Validity of Prepetition Liens and Prepetition Secured Obligations</u>. The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that: (a) the Prepetition Secured Obligations constitute legal, valid, enforceable, non-avoidable and binding obligations of certain of the Debtors; (b) no offsets, challenges, objections, defenses, claims, causes of action, or counterclaims of any kind or nature whatsoever to the Prepetition Secured Obligations or Prepetition Liens exist, and no portion of the Prepetition Secured Obligations or

Prepetition Liens is subject to any offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature whatsoever including, without limitation, avoidance, disallowance, reduction, surcharge, disgorgement, recharacterization, recoupment, or subordination, whether pursuant to the Bankruptcy Code or applicable non-bankruptcy law or any other claim or cause of action of any nature; (c) the Prepetition Loan Documents are valid and enforceable by the Prepetition Secured Parties against each of the applicable Debtors (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); and (d) the Prepetition Liens were fully perfected as of the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in and to the Prepetition ABL Collateral and are not subject to avoidance, disallowance, reduction, surcharge, disgorgement, recharacterization, recoupment, or subordination, whether pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(viii)    <u>Sale and Credit Bidding</u>.  The Debtors and the Prepetition Obligors admit, stipulate, acknowledge and agree that any of the DIP Lenders, DIP Agents, or Prepetition Secured Parties, as applicable, may credit bid the entirety of (or any portion of) the Prepetition Secured Obligations, or the DIP Obligations.

(ix)    <u>Release</u>.  ~~As a condition to obtaining the financing available under the DIP Facilities, and subject only to Section 4.1~~<u>Subject to Section 4.1 and the challenge rights granted thereunder</u>, each of the Debtors, their Estates, the Borrowers, the Guarantors, and the Prepetition Obligors hereby forever, unconditionally, permanently, and irrevocably release, discharge and acquit each of the DIP Secured Parties, each of the Prepetition Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals,

officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with or relating to the Prepetition Secured Obligations, the Prepetition Loan Documents, the DIP Facilities or the DIP Loan Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security and perfection of any of the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon or released to any and all acts, omissions, conduct undertaken or events occurring prior to entry of this Interim Order.

(x) <u>ABL Cash Collateral</u>. The Debtors admit, stipulate, acknowledge and agree that all of the cash of the Debtors who were obligors under the Prepetition Credit Facilities (the "<u>Debtor ABL Obligors</u>"), wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtor ABL Obligors, whether as Prepetition ABL Collateral or which represent income, proceeds, products, rents, or profits of other Prepetition ABL Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>ABL Cash Collateral</u>").

(xi) <u>Term Loan Cash Collateral</u>. The Debtors admit, stipulate, acknowledge and agree that all of the cash of the Debtors who were borrowers under the Prepetition Term Loan Facilities, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors who were borrowers under the Prepetition Term Loan Facilities, whether as Prepetition Term Collateral or which represent income, proceeds, products, rents, or profits of other Prepetition Term Collateral, constitutes "cash collateral" of the Prepetition Term ~~Loan~~ Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Term Loan Cash Collateral</u>").

F. <u>Findings Regarding the Postpetition Financing</u>.

(i) <u>Postpetition Financing</u>. The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order, the DIP Loan Agreements and the other DIP Loan Documents, respectively (the "<u>DIP Loans</u>").

(ii) <u>Need for Postpetition Financing</u>. The Debtors do not have sufficient liquidity, including cash collateral, to operate their businesses in the ordinary course of business

without the financing requested in the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties as set forth in this Interim Order, the DIP Loan Agreements, and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the postpetition financing to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates") to maximize the recovery to all creditors of the Estates.

(iii) ~~Priming of Prepetition Liens. The Debtors believe that the priming of the liens granted in favor of each of the Prepetition Secured Parties in the Prepetition ABL Collateral under section 364(d)(1) of the Bankruptcy Code, by the DIP Facility, as contemplated by the DIP Loan Documents and this Interim Order, will enable the Debtors to continue to operate their businesses for the benefit of their Estates and stakeholders.~~

(iii) [Reserved]

(iv) Stalking Horse Bid. Certain of the Debtors intend to enter into that certain Asset Purchase Agreement (as amended, restated, modified, or supplemented, from time to time, the "Stalking Horse Agreement") to purchase all or substantially all of the DIP Collateral (as

defined below) on the terms and conditions set forth therein (collectively, the "Stalking Horse Bid"). ~~The Stalking Horse Bid is integral to the value provided to the DIP Secured Parties under the DIP Facilities and necessary to maintain, preserve, and maximize the value of the DIP Collateral and the Debtors' operations pending the consummation of the transactions contemplated by the Stalking Horse Agreement.~~

(v)     No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtors assert in the Motion and in the Jamal Declaration, and demonstrated at the Interim Hearing, that they have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the DIP Secured Parties pursuant to the DIP Loan Documents.  ~~Additionally, the Debtors have asserted that should the DIP Facilities not be approved, the Stalking Horse Bid in connection with the sale of certain of the Debtors' assets shall be withdrawn.~~  In light of the foregoing, and considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best financing available to them at this time, and are in the best interests of all of their stakeholders.  After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best financing available to them at this time, and are in the best interests of all of their stakeholders.

(vi)　　Budget.　The Debtors have prepared and delivered to the DIP Secured Parties initial budgets (the "Initial Budgets"), copies of which are attached hereto as **Exhibits C and D**.　The Initial Budgets reflect the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date (the Initial Budgets and each subsequent approved Budget then in effect, an "Approved Budget").　The Debtors believe that the Initial Budgets are reasonable under the facts and circumstances.　The DIP Secured Parties are relying upon the Debtors' agreement to comply with the Approved Budget, the other DIP Loan Documents, and this Interim Order in determining to enter into the postpetition financing arrangements provided for herein.　For the avoidance of doubt, all references to the Initial Budgets or the Approved Budget shall be subject in all respects to the Permitted Variance (as defined in the DIP Loan Documents).

(vii)　　Certain Conditions to DIP Facilities.　The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things, (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of their obligations thereunder, and to confer upon the DIP Secured Parties all rights, powers and remedies thereunder in each case as modified by this Interim Order; (b) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition ABL Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code, subject to the terms and conditions of the Prepetition Term Adequate Protection Orders; (c) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents: (i) superpriority perfected security interests in and liens upon all of the Prepetition ABL Collateral and any unencumbered assets other than Excluded Assets (as defined in the

applicable DIP Loan Agreement), (ii) perfected security interests in and junior liens upon the remaining Debtors' assets, including, without limitation, the Prepetition Term Collateral (collectively hereinafter referred to as the "DIP Collateral," and for avoidance of doubt, the DIP Collateral shall include (w) all advances under the DIP Facilities, (x) the proceeds of the Litigation Claims (as defined in the U.S. DIP Agreement), (y) subject to entry of the Final Order, (and only effective upon the entry of the Final Order), the proceeds of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions"), (z) 100% of the Equity Interests (as defined in the DIP Loan Agreements) of any Borrower, any Debtor, or any Guarantor owned (directly or indirectly), beneficially or of record, by the Borrower, any Debtor, or any Guarantor other than Aegean Oil Terminal Corp.; and (aa) 100% of the Equity Interests that any Borrower, any Debtor, or any Guarantor may own, beneficially or of record, directly or indirectly, other than Aegean Oil Terminal Corp. (i) in any subsidiary thereof (whether or not such entity is wholly owned or immaterial) and (ii) in any corporation, partnership (limited or general), joint venture, limited liability company, business trust, association or other legally recognized entity (a "Person" as defined in the DIP Loan Agreements), including joint venture interests and majority and minority interests in any Person owned by any Borrower, any Debtor and any Guarantor; and (d) approval of the Stalking Horse Bid.

(viii) Business Judgment and Good Faith Pursuant to Section 364(e). Based upon the pleadings and proceedings of record in the Cases, (a) the terms of the DIP Loan Documents (including, without limitation, the Roll Up) and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to

debtors in possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (b) the terms and conditions of the DIP Loan Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtors and DIP Secured Parties, with all parties being represented by counsel.Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facilities, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(ix) <u>Roll-Up of Prepetition Secured Obligations</u>. Upon entry of this Interim Order, without further action by the Debtors or any other party, (a) the letters of credit issued under the U.S. Prepetition Credit Facility and the Global Prepetition Credit Facility (collectively, the "<u>Prepetition Letters of Credit</u>") shall become Letters of Credit under the DIP Obligations; (b) 50% of the Prepetition Secured Obligations shall become DIP Obligations; (c) all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; and

(dc) all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay-down outstanding obligations under the Global Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount. The replacement and refinancing of the Prepetition Secured Obligations shall be authorized as compensation for, and in consideration for, and solely on account of, the agreement of the DIP Lenders to fund the DIP Loans and to provide other consideration to the Debtors and the other borrowers under the DIP Facilities. The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Secured Parties would not be willing to provide the DIP Facilities or extend credit to the Debtors thereunder without the inclusion of the Roll-Up in the DIP Obligations. Moreover, the replacement and refinancing (pursuant to the Roll-Up) will (a) create greater availability under the DIP Facilities, (b) benefit the Debtors and their estates as a result of the DIP Lenders' agreement to make certain revisions to the borrowing base and waiver certain defaults, and (c) will enable the Debtors to obtain urgently needed financing to administer these cases.

(x)   Credit Bidding.   Upon entry of this Interim Order, but subject to section 4.1 herein, the DIP Lenders, DIP Agents, and Prepetition Secured Parties, as applicable, shall have the right to credit bid the entirety of (or any portion of) the full amount of the DIP Obligations and/or Prepetition Secured Obligations (as applicable) in connection with any asset sale process, including without limitation, sales pursuant to section 363 of the Bankruptcy Code

~~or included as part of any plan of reorganization subject to confirmation under section 1129 of the Bankruptcy Code, and such right to credit bid shall not be subject to challenge or objection.~~

(x)     [Reserved]

(xi)     <u>Debtors Will Not Challenge Credit Bid Rights</u>.  No Debtor or Debtor's affiliate shall object to any DIP Lender's, DIP Agent's, Prepetition Secured Parties' right to credit bid up to the full amount of its DIP Obligations and/or Prepetition Secured Obligations, in each case including, without limitation, any accrued interest and expenses, in any sale, as applicable, whether such sale is effectuated through section 363 of the Bankruptcy Code, in a chapter 11 or chapter 7 proceeding, under section 1129 of the Bankruptcy Code, by a chapter 7 or chapter 11 trustee, or otherwise, ~~provided that any proceeds of any sale be applied in accordance with the waterfall set forth in the applicable DIP Loan Documents~~.

(xii)     <u>Sections 506(c) and 552(b)</u>.  Subject to entry of a Final Order, and only effective upon entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facilities, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facilities to the extent set forth herein, (b) the DIP Agents' and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, and (c) the consensual use of ABL Cash Collateral consistent with the Approved Budget and the terms of this Interim Order, and subject to the Final Order, and only effective upon entry of the Final Order, each of the DIP Secured Parties and the Prepetition Secured Parties are entitled to receive, (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth

below, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code subject to the terms hereof.

(xiii)   Good Cause.   Good cause has been shown for the entry of this Interim Order. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.   The terms of the DIP Facilities (including the Roll-Up) are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

(xiv)   Adequate Protection.   The Prepetition Secured Parties are entitled pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition ABL Collateral (including ABL Cash Collateral), to the extent set forth in this Interim Order.

(xv)   Immediate Entry.   Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).   No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

Section 1.     <u>Authorization and Conditions to Financing.</u>

        1.1     <u>Motion Granted</u>.   The Motion is granted to the extent provided in this Interim Order.   Any objections to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

        1.2     <u>Authorization of DIP Financing</u>.   The Debtors are hereby authorized and empowered to immediately borrow, incur and guarantee (as applicable), (a) pursuant to the terms and conditions of the U.S. DIP Agreement, (i) loans under the U.S. Revolving Credit Facility, up to an initial aggregate principal amount, together with the outstanding amounts under the U.S. Prepetition Credit Facility, of $160,000,000 in U.S. Revolving Commitments, of which up to $50,000,000 shall constitute a sublimit for the issuance of U.S. Letters of Credit and Swing Line Loans; (ii) DIP Term Loans, pursuant to the terms and conditions of the U.S. DIP Agreement, in an aggregate principal amount not to exceed $40,000,000 prior to the entry of the Final Order to the U.S. Borrower, and the loans advanced under the DIP Loan Documents from time to time to the U.S. Borrower, with the right of the U.S. Borrower to make available, through approved inter-company loans, transfers and investments, such funds to the Global Borrowers, consistent with the applicable Approved Budget and (b) loans under the Global DIP Revolving Credit Facility, pursuant to the Global DIP Agreement, a committed senior secured super-priority asset-based credit facility will be made available to the Global Borrowers in an initial aggregate principal amount, together with the outstanding amounts under the Global Prepetition Credit Facility, of $300,000,000 in Global Revolving Commitments, of which up to $100,000,000 shall constitute a sublimit for the issuance of the Global Letters of Credit.

1.3     The DIP Facilities may be borrowed by Debtors during the Interim Financing Period (as defined below) in accordance with the DIP Loan Documents, <u>plus</u> all interest, costs, and fees, accrued or accruing under the DIP Loan Agreements and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents, in each case during the period commencing on the date of this Interim Order through and including the entry of the Final Order (the "<u>Interim Financing Period</u>").  Subject to the terms and conditions contained in this Interim Order and the DIP Loan Documents, the Debtors shall use the proceeds of the DIP Facilities pursuant to the terms and conditions consistent with the Approved Budget, DIP Loan Documents and this Interim Order.

1.4     <u>Financing Documents</u>

(a)     <u>Authorization</u>.  The Debtors are hereby authorized and directed to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents.  Subject to Section 4.1 hereof, no obligation, payment, transfer or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule or regulation by any person or entity.

(b)     Approval; Evidence of Borrowing Arrangements.     All terms, conditions and covenants set forth in the DIP Loan Documents (including, without limitation, each of the DIP Loan Agreements) are approved.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Agents and the DIP Lenders, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of each DIP Loan Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of each DIP Agent's and DIP Lender's closing, arranger and administrative fees, consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the DIP Loan Documents.     Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding and enforceable against the Debtors, their Estates and any successors thereto, including, without limitation, any trustee appointed in any of these Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents.

(c)     Payment of DIP Premiums and Other Expenses.  Any and all fees and expenses payable pursuant to the DIP Loan Documents (~~including, for the avoidance of any doubt, any original issue discount)~~ (collectively, any and all such fees and expenses, the "DIP Fees") ~~are hereby~~shall be approved~~,~~ and the Debtors ~~are authorized to and shall pay the DIP Fees as set forth in the applicable DIP Loan Documents.  The Debtors are also~~shall be authorized and

29

directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agents and the DIP Lenders incurred at any time, as provided by the DIP Loan Documents and this Interim Order in accordance with Section 6.14 hereof *; provided, however,* that payment of any commitment fee shall be limited to the fee payable on such borrowings or use of ABL Cash Collateral. The DIP Fees shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(d) <u>Non-Material Amendments to DIP Loan Documents</u>. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the applicable DIP Secured Parties may make ministerial amendments, modifications, or supplements to any DIP Loan Document, and the DIP Agents and the DIP Lenders may waive any provisions in the DIP Loan Documents, without further approval of the Bankruptcy Court; *provided* that Debtors shall file a notice on the Court's docket of any such ministerial amendment, modification, or supplement, or waiver, not more than three (3) Business Days after the effective date thereof. Any amendments, modifications or supplements to any DIP Loan Documents, other than as set forth in the preceding sentence (collectively, "<u>Material DIP Amendments</u>"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Agents; (ii) counsel to the DIP Lenders, (iii) counsel for each of the Prepetition Term Parties; (iv) counsel to the Committee, or in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 Largest Unsecured Creditors, and (v) the U.S. Trustee. If no party in interest files an objection to the Material DIP Amendment with the Court within three (3) Business Days from the date the notice of the Material DIP Amendment is filed with the Court in accordance with this Section 1.4, the Debtors and the applicable DIP Secured Parties are authorized and empowered to implement, in accordance with

the terms of the applicable DIP Loan Documents, such Material DIP Amendment, without further notice, hearing or approval of this Court. Any Material DIP Amendment subject to a timely and unresolved objection must be approved by the Court to be effective.

1.5     Payments and Application of Payments.

(a)     All proceeds of the Prepetition ABL Collateral received by any Prepetition Secured Parties, or by any of the Debtors, and any other amounts or payments received by the DIP Agents, any DIP Lender or any of the Debtors in respect of the DIP Obligations, shall be applied or deemed to be applied on a dollar-for dollar basis by the DIP Agents first to repayment of the remaining Prepetition ABL Obligations, then to the repayment in full of the DIP Obligations until indefeasibly paid in full in accordance with the DIP Loan Agreements, the other DIP Loan Documents, and this Interim Order; *provided* that any repayment of the Prepetition ABL Obligations shall be subject to the terms of this remainder of this Interim Order and Section 4.1(a) hereof.

(b)     Upon entry of this Interim Order, without further action by the Debtors or any other party, (i) the Prepetition Letters of Credit shall become Letters of Credit under the DIP Obligations; (ii) 50% of the Prepetition Secured Obligations shall become DIP Obligations; (iii) all cash proceeds of U.S. Priority Collateral securing U.S. Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be deemed to pay down outstanding obligations under the U.S. Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the U.S. DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; (ivjii) all cash proceeds of Global Prepetition ABL Collateral securing Global Secured Obligations (each as defined in the DIP Intercreditor Agreement) shall be

deemed to pay-down outstanding obligations under the Global Prepetition Credit Facility on a dollar-for-dollar basis and, contemporaneously therewith, increase availability under the Global DIP Revolving Credit Facility, subject to compliance with any applicable borrowing base limitations as set forth herein, by a corresponding amount; provided, however, that ~~(i) and (ii) hereof~~this section shall be subject to section 4.1 of this Interim Order and Local Rule 4001-2(g)(5).

1.6     Continuation of Prepetition Procedures.  Except to the extent expressly set forth in the Prepetition Loan Documents and DIP Loan Documents, all prepetition practices and procedures for the payment and collection of proceeds of the Prepetition ABL Collateral, sleeving, the turnover of cash, the delivery of property to the U.S. Prepetition Agents and the U.S. Prepetition Lenders, including the Deposit Account Control Agreements (as such term is defined in the U.S. Prepetition Credit Agreement) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption.

1.7     Indemnification.   The Debtors are authorized to indemnify and hold harmless the DIP Agents, each DIP Lender and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (each, an "Indemnified Party"), in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

Section 2.      Postpetition Lien; Superpriority Administrative Claim Status.

2.1     Postpetition Lien.

(a) <u>Postpetition DIP Lien Granting</u>.  To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of Debtors to the DIP Secured Parties of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agents, for the benefit of themselves and the DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "<u>DIP Liens</u>", and together with the Prepetition Liens on the DIP Collateral, the "<u>DIP Liens</u>") in and upon all DIP Collateral, subject to the priority set forth in Section 2.1(b), below.

(b) <u>DIP Lien Priority in Collateral</u>.  The DIP Liens securing all DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that the DIP Liens on the (i) DIP Collateral shall be subject to the Carve Out and Permitted Liens (as defined in the applicable DIP Loan Agreement) and (ii) Prepetition Term Collateral shall be subject to the Carve Out, Permitted Liens, Prepetition Term Liens, and any adequate protection liens or claims granted pursuant to the Prepetition Term Adequate Protection Orders (the "<u>Prepetition Term Adequate Protection Liens and Claims</u>"); *provided,* for the avoidance of doubt, the Prepetition Term Adequate Protection Liens and Claims shall be limited to the (i) prepetition collateral granted to any Prepetition Term Party under the respective Prepetition Term Loan Documents (as defined in the Motion) and (ii) the borrowers under the

applicable Prepetition Term Loan Facility under which such Prepetition Term Party is a party and any other Debtor against whom such Prepetition Term Party has a Prepetition Term Lien.

(c)  <u>Postpetition Lien Perfection.</u>  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Deposit Account Control Agreement or other depository account consisting of DIP Collateral (a "<u>Perfection Act</u>").  Notwithstanding the foregoing, if either DIP Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then such DIP Agent is authorized to perform such act, and the Debtors and Guarantors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  The DIP Agents may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should either DIP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the

postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the DIP Agents' and the DIP Lenders' liens and security interests granted and created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the United States Bankruptcy Court*; provided, however,* that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Order, to the extent that any DIP Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Order without further action by the applicable DIP Agent.

(e)     The DIP Liens and the DIP Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of these Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee or any other estate representative appointed or elected in these Cases or any Successor Cases and/or upon the dismissal of any of these Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550

or 551 of the Bankruptcy Code; *provided, however,* that notwithstanding the foregoing, the DIP Liens and DIP Superpriority Claims shall be subject to the Carve Out, the Prepetition Term Liens, and Prepetition Term Adequate Protection Liens and Claims; *provided further* that the DIP Lenders intend to require that the Final Order shall provide, and the Debtors have agreed as a condition to obtaining financing under the DIP Facilities, to seek Court approval at the Final Hearing that the DIP Liens and DIP Superpriority Claims shall not be subject to section 506(c) of the Bankruptcy Code*; provided further, for the avoidance of doubt,* that section 4.1 hereof shall apply to this section 2.1(e).

2.2     Superpriority Administrative Expenses.

(a)     DIP Loans.  For all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents or otherwise, the DIP Agents, for the benefit of themselves and the DIP Lenders, are granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (other than the Carve Out, Prepetition Term Liens, and Prepetition Term Adequate Protection Liens and Claims), whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113 or 1114 of the Bankruptcy Code (other than the Carve Out and Prepetition Term Adequate Protection Liens and Claims), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (other than the Carve Out, the Prepetition Term Liens and the

proceeds of avoidance actions under chapter 5 of the Bankruptcy Code) (the "DIP Superpriority Claims"); *provided, however,* that notwithstanding the foregoing, the DIP Superpriority Claims shall be subject to the Carve Out, the Prepetition Term Liens, and the Prepetition Term Adequate Protection Liens and Claims.

      2.3    Carve Out.

      (a)    Carve Out. The "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $~~50~~100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first Business Day following delivery by either DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Noti*ce; provided, however,* that the Carve Out shall not include amounts related to any completion fee, success fee, restructuring fee, or similar such fee or compensation in respect of any Professional Persons; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first Business Day following delivery by either DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or

otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>"). For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other electronic means) by either DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of an obligation under the applicable DIP Facility stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     <u>Carve Out Reserves</u>. On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for both revolving and any outstanding delayed draw term loans under the DIP Facilities (on a pro rata basis based on the then outstanding U.S. Revolving Commitments, DIP Term Loan Commitment, or Global Revolving Commitments (together, the "<u>Commitments</u>")), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for both revolving and any outstanding delayed draw term loans under the DIP Facilities (on a pro rata basis based on the then outstanding Commitments), in an amount equal

to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Facilities to the contrary, including with respect to the existence of a Default (as defined in the applicable DIP Facility) or Event of Default (as defined in the applicable DIP Facility), the failure of the Debtors to satisfy any or all of the conditions precedent for any of the DIP Loans under any of the DIP Facilities, any termination of the Commitments following an Event of Default, or the occurrence of the Maturity Date (as defined in the applicable DIP Facility), each DIP Lender with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the applicable DIP Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agents for the benefit of the DIP Lenders, unless all DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been

terminated, in which case any such excess shall be paid to the Prepetition Secured Parties (as defined in the Motion), in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agents for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Loan Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this Section 2.3, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this Section 2.3, prior to making any payments to the DIP Agents or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agents and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Loan Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Loan Agreements) or increase or reduce the DIP

Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facilities, or in any Prepetition Credit Facilities, the Carve Out shall be senior to all liens and claims securing all of the DIP Facilities, the Prepetition Replacement Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations. For the avoidance of doubt, the Carve Out shall not be senior to the Prepetition Term Liens or the Prepetition Term Adequate Protection Liens and Claims.

(c)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     No Direct Obligation To Pay Allowed Professional Fees. None of the DIP Agent, DIP Lenders, the Prepetition Secured Parties, or the Prepetition Term Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or the Prepetition Term Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional

Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e) <u>Payment of Carve Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

2.4 <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Interim Order, none of the (i) Carve Out, (ii) DIP Facilities, (iii) DIP Collateral, Prepetition ABL Collateral, DIP Loans, ABL Cash Collateral, Revolving Loans, Letters of Credit, or (iv) any other credit or financial accommodations provided under or in connection with any of the DIP Loan Documents, nor the proceeds of any of the foregoing may be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional Person, directly or indirectly, or by any of the Debtors, the Committee, if any, or any trustee or other estate representative appointed in these Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any of the following unless, with respect to (ii)-(iv), agreed to in writing by the DIP Lenders:

(a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority,

perfection, or enforceability of the (A) Prepetition Secured Obligations or Prepetition Secured Parties' liens on and security interests in the Prepetition ABL Collateral, and (B) the DIP Obligations or any DIP Agent's or DIP Lender's liens on and security interests in the DIP Collateral; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, (A) the Prepetition Secured Obligations or Prepetition Secured Parties' liens on and security interests in the Prepetition ABL Collateral, and (B) the DIP Obligations or any DIP Agent's or DIP Lender's liens on and security interests in the DIP Collateral; or (iii) preventing, hindering or delaying either DIP Agent's or DIP Lenders' enforcement of any lien, claim, right or security interest or realization upon any DIP Collateral in accordance with the terms and conditions of either DIP Loan Agreement or any DIP Loan Documents, respectively, and this Interim Order;

(b)         (i) to use or seek to use ABL Cash Collateral; (ii) except as permitted by the DIP Loan Documents, to sell or otherwise dispose of the DIP Collateral (or any portion thereof) other than in accordance with the terms of this Interim Order; (iii) except to the extent permitted by the DIP Loan Documents, to use or seek to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents and the applicable Required DIP Lenders (as defined in the applicable DIP Loan Document); (iv) except to the extent expressly permitted by the DIP Loan Documents, to seek authorization to incur Indebtedness or Financial Indebtedness (as defined in the applicable DIP Loan Agreements) or to incur liens or security interests; (v) to object to or challenge in any way the rights granted or provided to the DIP Secured Parties under the terms of this Interim Order or the Bankruptcy Code, the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including ABL Cash Collateral or Prepetition ABL Collateral or any other claims or liens held by or on behalf of any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties,

respectively, (vi) to prosecute or support any plan of liquidation or reorganization that crams down or reinstates the Prepetition Secured Obligations, (vii) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against any of the Released Parties with respect to any transaction, occurrence, omission, action or other matter arising under, in connection with or related to this Interim Order, the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents or the transactions contemplated therein or thereby, including, without limitation, (A) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any challenge to, claim, or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the DIP Loan Documents, the Prepetition Loan Documents  or the Prepetition Secured Obligations, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, avoid, marshal, limit, restrict, subordinate, disallow, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Collateral, the Prepetition ABL Collateral, the Prepetition Secured Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either the DIP Agents or the DIP Lenders hereunder or under any of the DIP Loan Documents, the Prepetition Secured Parties under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's or the DIP Lenders' assertions, enforcements,

realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and this Order and/or the Final Order (as applicable) (<u>provided</u>, <u>however</u>, and subject to entry of the Final Order, that an amount no more than, $50,000 in the aggregate, to be incurred solely by the Committee (the "<u>Investigation Budget Amount</u>") of the DIP Collateral or proceeds from the borrowings under the DIP Facilities or any other amounts, may be used for allowed fees and expenses in investigating (but not objecting to, challenging, litigating (including by way of discovery), opposing, or seeking to subordinate or recharacterize) the validity, enforceability, perfection, priority or extent of the Prepetition Liens, the Prepetition Loan Documents, or the Prepetition Secured Obligations, within the applicable challenge period as set forth in Section 4.1.

(c) any act which has or could adversely modify or compromise the rights and remedies of any DIP Secured Party and/or Prepetition Secured Party under this Interim Order, including, without limitation, a challenge to the ability of any DIP Secured Party or Prepetition Secured Party to credit bid in connection with the sale of any assets of the Debtors, or which directly results in the occurrence of a DIP Termination Event under any DIP Loan Documents, or this Interim Order.

2.5 <u>Use of ABL Cash Collateral; Adequate Protection.</u>

(a) <u>Authorization to Use ABL Cash Collateral.</u> Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and consistent with the Approved Budget, the Debtors shall be and are hereby authorized to use the ABL Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Interim Order and terminating upon the occurrence of a DIP Termination Event. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside

the ordinary course of business, or any Debtor's use of ABL Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the DIP Loan Documents and compliance with the Approved Budget. Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any ABL Cash Collateral shall not be used as a basis to challenge any of the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of any of the Prepetition Liens.

(b)     Prepetition Replacement Liens.   As adequate protection for the Diminution in Value of their interests in the Prepetition ABL Collateral (including ABL Cash Collateral) and the subordination to the Carve Out, the Prepetition Secured Parties for the benefit of themselves and the Prepetition Lenders, are hereby granted pursuant to sections 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all DIP Collateral other than the Prepetition Term Collateral (the "Prepetition Replacement Lien"). The Prepetition Replacement Lien shall be junior and subordinate only to (i) the Carve Out, (ii) the Permitted Liens (as defined in the DIP Loan Agreements) (iii) Prepetition Secured Parties and Prepetition Lenders' liens on the DIP Collateral to secure the Prepetition ABL Obligations, and (iv) the DIP Agents' and DIP Lenders' DIP Lien on the DIP Collateral.

(c)     Prepetition 507(b) Priority Claims.   As additional adequate protection for the Diminution in Value, the Prepetition Secured Parties for the benefit of themselves and the Prepetition Lenders, are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of these Cases and any successor

bankruptcy cases (the "Prepetition Adequate Protection Superpriority Claim"). The Prepetition Adequate Protection Superpriority Claim shall be junior only to (i) the Carve Out, and (ii) the DIP Superpriority Claim, and (iii) the Prepetition Term Adequate Protection Liens and Claims, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)     Fees and Expenses. The Subject to entry of the Final Order (and only effective upon the entry of the Final Order), the Prepetition Secured Parties for themselves and for the benefit of the applicable Prepetition Lenders, shall receive from the Debtors current cash payments of all reasonable and documented out-of-pocket fees and expenses (whether incurred prepetition or post-petition) of Allen & Overy LLP; Willkie Farr & Gallaher LLP; Milbank, Tweed, Hadley & McCloy LLP; Norton Rose Fulbright LLP and such other local counsels and advisors as may be required thereby (the "Creditor's Counsel"); provided, that any invoices submitted to, and payments made by, the Debtors under this Section 2.5(d) shall be subject to the procedures set forth in Section 5.14 of this Interim Order; provided further that notwithstanding anything else in this Interim Order, no professional fees or expenses shall be allowed upon entry of this Interim Order.

(e)     Adequate Protection Payments. The Prepetition Secured Parties for themselves and for the benefit of the applicable Prepetition Lenders, shall receive from the Debtors periodic adequate protection payments (the "Adequate Protection Payments") in an amount resulting from applying a per annum rate equal to the non-default interest rate under the applicable Prepetition Credit Facility to the aggregate outstanding amount of Prepetition Secured Obligations as of the Petition Date in respect of such relevant periods ending after the Petition

Date (and not, for the avoidance of doubt, at any different rate set forth in any of the applicable Prepetition Credit Facilities); *provided, however,* that any Adequate Protection Payment shall be without prejudice, and with a full reservation of rights, as to whether such payment should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as principal payments under the applicable Prepetition Credit Facilities (whether as to principal, interest or otherwise). The Adequate Protection Payments will be calculated on a monthly basis, and be due and payable on the first business day of each month occurring after the first full month following the Petition Date.

(f) <u>Adequate Protection Reservation</u>. The receipt by the Prepetition Secured Parties of the adequate protection provided pursuant to paragraph 2.5 of this Interim Order shall not be deemed an admission that the interests of the Prepetition Secured Parties are indeed adequately protected. Further, nothing contained in this Interim Order shall prejudice or limit the rights of the Prepetition Secured Parties, subject to the Prepetition Intercreditor Agreements, to seek additional relief with respect to the use of ABL Cash Collateral or for additional adequate protection.

Section 3. <u>Default; Rights and Remedies; Relief from Stay.</u>

3.1 <u>Events of Default</u>. The occurrence of (a) any "Event of Default" as that term is defined in each of the DIP Loan Agreements; (b) any failure to meet or satisfy any Milestone in accordance with the applicable DIP Loan Agreement; (c) the Maturity Date under any DIP Loan Agreement; and/or (d) any violation, breach or default by any Debtor with respect to any of its obligations under this Interim Order, shall constitute a "<u>DIP Termination Event</u>" hereunder unless waived in writing by the applicable DIP Secured Parties and in accordance with the applicable DIP Loan Documents.

3.2     <u>Rights and Remedies upon a DIP Termination Event</u>.

(a)     Subject to the terms and provisions of the Prepetition Term Adequate Protection Orders, upon the occurrence of and during the continuance of a DIP Termination Event, the DIP Agents shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or any DIP Loan Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under their respective DIP Loan Documents to be immediately due and payable; (ii) terminate, reduce or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any Letters of Credit); (iii) terminate the DIP Facilities and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) terminate and/or revoke the Debtors' right, if any, under this Interim Order and the other DIP Loan Documents to use any ABL Cash Collateral and all authority to use ABL Cash Collateral shall cease, subject to section 3.2(b); (v) invoke the right to charge interest at the default rate under the DIP Loan Documents; (vi) freeze monies or balances in the Debtors' accounts constituting Collateral; (vii) immediately setoff any and all amounts in accounts maintained by the Debtors with the applicable DIP Agents or the DIP Lenders against the DIP Obligations; (viii) otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Lenders, including, without limitation, disposition of the DIP Collateral for application towards the DIP Obligations, subject to section 3.2(b); and (A) take any other actions or exercise any other rights or remedies permitted under this Order, the DIP Loan Documents or applicable law; *provided, however*, that <u>subsections 3(a)(vi)-(viii) shall not apply in the case of an "Event of Default" relating solely to the Bidding Procedures Order, the Sale Order, or the Sale</u>

(each as defined in the DIP Loan Agreements) without a further order of the Court; provided, that upon occurrence of such an event, the DIP Lenders shall no longer be required to fund pursuant to this Interim Order or the other DIP Loan Documents; provided further, however, that prior to the exercise of any right set forth in this paragraph, the applicable DIP Agent shall be required to provide three (3) Business Days' written notice (or such other notice period as may be ordered by the Court) to counsel to the Debtors, counsel to the Committee and the U.S. Trustee of its intent to exercise its rights and remedies (the "Enforcement Notice Period") other than with respect to funding of the Carve Out. The DIP Secured Parties shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of a DIP Termination Event, or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute a DIP Termination Event. For the avoidance of doubt, notwithstanding the forgoing, the Debtors may use ABL Cash Collateral for (i) the Carve Out Reserves, as set forth in Section 2.3; and (ii) subject to the Approved Budget, amounts that the Debtors have determined in good faith are, in the ordinary course, critical to the preservation of the Debtors and their Estates and have approved in advance in writing by the applicable Required DIP Lenders.

(b)     Unless during such Enforcement Notice Period the Court determines, the Debtors, the U.S. Trustee, the Committee, or any other party-in-interest files a motion seeking enforcement of the stay or seeking a determination that a DIP Termination Event has not occurred, the DIP Agents and the DIP Lenders shall be deemed to have received relief from the automatic stay, and subject in each case to the terms and conditions of the Prepetition Term Adequate Protection Orders, may (unless stayed) foreclose on all or any portion of the DIP

Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtor ABL Obligors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by the DIP Loan Documents in accordance with applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise. During the Enforcement Notice Period, the Debtors may use ABL Cash Collateral to pay, subject to the Approved Budget, only the following amounts and expenses: (i) the Carve Out Reserves, as set forth in section 2.3; and (ii) subject to the Approved Budget, amounts that the Debtors have determined in good faith are, in the ordinary course, critical to the preservation of the Debtors and their Estates and have approved in advance in writing by the applicable Required DIP Lenders. The Debtors shall reasonably cooperate with the DIP Agents and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise, and the Debtors shall waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agents and the DIP Lenders set forth in this Interim Order and in the DIP Loan Documents, other than to dispute whether a DIP Termination Event has in fact occurred; *provided, however,* that none of the DIP Secured Parties shall object to a request by the Debtors for an expedited hearing before the Court to contest whether a DIP Termination Event has in fact occurred.

  3.3  <u>Modification of Automatic Stay</u>.

    (a)  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to

(i) permit the DIP Agents to perform any act authorized or permitted under or by virtue of this Interim Order, the DIP Loan Agreements, the DIP Security Agreements, or the other DIP Loan Documents, as applicable, including, without limitation, (A) to implement the postpetition financing arrangements authorized by this Interim Order, (B) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (C) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition ABL Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs and expenses permitted under any of the DIP Loan Documents and apply such payments to the Prepetition ABL Obligations, and (D) immediately following the expiration of the Enforcement Notice Period (as referred to above), unless stayed, to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents or applicable law; *provided* that the authorization set forth in this paragraph 3.3(a) shall be subject in each case to the terms and conditions of the Prepetition Term Adequate Protection Orders and (ii) to permit the Stalking Horse Bidder to terminate the Stalking Horse Agreement in accordance with its terms and to deliver any notice or election contemplated thereunder.

Section 4.     Representations; Covenants; and Waivers.

4.1     Reservation of Third Party Challenge Rights.

(a)     Objections to Prepetition ABL Obligations.    Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, a "Prepetition Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind regarding: (i) the existence, validity or amount of the Prepetition ABL Obligations, as of the Petition Date, (including as to the value of a secured claim of the Prepetition Agent and Prepetition Lenders solely with respect to

Prepetition ABL Obligations, pursuant to section 506(a) of the Bankruptcy Code) or (ii) the extent, legality, validity, perfection or enforceability of the Prepetition Secured Parties and Prepetition Lenders' respective prepetition liens and security interests in the Prepetition ABL Collateral solely with respect to Prepetition ABL Obligations, shall be properly filed with the Court (x) by the Committee, if a Committee is appointed and if the Court grants the Committee the requisite standing, within sixty (60) calendar days from the date of entry of the Final Order (the "Committee Challenge Period"), or (y) if no Committee is appointed, by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of the Final Order (such period, together with the Committee Challenge Period, the "Challenge Periods" and each, a "Challenge Period"); provided, however, that nothing herein shall permit any party to challenge the extent or validity of the DIP Obligations or any liens that secure such DIP Obligations or provide standing to any such party; *provided further however,* that the portion of the Roll-Up effective immediately upon entry of this Order shall be subject to Local Rule 4001-2(g)(5). If any such Prepetition Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Prepetition Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Prepetition ABL Obligations or the Prepetition Secured Parties or the Prepetition Lenders' liens on the Prepetition ABL Collateral. If no Prepetition Objection is timely and properly filed, or if a Prepetition Objection is timely and properly filed but denied, (i) the Prepetition ABL Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Secured Parties and the Prepetition Lenders' prepetition liens on

and security interest in the Prepetition ABL Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Prepetition Secured Parties and the Prepetition Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and the Prepetition ABL Obligations, and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time. The stipulations set forth in <u>Section E</u> of this Interim Order shall be binding upon each party in interest, including the Committee (if appointed) unless the ~~Committee or~~ any ~~other~~ party in interest with ~~the~~ requisite standing, <u>or the Committee (which shall be deemed to have standing)</u> (i) timely files a Prepetition Objection pursuant to Section 4.1(a)(x) or 4.1(a)(y) above, as applicable, and (ii) such Prepetition Objection is sustained by a final and non-appealable order. Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Prepetition Secured Parties or any Prepetition Lenders in connection with all postpetition Revolving Loans and Letters of Credit, and any other postpetition financial and credit accommodations provided by Prepetition Secured Parties to Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Prepetition Loan Documents. Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Agents or DIP Lenders in connection with all postpetition financial and credit accommodations provided by the DIP Agents or DIP Lenders in reliance on section 364(e)

of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the DIP Loan Documents.

(b)     ~~Nothing in this Interim Order vests or confers on the Committee or any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their Estates, and all rights to object to such standing are expressly reserved.~~

(b)     [Reserved.]

(c)     If the DIP Facilities are not approved on a final basis due to the existence and approval of competing or alternative debtor-in-possession financing (a "Competing DIP Facility"), the Debtors, Guarantors, and Prepetition Obligors shall pay in cash within 15 days all amounts, obligations, and liabilities owing or payable to any Prepetition Secured Parties Prepetition Lenders, DIP Agents, or DIP Lenders, including any counsel or professionals retained by such Prepetition Secured Parties, Prepetition Lenders, DIP Agents, or DIP Lenders under the Prepetition Loan Documents or DIP Loan Documents including, without limitation, (i) any and all DIP Obligations and (ii) any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges and disbursements of the respective Prepetition Secured Parties (including the reasonable and documented fees and expenses of each of the Prepetition Secured Parties' attorneys, advisors, accountants and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case constituting all "Obligations" as defined in the Prepetition Loan Documents. ~~For the avoidance of doubt, the "DIP Obligations" set forth in this Interim Order will include reasonable and documented fees and expenses incurred by the~~

~~DIP Secured Parties in connection with the negotiation and preparation of the Stalking Horse Bid and any related documents.~~

(d)     For the avoidance of doubt, nothing in this Interim Order shall be deemed to preclude any party with standing from challenging the value of (i) liens on the Debtors' assets, (ii) the assets underlying such liens, or (iii) any other assets of the Debtors (including but not limited to any asserted total enterprise value).

4.2     Debtors' Waivers.  Prior to the payment in full of all Prepetition ABL Obligations and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (a) to use ABL Cash Collateral of DIP Agents, the DIP Lenders, or the Prepetition Secured Parties under section 363 of the Bankruptcy Code; (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations, other than as provided in this Interim Order or as may be otherwise permitted pursuant to the DIP Loan Documents; (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Prepetition ABL Collateral is less than the Prepetition ABL Obligations; (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the payment in cash in full and satisfaction of all DIP Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Loan Documents; (e) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lenders or the Prepetition Lenders from exercising their credit bid rights in connection with the sale of any Assets of the Debtors; or (f) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any

such relief would restrict or impair (i) the rights and remedies of any of the DIP Agents or the DIP Lenders against the Debtors as provided in this Interim Order or any of the DIP Loan Documents or (ii) the exercise of such rights or remedies by any of the DIP Agents or the DIP Lenders against the Debtors in accordance with the DIP Loan Agreements or this Interim Order (other than to object to the exercise of the rights and remedies within the Enforcement Notice Period on the grounds set forth in Section 3.2 of this Interim Order); provided, however, that the DIP Agents may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Agents or any DIP Lender.

4.3 <u>Collateral Rights</u>. Until all Prepetition ABL Obligations and DIP Obligations shall have been paid in full in accordance with the terms of the Prepetition Loan Documents and DIP Loan Documents, it shall be a DIP Termination Event pursuant to section 3.1 of this Interim Order if any Debtor takes any of the following actions, except to the extent permitted by, and subject in all respects to, the DIP Loan Documents and the Prepetition Term Adequate Protection Orders: take any action to foreclose upon or recover, in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, this Interim Order, or otherwise seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Prepetition Loan Documents or the Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any DIP Termination Event.

Section 5. <u>Prepetition Term Lender Adequate Protection Liens and Claims</u>

5.1 As adequate protection for the Prepetition Term Parties' respective interests in their respective Prepetition Term Collateral, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition for the Debtors' use of their Prepetition Term Collateral, including any Prepetition Term Cash Collateral, each of the Prepetition Term Parties is granted

the adequate protection set forth in (a) the relevant Prepetition Term Adequate Protection Order or (b) if no Prepetition Term Adequate Protection Order has been entered with respect to any Prepetition Term Party, (i) cash payment of all accrued and unpaid interest, at the applicable non-default rates provided in the respective Prepetition Term Loan Document and (ii) continued maintenance of and appropriate insurance on the applicable collateral in amounts consistent with the Debtors' prepetition practices as set forth in the applicable Prepetition Term Loan Document.; *provided, however,* that the Debtors reserve the right to seek recharacterization of adequate protection as being applied to principal and/or seek a determination on the value of the Prepetition Term Collateral.

5.2     Subject to the provision of the Prepetition Term Adequate Protection Liens and Claims, and the terms of the Prepetition Term Adequate Protection Orders, the Debtors are authorized to use the Prepetition Term Collateral, including the Prepetition Term Cash Collateral.

Section 6.     <u>Other Rights and DIP Obligations.</u>

6.1     <u>No Modification or Stay of This Interim Order</u>.  The DIP Agents and the DIP Lenders have acted in good faith in connection with the DIP Facilities, the Interim Financing, and with this Interim Order, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Prepetition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, any of the DIP Loan

Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "Subject Event"), (x) the acts taken by each of the DIP Secured Parties in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising prior to DIP Agents' actual receipt of written notice (email being sufficient) from the Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by each such DIP Secured Party in accordance with this Interim Order, and the liens granted to each DIP Secured Party in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of each DIP Secured Party pursuant to this Interim Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal. and the DIP Agents and the DIP Lenders are entitled to the protections of Bankruptcy Code section 364(e).

6.2 <u>Rights of Access and Information</u>. The Debtors shall comply with the rights of access and information afforded to any DIP Secured Party under the DIP Loan Documents, the Debtors shall be and hereby are required to afford representatives, agents and/or employees of the DIP Agents and the DIP Lenders reasonable access to the Debtors' premises during normal business hours and without interference with the proper operation of the Debtors' businesses and their books and records, and shall reasonably cooperate, reasonably consult with, and reasonably provide to such persons all reasonable information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the

Debtors; *provided* that (a) the costs and expenses of only one inspection per month will be reimbursed (if such inspection is not conducted by the DIP Agents), (b) representatives of the Debtors and the DIP Agents shall have been provided a reasonable opportunity to be present during the inspection, and (c) in no event shall such inspection rights require the Debtors to provide any such information (i) in respect of which disclosure is prohibited by law or (ii) is subject to attorney-client privilege or constitutes <u>attorney</u> work-product.

        6.3     <u>Power to Waive Rights; Duties to Third Parties</u>.  The DIP Agents shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lenders (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by the DIP Agents of any DIP Lender Rights shall not be or constitute a continuing waiver unless otherwise provided therein.  Any delay in or failure to exercise or enforce any DIP  Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

        6.4     <u>No Unauthorized Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and ABL Cash Collateral), other than pursuant to the terms of this Interim Order, the DIP Loan Documents, and the Prepetition Term Adequate Protection Orders.

        6.5     <u>No Waiver</u>.  The failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facilities, or the Interim Order, as applicable, shall not constitute a waiver of any of the DIP Lenders' rights

hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lenders to: (a) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases; or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders.

6.6 <u>Maintenance of DIP Collateral</u>. Unless the DIP Agents, acting at the direction of the applicable Required DIP Lenders, otherwise consent in writing, until (x) the payment in full or otherwise acceptable satisfaction of all DIP Obligations and (y) the termination of the DIP Agents' and the DIP Lenders' obligations to extend credit under the DIP Facilities, the Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents and in each case in accordance with the DIP Loan Documents. Upon entry of this Interim Order and to the fullest extent provided by applicable law, each of the DIP Agents (on behalf of the applicable DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

6.7 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Agent and DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek

adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates; *provided, however,* that all such rights shall be subject to the terms and conditions of the Prepetition Term Adequate Protection Orders.

6.8     Binding Effect.

(a)     All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all Liens, and claims granted hereunder in favor of each of the DIP Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of each DIP Agent, DIP Lender, and Prepetition Secured Party set forth herein, including without limitation the parties' acknowledgements, stipulations, and agreements in paragraph E of this Interim Order, subject to section 4.1 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming and use of ABL Cash Collateral provided for hereunder) provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any other order or action, including without limitation any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Cases,

approving any sale of any or all of the DIP Collateral or the Prepetition ABL Collateral, or vacating, terminating, reconsidering, revoking or otherwise modifying this Interim Order or any provision hereof; *provided* that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order with respect to any DIP Obligations incurred by the Debtors upon or after entry of the Final Order.*; provided further* that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)       Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) the DIP Superpriority Claim and the DIP Agents' and DIP Lenders' liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition ABL Obligations are indefeasibly paid and satisfied in full, (ii) the DIP Superpriority Claim and DIP Agents' and DIP Lenders' liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)       InExcept as set forth in this Interim Order, in the event this Court modifies any of the provisions of this Interim Order or any of the DIP Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of any DIP

Agent or DIP Lender pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications.

(d)     This Interim Order shall be binding upon Debtors, the Prepetition Obligors, all parties in interest in the Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Interim Order shall also inure to the benefit of Debtors, DIP Agents, DIP Lenders, Prepetition Secured Parties, and each of their respective successors and assigns.

6.9     Discharge.  The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties has otherwise agreed in writing.  Prior to the payment in full of either DIP Facility, it shall be a DIP Termination Event under such DIP Facility if the Debtors propose or support any Chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the payment of the DIP Obligations (other than indemnities then due and payable) in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of

such Chapter 11 plan or sale, without the written consent of the DIP Agents and the applicable Required DIP Lenders.

6.10     No Priming of Prepetition Secured Obligations.  Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Lenders, no Debtor shall seek authorization from this Court to obtain or incur any Indebtedness or enter into a Competing DIP Facility seeking to impose liens on any Prepetition ABL Collateral ranking on a pari passu or priming basis with respect to the Prepetition Liens held by the Prepetition Lenders; *provided*, however, that nothing herein shall preclude the Debtors from seeking authorization to incur any Indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the Prepetition Secured Obligations.

6.11     Section 506(c) Waiver.  Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that in consideration for, among other things, the Carve Out and the payments to be made under the Approved Budget to administer these Cases with the use of ABL Cash Collateral, no costs or expenses of administration which have been or may be incurred in these Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection or enhancement of realization by the DIP Agents or the DIP Lenders upon the DIP Collateral, or by the Prepetition Secured Parties or the Prepetition Lenders upon the Prepetition ABL Collateral, as applicable) shall be charged against any of the DIP Agents, DIP Lenders, Prepetition Secured Parties or any Prepetition Lenders or any of the DIP Obligations or Prepetition Secured Obligations or the DIP Collateral or the Prepetition ABL Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the

prior express written consent of the affected DIP Secured Parties and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

6.12    Section 552(b) Waiver.    Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that the Prepetition Secured Parties and the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) shall not apply to the DIP Agents, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, the Prepetition Lenders or the Prepetition Secured Obligations.

6.13    No Marshaling/Application of Proceeds.    Subject to the Final Order, and only effective upon the entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facilities that in no event shall the DIP Agents, the DIP Lenders, Prepetition Secured Parties or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition ABL Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as applicable.

6.14    Right to Credit Bid.    Subject to section 363(k) of the Bankruptcy Code, the terms of the DIP Loan Documents, the Final Order, the Prepetition Term Adequate Protection Orders, and section 4.1 hereof, (a) the DIP Agents, DIP Lenders, and each of the Prepetition Secured Parties shall have the right to credit bid as part of any asset sale process all

or any portion of the full amount of the DIP Obligations, and (b) the Prepetition Secured Parties shall have the right to credit bid as part of any asset sale process all or any portion of the full amount of the Prepetition Secured Obligations including, without limitation, sales pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii) (iii) of the Bankruptcy Code.

6.14    Final Order.  For the avoidance of doubt, nothing in this Interim Order shall be deemed to grant or approve (a) a waiver of the Debtors' ability to surcharge against any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; (c) the application of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition ABL Collateral; (d) a lien on the proceeds of Avoidance Actions; (e) the Investigation Budget Amount; or (f) payment of the fees and expenses of the counsel of the Prepetition Secured Parties.

6.15    Payment of Lender Fees and Expenses.  EachSubject to entry of the Final Order and effective only upon entry of the Final Order with respect to the entirety of this Section 6.15, the Debtor shall pay all fees and expenses that may be reasonably required or necessary for the Debtors' performance of their obligations under the U.S. Prepetition Loan Documents, the Global Prepetition Loan Documents, DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents, as applicable, including, without limitation, the reasonable and documented fees and expenses reimbursable under the DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents, as applicable, whether incurred before or after the Petition Date as set forth in this Section 6.15.,

(a)	All reasonable and documented out-of-pocket costs and expenses of the DIP Agents including, without limitation, reasonable and documented fees and disbursements of counsel to DIP Secured Parties and of counsel to the DIP Agents, incurred in connection with the enforcement or preservation of any rights under the DIP Facilities, the DIP Loan Agreements, or the DIP Loan Documents and any such other documents or any restructuring or "work-out" related hereto and thereto.

(b)	<u>DIP Loan Documentation and Related Expenses</u>.	Section 6.15(c) notwithstanding, reasonable documented out-of-pocket costs and expenses (including legal fees and expenses) incurred by the DIP Agents or DIP Lenders, as the case may be, in connection with (i) negotiating, drafting, and otherwise documenting this Interim Order, any of the DIP Loan Documents, and any matters related to the foregoing and (ii) the commencement of these Cases (including matters and amounts relating to any "first day" filings or related relief) including prepetition discussions and actions relating to any prepetition financing, including any defaults related thereto, other financing issues, and contingency preparations, shall be due, owing, and payable by the Debtors immediately upon the entry of this Interim Order.

(c)	<u>Payment of Certain Fees and Expenses</u>.	Under no circumstances shall professionals for any of the DIP Secured Parties be required to comply with the U.S. Trustee fee guidelines or otherwise file a fee or retention application with the Court; *provided, however*, the Debtors shall provide to the U.S. Trustee and the Committee (if appointed) a copy of any invoices received from the DIP Agents or the DIP Lenders for professional fees and expenses during the pendency of these Cases or under this Interim Order within two Business Days of the Debtors' counsel's receipt thereof.	The Debtors shall promptly pay, and/or the DIP Agents are hereby authorized to make an advance under the DIP Loan Documents to timely pay,

the submitted invoices for any of the DIP Secured Parties within the ten (10) calendar days of receipt of such invoices.

6.16    Limits on Lender Liability.

(a)    ~~In~~Subject to entry of the Final Order and section 4.1 hereof, in determining to make any loan under the DIP Loan Agreements or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Agents and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

(b)    Nothing in this Interim Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)    As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

6.17    Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any

order that may be entered (a) confirming any plan of reorganization in any of these Cases, (b) converting any or all of these Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Cases, or (d) pursuant to which the Court abstains from hearing any of these Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Prepetition Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Cases, following dismissal of any of these Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facilities, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facilities which survive such discharge by their terms) and all commitments to extend credit under the DIP Facilities are terminated, and (ii) in respect of the Prepetition Secured Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties and the Prepetition Lenders provided for in this Interim Order have been indefeasibly paid in full in cash.

6.18 <u>Proofs of Claim</u>. None of the Prepetition Secured Parties or the Prepetition Lenders shall be required to file proofs of claim in any of these Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Notwithstanding the foregoing, any Prepetition Agent (on behalf of itself and the Prepetition Lenders) is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim for any claims of

any of the Prepetition Secured Parties arising from the Prepetition Loan Documents or in respect of the Prepetition Secured Obligations; provided, however, that nothing in this Order shall waive the right of any Prepetition Lender to file its own proof of claim against any of the Debtors.

6.19    No Third Party Rights. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

6.20    No Avoidance.  Subject to section 4.1 hereof, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facilities shall be avoidable or recoverable from the DIP Agents or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; provided, for the avoidance of doubt, all such payments or transfers shall be subject to the terms and provisions of the Prepetition Term Adequate Protection Orders.

6.21    Reliance on Order.  All postpetition advances under the DIP Loan Documents are made in reliance on this Order.

6.22    Entry of this Order/Waiver of Applicable Stay.  This Interim Order shall be effective and enforceable upon its entry as of the Petition Date and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

6.23    *Nunc Pro Tunc* Effect of this Order.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the

Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

6.24    _Limited Effect_.    In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

6.25    _Prepetition Term Adequate Protection Orders_. The rights and remedies of the DIP Secured Parties under the DIP Loan Documents shall be subject in all respects to the terms and provisions of the Prepetition Term Adequate Protection Orders.

6.26    ~~Effect of Appeal.  To the fullest extent permitted under Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed on appeal: (a) such stay, modification, or vacation shall not affect the validity of any obligation, indebtedness, or liability incurred or liens granted by the Debtors to any DIP Secured Party prior to the effective date of such stay, modification, or vacation, or the validity, enforceability or priority of any liens, rights, or claims authorized or created under the original provisions of this Interim Order or pursuant to any of the DIP Loan Documents; and (b) any indebtedness, obligation, or liability incurred by the Debtors to any DIP Secured Party under any DIP Loan Document prior to the effective date of such stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order and the DIP Loan Documents, and each DIP Secured Party shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Liens and priorities granted to or for its benefit herein or pursuant to the applicable DIP Loan Documents, with respect to any such indebtedness, obligation, or liability. All DIP credit extensions under the DIP Financing Documents are deemed to have been made in reliance upon this Interim Order, and, therefore, the indebtedness~~

resulting from such DIP Facilities prior to the effective date of any stay, modification, or vacation of this Interim Order cannot as a result of any subsequent order in any of these Cases, or any Successor Case of a Debtor, be (i) subordinated or (ii) deprived of the benefit or priority of the DIP Liens and the Superpriority Claims granted to the DIP Secured Parties under this Interim Order or the DIP Loan Documents.

6.26    [Reserved].

6.27    General Authorization. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

6.28    Retention of Exclusive Jurisdiction. This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Loan Agreements, and the other DIP Loan Documents; *provided, however,* that no party shall be prevented from seeking relief from this Court to take proceedings relating to the DIP Loan Agreements and the other DIP Loan Documents in any other courts with jurisdiction in accordance with the terms of such agreements.

6.29    Credit Agreements. Notwithstanding anything contained in this Interim Order or any of the DIP Loan Documents to the contrary, the granting of any claims and/or liens to (i) the DIP Lenders on account of the Roll Up or (ii) the Prepetition Secured Parties as adequate protection, in each case at Debtors that were not Prepetition Obligors shall be subject to reconsideration at the Final Hearing to extent any party in interest (including without limitation the Committee) objects to the granting of such claims and/or liens.

Section 7.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____2018, at _____ __.m. (prevailing Eastern Time) before this Court. The Debtors

shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel, if same shall have filed a request for notice.  The Debtors may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at http://dm.epiq11.com/aegean, and such notice is deemed good and sufficient and no further notice need be given.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Jonathan S. Henes, P.C. and Cristine Pirro Schwarzman, and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Marc Kieselstein, P.C., Ross M. Kwasteniet, P.C., Adam C. Paul, P.C., and W. Benjamin Winger; (b) counsel to the DIP Lenders, Milbank, 28 Liberty Street, New York, NY 10005, Attn: Lauren Doyle and Norton Rose Fulbright US LLP, 2200 Ross Avenue Suite 3600, Dallas, Texas 75201, Attn: Louis R. Strubeck and Greg Wilkes; (c) counsel to Administrative Agents, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Ana Alfonso; (d) counsel to any Committee; and (e) the U.S. Trustee, Attn: Brian Masumoto; and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on _____, 2018.


Manhattan, New York
Dated: _____, 2018

                                                              _____

HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE