**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

In re:

AEGEAN MARINE PETROLEUM NETWORK, INC.,
*et al.*,[1]

                Debtors.
_____

**Chapter 11**

**Case No. 18-13374 (MEW)**

**(Joint Administration Requested)**

**INTERIM ORDER (I) GRANTING ADEQUATE
PROTECTION TO AEGEAN BALTIC BANK S.A., AS AGENT,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), and 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1, and 9014-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (this "Court"), *inter alia*, requesting, among other things, an interim order (this "Interim Order") and a Final Order (as defined herein) (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims,

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean. The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in **Annex A** hereto or in the Motion as applicable.

(III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief; and this Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein was provided in accordance with the Bankruptcy Rules and the Local Rules, and that no other or further notice is necessary; and any objections to the Motion having been withdrawn or overruled on the merits; and an interim hearing having been held on November 8 and 9, 2018 (the "Interim Hearing") to consider the relief requested in the Motion and upon the record of the Interim Hearing, the Motion and all of the proceedings had before this Court; and this Court having found and determined that the relief set forth therein is in the best interests of Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     **Commencement of the Chapter 11 Cases.**  On November 6, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

B.     **Debtors-in-Possession; No Committee**.  Since the Petition Date, the Debtors have been managing and operating their business and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no official

committee of unsecured creditors (any such committee, the "<u>Committee</u>") has been appointed in the Chapter 11 Cases.

C. **<u>Jurisdiction and Venue</u>**. This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2). The predicates for relief sought herein are sections 105, 361, 362, 363, 506, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-1 of the Local Rules. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **<u>DIP Facility</u>**. On November 6, 2018, the Debtors filed the Motion requesting, among other things, authorization to obtain financing from the DIP Lenders (as defined in the Motion) pursuant to the debtor-in-possession financing facilities (collectively, the "<u>DIP Financing</u>" and the interim and final orders approving the DIP Financing, collectively, the "<u>DIP Order</u>") pursuant to certain credit agreements (each, a "<u>DIP Credit Agreement</u>" and, together, the "<u>DIP Credit Agreements</u>"). Pursuant to the Motion, the Debtors also requested authority to enter into adequate protection stipulations and consent orders with certain prepetition secured lenders that are consenting to the grant of junior liens on their collateral to secure the DIP Financing. This Interim Order and the forthcoming anticipated Final Order are such adequate protection consent orders.

E. **<u>Notice</u>**. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier or

hand delivery, to the parties-in-interest, including (a) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition Term Parties; (d) counsel to the DIP Secured Parties; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

F. **Prepetition Facility Obligations**. Certain Debtors as borrowers, Aegean Marine Petroleum Network, Inc. and certain other affiliated Debtors as obligors, Aegean Baltic Bank S.A. ("ABB"), as agent (in such capacity, in each case, the "ABB Agent"), the ABB Lenders, and the other ABB Parties are parties in each case to that certain 2005 Newbuilding Secured Term Loan, 2006 Newbuilding Secured Term Loan, Third 2006 Newbuilding Secured Term Loan, and 2008 Newbuilding Secured Term Loan (each as amended, modified, supplemented, or waived from time to time, and together with all ancillary documents, agreements, and notes executed by the obligors in connection therewith (collectively, the "ABB Secured Term Loan Documents," and all obligations arising under, in respect of or related thereto, the ABB Secured Term Loan Documents, the "ABB Prepetition Term Obligations")). A detailed description of the ABB Secured Term Loan Documents, the underlying credit facilities and the collateral securing those facilities ("ABB Prepetition Collateral") is set forth in **Annex A** hereto.

G. [Reserved for Stipulations (as defined below) to be included in the Final Order.]

H. **Necessity of Relief Requested**. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rules 4001-1, 4002-1, and 9013-1, and good cause has been shown for entry of this Interim Order. Without access to, and the ability to use, the ABB Prepetition Collateral, which includes the vessels identified in **Annex A** hereto (which, in each case, constitute ABB Prepetition Vessel Collateral (as defined

below)), the Debtors' ability to manage, administer and preserve their estates would be immediately and irreparably harmed, thereby materially impairing their respective estates and creditors and the likelihood of a successful outcome in these Chapter 11 Cases. The terms of the use of the ABB Prepetition Collateral (as defined in **Annex A**), including the ABB Term Cash Collateral,[3] including the grant of adequate protection and the other rights and benefits of the parties set forth in this Interim Order, are fair and reasonable, the product of arms' length negotiations, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. Accordingly, entry of this Interim Order is in the best interests of the Debtors, their respective estates and their creditors and other parties-in-interest.

I. **Adequate Protection.** The ABB Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of their ABB Prepetition Collateral, including the ABB Term Cash Collateral, to the adequate protection of their respective interests in the ABB Prepetition Collateral, including the ABB Term Cash Collateral. The ABB Agent and ABB Lenders have negotiated in good faith regarding the Debtors' use of the ABB Prepetition Collateral, including the ABB Term Cash Collateral, and have agreed to permit the Debtors to use the ABB Prepetition Collateral, including the ABB Term Cash Collateral in accordance with this Interim Order, subject to the other terms and conditions set forth herein, including the protections afforded parties in "good faith" under section 363(m) of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of

---

[3] "ABB Cash Collateral" shall mean all cash collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) to the extent that the ABB Agents or the other ABB Parties have been provided interests therein as provided under the ABB Secured Term Loan Documents, along with all earnings generated by any of the ABB Prepetition Vessel Collateral and/or other ABB Prepetition Collateral, whether any of the foregoing accrued prior to and/or after the Petition Date.

the ABB Prepetition Collateral, including the ABB Term Cash Collateral, are fair and reasonable, reflect the Debtors' prudent business judgment, and constitute reasonably equivalent value and fair consideration for the ABB Agent and ABB Lenders' consent thereto.

J.     **Consent Order.**  The Debtors and the ABB Parties agree that this Interim Order is a consent order and that any modification or amendment hereof requires the prior written consent of the ABB Parties and the Debtors.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**,

1.     **Motion Granted**.  The Motion is GRANTED on an interim basis as herein provided and the use of the ABB Prepetition Collateral, including the ABB Term Cash Collateral, is authorized for each Debtor, subject and pursuant to the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn, waived or otherwise resolved are hereby denied and overruled.

2.     **Authorization to Use ABB Prepetition Collateral, including ABB Term Cash Collateral**.  The Debtors are authorized to use the ABB Prepetition Collateral, including the ABB Term Cash Collateral, during the period beginning on the Petition Date until the occurrence of the Termination Date (as defined below) subject to the terms and conditions of this Interim Order and to the adequate protection granted to or for the benefit of the ABB Parties as set forth herein.

3.     **Termination**.  The occurrence of any of the following events set forth in clauses (a) through (q) below shall constitute a "Termination Event" unless waived in writing by the ABB Lenders:

a.     this Interim Order shall cease to be in full force and effect for any reason;

b.       an order approving the relief requested in the Motion on a final basis (in form and substance satisfactory to the ABB Lenders, the "Final Order") shall not have been entered by the Court on or before 45 days following entry of this Interim Order, unless an extension is otherwise agreed to in writing by the ABB Agents (as defined in **Annex A**);

c.       any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code, a chapter 11 trustee or examiner with expanded powers pursuant to section 1106(b) of the Bankruptcy Code shall be appointed in any of the Chapter 11 Cases, or any of the Debtors, the DIP Agent, or the DIP Lenders shall seek, or shall support (in any such case by way of, *inter alia*, any motion or pleading filed with this Court or any other writing to another party in interest executed by or on behalf of any Debtor, the DIP Agent, or the DIP Lenders) any person's motion or other pleading seeking any of the foregoing relief;

d.       an order shall have been entered (or any of the Debtors, the DIP Agent, or the DIP Lenders shall seek an order) reversing, amending, supplementing, extending, staying, vacating, or otherwise modifying this Interim Order without the prior written consent of the ABB Parties;

e.       any modification shall be made to the DIP Orders or otherwise to the DIP Financing that could reasonably be expected to result in nonpayment of the Adequate Protection Payments granted hereunder, or otherwise adversely impacts the ABB Parties (including, without limitation, any amendment that contravenes or modifies, or attempts to contravene or modify, the provisions of paragraph 12 hereof) without the prior written consent of ABB Agent and ABB Lenders;

f.       the Debtors shall file, or the Court shall grant, any application, motion or

borrowing request seeking (i) to incur indebtedness from any party secured by a lien on, or otherwise having a claim against or recourse to, as the case may be, any Debtor Borrowers or Debtor Other Obligors, or the ABB Prepetition Collateral, other than the Junior DIP Liens (as defined below) without the prior written consent of the ABB Agent and ABB Lenders, or (ii) the use of the ABB Term Cash Collateral on a nonconsensual basis;

g. the Court shall grant any application by any party seeking payment of any claim on a superpriority administrative claim basis *pari passu* with, or senior to, the Adequate Protection Superpriority Claims without the written consent of the ABB Lenders;

h. the entry of an order by this Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay applicable under section 362 of the Bankruptcy Code upon the Petition Date to allow a holder or holders of any lien or security interest (including, without limitation, any DIP Agent or other DIP Secured Party in respect of the Junior DIP Liens) to foreclose on or otherwise enforce remedies against and/or realize upon their liens or security interests in respect of any ABB Collateral;

i. any ABB Prepetition Obligor breaches any material covenant or undertaking (after any applicable cure period set forth in the ABB Secured Term Loan Documents) in any of the ABB Secured Term Loan Documents relating to insurance, operation, management and maintenance of any vessel that is ABB Prepetition Vessel Collateral, including, without limitation, any breach in connection with expropriation, arrest, detention, capture, condemnation, confiscation, requisition, purchase, seizure, or forfeiture of or any taking title to, the applicable vessel that is ABB Prepetition Vessel Collateral;

j. any Debtor shall sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber or

otherwise dispose of any portion of the ABB Prepetition Collateral, except as expressly permitted by this Interim Order and the ABB Secured Term Loan Documents, or this Court or any other court having jurisdiction to do so shall enter an order authorizing any sale or disposition of any ABB Prepetition Collateral, in each case without the prior written consent of ABB Agent and ABB Lenders;

k. any Debtor shall transfer ABB Term Cash Collateral to an account in the name of a Debtor that is not a Debtor Borrower or Debtor Other Obligor or that is not maintained with an ABB Agent or ABB Lenders or subject to an ABB Agent's or ABB Lenders' control; *provided* that, notwithstanding the foregoing, the Debtors may continue making transfers or payments in the ordinary course consistent with past practice, including, but not limited to, any such management fee or service fee payments; *provided further* that the rights of ABB Parties with respect to any such management fee or service fee payment or payments (including all rights to object to the payment of any particular fee) are preserved.

l. subject to a five (5) day grace period, the Debtors shall fail to make any Adequate Protection Payment when due;

m. the filing by any Debtor, the DIP Agent, or the DIP Lenders seeking an order, or the entry of an order of this Court or any other court having jurisdiction to do so avoiding, disgorging, or requiring repayment of any portion of the Adequate Protection Payments made by or on behalf of the Debtors hereunder;

n. the filing by any Debtor, the DIP Agent, or the DIP Lenders seeking an order, or the entry of an order of this Court or any other court having jurisdiction to do so approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of ABB Prepetition Collateral;

o. any Debtor, the DIP Agent, or the DIP Lenders shall assert (or shall support any other person in asserting) the invalidity, non-perfection or unenforceability of any of the Adequate Protection Liens or the invalidity and unenforceability of the Adequate Protection Superpriority Claims;

p. any Debtor, the DIP Agent, or the DIP Lenders shall seek, or shall support (in any such case by way of, *inter alia*, any motion or pleading filed with this Court or any other writing to another party in interest executed by or on behalf of any Debtor, the DIP Agent, or the DIP Lenders) any person's motion, to disallow or subordinate (whether equitably, contractually or otherwise) in whole or in part any of the ABB Parties' claims in respect of the ABB Prepetition Term Obligations or to challenge the validity, enforceability, perfection or priority of any liens or security interests in favor of any ABB Party (including with, without limitation, any ABB Prepetition Term Lien); or

q. the Debtors shall fail to comply with any provision of this Interim Order in any material respect.

4. **Remedies upon a Termination Date**.

a. Notwithstanding anything herein, the Debtors' authorization to use ABB Term Cash Collateral hereunder shall automatically terminate on the date (the "Termination Date"), that is (i) five (5) days from the date (the "Termination Notice Date") on which written notice (a "Termination Notice") of the occurrence of a Termination Event is given (which notice may be given electronically) by or on behalf of an ABB Agent or ABB Lenders to counsel for the Debtors (such period commencing on the Termination Notice Date and ending five (5) days later, the "Termination Notice Period") or (ii) the effective date of any plan of reorganization. The rights and remedies of ABB Parties specified herein are cumulative

and not exclusive of any rights or remedies that they may otherwise have. The only permissible basis for the Debtors or any party in interest to contest, challenge or object to a Termination Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Termination Notice (*i.e.*, whether such Termination Event or Events validly occurred and have not been cured or waived in accordance with this Interim Order).

b. Upon and after delivery of the Termination Notice, the Debtors and the ABBs Agent and ABB Lenders consent to a hearing on an expedited basis to consider whether the automatic stay may be lifted so that the ABB Parties may exercise any and all of their respective rights set forth in this Interim Order or in the ABB Secured Term Loan Documents.

c. During the Termination Notice Period, the Debtors' right to use ABB Term Cash Collateral pursuant to this Interim Order shall be limited to the payment of any other critical business-related expenses necessary to operate the Debtor Borrowers' or Debtor Other Obligors' business or preserve ABB Prepetition Collateral, including but not limited to payments in respect of health or human safety, in each case with prior notice to the ABB Agents and ABB Lenders.

d. The delay or failure to exercise rights and remedies under this Interim Order or any Newbuilding Secured Term Loan Document shall not constitute a waiver of the ABB Parties' rights hereunder, thereunder or otherwise. The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided to the ABB Parties under this Interim Order, which rights, remedies, benefits and protections shall survive the Termination Date.

e. The automatic stay imposed under Bankruptcy Code section 362(a)

upon the Petition Date is hereby modified as necessary, without further order or notice of the Court, to (i) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims and to incur all liabilities and obligations to the ABB Parties under this Interim Order, and (ii) authorize the ABB Parties to retain any applicable payments hereunder.

f. Nothing included herein shall prejudice, impair, or otherwise affect ABB's rights to seek any other or supplemental relief in respect of the Debtors (including any other or additional adequate protection and/or relief from stay).

5. **Adequate Protection**. As adequate protection for the ABB Parties' respective interests in the ABB Prepetition Collateral, including ABB Term Cash Collateral, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of ABB Prepetition Collateral, including any ABB Term Cash Collateral, the ABB Parties are hereby granted the following (the "Adequate Protection"), effective from the Petition Date:

a. **Adequate Protection Liens.** Solely to the extent of, and in an aggregate amount equal to, any diminution in value of the ABB Parties' respective interests in ABB Prepetition Collateral resulting from, among other things, the use, sale or lease by the Debtors of ABB Prepetition Collateral (including the use of ABB Term Cash Collateral) and/or the imposition or enforcement of the automatic stay provided for under section 362(a) of the Bankruptcy Code and/or the incurrence of the DIP Obligations (as defined in the Motion) and the granting of the Junior DIP Liens ("Diminution in Value") from and after the Petition Date, the ABB Parties' (or the respective ABB Agent on its behalf) is hereby granted the following security interests and liens (collectively, the "Adequate Protection Liens"), pursuant to sections 361(2), 363(c)(2), and 363(e) of the Bankruptcy Code:

(i) valid, binding, continuing, enforceable, fully-perfected,

non-avoidable (x) first priority replacement liens on, and security interests in, the ABB Collateral of each borrower under the ABB Secured Term Loan Documents that is also a Debtor in these Chapter 11 Cases (each a "Debtor Borrower") under the respective ABB Secured Term Loan Documents under which such ABB Party is a party and (y) replacement liens on, and security interests in, the ABB Collateral of each other obligor under the ABB Secured Term Loan Documents that is also a Debtor in these Chapter 11 Cases (each a "Debtor Other Obligor") against whom the ABB Party has a ABB Prepetition Term Lien (which replacement liens shall be junior only to any first priority ABB Adequate Protection Liens and ABB Prepetition Term Liens of any other ABB Party on such ABB Collateral pursuant to this Interim Order and the ABB Secured Term Loan Documents), in each case that is not subject to (1) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (2) valid and non-avoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; and

(ii) valid, binding, continuing, enforceable, fully-perfected non-avoidable senior priming replacement liens on, and security interests in, all other ABB Collateral of each Debtor Borrower and each Debtor Other Obligor under the respective ABB Secured Term Loan Documents under which such ABB Party is a party, which replacement liens and security interests (x) against the Debtor Borrowers under the respective ABB Secured Term Loan Documents under which ABB is a party shall be (x) junior only to any valid, perfected and non-avoidable liens in existence as of the Petition Date and any valid and non-avoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case, which are senior in priority to the ABB Prepetition Term Liens and are permitted by the terms of the ABB Secured

Term Loan Documents (such liens set forth in this clause (x), the "<u>Senior Third Party Liens</u>"), and (y) senior to the Junior DIP Liens (as herein defined), the ABB Prepetition Term Liens, and all other liens and security interests of any third parties (other than any Senior Third Party Liens). Notwithstanding anything to the contrary, any replacement liens and security interests of the ABB Parties against a Debtor Borrower under the respective ABB Secured Term Loan Documents to which such ABB Party is a party shall be senior and prior to any replacement liens and security interests of any other ABB Party against such Debtor Borrower.

   b. **ABB Collateral**. "<u>ABB Collateral</u>" shall mean, collectively, (i) all ABB Prepetition Collateral, including the ABB Prepetition Vessel Collateral, and all postpetition revenues from or related to the ABB Prepetition Vessel Collateral, (ii) insurances, bank accounts and other security or deposit accounts (including, for the avoidance of doubt, any accounts opened prior to, on and/or after the Petition Date) of the Debtor Borrowers or Debtor Other Obligors to the extent that the ABB Parties hold a security interest in such insurances, bank accounts and other security or deposit accounts pursuant to the ABB Secured Term Loan Documents, (iii) all equity interests, intercompany claims, accounts and receivables (and all rights associated therewith), in each case, held by or recorded in the name of any Debtor Borrower or any Debtor Other Obligor to the extent that such equity interest, intercompany claim, account or receivable or products or proceeds thereof constitutes ABB Prepetition Collateral, and (iv) any and all proceeds, products, rents and profits of all of the foregoing; *provided* that, for the avoidance of doubt, ABB Collateral shall not include any of the claims and causes of action by the estates of the Debtor Borrowers for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>") or any proceeds thereof.

c.  **Status of the Adequate Protection Liens**.  The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor Borrowers and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, including, for the avoidance of doubt, the Junior DIP Liens and the Carve Out, or (ii) except as expressly set forth in in this Interim Order (or the Final Order), subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.  The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of the ABB Agents or the other ABB Parties or for the benefit of the ABB Parties and not in substitution therefor.

d.  **Effectiveness of Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of liens, or other similar instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, each ABB Agent may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar instruments or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11

Cases. The Debtors shall execute and deliver to the ABB Agents all such financing statements, mortgages, security agreements, notices and other documents as the ABB Agents may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of the Adequate Protection Liens. The ABB Agents, in their sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

e. **Adequate Protection Superpriority Claims**. To the extent of, and in an aggregate amount equal to, any Diminution in Value in respect of the ABB Prepetition Collateral securing its respective ABB Prepetition Term Obligations, each ABB Party is hereby granted an allowed superpriority administrative expense claim against each Debtor Borrower under the respective ABB Secured Term Loan Documents under which such ABB Party is a party and each Debtor Other Obligor against which such ABB Party has an ABB Prepetition Term Lien (collectively, the "Adequate Protection Superpriority Claims"), which Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtor Borrowers and Debtor Other Obligors against which such ABB Party has an ABB Prepetition Term Lien, now existing or hereafter arising, of any kind whatsoever, including, without limitation, (i) all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code, including in favor of the DIP Agent or the DIP Lenders (ii) the Carve Out and (iii) the Junior DIP Liens.

f.   **Scope of Adequate Protection Liens and Adequate Protection Superpriority Claims**.  Except as otherwise provided, herein, (i) the Adequate Protection Liens granted to each ABB Party hereunder shall be limited to (x) ABB Prepetition Term Collateral and (y) any other ABB Collateral of any Debtor Borrower under the respective ABB Secured Term Loan Documents under which such ABB Party is a party and any Debtor Other Obligor against whom such ABB Party has an ABB Prepetition Term Lien, and (ii) the Adequate Protection Superpriority Claims granted to each ABB Party hereunder shall be limited to claims against (x) the Debtor Borrowers under the applicable Prepetition Term Facility under which such ABB Party is a party and (y) any other Debtor against whom such ABB Party has a ABB Prepetition Term Lien.  For the avoidance of doubt, Aegean Marine Petroleum Network, Inc., Aegean Shipholdings Inc., and Aegean Bunkering Services Inc. shall not grant Adequate Protection Liens or Adequate Protection Superpriority Claims.

g.   **Adequate Protection Payments**.

(i)   The ABB Agents (on behalf of the respective ABB Parties) shall each receive from the Debtors (a) within five (5) business days following the entry of this Interim Order, cash payment of all accrued and unpaid interest (whether accrued prior to or after the Petition Date) on the applicable ABB Prepetition Term Obligations at the non-default rates provided for in the respective ABB Secured Term Loan Documents (it being understood that interest shall accrue at the default rate to the fullest extent permitted under the Bankruptcy Code, with all rights to object thereto fully preserved), and all accrued and unpaid fees and costs (whether accrued prior to or after the Petition Date) owing to the ABB Parties under the respective ABB Secured Term Loan Documents, and (b) thereafter, as and when due under the respective ABB Secured Term Loan Documents, cash payment of all debt service obligations

under the ABB Secured Term Loan Documents including, without limitation, scheduled payments of principal and accrued and unpaid interest, at the applicable non-default rates provided in the respective ABB Secured Term Loan Documents (it being understood that interest shall accrue at the default rate to the fullest extent permitted under the Bankruptcy Code, with all rights to object thereto fully preserved), and any fees and costs due and payable under the respective ABB Secured Term Loan Documents, including, without limitation, any accrued fees owing to the ABB Parties under the respective ABB Secured Term Loan Documents.

        (ii)    The Debtors shall pay in full, in cash and in immediately available funds, all reasonable and documented fees, costs and expenses (whether incurred prior to, on or after the Petition Date) of the ABB Agents (on behalf of the respective ABB Parties) owing to the ABB Agents and/or the other ABB Parties under the respective ABB Secured Term Loan Documents, including all reasonable and documented professional and advisory fees, costs and expenses of their legal, financial and other professionals, including, White & Case LLP and any financial advisor and any other local, foreign or regulatory counsel as may at any time be necessary (collectively, the "ABB Professionals"), (x) promptly upon the entry of this Interim Order in the full amounts set forth in any outstanding invoices from the ABB Agents and/or the other ABB Parties and ABB Professionals received by the Debtors at least two (2) business days prior to the entry of this Interim Order; and (y) thereafter, within ten (10) business days after the presentment of any such invoices to the Debtors (which invoices shall include reasonable supporting detail in the form of standard detailed invoices, which may be redacted to protect privileged, confidential, or commercially or strategically sensitive information) (the payment obligations set forth in this paragraph 5(g), the "Adequate Protection

Payments"). The ABB Agents and/or the ABB Parties and ABB Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file any fee applications with the Court, but shall provide copies of their invoices (which may be redacted as set forth above) to the U.S. Trustee and any Committee upon written request. Notwithstanding anything to the contrary in this Interim Order or the DIP Order, but subject to 11 U.S.C. 506(c) [SMB 11/13/18] the foregoing, payment of any documented fees, costs and expenses of the ABB Parties pursuant to this Interim Order or the DIP Order, including all reasonable and documented professional and advisory fees, costs, and expenses of legal, financial and other professionals, shall not be subject to disgorgement.

6. **Reporting**. The Debtors shall comply with the reporting requirements set forth in the ABB Secured Term Loan Documents, and shall provide (or continue to provide, as applicable) the following additional reporting to the ABB Agents:

a. A copy of any Approved Budget (as defined in the DIP Order) provided to the DIP Lenders in satisfaction of the Debtors' reporting requirements under the DIP Order and/or the DIP Documents.

b. A monthly fleet status report on all vessels that constitute ABB Prepetition Vessel Collateral explaining the location of the relevant vessel, whether such vessel is being chartered out, and any material changes in connection with the Debtors' use of such vessel as compared to historical practice.

c. Written notice to the ABB Agents of any early termination notices provided by any chartering parties pursuant to the relevant charters.

d. Written notice to the ABB Agents of any other cash collateral or adequate protection stipulation, consent order (including, without limitation, any consent order

substantially in the form of this Interim Order) related to cash collateral or adequate protection, or other cash collateral or adequate protection order entered in the Chapter 11 Cases with respect to any other secured creditor of the Debtors.

e. The Debtors shall promptly provide notice to each of the ABB Agents (with a copy to their counsel) when any Debtor has any knowledge of the occurrence of any Termination Event.

7. **Access to Records and Collateral Inspection Rights**. In addition to, and without limiting, any rights to access that ABB has under their respective ABB Secured Term Loan Documents (which rights shall be preserved under this Interim Order), upon reasonable notice and at reasonable times, the Debtors shall permit representatives, agents and employees of the ABB Agents (a) to have access to and inspect the ABB Prepetition Vessel Collateral, (b) to examine the books and records of the Debtor Borrowers in connection with the ABB Prepetition Collateral, and (c) to discuss the affairs, finances, and condition of the ABB Prepetition Collateral with a representative of the Debtors.

8. **Insurance and Maintenance of ABB Prepetition Collateral**. The Debtors shall provide continued maintenance of and appropriate insurance on the Debtors' assets (including the vessels that are ABB Prepetition Vessel Collateral), in amounts consistent with the Debtors' prepetition practices and as set forth in the applicable ABB Secured Term Loan Documents.

9. **Carve Out.** For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the Final Order, the DIP Order, the DIP Credit Agreements or any other DIP Loan Documents, the Carve Out shall be senior to all liens and claims securing the DIP Credit Facilities, including the Junior DIP Liens, and any and all other forms of

adequate protection, liens, or claims securing the DIP Obligations, but shall not be senior to the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the ABB Prepetition Term Liens and the ABB Prepetition Term Obligations, and the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the ABB Prepetition Term Liens and the ABB Prepetition Term Obligations shall not be subject to the Carve Out.

10.     **Lien Stipulations and Challenges**.  The Debtors and ABB Agent and ABB Lenders shall negotiate in good faith regarding stipulations to be included in the Final Order related to (i) the validity, enforceability, allowability, priority, secured status, or amount of the ABB Prepetition Term Obligations and ABB Prepetition Term Liens, (ii) liabilities to third parties, (iii) claims and causes of action, and (iv) related releases and indemnities (collectively, the "Stipulations"), and regarding the ability of parties-in-interest to challenge such Stipulations and the timing for and scope of any such challenge in connection therewith.

11.     **Limitations on Use of ABB Term Cash Collateral**.  Notwithstanding anything herein to the contrary, no portion of the proceeds of the ABB Collateral may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring indebtedness other than as expressly permitted under this Interim Order, (b) preventing, hindering, impeding, or delaying any of the ABB Agents' or any other ABB Party's enforcement or realization upon, or exercise of rights in respect of any of the ABB Collateral (including any ABB Prepetition Collateral), (c) seeking to amend or modify any of the rights or interests granted to any ABB Agent or other ABB Party under this Interim Order or the respective ABB Secured Term Loan Documents, including seeking to use the ABB Term Cash Collateral on a contested basis, (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any challenge or any other action

under chapter 5 of the Bankruptcy Code (or any similar law), against any of the former, current and future ABB Party, or any of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (each of the foregoing, solely in their capacities as such), or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of any ABB Party, arising out of, in connection with, or relating to the ABB Secured Term Loan Documents, or the transactions contemplated thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity and extent of the ABB Prepetition Term Obligations or the validity, extent, perfection and priority of the ABB Prepetition Term Liens, (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the ABB Prepetition Term Liens, in whole or in part, (v) appeal or otherwise challenge any order giving effect to this Interim Order or (vi) any action that has the effect of preventing, hindering, impeding or delaying (whether directly or indirectly) the ABB Agents or any other ABB Party in respect of the ABB Prepetition Term Liens, ABB Prepetition Term Obligations, Adequate Protection Liens or Adequate Protection

Superpriority Claims or any of their rights, powers, or benefits hereunder or in the ABB Secured Term Loan Documents anywhere in the world; *provided* that no more than $25,000 in the aggregate may be used by any Committee solely to investigate (but not prosecute or challenge) the Stipulations.

12. **Consent to Junior DIP Liens; Priority and Conditions**.

a. Subject in all respects to the terms and conditions (including the priorities) set forth in this Interim Order, including, without limitation, the intercreditor provisions set forth in this paragraph 12, the ABB Agent and ABB Lenders consent to the granting of junior liens to the DIP Secured Parties to secure the DIP Obligations (the "Junior DIP Liens") on the ABB Prepetition Collateral, which Junior DIP Liens shall be junior to and subordinated in all respects to the ABB Prepetition Term Liens and the Adequate Protection Liens, and to any ABB Prepetition Term Obligations and Adequate Protection Superpriority Claims of the ABB Parties against the applicable Debtors, as provided herein, *provided* that nothing herein shall limit or alter the rights of the ABB Agents or any other ABB Party, or any other party, to object to any other liens or security interests, or to any subsequent debtor-in-possession financing.

b. Notwithstanding anything herein, in the DIP Order or in the DIP Credit Agreements to the contrary, no DIP Agent or other DIP Secured Party may foreclose or otherwise exercise remedies following any default or Event of Default under the DIP Order or DIP Loan Documents, or otherwise, with respect to any Collateral (including any ABB Prepetition Collateral) unless and until all ABB Prepetition Term Obligations (and any Adequate Protection Superpriority Claims) are paid in full and in cash. In order to give effect to the intended priority waterfall in respect of the ABB Collateral (including any

ABB Prepetition Collateral) set forth in this Interim Order, and the Debtor Borrowers and Debtor Other Obligors, in the event any ABB Collateral (including any ABB Prepetition Collateral) is received by any DIP Agent or any other DIP Secured Party, in connection with the exercise of remedies following a default or Event of Default under the DIP Order or DIP Credit Agreements, or in connection with any mandatory prepayment required to be made pursuant to the DIP Loan Documents, shall be held in trust for the benefit of the ABB Parties and shall be distributed in accordance with the priorities set forth herein and in the ABB Secured Term Loan Documents; *provided* that, for the avoidance of doubt, the ABB Prepetition Collateral shall be available first to satisfy the underlying applicable ABB Prepetition Term Obligations (and any Adequate Protection Superpriority Claims) until the payment in full and in cash of all ABB Prepetition Term Obligations (and any Adequate Protection Superpriority Claims).

c.     Until all ABB Prepetition Term Obligations (and any Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, the ABB Agents and/or the ABB Parties, as applicable, shall have the exclusive right to take and continue any enforcement action against or otherwise in respect of the respective ABB Prepetition Collateral pursuant to the terms and conditions of this Interim Order, the ABB Secured Term Loan Documents and applicable law, without any consultation with or consent of any DIP Agent or DIP Lender, and to make determinations regarding the release of, disposition of, or restrictions with respect to the ABB Prepetition Collateral in accordance with this Interim Order and ABB Secured Term Loan Documents, without any consultation with or the consent of the DIP Agents or the other DIP Secured Parties.  In taking and continuing any enforcement action in respect of the ABB Prepetition Term Liens and/or the Adequate Protection Liens, the respective ABB

Agents and/or ABB Parties, as applicable, may enforce the provisions of this Interim Order and their respective ABB Secured Term Loan Documents and exercise remedies hereunder and thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion.

d.     In addition, if prior to the indefeasible payment in full and in cash of the ABB Prepetition Term Obligations (and any Adequate Superpriority Claims), in connection with an enforcement action in respect of the ABB Prepetition Term Liens and/or the Adequate Protection Liens, or any sale, transfer, license, lease or other disposition (including any sale and leaseback transaction) of any ABB Prepetition Collateral permitted under this Interim Order and the ABB Secured Term Loan Documents, the ABB Agents and/or any other ABB Parties release any of their respective liens on any part of the ABB Prepetition Collateral, then any Junior DIP Liens on such ABB Prepetition Collateral shall be automatically, unconditionally and simultaneously released without any action on the part of any party, including the DIP Agents or the other DIP Secured Parties, provided that any such Junior DIP Liens shall attach to any the proceeds of such ABB Collateral, subject to the priorities set forth in this Interim Order.

e.     The DIP Agents and the other DIP Secured Parties waive any and all rights they may have as a junior lien creditor or otherwise to object to the manner in which the ABB Agents or the other ABB Parties seek to enforce or collect the ABB Prepetition Term Obligations or the ABB Prepetition Term Liens securing the ABB Prepetition Term Obligations granted in any of the ABB Prepetition Collateral undertaken in accordance with this Interim Order and the ABB Secured Term Loan Documents regardless of whether any action or failure to act by or on behalf of the ABB Agents or the other ABB Parties is adverse to the interest of the DIP Agents or the other DIP Secured Parties.

f.     Neither the ABB Agents nor the other ABB Parties shall have any obligation whatsoever to any DIP Agent or other DIP Secured Party to ensure that the ABB Prepetition Collateral is genuine or owned by any of the Debtor obligors or to preserve rights or benefits of any person except as expressly set forth herein.  The ABB Agents and the other ABB Parties, acting pursuant to this paragraph 12 shall not have, by reason of the ABB Secured Term Loan Documents, the DIP Order, the DIP Loan Documents, this Interim Order or any other document, any duty or other fiduciary relationship to or in respect of any DIP Agent or other DIP Secured Party.

g.     Until all ABB Prepetition Term Obligations (and all Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, neither any DIP Agent nor any other DIP Secured Party may take or receive any ABB Collateral or any proceeds of ABB Collateral in connection with the exercise of any right or remedy (including setoff) with respect to any ABB Collateral in its capacity as a creditor or otherwise.  Without limiting the generality of the foregoing, unless and until all ABB Prepetition Term Obligations (and all Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, except as expressly provided in this Interim Order, the sole right of the DIP Agents and the other DIP Secured Parties with respect to the ABB Collateral is to hold a junior lien on the ABB Collateral pursuant to the DIP Order, the DIP Loan Documents and this Interim Order for the period and to the extent permitted in this Interim Order and to receive a share of the proceeds thereof, if any, after the indefeasible payment in full and in cash of all ABB Prepetition Term Obligations (and all Adequate Protection Superpriority Claims).

h.     Except as otherwise specifically provided herein to the contrary and solely for purposes of this Interim Order, the DIP Agents and other DIP Secured Parties each

hereby waive: (i) promptness, diligence, notice of acceptance, notice of default, notice of nonpayment, notice of intent to accelerate, notice of acceleration and any other notice with respect to any of the ABB Prepetition Term Obligations and this Interim Order; (ii) any requirement that the ABB Agents, the other ABB Parties or any other secured party protect, secure, perfect, or insure any security interest or lien on the ABB Collateral or exhaust any right or take any action against the Debtor Borrowers and Debtor Other Obligors or any other person or any ABB Collateral; and (iii) any right of the DIP Agents or any other DIP Secured Party to require any ABB Agent or other ABB Party to marshal the assets of the Debtors.

i. Any right of the DIP Agents or other DIP Secured Parties to credit bid on the ABB Collateral shall be subject to the prior or concurrent payment in full and in cash of all ABB Prepetition Term Obligations (and any Adequate Protection Superpriority Claims).

j. The terms and provisions of this paragraph 12 shall apply notwithstanding anything to the contrary in the DIP Order or the DIP Loan Documents, and shall control in all respects as to the subject matter and provisions (including, without limitation, as to any relative priorities) set forth herein.

13. **Continuing Effect of this Interim Order**. Any dismissal, conversion, or substantive consolidation of the Chapter 11 Cases shall not affect the rights of the ABB Parties under this Interim Order, and all of their rights and remedies hereunder shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated. Any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise shall provide or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the ABB Prepetition Term Obligations,

the ABB Prepetition Term Liens, the Adequate Protection Superpriority Claims and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order and the ABB Secured Term Loan Documents (and that such Adequate Protection Superpriority Claims and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all persons), and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

14. **Cash Management**. The Debtors shall maintain their cash management arrangement in a manner consistent with past practice and as described in the Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions and (II) Granting Related Relief [Dkt. No. 4] (the "Cash Management Order").

15. **Proofs of Claim**. None of the ABB Agents nor any other ABB Party shall be required to file proofs of claim or proofs of secured claim in any of the Chapter 11 Cases or Successor Cases (as defined below) and the Debtors' stipulations herein shall be deemed to constitute a timely filed proof of claim against each of the applicable Debtors in the Chapter 11 Cases. Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to the ABB Agents or the other ABB Parties with respect to all claims, and interest, including, without limitation, claims arising under or related to the ABB Secured Term Loan Documents. Notwithstanding the foregoing, or any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each ABB Agent on behalf of itself and

the applicable ABB Parties, respectively, is hereby authorized and entitled, in each case in its respective sole discretion, but not required, to file (and amend and/or supplement, as such ABB Agent and the respective ABB Parties see fit) a master proof of claim or proof of secured claim and/or aggregate proofs of claim or proofs of secured claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed pursuant to this Interim Order and/or the Final Order. Any proof of claim filed by an Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective ABB Parties.

16. **No Marshaling/Applications of Proceeds**. Subject to and to the extend provided in ~~the entry of~~ [SMB 11/13/18] the Final Order, the ABB Agents and the other ABB Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the ABB Collateral (including any ABB Prepetition Collateral), as the case may be, and proceeds shall be received and applied in accordance with this Interim Order and ABB Secured Term Loan Documents notwithstanding any other agreement or provision to the contrary.

17. **Section 552(b)**. ~~The ABB Agents and the other ABB Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, including, for the avoidance of doubt, that postpetition revenues and payments in connection with any ABB Prepetition Collateral (including (i) postpetition payments generated by operation of vessels that are ABB Prepetition Vessel Collateral on and after the Petition Date and under any contracts in respect thereof in effect on and after the Petition Date and (ii) all postpetition revenues deposited into earnings or operating accounts associated with or related to any ABB Prepetition Vessel Collateral and owned by a Debtor Borrower under the applicable ABB Prepetition Term Facility under which such ABB Party is a party) are proceeds under~~

~~section 552(b), in each case to the extent such ABB Party was granted an assignment, pledge~~ ~~or other transfer of legal or beneficial title or interest in respect of, or security interest in, or a~~ ~~lien on, such ABB Prepetition Collateral (including, without limitation, contracts, payments or~~ ~~revenues in respect thereof under the applicable ABB Prepetition Term Facility).~~[SMB 11/13/18] And to the extend provided in ~~entry of~~ [SMB 11/13/18] the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the ABB Agents or any other ABB Party with respect to proceeds, product, offspring or profits of any of the ABB Prepetition Collateral.

18.    **Section 507(b) Reservation**.   Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the ABB Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the ABB Prepetition Collateral (including the ABB Term Cash Collateral) during the Chapter 11 Cases or any successor cases to the Chapter 11 Cases including, but not limited to, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the chapter 11 cases, or in any other proceedings superseding or related to any of the Chapter 11 Cases (collectively, "Successor Cases").

19.    **Section 506(c) Waiver**.   Subject to and to the extend provided in ~~the entry~~ [SMB 11/13/18 of the Final Order, no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases or any Successor Cases at any time shall be charged against the ABB Parties, any of their respective claims, any ABB Prepetition Term Obligations, any Adequate Protection Liens, any Adequate Protection Superpriority Claims, any ABB Prepetition Term Liens or any ABB Prepetition Collateral, including any ABB Term Cash Collateral, pursuant to sections 506© or 105(a) of the Bankruptcy Code, or otherwise,

without the prior written consent of the ABB Agents. Nothing contained in this Interim Order shall be deemed a consent by the ABB Agents or any other ABB Secured Parties to any charge, lien, assessment or claim against, or in respect of, the ABB Prepetition Collateral, including the ABB Term Cash Collateral, under section 506(c) or 105(a) of the Bankruptcy Code, or otherwise.

20. ~~**Credit Bid**. Subject in all respects to the terms of the ABB Secured Term Loan Documents, the ABB Agents on behalf of and at the direction of ABB Lenders shall have the right to credit bid under, and subject to the terms of, section 363(k) of the Bankruptcy Code, all of their respective claims (including any Adequate Protection Superpriority Claims) in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan.~~ [SMB 11/13/18]

21. **Good Faith**. The ABB Parties have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Interim Order and their reliance on this Interim Order has been and is in good faith.

22. ~~**No Release of Guarantors**. Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any Debtor or non-Debtor guarantor to any ABB Party with respect to their respective obligations under any of the ABB Secured Term Loan Documents.~~ [SMB 11/13/18]

23. **No Waiver by Failure to Seek Relief; Right to Seek Additional Adequate Protection**. The failure of any ABB Party to seek relief or otherwise exercise its rights and remedies under this Interim Order, the ABB Secured Term Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of any ABB Party. This Interim Order is without prejudice to, and

does not constitute a waiver of, expressly or implicitly, the rights of the ABB Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

24. **Modification of Automatic Stay**. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant (or continue to grant, as applicable) the Adequate Protection Liens and incur the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the terms herein; (d) authorize the Debtors to pay, and the respective ABB Agents to retain and apply, any payments made in accordance with the terms of this Interim Order and the ABB Secured Term Loan Documents; and (e) permit the ABB Parties, to terminate the use of the ABB Term Cash Collateral in accordance with this Interim Order.

25. **No Third Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26. **Binding Effect of Interim Order**. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding in accordance with its terms upon the Debtors, the ABB Parties, all other creditors of any of the Debtors, and all other parties-in-interest and each of their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of these Chapter 11 Cases, or upon dismissal of any of these

Chapter 11 Cases.

27. **Survival**.  The provisions of this  Interim Order and any actions taken pursuant hereto shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii) or (iii) of this paragraph 27, the terms and provisions of this Interim Order as well as the Adequate Protection Liens and Adequate Protection Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order

28. **Effect of this Interim Order**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry.  To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed as such.

29. **Modification  or  Amendment**.  Except  as  otherwise  provided  herein,  no waiver, modification or amendment of any of the provision hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the ABB Agents (on behalf of the ABB Parties), and approved by the Court after notice to parties-in-interest.

30. **Jurisdiction**. The Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

31. **Debtors' Authorization**.  The Debtors are authorized and empowered to take all actions necessary to implement the provisions of this Interim Order.

32. **Controlling Effect of Interim Order**.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the Cash

Management Order, the DIP Credit Agreements, the other DIP Loan Documents, the DIP Order, or any other order of this Court (other than the Final Order), the provisions of this Interim Order shall control to the extent of such conflict.

33. **Cash Collateral Orders for Other Secured Vessel Lenders**. If, acting in its sole discretion, any ABB Agent and/or ABB Lenders determines that any Debtor has provided any other secured vessel lender greater rights or protections under any cash collateral order or otherwise than the ABB Parties have under this Interim Order, then the Debtors shall, at the request of such ABB Agent and/or ABB Lenders, as soon as reasonably practicable, seek Court approval of an amended cash collateral order with the ABB Parties that incorporates such rights or protections for the ABB Parties' benefit.

34. **Notice**. The Debtors shall, within three business days of entry of this Interim Order, mail copies of a notice of entry of this Interim Order and the hearing to approve the relief requested in the Motion on a final basis (the "Final Hearing"), together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. In addition, all parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Interim Order no later than the day after its entry on the docket. A copy of this Interim Order will be made available on the Debtors' restructuring website located at http://dm.epiq11.com/aegean. The notice of the entry of this Interim Order and the Final Hearing shall state that the objections to the entry of the Final Order shall be filed with the Court, together with proof of service thereon, and served on the counsel for the Debtors and the Notice Parties with a copy to the Court's chambers so as to be actually received no later than 5:00 p.m. on [⎯⎯][SMB 11/13/18], November 14, 2018.

35.     **Final Hearing**. The Court shall hold the Final Hearing to consider the relief requested in the Motion, including any objection filed in accordance with this Interim Order, at a time to be scheduled by the court. ~~on [\_\_\_], 2018.~~ [SMB 11/13/18]


Date: <u>November 13, 2018</u>                    <u>/S/ Stuart M. Bernstein</u>
        New York, New York                    UNITED STATES BANKRUPTCY JUDGE

## Annex A

### ABB Secured Term Loan Documents

1.     **2005 Newbuilding Secured Term Loan**.  Kithnos Maritime Inc., Lefkas Marine S.A., Paros Maritime Inc., Santorini I Maritime Limited and Serifos Shipping (Pte.) Ltd., as co-borrowers (collectively, the "2005 Newbuilding Secured Term Loan Borrowers"), Aegean Marine Petroleum Network, Inc. ("AMPNI"), Aegean Shipholdings Inc. ("Shipholdings"), Aegean Bunkering Services Inc. and Tempest Shiptrade Ltd., as co-guarantors (collectively, and with the 2005 Newbuilding Secured Term Loan Borrowers, the "2005 Newbuilding Secured Term Loan Obligors"), Aegean Baltic Bank S.A. ("ABB"), as arranger, agent, security agent, and account bank (in each such capacity and collectively in such capacities, the "2005 Newbuilding Secured Term Loan Agent"), the lenders party to the 2005 Newbuilding Secured Term Loan Documents (as defined below) from time to time (including HSH Nordbank AG ("HSH") and ABB), each as lenders, the "2005 Newbuilding Secured Term Loan Lenders") and certain swap providers and collateral managers party to the 2005 Newbuilding Secured Term Loan Documents (as defined below) from time to time (the "2005 Newbuilding Secured Term Loan Additional Secured Parties" and, together with the 2005 Newbuilding Secured Term Loan Agent and the 2005 Newbuilding Secured Term Loan Lenders, the "2005 Newbuilding Secured Term Loan Prepetition Secured Parties") are parties to that certain Loan Agreement for a Loan of up to US$35,500,000 to each of the 2005 Newbuilding Secured Term Loan Borrowers dated as of August 30, 2005 (as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "2005 Newbuilding Secured Term Loan Agreement" and, together with the other Security Documents (as defined in the 2005 Newbuilding Secured Term Loan Agreement), as amended, amended and restated,

---

[4]     The descriptions of the ABB Secured Term Loan Documents contained in this Annex A are qualified in their entirety by the contents of the ABB Secured Term Loan Documents.  In the event of any conflict between the descriptions of the ABB Secured Term Loan Documents and the terms and conditions thereof in this Annex A and the contents of the ABB Secured Term Loan Documents, the contents of the ABB Secured Term Loan Documents shall control.

modified, supplemented and/or waived through the Petition Date, the "2005 Newbuilding Secured Term Loan Documents").

Pursuant to the 2005 Newbuilding Secured Term Loan Documents, certain of the 2005 Newbuilding Secured Term Loan Obligors granted to the 2005 Newbuilding Secured Term Loan Agent, for itself or on behalf of, for the benefit of, or in trust for, 2005 Newbuilding Secured Term Loan Prepetition Secured Parties, among other things, (i) first preferred ship mortgage (collectively, the "2005 Newbuilding Secured Term Loan Vessel Mortgages") on each of the motor vessels Kithnos, Naxos, Paros I, Santorini, and Serifos (such motor vessels, collectively, the "2005 Newbuilding Secured Term Loan Vessel Collateral"), (ii) pledges of accounts, and (iii) first priority deeds of covenant and/or general assignments of insurances, earnings and requisition compensation in respect of the 2005 Newbuilding Secured Term Loan Vessel Collateral (together with the 2005 Newbuilding Secured Term Loan Vessel Collateral, all accounts pledged, and any other property of the 2005 Newbuilding Secured Term Loan Obligors on or in respect of which an Encumbrance has been conveyed under any Security Document (each as defined in the 2005 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any 2005 Newbuilding Secured Term Loan Prepetition Secured Party, collectively, the "2005 Newbuilding Secured Term Loan Collateral," and the 2005 Newbuilding Secured Term Loan Vessel Mortgages, all pledges of accounts, all assignments of insurances, earnings and requisition compensation, and any other Encumbrance conveyed under any other Security Document (each as defined in the 2005 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any 2005 Newbuilding Secured Term Loan Prepetition Secured Party on the 2005 Newbuilding Secured Term Collateral or in respect thereof, collectively, the "2005 Newbuilding Secured Term Loan Liens").

2.     **2006 Newbuilding Secured Term Loan**.  Kerkyra Marine S.A., Ithaki Marine S.A., Cephallonia Marine S.A., Paxoi Marine S.A., Zakynthos Marine Limited, Ios Marine Inc. and Kythira Marine S.A., as co-borrowers (collectively, the "2006 Newbuilding Secured Term Loan Borrowers"), AMPNI, Shipholdings, Aegean Breeze Maritime Company, Aegean Tiffany Maritime Company, Kithnos

Maritime Inc., Paros Maritime Inc., Santorini I Maritime Limited, Serifos Shipping (Pte.) Ltd. and Tempest Shiptrade Ltd., as co-guarantors (collectively, and with the 2006 Newbuilding Secured Term Loan Borrowers, the "2006 Newbuilding Secured Term Loan Obligors"), ABB, as arranger, agent, security agent, and account bank (ABB, in each such capacity and collectively in such capacities, the "2006 Newbuilding Secured Term Loan Agent"), the lenders party to the 2006 Newbuilding Secured Term Loan Documents (as defined below) from time to time (including HSH and ABB, each as lenders, the "2006 Newbuilding Secured Term Loan Lenders" and certain swap providers and collateral managers party to the 2006 Newbuilding Secured Term Loan Documents from time to time (the "2006 Newbuilding Secured Term Loan Additional Secured Parties" and, together with the 2006 Newbuilding Secured Term Loan Agent and the 2006 Newbuilding Term Loan Lenders, the "2006 Newbuilding Secured Term Loan Prepetition Secured Parties") are parties to that certain Loan Agreement for a Loan of up to US$64,750,000 to each of the 2006 Newbuilding Secured Term Loan Borrowers dated as of October 30, 2006 (as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "2006 Newbuilding Secured Term Loan Agreement" and, together with the other Security Documents (as defined in the 2006 Newbuilding Secured Term Loan Agreement), as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "2006 Newbuilding Secured Term Loan Documents").

Pursuant to the 2006 Newbuilding Secured Term Loan Documents, certain of the 2006 Newbuilding Secured Term Loan Obligors granted to the 2006 Newbuilding Secured Term Loan Agent, for itself or on behalf of, for the benefit of, or in trust for, the 2006 Newbuilding Secured Term Loan Prepetition Secured Parties, among other things, (i) a first preferred ship mortgage (collectively, the "2006 Newbuilding Secured Term Loan First Preferred Vessel Mortgages") on each of the motor vessels Paxoi, Ithaki, Kythira, Lefkas, Zakynthos, Kefalonia, Kerkyra, Aegean Tiffany, and Aegean Breeze I (such motor vessels, collectively, the "2006 Newbuilding Secured Term Loan First Preferred Vessel Collateral"), (ii) a second preferred ship mortgage (collectively, the "2006 Newbuilding Secured Term Loan Second Preferred Vessel Mortgages" and, together with the 2006 Newbuilding Secured Term

39

Loan First Preferred Vessel Mortgages, collectively, the "2006 Newbuilding Secured Term Loan Vessel Mortgages") on each of the motor vessels Kithnos, Naxos, Paros I, Santorini, and Serifos (such motor vessels, collectively, the "2006 Newbuilding Secured Term Loan Second Preferred Vessel Collateral" and, together with the 2006 Newbuilding Secured Term Loan First Preferred Vessel Collateral, the "2006 Newbuilding Secured Term Loan Vessel Collateral"), (iii) pledges of accounts, (iv) first priority deeds of covenant and/or general assignments of insurances, earnings and requisition compensation in respect of the 2006 Newbuilding Secured Term Loan First Preferred Vessel Collateral, and (v) second priority deeds of covenant and/or general assignments of insurances, earnings and requisition compensation in respect of the 2006 Newbuilding Secured Term Loan Second Preferred Vessel Collateral (together with the 2006 Newbuilding Secured Term Loan Vessel Collateral, all accounts pledged, and any other property of the 2005 Newbuilding Secured Term Loan Obligors on or in respect of which an Encumbrance has been conveyed under any Security Document (each as defined in the 2006 Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any 2006 Newbuilding Secured Term Loan Prepetition Secured Party, collectively, the "2006 Newbuilding Secured Term Loan Collateral," and the 2006 Newbuilding Secured Term Loan Vessel Mortgages, all pledges of accounts, all assignments of insurances, earnings and requisition compensation, and any other Encumbrance conveyed under any other Security Document (each as defined in the 2006 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any 2006 Newbuilding Secured Term Loan Prepetition Secured Party on the 2006 Newbuilding Secured Term Loan Collateral or in respect thereof, the "2006 Newbuilding Secured Term Loan Liens").

3. **Third 2006 Newbuilding Secured Term Loan**. Eton Marine Ltd., Benmore Services S.A. and Ingram Enterprises Co., as co-borrowers (collectively, the "Third 2006 Newbuilding Secured Term Loan Borrowers"), AMPNI, Shipholdings, and Sealand Navigation Inc., as co-guarantors (collectively, and with the Third 2006 Newbuilding Secured Term Loan Borrowers, the "Third 2006 Newbuilding Secured Term Loan Obligors"), ABB, as arranger, agent, security agent, and account bank (in each such capacity and collectively in such capacities, the "Third 2006 Newbuilding Secured Term

Loan Agent"), and the lenders party to the Third 2006 Newbuilding Secured Term Loan Documents (as defined below) from time to time (including HSH and ABB, each as lenders, the "Third 2006 Newbuilding Secured Term Loan Lenders" and, certain swap providers and collateral managers party to the Third 2006 Newbuilding Secured Term Loan Documents (as defined below) from time to time (the "Third 2006 Newbuilding Secured Term Loan Additional Secured Parties" and, together with the Third 2006 Newbuilding Secured Term Loan Agent and the Third 2006 Newbuilding Secured Term Loan Lenders, the "Third 2006 Newbuilding Secured Term Loan Prepetition Secured Parties") are parties to that certain Loan Agreement for a Loan of up to US$26,250,000 to each of the 2006 Newbuilding Secured Term Loan Borrowers, dated as of October 25, 2006 (as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "Third 2006 Newbuilding Secured Term Loan Agreement" and, together with the other Security Documents (as defined in the Third 2006 Newbuilding Secured Term Loan Agreement), as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "Third 2006 Newbuilding Secured Term Loan Documents").

Pursuant to the Third 2006 Newbuilding Secured Term Loan Documents, certain of the Third 2006 Newbuilding Secured Term Loan Obligors granted to the Third 2006 Secured Term Loan Agent, for itself or on behalf of, for the benefit of, or in trust for the Third 2006 Secured Term Loan Prepetition Secured Parties, among other things, (i) a first preferred ship mortgage (collectively, the "Third 2006 Secured Term Loan Vessel Mortgages") on each of the motor vessels Patmos, Karpathos, and Nisyros (such motor vessels, collectively, the "Third 2006 Newbuilding Secured Term Loan Vessel Collateral"), (ii) pledges of accounts, and (iii) first priority deeds of covenant and/or general assignments in respect of insurances, earnings and requisition compensation in respect of the Third 2006 Newbuilding Secured Term Loan Vessel Collateral (together with the Third 2006 Newbuilding Secured Term Loan Vessel Collateral, all accounts pledged, and any other property of the 2005 Newbuilding Secured Term Loan Obligors on or in respect of which an Encumbrance has been conveyed under any Security Document (as defined in the Third 2006 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit

of, or in trust for any Third 2006 Newbuilding Secured Term Loan Prepetition Secured Party, collectively, the "Third 2006 Newbuilding Secured Term Loan Collateral," and the Third 2006 Newbuilding Secured Term Loan Vessel Mortgages, all pledges of accounts, all assignments of insurances, earnings and requisition compensation, and any other Encumbrances conveyed under any other Security Document (each as defined in the Third 2006 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any Third 2006 Newbuilding Secured Term Loan Prepetition Secured Party on the Third 2006 Newbuilding Secured Term Loan Collateral or in respect thereof, the "Third 2006 Newbuilding Secured Term Loan Liens").

        **4.**     **2008 Newbuilding Secured Term Loan**. Kassos Navigation S.A., Symi Navigation S.A., Halki Navigation S.A. and Tilos Shipping (Pte.) Ltd., as co-borrowers (collectively, the "2008 Newbuilding Secured Term Loan Borrowers," and together with the 2005 Newbuilding Secured Term Loan Borrowers, the 2006 Newbuilding Secured Term Loan Borrowers, and the Third 2006 Newbuilding Secured Term Loan Borrowers, the "ABB Borrowers"), AMPNI, Shipholdings, Sealand Navigation Inc., Eton Marine Ltd., and Benmore Services S.A., as co-guarantors (collectively, and with the 2008 Newbuilding Secured Term Loan Borrowers, the "2008 Newbuilding Secured Term Loan Obligors" and with the 2005 Newbuilding Secured Term Loan Obligors, the 2006 Newbuilding Secured Term Loan Obligors, and the Third 2006 Newbuilding Secured Term Loan Obligors, the "ABB Secured Term Loan Obligors"), ABB, as arranger, agent, security agent, and account bank (in each such capacity and collectively in such capacities, the "2008 Newbuilding Secured Term Loan Agent" and, together with the 2005 Newbuilding Secured Term Loan Agent, the 2006 Newbuilding Secured Term Loan Agent and the Third Newbuilding Secured Term Loan Agent, collectively, the "ABB Agents")), the lenders party to the 2008 Newbuilding Secured Term Loan Documents (as defined below) from time to time (including HSH and ABB, each as lenders, the "2008 Newbuilding Secured Term Loan Lenders," and together with the 2005 Newbuilding Secured Term Loan Lenders, the 2006 Newbuilding Secured Term Loan Lenders and the Third 2006 Secured Term Loan Lenders, collectively, the "ABB Lenders"), certain swap providers and collateral managers party to the 2008 Newbuilding Secured Term Loan Documents (as defined

below) from time to time (the "2008 Newbuilding Secured Term Loan Additional Secured Parties" and, together with the 2008 Newbuilding Secured Term Loan Agent and the 2008 Newbuilding Secured Term Loan Lenders, collectively, the "2008 Newbuilding Secured Term Loan Prepetition Secured Parties," and the 2008 Newbuilding Secured Term Loan Prepetition Secured Parties, together with the 2005 Newbuilding Secured Term Loan Secured Parties, the 2006 Newbuilding Secured Term Loan Secured Parties and the Third 2006 Newbuilding Secured Term Loan Secured Parties, collectively the "ABB Parties") are parties to that certain Loan Agreement for a Loan of up to US$38,800,000 to each of the 2008 Newbuilding Secured Term Loan Borrowers, dated as of April 24, 2008 (as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "2008 Newbuilding Secured Term Loan Agreement" and, together with the other Security Documents (as defined in the 2008 Newbuilding Secured Term Loan Agreement), collectively, as amended, amended and restated, modified, supplemented and/or waived through the Petition Date, the "2008 Newbuilding Secured Term Loan Documents") and together with the 2005 Newbuilding Secured Term Loan Documents, the 2006 Newbuilding Secured Term Loan Documents and the Third 2006 Newbuilding Secured Term Loan Documents, collectively, the "ABB Secured Term Loan Documents," and the obligations arising under, in respect of or related to, the Newbuilding Secured Term Loan Documents, collectively, the "ABB Prepetition Term Obligations").

Pursuant to the 2008 Newbuilding Secured Term Loan Documents, certain of the 2008 Newbuilding Secured Term Loan Obligors granted to the 2008 Secured Term Loan Agent, for itself or on behalf of, for the benefit of or in trust for, the 2008 Secured Term Loan Prepetition Secured Parties, among other things, (i) a first preferred ship mortgage (collectively, the "2008 Newbuilding Secured Term Loan Vessel Mortgages") on each of the motor vessels Halki, Kassos, Symi and Tilos (such motor vessels, collectively, the "2008 Newbuilding Secured Term Loan First Preferred Vessel Collateral"), (ii) a second preferred ship mortgage (collectively, the "2008 Newbuilding Secured Term Loan Second Preferred Vessel Mortgages" and, together with the 2008 Newbuilding Secured Term Loan First Preferred Vessel Mortgages, collectively, the "2008 Newbuilding Secured Term Loan Vessel Mortgages") on each

43

of the motor vessels Patmos, Karpathos, and Nisyros (such motor vessels, as 2008 Newbuilding Secured Term Loan Vessel Collateral, collectively, the "2008 Newbuilding Secured Term Loan Second Preferred Vessel Collateral" and, together with the 2008 Newbuilding Secured Term Loan First Preferred Vessel Collateral, the "2008 Newbuilding Secured Term Loan Vessel Collateral" and, together with the 2005 Newbuilding Secured Term Loan Vessel Collateral, the 2006 Newbuilding Secured Term Loan Vessel Collateral and the Third 2006 Secured Term Vessel Collateral, the "ABB Prepetition Vessel Collateral") (iii) pledges of accounts, (iv) first priority deeds of covenant and/or general assignments of insurances, earnings and requisition compensation in respect of the 2008 Newbuilding Secured Term Loan First Preferred Vessel Collateral, and (v) second priority deeds of covenant and/or general assignments of insurances, earnings and requisition compensation in respect of the 2008 Newbuilding Secured Term Loan Second Preferred Vessel Collateral (together with the 2008 Newbuilding Secured Term Loan Vessel Collateral, all accounts pledged, and any other property of the 2008 Newbuilding Secured Term Loan Obligors on or in respect of which an Encumbrance has been conveyed under any Security Document (each as defined in the 2008 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for any 2008 Newbuilding Secured Term Loan Prepetition Secured Party, collectively, the "2008 Newbuilding Secured Term Loan Collateral" and, collectively with the 2005 Newbuilding Secured Term Loan Collateral, the 2006 Newbuilding Secured Term Loan Collateral, and the Third 2006 Newbuilding Secured Term Loan Collateral, the "ABB Prepetition Collateral," and the 2008 Newbuilding Secured Term Loan Vessel Mortgages, all pledges of accounts, all assignments of insurances, earnings and requisition compensation, and any other Encumbrance conveyed under any Security Document (each as defined in the 2008 Newbuilding Secured Term Loan Agreement) to, on behalf of, for the benefit of, or in trust for, any 2008 Newbuilding Secured Term Loan Prepetition Secured Party on the 2008 Newbuilding Secured Term Collateral or in respect thereof, the "2008 Newbuilding Secured Term Loan Liens," and the 2008 Newbuilding Secured Term Loan Liens, together with the 2005 Newbuilding Secured Term Loan Liens, the 2006 Newbuilding Secured Term Loan Liens and the Third 2006 Newbuilding Secured Term Loan Liens, collectively, the "ABB Prepetition Term Liens").