**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|                                                        |     |                                    |
| ------------------------------------------------------ | --- | ---------------------------------- |
|                                                        | :   | **Chapter 11**                     |
| **In re:**                                             | :   |                                    |
|                                                        | :   | **Case No. 18-13374 (MEW)**        |
| **AEGEAN MARINE PETROLEUM NETWORK, INC.,** | :   |                                    |
| ***et al.***,[1]                                       | :   | **(Joint Administration Requested)** |
|                                                        | :   |                                    |
| **Debtors.**                                           | :   |                                    |

_____

### INTERIM ORDER (I) GRANTING ADEQUATE
### PROTECTION TO NATIONAL BANK OF GREECE S.A.,
### (II) AUTHORIZING USE OF CASH COLLATERAL, (III) MODIFYING
### THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), and 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1, and 9014-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (this "Court"), *inter alia*, requesting, among other things, an interim order (this "Interim Order") and a Final Order (as defined herein) (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing

---

[1]   Due to the large number of Debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or **Annex A** hereto, as applicable.

Use of NBG Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief; and this Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein was provided in accordance with the Bankruptcy Rules and the Local Rules, and that no other or further notice is necessary; and any objections to the Motion having been withdrawn or overruled on the merits; and an interim hearing having been held on November 8 and 9, 2018 (the "Interim Hearing") to consider the relief requested in the Motion and upon the record of the Interim Hearing, the Motion and all of the proceedings had before this Court; and this Court having found and determined that the relief set forth therein is in the best interests of Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  **Commencement of the Chapter 11 Cases.**  On November 6, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

B.  **Debtors-in-Possession; No Committee**.  Since the Petition Date, the Debtors have been managing and operating their business and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee

of unsecured creditors (any such committee, the "Committee") has been appointed in the Chapter 11 Cases.

C. **Jurisdiction and Venue**. This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2). The predicates for relief sought herein are sections 361, 362, 363, 506, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-1 of the Local Rules. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **DIP Facility**. On November 6, 2018, the Debtors filed the Motion requesting, among other things, authorization to obtain financing from the DIP Lenders (as defined in the Motion) pursuant to the debtor-in-possession financing facilities (collectively, the "DIP Financing" and the interim and final orders approving the DIP Financing, collectively, the "DIP Orders") pursuant to certain credit agreements (each, a "DIP Credit Agreement" and, together, the "DIP Credit Agreements"). Pursuant to Motion, the Debtors also requested authority to enter into adequate protection stipulations and consent orders with prepetition secured lenders that are consenting to the grant of junior liens on their collateral to secure the DIP Financing; this Interim Order and the forthcoming anticipated Final Order are such adequate protection consent orders.

E. **Notice**. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice was afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to the parties-in-interest, including (a) the Office of the United States Trustee for

the Southern District of New York (the "U.S. Trustee"); (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition Term Parties; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

      F.    **Prepetition Facility Obligations**. Tasman Seaways Inc. and Santon Limited, as borrowers (together, the "Prepetition Borrowers" and each a "Prepetition Borrower"), their parent, Aegean Marine Petroleum Network, Inc., as guarantor (the "Prepetition Guarantor," and along with the Prepetition Borrowers , the "Prepetition Obligors"), and National Bank of Greece S.A. ("NBG"), as lender, are parties to that certain Second 2006 Newbuilding Secured Term Loan Agreement, dated October 27, 2006 (as amended, modified, supplemented, or waived from time to time, the "NBG Prepetition Secured Loan Agreement", and together with all ancillary documents, agreements, and notes executed by the obligors in connection therewith, the "NBG Prepetition Secured Loan Documents,"[3] and all obligations arising under, in respect of or related to, the NBG Prepetition Secured Loan Documents, the "NBG Prepetition Secured Loan Obligations").[4] A detailed description and definition of the NBG Prepetition Secured Loan Documents, the underlying credit facilities (the "NBG Credit Facilities") and vessels and other collateral securing those facilities (the "NBG Prepetition Collateral") are set forth in **Annex A** hereto.

      G.    [Reserved for Stipulations (as defined below) to be included in the Final Order.]

---

[3]   The NBG Prepetition Secured Loan Agreement and the NBG Prepetition Secured Loan Documents are more fully described in **Annex A** hereto.

[4]   The liens created in favor of NBG under the NBG Prepetition Secured Loan Documents are referred to herein as the "Prepetition Liens."

H.    **Necessity of Relief Requested**. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rules 4001-1, 4002-1, and 9013-1, and good cause has been shown for entry of this Interim Order.  Without access to, and the ability to use, the NBG Prepetition Collateral, which includes the vessels identified in **Annex A** hereto (which, in each case, constitute NBG Prepetition Vessel Collateral (as defined in **Annex A**)), the Debtors' ability to manage, administer and preserve their estates would be immediately and irreparably harmed, thereby materially impairing their respective estates and creditors and the likelihood of a successful outcome in these Chapter 11 Cases.  The terms of the use of the NBG Prepetition Collateral, including the NBG Cash Collateral (each as defined in **Annex A** hereto), including the grant of adequate protection and the other rights and benefits of the parties set forth in this Interim Order, are fair and reasonable, the product of arms'-length negotiations, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  Accordingly, entry of this Interim Order is in the best interests of the Debtors, their respective estates and their creditors and other parties-in-interest.

I.    **Adequate Protection.**  NBG is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of its NBG Prepetition Collateral, including the NBG Cash Collateral, to the adequate protection of its interests in the NBG Prepetition Collateral, including the NBG Cash Collateral.  NBG has negotiated in good faith regarding the Debtors' use of the NBG Prepetition Collateral, including the NBG Cash Collateral, and has agreed to permit the Debtors to use the NBG Cash Collateral in accordance with this Interim Order, subject to the other terms and conditions set forth herein, including the protections afforded parties in "good faith" under section 363(m) of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection

arrangements and of the use of the NBG Prepetition Collateral, including the NBG Cash Collateral, are fair and reasonable, reflect the Debtors' prudent business judgment, and constitute reasonably equivalent value and fair consideration for NBG's consent thereto.

J.    **Consent Order**.  The Debtors and NBG agree that this order represents a consent order and that any modification or amendment hereof requires the written consent of both NBG and the Debtors, which consent shall not be unreasonably withheld.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**,

1.    **Motion Granted**.  The Motion is GRANTED on an interim basis as herein provided and the use of the NBG Prepetition Collateral, including the NBG Cash Collateral, is authorized for each Debtor, subject and pursuant to the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn, waived or otherwise resolved are hereby denied and overruled.

2.    **Authorization to Use NBG Prepetition Collateral, including NBG Cash Collateral**.  The Debtors are authorized to use the NBG Prepetition Collateral, including the NBG Cash Collateral, during the period beginning on the Petition Date until the occurrence of the Termination Date (as defined below) subject to the terms and conditions of this Interim Order and to the adequate protection granted to or for the benefit of NBG as set forth herein.

3.    **Termination**.  The occurrence of any of the following events set forth in clauses (a) through (q) below shall constitute a "<u>Termination Event</u>" unless waived in writing by NBG:

        a.    this Interim Order shall cease to be in full force and effect for any reason;

b.      an order approving the relief requested in the Motion on a final basis (in form and substance satisfactory to NBG and otherwise in conformance with the terms of this Interim Order, the "Final Order") shall not have been entered by the Court on or before 45 days following entry of this Interim Order, unless an extension is otherwise agreed to in writing by NBG (as defined in **Annex A**);

c.      any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code, a chapter 11 trustee or examiner with expanded powers pursuant to section 1106(b) of the Bankruptcy Code shall be appointed in any of the Chapter 11 Cases, or any of the Debtors, the DIP Agent, or the DIP Lenders shall seek, or shall support (in any such case by way of, *inter alia*, any motion or pleading filed with this Court or any other writing to another party in interest executed by or on behalf of any Debtor, the DIP Agent, or the DIP Lenders) any person's motion or other pleading seeking any of the foregoing relief;

d.      an order shall have been entered (or any of the Debtors, the DIP Agent, or the DIP Lenders shall seek an order) reversing, amending, supplementing, extending, staying, vacating or otherwise modifying this Interim Order without the prior written consent of NBG;

e.      any modification shall be made to the DIP Orders or otherwise to the DIP Financing that could reasonably be expected to result in nonpayment of the Adequate Protection Payments granted hereunder, or otherwise adversely impact NBG (including, without limitation, any amendment that contravenes or modifies, or attempts to contravene or modify, the provisions of paragraph 12 hereof) without the prior written consent of NBG;

f.      the Debtors shall file, or the Court shall grant, any application, motion or borrowing request seeking (i) to incur indebtedness from any party secured by a lien on, or

otherwise having a claim against or recourse to, as the case may be, the Prepetition Obligors, the NBG Prepetition Collateral other than the Junior DIP Liens (as defined below) without the prior written consent of NBG, or (ii) the use of the NBG Cash Collateral on a nonconsensual basis;

g.       the Court shall grant any application by any party seeking payment of any claim on a superpriority administrative claim basis *pari passu* with, or senior to, the Adequate Protection Superpriority Claims without the written consent of NBG;

h.       the entry of an order by this Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay applicable under section 362 of the Bankruptcy Code upon the Petition Date to allow a holder or holders of any lien or security interest (including, without limitation, the DIP Lender in respect of the Junior DIP Liens) to foreclose or otherwise enforce remedies against and/or realize upon its liens or security interest in respect of any NBG Prepetition Collateral;

i.       any Prepetition Obligor breaches any material covenant or undertaking (after any applicable cure period set forth in the NBG Prepetition Secured Loan Documents) in any of the NBG Prepetition Secured Loan Documents relating to insurance, operation, management and maintenance of any vessel that is NBG Prepetition Vessel Collateral, including, without limitation, any breach in connection with expropriation, arrest, detention, capture, condemnation, confiscation, requisition, purchase, seizure, or forfeiture of or any taking title to, the applicable vessel that is NBG Prepetition Vessel Collateral;

j.       any Debtor shall sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber or otherwise dispose of any portion of the NBG Collateral, except as expressly permitted by this Interim Order and the

NBG Prepetition Secured Loan Documents, or this Court or any other court having jurisdiction to do so shall enter an order authorizing any sale or disposition of any NBG Prepetition Collateral, in each case without the prior written consent of NBG;

k.　　any Debtor shall transfer NBG Cash Collateral to an account in the name of a Debtor that is not a Debtor Obligor or that is not maintained with NBG or subject to NBG's control; *provided* that, notwithstanding the foregoing, the Debtors may continue making transfers or payments in the ordinary course consistent with past practice, including, but not limited to, any such management fee or service fee payments; *provided further*, that the right of NBG with respect to any such management fee or service fee payment or payments (including all rights to object to the payment of any particular fee) is preserved;

l.　　subject to a five (5) day grace period, the Debtors shall fail to make any Adequate Protection Payment when due;

m.　　the filing by any Debtor, the DIP Agent, or the DIP Lenders seeking an order, or the entry of an order of this Court or any other court having jurisdiction to do so avoiding, disgorging, or requiring repayment of any portion of the Adequate Protection Payments made by the Debtor Obligors hereunder;

n.　　the filing by any Debtor, the DIP Agent, or the DIP Lenders seeking an order, or the entry of an order of this Court or any other court having jurisdiction to do so approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of the NBG Prepetition Collateral;

o.　　any Debtor, the DIP Agent, or the DIP Lenders shall assert (or shall

support any other person in asserting) the invalidity, non-perfection, or unenforceability of any of the Adequate Protection Liens or the invalidity and unenforceability of the Adequate Protection Superpriority Claims;

p.      any Debtor, the DIP Agent, or the DIP Lenders shall seek, or shall support (in any such case by way of, *inter alia*, any motion or pleading filed with this Court or any other writing to another party-in-interest executed by or on behalf of any Debtor, the DIP Agent or the DIP Lenders) any person's motion, to disallow or subordinate (whether equitably, contractually or otherwise) in whole or in part NBG's claim in respect of the NBG Prepetition Secured Loan Obligations or to challenge the validity, enforceability, perfection, or priority of any liens or security interest in favor of NBG (including with, without limitation, any Prepetition Lien); or

q.      the Debtors shall fail to comply with any provision of this Interim Order in any material respect.

4.      **Remedies upon a Termination Date**.

a.      Notwithstanding anything herein, the Debtors' authorization to use NBG Cash Collateral hereunder shall automatically terminate on the date (the "Termination Date"), that is (i) five (5) days from the date (the "Termination Notice Date") on which written notice (a "Termination Notice") of the occurrence of a Termination Event is given (which notice may be given electronically) by or on behalf of NBG to counsel for the Debtors (such period commencing on the Termination Notice Date and ending five (5) days later, the "Termination Notice Period") or (ii) the effective date of any plan of reorganization. The rights and remedies of NBG specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. The only permissible basis for the Debtors or any party in interest to contest,

challenge or object to a Termination Notice shall be solely with respect to the validity of the Termination Event(s) giving rise to such Termination Notice (*i.e.*, whether such Termination Event or Events validly occurred and have not been cured or waived in accordance with this Interim Order).

b.      Upon and after delivery of the Termination Notice, the Debtors and NBG consent to a hearing on an expedited basis to consider whether the automatic stay may be lifted so that NBG may exercise any and all of its respective rights set forth in this Interim Order or in the NBG Prepetition Secured Loan Documents.

c.      During the Termination Notice Period, the Debtors' right to use NBG Cash Collateral pursuant to this Interim Order shall be limited to the payment of any other critical business-related expenses necessary to operate the Debtors' business or preserve the NBG Prepetition Collateral, including but not limited to payments in respect of health or human safety, in each case with prior notice to NBG.

d.      The delay or failure to exercise rights and remedies under this Interim Order or any NBG Prepetition Secured Loan Document shall not constitute a waiver of NBG's rights hereunder, thereunder or otherwise.   The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Interim Order, which rights, remedies, benefits, and protections shall survive the Termination Date.

e.      The automatic stay imposed under Bankruptcy Code section 362(a) upon the Petition Date is hereby modified as necessary, without further order or notice of the Court, to (i) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims and to incur all liabilities and obligations to NBG under this Interim Order,

and (ii) authorize NBG to retain any applicable payments hereunder.

f. Nothing included herein shall prejudice, impair, or otherwise affect NBG's rights to seek any other or supplemental relief in respect of the Debtors (including any other or additional adequate protection).

5. **Adequate Protection**.  As adequate protection for NBG's respective interests in the NBG Prepetition Collateral, including the NBG Cash Collateral, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of its NBG Prepetition Collateral, including any NBG Cash Collateral, NBG is hereby granted the following (the "<u>Adequate Protection</u>"), effective from the Petition Date:

a. **Adequate Protection Liens.**  Solely to the extent of, and in an aggregate amount equal to, any diminution in value of NBG's respective interests in the NBG Prepetition Collateral resulting from, among other things, the use, sale, or lease by the Debtors of the NBG Prepetition Collateral (including the use of NBG Cash Collateral) and/or the imposition or enforcement of the automatic stay provided for under section 362(a) of the Bankruptcy Code and/or the incurrence of the DIP Obligations (as defined in the Motion) and the granting of the Junior DIP Liens (the "<u>Diminution in Value</u>") from and after the Petition Date, NBG is hereby granted the following security interests and liens (collectively, the "<u>Adequate Protection Liens</u>"), pursuant to sections 361(2), 363(c)(2), and 363(e) of the Bankruptcy Code:

(i) valid, binding, continuing, enforceable, fully-perfected, non-avoidable (x) first priority replacement liens on, and security interests in, the Collateral of each Prepetition Borrower under the NBG Prepetition Secured Loan Documents that is also a Debtor in these Chapter 11 Cases (each, a "<u>Debtor Borrower</u>") under the respective NBG Prepetition Secured Loan Documents under which NBG is a party and (y) second priority

replacement liens on, and security interests in, the NBG Collateral of each other obligor under the NBG Prepetition Secured Loan Documents that is also a Debtor in these Chapter 11 Cases (each a "Debtor Other Obligor"; and together with the Debtor Borrowers, the "Debtor Obligors") against which NBG has a Prepetition Lien, in each case that is not subject to (1) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (2) valid and non-avoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; and

(ii) valid, binding, continuing, enforceable, fully-perfected non-avoidable senior priming replacement liens on, and security interests in, all other NBG Collateral of each Debtor Borrower and each Debtor Other Obligor under the NBG Prepetition Secured Loan Documents, which replacement liens and security interests (x) against the Debtor Borrowers under the NBG Prepetition Secured Loan Documents under which NBG is a party shall be (x) junior only to any valid, perfected and non-avoidable liens in existence as of the Petition Date and any valid and non-avoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case, which are senior in priority to the Prepetition Liens and are permitted by the terms of the NBG Prepetition Secured Loan Documents (such liens set forth in this clause (x), the "Senior Third Party Liens"), and (y) senior to the Junior DIP Liens (as herein defined), the Prepetition Liens, and all other liens and security interests of any third parties (other than any Senior Third Party Liens). Notwithstanding anything to the contrary, any replacement liens and security interests of NBG against a Debtor Borrower under the NBG Prepetition Secured Loan Documents shall be senior and prior to any replacement liens and security interests of any other person or entity against such Debtor Borrower.

b.  **NBG Collateral**.  "NBG Collateral" shall mean, collectively, (i) all NBG Prepetition Collateral, including the NBG Prepetition Vessel Collateral, the NBG Cash Collateral and all postpetition revenues from or related to the NBG Prepetition Vessel Collateral and/or the NBG Cash Collateral, (ii) insurances, bank accounts and other security or deposit accounts of the Debtor Borrowers or Debtor Other Obligors holding a security interest in such insurances, bank accounts, and other security or deposit accounts pursuant to the NBG Prepetition Secured Loan Documents (including, for the avoidance of doubt, any accounts opened prior to, on and/or after the Petition Date), (iii) all equity interests, intercompany claims, accounts and receivables (and all rights associated therewith), in each case, held by or recorded in the name of any Debtor Borrower or any Debtor Other Obligor to the extent that such equity interest, intercompany claim, account or receivable constitutes collateral of such Debtor Borrower or Debtor Other Obligor pursuant to the NBG Prepetition Secured Loan Documents, and (iv) any and all proceeds, products, rents and profits of all of the foregoing; *provided* that, for the avoidance of doubt, NBG Collateral shall not include any of the claims and causes of action by the estates of the Debtor Borrowers for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") or any proceeds thereof.

c.  **Status of the Adequate Protection Liens**.  The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor Borrowers and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, including, for the avoidance of doubt, the Junior DIP Liens and the Carve Out, or (ii) except as expressly set forth in in this Interim Order (or the Final Order), subordinated to or made *pari passu* with any

other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise. The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of NBG or for the benefit of NBG and not in substitution therefor.

d. **Effectiveness of Adequate Protection Liens**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of liens, or other similar instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, NBG and/or its agents may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar instruments or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The Debtors shall execute and deliver to NBG all such financing statements, mortgages, security agreements, notices and other documents as NBG may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of the Adequate Protection Liens. NBG, in their sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

e.    **Adequate Protection Superpriority Claims**.  To the extent of, and in an aggregate amount equal to, any Diminution in Value in respect of the NBG Prepetition Collateral securing its NBG Prepetition Secured Loan Obligations, NBG is hereby granted an allowed superpriority administrative expense claim against each Debtor Borrower (collectively, the "Adequate Protection Superpriority Claims"), which Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims, and other claims against the Debtor Borrowers, now existing or hereafter arising, of any kind whatsoever, including, without limitation, (i) all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code, including in favor of the DIP Agent or the DIP Lenders, (ii) the Carve Out and (iii) the Junior DIP Liens.

f.    **Scope of Adequate Protection Liens and Adequate Protection Superpriority Claims**.  Except as otherwise provided, herein, (i) the Adequate Protection Liens granted to NBG hereunder shall be limited to (x) NBG's Collateral and (y) to the extent not covered by (x), any other Collateral against which NBG has a Prepetition Lien, and (ii) the Adequate Protection Superpriority Claims granted to NBG hereunder shall be limited to claims against (x) the Debtor Borrowers under the NBG Prepetition Secured Loan Agreement under which NBG is a party, (y) any other Debtor Obligor against whom NBG has a Prepetition Lien. For the avoidance of doubt, Aegean Marine Petroleum Network, Inc., shall not grant Adequate Protection Liens or Adequate Protection Superpriority Claims.

g.    **Adequate Protection Payments**.

(i)    NBG shall receive from the Debtors (a) within five (5) business

days following the entry of this Interim Order, cash payment of all accrued and unpaid interest (whether accrued prior to or after the Petition Date) on the applicable NBG Prepetition Secured Loan Obligations at the non-default rates provided for in the NBG Prepetition Secured Loan Documents (it being understood that interest shall accrue at the default rate to the fullest extent permitted under the Bankruptcy Code, with all rights to object thereto fully preserved), and all accrued and unpaid fees and costs (whether accrued prior to or after the Petition Date) owing to NBG under the NBG Prepetition Secured Loan Documents, and (b) thereafter, as and when due under the NBG Prepetition Secured Loan Documents, cash payment of all debt service obligations under the NBG Prepetition Secured Loan Documents including, without limitation, scheduled payments of principal and accrued and unpaid interest, at the applicable non-default rates provided in the NBG Prepetition Secured Loan Documents (it being understood that interest shall accrue at the default rate to the fullest extent permitted under the Bankruptcy Code, with all rights to object thereto fully preserved), and any fees and costs due and payable under the NBG Prepetition Secured Loan Documents, including, without limitation, any accrued fees owing to the Prepetition Secured Parties under the NBG Prepetition Secured Loan Documents.

(ii)     The Debtors shall pay in full, in cash and in immediately available funds, all reasonable and documented fees, costs and expenses (whether incurred prior to, on or after the Petition Date) of NBG and/or owing to NBG under the NBG Prepetition Secured Loan Documents, including all reasonable and documented professional and advisory fees, costs and expenses of its legal, financial and other professionals, including, Vedder Price P.C. and any financial advisor and any other local, foreign or regulatory counsel as may at any time be necessary (collectively, the "Prepetition Term Professionals"), (x) promptly upon the entry of this Interim Order in the full amounts set forth in any outstanding invoices from NBG and Prepetition

Term Professionals received by the Debtors at least two (2) business days prior to the entry of this Interim Order; and (y) thereafter, within ten (10) business days after the presentment of any such invoices to the Debtors (which invoices shall include reasonable supporting detail in the form of standard detailed invoices, which may be redacted to protect privileged, confidential, or commercially or strategically sensitive information) (the payment obligations set forth in this paragraph 5(g), the "Adequate Protection Payments"). NBG and Prepetition Term Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file any fee applications with the Court, but shall provide copies of its invoices (which may be redacted as set forth above) to the U.S. Trustee and any Committee upon written request. Notwithstanding anything to the contrary in this Interim Order or the DIP Order, the foregoing, payment of any documented fees, costs and expenses of NBG pursuant to this Interim Order or the DIP Order, including all reasonable and documented professional and advisory fees, costs, and expenses of legal, financial and other professionals, shall not be subject to disgorgement.

6. **Reporting**. The Debtors shall comply with the reporting requirements set forth in the NBG Prepetition Secured Loan Documents, and shall provide (or continue to provide, as applicable) the following additional reporting to NBG:

a. A copy of any Approved Budget (as defined in the DIP Order) provided to the DIP Lenders in satisfaction of the Debtors' reporting requirements under the DIP Order and/or the DIP Loan Documents.

b. A monthly fleet status report on all vessels that constitute NBG Prepetition Vessel Collateral explaining the location of the relevant vessel, whether such vessel is being chartered out, and any material changes in connection with the Debtors' use of such

vessel as compared to historical practice.

c.      Written notice to NBG of any early termination notices provided by any chartering parties pursuant to the relevant charters.

d.      Written notice to NBG of any early termination of any other cash collateral stipulation, consent order or other cash collateral order entered in the Chapter 11 Cases with respect to any other secured creditor of any of the Debtors.

e.      The Debtors shall promptly provide notice to NBG (with a copy to its counsel) when any Debtor has any knowledge of the occurrence of any Termination Event.

7.      **Access to Records and Collateral Inspection Rights**.  In addition to, and without limiting, any rights to access that NBG has under the NBG Prepetition Secured Loan Documents (which rights shall be preserved under this Interim Order), upon reasonable notice and at reasonable times, the Debtors shall permit representatives, agents and employees of NBG (a) to have access to and inspect the  NBG Prepetition Vessel Collateral, (b) to examine the books and records of the Debtor Borrowers in connection with the NBG Prepetition Collateral, and (c) to discuss the affairs, finances, and condition of the NBG Prepetition Collateral with a representative of the Debtors.

8.      **Insurance and Maintenance of Prepetition Term Collateral**.  The Debtors shall provide continued maintenance of and appropriate insurance on the Debtors' assets (including the vessels that are NBG Prepetition Vessel Collateral), in amounts consistent with the Debtors' prepetition practices and as set forth in the NBG Prepetition Secured Loan Documents.

9.      **Carve Out.**  For the avoidance of doubt and notwithstanding anything to the

contrary in this Interim Order, the Final Order, or in the DIP Order or DIP Credit Agreements, the Carve Out shall be senior to all liens and claims securing the DIP Credit Facilities, including the Junior DIP Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, but shall not be senior to the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Liens, and the NBG Prepetition Secured Loan Obligations, and the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Term Liens and the NBG Prepetition Secured Loan Obligations shall not be subject to the Carve Out.

10.     **Lien Stipulations and Challenges**.  The Debtors and NBG shall negotiate in good faith regarding stipulations to be included in the Final Order related to (i) the validity, enforceability, allowability, priority, secured status, or amount of the NBG Prepetition Secured Loan Obligations and Prepetition Liens, (ii) the liabilities to third parties, (iii) claims and causes of action, and (iv) related releases and indemnities (collectively, the "Stipulations"), and regarding the ability of parties-in-interest to challenge such Stipulations and the timing for such challenge in connection therewith.

11.     **Limitations on Use of NBG Cash Collateral**.  Notwithstanding anything herein to the contrary, no portion of the proceeds of the NBG Collateral, including the NBG Prepetition Collateral and NBG Cash Collateral, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring indebtedness other than as expressly permitted under this Interim Order, (b) preventing, hindering, impeding, or delaying any of NBG's enforcement or realization upon, or exercise of rights in respect of any of the NBG Collateral (including any NBG Prepetition Collateral), (c) seeking to amend or modify any of the rights or interests granted to NBG under this  Interim

Order or the respective NBG Prepetition Secured Loan Documents, including seeking to use NBG Cash Collateral on a contested basis, (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any challenge or any other action under chapter 5 of the Bankruptcy Code (or any similar law), against any of the former, current and future NBG, or any of its respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (each of the foregoing, solely in their capacities as such), or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of NBG, arising out of, in connection with, or relating to the NBG Prepetition Secured Loan Documents, or the transactions contemplated thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity and extent of the NBG Prepetition Secured Loan Obligations or the validity, extent, perfection and priority of the Prepetition Liens, (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the Prepetition Liens, in whole or in part, (v) appeal or otherwise challenge any order giving effect to this Interim Order or (vi) any action that has the effect of preventing, hindering, impeding or

21

delaying (whether directly or indirectly) NBG in respect of the Prepetition Liens, NBG Prepetition Secured Loan Obligations, Adequate Protection Liens, or Adequate Protection Superpriority Claims or any of its rights, powers, or benefits hereunder or in the NBG Prepetition Secured Loan Documents anywhere in the world; *provided* that no more than $25,000 in the aggregate may be used by any Committee solely to investigate (but not prosecute or challenge) the Stipulations.

12. **Consent to Junior DIP Liens; Priority and Conditions**.

a. Subject in all respects to the terms, limitations, and conditions (including the priorities) set forth in this Interim Order, including, without limitation, the intercreditor provisions set forth in this paragraph 12 and the approval of the Stipulations in a Final Order for the continuation of such consent, NBG hereby consents during the term of this Interim Order (and subject to being extended in the Final Order on the terms and conditions set forth herein) to the granting of junior liens (the "Junior DIP Liens") on the NBG Prepetition Collateral, which Junior DIP Liens shall be junior to and subordinated in all respects to the Prepetition Liens and the Adequate Protection Liens, and to any NBG Prepetition Secured Loan Obligations and Adequate Protection Superpriority Claims of NBG against the applicable Debtors, as provided herein, *provided* that nothing herein shall limit or alter the rights of NBG, or any other party, to object to any other liens or security interests, or to any subsequent debtor-in-possession financing.

b. Notwithstanding anything herein, in the DIP Order or in the DIP Credit Agreements to the contrary, the DIP Agent or DIP Lenders may not foreclose or otherwise exercise remedies following any default or Event of Default under the DIP Order

or DIP Credit Agreements, or otherwise, with respect to any NBG Collateral (including the NBG Prepetition Collateral) unless and until all NBG Prepetition Secured Loan Obligations (and any Adequate Protection Superpriority Claims) are paid in full and in cash. In order to give effect to the intended priority waterfall in respect of the NBG Collateral (including any NBG Prepetition Collateral) set forth in this Interim Order, and the Debtor Borrowers, in the event any NBG Collateral (including any NBG Prepetition Collateral) is received by the DIP Agent or any DIP Lender, in connection with the exercise of remedies following a default or Event of Default under the DIP Order or DIP Credit Agreements, or in connection with any mandatory prepayment required to be made pursuant to the DIP Credit Agreements, shall be held in trust for the benefit of the NBG and shall be distributed in accordance with the priorities set forth herein; *provided* that, for the avoidance of doubt, the NBG Prepetition Collateral shall be available first to satisfy the underlying NBG Prepetition Secured Loan Obligations until the payment in full and in cash of all NBG Prepetition Secured Loan Obligations (and any Adequate Protection Superpriority Claims).

c.    Until all NBG Prepetition Secured Loan Obligations (and any Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, NBG shall have the exclusive right to take and continue any enforcement action against or otherwise in respect of the NBG Prepetition Collateral pursuant to the terms and conditions of this Interim Order, the NBG Prepetition Secured Loan Documents and applicable law, without any consultation with or consent of any DIP Lender, and to make determinations regarding the release of, disposition of, or restrictions with respect to the NBG Prepetition Collateral in accordance with this Interim Order and NBG Prepetition Secured Loan Documents, without any consultation with or the consent of the DIP Agent or the DIP Lenders. In taking and continuing any

enforcement action in respect of the Prepetition Liens and/or the Adequate Protection Liens, NBG and its agents may enforce the provisions of this Interim Order and the NBG Prepetition Secured Loan Documents and exercise remedies hereunder and thereunder, all in such order and in such manner as they may determine in the exercise of its sole discretion.

d. In addition, if prior to the indefeasible payment in full and in cash of the NBG Prepetition Secured Loan Obligations (and any Adequate Superpriority Claims), in connection with an enforcement action in respect of the Prepetition Liens and/or the Adequate Protection Liens, or any sale, transfer, license, lease or other disposition (including any sale and leaseback transaction) of any NBG Prepetition Collateral permitted under this Interim Order and the NBG Prepetition Secured Loan Documents, NBG release any of its respective liens on any part of the NBG Prepetition Collateral, then any Junior DIP Liens on such NBG Prepetition Collateral shall be automatically, unconditionally and simultaneously released without any action on the part of the DIP Agent or DIP Lenders, *provided* that any such Junior DIP Liens shall attach to any the proceeds of such NBG Collateral, subject to the priorities set forth in this Interim Order.

e. The DIP Agent and the DIP Lenders waive any and all rights they may have as a junior lien creditor or otherwise to object to the manner in which NBG seeks to enforce or collect the NBG Prepetition Secured Loan Obligations or the Prepetition Liens securing the NBG Prepetition Secured Loan Obligations or with respect any of the NBG Prepetition Collateral, whether such enforcement or collection actions are undertaken in accordance with this Interim Order and/or the NBG Prepetition Secured Loan Documents or otherwise, and regardless of whether any action or failure to act by or on behalf of NBG is adverse to the interest of the DIP Agent or DIP Lenders.

f.      NBG shall not have any obligation whatsoever to any DIP Agent or DIP Lender to ensure that the NBG Prepetition Collateral is genuine or owned by any of the Debtor Obligors or to preserve rights or benefits of any Person except as expressly set forth herein.  NBG, acting pursuant to this paragraph 12 shall not have, by reason of the NBG Prepetition Secured Loan Documents, the DIP Order, the DIP Credit Agreements, this Interim Order or any other document, any duty or other fiduciary relationship to or in respect of any DIP Lender or the DIP Agent.

g.      Until all NBG Prepetition Secured Loan Obligations (and all Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, neither the DIP Agent nor any DIP Lender may take or receive any NBG Prepetition Collateral or any proceeds of NBG Prepetition Collateral in connection with the exercise of any right or remedy (including setoff) with respect to any NBG Prepetition Collateral in its capacity as a creditor or otherwise.  Without limiting the generality of the foregoing, unless and until all NBG Prepetition Secured Loan Obligations (and all Adequate Protection Superpriority Claims) are indefeasibly paid in full and in cash, except as expressly provided in this Interim Order, the sole right of the DIP Agent and DIP Lenders with respect to the NBG Prepetition Collateral is to hold a junior lien on the NBG Prepetition Collateral pursuant to the DIP Order, the DIP Credit Agreements and this Interim Order for the period and to the extent granted in this Interim Order and to receive a share of the proceeds thereof, if any, after the indefeasible payment in full and in cash of all NBG Prepetition Secured Loan Obligations (and all Adequate Protection Superpriority Claims).

h.      Except as otherwise specifically provided herein to the contrary and solely for purposes of this Interim Order, the DIP Agent and DIP Lenders each hereby waive: (i) promptness, diligence, notice of acceptance, notice of default, notice of nonpayment, notice

of intent to accelerate, notice of acceleration, and any other notice with respect to any of the NBG Prepetition Secured Loan Obligations and this Interim Order; (ii) any requirement that the DIP Agent, any DIP Lender or any other secured party protect, secure, perfect, or insure any security interest or lien or NBG Prepetition Collateral or exhaust any right or take any action against the Debtor Obligors or any other person or entity or any NBG Prepetition Collateral; and (iii) any right of the DIP Agent or DIP Lender to require NBG to marshal the assets of the Debtors.

i.      Any right of the DIP Agent or DIP Lenders to credit bid on the NBG Prepetition Collateral shall be subject to the prior or concurrent payment in full and in cash of all NBG Prepetition Secured Loan Obligations (and any Adequate Protection Superpriority Claims).

j.      The terms and provisions of this paragraph 12 shall apply notwithstanding anything to the contrary in the DIP Order or the DIP Credit Agreements, and shall control in all respects as to the subject matter and provisions (including, without limitation, as to any relative priorities) set forth herein.

13.     **Continuing Effect of this Interim Order**.  Any dismissal, conversion, or substantive consolidation of the Chapter 11 Cases shall not affect the rights of NBG under this Interim Order, and all of its rights and remedies hereunder shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated. Any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise shall provide or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the NBG Prepetition Secured Loan Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens shall

continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such Adequate Protection Superpriority Claims and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all persons), and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

14.     **Cash Management**.  The Debtors shall maintain their cash management arrangement in a manner consistent with past practice and as described in the Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions and (II) Granting Related Relief.  Dkt. No. 4 (the "<u>Cash Management Order</u>").

15.     **Proofs of Claim**.  NBG shall not be required to file proofs of claim or proofs of secured claim in any of the Chapter 11 Cases or Successor Cases (as defined below) and the Debtors' stipulations herein shall be deemed to constitute a timely filed proof of claim against each of the applicable Debtors in the Chapter 11 Cases.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to NBG with respect to all prepetition claims, secured claims, and rights and interest, including, without limitation, claims arising under or related to the NBG Prepetition Secured Loan Documents, this Interim Order, and/or any Final Order.  Notwithstanding the foregoing, or any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, NBG is hereby authorized and entitled, in each case in its respective sole discretion, but not required, to file (and amend and/or supplement, as NBG sees fit) a master proof of claim or proof of secured claim and/or aggregate proofs of claim or

proofs of secured claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed pursuant to this Interim Order and/or the Final Order.

16. **No Marshaling/Applications of Proceeds**. Subject to and to the extent provided in ~~the entry of~~ [SMB 11/13/18] the Final Order, NBG shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the NBG Collateral (including any NBG Prepetition Collateral), as the case may be, and proceeds shall be received and applied in accordance with this Interim Order and NBG Prepetition Secured Loan Documents notwithstanding any other agreement or provision to the contrary.

17. **Section 552(b)**. ~~NBG shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, including, for the avoidance of doubt, that postpetition revenues and payments in connection with any NBG Prepetition Collateral (including (i) postpetition payments generated by operation of vessels that are NBG Prepetition Vessel Collateral on and after the Petition Date and under any contracts in respect thereof in effect on and after the Petition Date and (ii) all postpetition revenues deposited into earnings or operating accounts associated with or related to any NBG Prepetition Vessel Collateral and owned by a Debtor Borrower under the NBG Credit Facilities are proceeds under section 552(b), in each case to the extent NBG was granted an assignment, pledge or other transfer of legal or beneficial title or interest in respect of, or security interest in, or a lien on, such NBG Prepetition Collateral (including, without limitation, contracts, payments or revenues in respect thereof under NBG Credit Facilities). Upon entry of~~ [SMB 11/13/18]Subject to and to the extent provided in the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to NBG with respect to proceeds, product, offspring or profits of any of the NBG Prepetition Collateral.

18.    **Section 507(b) Reservation**.    Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to NBG hereunder is insufficient to compensate for any Diminution in Value of its interests in the NBG Prepetition Collateral (including NBG Cash Collateral) during the Chapter 11 Cases or any successor cases to the Chapter 11 Cases including, but not limited to, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the Chapter 11 Cases (collectively, "Successor Cases").

19.    **Section 506(c) Waiver**.    Subject to and to the extent provided in ~~the entry of~~ [SMB 11/13/18] the Final Order, no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases or any Successor Cases at any time shall be charged against NBG, any of its respective claims, any NBG Prepetition Secured Loan Obligations, any Adequate Protection Liens, any Adequate Protection Superpriority Claims, any Prepetition Liens or any NBG Prepetition Collateral, including any NBG Cash Collateral, pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of NBG.  Nothing contained in this Interim Order shall be deemed a consent by NBG to any charge, lien, assessment or claim against, or in respect of, the NBG Prepetition Collateral, including NBG Cash Collateral, under section 506(c) or 105(a) of the Bankruptcy Code, or otherwise.

~~20.~~    ~~**Credit Bid**.  Subject in all respects to the Stipulations and terms of the NBG Prepetition Secured Loan Documents, NBG and/or its agents shall have the right to credit bid under, and subject to the terms of, section 363(k) of the Bankruptcy Code, all of its respective claims (including any Adequate Protection Superpriority Claims) in connection with a sale of~~

the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan. [SMB 11/13/2018]

21.     **Good Faith**.  NBG and its agents have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Interim Order and their reliance on this Interim Order has been and is in good faith.

22.     ~~**No Release of Guarantors**.  Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any Debtor or non-Debtor guarantor to NBG with respect to their respective obligations under any of the NBG Prepetition Secured Loan Documents.~~ [SMB 11/13/18]

23.     **No Waiver by Failure to Seek Relief; Right to Seek Additional Adequate Protection**.  The failure of NBG to seek relief or otherwise exercise its rights and remedies under this Interim Order, the NBG Prepetition Secured Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of NBG.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of NBG to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

24.     **Modification of Automatic Stay**.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant (or continue to grant, as applicable) the Adequate Protection Liens and incur the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all

liabilities and obligations under the terms herein; (d) authorize the Debtors to pay, and NBG to retain and apply, any payments made in accordance with the terms of this Interim Order and the NBG Prepetition Secured Loan Documents; and (e) permit NBG to terminate the use of NBG Cash Collateral in accordance with this Interim Order.

25. **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26. **Binding Effect of Interim Order**.  Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding in accordance with its terms upon the Debtors, NBG, all other creditors of any of the Debtors, and all other parties-in-interest and each of their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of these Chapter 11 Cases, or upon dismissal of any of these Chapter 11 Cases.

27. **Survival**.  The provisions of this  Interim Order and any actions taken pursuant hereto shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii) or (iii) of this paragraph 27, the terms and provisions of this Interim Order as well as the Adequate Protection Liens and Adequate Protection Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order

28. **Effect of this Interim Order**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be

enforceable *nunc pro tunc* to the Petition Date immediately upon entry. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed as such.

29. **Modification or Amendment**. Except as otherwise provided herein, no waiver, modification or amendment of any of the provision hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and NBG, and approved by the Court after notice to parties-in-interest.

30. **Jurisdiction**. The Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

31. **Debtors' Authorization**. The Debtors are authorized and empowered to take all actions necessary to implement the provisions of this Interim Order.

32. **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the Cash Management Order, the DIP Credit Agreements, the DIP Order, or any other order of this Court (other than the Final Order), the provisions of this Interim Order shall control to the extent of such conflict.

33. **Cash Collateral Orders for Other Secured Vessel Lenders**. If, acting in its sole discretion, NBG determines that any Debtor has provided any other secured vessel lender greater rights or protections under any cash collateral order or otherwise than NBG has under this Interim Order, then the Debtors shall, at the request of NBG, as soon as reasonably practicable, seek Court approval of an amended cash collateral order with NBG

that incorporates such rights or protections for NBG's benefit.

34.    **Notice**.  The Debtors shall, within three business days of entry of this Interim Order, mail copies of a notice of entry of this Interim Order and the hearing to approve the relief requested in the Motion on a final basis (the "<u>Final Hearing</u>"), together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. In addition, all parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Interim Order no later than the day after its entry on the docket.  A copy of this Interim Order will be made available on the Debtors' restructuring website located at http://dm.epiq11.com/aegean. The notice of the entry of this Interim Order and the Final Hearing shall state that the objections to the entry of the Final Order shall be filed with the Court, together with proof of service thereon, and served on the counsel for the Debtors and the Notice Parties with a copy to the Court's chambers so as to be actually received no later than 5:00 p.m. on [~~____~~], [SMB 11/13/18] November 14, 2018.

35.    **Final Hearing**. The Court shall hold the Final Hearing to consider the relief requested in the Motion, including any objection filed in accordance with this Interim Order,  at a time to be scheduled by the court [~~____~~, 2018~~]~~. [SMB 11/13/18]


Date: <u>November 13, 2018</u>                        __/s/ STUART M. BERNSTEIN_____
     New York, New York                              UNITED STATES BANKRUPTCY JUDGE

**Annex A**

**NBG Prepetition Secured Loan Documents**

1.       **NBG Prepetition Secured Loan Agreement.**

Loan Agreement, dated October 27, 2006, between (1) Tasman Seaways Inc. and Santon Limited, as joint and several borrowers, and (2) National Bank of Greece S.A., as lender, as amended, modified, supplemented, and/or in effect from time to time.

2.       **NBG Prepetition Secured Loan Documents.**

Such documents, include, without limitation, the following documents (as amended, modified, supplemented, and/or in effect from time to time), along with other documents and instruments related thereto:

- Supplemental Agreement, dated July 28, 2010, among (1) Tasman Seaways Inc. and Santon Limited, as joint and several borrowers, (2) Aegean Marine Petroleum Network Inc. and Aegean Bunkering Services Inc., as guarantors, and (3) National Bank of Greece S.A., as lender,
- Supplemental Agreement, dated May 12, 2011, among (1) Tasman Seaways Inc. and Santon Limited, as joint and several borrowers, (2) Aegean Marine Petroleum Network Inc. and Aegean Bunkering Services Inc., as guarantors, and (3) National Bank of Greece S.A., as lender;
- Supplemental Agreement, dated April 7, 2015, among (1) Tasman Seaways Inc. and Santon Limited, as joint and several borrowers, (2) Aegean Marine Petroleum Network Inc. and Aegean Bunkering Services Inc., as guarantors, and (3) National Bank of Greece S.A., as lender;
- Supplemental Letter, dated February 15, 2017, among (1) Tasman Seaways Inc. and Santon Limited, as joint and several borrowers, (2) Aegean Marine Petroleum Network Inc. and Aegean Bunkering Services Inc., as guarantors, and (2) National Bank of Greece S.A., as lender;
- First Preferred Liberian Ship Mortgage, dated February 20, 2009, between Tasman Seaways Inc., as mortgagor, and National Bank of Greece S.A., as mortgagee, pursuant to which the vessel Kalymnos was assigned as collateral;
- Addendum No. 1 to First Preferred Mortgage, dated July 28, 2010, between Tasman Seaways Inc., as mortgagor, and National Bank of Greece S.A., as mortgagee;
- Addendum No. 2 to First Preferred Mortgage, dated April 7, 2015, between Tasman Seaways Inc., as mortgagor, and National Bank of Greece S.A., as mortgagee;
- Deed of Assignment, dated February 20, 2009, between Tasman Seaways Inc., as mortgagor, and National Bank of Greece S.A., as mortgagee,

- First Preferred Liberian Ship Mortgage, dated September 3, 2010, between Santon Limited, as mortgagor, and National Bank of Greece S.A., as mortgagee, pursuant to which the vessel Leros was assigned as collateral;
- First Preferred Panamanian Ship Mortgage, dated May 12, 2011, between Santon Limited, as mortgagor, and National Bank of Greece S.A., as mortgagee, pursuant to which the vessel Leros was assigned as collateral;
- Addendum to First Preferred Mortgage, dated April 7, 2015, between Santon Limited, as mortgagor, and National Bank of Greece S.A., as mortgagee;
- Deed of Assignment, dated September 3, 2010, between Santon Limited, as mortgagor, and National Bank of Greece S.A., as mortgagee,
- Guarantee, dated October 27, 2006, between Aegean Marine Petroleum Network Inc., as guarantor, and National Bank of Greece S.A., as lender;
- Guarantee, dated October 27, 2006, between Aegean Bunkering Services Inc., as guarantor, and National Bank of Greece S.A., as lender;
- The Pledge Agreement, dated October 22, 2007, between Tasman Seaways Inc., as pledgor, and National Bank of Greece S.A., as lender, under which the retention account of Tasman Seaways Inc. was pledged to National Bank of Greece S.A.;
- The Pledge Agreement , dated October 22, 2007, between Tasman Seaways Inc., as pledgor, and National Bank of Greece S.A., as lender, under which the earnings account of Santon Limited was pledged to National Bank of Greece S.A.;
- The Pledge Agreement , dated October 22, 2007, between Santon Limited, as pledgor, and National Bank of Greece S.A., as lender, under which the earnings account of Santon Limited was pledged to National Bank of Greece S.A.; and
- The Pledge Agreement , dated October 22, 2007, between Santon Limited, as pledgor, and National Bank of Greece S.A., as lender, under which the retention account of Santon Limited was pledged to National Bank of Greece S.A.

3. **NBG Prepetition Vessel Collateral**

"NBG Prepetition Vessel Collateral" means vessel Leros and the vessel Kalymnos, and related collateral as described in the NBG Prepetition Secured Loan Documents.

4. **NBG Prepetition Collateral**

"NBG Prepetition Collateral" means all collateral as described in the NBG Prepetition Secured Loan Documents.

5. **NBG Cash Collateral**

"NBG Cash Collateral" means all cash collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) to the extent that National Bank of Greece S.A. has been provided interests therein as provided under the NBG Prepetition Secured Loan Documents, along with all earnings

generated by any of the NBG Prepetition Vessel Collateral and/or other NBG Prepetition Collateral, whether any of the foregoing accrued prior to and/or after the Petition Date.