Marc Kieselstein, P.C.
Cristine Pirro
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

James H.M. Sprayregen, P.C.
Adam C. Paul, P.C. (admitted *pro hac vice*)
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | Case No. 18-13374 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF PLAN SUPPLEMENT**

**PLEASE TAKE NOTICE THAT** on February 15, 2019, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order"), (a) authorizing the debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan"); (b) approving the *Disclosure Statement for the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages;

---

[1]    Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/aegean.  The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan or Disclosure Statement, as applicable.

and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors hereby file the following Plan Supplement exhibits, as may be modified, amended, or supplemented from time to time:

| | |
|---|---|
| **Exhibit B:** | Identities of the New Directors and Officers of the Reorganized Debtors |
| **Exhibit C:** | Schedule of Retained Causes of Action |
| **Exhibit D:** | Description of Restructuring Transactions |
| **Exhibit E:** | Litigation Trust Agreement |
| **Exhibit F:** | Litigation Trust Loan Agreement |
| **Exhibit G:** | Litigation Trust Backstop Commitment Agreement |
| **Exhibit H:** | Form of Reorganized Debtor Organizational Documents |

Any reference to the Plan Supplement in the Plan shall include **Exhibit A**[3] and each of the documents identified above as **Exhibit B** through **Exhibit H**, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 26, 2019, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Michael E. Wiles, in the United States Bankruptcy Court for the Southern District of New York, located at 1 Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **March 19, 2019, at 4:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). Any objection **must**:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court; (c) state, with particularity, the basis and nature of any objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before **March 19, 2019, at 4:00 p.m., prevailing Eastern Time**:

---

[3]    Plan Supplement **Exhibit A** was filed separately in the *Notice of Filing of Plan Supplement* [Docket No. 420] on March 5, 2019.

| Debtors | Counsel to the Debtors |
|---|---|
| Aegean Marine Petroleum Inc.<br>52 Vanderbilt Avenue Suite 1405<br>New York, New York 10017<br>Attn.:  Tyler Baron | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Marc Kieselstein and Cristine Pirro<br><br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:  James H.M. Sprayregen, Adam C. Paul, and W. Benjamin Winger |
| **United States Trustee** | **Counsel to the Creditors' Committee** |
| Office of the United States Trustee for the Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn.: Brian S. Masumoto, Andrew Velez Rivera | Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036<br>Attention: Ira S. Dizengoff, Philip C. Dublin, and Kevin Zuzolo |
| **Counsel to the DIP Lenders** | |
| Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Attention: Abhilash M. Raval and Lauren C. Doyle | |

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors reserve the right, subject to the terms and conditions set forth in the Plan and Restructuring Support Agreement, to alter, amend, modify, or supplement any document in this Plan Supplement; *provided* that if any document in the Plan Supplement is altered, amended, modified or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a blackline of such document with the Court.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Epiq Corporate Restructuring, LLC, the Notice and Claims Agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) calling the Debtors' restructuring hotline at (888) 418-0324 (toll free) or (503) 520-4423 (international); (b) visiting the Debtors' restructuring website at: https://dm.epiq.com/aegean; and/or (c) writing to Aegean Ballot Processing, c/o Epiq Corporate Restructuring, LLC, PO Box 4422, Beaverton, Oregon 97076-4422.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:  http://www.nysb.uscourts.gov.

New York, New York
Dated:  March 12, 2019

/s/  Marc Kieselstein

Marc Kieselstein, P.C.
Cristine Pirro
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Adam C. Paul, P.C. (admitted *pro hac vice*)
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit B**

### **Identities of the New Directors and Officers of the Reorganized Debtors**

The identities of the members of the Reorganized Aegean Board, the boards of directors of the Reorganized Debtors, the officers of Reorganized Aegean, and the officers of the Reorganized Debtors, as well as the identities of any insider that will be employed by the Reorganized Debtors, if any, will be identified at or prior to the Confirmation Hearing, as required by section 1129(a)(5) of the Bankruptcy Code.

## <u>Exhibit C</u>

**Schedule of Retained Causes of Action**

**Exhibit C**

**Retained Causes of Action Schedule**

Article IV.M of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article IX, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Non-Litigation Trust Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Non-Litigation Trust Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors in their discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Non-Litigation Trust Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Non-Litigation Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Litigation Claims that a Debtor may hold against any Entity shall vest in the Litigation Trust.  All Litigation Claims are expressly preserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain the applicable Non-Litigation Trust Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The applicable Reorganized Debtor through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Non-Litigation Trust Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Non-Litigation Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

"Non-Litigation Trust Causes of Action" means any claim or Cause of Action other than the Litigation Claims.  Article I.A of the Plan defines Litigation Claims as follows:

"*Litigation Claims*" means all of the following claims and Causes of Action belonging to any of the Debtors or their Non-Debtor Subsidiaries, and existing at any time on or prior to the Petition Date: (a) claims and Causes of Action relating to the events, circumstances, and conduct described in the June 4, 2018, and November 2, 2018, Form 6-K disclosures of Aegean including conduct concerning improper accounting for or recordation of accounts receivable, as well as the right of any of the Debtors or their Non-Debtor Subsidiaries to the proceeds of or recovery in any suit, prosecution, investigation, settlement, enforcement proceeding, fine, penalty, or other proceeding or action by any government or governmental agency in connection with the foregoing; (b) claims and Causes of Action relating to the construction and maintenance of Aegean Oil Terminal Corp.'s fuel oil terminal located in Fujairah, UAE, as well as the right of any of the Debtors or their Non-Debtor Subsidiaries to the proceeds of or recovery in any suit, prosecution, investigation, settlement, enforcement proceeding, fine, penalty, or other proceeding or action by any government or governmental agency in connection with the foregoing; (c) claims and Causes of Action relating to misstated accounting records, fraudulent misappropriation of funds by Dimitris Melissanidis, claims against auditors and other professionals related to misappropriation of funds, any related conspiracy to defraud Aegean or investors in Aegean, claims against Quality Solutions related to construction fraud or other fraud, misconduct, malpractice, or other malfeasance by any director, officer, employee, or agent of any of the Debtors or their Non-Debtor Subsidiaries in connection with any of the foregoing; (d) claims and Causes of Action brought by any of the Debtors or their Non-Debtor Subsidiaries, as Plaintiffs, against Hess Corporation, as Defendant, commenced in the Supreme Court of the State of New York, County of New York: Part 39, Index Number 653887/2014, including any appeals in connection with the foregoing; (e) claims and Causes of Action concerning unpaid invoices for marine fuels supplied through agreements entered into with O.W. Group and any affiliate thereof; (f) claims and Causes of Action concerning HSFO product loaded from Petrotrin in Trinidad in December 2016; (g) claims and Causes of Action arising from the repurchase of any equity interests in Aegean; (h) claims and Causes of Action against any of the Debtors' or their Non-Debtor Subsidiaries' directors or officers or other person covered under any of the D&O Liability Insurance Policies, including for breach of fiduciary duty; (i) [Reserved]; (j) claims and Causes of Action of any of the Debtors or their Non-Debtor Subsidiaries in connection with the Related Party Transactions described in the Form 20-F of Aegean for the fiscal year ended December 31, 2016; and (k) Avoidance Actions, with the exception of claims and Causes of Action to avoid and recover preferential transfers pursuant to Bankruptcy Code section 547; provided, however, that, notwithstanding anything to the contrary contained herein, the scope of "Litigation Claims" shall be expressly subject to the limitations set forth in Article IX.F hereof. For the avoidance of doubt, the "Litigation Claims" shall not include any claim or Cause of Action that is not identified in clauses (a) - (k) of the foregoing sentence or any claim or Cause of Action against Mercuria, David Gallagher, any Reorganized Debtor or Non-Debtor Subsidiary, or any other parties or entities described in the first sentence of the second paragraph of Article IX.F hereof.

Notwithstanding and without limiting the generality of Article IV.M or Article I.A of the Plan, the following **Schedule C-1** through **Schedule C-6** attached hereto include specific claims or causes of action expressly preserved and which will be retained by the Debtors and the Reorganized Debtors, as applicable including: (a) claims related to contracts and leases; (b) claims related to insurance policies and surety bonds; (c) claims related to deposits, adequate assurance posting, and other collateral postings; (d) claims related to liens; (e) claims, defenses, cross-claims, and counter-claims related to litigation and possible litigation; (f) claims related to accounts receivable and accounts payable; and (g) claims related to tax refunds; and (h) claims related to potential avoidance of prepetition transfers under section 547 of the Bankruptcy Code.

**The Causes of Action set forth on the List of Retained Causes of Action, including without limitation, Schedule C-1 through Schedule C-6 are non-exclusive and are not intended to be a comprehensive list of all retained Causes of Action.**

**In addition to the Schedules attached hereto and without limiting the generality of Article IV.M or Article I.A. of the Plan, all Causes of Action that are neither Litigation Claims nor claims or Causes of Action that are released pursuant to the terms of the Plan shall constitute Retained Causes of Action, including without limitation all Causes of Action in connection with asserting or exercising any objection to any Proof of Claim not previously Allowed pursuant to the Plan or prior Final Order, rights of setoff, counterclaims, recoupment, and any defenses related thereto and all other Causes of Action in connection with asserting or exercising claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after any Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, but excluding those expressly released pursuant to the Plan or the Litigation Claims.**

**The Reorganized Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement the List of Retained Causes of Action at any time with additional Causes of Action in accordance with the Plan. Failure to include any Cause of Action herein at anytime shall not be a bar nor have any impact on the Reorganized Debtors' rights to bring any Cause of Action not otherwise released pursuant to the Plan.**

For the avoidance of doubt, to the extent any claim or cause of action listed in the foregoing Schedules is a Litigation Claim, such Litigation Claim shall vest in the Litigation Trust and shall not be retained by the Reorganized Debtors.

All rights to enforce, commence, prosecute, pursue, settle, or take any other action with respect to any Non-Litigation Trust Causes of Action shall be preserved for the sole benefit of the Reorganized Debtors, regardless of whether any Non-Litigation Trust Causes of Action or any entity is specifically referenced herein, in the Plan, in the Disclosure Statement, or in any Plan Supplement. The decision whether to enforce, commence, prosecute, pursue, settle, or take any other action with respect to any Non-Litigation Trust Causes of Action, or to refrain from doing so, shall remain within the sole discretion of the Reorganized Debtors.

## List of Retained Causes of Action

### A. Claims Related to Contracts and Leases

**Schedule C-1** includes contracts and leases to which one or more Debtors are a party. Unless otherwise specifically released by or vested in the Litigation Trust pursuant to the Plan, the Debtors expressly reserve the claims or Causes of Actions, based in whole or in part upon any and all contracts and leases to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or lease is included on **Schedule C-1**, including without limitation all contracts and leases that are assumed pursuant to the Plan or were previously assumed by the Debtors. The claims and Causes of Actions reserved include, without limitation, claims and Causes of Action against charterers, vendors, suppliers of goods or services, customers, or any other parties, unless such claims or Causes of Action were previously released through the Plan or separate written agreement executed by the Debtors: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for breach of contract, wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors; (f) for environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods; (g) for counterclaims and defenses related to any contractual obligations; (h) for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims; and (j) for demurrage claims due from charterers. Each Schedule G of the Schedules filed by the Debtors in the Chapter 11 Cases, as the same may be amended from time to time, is hereby incorporated by reference into **Schedule C-1** as if fully set forth therein. The Debtors further incorporate by reference the *Rejected Executory Contracts and Unexpired Lease Schedule* previously filed as Exhibit A to the Plan Supplement.

### B. Claims Related to Insurance Policies and Surety Bonds

**Schedule C-2** includes insurance contracts and policies to which one or more Debtors are a party. Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan, the Debtors expressly reserve all claims and Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is included on **Schedule C-2**, including claims and Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters. Each Part 11 of each Debtor's Schedule A/B of the Schedules filed in the Chapter 11 Cases, as the same may be amended from time to time, is hereby incorporated by reference into this **Schedule C-2** as if fully set forth herein. Exhibit C to the *Debtors' Motion For*

*Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue their Prepetition Insurance Coverage and Surety Bond Program, (B) Satisfy Prepetition Obligations Related Thereto, (C) Renew, Supplement, and Enter Into New Insurance Policies and Surety Bonds and Continue to Pay Brokerage Fees, and (II) Granting Related Relief* [Docket No. 7] is hereby incorporated into **Schedule C-2** as if fully set forth therein.

### C. Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings

**Schedule C-3** includes Entities to whom the Debtors have paid or given a security deposit, adequate assurance payment, or any other type of deposit or collateral. Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan or the Debtors, the Debtors expressly reserve all claims and Causes of Action based in whole or in part upon any and all postings of deposits, security deposits, adequate assurance postings, or any other type of deposit or collateral posting, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit or collateral is included on **Schedule C-3**. Exhibit B to the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 10] is hereby incorporated by reference into **Schedule C-3** as if fully set forth herein. Each Part 2 of each Debtor's Schedule A/B of the Schedules filed in the Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference into **Schedule C-3** as if fully set forth therein.

### D. Claims and Causes of Action Related to Liens

Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan or the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 290], the Debtors expressly reserve all claims and Causes of Action based in whole or in part upon any and all liens regardless of whether such lien is specifically identified herein. Each Debtor's Schedule D of the Schedules filed in the Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference as if fully set forth herein.

### E. Claims, Defenses, Cross-Claims and Counter-Claims Related to Litigation and Potential Litigation

**Schedule C-4** sets forth Entities that are party to or that the Debtors believe may become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial. Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan, the Debtors expressly reserve all claims and Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such

Entity is included on **Schedule C-4**. Each of the following is hereby incorporated by reference into **Schedule C-4** as if fully set forth therein: each Part 11 of each Debtor's Schedule A/B of the Schedules filed in the Chapter 11 Cases, as may be amended from time to time.

### F.  Causes of Action Related to Accounts Receivable and Accounts Payable

**Schedule C-5** sets forth certain Entities that have recently or that currently owe money to the Debtors.  Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all of their rights with respect to claims and Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or the Reorganized Debtors, regardless of whether such entity is expressly identified into **Schedule C-5**.  Furthermore, the Debtors expressly reserve all of their rights with respect to claims and Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to them, including, without limitation, all Entities listed on Schedules D and E/F of each of the Schedules filed by the Debtors in the Chapter 11 Cases, which are hereby incorporated by reference into **Schedule C-5** as if fully set forth herein.  Further, each Part 3 of each Debtor's Schedule A/B of the Schedules filed in the Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference as if fully set forth herein.

### G.  Causes of Action Related to Tax Refunds

**Schedule C-6** includes Entities that have recently or that currently owe money to the Debtors for, or related, to taxes paid.  Unless otherwise released by or vested in the Litigation Trust pursuant to the Plan, the Debtors expressly reserve all claims and Causes of Action against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or Reorganized Debtors, regardless of whether such Entity is included on **Schedule C-6**. Each Part 11 of each Debtor's Schedule A/B of the Schedules filed in the Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference into **Schedule C-6** as if fully set forth therein. Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors owe taxes to them.

### H.  Causes of Action Related to Potential Avoidance of Prepetition Transfers Under Section 547 of the Bankruptcy Code

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve their rights with respect to all Claims and Causes of Action against or related to all Entities for the avoidance and recovery of preferential transfers pursuant to section 547 of the Bankruptcy Code, regardless of whether such Claims or Causes of Action are specifically identified herein.

## Schedule C-1

## Claims Related to Contracts and Leases

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN SHIP III MARITIME COMPANY | AEGEAN OIL | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN SHIP VIII MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN TIFFANY MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN BREEZE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN ACE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN MAISTROS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN SHIP XII MARITIME COMPANY | AEGEAN OIL | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER OF AFFREIGHTMENT |
| AEGEAN GAS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | MEDITERRANEAN CHARTER AGREEMENT - AEGEAN OIL |
| AEGEAN MARINE PETROLEUM S.A. | NAVIG8 CHEMICALS ASIA PTE LTD | 3 TEMASEK AVE #25-01 CENTENNIAL TOWER 39190 SINGAPORE | CHARTER AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | NAVIG8 CHEMICALS POOL INC | 3 TEMASEK AVE #25-01 CENTENNIAL TOWER, SINGAPORE, 39190 SINGAPORE | CHARTER AGREEMENT |
| ANDROS MARINE LIMITED | AL-IRAQIA SHIPPING SERVICES & OIL TRADING | OFFICE 3901-3904, P.O. BOX 54025, CLUSTER G JLT DUBAI, UNITED ARAB EMIRATES | CHARTER AGREEMENT |
| ITHAKI MARINE S.A. | AL-IRAQIA SHIPPING SERVICES & OIL TRADING | OFFICE 3901-3904, P.O. BOX 54025, CLUSTER G JLT DUBAI, UNITED ARAB EMIRATES | CHARTER AGREEMENT |
| SIFNOS MARINE INC. | SPANISH COMPANY OF PETROLEOS SAU | CEPSA TOWER PASEO DE LA CASTELLANA, 259A, MARDRID 28046 SPAIN | CHARTER AGREEMENT |
| HALKI NAVIGATION S.A. | SPANISH COMPANY OF PETROLEOS SAU | CEPSA TOWER PASEO DE LA CASTELLANA, 259A, MARDRID 28046 SPAIN | CHARTER AGREEMENT |
| SEALAND NAVIGATION INC. | AEGEAN XII MARITIME COMPANY | 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER AGREEMENT |
| KITHNOS MARITIME INC. | AEGEAN XII MARITIME COMPANY | 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | CHARTER AGREEMENT |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| ETON MARINE LTD. | PEARL MARINE LOGISTICS UAE FZE | PLATINUM TOWER, I2 CLUSTER I STREET JUMEIRAH LAKES TOWERS, AL THANYAH 5-393 HADAEQ, DUBAI UNITED ARAB EMIRATES | CHARTER AGREEMENT |
| AEGEAN BUNKERING SERVICES INC. | PEARL MARINE LOGISTICS UAE FZE | PLATINUM TOWER, I2 CLUSTER I STREET JUMEIRAH LAKES TOWERS, AL THANYAH 5-393 HADAEQ, DUBAI UNITED ARAB EMIRATES | CHARTER AGREEMENT |
| ZAKYNTHOS MARINE LIMITED | PENINSULA PETROLEUM S.L. | 2 SHELBOURNE BUILDINGS, SHELBOURNE ROAD, BALLSBRIDGE, DUBLIN, IRELAND | CHARTER AGREEMENT |
| AEGEAN VII SHIPPING LTD. | OILCHART OFFSHORE UK LTD | ATTN: OWEN WEBBER, MANAGING DIR., 90 LONG ACRE, COVENT GARDEN, LONDON, UK | CHARTER AGREEMENT |
| MYKONOS I MARITIME LIMITED | GREEN PORTS (GIBRALTAR) LTD. | UNIT 5.23, WORLD TRADE CENTRE, GIBRALTAR | CHARTER AGREEMENT |
| PAROS MARITIME INC. | GP GLOBAL BUNKERING FZE | P.O. BOX 50001, FUJAIRAH, UNITED ARAB EMIRATES | CHARTER AGREEMENT |
| SANTON LIMITED | SK B&T PTE OF SINGAPORE | MR ALVIN LIM 9 RAFFLES PALCE 53-02  048619 SINGAPORE | CHARTER AGREEMENT |
| AEGEAN SHIP III MARITIME COMPANY | HELLENIC FUELS AND LUBRICANTS, | INDUSTRIAL AND COMMERCIAL S.A. (EKO), 8A CHIMARRAS STREET, 25 MAROUSSI, ATHENS, GR-151 GREECE | CHARTER AGREEMENT |
| AEGEAN TIFFANY MARITIME COMPANY | HELLENIC FUELS AND LUBRICANTS, | INDUSTRIAL AND COMMERCIAL S.A. (EKO), 8A CHIMARRAS STREET, 25 MAROUSSI, ATHENS, GR-151 GREECE | CHARTER AGREEMENT |
| AEGEAN SHIP VIII MARITIME COMPANY | HELLENIC FUELS AND LUBRICANTS, | INDUSTRIAL AND COMMERCIAL S.A. (EKO), 8A CHIMARRAS STREET, 25 MAROUSSI, ATHENS, GR-151 GREECE | CHARTER AGREEMENT |
| AEGEAN BUNKERING SERVICES INC. | SPANISH COMPANY OF PETROLEOS SAU | CEPSA TOWER PASEO DE LA CASTELLANA, 259A, MARDRID 28046 SPAIN | CHARTER AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | WESTOIL MARINE SERVICES, INC. | ATTN: DOUGLAS HOUGHTON, 1610 BARRACUDA STREET, SAN PEDRO, CA, 90731 USA | CHARTER AGREEMENT |
| SYMI NAVIGATION S.A. | NYALA SHIPPING S.A. | CHEMIN THURY 2, GENEVA 1206 SWITZERLAND | CHARTER AGREEMENT |
| KYTHIRA MARINE S.A. | SK B&T PTE OF SINGAPORE | MR ALVIN LIM 9 RAFFLES PALCE 53-02 048619 SINGAPORE | CHARTER AGREEMENT |
| TASMAN SEAWAYS INC. | BUNKER ONE (GULF OF MEXICO) S.A. | PO BOX 0832-1240 REGISTRATION NO. 155670480, WTC PANAMA, REPUBLIC OF PANAMA | CHARTER AGREEMENT |
| CEPHALLONIA MARINE S.A. | BUNKER ONE (GULF OF MEXICO) S.A. | PO BOX 0832-1240 REGISTRATION NO. 155670480, WTC PANAMA, REPUBLIC OF PANAMA | CHARTER AGREEMENT |
| SANTON LIMITED | TRAFIGURA MARITIME LOGISTICS PTE LTD | 10 COLLYER QUAY #29-00 OCEAN FINANCIAL CENTRE 49315 SINGAPORE | CHARTER AGREEMENT |
| I.C.S. PETROLEUM LTD. | SEAFARER'S INTERNATIONAL UNION OF CANADA | 200-1333 RUE ST- JACQUES, MONTREAL QC CANADA | COLLECTIVE BARGAINING AGREEMENT |
| I.C.S. PETROLEUM LTD. | SEAFARER'S INTERNATIONAL UNION OF CANADA | 200-1333 RUE ST- JACQUES, MONTREAL QC CANADA | RETIREMENT PLAN |
| I.C.S. PETROLEUM LTD. | INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 400 | WAREHOUSE UNION, LOCAL 111 VICTORIA DR #180, VANCOUVER, BC V5L 4C3 CANADA | RETIREMENT PLAN |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| I.C.S. PETROLEUM LTD. | COUNCIL OF MARINE CARRIERS | 215-3989 HENNING DR., BURNABY BC V5C 6P8 CANADA | RETIREMENT PLAN |
| I.C.S. PETROLEUM LTD. | T.M. ACCOUNTING SERVICES | 212 S. MILWAUKEE AVE., SUITE E, WHEELING IL 60090 USA | INDEPENDENT CONTRACTOR AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | BNP PARIBAS | 3 RUE TAIBOUT, PARIS, 75009 FRANCE | DEPOSIT ACCOUNT CONTROL AGREEMENT |
| AEGEAN HOLDINGS S.A. | PLAN BEE FUEL DISTRIBUTORS (PTY) LTD. | BRYANSTON JOHANNESBURG JOHANNESBURG, SOUTH AFRICA | ABMS SHAREHOLDER AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | FAISAL BIN KHALID SULTAN AL QASIMI | P.O. BOX 3695, SHARJAH, UNITED ARAB EMIRATES | SHAREHOLDER AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | COLONIAL OIL INDUSTRIES, INC. | ATTN: VICE PRESIDENT, OPERATIONS P.O. BOX 576 101, NORTH LATHROP AVE, SAVANNAH, GA 31415 USA | FUEL PURCHASE AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | TOYOTA TSUSHO PETROLEUM PTE LTD. | 600 NORTH BRIDGE ROAD, 16-08/09/10 PARKVIEW SQUARE 188778 SINGAPORE | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | FORDE REEDEREI SEETOURISTIK IBERIA S.L.U. (FRS) | FORDE REEDEREI SEETOURISTIK IBERIA S.L.U POLIGONO, INDUSTRIAL DE LA VEGA C/ LA LINCA DE LA CONCEPCION 3, TARIFA, 11380 SPAIN | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | TUI CRUISES | ANCELMANNPLATZ 1, HAMBURG 20537 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | CARGILL INTERNATIONAL SA | 14 CHEMIN DE-NORMANDIE, GENEVA CH-1206 SWITZERLAND | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | CARGILL INTERNATIONAL SA | 14 CHEMIN DE-NORMANDIE, GENEVA CH-1206 SWITZERLAND | FUEL PURCHASE AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | HYUNDAI MERCHANT MARINE CO., LTD. | MS SUNHYE, JUNG 194 YULGOK-RO, JONGRO-GU, SEOUL 110-754 SOUTH KOREA | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | NIGERIA LNG LIMITED | NLNG ROAD, AMADI CREEK, OFF EASTERN BYE PASS, PORT HARCOURT, NIGERIA | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | IMPERIAL OIL | 505 QUARRY PARK BLVD. SE, CALGARY ALBERTA T2C 5N1 CANADA | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | PETROLEUM COMPANY OF TRINIDAD | SOUTHERN MAIN ROAD, POINTE-A-PIERRE, TRINIDAD, WEST INDIES | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | HAPAG-LLOYD AG | BALLINDAMM 25, HAMBURG 20095 GERMANY | FUEL PURCHASE AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | VALERO MARKETING & SUPPLY | ATTN: MAIL STATION E3F, 1 VALERO WAY, SAN ANTONIO TX 78249 USA | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | PETROJAM LIMITED | 96 MARCUS GARVEY DRIVE, P.O. BOX 241, KINGSTON 15 JAMAICA | FUEL PURCHASE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | AFRIQUIA SMDC | KM7 ROUTE DE RABAT, CASABLANCA, BP 2545 AIN SEBAA, MOROCCO | FUEL PURCHASE AGREEMENT |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | SOCIEDAD DE SALVAMENTO Y | SEGURIDAD MARITIMA C/. FRUELA, NO 3, MADRID 28011 SPAIN | FUEL PURCHASE AGREEMENT |
| I.C.S. PETROLEUM LTD. | PACIFIC WESTERN NAVIGATION | 600-1090 WEST GEORGIA STREET, VANCOUVER BRITISH COLUMBIA, V6E3X1 CANADA | BARGE TRANSPORTATION AGREEMENT |
| AEGEAN OIL TERMINAL CORPORATION | AL WATAN SECURITY SERVICES (WSS) | (FIRST PARTY) P.O. BOX 121, FUJAIRAH, UNITED ARAB EMIRATES | SECURITY SERVICES AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | MATC (ACTING AS CUSTODIAN) | 1251 WATERFRONT PLACE SUITE 525, PITTSBURGH PA 15222 USA | 401K PROFIT SHARING PLAN |
| AEGEAN BUNKERING (USA) LLC | PAYCHEX | 911 PANORAMA TRAIL SOUTH, ROCHESTER NY 14625 USA | RETIREMENT SERVICES AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | PAYCHEX | 911 PANORAMA TRAIL SOUTH, ROCHESTER NY 14625 USA | PAYROLL PROCESSING AGREEMENT |
| AEGEAN OIL TERMINAL CORPORATION | CENTURY GARBAGE COLLECTION INC. | P.O. BOX 556 FUJAIRAH, UNITED ARAB EMIRATES | WASTE DISPOSAL SERVICES |
| AEGEAN OIL TERMINAL CORPORATION | GULF ENVIRONMENT FZE | P.O. BOX 1607, FUJAIRAH PORT, FUJAIRAH, UNITED ARAB EMIRATES | SLOP OIL SERVICE AGREEMENT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | DHL EXPRESS - CARGORED CANARIAS | JOSÉ MARÍA MILLARES SALL – TELDE, 46 POLÍGONO INDUSTRIAL EL GORO, LAS PALMAS DE GRAN CANARIA 35219 SPAIN | POSTAL SHIPPING AGREEMENT |
| AEGEAN OIL TERMINAL CORPORATION | THE SUN AGRICULTURAL MATERIALS AND PEST CONTROL CO. | P.O. BOX 8699, FUJAIRAH UNITED ARAB EMIRATES | PEST CONTROL SERVICES |
| AEGEAN BUNKERING (JAMAICA) LTD. | OCEAN J TOWING LTD | 7 BELMONT ROAD, KINGSTON 5 JAMAICA | TOWING SERVICES |
| AEGEAN BUNKERING (JAMAICA) LTD. | SENTRY SERVICES SECURITY COMPANY LTD | 9 LATHAM AVENUE, KINGSTON 6 JAMAICA | SECURITY SERVICES |
| AEGEAN BUNKERING (JAMAICA) LTD. | SENTRY SERVICES SECURITY COMPANY LTD | 9 LATHAM AVENUE, KINGSTON 6 JAMAICA | COURIER SERVICES |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | SEGURICAN SISTEMAS SLU | EUSEBIO NAVARRO, 13, LAS PALMAS DE GRAN CANARIA SPAIN | MONTHLY CAR GPS NAVIGATION AGREEMENT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | SEPCAN | F-XPLANADA L-OMÁS QLRCR CCLO L CLILLCIO OE STE. SIN. PLANTA 2., LAS PALMAS DE GRAN CANARIA, SPAIN | ANTIPOLLUTION STAND BY SERVICE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | ANTICIMEX | CALLE DIEGO VEGA SARMIENTO  25, LAS PALMAS DE GRAN CANARIA, 35014 SPAIN | PEST CONTROL SERVICES |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | EUROPEAN WASTE MANAGEMENT | ARINAGA, CALLE 6-B DERECHA 35118 AGÜIMES, LAS PALMAS DE GRAN CANARIA, 35118 SPAIN | WASTE DISPOSAL SERVICES |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | ISS FACILITY SERVICES | C/ ANTONIO MARÍA MANRIQUE 3, LAS PALMAS DE GRAN CANARIA, 35011 SPAIN | OFFICE CLEANING AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | CROWN RECORDS MANAGEMENT | 200 MAC LANE, KEASBEY, NJ 8832 USA | RECORDS MANAGEMENT STORAGE AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | CARIBBEAN BUNKERING LLC | 58 COMMERCE RD, STAMFORD CT, 6092 USA | PURCHASE AND SALE AGREEMENT - ST CROIX JV |
| I.C.S. PETROLEUM LTD. | MERCURY LAUNCH & TUG LTD. | 65 ROGERS STREET, VANCOUVER BC, V6A 3N2 CANADA | MOORAGE LICENSE CONTRACT |
| AEGEAN BUNKERING SERVICES INC. | INTERSYS | 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS, GREECE | PRINTER/PHOTO COPY MACHINE LEASE |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| I.C.S. PETROLEUM LTD. | BUTLER BOX & STORAGE INC. | 925 TERMINAL AVENUE, VANCOUVER BC, V6A 2M9 CANADA | OFFICE STORAGE AGREEMENT |
| AEGEAN BUNKERING (TRINIDAD) LTD. | MASSY FINANCE GFC LTD | 61-63 EDWARD STREET, PORT-OF-SPAIN, TRINIDAD AND TOBAGO | VEHICLE LOAN |
| AEGEAN BUNKERING SERVICES INC. | INTERSYS | 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS, GREECE | PRINTER/PHOTO COPY MACHINE LEASE |
| AEGEAN TIFFANY MARITIME COMPANY | HELLENIC ENVIRONMENTAL CENTER S.A. | 10 AKTI KONDYLI, PIRAEUS 18545 GREECE | OIL RESIDUE REMOVAL |
| AEGEAN BUNKERING (SINGAPORE) PTE. LTD. | FUJI XEROX SINGAPORE PTE LTD | 80 ANSON ROAD, #1-01 FUJI XEROX TOWERS, REG .NO. 198500962E 079907 SINGAPORE | EQUIPMENT RENTAL AGREEMENT |
| AEGEAN BUNKERING (SINGAPORE) PTE. LTD. | MITSUI-SOKO (SINGAPORE) PTE LTD | NO. 2 PIONEER SECTOR LANE REGN NO: 197902365M GST REGN NO: MR-8500010-6 628321 SINGAPORE | OFFICE STORAGE AGREEMENT |
| I.C.S. PETROLEUM LTD. | I.C.S. LOGISTICS LTD | 1220 - 1066 WEST HASTINGS, VANCOUVER BC V6E 4S8 CANADA | OFFICE LEASE |
| AEGEAN BUNKERING (SINGAPORE) PTE. LTD. | AUDIT ALLIANCE LLP | 20 MAXWELL ROAD, #11-09, MAXWELL HOUSE, SINGAPORE | AUDITOR ENGAGEMENT LETTER |
| TILOS SHIPPING (PTE.) LTD. | AUDIT ALLIANCE LLP | 20 MAXWELL ROAD, #11-09, MAXWELL HOUSE, SINGAPORE | AUDITOR ENGAGEMENT LETTER |
| MILOS SHIPPING (PTE.) LTD. | AUDIT ALLIANCE LLP | 20 MAXWELL ROAD, #11-09, MAXWELL HOUSE, SINGAPORE | AUDITOR ENGAGEMENT LETTER |
| SERIFOS SHIPPING (PTE.) LTD. | AUDIT ALLIANCE LLP | 20 MAXWELL ROAD, #11-09, MAXWELL HOUSE, SINGAPORE | AUDITOR ENGAGEMENT LETTER |
| I.C.S. PETROLEUM LTD. | DELOITTE LLP | 2800 - 1055 DUNSMUIR STREET, 4 BENTALL CENTRE P.O. BOX 49279, VANCOUVER, BC V7X 1P4 CANADA | TAX COMPLIANCE ENGAGEMENT LETTER |
| I.C.S. PETROLEUM LTD. | DELOITTE LLP | 2800 - 1055 DUNSMUIR STREET, 4 BENTALL CENTRE P.O. BOX 49279, VANCOUVER, BC V7X 1P4 CANADA | TRANSFER PRICING ENGAGEMENT LETTER |
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | DANIEL J. WANHON | SUITE 1.2.08 BLOCK 1 EUROTOWERS, GIBRALTAR | ACCOUNTING ENGAGEMENT LETTER |
| AEGEAN BUNKERING (JAMAICA) LTD. | IAN WALTERS & CO. LIMITED | 2 RIPON ROAD, KINGSTON 5 JAMAICA | AUDITOR ENGAGEMENT LETTER |
| AEGEAN BUNKERING (HONG KONG) LIMITED | SOVEREIGN CORPORATE SERVICES LIMITED | SUITE 5 VALLEY TOWERS VALLEY ROAD, BIRKIRKARA BKR 9022 REPUBLIC OF MALTA | NOMINEE SERVICES INDEMNITY AGREEMENT |
| AEGEAN MARINE PETROLEUM NETWORK INC. | COMPUTERSHARE TRUST COMPANY N.A. | 1745 GARDENA AVENUE SUITE 200, GLENDALE CA 91204 USA | STOCKHOLDER'S RIGHTS AGREEMENT |
| AEGEAN MARINE PETROLEUM NETWORK INC. | LEVERET INTERNATIONAL | 42 HATZIKYRIAKOU AVENUE, PIRAEUS, 18538 GREECE | REGISTRATION RIGHTS AGREEMENT |
| AEGEAN MARINE PETROLEUM NETWORK INC. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | AEGEAN LOGO LICENSE AGREEMENT |
| AEGEAN MARINE PETROLEUM S.A. | SHANGHAI WESTGATE MALL CO. LTD | 1038 NANJING RD. (W), SHANGHAI, CHINA | OFFICE LEASE |
| AEGEAN MARINE PETROLEUM S.A. | POLAKIS SARRIS & CO. | 8TH FLOOR, NICOSIA TOWER CENTRE, NICOSIA, 1506 CYPRUS | OFFICE LEASE |
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | WATER GARDENS MANAGEMENT | (PHASE TWO) LIMITED 39 IRISH TOWN SUITE 5, GIBRALTAR | OFFICE LEASE ASSIGNMENT |
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | ZEPANTO COMPANY LIMITED | 28 IRISH TOWN, GIBRALTAR | OFFICE LEASE ASSIGNMENT |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING (SINGAPORE) PTE. LTD. | MOVA AUTOMOTIVE PTE LTD. | NO. 22 JALAN KILANG, #07-01 ROC, NO.: 198904033G 159419 SINGAPORE | OFFICE LEASE |
| AEGEAN BUNKERING (TRINIDAD) LTD. | DIGI-DATA SYSTEMS LIMITED | #96 WRIGHTSON ROAD, PORT-OF-SPAIN, TRINIDAD AND TOBAGO | OFFICE LEASE |
| AEGEAN (FUJAIRAH) BUNKERING S.A. | GOV'T OF FUJAIRAH, FUJAIRAH FREE ZONE AUTHORITY | FUJAIRAH FREE ZONE AUTHOR, OPAL TOWER, BURJ KHALIFA STREET, OFFICE 604 & 605, BUSINESS BAY, DUBAI, UNITED ARAB EMIRATES | OFFICE LEASE |
| AEGEAN PETROLEUM INTERNATIONAL INC. | MR. PADMAKAR SHRIPAD KOLHATKAR | P.O. BOX 24427, DUBAI UNITED ARAB EMIRATES | OFFICE LEASE |
| AEGEAN BUNKERING (USA) LLC | VANDERBILT ASSOCIATES I, LLC | C/O BRAUSE REALTY INC. 52 VANDERBILT AVENUE, NEW YORK, NY 10017 USA | OFFICE LEASE |
| AEGEAN BUNKERING (USA) LLC | 400 OCEANGATE LTD | 400 OCEANGATE SUITE 210 LONG BEACH CA 90802 USA | OFFICE LEASE |
| AEGEAN MANAGEMENT SERVICES M.C. | IMERYS INDUSTRIAL MINERALS GREECE S.A. | ANDREA METAXA 15, KIFISSIA ATTICA 14564 GREECE | OFFICE LEASE |
| AEGEAN MARINE PETROLEUM S.A. | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI, UNITED ARAB EMIRATES | OFFICE LEASE |
| AEGEAN BUNKERING (JAMAICA) LTD. | VON WHITE | 14 RETIREMENT CRESENT, KINGSTON 5, KINGSTON, JAMAICA | RESIDENTIAL LEASE AGREEMENT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | OLEODUCTOS CANARIOS, S.A. | EXPLANADA TOMAS QUEVEDO, S/N, LAS PALMAS DE GRAN CANARIA, SPAIN | SERVICE LEASE -  PIPELINES |
| I.C.S. PETROLEUM LTD. | VANCOUVER FRASER PORT AUTHORITY | 100 THE POINT, 999 CANADA PLACE, VANCOUVER BC V6C 3T4 CANADA | BERRY POINT WATERLOT LEASE |
| AEGEAN BUNKERING (TRINIDAD) LTD. | BRIDGET POON | #107 WINDY RIDGE GOODWOOD PARK, PORT-OF-SPAIN, TRINIDAD AND TOBAGO | OFFICE LEASE |
| AEGEAN OIL TERMINAL CORPORATION | TEBODIN MIDDLE EAST LTD. | TAMEEM HOUSE TECOM, 19TH FLOOR P.O. BOX 8092, DUBAI UNITED ARAB EMIRATES | ENVIRONMENTAL MONITORING SERVICES AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | ASPECT ENTERPRISE SOLUTIONS | 30 ST MARY AXE, LONDON EC3A 8 EP UNITED KINGDOM | SOFTWARE USAGE LICENSE |
| AEGEAN BUNKERING SERVICES INC. | ENET SOLUTIONS LOGICOM S.A. | (SOFTWARE PROVIDER) ROUPAKI AREA, PO BOX 114 ASPROPIRGOS 19300 GREECE | LICENSE PURCHASE AGREEMENT - VM WARE |
| AEGEAN BUNKERING SERVICES INC. | GFI ONLINE (FAX SERVICES) | TRILOGY HQ, 401 CONGRESS AVE #2650, AUSTIN, TEXAS 78701 USA | SUBSCRIPTION - DATA SERVICE |
| AEGEAN BUNKERING SERVICES INC. | EPLISON HR | LEOFOROS SYGGROU 120, ATHENS, 11741 GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN PETROLEUM INTERNATIONAL INC. | SINGULAR LOGIC | ACHAIAS 3, KIFISIA 14564 GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN BUNKERING SERVICES INC. | DANAOS PERIPHERALS S.A. | 14 AKTI KONDYLI, PIRAEUS 18545 GREECE | SERVICES CONTRACT - INFO@GATE |
| AEGEAN BUNKERING SERVICES INC. | DANAOS PERIPHERALS S.A. | 14 AKTI KONDYLI, PIRAEUS 18545 GREECE | MAINTANANCE OF APPLICATIONS - INFO@GATE |
| AEGEAN MARINE PETROLEUM S.A. | THOMSON REUTERS HELLAS S.A. | 8 OTHONOS, ATHENS, GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN BUNKERING SERVICES INC. | ACTIVE COMPUTER SYSTEMS | 15 TSIKLITIRA, NEO IRAKLEIO ATHENS, 14121 GREECE | SOFTWARE USAGE LICENSE |
| AEGEAN BUNKERING SERVICES INC. | DELL EMC SA (SOFTWARE PROVIDER) | 176 SOUTH STREET, HOPKINTON MASSACHUSSETTS, 1748 USA | SOFTWARE USAGE LICENSE |
| AEGEAN BUNKERING SERVICES INC. | VEEAM | LINDEN PARK, LINDENSTR. 16, BAAR CH-6340 SWITZERLAND | SUBSCRIPTION - DATA SERVICE |
| AEGEAN BUNKERING SERVICES INC. | DANAOS MANAGEMENT CONSULTANTS S.A. | 14 AKTI KONDYLI, PIRAEUS 18545 GREECE | SERVICES CONTRACT - ERP |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING SERVICES INC. | DANAOS MANAGEMENT CONSULTANTS S.A. | 14 AKTI KONDYLI, PIRAEUS 18545 GREECE | MAINTENANCE CONTRACT |
| AEGEAN PETROLEUM INTERNATIONAL INC. | LIGHTHOUSE | LEOFOROS SYGGROU 154, ATHENS 11741 GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN BUNKERING SERVICES INC. | MICROSOFT HELLAS | 221 KIFISSIAS AVENUE, KIFISIA 15124 GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN MANAGEMENT SERVICES M.C. | SINGULAR LOGIC | ACHAIAS 3, KIFISIA 14564 GREECE | SUBSCRIPTION - OFFICE 365 |
| AEGEAN BUNKERING SERVICES INC. | GL MARITIME SOFTWARE GMBH | AM SEEHAFEN 7, ROSTOCK, 18147 GERMANY | SOFTWARE USAGE LICENSE |
| AEGEAN BUNKERING SERVICES INC. | DNV GL - SOFTWARE | 5 AITOLIKOU STREET, PIRAEUS 18545 GREECE | SOFTWARE USAGE LICENSE |
| AEGEAN MARINE PETROLEUM S.A. | HORIZON TERMINALS TANGIERS SA | KM7 ROUTE DE RABAT, CASABLANCA BP 2545 AIN SEBAA MOROCCO | STORAGE AGREEMENT - TANGER MEDITERRANEE |
| AEGEAN BUNKERING (USA) LLC | BUCKEYE TERMINALS LLC | ONE GREENWAY PLAZA SUITE 600 HOUSTON TX, 77046 USA | FUEL TERMINAL STORAGE AGREEMENT - BALTIMORE |
| AEGEAN BUNKERING (USA) LLC | BUCKEYE BAYONNE TERMINAL LLC | ONE GREENWAY PLAZA SUITE 600 HOUSTON TX, 77046 USA | FUEL TERMINAL STORAGE AGREEMENT - BAYONNE |
| AEGEAN BUNKERING (USA) LLC | BUCKEYE TERMINALS LLC | ONE GREENWAY PLAZA SUITE 600 HOUSTON TX, 77046 USA | FUEL TERMINAL STORAGE AGREEMENT - CHARLESTON |
| AEGEAN BUNKERING (USA) LLC | BUCKEYE TERMINALS LLC | ONE GREENWAY PLAZA SUITE 600 HOUSTON TX, 77046 USA | FUEL TERMINAL STORAGE AGREEMENT - CHESAPEAKE (BUCKEYE) |
| AEGEAN BUNKERING (USA) LLC | BUCKEYE PENNSAUKEN TERMINAL LLC | ONE GREENWAY PLAZA SUITE 600 HOUSTON TX, 77046 USA | FUEL TERMINAL STORAGE AGREEMENT - PENNSAUKEN |
| AEGEAN MARINE PETROLEUM S.A. | AFRIQUIA SMDC | KM7 ROUTE DE RABAT, CASABLANCA, BP 2545 AIN SEBAA, MOROCCO | STORAGE AGREEMENT - TANGER MEDITERRANEE |
| AEGEAN MARINE PETROLEUM S.A. | ARXEIOTHIKI S.A. LOGISTICS & FILLING MANAGEMENT | 1 LOUKIANOU STREET, ATHENS, 106 75 GREECE | DOCUMENT MANAGEMENT SERVICES, CONTRACT 12/11/18 |
| AEGEAN BUNKERING (USA) LLC | DIRECT ENERGY BUSINESS MARKETING, LLC | 1 HESS PLAZA, 11TH FLOOR, WOODBRIDGE, NJ 07095 USA | FUEL OIL STORAGE AND SALES AGREEMENT |
| AEGEAN BUNKERING (USA) LLC | COLONIAL TERMINALS, INC. | ATTN: VICE PRESIDENT, OPERATIONS P.O. BOX 576 101, NORTH LATHROP AVE, SAVANNAH, GA 31415 USA | FUEL TERMINAL STORAGE AGREEMENT - SAVANNAH |
| AEGEAN BUNKERING (USA) LLC | IMTT-VIRGINIA LLC | ATTN: MR. MATTHEW COURTNEY 321 ST. CHARLES AVE, 2ND FLOOR SUITE, NEW ORLEANS LA 70130 USA | FUEL TERMINAL STORAGE AGREEMENT - CHESAPEAKE (IMTT) |
| AEGEAN BUNKERING (USA) LLC | SHORE TERMINALS LLC | ATTN: SVP, MARKETING & BUSINESS DEVELOPMENT 19003 IH-10 WEST, SAN ANTONIO TX 78257 USA | FUEL TERMINAL STORAGE AGREEMENT - NUSTAR |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PORT AUTHORITY OF LAS PALMAS | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | LAS PALMAS CONCESSION |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PORT AUTHORITY OF LAS PALMAS | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | TRANSFER OF CONCESSION AGREEMENT FROM SHELL TO ABCLP |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH OIL INDUSTRY ZONE | P.O. BOX 4400, EMIRI COURT, FUJAIRAH, UNITED ARAB EMIRATES | LAND LEASE AGREEMENT - FUJAIRAH |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | MINERVA BUNKER LAS PALMAS, S.L.U. | C/ GRACILIANO AFONSO 3, 5TH FLOOR, LAS PALMAS DE GRAN CANARIA 35005 SPAIN | STORAGE AGREEMENT - MINERVA |
| AEGEAN BUNKERING (JAMAICA) LTD. | CABLE AND WIRELESS JAMAICA LTD | 2-6 CARLTON CRESENT, KINGSTON 10, JAMAICA | TELEPHONE SERVICES AGREEMENT |
| AEGEAN BUNKERING (JAMAICA) LTD. | JAMAICA PUBLIC SERVICE CO. LTD | 6 KNUTSFORD BLVD., KINGSTON 5, JAMAICA | ELECTRICITY SERVICES AGREEMENT |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | ENDESA ENERGIA SA | C/RIBERA DE LOIRA 60, LAS PALMAS DE GRAN CANARIA, SPAIN | ELECTRICITY SERVICES AGREEMENT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | TELEFONICA DE ESPAÑA | GRAN VIA 28 MADRID, LAS PALMAS DE GRAN CANARIA SPAIN | TELEPHONE AND INTERNET SERVICES AGREEMENT |
| I.C.S. PETROLEUM LTD. | SHAW CABLESYSTEMS G.P. | 900, 630-3 AVENUE SW, CALGARY AB, T2P 4L4 CANADA | INTERNET SERVICES AGREEMENT |
| I.C.S. PETROLEUM LTD. | ROGERS WIRELESS | P.O. BOX 8878, STN TERINAL, VANCOUVER BC V6B 0H6 CANADA | CELL PHONE SERVICE AGREEMENT |
| AEGEAN BUNKERING SERVICES INC. | COSMOTE | OTE INVESTOR RELATIONS DEPARTMENT 1, IKAROU & AGIOU LOUKA ST. C BUILDING PAIANIA - ATTICA, 19 002 GREECE | SUBSCRIPTION - DATA SERVICE |
| AEGEAN ACE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN BREEZE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN MAISTROS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN SHIP III MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN SHIP VIII MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN SHIP XII MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN TIFFANY MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN ACE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN BREEZE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN MAISTROS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JUNE 8, 2018 |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | PRIVATE AGREEMENT DATED MARCH 31, 2015 |
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | ASSIGNMENT AGREEMENT DATED JULY 1, 2015 |
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10 AKTI KONDYLI, PIRAEUS, 18545 GREECE | BUNKERING AGREEMENT DATED APRIL 1, 2005 |

## Schedule C-2

## Claims Related to Insurance Policies and Surety Bonds

| INSURANCE POLICIES | | | |
|---|---|---|---|
| **DEBTOR** | **COUNTERPARTY** | **COUNTERPARTY ADDRESS** | **DESCRIPTION** |
| AMORGOS MARITIME INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| ANDROS MARINE LIMITED | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| DILOS MARINE INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| HALKI NAVIGATION S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| IOS SHIPPING LTD | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| ITHAKI MARINE S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| TASMAN SEAWAYS INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| KASSOS NAVIGATION S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| CEPHALLONIA MARINE S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| KERKYRA MARINE S.A. | MARINE INSURANCE & REINSURANCE | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE |
| KIMOLOS MARITIME INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| KITHNOS MARITIME INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| KYTHIRA MARINE S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| SANTON LIMITED | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| MILOS SHIPPING (PTE.) LTD. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| MYKONOS I MARITIME LIMITED | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| BENMORE SERVICES S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| PAROS MARITIME INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| ETON MARINE LTD. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| PAXOI MARINE S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| SANTORINI I MARITIME LIMITED | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| SERIFOS SHIPPING (PTE.) LTD. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN VII SHIPPING LTD. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| SYMI NAVIGATION S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| TILOS SHIPPING (PTE.) LTD. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN TANKING S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A. 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| NEVADO NAVIGATION S.A. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |
| ZAKYNTHOS MARINE LIMITED | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | PROTECTION AND INDEMNITY INSURANCE |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN ACE MARITIME COMPANY | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN BREEZE MARITIME COMPANY | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN SHIP III MARITIME COMPANY | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN TIFFANY MARITIME COMPANY | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN SHIP VIII MARITIME COMPANY | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| SEALAND NAVIGATION INC. | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | PROTECTION AND INDEMNITY INSURANCE |
| AEGEAN BUNKERING SERVICES INC. | HELLENIC LLOYD INSURANCE BROKERS S.A. | 154 SYNGROU AVENUE 2ND FLOOR, ATHENS, GREECE | HULL AND MACHINERY INSURANCE |
| AEGEAN BUNKERING SERVICES INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE (POLICY NO. B080110163M18) |
| AEGEAN ACE MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00717000) |
| AEGEAN BREEZE MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00718000) |
| AEGEAN SHIP III MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00719000) |
| AEGEAN MAISTROS MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00720000) |
| AEGEAN INVESTMENTS S.A. | EMIRATES INSURANCE CO. | AL ZAHIYA (TOURIST CLUB AREA), P.O. BOX 3856, ABU DHABI UNITED ARAB EMIRATES | PROPERTY, HANDLING EQUIPMENT AND BUSINESS INTERRUPTION - UAE ONLY (POLICY NO. 01/3201/365/2017/4) |
| AEGEAN TIFFANY MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00721000) |
| AEGEAN SHIP VIII MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00722000) |
| AMORGOS MARITIME INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00686000) |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| SIFNOS MARINE INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00687000) |
| ANDROS MARINE LIMITED | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00689000) |
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | ARGUS INSURANCE COMPANY (EUROPE) LIMITED | P.O. BOX 45 REGAL HOUSE, QUEENSWAY GIBRALTAR | BUSINESS COMBINED POLICY - DEATH, BODILY INJURY, AND THIRD PARTY PROPERTY DAMAGE (POLICY NO. P12BC00243) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO 324, LAS PALMAS DE GRAN CANARIA 35007 SPAIN | SURETY AND GUARANTEE NO. 10001130722 |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | MAPFRE ESPANA COMPANIA DE | SEGUROS Y REASEGUROS, S.A. Y REASEGUROS, S.A. 3, POETA AGUSTIN MILLARES SALL, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | CIVIL LIABILITY GENERAL (POLICY NO. 0961870011412) |
| DILOS MARINE INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00690000) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | MAPFRE ESPANA COMPANIA DE | SEGUROS Y REASEGUROS, S.A. Y REASEGUROS, S.A. 3, POETA AGUSTIN MILLARES SALL, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | CIVIL LIABILITY ENVIRONMENTAL (POLICY NO. 0961870011416) |
| AEGEAN BUNKERING (USA) LLC | STARR INDEMNITY & LIABILITY COMPANY | 399 PARK AVENUE 8TH FLOOR, NEW YORK, NY 10022 USA | EXCESS LIABILITY FOR MARINE TERMINALS AND OPERATORS (POLICY NO. MASILNY000389-18 / OMX10004483904 ) |
| AEGEAN BUNKERING (USA) LLC | STARR INDEMNITY & LIABILITY COMPANY | 399 PARK AVENUE 8TH FLOOR, NEW YORK, NY 10022 USA | THIRD PARTY LIABILITY INSURANCE - MARINE TERMINALS (POLICY NO. MASILNY000389-18) |
| HALKI NAVIGATION S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00692000) |
| IOS SHIPPING LTD | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00693000) |
| ITHAKI MARINE S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00694000) |
| TASMAN SEAWAYS INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00695000) |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| | | PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | |
| SEALAND NAVIGATION INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00723000) |
| KASSOS NAVIGATION S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00696000) |
| KERKYRA MARINE S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00698000) |
| KIMOLOS MARITIME INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00699000) |
| KITHNOS MARITIME INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00700000) |
| KYTHIRA MARINE S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00701000) |
| SANTON LIMITED | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00702000) |
| AEGEAN GAS MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00724000) |
| MILOS SHIPPING (PTE.) LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00682000) |
| MYKONOS I MARITIME LIMITED | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00703000) |
| TEMPEST SHIPTRADE LTD | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00725000) |
| BENMORE SERVICES S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00704000) |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| | | PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | |
| PAROS MARITIME INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00705000) |
| ETON MARINE LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY, 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00706000) |
| PAXOI MARINE S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00707000) |
| SANTORINI I MARITIME LIMITED | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00708000) |
| SERIFOS MARITIME INC. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00684000) |
| AEGEAN VII SHIPPING LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00709000) |
| SYMI NAVIGATION S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00710000) |
| AEGEAN SHIP XII MARITIME COMPANY | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00726000) |
| TILOS SHIPPING (PTE.) LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00683000) |
| NEVADO NAVIGATION S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00711000) |
| ZAKYNTHOS MARINE LIMITED | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00713000) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | AXA AURORA VIDA | EMILIO VARGAS, 6. 2ª PLANTA, MADRID 28043 SPAIN | GROUP LIFE INSURANCE (POLICY NO. 55.127.069) |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | ARGUS INSURANCE COMPANY (EUROPE) LIMITED | P.O. BOX 45 REGAL HOUSE, QUEENSWAY GIBRALTAR | INSURANCE POLICY FOR VEHICLE #G1334A |
| AEGEAN BUNKERING (GIBRALTAR) LIMITED | ARGUS INSURANCE COMPANY (EUROPE) LIMITED | P.O. BOX 45 REGAL HOUSE, QUEENSWAY GIBRALTAR | MOTOR VEHICLE INSURANCE #G3223A |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | UNIPRESALUD | AV. DEL TIBIDABO, 36, BARCELONA 08022 SPAIN | UNIVERSAL AND HEALTH PREVENTION SOCIETY SERVICE (POLICY NO. 1077798/001) |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR FORKLIFT 70157 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR FORKLIFT FD30T-M2WE3 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #12686 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #13246 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #13252 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68312 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68313 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68315 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68318 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68364 |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68510 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #68514 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #70151 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #70153 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #70154 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #70155 |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR VEHICLE #70156 |
| AEGEAN OIL TERMINAL CORPORATION | AL FUJAIRAH NATIONAL INSURANCE CO. | P.O. BOX 277, FUJAIRAH UNITED ARAB EMIRATES | WORKMEN'S COMPENSATION (POLICY NO. P/1201/01/17/1002047) |
| AEGEAN BUNKERING (JAMAICA) LTD. | BRITISH CARIBBEAN INSURANCE COMPANY LTD | 36 DUKE STREET, KINGSTON JAMAICA | MOTOR VEHICLE INSURANCE (POLICY NO. CPTP-338258) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAN005981 FOR VEHICLE #0333GZB) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL146999 FOR VEHICLE #1049FCW) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL147683 FOR VEHICLE #1957DCP) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL147004 FOR VEHICLE #6960DCV) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|--------|--------------|----------------------|-------------|
| | | | BIAL147007 FOR VEHICLE #9523CMJ) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL147695 FOR VEHICLE #E6454BGC) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL147691 FOR VEHICLE #E6455BGC) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PLUSULTRA | BJ, CALLE VICTOR HUGO, 67 LAS PALMAS DE, GRAN CANARIA 35006 SPAIN | MOTOR VEHICLE INSURANCE (POLICY NO. BIAL147697 FOR VEHICLE #E6456BGC) |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | SANITAS | LEON Y CASTILLO 324, LAS PALMAS DE GRAN CANARIA 35007 SPAIN | HEALTH INSURANCE (POLICY NO. 81470885) |
| AEGEAN BUNKERING (TRINIDAD) LTD. | THE BEACON INSURANCE COMPANY LIMITED | 13 STANMORE AVE, PORT-OF-SPAIN TRINIDAD AND TOBAGO | MOTOR VEHICLE INSURANCE (POLICY NO. TTPMI0186454) |
| CEPHALLONIA MARINE S.A. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE - (POLICY NO. 00697000) |
| WEST COAST FUEL TRANSPORT LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE (POLICY NO. 8645923) - VESSEL PT22 |
| AEGEAN OIL TERMINAL CORPORATION | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | PROPERTY DAMAGE AND BUSINESS INTERRUPTION POLICY (POLICY NO. DB151518000215) |
| AEGEAN MARINE PETROLEUM S.A. | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | PROPERTY DAMAGE AND BUSINESS INTERRUPTION POLICY (POLICY NO. DB151518000215) |
| AEGEAN INVESTMENTS S.A. | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | PROPERTY DAMAGE AND BUSINESS INTERRUPTION POLICY (POLICY NO. DB151518000215) |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR FORKLIFT AND MOTOR TPL (POLICY NO. 25/4023/18/2691) |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY FOR FORKLIFT (POLICY NO. 25/1003/18/1043) |
| AEGEAN OIL TERMINAL CORPORATION | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | WORKMEN'S COMPENSATION (POLICY NO. P/01/6021/2018/608) |
| AEGEAN OIL TERMINAL CORPORATION | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | EXCESS TERMINAL OPERATOR'S LIABILITY |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|--------|--------------|----------------------|-------------|
| AEGEAN OIL TERMINAL CORPORATION | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | TERMINAL OPERATOR'S PACKAGE |
| AEGEAN OIL TERMINAL CORPORATION | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | GROUP MEDICAL PLAN |
| AEGEAN OIL TERMINAL CORPORATION | UNITED INSURANCE COMPANY | UNIT NO 110, FIRST FLOOR MAKEEN BUILDING, AIRPORT ROAD, P.O. BOX 1888, DUBAI UNITED ARAB EMIRATES | FORKLIFT MACHINERY ALL RISK |
| I.C.S. PETROLEUM LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE (POLICY NO. 8645923) - VESSEL PT22 |
| I.C.S. PETROLEUM LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE (POLICY NO. 8645923) - VESSEL PT40 |
| I.C.S. PETROLEUM LTD. | SYNDICATE OF UNDERWRITERS (38%-COAST UNDERWRITERS LIMITED; 30%-CONTINENTAL CASUALTY COMPANY THROUGH CNA; 28%-ST. PAUL FIRE AND MARINE INSURANCE COMPANY) | 402 WEST GEORGE ST, STE 1200, VANCOUVER BC V6B 5A1 CANADA | HULL AND MACHINERY INSURANCE (POLICY NO. H15/29072) |
| I.C.S. PETROLEUM LTD. | GREAT AMERICAN INSURANCE COMPANY | OCEAN MARINE CLAIMS P.O. BOX 2468, CINCINNATTI OH 45201 USA | COFR (POLICY NO. OMH 6662042 12) |
| I.C.S. PETROLEUM LTD. | LLOYD'S UNDERWRITERS | CAN-SURE UNDERWRITING, P.O. BOX 10008, PACIFIC CENTRE SUITE, 1488-700 W GEORGIA ST, VANCOUVER BC V7Y 1A1 CANADA | COMMERCIAL INSURANCE POLICY (POLICY NO. CS523769) |
| WEST COAST FUEL TRANSPORT LTD. | AMERICAN STEAMSHIP OWNERS MUTUAL | PROTECTION AND INDEMNITY ASSOCIATION INC, ONE BATTERY PARK PLAZA, 31ST FLOOR, NEW YORK, NY 10004 USA | PROTECTION AND INDEMNITY INSURANCE (POLICY NO. 8645923) - VESSEL PT40 |
| AEGEAN OIL TERMINAL CORPORATION | AL SAGR NATIONAL INSURANCE COMPANY | DUBAI AL GARHOUD ROAD AL HILAL BUILDING, P.O. BOX 14614, DUBAI UNITED ARAB EMIRATES | REVISED TERMINAL OPERATORS PACKAGE |
| SIFNOS MARINE INC. | MARINE INSURANCE & REINSURANCE | INTERNATIONAL CONSULTANTS S.A., 154 SYNGROU AVENUE, 2ND FLOOR, ATHENS GREECE | AEGEAN BUNKERING SERVICES INC. - PROTECTION AND INDEMNITY INSURANCE (ZAKYNTHOS) |
| AEGEAN BUNKERING (USA) LLC | ENDURANCE AMERICAN INSURANCE COMPANY | C/O THE CORPORATION TRUST COMPANY CORPORATION TRUST | EXCESS LIABILITY FOR MARINE TERMINALS AND OPERATORS (POLICY NO. MASILNY000389-18 / OMX10004483904 ) |
| AEGEAN BUNKERING (TRINIDAD) LTD. | FARAH INSURANCE BROKERS LIMITED | 143 EDWARD STREET, PORT-OF-SPAIN | MOTOR VEHICLE INSURANCE |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| | | TRINIDAD AND TOBAGO CENTER 1209 ORANGE STREET, WILMINGTON DE 19801 USA | |
| AEGEAN BUNKERING SERVICES INC. | SYNDICATE OF UNDERWRITERS (37.5%-LLOYD'S UNDERWRITERS; 10%-AMERICAN HELLENIC HULL INSURANCE COMPANY LTD; 10%-AXA CORPORATE SOLUTIONS ASSURANCE SA; 7.5%-DUTCH MARINE INSURANCE PTE LTD (VIA WILLIS TOWERS WATSON AS BROKER); 10%-INDIA INTERNATIONAL INSURANCE PTE LTD; 7.5%-PI) | 51 LIME ST, LONDON EC3M 7DQ UK | HULL AND MACHINERY (POLICY NO. B080193065M17) |
| AEGEAN BUNKERING SERVICES INC. | SYNDICATE OF UNDERWRITERS (33.5%-LLOYD'S UNDERWRITERS; 10%-AMERICAN HELLENIC HULL INSURANCE COMPANY LTD; 14%-AXA CORPORATE SOLUTIONS ASSURANCE SA; 7.5%-DUTCH MARINE INSURANCE PTE LTD (VIA WILLIS TOWERS WATSON AS BROKER); 10%-INDIA INTERNATIONAL INSURANCE PTE LTD; 7.5%-PI) | 51 LIME ST, LONDON EC3M 7DQ UK | HULL AND MACHINERY (POLICY NO. B080193065M17) |
| AEGEAN BUNKERING SERVICES INC. | SYNDICATE OF UNDERWRITERS (20%-LLOYD'S UNDERWRITERS; 10%-AMERICAN HELLENIC HULL INSURANCE COMPANY LTD; 7.5%-SCOR UK COMPANY LTD.; 12.5%-SIAT; 10%-INDIA INTERNATIONAL INSURANCE PTE LTD.) | P.O. BOX 11355, D-20432 HAMBURG ALTER WALL 2-8, HAMBURG 20457 GERMANY | HULL AND MACHINERY (POLICY NO. B080193227M18) |
| WEST COAST FUEL TRANSPORT LTD. | SYNDICATE OF UNDERWRITERS (38%-COAST UNDERWRITERS LIMITED; 30%-CONTINENTAL CASUALTY COMPANY THROUGH CNA; 28%-ST. PAUL FIRE AND MARINE INSURANCE COMPANY) | 402 WEST GEORGE ST, STE 1200, VANCOUVER BC V6B 5A1 CANADA | ENDORSEMENT: HULL AND MACHINERY INSURANCE (POLICY NO. H15/29072) |
| AEGEAN INVESTMENTS S.A. | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | MARINE TERMINAL PACKAGE POLICY (POLICY NO. P/01/2032/2018/21) |
| AEGEAN INVESTMENTS S.A. | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY (POLICY NO. P/01/1020/2018/14) |
| WEST COAST FUEL TRANSPORT LTD. | SYNDICATE OF UNDERWRITERS (38%-COMPANIES THROUGH COAST UNDERWRITERS LIMITED; 30%-CONTINENTAL CASUALTY COMPANY THROUGH CNA; 28%-ST. PAUL FIRE AND MARINE INSURANCE COMPANY) | 402 WEST GEORGE ST, STE 1200, VANCOUVER BC V6B 5A1 CANADA | HULL AND MACHINERY INSURANCE (POLICY NO. H15/29072) |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN MARINE PETROLEUM S.A. | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | INSURANCE POLICY (POLICY NO. P/01/1020/2018/14) |
| AEGEAN MARINE PETROLEUM S.A. | ORIENT INSURANCE PJSC | ORIENT BUILDING, P.O. BOX 27966, DUBAI UNITED ARAB EMIRATES | MARINE TERMINAL PACKAGE POLICY (POLICY NO. P/01/2032/2018/21) |
| AEGEAN MARINE PETROLEUM S.A. | AIG EUROPE LIMITED | THE AIG BUILDING 58 FENCHURCH STREET, LONDON EC3M 4AB UK | PRIMARY DIRECTORS & OFFICERS' LIABILITY INSURANCE & COMPANY REIMBURSEMENT INSURANCE (POLICY NO. P2301005099) |
| AEGEAN MARINE PETROLEUM S.A. & AEGEAN MARINE PETROLEUM NETWORK INC. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS AND OFFICERS LIABILITY INSURANCE & COMPANY REIMBURSEMENT INSURANCE IN EXCESS OF $10M (POLICY NO. B1102E00151/1800) |
| AEGEAN MARINE PETROLEUM S.A. & AEGEAN MARINE PETROLEUM NETWORK INC. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS AND OFFICERS LIABILITY INSURANCE & COMPANY REIMBURSEMENT INSURANCE IN EXCESS OF $25M (POLICY NO. B1102E00152/1800) |
| AEGEAN MARINE PETROLEUM S.A. & AEGEAN MARINE PETROLEUM NETWORK INC. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS AND OFFICERS LIABILITY INSURANCE & COMPANY REIMBURSEMENT INSURANCE IN EXCESS OF $30M (POLICY NO. B1102E00153/1800) |
| AEGEAN MARINE PETROLEUM S.A. | AIG EUROPE LIMITED | THE AIG BUILDING 58 FENCHURCH STREET, LONDON, EC3M 4AB UK | DIRECTORS AND OFFICERS LIABILITY INSURANCE & COMPANY REIMBURSEMENT INSURANCE IN EXCESS OF $40M (POLICY NO. P2301010744) |
| AEGEAN MARINE PETROLEUM S.A. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS & OFFICERS - EXCESS & SIDE A DIC CONDITIONS DIRECTORS & OFFICERS LIABILITY INSURANCE $10.0M/$42.5M – RUNOFF COVERAGE (POLICY NO. B0901LI1836601000) |
| AEGEAN MARINE PETROLEUM S.A. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS & OFFICERS - EXCESS & SIDE A DIC CONDITIONS DIRECTORS & OFFICERS LIABILITY INSURANCE $7.5M/$35.0M – |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| | | | RUNOFF COVERAGE (POLICY NO. B0901LI1836600000) |
| AEGEAN MARINE PETROLEUM S.A. & AEGEAN MARINE PETROLEUM NETWORK INC. | LLOYD'S OF LONDON | LLOYD'S ONE LIME STREET, LONDON, EC3M 7HA UNITED KINGDOM | DIRECTORS AND OFFICERS EXCESS & SIDE A DIC IN EXCESS OF $50M (POLICY NO. B1102E00154/1800) |
| CEPHALLONIA MARINE S.A. | TAI PING AND GENERALI | TAIPING GENERAL INSURANCE CO., LTD - TIANJIN BRANCH B 19THF, FUTURE PLAZA, NO. 103 WEIDI ROAD, HEXI DISCTRICT, TIANJIN 300201, PRC | VESSEL INCIDENT: KEFALONIA - FROM TAI PING AND GENERALI |
| PAXOI MARINE S.A. | CELTIC HORIZON | VISENTINI GIOVANNI TRANSPORTI FLUVIOMARITTIMI SRL. 332 VIA G MATTEOTTI, PORTO TOLLE, ROVIGO, ITALY 45018 | VESSEL COLLISION - M/T PAXOI AND F/B CELTIC |
| ANDROS MARINE LIMITED | M/V ICE GLACIER | CARE OF MAESTRO SHIPPING S.A., AVENUE DU GUINTZET 8, 1700 FRIBOURG, SWITZERLAND | VESSEL COLLISION- ANDROS - ICE GLACIER |
| DILOS MARINE INC. | COOK SUNGA ROMELITO | A.J. SANTIAGO LAW OFFICE UNIT 2, 2ND FLOOR, KAMINARI BLDG, #247-249 BANAWE ST., BARGY LOURDES, STA. MESA HEIGHTS, QUEZON CITY, PHILIPPINES | EMPLOYEE INJURY CLAIM ABOARD VESSEL |

| SURETY BONDS | | | | | |
|---|---|---|---|---|---|
| DEBTOR | OBLIGEE | OBLIGEE ADDRESS | SURETY | SURETY ADDRESS | NATURE OF BOND |
| AEGEAN BUNKERING (USA) LLC | VIRGINIA DEPARTMENT OF MOTOR VEHICLES | P.O. BOX 27412, RICHMOND VA 23269 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | FUELS TAX BOND |
| AEGEAN BUNKERING (USA) LLC | STATE OF WASHINGTON, FUEL TAX UNIT, DEPARTMENT OF LICENSING | PO BOX 9034, OLYMPIA, WA 98507-9034 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | FUELS TAX BOND |
| AEGEAN BUNKERING (USA) LLC | LOUISIANA DEPARTMENT OF REVENUE, TAXPAYER SERVICES DIVISION, EXCISE TAX SECTION | P.O. BOX 201, BATON ROUGE, LA 70821-0201 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | MOTOR FUELS TAX BOND |
| AEGEAN BUNKERING (USA) LLC | STATE OF MISSISSIPPI, DEPARTMENT OF REVENUE | 500 CLINTON CENTER DRIVE, P.O. BOX 1033, CLINTON, MS 39056 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | PETROLEUM TAX SURETY BOND |

| DEBTOR | OBLIGEE | OBLIGEE ADDRESS | SURETY | SURETY ADDRESS | NATURE OF BOND |
|---|---|---|---|---|---|
| AEGEAN BUNKERING (USA) LLC | STATE OF TEXAS, COMPTROLLER OF PUBLIC ACCOUNTS | 111 E. 17TH ST., AUSTIN, TX 78701-1334 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | MOTOR FUELS TAX CONTINUOUS BOND |
| AEGEAN BUNKERING (USA) LLC | STATE OF NEW JERSEY DIVISION OF TAXATION | DIVISION OF TAXATION - EXCISE TAX BRANCH, P.O. BOX 046, TRENTON, NJ, USA, 08646-0046 | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET REGINA, SK S4P 4K9 CANADA | MOTOR FUELS TAX BOND |
| AEGEAN BUNKERING (USA) LLC | PENNSYLVANIA DEPARTMENT OF REVENUE | BUREAU OF MOTOR AND ALTERNATIVE FUEL TAXES, B.I.D.M.; P.O. BOX 280406, HARRISBURG, PA 17128-0406 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | LIQUID FUELS AND FUELS BOND |
| AEGEAN BUNKERING (USA) LLC | STATE OF DELAWARE | P.O. DRAWER E, DOVER, DE 19903-1565 USA | WESTERN SURETY COMPANY | 2100-1881 SCARTH STREET, REGINA, SK S4P 4K9 CANADA | SPECIAL FUEL BOND (DISTILLATE/LP GAS) |
| AEGEAN BUNKERING (USA) LLC | STATE OF MARYLAND | REVENUE ADMINISTRATION DIVISION, 110 CARROLL STREET, P.O. BOX 2191, ANNAPOLIS, MD 21404-2191 USA | CASH BOND | REVENUE ADMINISTRATION DIVISION, 110 CARROLL STREET, P.O. BOX 2191, ANNAPOLIS, MD 21404-2191 USA | MOTOR FUELS TAX CASH BOND |
| AEGEAN BUNKERING COMBUSTIBLE LAS PALMAS S.A. | LAS PALMAS PORT AUTHORITY | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | BANCO DE SABADELL | LEON Y CASTILLO 324, LAS PALMAS DE GRAN CANARIA 35007 SPAIN | GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLE LAS PALMAS S.A. | LAS PALMAS PORT AUTHORITY | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | BANCO DE SABADELL | LEON Y CASTILLO 324, LAS PALMAS DE GRAN CANARIA 35007 SPAIN | GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLE LAS PALMAS S.A. | LAS PALMAS PORT AUTHORITY | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | BANCO DE SABADELL | LEON Y CASTILLO 324, LAS PALMAS DE GRAN CANARIA 35007 SPAIN | GUARANTEE |

## Schedule C-3

### Claims Related to Deposits, Adequate Assurance Posing, and Other Collateral Postings

| DEBTOR | SECURITY HOLDER | ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING (USA) LLC | COGENT COMMUNICATIONS, INC. | 2450 N STREET NW, WASHINGTON DC 20037 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | FRONTIER COMMUNICATIONS | 401 MERRITT 7, NORWALK CT 06851 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | TIERZERO | 700 WILSHIRE BLVD, 6TH FLOOR, LOS ANGELES CA 90017 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | CHARTER COMMUNICATIONS | 400 ATLANTIC STREET, STAMFORD CT 06901 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | GRANITE TELECOMMUNICATIONS | 100 NEWPORT AVENUE, QUINCY MA 02171 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | GC PIVOTAL LLC AKA GTT AKA GLOBAL CAPACITY | 180 N LA SALLE ST, CHICAGO IL 60601 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | LA TECHNOLOGY GROUP | 373 S MAIN ST, FREEPORT NY 11520 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | LEVEL 3 (TW TELECOM) AKA CENTURYLINK | 10350 PARK MEADOWS DR, LONTREE, CO 80124 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | SPECTRUM BUSINESS | 400 ATLANTIC STREET, STAMFORD CT 06901 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | TIME WARNER | 60 COLUMBUS CIRCLE, NEW YORK, NY 10023 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | CISCO WEBEX | 3979 FREEDOM CIRCLE, SANTA CLARA CA 95054 USA | UTILITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | VERIZON WIRELESS | PO BOX 4005, ACWORTH GA 30101-9006 USA | UTILITY DEPOSIT |
| I.C.S. PETROLEUM LTD. | VANCOUVER FRASER PORT | 100 THE POINTE, 999 CANADA PLACE, VANCOUVER BC, V6C 3T4 CANADA | SECURITY DEPOSIT ON WATER LOT LEASE (BERRY POINT) |
| I.C.S. PETROLEUM LTD. | VANCOUVER FRASER PORT | 100 THE POINTE, 999 CANADA PLACE, VANCOUVER BC, V6C 3T4 CANADA | WATER LOT LEASE (BERRY POINT) PREPAID 11/06/18 |
| AEGEAN (FUJAIRAH) BUNKERING S.A. | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | UTILITIES DEPOSIT |
| AEGEAN BUNKERING (TRINIDAD) LTD | BRIDGET POON | #107 WINDY RIDGE, GOODWOOD PARK, TRINIDAD AND TOBAGO | REAL PROPERTY SECURITY DEPOSIT |
| AEGEAN BUNKERING (TRINIDAD) LTD | DIGI-DATA SYSTEMS LIMITED | 96 WRIGHTSON ROAD, PORT-OF-SPAIN, TRINIDAD AND TOBAGO | REAL PROPERTY SECURITY DEPOSIT |
| AEGEAN BUNKERING (USA) LLC | VANDERBILT ASSOCIATES LLC | C/O BRAUSE REALTY INC. 52 VANDERBILT AVENUE, NEW YORK NY 10017 USA | NY OFFICE SECURITY DEPOSIT 3 MONTH |
| AEGEAN BUNKERING (USA) LLC | 400 OCEANGATE LTD | 400 OCEANGATE, SUITE 210, LONG BEACH CA 90802 USA | LONG BEACH SECURITY DEPOSIT |
| AEGEAN AGENCY (GIBRALTAR) LIMITED | GIBRALTAR INTERNATIONAL BANK LTD | GIBRALTAR INTERNATIONAL BANK LTD, PO BOX 1375, INCE'S HOUSE, 310 MAIN STREET GX11 1AA GIBRALTAR | PORT AUTHORITY BANK GURANTEE AGENCY HOLDERS REGULATION |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO, 324 LAS PALMAS, DE GRAN CANARIA 35007 SPAIN | BANK DEPOSIT AS GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO, 324 LAS PALMAS, DE GRAN CANARIA 35007 SPAIN | BANK DEPOSIT AS GUARANTEE |

| DEBTOR | SECURITY HOLDER | ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO, 324 LAS PALMAS, DE GRAN CANARIA 35007 SPAIN | BANK DEPOSIT AS GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO, 324 LAS PALMAS, DE GRAN CANARIA 35007 SPAIN | BANK DEPOSIT AS GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | BANCO SABADELL | LEON Y CASTILLO, 324 LAS PALMAS, DE GRAN CANARIA 35007 SPAIN | BANK DEPOSIT AS GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | LAS PALMAS PORT AUTHORITY | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS 35008 SPAIN | FUEL SUPPLIER GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | ALGECIRAS PORT AUTHORITY | AV. HISPANIDAD, 2, 11207 ALGECIRAS, CÁDIZ, SPAIN | FUEL SUPPLIER GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | TENERIFE PORT AUTHORITY | AVENIDA FRANCISCO LA ROCHE, 49 EDIFICIO JUNTA DEL PUERTO, SANTA CRUZ, TENERIFE 38001 SPAIN | FUEL SUPPLIER GUARANTEE |
| AEGEAN BUNKERING JAMAICA LTD | BANK OF NOVA SCOTIA JAMAICA LTD | 2 KNUTSFORD BOULEVARD, KINGSTON 5 JAMAICA | CUSTOMS BONDED WAREHOUSE GUARANTEE |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | GOBIERNO DE CANARIAS | AUTORIDAD PORTUARIA DE LAS PALMAS EDIFICIO DE LA AUTORIDAD PORTUARIA, EXPLANADA TOMAS QUEVEDO, S/N 35008 LAS PALMAS DE GRAN CANARIA | CUSTOM DEPOSIT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | AGENCIA TRIBUTARIA | CALLE INFANTA MERCEDES 37, MADRID 28020 SPAIN | CUSTOM DEPOSIT |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | COMPANY'S SECURITY DEPOSIT |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | RESIDENCE VISA DEPOSIT |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | PASSPORTS DEPOSIT |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | FUJAIRAH FREE ZONE AUTHORITY |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | SYSTEM USER GUARANTEE |
| AEGEAN OIL TERMINAL CORPORATION | AL DAR REAL ESTATE | AMERIKIS STREET 4, ATHENS 10564 GREECE | APARTMENT SECURITY DEPOSITS FOR FORMER EMPLOYEES |
| AEGEAN OIL TERMINAL CORPORATION | CENTURY GARBAGE COLLECTION LLC | ANDREA METAXA 15, KIFISSIA, ATTICA 14564 GREECE | SECURITY DEPOSIT FOR GARBAGE COLLECTION & HIRING OF SKIP |
| AEGEAN OIL TERMINAL CORPORATION | FUJAIRAH FREE ZONE AUTHORITY | OFFICE 604 & 605, OPAL TOWER BURJ KHALIFA STREET | VISA SECURITY DEPOSIT |

| DEBTOR | SECURITY HOLDER | ADDRESS | DESCRIPTION |
|---|---|---|---|
| | | BUSINESS BAY, DUBAI UNITED ARAB EMIRATES | |
| AEGEAN SHIP III MARITIME COMPANY | PIRAEUS BANK | AMERIKIS STREET 4, ATHENS 10564 GREECE | TIME DEPOSIT |
| AEGEAN TIFFANY MARITIME COMPANY | PIRAEUS BANK | AMERIKIS STREET 4, ATHENS 10564 GREECE | TIME DEPOSIT |
| AEGEAN BUNKERING SERVICES INC. | PIRAEUS BANK | 2 KNUTSFORD BOULEVARD, KINGSTON 5 JAMAICA | LOAN RETENTION ACCOUNT |
| TASMAN SEAWAYS INC. | NATIONAL BANK OF GREECE | 2 BOUBOULINAS STREET & AKTI MIAOULI, PIRAEUS 18553 GREECE | LOAN RETENTION ACCOUNT |
| SANTON LIMITED | NATIONAL BANK OF GREECE | 2 BOUBOULINAS STREET & AKTI MIAOULI, PIRAEUS 18553 GREECE | LOAN RETENTION ACCOUNT |
| AEGEAN MANAGEMENT SERVICES M.C. | IMERYS SA | 14 RETIREMENT CRESENT, KINGSTON 5 JAMAICA | NEW OFFICE RENT GUARANTEE |
| AEGEAN PETROLEUM INTERNATIONAL INC. | AEGEAN BALTIC BANK S.A. | 91 MEGALOU ALEXANDROU STR. & 25 MARTIOU STREET, ATHENS 5124 GREECE | CONTRACT LD1736200011; REQUIRED LETTER OF GUARANTEE FOR API'S ESTABLISHMENT IN GREECE |

**Schedule C-4**

**Claims, Defenses, Cross-Claims, and Counter-Claims**
**Related to Litigation and Possible Litigation**

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | CLAIM | JURISDICTION (IF APPLICABLE) |
|---|---|---|---|---|
| AEGEAN MARINE PETROLEUM S.A. | M/V GHASHA | M/T GHASHA, ABU DHABI, 11TH & 12TH FLOORS, TAKREER TOWER, SHEIK KHALIFA ENERGY COMPLEX, SHEIK KHALIFA STREET, P.O. BOX 2977 | UNPAID INVOICES FOR MARINE FUELS - M/V GHASHA | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V KAVO PLATANOS | M/V KAVO PLATANOS, 39, AKTI MIAOULI, PIRAEUS, GREECE | UNPAID INVOICES FOR MARINE FUELS - M/V KAVO PLATANOS | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | CANPOTEX SHIPPING SERVICES LIMITED | P.O BOX 1600, SUITE 400, 111-2ND AVES, SASKATOON, SASKATCHEWAN, CANADA | AEGEAN MARINE PETROLEUM S.A. V. CANPOTEX SHIPPING SERVICES LIMITED ET AL. (RELATED TO M/V KAVO PLATANOS) | BEFORE THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, SEATTLE |
| AEGEAN MARINE PETROLEUM S.A. | PETROOON | M/V VIENNA WOOD N, 1 ALAMANAS STR., AMAROUSSIO ATTICA, GREECE | UNPAID INVOICES FOR MARINE FUELS - M/V VIENNA WOOD N | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V MARCAVIANA | M/V MARCAVIANA, HALLE K5, GASSTRASSE 4B, 22761, HAMBURG, GERMANY | UNPAID INVOICES FOR MARINE FUELS - M/V MARCAVIANA | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V ATLANTIC ORION | F/V ATLANTIC ORION, MARSHALL ISLANDS, TRUST COMPANY COMPLEX, AJELTAKE ROAD AJELTAKE ISLAND, MAJURO MH96960 | UNPAID INVOICES FOR MARINE FUELS - M/V ATLANTIC ORION | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V BANI YAS (9487249) | M/T BANI YAS, ABU DHABI, 11TH & 12TH FLOORS, TAKREER TOWER, SHEIK KHALIFA ENERGY COMPLEX, SHEIK KHALIFA STREET, P.O. BOX 2977 | UNPAID INVOICES FOR MARINE FUELS - M/V BANI YAS (9487249) | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V D+K YUSUF I. AL GHANIM | M/T D&K YUSUF I. AL - GHANIM, DUBAI (GROUND FLOOR, ENOC HOUSE, PO BOX 124317, 1, SHEIKH RASHID ROAD) AND/OR (BURJ AL-SALAM TOWER BUILDING, SHEIKH ZAYED ROAD, 8TH FLOOR, OFFICE C805, PORT DUBAI AREA, 124317, UAE – DUBAI) | UNPAID INVOICES FOR MARINE FUELS - M/V D+K YUSUF I. AL GHANIM | BEFORE THE COURT OF PIRAEUS |
| AEGEAN MARINE PETROLEUM S.A. | M/V UMESATO | M/V UMESATO, 67-8 HANAI NODA CHIBA 278-0026 | UNPAID INVOICES FOR MARINE FUELS - M/V UMESATO | BEFORE THE COURT OF PIRAEUS |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | PORT AUTHORITY OF LAS PALMAS | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | REGARDING WHETHER ABCLP OWES ACTIVITY FEES TO THE PORT AUTHORITY OF LAS | MATTER BEFORE THE TEAR CANARIAS COURT |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | CLAIM | JURISDICTION (IF APPLICABLE) |
|---|---|---|---|---|
| | | | PALMAS TASA ACTIVIDAD 2017 - 2 SEM (ACTIVITY FEE) | |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | [PORT AUTHORITY OF LAS PALMAS] | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | REGARDING WHETHER ABCLP OWES ACTIVITY FEES TO THE PORT AUTHORITY OF LAS PALMAS TASA ACTIVIDAD 2018 - 1 SEM (ACTIVITY FEE) | MATTER BEFORE THE TEAR CANARIAS COURT |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | [PORT AUTHORITY OF LAS PALMAS] | C/ TOMAS QUEVEDO RAMIREZ, LAS PALMAS DE GRAN CANARIA 35008 SPAIN | REGARDING WHETHER ABCLP OWES ACTIVITY FEES TO THE PORT AUTHORITY OF LAS PALMAS TASA ACTIVIDAD 2018 - 2 SEM (ACTIVITY FEE) | MATTER BEFORE THE TEAR CANARIAS COURT |
| AEGEAN MARINE PETROLEUM S.A. | ANTONIOS VAROUXIS | REDACTED | ANTONIOS VAROUXIS - V AMP SA.  ASSERTED CLAIM FOR COMMISSION DUE IN RESPECT OF ALLEGED SERVICES. | COUR DE CASSATION |
| AEGEAN MARINE PETROLEUM S.A. | THEODOROS MOTSENIGOS | REDACTED | CLAIM BY EX EMPLOYEE THEODOROS MOTSENIGOS AGAINST AMP FOR POST TERMINATION WAGES | ON APPEAL IN THE COURT OF PIRAEUS |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS, S.A. | JUAN ANTONION DURANTE | REDACTED | JUAN ANTONION DURANTE  V. AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS, S.A.  FOR ALLEGED WORK INJURY | SOCIAL COURT OF LAS PALMAS |
| AEGEAN OIL TERMINAL CORPORATION | UNITED ARAB BANK P.J.S.C. | UAB TOWER, BUHAIRA CORNICHE, P.O. BOX 25022, SHARJAH UAE | SWEPT $4.1 MM OF DEBT RESERVE PREPETITION; RESERVE RELATED TO FUJAIRAH SECURED LOAN | POTENTIAL CLAIM |
| AEGEAN BUNKERING SERVICES INC. | PIRAEUS BANK | CHALOS & CO, P.C. ATTN: BRITON SPARKMAN 7210 TICKNER STREET, HOUSTON, TX 70055 | AMERIKIS STREET 4, ATHENS, 105 64 GREECE | CONTRACT 30541/01012002; REQUIRED LETTER OF GUARANTEE no 19519 FOR ABS'S ESTABLISHMENT IN GREECE |
| AEGEAN BUNKERING SERVICES INC. | HELLENIC DATA PROTECTION AUTHORITY | DATA PROTECTION AUTHORITY OFFICES KIFISSIAS 1-3, 115 23 ATHENS, GREECE | CONCERNING PERSONAL DATA PROTECTION | PROCEEDING BEFORE THE HELLENIC DATA PROTECTION AUTHORITY |
| AEGEAN MARINE PETROLEUM NETWORK INC. | HELLENIC DATA PROTECTION AUTHORITY | DATA PROTECTION AUTHORITY OFFICES KIFISSIAS 1-3, 115 23 ATHENS, GREECE | CONCERNING PERSONAL DATA PROTECTION | PROCEEDING BEFORE THE HELLENIC DATA PROTECTION AUTHORITY |

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | CLAIM | JURISDICTION (IF APPLICABLE) |
|---|---|---|---|---|
| AEGEAN MARINE PETROLEUM NETWORK INC. | A. VERTOMMEN | [REDACTED] | WRONGFUL TERMINATION | ARBITRATION |
| AEGEAN MARINE PETROLEUM NETWORK INC. | EMMANOUIL CHOCHLAKIS | ATTN: FRANCIS J O'REILLY, ESQ, 1961 ROUTE 6, CARMEL, NEW YORK 10512 USA | EMMANOUIL CHOCHLAKIS AND PAVLOS PAPAGEORGIOU V. AEGEAN MARINE PETROLEUM NETWORK, INC. AND AEGEAN BUNKERING (USA) LLC (EMPLOYMENT DISPUTE) | SUPREME COURT OF NEW YORK, NEW YORK COUNTY |
| AEGEAN BUNKERING (USA) LLC | PAVLOS PAPAGEORGIOU | ATTN: FRANCIS J O'REILLY, ESQ, 1961 ROUTE 6, CARMEL, NEW YORK 10512 USA | EMMANOUIL CHOCHLAKIS AND PAVLOS PAPAGEORGIOU V. AEGEAN MARINE PETROLEUM NETWORK, INC. AND AEGEAN BUNKERING (USA) LLC (EMPLOYMENT DISPUTE) | SUPREME COURT OF NEW YORK, NEW YORK COUNTY |
| AEGEAN PETROLEUM INTERNATIONAL INC. | SECRETARY OF ENERGY - PANAMA | NATIONAL ENERGY SECRETARIAT STREET 50 AND 74, BUILDING 909, 11TH FLOOR, PANAMA, REPUBLIC OF PANAMA | PENALTY IMPOSED BY PANAMANIAN SECRETARY OF ENERGY | REPUBLIC OF PANAMA NATIONAL SECRETARY OF ENERGY |
| I.C.S. PETROLEUM LTD. | WESTERN CANADA MARINE RESPONSE CORPORATION | 206 - 3500 GILMORE WAY, BURNABY, BC V5G 0B8 CANADA | A RELEASE OF OIL FROM A VESSEL OPERATED BY ICS PETROLEUM LTD. INTO THE PUGET SOUND. | UNKNOWN |
| AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS S.A. | LA AUTORIDAD PORTUARIA DE LAS PALMAS; CAPITANIA MARITIMA DE LAS PALMAS; GOBIERNO DE CANARIAS | EDIFICIO DE LA AUTORIDAD PORTUARIA, EXPLANADA TOMÁS QUEVEDO, S/N 35008 LAS PALMAS DE GRAN CANARIA | A RELEASE OF APPROXIMATELY 4,000 LITERS OF FUEL FROM THE TERMINAL OWNED BY AEGEAN BUNKERING COMBUSTIBLES LAS PALMAS, S.A. | GOBIERNO DE CANARIAS |
| I.C.S. PETROLEUM LTD. | TRANSPORT CANADA | 300 SPARKS ST. OTTAWA, ON K1A 0N5 CANADA | A RELEASE OF OIL FROM A VESSEL OPERATED BY ICS PETROLEUM LTD. INTO THE PUGET SOUND | UNKNOWN |

## Schedule C-5

### Claims Related to Accounts Receivable and Accounts Payable

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CREDIT NOTES |
| AEGEAN MARINE PETROLEUM S.A. | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | AGREED UPON FOREIGN EXCHANGE DIFFERENCES |
| AEGEAN ACE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN BREEZE MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN GAS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER RECEIVABLES |
| AEGEAN MAISTROS MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN SHIP III MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN SHIP VIII MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN SHIP XII MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |
| AEGEAN TIFFANY MARITIME COMPANY | AEGEAN OIL S.A. | AEGEAN OIL S.A. ATTN: ANTONIS PAPADAKIS 10, AKTI KONDYLI, PIRAEUS 18545 GREECE | CHARTER OF AFFREIGHTMENT RECEIVABLES |

## Schedule C-6

### Claims Related to Tax Refunds

| DEBTOR | COUNTERPARTY | COUNTERPARTY ADDRESS | DESCRIPTION |
|---|---|---|---|
| I.C.S. PETROLEUM (MONTREAL) LTD. | REVENU QUEBEC | C.P. 25500, SUCCURSALE TERMINUS, QUEBEC QC G1A 0A9 CANADA | INCOME TAX REFUND PROVINCIAL 2017 NON-CAPITAL LOSS CARRYBACK |
| I.C.S. PETROLEUM (MONTREAL) LTD. | REVENU QUEBEC | C.P. 25500, SUCCURSALE TERMINUS, QUEBEC QC G1A 0A9 CANADA | INCOME TAX REFUND PROVINCIAL 2018 NON-CAPITAL LOSS CARRYBACK |
| I.C.S. PETROLEUM (MONTREAL) LTD. | CANADA REVENUE AGENCY | 275 POPE ROAD, SUITE 103, SUMMERSIDE PE, C1N 6A2 CANADA | INCOME TAX REFUND FEDERAL 2018 NON-CAPITAL LOSS CARRYBACK |
| AEGEAN BUNKERING (USA) LLC | CALIFORNIA DEPARTMENT OF TAX | 450 N STREET, SACRAMENTO CA 94279 USA | CA 2015 CARRYBACK NOL |
| AEGEAN BUNKERING (USA) LLC | CALIFORNIA DEPARTMENT OF TAX | 450 N STREET, SACRAMENTO CA 94279 USA | CA 2016 CARRYBACK NOL |
| I.C.S. PETROLEUM (MONTREAL) LTD. | CANADA REVENUE AGENCY | 275 POPE ROAD, SUITE 103, SUMMERSIDE PE C1N 6A2 CANADA | GOODS AND SERVICES TAX |
| I.C.S. PETROLEUM (MONTREAL) LTD. | REVENU QUEBEC | C.P. 25500, SUCCURSALE TERMINUS, QUEBEC QC G1A 0A9 CANADA | QUÉBEC SALES TAX |

**<u>Exhibit D</u>**

**Description of Restructuring Transactions**

**Summary Description of Restructuring Transactions**

The *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 382] (as may be amended, modified, supplemented, or revised in accordance with the terms thereof, the "*Plan*") makes reference to Restructuring Transactions[1] to be undertaken pursuant to and as a means of implementing the Plan.  Article IV.J. of the Plan sets forth the general nature of what these Restructuring Transactions may include and contemplates that Restructuring Transactions will be implemented to the extent "necessary or appropriate as reasonably determined by the Debtors and Mercuria."  This Article further authorizes the Debtors to undertake and implement these Restructuring Transactions as soon as practicable following the Confirmation Date and prior to the Effective Date.

The following is a general overview description of the Restructuring Transactions and this document may sometimes be referred to as the "*Restructuring Transactions Summary*"; *provided, however*, this Restructuring Transactions Summary is not intended to preclude any Restructuring Transactions that ultimately may be undertaken to effectuate the Plan.  Further, as the Debtors and Mercuria proceed with the implementation of the Plan, it is possible that additional Restructuring Transactions may be deemed necessary or appropriate, and modifications to the Restructuring Transactions detailed below may also become necessary or appropriate.

The particular Restructuring Transactions summarized herein are as follows and are intended to occur in the sequence in which they are set out in this Restructuring Transactions Summary:

**A.  Step 1 – Formation of Reorganized Aegean**

The Plan contemplates that Mercuria will acquire 100% of the Equity Interests of Reorganized Aegean in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Credit Facility Claim.  As defined in the Plan, "Reorganized Aegean" includes not only Aegean Marine Petroleum Network Inc. ("*AMPNI*"), but also

> "any successor thereto, one or more-newly-formed Entity or Entities to hold …
> the reorganized interests in Aegean's subsidiaries, in each case as reasonably
> determined by the Debtors and Mercuria, after giving effect to the Restructuring
> Transactions."

Plan, Art. I.137.  The Debtors and Mercuria contemplate that on or before the Effective Date, but subject to entry of the Confirmation Order, AMPNI will form a new direct, wholly-owned subsidiary under the laws of the Marshall Islands ("*Newco*").  The Debtors and Mercuria further contemplate that, in the manner detailed in Subparagraph D. below, on the Effective Date all of the assets of AMPNI will be assigned, transferred, conveyed, novated and sold to (and in the case of certain intercompany liabilities, assumed by) Newco, including, but not limited to, all Interests in its Debtor subsidiaries and any other rights (the "*AMPNI Property*"), save to the extent (a) otherwise provided for in any one of the other Restructuring Transactions and (b) of the

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Litigation Claims, which are to be transferred and assigned to the Litigation Trust in accordance with Section V.A. of the Plan and the Litigation Trust Agreement also being put in place on the Effective Date. All other liabilities of AMPNI shall receive such treatment as set forth in the Plan (collectively, the "*AMPNI Plan Liabilities*").

## B.    Step 2 – Transfer of Interests in Aegean Bunkering (USA) LLC to Mercuria US Asset Holdings, LLC

Aegean Bunkering (USA) LLC ("*Aegean Bunkering*") is a Debtor in these Chapter 11 Cases and a direct, wholly-owned subsidiary of AMPNI Holdings Co Limited ("*AHCL*"), which is also a Debtor in these Chapter 11 Cases. Aegean Bunkering is also the borrower under the DIP U.S. Credit Facility.

As of the Effective Date, the Debtors and Mercuria contemplate that all (a) outstanding principal, (b) accrued and unpaid interest, and (c) accrued and unpaid fees, expenses and noncontingent indemnification obligations associated with the DIP U.S. Credit Facility will be exchanged by Mercuria US Asset Holdings, LLC ("*MUSAH*"), a DIP U.S. Credit Facility Lender thereunder, for equity of Aegean Bunkering.[2] This capitalization of the DIP U.S. Credit Facility as equity in Aegean Bunkering will result in the discharge in full of the DIP U. S. Credit Facility and all Allowed DIP Credit Facility Claims held by MUSAH and form part of the consideration for the acquisition of the equity of Aegean Bunkering from AHCL. However, as the acquisition of the equity of Aegean Bunkering must be a fair market value transaction, it is agreed that MUSAH, in addition to the exchange of the discharge of the Allowed DIP Facility Claims held by MUSAH, to the extent the fair market value of the equity of Aegean Bunkering (as determined by Mercuria and the Debtors) exceeds the value of the Allowed DIP Facility Claims, any such positive difference will be paid, in Cash by MUSAH to AHCL, as a Debtor under these Chapter 11 Cases.

As is contemplated by this Restructuring Transaction, on the Effective Date and in exchange for the foregoing consideration, AHCL will sell, assign, transfer and convey all Interests it holds in Aegean Bunkering to MUSAH and Aegean Bunkering will become a direct, wholly-owned subsidiary of MUSAH.

## C.    Step 3 – Transfer of Interests in Aegean Oil Terminal Corp., Aegean Marine Petroleum LLC and Aegean (Fujairah) Bunkering S.A. to MPT Commodities Ltd.

Aegean Oil Terminal Corp. ("*AOTC*") is a Debtor in these Chapter 11 Cases and is a direct, wholly-owned subsidiary of AMPNI—also a Debtor in these Chapter 11 Cases. AOTC is also a borrower under the 2015 Fujairah Secured Term Loan with MPT Commodities Ltd. ("*MPTC*") being the current Secured Term Loan Lender thereunder. MPTC is a Mercuria affiliate and, as the

---

[2]    It is contemplated that any amounts or obligations owed to the DIP Agent under the DIP U.S. Credit Facility (whether as DIP Agent or as a DIP Lender) will be included in this treatment (having been paid by MUSAH to the DIP Agent) or otherwise settled as part of the obligations owed by Aegean Bunkering, as a Debtor under the Plan. For the avoidance of doubt, all fees, costs and expenses required to be paid under the terms of the DIP Facilities and the DIP Credit Facility Documents, including the fees of Mercuria, the DIP Agent and the DIP Lenders, and the fees and expenses of counsel for each of Mercuria, the DIP Agents and the DIP Lenders, shall be paid in Cash.

Debtors were aware, acquired the interests of the Secured Term Lenders under the 2015 Fujairah Secured Term Loan subsequent to the Petition Date. Aegean Marine Petroleum LLC ("*AMP LLC*") is a Non-Debtor Subsidiary, 49% of the equity of which is owned by Aegean Marine Petroleum S.A. ("*AMPSA*"), which is a Debtor in these Chapter 11 Cases. Aegean (Fujairah) Bunkering S.A. ("*AFB*") is a Debtor in these Chapter 11 Cases and is a direct, wholly-owned subsidiary of AMPSA.

Consistent with the manner in which the DIP U.S. Credit Facility will be addressed in relation to Aegean Bunkering (as set out above), on the Effective Date, the Debtors and Mercuria contemplate that all (a) outstanding principal, (b) accrued and unpaid interest, and (c) accrued and unpaid fees, expenses and noncontingent indemnification obligations associated with the 2015 Fujairah Secured Term Loan will be exchanged by MPTC, as the Secured Term Loan Lender thereunder, for equity of AOTC.[3] This capitalization of the 2015 Fujairah Secured Term Loan as equity in AOTC will be result in the discharge in full of the 2015 Fujairah Secured Term Loan and all Allowed Secured Term Loan Claims held by MPTC. In exchange for such discharge, all Interests held by AMPNI in AOTC, and all Interests held by AMPSA in AMP LLC and AFB, will be sold, assigned, transferred, and conveyed to MPTC. Additionally, it is agreed that MPTC, to the extent of the fair market value (if any) of the equity of AMP LLC and AFB held by AMPSA (as determined by Mercuria and the Debtors), will be paid, in Cash by MPTC to AMPSA, as a Debtor under these Chapter 11 Cases.

As is contemplated by this Restructuring Transaction, on the Effective Date, AOTC and AFB will become wholly-owned subsidiaries of MPTC, and MPTC will acquire 49% of the equity of AMP LLC.

### D.  Step 4 – Transfer of Interests in Newco to Mercuria Asset Holdings (Hong Kong) Limited

It is intended that the Restructuring Transactions set out in Subparagraphs B and C be accomplished prior to the completion of the following Restructuring Transaction and that, as the final Restructuring Transaction to be undertaken on the Effective Date, Mercuria Asset Holdings (Hong Kong) Limited ("*MAHHK*") will acquire 100% of the equity of Newco in exchange for the contribution to Newco by MAHHK of the Global Intercompany Receivables. For purposes of this Restructuring Transactions Summary:

> "*Global Intercompany Receivables*" shall mean all value owing to Mercuria Energy Trading, S.A. ("*METSA*") as a DIP Lender under the DIP Global Credit Facility and to MPTC as the Secured Term Loan Lender under the Mercuria Vessel Secured Term Loans, by each of the Debtors and Non-Debtor Subsidiaries who are borrowers thereunder, which value will include all (a) outstanding principal, (b) accrued and unpaid interest, and (c) accrued and unpaid fees, expenses and

---

[3]  It is contemplated that any amounts or obligations owed to the Secured Term Loan Agent under the 2015 Fujairah Secured Term Loan (whether as Secured Term Loan Agent or as a Secured Term Loan Lender) will be included in this treatment (having been paid by MPTC to the Secured Term Loan Agent) or otherwise settled as part of the obligations owed by AOTC, as a Debtor under the Plan.

noncontingent indemnification obligations associated with each of the DIP Global Credit Facility and the Mercuria Vessel Secured Term Loans.[4]

"*Mercuria Vessel Secured Term Loans*" shall mean, collectively, the 2018 Barge Secured Term Loan, 2008 Newbuilding Secured Term Loan, First 2006 Newbuilding Secured Term Loan, Second 2006 Newbuilding Secured Term Loan, Third 2006 Newbuilding Secured Term Loan, and 2005 Newbuilding Secured Term Loan, the interest of each Secured Term Loan Lender having been acquired by MPTC subsequent to the Petition Date.

At the inception of the Effective Date, Mercuria, through a series of internal intercompany transactions, will have moved all of the Global Intercompany Receivables to MAHHK for purposes of enabling MAHHK to undertake the completion of this particular Restructuring Transaction. On the Effective Date and subsequent to the occurrence of the Restructuring Transactions set out in Subparagraphs B. and C. above, (a) AMPNI is to transfer, assign, convey, novate and sell the AMPNI Property to Newco, (b) AMPNI shall transfer and convey the Litigation Claims held by AMPNI to the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement (including all Transferred Privileges, as defined therein) and (c) MAHHK will contribute the Global Intercompany Receivables to Newco in exchange for the acquisition of 100% of the Interests of Newco from AMPNI, the result of which is to be that all of the Allowed DIP Credit Facility Claims associated with the DIP Global Credit Facility and Allowed Secured Term Loan Claims associated with the Mercuria Vessel Secured Term Loans will be deemed satisfied; *provided, however*, all Global Intercompany Receivables, together with all other Intercompany Claims between the Debtors and the Non-Debtor Subsidiaries, will remain in place among and between all of the Reorganized Debtors and the Non-Debtor Subsidiaries. In connection with the entry of Newco, the Reorganized Debtors, and the Non-Debtor Subsidiaries into the broader Mercuria organizational structure, the Reorganized Debtors, as part of Mercuria's broader organization, will have access to adequate levels of short-term liquidity and, subsequent to emergence from these Chapter 11 Cases, access to debt facilities (including long-term debt facilities), sufficient to fund working capital to support their future operations.

AMPNI shall be dissolved as promptly as practicable following consummation of the Restructuring Transactions and, to the extent necessary, satisfaction of the AMPNI Plan Liabilities.

---

[4]    It is contemplated that any amounts or obligations owed to the DIP Agent under the DIP Global Credit Facility (whether as the DIP Agent or as a DIP Lender) or any Secured Term Loan Agents under the Mercuria Vessel Secured Term Loans (whether as a Secured Term Loan Agent or Secured Term Loan Lender) will be included in the Global Intercompany Receivable (having been paid by either one of METSA, MPTC or MAHHK, as applicable, to the DIP Agent or Secured Term Loan Agent, as applicable) or otherwise settled as part of the obligations owed by the Reorganized Debtors under the Plan. For the avoidance of doubt, all fees, costs and expenses required to be paid under the terms of the DIP Facilities and the DIP Credit Facility Documents, including the fees of Mercuria, the DIP Agent and the DIP Lenders, and the fees and expenses of counsel for each of Mercuria, the DIP Agents and the DIP Lenders, shall be paid in Cash.

**<u>Exhibit E</u>**

**Litigation Trust Agreement**

## LITIGATION TRUST AGREEMENT

This LITIGATION TRUST AGREEMENT is made this [•] day of [•], 2019 (this "Agreement"), by and among Aegean Marine Petroleum Network, Inc. ("Aegean") on behalf of itself, the other Debtors and the Non-Debtor Subsidiaries, and any successors in interest to the foregoing (collectively, [and solely in their capacities as such,] the "Aegean Parties"),[1] as settlors, and [•], as trustee of the Litigation Trust referred to herein (in such capacity, the "Litigation Trustee"),  and creates and establishes the Litigation Trust (the "Litigation Trust") referenced herein in order to facilitate the implementation of the *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 15, 2019 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof  and including the Plan Supplement, the "Plan").  Each Aegean Party and the Litigation Trustee are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, each of the Debtors filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 6, 2018 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, on [•], 2019, the Bankruptcy Court entered its order confirming the Plan (the "Confirmation Order"); and

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "Effective Date"), for (a) the creation and establishment of the Litigation Trust for the benefit of holders of Class A Litigation Trust Units and Class B Litigation Trust Units (such units, collectively, the "Litigation Trust Interests" and such holders, collectively, the "Litigation Trust Beneficiaries"), (b) the automatic transfer to the Litigation Trust of the Litigation Trust Assets, as well as the rights and powers of each Aegean Party in such Litigation Trust Assets, free and clear of all Claims and Interests, (c) the prosecution and settlement of the Litigation Claims by the Litigation Trustee and the distribution of the proceeds therefrom to the Litigation Trust Beneficiaries, in accordance with the Plan, the Confirmation Order and this Agreement and (d) the establishment of (i) a Disputed Aegean Unsecured Claims Reserve for the benefit of holders of Disputed Aegean Unsecured Claims in Class 4A (the "Disputed Class 4A Claims") and (ii) one or more reserves for the holders of any Disputed Section 510(b) Claims in Class 7 and any Disputed Aegean Interests in Class 8 (the "Disputed Class 7 and 8 Claims and Interests" and together with the Disputed Class 4A Claims, the "Disputed Claims or Interests"); and

WHEREAS, the Litigation Trust is intended to qualify as (i) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder ("Treasury Regulations"), including Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or another business, except to the

---

[1] [For the avoidance of doubt, all references to the Debtors, Non-Debtor Subsidiaries, Reorganized Debtors, and Aegean Parties shall refer to such entities, and their successors in interest, solely in their capacities as such.]

extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust and (ii) as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671-677 of the IRC; and

WHEREAS, the Litigation Trust shall not be deemed a successor in interest of the Aegean Parties for any purpose other than as specifically set forth in the Plan, the Confirmation Order or this Agreement, and upon the transfer by the Aegean Parties of the Litigation Trust Assets to the Litigation Trust, neither the Aegean Parties nor the Reorganized Debtors will have a reversionary or further interest in or with respect to the Litigation Trust Assets or the Litigation Trust; and

WHEREAS, the Litigation Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Litigation Trust as provided herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION TRUST

2.1     Establishment of the Litigation Trust and Appointment of the Litigation Trustee and the Litigation Trust Advisory Board.

(a)     The Aegean Parties and the Litigation Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a trust on behalf of the Litigation Trust Beneficiaries, which shall be known as the "Aegean Litigation Trust," on the terms set forth herein.  In connection with the exercise of the Litigation Trustee's powers hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit or as may otherwise be authorized by the Litigation Trust Advisory Board.

(b)     The Litigation Trustee is hereby appointed as trustee of the Litigation Trust effective as of the Effective Date.

(c)     In accordance with Section 7.1 of this Agreement, the initial members of the Litigation Trust Advisory Board (each such Person and any other Person appointed to be a member of the Litigation Trust Advisory Board pursuant to this Agreement, a "Member") are identified on Exhibit A hereto and were appointed jointly by the Committee and the Required Consenting Unsecured Noteholders pursuant to the Plan.  At all times a majority of the Members of the Litigation Trust Advisory Board shall be "United States persons" as such term is defined in Section 7701(a)(30) of the IRC.

2

(d)     The Litigation Trustee agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries, subject to the provisions of the Plan, the Confirmation Order and this Agreement, and shall serve at the direction of the Litigation Trust Advisory Board in accordance with the terms of this Agreement, including Section 7.2 hereof.

(e)     The Litigation Trustee and each successor trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(f)     The Litigation Trustee is, and any successor trustee serving from time to time hereunder shall be, a "United States person" as such term is defined in Section 7701(a)(30) of the IRC.

(g)     The Litigation Trustee and the Members may serve without bond.

(h)     Subject to the terms of this Agreement, any action by the Litigation Trustee and/or the Litigation Trust Advisory Board that affects the interests of more than one Litigation Trust Beneficiary shall be binding and conclusive on all Litigation Trust Beneficiaries even if such Litigation Trust Beneficiaries have different or conflicting interests.

(i)     For the avoidance of doubt, (x) none of the Litigation Trustee or any Member is or shall be deemed an officer, director, or fiduciary of any of the Reorganized Debtors or their respective subsidiaries and (y) none of the Aegean Parties or Reorganized Debtors is or shall be deemed a fiduciary or agent of the Litigation Trust, and such parties owe no duties or obligations to the Litigation Trust except as are expressly set forth in the Plan, the Confirmation Order, this Agreement or other future written agreement between such Persons and the Litigation Trust.

2.2     Transfer of the Litigation Trust Assets.

(a)     Pursuant to the Plan, as of the Effective Date, in partial satisfaction of all Allowed Class 4A Aegean Unsecured Claims, and in full satisfaction of all Allowed Section 510(b) Claims and Allowed Aegean Interests, the Aegean Parties and the Estates shall irrevocably transfer, assign and deliver, and shall be deemed to have transferred, assigned and delivered, to the Litigation Trust, without recourse, all of their respective rights, title and interest in the Litigation Trust Assets, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Litigation Trust Beneficiaries, including, without limitation, all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges or immunity (collectively, the "Transferred Privileges") in respect of the Litigation Claims that, prior to the Effective Date, belonged to the Aegean Parties or the Estates pursuant to applicable federal, state and other law, which shall vest in the Litigation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trustee and the Litigation Trust Beneficiaries, *provided* that, the Litigation Trust may not intentionally waive any Transferred Privileges in respect of records, documents, or information related to the Litigation Trust Assets without first providing to the Reorganized Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure.  The Reorganized

3

Debtors may not intentionally make disclosure in a manner that would effectuate a waiver of any Transferred Privileges in respect of records, documents, or information related to the Litigation Trust Assets without first providing to the Litigation Trustee reasonable advance written notice and an opportunity to protect the Litigation Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the Litigation Trustee, on one hand, or the Reorganized Debtors, on the other, object to an action proposed to be taken by the other with regard to records, documents or information related to the Litigation Trust Assets that are covered by the Transferred Privileges (or a disclosure that would result in a waiver), the Parties shall be permitted to raise the issue with the Bankruptcy Court on no less than seven (7) days' written notice to the other Parties or such shorter notice as approved by the Bankruptcy Court. The Party providing advance written notice of a proposed action may take such action unless the Bankruptcy Court determines that (a) such action would cause material adverse harm to the other Party, or (b) the harm to the objecting party would substantially outweigh the benefit to the Party seeking to take the proposed action. The objecting Party shall bear the burden of proof. Each of the Parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute. Notwithstanding anything to the contary contained herein, nothing in this Agreement shall operate as a waiver of any privileges held and retained by the Reorganized Debtors, including, but not limited to, the Transferred Privileges that are being transferred to the Litigation Trust hereunder. In no event shall any part of the Litigation Trust Assets revert to or be distributed to the Aegean Parties. The Litigation Trust's receipt of the Transferred Privileges shall be without waiver in recognition of the joint/successorship interest in prosecuting claims on behalf of the Aegean Parties or the Estates.

(b)    From and after the Effective Date, the Parties shall provide reasonable access to copies of the Aegean Parties' and Reorganized Debtors' records and information relating to the Litigation Trust Assets, including electronic records or documents, copies of which shall be provided by the Aegean Parties or the Reorganized Debtors, as applicable, to the Litigation Trust and its advisors, at the cost and expense of the Litigation Trust, all in compliance with applicable law. Following the Effective Date, the Parties shall use their reasonable best efforts to enter into a written agreement memorializing the common legal interest that exists among the Parties. For the avoidance of doubt, the failure of the Parties to enter into a formal written common interest agreement shall not operate to waive any common legal interests that exist among the Parties or otherwise constitute a breach of this Agreement.

(c)    At the reasonable request and upon reasonable advance written notice of the Litigation Trustee, the Aegean Parties, the Reorganized Debtors and any party under their control shall, at the cost and expense of the Litigation Trust: (i) execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed); *provided* that neither the Aegean Parties, the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; and (ii) take, or cause to be taken, such further actions necessary to evidence or effectuate the transfer of the Litigation Trust Assets to the Litigation Trust. Notwithstanding anything to the contrary herein, nothing contained in this Agreement shall restrict the Aegean Parties' or the Reorganized Debtors' ability to use any instruments, documents, books, records, and work product of the Aegean Parties or the Reorganized Debtors.

(d)    At the reasonable request and upon reasonable advance written notice of the Litigation Trustee, the Aegean Parties, the Reorganized Debtors and any party under the control of such parties shall promptly transfer or make readily available to the Litigation Trustee and its advisors all records, documents, information, and work product in respect of the Litigation Claims (including all electronic records, documents, information and work product) (the "Litigation Claims Materials") in the possession of the Debtors, the Estates, or the Reorganized Debtors; *provided* that neither the Aegean Parties, the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; *provided further*, that the Aegean Parties and Reorganized Debtors will work in good faith and take commercially reasonable steps to share information with the Litigation Trustee and its advisors in a manner that complies with applicable law.  Any such Litigation Claims Materials provided by the Aegean Parties or the Reorganized Debtors pursuant to this Agreement shall be used solely in connection with the Litigation Trustee's efforts to investigate, prosecute, compromise, settle and/or recover proceeds from the Litigation Claims and any related trial court and appellate proceedings and not for any other purpose, including without limitation for any business or competitive function.  The Reorganized Debtors shall preserve all Litigation Claims Materials until the earlier of (x) such time as the Litigation Trustee notifies the Reorganized Debtors in writing that such records are no longer required to be preserved or (y) the Termination Date (the "Preservation Termination Date").  Following the occurrence of the Preservation Termination Date, upon the Reorganized Debtor's written request (a "Document Return/Destruction Request"), the Litigation Trust, in its discretion, shall either return to the Reorganized Debtors or destroy all copies of the Litigation Claims Materials in its possession, custody, or control including copies retained by the Litigation Trustee and the Litigation Trust Professionals; *provided*, that the Litigation Trust and the Litigation Trust Professionals may retain copies of the Litigation Claims Materials (i) that are stored on their respective IT backup and disaster recovery systems until the ordinary course deletion thereof or (ii) as required by Law or the Litigation Trust's or the Litigation Trust Professionals' respective document retention policies; *provided, further*, that any Litigation Trust Professional may retain work product that may contain or reflect Litigation Claims Materials if prepared in connection with any representation of or engagement by the Litigation Trust.  Within 30 days of the Litigation Trust's receipt of a Document Return/Destruction Request, the Litigation Trustee shall certify in writing to the Aegean Parties and Reorganized Debtors that the Litigation Trust has complied with the obligations in the foregoing sentence.

(e)    The Aegean Parties, the Reorganized Debtors and any party under the control of such Parties shall take, or cause to be taken, all such further actions as the Litigation Trustee may reasonably request (including, with respect to reasonably cooperating with the Litigation Trustee for requests for telephone conferences, interviews, and appearances of current directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing the last known address of any such individual, to the extent reflected in the books and records of Aegean Parties or the Reorganized Debtors and to the extent permissible under applicable law), in each case in order to permit the Litigaiton Trustee to investigate, prosecute, protect and preserve all Litigation Claims; *provided*, that the Reorganized Debtors shall be reimbursed by the Litigation Trust for any reasonable and documented out-of-pocket expenses in connection with such cooperation.

(f)    To the extent reasonably requested by the Litigation Trustee, the Aegean Parties shall use commercially reasonable efforts to cause the professionals retained by the Aegean

Parties during the Chapter 11 Cases (the "Aegean Professionals") to, subject to any applicable professional rules of responsibility or any non-transferred privileges, use commercially reasonable efforts to cooperate with the Litigation Trustee in the investigation and prosecution of the Litigation Claims, including, without limitation, by providing access to those attorneys, accountants and other professionals with knowledge of matters relevant to the Litigation Claims. The Aegean Parties or the Aegean Professionals, as applicable, shall be reimbursed by the Litigation Trust for any reasonable and documented out-of-pocket expenses in connection with such cooperation by the Aegean Professionals.

(g)     If at any point the Litigation Trustee disputes the Reorganized Debtors' decision to withhold Litigation Claims Materials, the Litigation Trustee shall notify the Reorganized Debtors of such dispute in writing. If the parties are unable to agree, either Party shall be entitled to submit the dispute to the Bankruptcy Court on no less than seven (7) days' written notice to the other Parties, or such shorter period as approved by the Bankruptcy Court, for a determination of whether the Reorganized Debtors may withhold any such Litigation Claims Materials. Until such time as the matter is resolved by the Bankruptcy Court, the Reorganized Debtors may continue to withhold any such Litigation Claims Materials pending the outcome of such dispute.

(h)     The Aegean Parties and the Reorganized Debtors (or any successor to any Reorganized Debtor) shall be reimbursed for any reasonable and documented out-of-pocket expenses incurred in connection with providing any cooperation or assistance to the Litigation Trust in accordance with the terms of this Agreement, which reimbursement shall include the reasonable and documented out-of-pocket expenses paid to any Aegean Professionals after the Effective Date or any other advisors or professionals retained by the Aegean Parties or the Reorganized Debtors for the foregoing purposes and shall constitute, for all purposes herein, costs and expenses of the Litigation Trust. Under no circumstances shall any one or more of the Aegean Parties or Reorganized Debtors have any liability or responsibility for the payment of any such cost or expenses of the Litigation Trust Professionals.

(i)     All of the proceeds received by the Litigation Trust from the pursuit of any Litigation Claims, net of any amounts payable out of any such proceeds to any Litigation Trust Professional pursuant to a contingency fee arrangement (such amounts, "Contingency Fees") and which are payable under such agreement only upon collection of any such proceeds (such proceeds net of any Contingency Fees, the "Litigation Trust Proceeds") shall be added to the Litigation Trust Assets and held as a part thereof (and title thereto shall be vested in the Litigation Trust).

(j)     For all federal, state and local income tax purposes, all parties (including, without limitation, the Aegean Parties, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust in accordance with Section 10.1 hereof.

(k)     Such transfers pursuant to the Plan shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(l)     Notwithstanding the foregoing or anything in the Plan, for purposes of section 553 of the Bankruptcy Code, the transfer of the Litigation Claims to the Litigation Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer nor shall the transfer of the Litigation Claims to the Litigation Trust diminish, but shall fully preserve, any defenses a defendant would have if such Litigation Claims had been retained by the Aegean Parties.

2.3     <u>Funding of the Litigation Trust; Payment of Fees and Expenses</u>.

(a)     On the Effective Date, the Litigation Trust Funders shall provide a loan to the Litigation Trust in the aggregate principal amount of $15,000,000 (the "<u>Litigation Trust Loan</u>"), which shall be deposited into the Litigation Trust Account (as defined in Section 4.5(c) below). The Litigation Trust shall initially be funded with the Litigation Trust Loan, the proceeds of which shall be used to administer the Litigation Trust Assets and pay the reasonable, documented, out-of-pocket fees, expenses and costs of the Litigation Trust, including, without limitation, reasonable, documented, out-of-pocket fees and expenses incurred by advisors or professionals retained by the Litigation Trustee (collectively, the "<u>Litigation Trust Professionals</u>"). The Litigation Trust Funders shall have no further obligation to provide any funding with respect to the Litigation Trust.

(b)     For the avoidance of doubt and notwithstanding any provision herein to the contrary, the Litigation Trust Proceeds will first be applied to the repayment of the Litigation Trust Loan in full plus the $3,000,000 Litigation Trust Funding Fee for an aggregate payment to the Litigation Trust Funders in the amount of $18,000,000 (the "<u>Litigation Trust Loan Payments</u>"). For the further avoidance of doubt, amounts payable in respect of Contingency Fees shall not be applied towards the payment of the Litigation Trust Loan Payments, and the Litigation Trust may pay any Contingency Fees to the applicable Litigation Trust Professional in accordance with the terms and conditions of the applicable fee agreement between the Litigation Trust and such Litigation Trust Professional, which payment shall not be considered a breach of the previous sentence.

(c)     The Litigation Trustee may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan, the Confirmation Order and this Agreement, including in connection with retaining Litigation Trust Professionals and/or entering into agreements pursuant to Section 4.6 and Section 4.7 herein. All reasonable, documented, out-of-pocket fees, expenses, and costs of the Litigation Trust shall be paid by, and solely be the obligation of, the Litigation Trust. In accordance with and subject to Sections 2.3(a) and 2.3(b) hereof, all reasonable, documented, out-of-pocket fees, expenses and costs of the Litigation Trust, including, without limitation, all reasonable, documented, out-of-pocket fees and expenses incurred by Litigation Trust Professionals, shall be paid by the Litigation Trust from the proceeds of the Litigation Trust Loan and, after payment in full of the Litigation Trust Loan Payments, the Litigation Trust Proceeds. After payment in full of the Litigation Trust Loan Payments, the Litigation Trust Advisory Board may elect to withhold such amounts from the Litigation Trust Proceeds as the Litigation Trust Advisory Board, in its business judgement, deems necessary and proper to fund reasonable and necessary expenses (including fees of the Litigation Trust Professionals and any fees and out-of-pocket expenses of the Aegean Parties or the Reorganized Debtors that may be reimbursable under this Agreement) incurred, or reasonably projected to be

7

incurred, in connection with prosecuting or settling the Litigation Claims, monetizing the Litigation Trust Assets and distributing the Litigation Trust Proceeds; *provided*, that to the extent the Litigation Trust Proceeds are insufficient to satisfy in full all such fees and expenses, then the Litigation Trust Proceeds shall be allocated ratably among such parties entitled to reimbursement hereunder unless the Litigation Trust Advisory Board determines otherwise in the exercise of its fiduciary duties.  For the avoidance of doubt, the Litigation Trustee may pay accrued and unpaid reasonable and documented expenses of the Litigation Trust with proceeds of the Litigation Trust Loan prior to the receipt of any Litigation Trust Proceeds.

(d)     Any failure or inability of the Litigation Trust to obtain funding for the Litigation Trust will not affect the enforceability of the Litigation Trust.

(e)     The fees to be paid to the Litigation Trustee shall, subject to Sections 2.3(a) and 2.3(b), be paid by the Litigation Trust from the proceeds of the Litigation Trust Loan and, after repayment in full of the Litigation Trust Loan Payments, from the Litigation Trust Proceeds.

2.4     <u>Title to the Litigation Trust Assets</u>.  The transfer of the Litigation Trust Assets to the Litigation Trust pursuant to Section 2.2 hereof is being made for the sole benefit, and on behalf, of the Litigation Trust Beneficiaries.  Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the Aegean Parties', the Estates' and the Litigation Trust Beneficiaries' rights, title and interest in the Litigation Trust Assets and no other Person shall have any interest, legal, beneficial or otherwise, in the Litigation Trust or the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust (other than as provided in the Plan, the Confirmation Order or this Agreement).

2.5     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>.  The Litigation Trust is organized and established as a trust pursuant to which the Litigation Trustee, subject to the terms and conditions of this Agreement and subject to the approval of the Litigation Trust Advisory Board, shall implement the Plan with respect to all Aegean Parties on behalf, and for the benefit, of the Litigation Trust Beneficiaries. The Litigation Trust shall (i) serve as a mechanism for prosecuting all Litigation Claims, resolving all Disputed Claims or Interests, monetizing the Litigation Trust Assets and distributing the Litigation Trust Proceeds in a timely fashion (A) to pay the Litigation Trust Loan Payments and (B) for the benefit of the Litigation Trust Beneficiaries in accordance with the Plan, the Confirmation Order and this Agreement and (ii) liquidate and administer the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust.  The primary purpose of the Litigation Trust is to, in an expeditious and orderly manner, monetize and convert the Litigation Trust Assets to Cash and make timely distributions to Holders of Allowed Claims and Interests in accordance with the Plan with no objective to continue or engage in the conduct of, or to further, any trade or business.  The Litigation Trustee shall be obligated to make continuing reasonable efforts to timely resolve all claims related to or comprising the Litigation Claims and not unreasonably prolong the duration of the Litigation Trust.  The liquidation of the Litigation Claims may be accomplished either through the prosecution, compromise and settlement, abandonment

8

or dismissal of any or all claims or Causes of Action or otherwise, in accordance with the Plan, the Confirmation Order and this Agreement.

(b)    Relationship.  This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Litigation Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Trustee, the Litigation Trust Advisory Board (or any Member thereof) or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trustee and the Litigation Trust Advisory Board, on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal and agency relationship, and their rights shall be limited to those conferred upon them by the Plan, the Confirmation Order and this Agreement.

(c)    No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, including, for the avoidance of doubt, Article IX.F of the Plan, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Litigation Claims and objections to and resolution of Disputed Claims or Interests after the Effective Date.  No Person or Entity may rely on the absence of a specific reference in the Plan to any Litigation Claim against it as any indication that the Litigation Trustee will not pursue any and all Litigation Claims against such Person or Entity; nor may any Person or Entity rely on the absence of a specific reference in the Plan to any Disputed Claim or Interest as any indication that the Litigation Trustee will not pursue any objections thereto.  Unless any Litigation Claims against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court (including the Confirmation Order), the Litigation Trustee expressly reserves all Litigation Claims for later adjudication, resolution or settlement and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Litigation Claims upon, after or as a consequence of the Confirmation Order.

(d)    Relationship to and Incorporation of the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference.  To that end and subject to the provisions of the Plan, including, for the avoidance of doubt, Article IX.F of the Plan, the Litigation Trustee shall have full power and authority to take any action consistent with the provisions of the Plan and the Confirmation Order, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan that directly affect the interests of the Litigation Trust, and to seek any orders from the Bankruptcy Court solely in furtherance of this Agreement.  As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board, the Litigation Trust Beneficiaries, the Reorganized Debtors, and the Aegean Parties, if any provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: the Confirmation Order, this Agreement and the Plan.

9

2.6    <u>Appointment as Representative</u>.    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Trustee shall be the duly appointed representative of the Estates for certain limited purposes and, as such, to the extent provided herein, the Litigation Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution, resolution and settlement of the Litigation Claims and the Disputed Claims or Interests.  To the extent that any of the Litigation Claims or any right to prosecute, settle or dispose of a Disputed Claim or Interest cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Claims and rights shall be deemed to have been retained by the Aegean Parties and the Reorganized Debtors (other than for tax purposes) and the Litigation Trustee shall be deemed to have been designated as a representative of the Aegean Parties to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Litigation Claims on behalf of the Aegean Parties, the Reorganized Debtors, and the Estates for the benefit of the Litigation Trust Beneficiaries or settle or otherwise dispose of Disputed Claims or Interests. Notwithstanding the foregoing, all Litigation Trust Proceeds shall be distributed to the Litigation Trust Beneficiaries consistent with the provisions of the Plan, Confirmation Order, and this Agreement.  For the avoidance of doubt, any of the Litigation Claims subject to this Section 2.6 shall be treated by the Parties for U.S. federal, state and local income tax purposes as a disposition of the Litigation Claims and Disputed Claims or Interests by the Aegean Parties as described in Section 2.2 herein.

2.7    <u>Valuation of the Litigation Trust Assets</u>.    As soon as reasonably practicable following the establishment of the Litigation Trust, the Litigation Trustee, at the direction of and in consultation with the Litigation Trust Advisory Board, shall determine the value of the Litigation Trust Assets transferred to the Litigation Trust, based on the good-faith determination of the Litigation Trustee, and the Litigation Trustee shall apprise, in writing, the Litigation Trust Beneficiaries of such valuation.  The valuation shall be used consistently by all Parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) for all federal income tax purposes. In connection with the preparation of the valuation contemplated hereby and by the Plan, the Litigation Trust shall be entitled to retain such Litigation Trust Professionals as the Litigation Trust shall determine to be appropriate or necessary, and the Litigation Trustee, subject to the direction of the Litigation Trust Advisory Board, shall take such other actions in connection therewith as it determines to be appropriate or necessary.  The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Litigation Trust Professionals retained in connection therewith.

## ARTICLE III
## LITIGATION TRUST INTERESTS

3.1    <u>Litigation Trust Interests</u>.  On the date hereof, the Litigation Trust shall issue the Litigation Trust Interests to the Litigation Trust Beneficiaries in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Litigation Trust Beneficiaries shall be entitled to distributions from the Litigation Trust Proceeds in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The beneficial interests in the Litigation Trust will be represented by book entries on the books and records of the Litigation Trust.  The Litigation

10

Trust will not issue any certificate or certificates to evidence any beneficial interests in the Litigation Trust.

3.2    Interests Beneficial Only.  The ownership of the beneficial interests in the Litigation Trust shall not entitle the Litigation Trust Beneficiaries to any title in or to the Litigation Trust Assets as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

3.3    Transferability of Litigation Trust Interests.  No transfer, assignment, pledge, hypothecation or other disposition of a Litigation Trust Interest may be effected until (i) such action is unanimously approved by the Litigation Trust Advisory Board, (ii) the Litigation Trustee and the Litigation Trust Advisory Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Litigation Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Litigation Trustee and the Litigation Trust Advisory Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not require the Litigation Trust to comply with the registration and reporting requirements of the Securities Action of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Trust Indenture Act of 1939, as amended (the "TIA"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), or (y) the Litigation Trust Advisory Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Litigation Trust to become a public reporting company and/or make periodic reports under the Exchange Act in order to enable such disposition to be made.  In the event that any such disposition is allowed, the Litigation Trust Advisory Board and the Litigation Trustee may add such restrictions upon transfer and other terms to this Agreement as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

3.4    Registry of Beneficial Interests.

(a)    The Litigation Trustee shall appoint a registrar, which may be the Litigation Trustee (the "Registrar"), for the purpose of recording ownership of the Litigation Trust Interests as herein provided.  The Registrar, if other than the Litigation Trustee, shall be an institution acceptable to the Litigation Trust Advisory Board.  For its services hereunder, the Registrar, unless it is the Litigation Trustee, shall be entitled to receive reasonable compensation from the Litigation Trust as a cost of administering the Litigation Trust.

(b)    The Litigation Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Litigation Trust Advisory Board, a registry of the Litigation Trust Beneficiaries (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee and the Registrar may prescribe.

3.5    Exemption from Registration.  The Parties hereto intend that the rights of the Litigation Trust Beneficiaries arising under this Litigation Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities

or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to the issuance of the Litigation Trust Interests to the Litigation Trust Beneficiaries under the Plan. Subject to Section 3.3 hereof, the Litigation Trust Advisory Board, acting unanimously, and the Litigation Trustee may amend this Agreement in accordance with Article XII hereof to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act or the Investment Company Act. The Litigation Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Litigation Trust Advisory Board and/or the Litigation Trustee in connection with the Litigation Trust. Subject to Section 3.3 hereof, neither the Litigation Trust Advisory Board nor the Litigation Trustee shall take any action to establish or support the establishment of an active trading market with respect to the Litigation Trust Interests. Notwithstanding anything in this Agreement to the contrary (including in this Section 3.5), no amendment, modification or change to the form of the Litigation Trust or this Agreement shall be made which will have any material adverse impact on the Transferred Privileges or cause or result in any required disclosure of the Litigations Claims Materials without the prior written consent of the Parties hereto.

3.6    Effect of Death, Incapacity or Bankruptcy. The death, incapacity or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Agreement.

3.7    Change of Address. Any Litigation Trust Beneficiaries may, after the Effective Date, select an alternative distribution address by providing notice to the Litigation Trustee or, as applicable, the Registrar, identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Litigation Trustee or, as applicable, the Registrar. Absent actual receipt of such notice by the Litigation Trustee or, as applicable, the Registrar, the Litigation Trustee shall not recognize any such change of distribution address.

3.8    Absolute Owners. The Litigation Trustee may deem and treat any Litigation Trust Beneficiary reflected as the owner of a Litigation Trust Interest on the applicable Trust Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for federal and state income tax purposes and for all other purposes whatsoever.

3.9    Standing. No Litigation Trust Beneficiary shall have standing to direct the Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Litigation Trust Assets.

## ARTICLE IV
## RIGHTS, POWERS AND DUTIES OF LITIGATION TRUSTEE

4.1     Role of the Litigation Trustee.  In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Litigation Trustee shall, subject to the direction and approval of the Litigation Trust Advisory Board as provided in this Agreement, (i) receive, manage, supervise and protect the Litigation Trust Assets upon its receipt of same on behalf of and for the benefit of the Litigation Trust Beneficiaries; (ii) investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise the Litigation Claims and any objections to the Disputed Claims or Interests; (iii) prepare and file all required tax returns and pay all taxes and all other obligations of the Litigation Trust; (iv) liquidate and convert the Litigation Trust Assets to Cash and pay the Litigation Trust Loan Payments in accordance with this Agreement and the other Litigation Trust Documents and make timely distributions to the Litigation Trust Beneficiaries in accordance with Section 4.5 herein; and (v) have all such other responsibilities as may be vested in the Litigation Trustee pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment of the Disputed Aegean Unsecured Claims Reserve.  The Litigation Trustee in consultation with, and subject to the approval of, the Litigation Trust Advisory Board as provided in this Agreement, shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets, and such decisions and duties shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court.  In all circumstances, the Litigation Trustee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall use commercially reasonable efforts to prosecute, settle or otherwise resolve the Litigation Claims and to make timely distributions of any Litigation Trust Proceeds realized therefrom and to otherwise monetize the Litigation Trust Assets and not unreasonably prolong the duration of the Litigation Trust.

4.2     Fiduciary Duties.  The Litigation Trustee shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her or its responsibilities accordingly; *provided*, *however*, that the Litigation Trustee shall not owe fiduciary obligations to any defendants of or adverse parties to the Litigation Claims or the Disputed Claims or Interests in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trustee's obligations are to maximize the value of the Litigation Trust Assets, including the Litigation Claims.

4.3     Authority to Prosecute and Settle Litigation Claims and Objections to Disputed Claims or Interests.

(a)     Subject to the provisions of this Agreement, the Plan, the Confirmation Order, and direction by the Litigation Trust Advisory Board, the Litigation Trustee shall prosecute, pursue, compromise, settle, or abandon any and all Litigation Claims that have not already been resolved as of the Effective Date.  The Litigation Trustee, upon direction by the Litigation Trust Advisory Board, shall have the absolute right to pursue, not pursue, release, abandon, and/or settle

13

any and all Litigation Claims (including any counterclaims asserted against the Litigation Trust) as it determines in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision except for any damages caused by fraud, willful misconduct or gross negligence.

(b)    Subject to the provisions of this Agreement, the Plan and the Confirmation Order, the Litigation Trustee shall have sole authority to reconcile, prosecute objections, compromise, abandon or settle any and all Disputed Claims or Interests that have not already been resolved as of the Effective Date; *provided*, that for the avoidance of doubt, settlement of Disputed Claims or Interests will not require Bankruptcy Court approval.  The Litigation Trustee, upon the direction of the Litigation Trust Advisory Board, shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Disputed Claims or Interests (including any counterclaims asserted against the Litigation Trust) as it determines in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision except for any damages caused by fraud, willful misconduct or gross negligence.

(c)    To the extent that any action has been taken to prosecute or otherwise resolve any Litigation Claims prior to the Effective Date by the Aegean Parties, the Litigation Trustee shall be substituted for the Aegean Parties in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Trust: "[Name of Trustee], as Trustee for the Aegean Litigation Trust v. [Defendant]" or "Aegean Litigation Trust v. [Defendant]."  Without limiting the foregoing, the Litigation Trustee shall take any and all actions necessary or prudent to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Litigation Claim.  For purposes of exercising its powers, the Litigation Trustee shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(d)    Any determinations by the Litigation Trustee, under the direction of the Litigation Trust Advisory Board, with regard to the amount or timing of settlement or other disposition of any Litigation Claims or Disputed Claims or Interests settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Trust Beneficiaries and all other parties of interest following the entry of an order of a court of competent jurisdiction (including a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

4.4    <u>Liquidation of Litigation Trust Assets</u>.  The Litigation Trustee, upon direction by the Litigation Trust Advisory Board and in the exercise of their collective reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement, liquidate and convert to Cash the Litigation Trust Assets, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Litigation Trust.  The Litigation Trustee shall exercise reasonable business judgment and liquidate the Litigation Trust Assets to maximize net recoveries to the Litigation Trust Beneficiaries, *provided*, *however*, that the Litigation Trustee shall be entitled to take into consideration the risks, timing, and costs of

14

potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Litigation Claims or otherwise or through the sale or other disposition of the Litigation Trust Assets (in whole or in combination). Pursuant to an agreed-upon budget in accordance with Section 4.13(b) of this Agreement, if any, the Litigation Trustee may incur any reasonable and necessary expenses in connection with the liquidation of the Litigation Trust Assets and distribution of the Litigation Trust Proceeds.

    4.5    <u>Distributions</u>.

    (a)    The Litigation Trustee shall make distributions of the Litigation Trust Proceeds to the Litigation Trust Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, net of any applicable Disputed Claims Reserve and after the Litigation Trust Proceeds are received by the Litigation Trust, and only to the extent that the Litigation Trust has sufficient Litigation Trust Proceeds available to make such distributions subsequent to the payment of the Litigation Trust Loan Payments in accordance with and to the extent provided for in this Agreement and after any reserves deemed necessary or appropriate by the Litigation Trustee.

    (b)    Unless and until the Litigation Trust Loan Payments have been paid in full to the Litigation Trust Funders, no distributions from the Litigation Trust Proceeds shall be made by the Litigation Trustee on account of the Litigation Trust Interests or for the reimbursement of costs or expenses incurred by the Litigation Trust (including the costs and expenses of all the Litigation Trust Professionals and the Litigation Trustee Fees (as defined below)).  After the Litigation Trust Loan Payments have been paid in full to the Ligation Trust Funders, in the reasonable discretion of the Litigation Trustee and subject to the requirements of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and the direction of the Litigation Trust Advisory Board, the Litigation Trustee shall distribute all Cash on hand (including, but not limited to, the net income and the Litigation Trust Proceeds, if any, from any disposition of Litigation Claims, any Cash received on account of or representing Litigation Trust Proceeds, and treating as Cash for purposes of this Section 4.5 any permitted investments under Section 4.9 below) (i) to the holders of Class A Litigation Trust Units on a Pro Rata basis until such holders of Class A Litigation Trust Units shall have received Payment in Full and (ii) thereafter, to the holders of Class B Litigation Trust Units on a Pro Rata basis; <u>*provided, however*</u>, that the Litigation Trust Advisory Board may authorize the Litigation Trustee to retain Litigation Trust Proceeds to fund additional litigation with respect to the Litigation Claims in accordance with Section 2.3 of this Agreement and to satisfy other obligations of the Litigation Trust under the Plan and this Agreement.  For the avoidance of doubt, this Section 4.5(b) shall not prohibit the Litigation Trustee from using the Litigation Trust Assets to timely pay obligations and liabilities of the Litigation Trust duly incurred in accordance with this Agreement, including with respect to the payment of any taxes or other amounts owed to Governmental Units and to timely compensate Litigation Trust Professionals engaged by the Litigation Trust in accordance with this Agreement to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities, subject, in all applicable cases, to the provisions of Section 2.3.

    (c)    The Litigation Trustee shall make distributions to Litigation Trust Beneficiaries at the last-known address for each such Litigation Trust Beneficiary as indicated on

the Litigation Trust's or Registrar's records as of the applicable distribution date (which, subject to Section 3.7 hereof, for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder). Any distribution of Cash by the Litigation Trust shall be made by the Litigation Trustee via (i) a check drawn on, or (ii) wire transfer from, a bank account established in the name of the Litigation Trust on or subsequent to the Confirmation Date at a domestic bank selected by the Litigation Trustee (the "Litigation Trust Account"), the option of which shall be in the sole discretion of the Litigation Trustee. If any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Trustee or, as applicable, the Registrar, is notified in writing of the then-current address of such holder, at which time such distribution shall be made as soon as reasonably practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable distribution date. After such date, all "unclaimed property" or interests in property shall revert to the Litigation Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Agreement, and the claim of any holder to such property or interest in property shall be forever barred. Nothing contained herein shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

(d)     The Litigation Trustee shall have the authority, in consultation with the Litigation Trust Advisory Board, to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan and this Agreement. The Litigation Trustee may pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents. For the avoidance of doubt, the reasonable and documented fees of the Distribution Agents will be paid by the Litigation Trustee subsequent to the payment of the Litigation Trust Loan Payments and will not be deducted from distributions to be made under the Plan to Holders of Allowed Claims or Allowed Interests entitled to receive distributions from the Distribution Agent.

(e)     The Litigation Trustee may withhold (but not, except as set forth below, set off) from the distribution called for on account of any Allowed Claim or Allowed Interest an amount equal in value to any claim or Cause of Action of any nature (including in respect of any Litigation Claim) that an Aegean Party may hold against the Holder of such Claim or Interest. In the event that the value of an Aegean Party's claim or Cause of Action against a particular Holder of an Allowed Claim is undisputed, resolved by settlement or has been adjudicated by Final Order of any court, the Litigation Trustee may set off such undisputed, resolved or adjudicated amount against distributions that would otherwise be due to such Holder of an Allowed Claim or Allowed Interest. Neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Aegean Parties or the Litigation Trustee of any claims or Causes of Action that the Aegean Parties or the Litigation Trust may possess against any Holder of an Allowed Claim or Allowed Interest, except to the extent of any waiver, relinquishment, exculpation, release, compromise, or settlement set forth in the Plan or an order of the Bankruptcy Court (including the Confirmation Order).

(f)     The Litigation Trustee may deduct and withhold taxes from amounts otherwise distributable to any Entity any and all amounts, determined in the Litigation Trustee's

16

sole discretion, required by this Agreement, any law, regulation, rule, ruling, directive, treaty or other governmental requirement in accordance with Section 10.4 hereof.

(g)    Notwithstanding anything herein to the contrary, the Litigation Trustee shall not be required to make on account of an Allowed Claim or Allowed Interest (i) partial distributions or payments of fractions of dollars; (ii) partial distributions or payments of fractions of Litigation Trust Interests; or (iii) a distribution if the amount to be distributed is or has an economic value of less than $50. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

(h)    Any check issued by the Litigation Trust on account of an Allowed Claim or Allowed Interest shall be null and void if not negotiated within 120 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Litigation Trustee by the Holder of the relevant Allowed Claim or Allowed Interest with respect to which such check originally was issued. If any Holder of an Allowed Claim or Allowed Interest holding an un-negotiated check does not request reissuance of that check within six months after the date the check was mailed or otherwise delivered to the Holder, that Allowed Claim or Allowed Interest shall be released and the Holder thereof shall be forever barred, estopped and enjoined from asserting any claim against any of the Aegean Parties, the Reorganized Debtors (or any successor(s) to the Reorganized Debtors), the Litigation Trust, or the Litigation Trustee. In such cases, any Cash or Litigation Trust Interests held for payment on account of such Claims or Interests shall be property of the Litigation Trust, free of any Claims or Interests of such Holder with respect thereto. No later than 150 days after the issuance of such checks, the Litigation Trustee shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks. For the avoidance of doubt, such list shall not include the Holders of any checks that have not been negotiated within six months after the date the check was mailed or otherwise delivered to the Holder. Nothing contained herein shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

(i)    For the avoidance of doubt, the Litigation Trustee shall have no obligation to pay any amounts in respect of prepetition deductibles or self-insured retention amounts with respect to Claims or Causes of Action covered by the Aegean Parties' D&O Liability Insurance Policies.

(j)    Subject to Sections 4.8, 4.9 and 4.10 hereof, and the provisions of this Section 4.5, any non-Cash property of the Litigation Trust may be sold, transferred, abandoned or otherwise disposed of by the Litigation Trustee. Prior to payment of the Litigation Trust Loan Payments, any such sale or disposition must be on arms'-length terms for fair value. Notice of such sale, transfer, abandonment or disposition shall be provided to the Litigation Trust Beneficiaries pursuant to the reporting obligations provided in Section 4.13 of this Agreement. If, in the Litigation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Litigation Trustee believes, in good faith, such property has no value to the Litigation Trust, the Litigation Trustee shall have the right, subject to the approval of the Litigation Trust Advisory Board, to abandon or otherwise dispose of such property. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a Cause of Action against the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board,

any Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.5(j).

(k)     Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

4.6     <u>Retention of Counsel and Other Professionals</u>.  The Litigation Trustee, upon the prior written consent of the Litigation Trust Advisory Board, without further order of the Bankruptcy Court but subject to this Section 4.6 in all cases, may employ Litigation Trust Professionals as the Litigation Trustee deems necessary to aid it in fulfilling its obligations under this Agreement and the Plan, and on whatever reasonable and/or customary fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements, for the liquidation of the Litigation Trust Assets.  Litigation Trust Professionals engaged by the Litigation Trustee shall not be required to file applications in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred.  Unless an alternative fee arrangement has been agreed to (either by order of the Bankruptcy Court or with the consent of the Litigation Trustee following the approval of the Litigation Trust Advisory Board, as applicable), Litigation Trust Professionals retained by the Litigation Trustee shall be compensated by the Litigation Trust Loan and thereafter, in accordance with Sections 2.3 and 4.3 hereof, from the Litigation Trust Proceeds.   For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, the Committee, or any creditors shall not, subject to Article V.N of the Plan and compliance with applicable rules of professional conduct, preclude the Litigation Trust's retention of such professionals, consultants, or other persons.

4.7     <u>Agreements</u>.  Pursuant to the Plan, the Confirmation Order and the other provisions of this Agreement, the Litigation Trustee may enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order or this Agreement and perform all of the Litigation Trust's obligations thereunder.

4.8     <u>Management of Litigation Trust Assets</u>.

(a)     Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Trustee may, subject to the direction of the Litigation Trust Advisory Board, control and exercise authority over the Litigation Trust Assets, over the management and disposition thereof, and over the management and conduct of the Litigation Trust, in each case, as necessary or advisable to enable the Litigation Trustee to fulfill the intents and purposes of this Agreement.  No Person dealing with the Litigation Trust will be obligated to inquire into the authority of the Litigation Trustee in connection with the acquisition, management or disposition of the Litigation Trust Assets.

(b)     In connection with the management and use of the Litigation Trust Assets and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the Litigation Trust will have, in addition to any powers conferred upon the Litigation Trust by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of

18

the Litigation Trust, subject to any approvals or direction of the Litigation Trust Advisory Board as set forth herein, including, without limitation, the power and authority to (i) pay taxes and other obligations owed by the Litigation Trust or incurred by the Litigation Trustee; (ii) engage and compensate from the Litigation Trust Loan, and then, to the extent necessary and subject to Sections 2.3 and 4.3 hereof, from the Litigation Trust Proceeds, to the extent provided herein, the Litigation Trust Professionals to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities; (iii) object to, compromise, and settle Disputed Claims or Interests, subject to Bankruptcy Court approval, if applicable; (iv) commence and/or pursue any and all actions involving the Litigation Claims that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, or this Agreement; and (v) act and implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

4.9    Investment of Cash.  The right and power of the Litigation Trustee to invest the Litigation Trust Assets, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such Litigation Trust Assets only in Cash and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided*, *however*, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise, (b) the Litigation Trustee may retain any Litigation Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and (c) the Litigation Trustee may expend the Litigation Trust Assets (i) as reasonably necessary to meet contingent liabilities and maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with liquidating the Litigation Trust Assets), subject in all cases to Section 2.3 of this Agreement, and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Assets are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.3).

4.10    Additional Powers of the Litigation Trustee.  In addition to any and all of the powers enumerated above, and except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, the Litigation Trustee, subject to the direction and approval of the Litigation Trust Advisory Board as provided in this Agreement, shall be empowered to:

(a)    hold legal title to any and all rights in or arising from the Litigation Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Trust (including any Litigation Trust Proceeds);

(b)    perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code with respect to the Litigation Trust Assets, including the right to assert claims, defenses, offsets, and privileges, subject in all cases to Section 2.2 hereof;

(c)  protect and enforce the rights of the Litigation Trust in and to the Litigation Trust Assets by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(d)  determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Trust;

(e)  subject to Section 2.2, assert, enforce, release, or waive any privilege (including the Transferred Privileges) or defense on behalf of the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Beneficiaries, as applicable;

(f)  make all payments relating to the Litigation Trust;

(g)  expunge from the Claims Register Disputed Claims or Interests that have been paid, satisfied, superseded, or released and adjust on the Claims Register any Disputed Claims or Interests that have been amended without having to file an objection to such Disputed Claims or Interests and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, that beginning at the end of the first full calendar quarter that is at least 90 days after the Effective Date, the Litigation Trustee shall file with the Bankruptcy Court each calendar quarter a list of all Disputed Claims or Interests that have been paid, satisfied, superseded, released, or amended during such prior calendar quarter;

(h)  obtain reasonable insurance coverage with respect to the potential liabilities and obligations of the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board and the Members under this Agreement (in the form of a directors and officers policy, an errors and omissions policy, or otherwise, all at the sole cost and expense of the Litigation Trust);

(i)  (x) receive, manage, invest, supervise, protect, and liquidate the Litigation Trust Assets, withdraw and make distributions from and pay taxes and other obligations owed by the Litigation Trust from funds held by the Litigation Trustee and/or the Litigation Trust in the Litigation Trust Account and (y) withdraw and make distributions from and pay taxes and other obligations owed in respect of any Disputed Claims or Interests from the applicable Disputed Claims Reserve in accordance with the Plan, in each case as long as such actions are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and are merely incidental to its liquidation and dissolution;

(j)  prepare, or have prepared, and file, if necessary, with the appropriate Governmental Unit any and all tax returns, information returns, and other required documents with respect to the Litigation Trust (including, without limitation, U.S. federal, state, local or foreign tax or information returns required to be filed by the Litigation Trust) and the Disputed Claims Reserves and pay taxes properly payable by the Litigation Trust and the Disputed Claims Reserves, if any, and cause all taxes payable by the Litigation Trust and the Disputed Claims Reserves, if any, to be paid exclusively out of the Litigation Trust Assets or the relevant Disputed Claims Reserve, as applicable;

(k)     request any appropriate tax determination with respect to the Litigation Trust and the Disputed Claims Reserves, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(l)     make tax elections by and on behalf of the Litigation Trust and the Disputed Claims Reserves, which are deemed by the Litigation Trustee, either independently or with the advice of Litigation Trust Professionals, to be in the best interest of maximizing the liquidation value of the Litigation Trust Assets;

(m)     investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, the Litigation Claims and all Causes of Action in favor of or against the Litigation Trust ;

(n)     without expanding the scope of the definition of "Litigation Claims" in the Plan, take appropriate actions to recover transfers of any Aegean Parties' property as provided for in the Plan as may be permitted by the Bankruptcy Code or applicable state law;

(o)     execute offsets or assert counterclaims against Holders of Aegean Unsecured Claims in Class 4A, Section 510(b) Claims in Class 7, and Aegean Interests in Class 8 (except to the extent of any releases, waivers, settlements, compromises or relinquishments set forth in the Plan or the Confirmation Order) and make distributions as provided for in the Plan and this Agreement;

(p)     subject to applicable law, seek the examination of any Entity or Person, with respect to the Litigation Claims;

(q)     retain and reasonably compensate for services rendered and expenses incurred by Litigation Trust Professionals to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be appropriate in the Litigation Trustee's reasonable discretion and to prepare and file any tax returns or informational returns for the Litigation Trust as may be required;

(r)     take or refrain from taking any and all actions the Litigation Trustee reasonably deems necessary for the continuation, protection, and maximization of the Litigation Trust Assets consistent with the purposes hereof;

(s)     take all steps and execute all instruments and documents the Litigation Trustee reasonably deems necessary to effectuate the Litigation Trust;

(t)     liquidate any remaining Litigation Trust Assets, and provide for the distributions therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement;

(u)     take all actions the Litigation Trustee reasonably deems necessary to comply with the Plan, the Confirmation Order, and this Agreement (including all obligations thereunder);

(v)      in the event that the Litigation Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), take any and all necessary actions as it shall reasonably deem appropriate to have such assets treated as held by an entity classified as a partnership for federal tax purposes; and

(w)      exercise such other powers as may be vested in the Litigation Trustee pursuant to the Plan, the Confirmation Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Trustee to be reasonably necessary and proper to carry out the obligations of the Litigation Trustee in relation to the Litigation Trust.

4.11    <u>Limitations on Power and Authority of the Litigation Trustee</u>.  Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee will not have the authority to do any of the following:

(a)      take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)      take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)      possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)      prosecute any Litigation Claim that would result in a payment obligation, or any other liability, directly or indirectly, by the Reorganized Debtors, any of their subsidiaries, Mercuria, or David Gallagher;

(e)      cause or permit the Litigation Trust to engage in any trade or business;

(f)      receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business; *provided, however*, that in no event shall the Litigation Trustee receive any such investment that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(g)      receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; *provided, however*, that in no event shall the Litigation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof;

(h)      take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a liquidating trust for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(i)      take any action with respect to the Transferred Privileges in contravention of Section 2.2 of this Agreement; or

22

(j)        commence, continue, prosecute, or seek to pursue any Non-Litigation Trust Causes of Action.

4.12    Books and Records.    The Litigation Trustee shall maintain books and records relating to and income realized from the Litigation Trust Assets (including the Litigation Trust Proceeds) and the payment of, costs and expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable him/her/it to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust.  Nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.

4.13    Reports.

(a)        Financial and Status Reports.    The fiscal year of the Litigation Trust shall be the calendar year.  Within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter) and as soon as practicable upon termination of the Litigation Trust, the Litigation Trustee shall make available, upon request, to the Litigation Trust Beneficiaries appearing in the Trust Registry as of the end of such period or such date of termination, a written report including: (i) financial statements of the Litigation Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Trust which, in the judgment of the Litigation Trustee, materially affects the Litigation Trust and of which notice has not previously been given to the Litigation Trust Beneficiaries; (iii) a description of the progress of liquidating the Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries, which description shall include a written report detailing, among other things, the litigation status of the Litigation Claims transferred to the Litigation Trust, any settlements entered into by the Litigation Trust with respect to the Litigation Claims, the Litigation Trust Proceeds recovered to date, and the distributions made by the Litigation Trust to date; and (iv) any other material information relating to the Litigation Trust Assets and the administration of the Litigation Trust deemed appropriate to be disclosed by the Litigation Trustee or required to be included in the written report by the Litigation Trust Advisory Board.  In addition, the Litigation Trust shall provide unaudited financial statements to each Litigation Trust Beneficiary on a quarterly basis (which may be quarterly operating reports filed with the Bankruptcy Court).  The Litigation Trustee may post any such report on a website maintained by the Litigation Trustee or electronically file it with the Bankruptcy Court in lieu of actual notice to each Litigation Trust Beneficiary (unless otherwise required by law).

(b)        Annual Plan and Budget.    If instructed by the Litigation Trust Advisory Board, the Litigation Trustee shall prepare and submit to the Litigation Trust Advisory Board for approval an annual plan and budget in such detail as is reasonably requested.

23

# ARTICLE V
## DISPUTED CLAIMS RESERVES

5.1    Establishment of Disputed Claims Reserves.  Until such time as each Disputed Claim or Interest has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or disallowed by Final Order, the Litigation Trustee shall maintain, for the benefit of each Holder of a Disputed  Claim or Interest, the applicable Disputed Claims Reserve consisting of Cash and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata share of distributions that would have been made to the Holder of such Disputed Claim or Interest if it were an Allowed Claim or Interest in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim or Interest relating to such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court as constituting and representing the maximum amount in which such Claim or Interest may ultimately become an Allowed Claim or Allowed Interest or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim or Interest and the Litigation Trustee.

5.2    Cash and Litigation Trust Interests held in the Disputed Claims Reserves.  Cash held in the Disputed Claims Reserves (including any earnings that have accrued on such Cash, net of any expenses, including any taxes, relating thereto) shall be retained by the Litigation Trustee for the benefit of such Holders pending determination of their entitlement thereto under the terms of the Plan.  Cash shall be either (x) held by the Litigation Trustee in an interest-bearing account or (y) invested in interest-bearing obligations issued by the U.S. government and guaranteed by the U.S. government, and having (in either case) a maturity date of not more than 30 days.  All such Cash or investments shall be held by the Litigation Trustee in an account at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Litigation Trustee and bearing the name "Disputed [Aegean Unsecured Claims] [510(b) Claims] [Aegean Interests] Reserve Account" or words of similar import (the "Disputed Claims Reserve Accounts").  No payments or distributions shall be made from the Disputed Claims Reserve Accounts with respect to all or any portion of any Disputed Claim or Interest pending the entire resolution thereof.  Cash held in the Disputed Claims Reserve Accounts will (i) be held in trust, pending distribution by the Litigation Trustee, for the benefit of Holders of Disputed Claims or Interests until such time as such Claims or Interests become Allowed Claims or Interests, (ii) be accounted for separately from the funds held in the Litigation Trust Account, and (iii) not constitute property of the Litigation Trust.

5.3    Distributions After Allowance of Disputed Claims or Disputed Interests.  At such time as a Disputed Claim or Interest becomes Allowed, the Litigation Trustee shall distribute to the holder thereof the distributions, if any, to which such Holder is then entitled under the Plan (including, with respect to Cash held in the applicable Disputed Claims Reserve Account, any earnings that have accrued on the amount of Cash so retained, net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim or Allowed Interest.  Such distribution, if any, shall be made as soon as reasonably practicable after the date upon which such Disputed Claim or Interest becomes Allowed, whether by settlement, compromise or Final Order or judgment of the Bankruptcy Court, but in no event more than 90 days thereafter.  The balance of any Cash thereafter retained in a Disputed Claims Reserve Account shall be allocated to and included in future distributions to

Holders of the remaining applicable Disputed Claims or Interests on a Pro Rata basis at such time as any such Disputed Claim or Interest become an Allowed Claim or Allowed Interest.

5.4    <u>Distributions After Disallowance of Disputed Claims or Interests</u>.  If a Disputed Claim or Interest is disallowed, in whole or in part, the Litigation Trustee shall cancel the reserve Litigation Trust Interest, if applicable, and distribute the Cash held in the applicable Disputed Claims Reserve Account with respect to such Claim or Interest to the holders of the applicable series of Litigation Trust Interests in accordance with the terms of the Plan.

## ARTICLE VI
## THE LITIGATION TRUSTEE GENERALLY

6.1    <u>Independent Litigation Trustee</u>.  The Litigation Trustee, in accordance with the Plan and the Confirmation Order, shall be a professional natural person or financial institution with experience administering other litigation trusts and may not be a Member of the Litigation Trust Advisory Board.

6.2    <u>Litigation Trustee's Compensation and Reimbursement</u>.

(a)    <u>Compensation</u>.  The Litigation Trustee shall receive compensation from the Litigation Trust as provided on <u>Exhibit B</u>, hereto (the "<u>Litigation Trustee Compensation</u>").  The compensation of the Litigation Trustee may be modified from time to time by the Litigation Trust Advisory Board.  Notice of any modification of the Litigation Trustee's compensation shall be filed with the Bankruptcy Court promptly.

(b)    <u>Expenses</u>.  The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of the duties of the Litigation Trustee hereunder or under the Confirmation Order or the Plan, including but not limited to, actual, reasonable and documented fees and disbursements of the Litigation Trustee's legal counsel incurred in connection with the review, execution, and delivery of this Agreement and related documents (collectively, the "<u>Litigation Trustee Expenses</u>" and, together with the Litigation Trustee Compensation, the "<u>Litigation Trustee Fees</u>").

(c)    <u>Payment</u>.  The Litigation Trustee Fees shall be paid to the Litigation Trustee upon approval of such fees and expenses by the Litigation Trust Advisory Board without necessity for review or approval by the Bankruptcy Court or any other Person.  Payment of the Litigation Trustee Fees shall be initially payable out of the Litigation Trust Loan and, after repayment in full of the Litigation Trust Loan Payments, payable from the Litigation Trust Proceeds.  The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Litigation Trustee and the Litigation Trust Advisory Board regarding the Litigation Trustee Fees.

6.3    <u>Resignation</u>.  The Litigation Trustee may resign by giving not less than 90 days' prior written notice thereof to the Litigation Trust Advisory Board and the Litigation Trust Beneficiaries.  Such resignation shall become effective on the later to occur of: (a) the day specified in such notice, and (b) the appointment of a successor satisfying the requirements set out in Section 6.1 by a majority of the Members and the acceptance by such successor of such appointment.  If a successor Litigation Trustee is not appointed or does not accept its appointment

25

within 90 days following delivery of notice of resignation by the then current Litigation Trustee, such Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and a hearing, for the appointment of a successor Litigation Trustee satisfying the requirements set out in Section 6.1 hereof, during which time the then-serving Litigation Trustee shall be entitled to receive the Litigation Trustee Compensation provided for in Section 6.2(a) hereof. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 11.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided for in Section 11.2 herein.

      6.4    <u>Removal</u>.

      (a)    The Litigation Trustee (or any successor Litigation Trustee) may be removed by the Litigation Trust Advisory Board, for Cause (as defined in Section 7.8 herein), immediately upon notice thereof, or without Cause, upon not less than 90 days' prior written notice.

      (b)    The Bankruptcy Court, on its own initiative, may (i) for Cause, and after notice and a hearing, remove the Litigation Trustee or (ii) issue an order requiring interested parties to show cause why the Litigation Trustee should not be removed.

      (c)    To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any portion of the Litigation Trustee Fees), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when appointment of a successor Litigation Trustee will become effective in accordance with Section 6.5 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

      6.5    <u>Appointment of Successor Litigation Trustee</u>.

      (a)    In the event of the death or Disability (as defined in Section 7.8 herein) (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency or removal of the Litigation Trustee, the Litigation Trust Advisory Board shall designate a successor Litigation Trustee satisfying the requirements set forth in Section 6.1 hereof by majority vote. If the Members of the Litigation Trust Advisory Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee satisfying the requirements set forth in Section 6.1 hereof on motion of the Members. Such appointment shall specify the date on which such appointment shall be effective. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge and deliver to the Litigation Trust Advisory Board an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee hereto, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Trustee and the successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee; *provided, however*, that a predecessor Litigation Trustee shall, nevertheless, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under

26

the Litigation Trust all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption by the successor Litigation Trustee of his/her/its obligations and functions hereunder.

(b)    During any period in which there is a vacancy in the position of Litigation Trustee, the Litigation Trust Advisory Board shall appoint one of its Members to serve as interim Litigation Trustee (the "Interim Trustee").  The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder; *provided*, *however*, any such Interim Trustee shall not be entitled to receive the Litigation Trustee Compensation unless approved by the Litigation Trust Advisory Board, but shall be entitled to receive payment for the Litigation Trustee Expenses.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Trust Advisory Board merely by such Person's appointment as Interim Trustee, but shall be limited in the exercise of such rights or powers as a Litigation Trustee to the extent a majority of the Litigation Trust Advisory Board shall, to the extent applicable in this Agreement, fail to approve any such action or undertaking by the Interim Trustee.

6.6    Effect of Resignation or Removal.  The death, Disability, dissolution, bankruptcy, resignation, incompetency, incapacity or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court or reasonably requested by Litigation Trust Advisory Board or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement, (b) deliver to the Bankruptcy Court (if required), the Litigation Trust Advisory Board and/or the successor Litigation Trustee all documents, instruments, records and other writings related to the Litigation Trust as may be in the possession of such Litigation Trustee, including any Litigation Claims Materials, and shall not retain any copies of such materials, even for archival purposes, and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

6.7    Confidentiality.  The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and for a period of two (2) years following the termination of this Agreement or following such Litigation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Litigation Trustee may be employed any non-public information of or pertaining to any Person to which any of the Litigation Claims Materials or Litigation Trust Assets relates or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee (including information contained or reflected in the Litigation Trust Materials), until (a) such information is made public other than by disclosure by the Litigation Trust, the Litigation Trustee, or any Litigation Trust Professionals in violation of this Agreement; (b) the Litigation Trust is required by law to disclose such information (in which case the Litigation Trust shall provide the relevant Person reasonable advance notice and an opportunity to protect

27

his, her, or its rights); or (c) the Litigation Trust obtains a waiver of confidentiality from the applicable Person.

## ARTICLE VII
## LITIGATION TRUST ADVISORY BOARD

7.1     <u>Litigation Trust Advisory Board</u>.   On or prior to the effective date of this Agreement, a three-person Litigation Trust Advisory Board shall be appointed jointly by the Committee and the Required Consenting Unsecured Noteholders, which initial Members are identified on <u>Exhibit A</u> hereto.  No Member shall be the Litigation Trustee.

7.2     <u>Authority and Responsibilities</u>.

(a)     The Litigation Trust Advisory Board shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with the Plan, the Confirmation Order, and this Agreement and shall have the other responsibilities and powers as set forth herein.  The Litigation Trust Advisory Board shall have the authority and responsibility to oversee, review, govern, and, as specifically set forth herein, to direct the activities of the Litigation Trust and the performance of the Litigation Trustee and shall have the authority to remove the Litigation Trustee in accordance with Section 6.4 hereof; *provided, however,* that the Litigation Trust Advisory Board may not direct the Litigation Trustee to nor shall the Members act in a manner inconsistent with their respective duties and obligations under the Plan, the Confirmation Order, or this Agreement.

(b)     The Litigation Trust Advisory Board shall also (a) monitor and oversee the administration of the Litigation Trust and the Litigation Trustee's performance of his/her/its responsibilities under the Plan, the Confirmation Order, and this Agreement and (b) perform such other tasks as are set forth in the Plan, the Confirmation Order, and this Agreement.

(c)     The Litigation Trustee shall consult with and provide information to the Litigation Trust Advisory Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement sufficient in scope and detail to enable the Litigation Trust Advisory Board to meet its obligations hereunder.

(d)     Notwithstanding any provision of this Agreement to the contrary, the Litigation Trustee shall not be required to obtain the approval or follow the directions of the Litigation Trust Advisory Board to the extent that (i) the Litigation Trust Advisory Board has not authorized the Litigation Trustee to take any action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law or (ii) the Litigation Trust Advisory Board directs the Litigation Trustee to take action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is prohibited by applicable law.

7.3     <u>Fiduciary Duties</u>.  The Litigation Trust Advisory Board and its Members shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that the members of an official committee of creditors appointed pursuant to section 1102 of the

Bankruptcy Code have to the creditor constituents represented by such committee and shall exercise its responsibilities accordingly; *provided*, *however*, that the Litigation Trust Advisory Board shall not owe fiduciary obligations to any defendants of Litigation Claims in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trust Advisory Board's obligations are to maximize the value of the Litigation Trust Assets, including the Litigation Claims.  In all circumstances, the Litigation Trust Advisory Board shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

7.4    <u>Meetings of the Litigation Trust Advisory Board</u>.  Meetings of the Litigation Trust Advisory Board are to be held not less often than quarterly.  Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any Member; *provided*, *however*, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members).  Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Advisory Board.  Unless the Litigation Trust Advisory Board decides otherwise (which decision shall rest in the reasonable discretion of the Litigation Trust Advisory Board), the Litigation Trustee and the Litigation Trustee's designated Litigation Trust Professional(s) may, but are not required to, attend meetings of the Litigation Trust Advisory Board.

7.5    <u>Manner of Acting</u>.

(a)    A quorum for the transaction of business at any meeting of the Litigation Trust Advisory Board shall consist of at least two Members.  Except as set forth in Sections 3.3, 3.5, 7.5(c) and 7.9(a) herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Litigation Trust Advisory Board except as otherwise required by law or as provided for in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) maybe conducted by electronic mail or individual communications by the Litigation Trustee and each Member.

(b)    Any Member who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board (including any meeting of the Litigation Trustee and the Litigation Trust Advisory Board) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such Member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation

Trust Advisory Board before its adjournment. The right of dissent or abstention is not available to any Member of the Litigation Trust Advisory Board who votes in favor of the action taken.

(c)    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member of the Litigation Trust Advisory Board shall report to the Litigation Trust Advisory Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Litigation Trust Interests). A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (i) shall be deemed to be a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Advisory Board who are not Conflicted Members and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members of the Litigation Trust Advisory Board who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Advisory Board; *provided*, *however*, that a Member shall not be deemed to be a Conflicted Member with respect to a particular matter or issue if such Member merely has an economic interest in the outcome of such matter or issue solely as a holder of Litigation Trust Interests.

7.6    Tenure of the Members of the Litigation Trust Advisory Board.  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 11.1 hereof.  The Members will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 7.7 below, or removal pursuant to Section 7.8 below.

7.7    Resignation.  Subject to Section 7.13 hereof, a Member may resign by giving not less than 90 days' prior written notice thereof to the Litigation Trustee and the other Members. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 7.9 below.

7.8    Removal.

(a)    (x) A majority of the Litigation Trust Advisory Board may remove any Member for Cause or Disability.  Notwithstanding the foregoing, upon the occurrence of the Termination Date (as defined in Section 11.1 below), any or all of the Members shall be deemed to have resigned.

(b)    For purposes of Section 6.4 hereof and this Section 7.8:

(i)    "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Member or, to the extent applicable, the Litigation Trustee, regular attendance at meetings of the Litigation Trust Advisory Board), which is not remedied within 30

days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement during the performance of his/her/its duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; and

(ii) "<u>Disability</u>" of the Litigation Trustee or a Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Trustee or the Member, as applicable, and reasonably acceptable to the Litigation Trust Advisory Board, the Litigation Trustee or the Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

7.9    <u>Appointment of a Successor Member</u>.

(a) Subject to Section 7.13 hereof, in the event of a vacancy on the Litigation Trust Advisory Board (whether by removal, death or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously. The appointment of a successor Member will be further evidenced by the Litigation Trustee's filing with the Bankruptcy Court and posting on the Litigation Trustee's website of a notice of appointment, at the direction of the Litigation Trust Advisory Board, which notice will include the name, address, and telephone number of the successor Member.

(b) Immediately upon the appointment of any successor Member, all rights, powers, duties, authority and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

(c) Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound hereto, and thereupon the successor Member without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Member.

7.10    <u>Ex Officio Members</u>.

(a) The Reorganized Debtors shall have the right to designate up to one (1) non-voting *ex officio* member to the Litigation Trust Advisory Board (the "<u>Ex Officio Member</u>"). For the avoidance of doubt, the Ex Officio Member shall not be permitted to vote at any meeting of the Litigation Trust Advisory Board or be counted for purposes of determining whether there is a sufficient quorum for the Litigation Trust Advisory Board to conduct its business. The Reorganized Debtors may remove the Ex Officio Member at any time, with or without cause and appoint a successor Ex Officio Member following two (2) days' prior written notice to the Litigation Trust Advisory Board and the Litigation Trustee.

(b) The Ex Officio Member shall have the right to attend all meetings of the Litigation Trust Advisory Board, and the Litigation Trustee shall give the Ex Officio Member

copies of all notices, minutes, consents and other materials that it provides to the Members, it being understood that the rights of the Ex Officio Member to receive such notices or materials or to attend such meetings shall be conditional upon the Litigation Trustee, the Ex Officio Member and the Reorganized Debtors, entering into a customary confidentiality and restriction on usage agreement in form and substance reasonably satisfactory to the Litigation Trust Advisory Board and the Reorganized Debtors.  Notwithstanding the foregoing, the Litigation Trustee and the Litigation Trust Advisory Board reserve the right to withhold any information and to exclude the Ex Officio Member from any meeting of the Litigation Trust Advisory Board or portion thereof if access to such information or attendance at such meeting could adversely affect the attorney-client privilege between the Litigation Trust and any one or more of the Litigation Trust Professionals, serve to waive the work product doctrine or any other similarly protective privilege or doctrine, result in disclosure of trade secrets or a conflict of interest or otherwise not be in the best interests of the Litigation Trust, in each case upon the affirmative vote of a majority of the members of the Litigation Trust Advisory Board, acting in good faith.

7.11    <u>Compensation and Reimbursement of Expenses</u>.  Unless determined by the Litigation Trust Advisory Board, no Member shall be entitled to compensation in connection with his or her service to the Litigation Trust Advisory Board.  However, the Litigation Trust will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder (including reasonable fees, costs and expenses of legal counsel only as set forth in this Agreement).

7.12    <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law.  To the extent applicable, the foregoing provisions shall also apply to the Ex Officio Member.

7.13    <u>Class B Litigation Trust Unit Members</u>.  Within 30 days of the date that the holders of the Class A Litigation Trust Units have received Payment in Full, or anytime thereafter, a majority in interest of the holders of Class B Litigation Trust Units may, by written notice to the Litigation Trustee and the Litigation Trust Advisory Board, replace any or all of the then-sitting Members, which Members shall promptly resign, with individuals designated by a majority in interest of the holders of the Class B Litigation Trust Units.  Such initial individuals, and any successors thereto, designated to serve on the Litigation Trust Advisory Board by the majority in interest of the holders of the Class B Trust Units, shall be considered "Members" for all intents and purposes under this Agreement from and after the date such individuals agree to serve on the Litigation Trust Advisory Board as "Members".  Notwithstanding the foregoing, the holders of Class B Litigation Units shall not have the authority to dismiss or replace any then-sitting Ex Officio Member previously designated by the Debtors or, following the Effective Date, the Reorganized Debtors.

## ARTICLE VIII
### <u>Reserved</u>

## ARTICLE IX
## LIABILITY AND INDEMNIFICATION

9.1    <u>No Further Liability</u>.  Each of the Litigation Trustee, the Members and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Trust unless arising out of such Person's own fraud, willful misconduct or gross negligence.  Unless arising out of such Person's own fraud, willful misconduct or gross negligence, in performing its duties under this Agreement, the Litigation Trustee, the Members and their representatives (as applicable) shall have no liability for any action taken by such Person in accordance with the advice of the Litigation Trust Professionals retained by the Members or the Litigation Trust or who may be separately retained by any one or more of the Members.  Without limiting the generality of the foregoing, the Litigation Trustee, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon.  None of the provisions of this Agreement shall require the Litigation Trustee, the Members or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Litigation Trustee, the Members and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan or the Confirmation Order that such Person reasonably believes to be genuine and to have been properly given.  Notwithstanding the foregoing, nothing in this Section 9.1 shall relieve the Litigation Trustee, the Members or their representatives from any liability for any actions or omissions arising out of such Person's fraud, willful misconduct or gross negligence.  Any action taken or omitted to be taken in the case of the Litigation Trustee or the Litigation Trust Advisory Board with the express approval of the Bankruptcy Court and, in the case of the Litigation Trustee, with the express approval of the Litigation Trust Advisory Board will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence.  No termination of this Agreement or amendment, modification or repeal of this Section 9.1 shall adversely affect any right or protection of the Litigation Trustee, the Members of the Litigation Trust Advisory Board or their respective designees, professional agents or representatives that exists at the time of such amendment, modification or repeal.

9.2    <u>Indemnification of the Litigation Trustee and Litigation Trust Advisory Board</u>.

(a)    From and after the Effective Date, each of the Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, the Litigation Trust Professionals and each of the Litigation Trustee's and Members' representatives (each, a "<u>Litigation Trust Indemnified Party</u>," and collectively, the "<u>Litigation Trust Indemnified Parties</u>") shall be, and hereby is, indemnified by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Trust Indemnified Party's exercise of what such Litigation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Trust Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Trust Indemnified Party's

33

own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Trustee; or (iv) proceedings by or on behalf of any creditor. The Litigation Trust shall, on demand, advance or pay promptly, at the election of the Litigation Trust Indemnified Party, solely out of the Litigation Trust Assets, on behalf of each Litigation Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Litigation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; *provided, however*, that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct or gross negligence. Any indemnification claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Litigation Trust Assets, ahead of the Litigation Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Trust's expense, subject to the foregoing terms and conditions. In addition, the Litigation Trust shall purchase insurance coverage as set forth in Section 4.10(h) hereof, including fiduciary liability insurance using funds from the Litigation Trust Assets for the benefit of the Litigation Trustee and the Members. The indemnification provided under this Section 9.2 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Advisory Board, any Member or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member's and each other Litigation Trust Indemnified Party's respective heirs, successors and assigns.

(b)    The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not affect any indemnification rights or obligations set forth herein.

(c)    The Litigation Trust may, with the approval of the Litigation Trust Advisory Board, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 9.2.

(d)    Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 9.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)    The rights to indemnification under this Section 9.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 9.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. Further, the Litigation Trust hereby agrees: (i) that the Litigation Trust is the indemnitor of first resort (*i.e.*, in the event any Litigation Trust Indemnified Party has the right to receive indemnification from

34

one or more third party, the Litigation Trust's obligations to such Litigation Trust Indemnified Party are primary); (ii) that the Litigation Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such Litigation Trust Indemnified Party in connection with any proceeding as to which the Litigation Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from the Litigation Trust Proceeds; (iii) that the Litigation Trust irrevocably waives, relinquishes and releases such third parties from any and all claims by the Litigation Trust against such third parties for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no Litigation Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such Litigation Trust Indemnified Party prior to the Litigation Trust's satisfaction of its indemnification obligations hereunder.  For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article IX.

9.3    <u>Litigation Trust Liabilities</u>.  All liabilities of the Litigation Trust, including, without limitation, indemnity obligations under Section 9.2 of this Agreement, will be liabilities of the Litigation Trust as an Entity and will be paid or satisfied solely from the Litigation Trust Assets and paid on a priority basis.  No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employees, agent, affiliate or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee or their respective affiliates.  Under no circumstances shall the Ex Officio Member or any of his/her representatives (including the Entity employing such Ex Officio Member, nor any of its affiliates who are the Debtors or, following the Effective Date, the Reorganized Debtors (or any of their affiliates)), be responsible in any respect for the payment of any liability under this Article IX, it being expressly recognized that any Litigation Trust Indemnified Parties shall look solely to the Litigation Trust for the indemnity obligations set forth herein, including, but not limited to, the payment of any costs and expenses agreed by the Litigation Trustee to be reimbursable, whether by advance or otherwise, to any Litigation Trust Indemnified Party.

9.4    <u>Limitation of Liability</u>.  None of the Litigation Trust Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Trust Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order.

9.5    <u>Burden of Proof</u>.  In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE X
## TAX MATTERS

10.1    Treatment of Litigation Trust Assets Transfer. For all federal income tax purposes, all parties (including, without limitation, the Aegean Parties, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims or Interests are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets) directly to the Litigation Trust Beneficiaries and, to the extent the Litigation Trust Assets are allocable to Disputed Claims or Interests that are the responsibility of the Litigation Trust to resolve, to the applicable Disputed Claims Reserve, followed by (ii) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Litigation Trust Assets (other than the Litigation Trust Assets allocable to the Disputed Claims Reserves) in exchange for Litigation Trust Interests. Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Disputed Claims Reserves). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

10.2    Tax Treatment of Disputed Claims Reserves.

(a)    Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (A) timely elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. The Litigation Trustee and the Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(b)    With respect to any Litigation Trust Assets and any other income or gain of the Litigation Trust allocable to Disputed Claims or Interests, the Litigation Trustee shall cause the Litigation Trust to pay any taxes imposed on the Litigation Trust by any federal, state or local, or any non-U.S. Governmental Unit. The amount of such taxes paid by the Litigation Trust with respect to a Disputed Claim or Interest (i) will reduce the amount distributed with respect to such Disputed Claim or Interest to the extent it becomes an Allowed Claim and (ii) to the extent such Disputed Claim or Interest does not become an Allowed Claim or Allowed Interest, will reduce distributions ratably to all Holders in the same Class as such Disputed Claim or Interest; *provided*, *however*, that any taxes that reduce distributions pursuant to the foregoing clauses (i) and (ii) shall, for all purposes of this Agreement, be treated as amounts distributed to those Holders of Claims or Interests whose distributions are so reduced.

10.3    Tax Reporting.

(a)     The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC.  The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10.3 and Article V.M of the Plan.  The Litigation Trustee also will annually send to each Litigation Trust Beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the Litigation Trust) as relevant for U.S. federal income tax purposes and will instruct all such Litigation Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided,* that if the Litigation Trustee elects to make distributions through an intermediary (such as DTC or Unsecured Notes Indenture Trustees, it shall provide such statement to such intermediaries for them to provide  to such Litigation Trust Beneficiaries . The Litigation Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Litigation Trust that is required by any Governmental Unit.

(b)     Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries (other than taxable income allocable to the Disputed Claims Reserves) shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserves) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust.  Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purposes of this Section 10.3(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c)     The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets, including the Disputed Claims Reserves.  In the event, and to the extent, any Cash retained on account of Disputed  Claims or Interests in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims or Interests, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of such Disputed Claims or Interests, or (ii) to the extent such Disputed Claims or Interests have subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such Disputed Claims or Interests.

10.4     Withholding of Taxes.  (a) The Litigation Trustee shall deduct and withhold and pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Litigation Trust Beneficiaries.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any

governmental authority, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Agreement.

(b)    The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receive distributions under the Plan, all Litigation Trust Beneficiaries may be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including an IRS Form W-9 or, in the case of Litigation Trust Beneficiaries that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8.

(c)    The Litigation Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; _provided_, _however_, that, upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest; and, _provided_, _further_, that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Trustee for such liability.  The identification requirements in Section 10.4(b) and this Section 10.4(c) may, in certain cases, extend to holders who hold their securities in street name. If a Litigation Trust Beneficiary fails to comply with such a request for tax information within 180 days, the Litigation Trustee may file a document with the Bankruptcy Court that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with Article VII.D.5 of the Plan.

(d)    In the event that the Litigation Trustee elects to make distributions through an intermediary (such as DTC or the Unsecured Notes Indenture Trustees), the party who would be the withholding agent with respect to distributions to the Litigation Trust Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Trustee.

(e)    The Litigation Trustee (and not the Unsecured Notes Indenture Trustees) shall be responsible for responding to any inquiries from DTC regarding tax withholding or other tax information requests with respect to any distributions from the Litigation Trust.

10.5    _Valuation_.  The valuation of the Litigation Trust Assets prepared pursuant to Section 2.7 of this Agreement shall be used consistently by all parties (including, without limitation, the Litigation Trust) for all federal income tax purposes.  The Litigation Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any governmental unit.

38

10.6    Expedited Determination of Taxes.  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

10.7    Foreign Tax Matters.  The Litigation Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Litigation Trustee or the Litigation Trust under non-United States law relating to taxes.  The Litigation Trustee, or any other legal representative of the Litigation Trust, shall not distribute the Litigation Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to taxes.

**ARTICLE XI**
**TERMINATION OF LITIGATION TRUST**

11.1    Termination.  The Litigation Trust Advisory Board and the Litigation Trust shall be dissolved at such time as (i) all of the Litigation Trust Loan Payments and the Litigation Trust Assets have been distributed pursuant to the Plan and this Agreement or (ii) the Litigation Trustee determines, following the approval of the Litigation Trust Advisory Board, that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional Litigation Trust Proceeds to justify further pursuit; *provided*, *however*, that in no event shall the Litigation Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed two years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the Litigation Trust Assets.  If at any time the Litigation Trustee determines, in reliance upon the advice of the Litigation Trust Professionals (or any one or more of them), that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Funders or, if the obligation to pay the Litigation Trust Loan Payments has been satisfied in full, the Litigation Trust Beneficiaries, is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC and (D) that is unrelated to the Aegean Parties, the Litigation Trust, the Litigation Trustee, the Members, any Litigation Trust Professionals and any insider of any of the foregoing and (iii) dissolve the Litigation Trust (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Dissolution Process").  Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "Termination Date."

11.2    Continuance of Litigation Trust for Winding Up.  During the Dissolution Process, the Litigation Trustee, solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, shall continue to act as such until its duties have been fully performed.  During the Dissolution Process, the Litigation Trustee shall continue to be entitled to receive the Litigation

Trustee Fees called for by Section 6.2(a) hereof and subject to Section 2.3 hereof.  Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been delivered or created by the Litigation Trustee to the extent not otherwise required to be handled by the Litigation Trustee in accordance with Section 2.2 hereof. At the Litigation Trustee's discretion, but subject in all cases to Section 2.2 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Litigation Trustee deems appropriate (unless such records and documents are necessary to fulfill the Litigation Trustee's obligations hereunder).  Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

<h3 style="text-align:center">ARTICLE XII<br>AMENDMENT AND WAIVER</h3>

12.1    Subject to Sections 12.2 and 12.3 of this Agreement, the Litigation Trustee, with the prior approval of the Litigation Trust Advisory Board, may seek Bankruptcy Court approval of any amendment, supplement or waiver with respect to any provision of this Agreement and provision of reasonable notice to the Reorganized Debtors; *provided*, *however*, that in no event shall any Party seek approval of any amendment, supplement, or waiver that would conflict with Article IX of the Plan, the Plan's definition of "Litigation Claims", or Section 2.3(b) hereof. Technical amendments to this Agreement may be made, as necessary to clarify this Agreement or enable the Litigation Trustee to effectuate the terms of this Agreement, by the Litigation Trustee with approval by a majority of the Litigation Trust Advisory Board.

12.2    Notwithstanding Section 12.1 of this Agreement, no amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order or this Agreement, (b) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust" or (c) be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

12.3    No failure by the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

<h3 style="text-align:center">ARTICLE XIII<br>MISCELLANEOUS PROVISIONS</h3>

13.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

13.2    <u>Jurisdiction</u>.  Subject to the proviso below, the Parties agree that the Bankruptcy Court shall have  jurisdiction over the Litigation Trust and the Litigation Trustee, including,

without limitation, the administration and activities of the Litigation Trust and the Litigation Trustee to the fullest extent permitted by law; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Litigation Claims and pursue any recoveries in respect of any Litigation Claims. Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the borough of Manhattan in the state of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement). Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

13.3    Reserved.

13.4    Severability.    In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

13.5    Notices.    Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail. The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

       (i)    if to the Litigation Trustee, to:

            [_____]

       (ii)    if to any Litigation Trust Beneficiary, to the last known address of such Litigation Trust Beneficiary according to the Litigation Trustee's records;

       (iii)    if to the Aegean Parties, to:

Aegean Marine Petroleum Network, Inc.
[•]
Attn: [•]
Telephone: [•]
Email: [•]

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:
Telephone:
Email:

(iv)    if to the Reorganized Debtors:

Mercuria Energy Trading Inc.
20 East Greenway Plaza
Suite 650
Houston, TX 77046
Attn: Mark Greenberg
Email:
mgreenberg@mercuria.com

and

Mercuria Energy Trading, SA
50 Rue du Rhone
Geneva 1204 Switzerland
Attn:  François Sornay
Email:
fsornay@mercuria.com

and

Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Attn:  Abhilash M. Raval, Lauren C. Doyle, and Alex Lees
Email:
ARaval@milbank.com
LDoyle@milbank.com
ALees@milbank.com

(v)    if to a Member of the Litigation Trust Advisory Board, to the
applicable address(es) set forth on Exhibit A.

42

13.6    <u>Headings</u>.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

13.7    <u>Plan and Confirmation Order</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and, is subject to the provisions of the Plan and the Confirmation Order.  In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Agreement shall govern and control.  In the event of any direct conflict or inconsistency between any provision in this Agreement, on the one hand, and the provisions of the Confirmation Order, on the other hand, the provisions of the Confirmation Order shall govern and control.

13.8    <u>Entire Agreement</u>.  This Agreement and the exhibits attached hereto, together with the Plan, the Confirmation Order, and the [*insert other agreement(s)*], contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

13.9    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

13.10    <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

13.11    <u>Reserved</u>.

13.12    <u>Limitations</u>.  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement and notwithstanding anything in this Agreement, the Parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

13.13    <u>Further Assurances</u>. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions

as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

13.14 <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

By: _____    By: _____
Name:                                    Name:
Title:                                   Title:

## <u>EXHIBIT A</u>

**Initial Members of the Litigation Trust Advisory Board**

## **EXHIBIT B**

**Compensation of Litigation Trustee**

**<u>Exhibit F</u>**

**Litigation Trust Loan Agreement**

CREDIT AGREEMENT

dated as of [__], 2019

between

[LITIGATION TRUST]

as Borrower,

and

[Mercuria][1],
as Lender

---

[1] NTD: to be modified as needed to account for multiple lenders/agented facility.

# TABLE OF CONTENTS

Page

**SECTION 1        DEFINITIONS; INTERPRETATION.** .................................................. **4**

    1.1    Definitions.................................................................................................. 4

    1.2    Interpretation.............................................................................................. 7

**SECTION 2        TERM LOAN FACILITY.** ....................................................................... **8**

    2.1    Term Loan Commitment............................................................................ 8

    2.2    Loan Accounting........................................................................................ 8

    2.3    Non-Interest Bearing Obligations ............................................................ 8

    2.4    Maturity Date ............................................................................................ 8

    2.5    Voluntary Prepayment .............................................................................. 8

    2.6    Repayment from Litigation Trust Proceeds ............................................. 8

    2.7    Funding Fee ............................................................................................... 9

    2.8    Time and Place of Payments..................................................................... 9

**SECTION 3        CONDITIONS PRECEDENT.** ................................................................. **9**

    3.1    Term Loan.................................................................................................. 9

**SECTION 4        REPRESENTATIONS AND WARRANTIES** ....................................... **9**

    4.1    Organization.............................................................................................. 9

    4.2    Validity; Binding Nature........................................................................... 9

    4.3    Confirmation Order...............................................**Error! Bookmark not defined.**

    4.4    Authorization ............................................................................................ 9

    4.5    Default....................................................................................................... 10

**SECTION 5        AFFIRMATIVE COVENANTS** ............................................................. **10**

    5.1    Maintenance of Existence ......................................................................... 10

    5.2    Compliance with Laws; Payment of Taxes and Liabilities ..................... 10

5.3    Books and Records .................................................................................. 10

5.4    Further Assurances ................................................................................... 10

5.5    Notice of Certain Events .......................................................................... 10

5.6    Litigation Trust Assets ............................................**Error! Bookmark not defined.**

5.7    Reports ...................................................................................................... 10

**SECTION 6          NEGATIVE COVENANTS** ...................................................... **10**

6.1    Debt .......................................................................................................... 11

6.2    Liens ......................................................................................................... 11

6.3    Modification of Organizational Documents ............................................ 11

6.4    Borrower's Activities ............................................................................... 11

6.5    Mergers; Consolidations .......................................................................... 11

6.6    Subsidiaries .............................................................................................. 11

6.7    Use of Proceeds ........................................................................................ 11

6.8    Distributions ............................................................................................. 11

**SECTION 7          EVENTS OF DEFAULT; REMEDIES.** ................................... **12**

7.1    Events of Default ...................................................................................... 12

7.2    Remedies ................................................................................................... 13

**SECTION 8          MISCELLANEOUS.** ............................................................. **13**

8.1    Amendments ............................................................................................. 13

8.2    Notices ...................................................................................................... 13

8.3    Costs; Expenses ........................................................................................ 13

8.4    Indemnification ........................................................................................ 14

8.5    Payments Set Aside .................................................................................. 14

8.6    Captions .................................................................................................... 14

8.7    Nature of Remedies .................................................................................. 14

8.8     Counterparts ................................................................................................ 14

8.9     Severability .................................................................................................. 14

8.10    Entire Agreement ......................................................................................... 15

8.11    Successors; Assigns ..................................................................................... 15

8.12    Register ........................................................................................................ 15

8.13    Original Issue Discount ................................................................................ 15

8.14    Governing Law ............................................................................................ 15

8.15    Forum Selection; Consent to Jurisdiction ................................................... 15

8.16    Waiver of Jury Trial ..................................................................................... 16

8.17    Survival ........................................................................................................ 16

8.18    Termination .................................................................................................. 16

## CREDIT AGREEMENT

CREDIT AGREEMENT dated as of [__], 2019 (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement") between [Litigation Trust], a [Delaware statutory trust] ("Borrower") and [Mercuria] ("Lender").

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

## SECTION 1  DEFINITIONS; INTERPRETATION.

1.1    Definitions.  When used herein the following terms shall have the following meanings:

"Affiliate" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Agreement" has the meaning set forth in the introductory paragraph hereof.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now or hereinafter in effect, or any successor statute thereto.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Borrower" has the meaning set forth in the introductory paragraph hereof.

"Business Day" means any day other than a Saturday, Sunday or other day on which banks in New York, New York or Geneva, Switzerland are authorized or required by law to close.

"Capital Lease Obligations" of any Person means the obligations of such Person to pay rent or other amounts under any lease of (or other arrangement conveying the right to use) real or personal property, or a combination thereof, which obligations are required to be classified and accounted for as capital leases on a balance sheet of such Person under GAAP, and the amount of such obligations shall be the capitalized amount thereof determined in accordance with GAAP.

"Certificate of Trust" means the Certificate of Trust of Borrower dated [__], 2019.

"Confirmation Order" has the meaning set forth in the Plan.

"Contingency Fees" has the meaning set forth in the Litigation Trust Agreement.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "Controlling" and "Controlled" have meanings correlative thereto.

"Debt" of any Person means, without duplication, (a) all obligations of such Person for borrowed money or with respect to deposits or advances of any kind, (b) all obligations of such Person evidenced by bonds, debentures, notes or similar instruments, (c) all obligations of such Person under conditional sale agreements relating to property acquired by such Person, (d) all obligations of such Person in respect of the deferred purchase price of property or services (excluding current accounts payable incurred in the ordinary course of business), (e) all Debt of others secured by (or for which the holder of such Debt has an existing right, contingent or otherwise, to be secured by) any Lien on property owned or acquired by such Person, whether or not the Debt secured thereby has been assumed, (f) all Guarantees by such Person of Debt of others, (g) all Capital Lease Obligations of such Person, (h) all obligations, contingent or otherwise, of such Person as an account party in respect of letters of credit and letters of guaranty and (i) all obligations, contingent or otherwise, of such Person in respect of bankers' acceptances. The Debt of any Person shall include the Debt of any other entity (including any partnership in which such Person is a general partner) to the extent such Person is liable therefor as a result of such Person's ownership interest in or other relationship with such entity, except to the extent the terms of such Debt provide that such Person is not liable therefor.

"Default" means the occurrence or existence of any one or more of the events described in Section 7.1, which, if continued uncured, would with the passage of time or the giving of notice or both, constitute an Event of Default.

"Dollar" and $ mean lawful money of the United States of America.

"Effective Date" has the meaning set forth in the Plan.

"Eligible Costs and Expenses" means the reasonable and documented fees, costs and expenses of Borrower in connection with pursuing the Litigation Trust Assets, administering Borrower, managing the Litigation Trust Assets and distributing the Litigation Trust Proceeds in accordance with this Agreement and the Litigation Trust Agreement.

"Event of Default" means any of the events described in Section 7.1.

"Funding Fee" has the meaning set forth in Section 2.7.

"GAAP" shall mean generally accepted accounting principles set forth as of the relevant date in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the United States of America accounting profession), including, without limitation, any Accounting Standards Codifications, which are applicable to the circumstances as of the date of determination.

"Guarantee" of or by any Person (the "guarantor") means any obligation, contingent or otherwise, of the guarantor guaranteeing or having the economic effect of guaranteeing any Debt or other obligation of any other Person (the "primary obligor") in any manner, whether directly or indirectly, and including any obligation of the guarantor, direct or indirect, (a) to purchase or pay (or advance or supply funds for the purchase or payment of) such Debt or other obligation or to purchase (or to advance or supply funds for the purchase of) any security for the payment thereof,

(b) to purchase or lease property, securities or services for the purpose of assuring the owner of such Debt or other obligation of the payment thereof, (c) to maintain working capital, equity capital or any other financial statement condition or liquidity of the primary obligor so as to enable the primary obligor to pay such Debt or other obligation or (d) as an account party in respect of any letter of credit or letter of guaranty issued to support such Debt or other obligation; provided, that the term Guarantee shall not include endorsements for collection or deposit in the ordinary course of business.

"Lender" has the meaning set forth in the introductory paragraph hereof.

"Lien" means, with respect to any Person, any security interest granted by such Person (or any interest imposed by law) in any real or personal property, asset or other right owned or being purchased or acquired by such Person which secures payment or performance of any obligation and shall include any mortgage, lien, encumbrance, charge or other security interest of any kind, whether arising by contract, as a matter of law, by judicial process or otherwise.

"Litigation Trust Accounts" means one or more accounts in which Litigation Trust Proceeds are held and as of the Effective Date shall mean the account(s) more fully described on Exhibit A hereto or as otherwise supplemented or amended in writing to the Lender by the Borrower from time to time.

"Litigation Trust Agreement" means that certain Litigation Trust Agreement dated as of [__], 2019, among the Litigation Trustee and Aegean Marine Petroleum Network, Inc., on behalf of itself, the other Debtors and Non-Debtor Subsidiaries (as such terms are defined in the Plan).

"Litigation Trust Assets" has the meaning set forth in the Plan.

"Litigation Trust Beneficiaries" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trust Proceeds" has the meaning set forth in the Litigation Trust Agreement.

"Litigation Trustee" has the meaning set forth in the Litigation Trust Agreement.

"Material Adverse Effect" means the effect of any event, condition, circumstance or contingency that, taken alone or in conjunction with other events, conditions, circumstances or contingencies has or could reasonably be expected to have a material adverse effect on (a) the property, operations or condition (financial or otherwise) of the Borrower, (b) the ability of the Borrower to perform its obligations under this Agreement or (c) the validity or enforceability of this Agreement or the rights and remedies of the Lender thereunder.

"Maturity Date" means the earlier of the date of repayment, in full, of the Term Loan and the Funding Fee and the date of dissolution of Borrower in accordance with Section 11.1 of the Litigation Trust Agreement.

"Obligations" means all liabilities, indebtedness and obligations (monetary or otherwise) of Borrower owing to the Lender under (i) this Agreement (including, without limitation, whether for the unpaid principal amount of the Term Loan or the Funding Fee) or (ii) any other document

- 6 -

or instrument executed in connection with the Debt arising under this Agreement, in each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due.

"Permitted Liens" means the following encumbrances: (a) Liens for taxes or assessments or other governmental charges not yet due and payable or which are being contested in accordance with Section 5.2, (b) Liens on any Litigation Trust Accounts in favor of the financial institutions at which such accounts are held in respect of customary fees and expenses or otherwise arising by operation of law, (c) Liens consisting of judgment or judicial attachment liens with respect to judgments against the Litigation Trust or the Litigation Trustee (for which the Litigation Trust Assets maybe subject for satisfaction) the existence of which do not constitute an Event of Default, and (d) other involuntary Liens not otherwise permitted hereunder securing obligations in an aggregate amount not exceed $75,000.

"Person" means any natural person, corporation, partnership, trust, limited liability company, association, governmental authority or unit, or any other entity, whether acting in an individual, fiduciary or other capacity.

"Plan" means the *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 15, 2019 (as the same may be amended, supplemented or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement).

"Register" has the meaning set forth in Section 8.12.

"Related Parties" means, with respect to any specified Person, such Person's Affiliates and the directors, officers, employees, agents, trustees, Controlling Persons and advisors of such Person and of each of such Person's Affiliates.

"Term Loan" has the meaning set forth in Section 2.1.

"Term Loan Commitment" means $15,000,000.

"Trustee" means the Litigation Trustee and any successor Litigation Trustee appointed pursuant to the Plan and the Litigation Trust Agreement.

1.2    Interpretation.  In the case of this Agreement, (a) the meanings of defined terms are equally applicable to the singular and plural forms of the defined terms; (b) Annex, Exhibit, Schedule and Section references are to this Agreement unless otherwise specified; (c) the term "including" is not limiting and means "including but not limited to"; (d) in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding", and the word "through" means "to and including"; (e) unless otherwise expressly provided in this Agreement, (i) references to agreements and other contractual instruments shall be deemed to include all subsequent amendments, restatements and other modifications from time to time made thereto, but only to the extent such amendments, restatements and other modifications are not prohibited by the terms of this Agreement, and (ii) references to any statute or regulation shall be construed as

including all statutory and regulatory provisions amending, replacing, supplementing or interpreting such statute or regulation.

## SECTION 2   TERM LOAN FACILITY.

2.1    <u>Term Loan Commitment</u>.  On and subject to the terms and conditions of this Agreement, Lender agrees to make a loan to Borrower (the "<u>Term Loan</u>") on the Effective Date in an amount equal to the Term Loan Commitment.  Amounts of the Term Loan that are repaid or prepaid by Borrower, in whole or in part, may not be reborrowed.

2.2    <u>Loan Accounting</u>.  [Lender] shall record in its records the date and amount of each repayment of the Term Loan.  The aggregate unpaid principal amount so recorded shall be rebuttably presumptive evidence of the principal amount of the Term Loan owing and unpaid.  The failure to so record any such amount or any error in so recording any such amount shall not, however, limit or otherwise affect the Obligations of Borrower hereunder to repay the principal amount of the Term Loan hereunder.

2.3    <u>Non-Interest Bearing Obligations</u>.  The Obligations shall be non-interest bearing.

2.4    <u>Maturity Date</u>.  The unpaid principal amount of the Term Loan and the Funding Fee, together with other amounts (other than contingent obligations not then due and payable) owing under this Agreement (including any reimbursement of costs and expenses pursuant to <u>Section 8.3</u>) shall be repaid in full on or before the Maturity Date.

2.5    <u>Voluntary Prepayment</u>.  Borrower may from time to time, on at least one Business Day's written notice to Lender not later than 1:00 p.m. New York time on such day, prepay the Term Loan in whole or in part.  Such notice to Lender shall specify the date and amount of prepayment. Any voluntary prepayments made pursuant to this <u>Section 2.5</u> shall be applied in the manner specified in <u>Section 2.6</u>.

2.6    <u>Repayment from Litigation Trust Proceeds</u>.  Until the Obligations (other than contingent obligations not then due and payable) shall have been paid in full in cash:

(a)    all Litigation Trust Proceeds received by Borrower shall be held by Borrower in the Litigation Trust Account(s) and applied in accordance with this Section 2.6; and

(b)    on the last Business Day of each calendar quarter, all Litigation Trust Proceeds then held by Borrower shall be applied by Borrower for repayment of the Obligations in the following order of priority:

(i)    <u>*first*</u>, to the indefeasible payment in full in cash of outstanding principal of the Term Loan and any other amounts (other than contingent obligations not then due and payable) owing under this Agreement (including any reimbursement of costs and expenses pursuant to <u>Section 8.3</u>);

(ii)    <u>*second,*</u> the Funding Fee.

- 8 -

2.7     Funding Fee.  In consideration of the Term Loan made by Lender to Borrower under this Agreement, Borrower shall pay to Lender on or before the Maturity Date, a fee in the amount of $3,000,000 (the "Funding Fee").  The Funding Fee shall be fully earned upon the making of the Term Loan.

2.8     Time and Place of Payments.  The Borrower shall make the payments described in Sections 2.4, 2.5 and 2.6 by making, or causing to be made, the amount thereof available to the Lender in immediately available funds at [__].

## SECTION 3   CONDITIONS PRECEDENT.

3.1     Term Loan.  The obligation of Lender to make the Term Loan is subject to the following conditions precedent:

(a)     Effective Date of the Plan.  The Effective Date (as defined in the Plan) shall have occurred in accordance with the terms and conditions in the Plan and in accordance with the provisions of the Confirmation Order in form and substance reasonably acceptable to the Lender (excluding the funding of the Litigation Trust Account with the proceeds of the Term Loans); and

(b)     Credit Agreement.  This Agreement shall have been executed by Borrower and Lender.

(c)     Representations and Warranties.  The representations and warranties of Borrower set forth in this Agreement shall be true and correct in all material respects; and

(d)     No Event of Default.  No Event of Default shall have occurred and be continuing.

## SECTION 4   REPRESENTATIONS AND WARRANTIES.  To induce Lender to enter into this Agreement and to induce Lender to make the Term Loan, Borrower represents and warrants to Lender that:

4.1     Organization.  Borrower is a [statutory trust validly existing and in good standing under the laws of the State of Delaware].

4.2     Validity; Binding Nature.  This Agreement is the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity.

4.3     Effective Date.  The Effective Date (as defined in the Plan) has occurred in accordance with the terms and conditions in the Plan and in accordance with the provisions of the Confirmation Order in form and substance reasonably acceptable to the Lender (excluding the funding of the Litigation Trust Account with the proceeds of the Term Loans).

4.5     Authorization.  The execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of the Borrower.

4.6    Default.  No Default or Event of Default has occurred and is continuing.

**SECTION 5  AFFIRMATIVE COVENANTS**.    Until the Obligations (other than contingent obligations not then due and payable) shall have been paid in full in cash, Borrower agrees that it will:

5.1    Maintenance of Existence.  Maintain and preserve its existence and good standing as a [statutory trust in the State of Delaware].

5.2    Compliance with Laws; Payment of Taxes and Liabilities.  (a) Comply in all material respects with all applicable laws, rules, regulations, decrees, orders, judgments, licenses and permits, except to the extent that failure to comply therewith would not, in the aggregate, reasonably be expected to have a Material Adverse Effect, and (b) timely prepare and file all required tax returns and pay, prior to delinquency, all taxes and other governmental charges against it or any of its property, as well as claims of any kind which, if unpaid, could become a Lien on any of its property; provided that the foregoing shall not require Borrower to pay any such tax or charge so long as (x) it shall contest the validity thereof in good faith by appropriate proceedings and shall set aside on its books adequate reserves with respect thereto in accordance with GAAP or (y) the aggregate amount of all such unpaid taxes or charges does not exceed $25,000 and the failure to effect such payment would not reasonably be expected to have a Material Adverse Effect.

5.3    Books and Records.  Keep its books and records in accordance with sound business practices

5.4    Further Assurances.    Upon request of Lender, duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions and purposes of this Agreement.

5.5    Notice of Certain Events.    The Borrower shall furnish or cause to be furnished to the Lender:

(a)    notice, as soon as practicable and, in any event, within five calendar days after the Borrower has knowledge of the occurrence of a Default or an Event of Default; and

(b)    with reasonable promptness, such other information and data with respect to the Borrower as from time to time may be reasonably requested by the Lender.

5.6    Reports. Within 30 days after the end of each quarter of each year, Borrower shall deliver to Lender a summary of (i) the Contingency Fee arrangements in respect of Litigation Claims, (ii) amount of proceeds obtained in respect of the Litigation Claims and (iii) the amount of the Loan proceeds used in such quarter and the Eligible Costs and Expenses for which they were used.

**SECTION 6   NEGATIVE COVENANTS**.  Until the Obligations (other than contingent obligations not then due and payable) shall have been paid in full in cash, Borrower agrees that it will:

- 10 -

6.1    Debt.  Not create, incur, assume or suffer to exist any Debt, except (a) Obligations under this Agreement, (b) Debt arising from the honoring by a bank or other financial institution of a check, draft or similar instrument drawn against insufficient funds in the ordinary course of business, (c)  Debt representing any taxes to the extent such taxes are being contested in good faith in appropriate proceedings and the Borrower is in compliance with Section 5.2 with respect thereto [(d) so long as no Event of Default has occurred and is continuing, additional Debt of the Borrower in an amount not to exceed $5,000,000 solely for payment of Eligible Costs and Expenses, which Debt shall (i) not bear any interest, (ii) have a maturity date that is later than the Maturity Date and (iii) be unsecured and subject to a subordination agreement (in form and substance satisfactory to the Lender) subordinating such Debt in right of payment to the payment in full of the Obligations (other than contingent obligations not due and payable at the time of such payment)][2], and (e) Debt created, incurred or assumed, or with respect to which the Borrower otherwise becomes liable, with the prior written consent of the Lender.

6.2    Liens.  Not create or permit to exist any Lien on the Litigation Trust Assets or any of its other property or assets (whether now owned or hereafter acquired), except for Permitted Liens.

6.3    Modification of Organizational Documents.

(a)    Except to the extent expressly contemplated under the Litigation Trust Agreement, not permit the Certificate of Trust to be amended, modified or waived in a manner adverse to the Lender.

(b)    Not permit the Litigation Trust Agreement to be amended, modified or waived in a manner that is adverse to the Lender and except in accordance with the provisions of Section 12 thereof (as in effect on the date hereof).

6.4    Borrower's Activities.  Not engage in any activities other than as provided and permitted by the Litigation Trust Agreement as in effect on the date hereof.

6.5    Mergers; Consolidations.  Not be a party to any merger or consolidation.

6.6    Subsidiaries.  Not establish or acquire any Subsidiary.

6.7    Use of Proceeds. Not use the proceeds of the Loans for any purposes other than the payment of Eligible Costs and Expenses. The Lender shall not be bound to monitor or verify the application of any such proceeds or payments.

6.8    Distributions. Not make any distributions of the Litigation Trust Assets (excluding the Loan proceeds, the use of which shall be governed by Section 6.7) to the Litigation Trust Beneficiaries (which for the avoidance of doubt shall exclude distributions to the Lender on account of the Obligations pursuant to this Agreement, if applicable) or otherwise use or make any distributions of the Litigation Trust Assets except (i) payment of Contingency Fees in accordance with the Litigation Trust Agreement or (ii) in accordance with Section 2.6.

---

[2] NTD: subject to further discussion.

## SECTION 7   EVENTS OF DEFAULT; REMEDIES.

7.1     <u>Events of Default</u>.  Each of the following shall constitute an Event of Default under this Agreement:

(a)     <u>Failure to Comply with Waterfall</u>.  Failure of Borrower to hold and apply any Litigation Trust Proceeds in accordance with <u>Section 2.6</u>.

(b)     <u>Non-Compliance with Agreement</u>.  (i) Failure by Borrower to comply with or to perform any covenant set forth in <u>Sections 5.1</u> or <u>6</u> or (ii) failure by Borrower to comply with or to perform any other provision of this Agreement applicable to it (and not constituting an Event of Default under any other provision of this <u>Section 7.1</u>) and continuance of such failure described in this clause (ii) for ten (10) Business Days.

(c)     <u>Insolvency</u>.  The Borrower shall be insolvent or unable to pay any of its debts as they mature.

(d)     <u>Involuntary Bankruptcy; Appointment of Receiver, etc</u>.

(i)     If an involuntary case seeking the liquidation or reorganization of the Borrower under Chapter 7 or Chapter 11 of the Bankruptcy Code or any similar proceeding shall be commenced against the Borrower under any other applicable law and any of the following events occur: (A) the Borrower consents to the institution of the involuntary case; (B) the petition commencing the involuntary case is not timely controverted; (C) the petition commencing the involuntary case is not dismissed within sixty (60) calendar days of its filing; or (D) an order for relief shall have been issued or entered therein; or

(ii)     A decree or order of a court shall have been entered for the appointment of a receiver, liquidator, sequestrator, custodian, trustee or other officer having similar powers to take possession of all or a substantial portion of the property or to operate all or a substantial portion of the business of the Borrower.

(e)     <u>Voluntary Bankruptcy; Appointment of Receiver, etc</u>. The Borrower shall institute a voluntary case seeking liquidation or reorganization under Chapter 7 or Chapter 11 of the Bankruptcy Code; or the Borrower shall file a petition, answer or complaint or shall otherwise institute any similar proceeding under any other applicable law, or shall consent thereto; or the Borrower shall consent to the conversion of an involuntary case to a voluntary case; or the Borrower shall consent or acquiesce to the appointment of a receiver, liquidator, sequestrator, custodian, trustee or other officer with similar powers to take possession of all or a substantial portion of the property or to operate all or a substantial portion of the business of the Borrower; or the Borrower shall make a general assignment for the benefit of creditors; or the general partner of the Borrower adopts any resolution or otherwise authorizes action to approve any of the foregoing.

(f)     <u>Judgments and Attachments</u>.  The Borrower shall suffer any judgment, attachment, lien, execution or levy against the Litigation Trust Assets or any of its other property in any material amount which is not paid, discharged, released, bonded, stayed on appeal or otherwise fully satisfied within 30 days of the Borrower's actual knowledge thereof.

(g)    Dissolution.  Any order, judgment or decree shall be entered decreeing the dissolution of the Borrower, whether by voluntary or involuntary action.

(h)    Representations; Warranties.  Any representation or warranty made by Borrower herein is breached or is false in any material respect when made, and such failure shall result in an impairment of the ability of Borrower to perform its obligations hereunder.

(i)    Failure to Comply With Litigation Trust Agreement, Plan or Confirmation Order.  Failure by Borrower to comply in any material respect with the Litigation Trust Agreement, the Plan or the Confirmation Order and such failure shall continue unremedied for a period of ten (10) Business Days.

(j)    Agreement.  Borrower shall repudiate or deny in writing any portion of its liability or obligations for the Obligations.

7.2    Remedies.  If any Event of Default described in Sections 7.1(d) and (e) shall occur, the Term Loan and all other Obligations shall become immediately due and payable, all without presentment, demand, protest or notice of any kind; and, if any other Event of Default shall occur and be continuing, Lender may declare all or any part of the Term Loan and other Obligations to be due and payable, whereupon the Term Loan and other Obligations shall become immediately due and payable (in whole or in part, as applicable), all without presentment, demand, protest or notice of any kind.  Lender shall promptly advise Borrower of any such declaration, but failure to do so shall not impair the effect of such declaration.

## SECTION 8  MISCELLANEOUS.

8.1    Amendments.  No amendment, modification or waiver of, or consent with respect to, any provision of this Agreement shall in any event be effective unless the same shall be in writing and approved by Lender and Borrower.[3]

8.2    Notices.  All notices hereunder shall be in writing (including facsimile or electronic mail transmission) and shall be sent to the applicable party at its address shown on the signature pages hereto or at such other address as such party may, by written notice received by the other parties, have designated as its address for such purpose.  Notices sent by facsimile transmission or electronic mail shall be deemed to have been given when sent if sent during the regular business hours of the recipient; notices sent by mail shall be deemed to have been given three (3) Business Days after the date when sent by registered or certified mail, postage prepaid; and notices sent by hand delivery or overnight courier service shall be deemed to have been given when received.  For purposes of this Section 8.2, the term "regular business hours of the recipient" shall mean and be interpreted to be any day between the hours of 8:00 am and 5:00 pm in the jurisdiction of the recipient that is not a Saturday, Sunday or legal holiday for which the recipient is not open for regular business.

8.3    Costs; Expenses.  Borrower agrees to pay promptly following demand by Lender all reasonable and documented out-of-pocket costs and expenses of Lender (including the reasonable and documented out-of-pocket fees, charges and disbursements of counsel) in

---

[3] NTD: in the event there are multiple Lenders, to discuss concept of "Required Lenders" for voting thresholds.

connection with Lender's enforcement of its rights and remedies under this Agreement upon an Event of Default.

8.4    <u>Indemnification</u>.  The Borrower shall indemnify the Lender and each Related Party of the Lender (each such Person being called an "<u>Indemnitee</u>") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses, including the fees, charges and disbursements of (a) a single transaction and documentation counsel for any Indemnitee and (b) such other local counsel and special counsel as may be required in the reasonable judgment of the Lender, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution or delivery of any this Agreement or any other agreement or instrument contemplated hereby, the performance by the parties to this Agreement of their respective obligations thereunder or the consummation of the transactions contemplated hereby, (ii) any Term Loan or the use of the proceeds therefrom or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto; <u>provided</u> that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee.

8.5    <u>Payments Set Aside</u>.  To the extent that Borrower makes a payment or payments to Lender and such payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Lender in its discretion) to be repaid to a trustee, receiver or any other party in connection with any bankruptcy, insolvency or similar proceeding, or otherwise, then to the extent of such recovery, the obligation hereunder or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made.

8.6    <u>Captions</u>.  Captions used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

8.7    <u>Nature of Remedies</u>.  All Obligations of Borrower and rights of Lender expressed herein shall be in addition to and not in limitation of those provided by applicable law.  No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

8.8    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement.  Receipt by telecopy or electronic transmission of any executed signature page to this Agreement shall constitute effective delivery of such signature page.

8.9    <u>Severability</u>.  The illegality or unenforceability of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality

or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

8.10    Entire Agreement.    This Agreement embodies the entire agreement and understanding among the parties hereto and supersedes all prior or contemporaneous agreements and understandings of such Persons, verbal or written, relating to the subject matter hereof and thereof.

8.11    Successors; Assigns.    This Agreement shall be binding upon Borrower and Lender and their respective successors and assigns, and shall inure to the benefit of Borrower and Lender and the successors and assigns of Borrower and Lender.  No other Person shall be a direct or indirect legal beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement.  No party hereto may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the other party hereto, except that the Lender without the prior written consent of Borrower or any other party (i) may assign all or any portion of its Term Loan to an Affiliate of the Lender (including, but not limited to, any fund or account advised by the same manager or investment advisor); provided, that, in the case of such an assignment, Lender shall provide Borrower with written notice of such assignment, and (ii) pledge or grant a security interest in its rights under this Agreement to secure the obligations of Lender.

8.12    Register.  The Borrower shall maintain, at its principal place of business, a register to reflect ownership and amounts due and owing under this Agreement (the "Register").  The Register shall initially reflect [·] and the initial principal amount of this Term Loan.  The Borrower shall update the Register to reflect any assignments or transfers subsequent to the date hereof, and any prepayments of the principal amount of this Term Loan, in each case as appropriate from time to time and, in the absence of manifest error, any such recordation shall constitute prima facie evidence of the accuracy of the information so recorded.  The Borrower shall make payments of principal as specified hereunder to the current Lender or Lenders named as such in the Register.

8.13    Original Issue Discount.  THE TERM LOANS ARE ISSUED WITH ORIGINAL ISSUE DISCOUNT FOR PURPOSES OF SECTION 1271 ET SEQ. OF THE INTERNAL REVENUE CODE. THE ISSUE PRICE, AMOUNT OF ORIGINAL ISSUE DISCOUNT, ISSUE DATE, AND YIELD TO MATURITY FOR SUCH TERM LOANS MAY BE OBTAINED BY SUBMITTING A WRITTEN REQUEST FOR SUCH INFORMATION TO BORROWER AT [ADDRESS OF BORROWER]

8.14    Governing Law.    THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION.

8.15    Forum Selection; Consent to Jurisdiction.  ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT, SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.  BORROWER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR

WITHOUT THE STATE OF NEW YORK. BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

8.16    Waiver of Jury Trial. EACH OF BORROWER AND LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT, AND ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY LENDING RELATIONSHIP EXISTING IN CONNECTION WITH ANY OF THE FOREGOING, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

8.17    Survival. All covenants, agreements, representations and warranties made by Borrower in this Agreement and in the certificates or other instruments delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by Lender and shall survive the execution and delivery of this Agreement and the making of the Term Loan, regardless of any investigation made by Lender or on its behalf and notwithstanding that Lender may have had notice or knowledge of any Default or Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of the Term Loan or other amount payable under this Agreement is outstanding and unpaid. The provisions of Section 8.4 shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Term Loan, the expiration or termination of the Term Loan Commitment or the termination of this Agreement or any provision hereof solely to the extent of any actions commenced prior to or pending at the time of such repayment, expiration or termination, as applicable, for which Section 8.4 applies.

8.18    Termination. When all of the Obligations (including the Funding Fee) shall have been paid in full in cash (other than contingent indemnification obligations for which no claim has been made), this Agreement and all obligations (other than those expressly stated to survive the termination of this Agreement) of the Lender and the Borrower hereunder shall automatically terminate.

The parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of the date first set forth above.

[LITIGATION TRUST], as Borrower


By: _____
Name:
Title:


Address for Notices:




[___], as Lender


By: _____
Name:
Title:

Address for Notices:

Exhibit A

**<u>Exhibit G</u>**

**Litigation Trust Backstop Commitment Agreement**

BACKSTOP COMMITMENT AGREEMENT

This BACKSTOP COMMITMENT AGREEMENT (as amended, modified, or supplemented from time to time, this "Agreement"), dated as of [_], 2019 is entered into by and between Aegean Marine Petroleum Network Inc. (the "Company") and [Mercuria] (the "Commitment Party"). All capitalized undefined terms used in this Agreement shall have the meanings assigned thereto in the Plan (referred to below).

## RECITALS

**WHEREAS**, reference is made to the the Debtors' *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 15, 2019 (as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "Plan");

**WHEREAS**, the Plan provides, among other things, as of the Effective Date, (i) for the creation and establishment of the Litigation Trust for purposes of prosecuting and settling the Litigation Claims and (ii) the initial funding of the Litigation Trust via the Litigation Trust Loan to facilitate the administration of the Litigation Trust Assets and payment of fees, expenses, and costs of the Litigation Trust in prosecuting and settling the Litigation Claims; and

**WHEREAS,** the Commitment Party has agreed, in the absence of participation by the Non-Backstop Commitment Parties (as defined herein), to provide the full amount of the Litigation Trust Loan to the Litigation Trust, on the terms and subject to the conditions set forth in this Agreement, the Loan Agreement, the Plan, and the Confirmation Order, each as applicable.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the premises, the mutual agreements of the parties contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Commitment Party hereby agree as follows:

Section 1.    Defined Terms.

(a) "Alternative Transaction" means any transaction with respect to a reorganization, restructuring, merger, consolidation, share exchange, rights offering, equity investment, business combination, recapitalization, or similar transaction involving the Litigation Trust, the Company, or any other Debtors that is inconsistent with this Agreement, the Restructuring Support Agreement, the Plan, or the Confirmation Order.

(b) "Closing Date" means the date of entry into definitive documentation with respect to the Litigation Trust Loan and funding of such loans thereunder.

(c) "Confirmation Order" means the Order issued by the Bankruptcy Court confirming the Plan.

(d)    "<u>Governmental Entity</u>" means any U.S. or non-U.S. international, regional, federal, state, municipal or local governmental, judicial, administrative, legislative or regulatory authority, entity, instrumentality, agency, department, commission, court or tribunal of competent jurisdiction (including any branch, department or official thereof).

(e)    "<u>Law</u>" means any law (statutory or common), statute, regulation, rule, code or ordinance enacted, adopted, issued or promulgated by any Governmental Entity and any amendments, modifications, or changes to, official interpretations of or official guidance as to any such law, statute, regulation, rule, code or ordinance.

(f)    "<u>Loan Agreement</u>" means that certain credit agreement, dated as of the date hereof, between the Litigation Trust, as Borrower, and [Mercuria], as Lender.

(g)    "<u>Order</u>" means any judgment, order, award, injunction, writ, permit, license, or decree of any Governmental Entity or arbitrator of applicable jurisdiction.

Section 2.    <u>Commitments</u>.  Subject to the terms and conditions of this Agreement and the Loan Agreement, the Commitment Party agrees to provide the Litigation Trust Loan to the Litigation Trust in an aggregate amount equal to (a) US$15,000,000 (the "<u>Maximum Backstop Commitment</u>") minus (b) the amount of commitments (the "<u>Non-Backstop Commitments</u>") received [and funded on or prior to the Closing Date][1] by the Company from those Holders of Allowed Aegean Unsecured Claims who are parties to, or become party to the Restructuring Support Agreement, prior to the Effective Date and elect to participate in the Litigation Trust Loan (collectively, whether one or more, the "<u>Non-Backstop Commitment Parties</u>"); <u>provided</u>, <u>however</u>, to the extent the aggregate amount of the Non-Backstop Commitments equal or exceed the amount of the Maximum Backstop Commitment and such Non-Backstop Commitments are funded on or prior to the Closing Date, the Commitment Party shall have no obligation to fund all or any portion of the Maximum Backstop Commitment or the Litigation Trust Loan and this Agreement shall automatically terminate in all respects upon the Closing Date.

Section 3.    <u>Funding Fee</u>.  As consideration for the funding of the Litigation Trust Loan, the Loan Agreement, the Litigation Trust Agreement and all other definitive documentation governing the Litigation Trust shall include the payment, prior to the distribution of proceeds of the Litigation Trust Assets to any Litigation Trust Beneficiaries, of a nonrefunadable aggregate fee in an amount equal to the Litigation Trust Funding Fee, which will be allocated pro-rata among the Commitment Party (to the extent participating in the Litigation Trust Loan) and the Non-Backstop Commitment Parties based upon their respective contributions to the Maximum Backstop Commitment in respect of the Litigation Trust Loan.

Section 4.    <u>Representations and Warranties of the Company</u>.  The Company represents and warrants to the Commitment Party as follows:

(a)    <u>Organization</u>.  The Company is duly incorporated, validly existing, and in good standing under the laws of the jurisdiction of its incorporation, and (subject to Bankruptcy Court approval of the Company's entry into and performance under this

---

[1] [NTD: will need to be tied to Closing Date because no loans will be funded prior to such date (the Effective Date is one of multiple CPs to the Closing Date).]

2

Agreement) has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement.

(b) <u>Authorization</u>. The Company's execution and delivery of this Agreement and the performance by the Company of its obligations under this Agreement have been authorized by all necessary corporate action on the part of the Company.

(c) <u>No Conflicts</u>. The execution, delivery, and performance of this Agreement by the Company (subject to Bankruptcy Court approval of the Company's entry into and performance under this Agreement) does not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or the organizational documents of the Company or any of its subsidiaries.

(d) <u>Binding Effect</u>. This Agreement has been duly authorized, executed, and delivered by the Company and, assuming the due authorization, execution, and delivery by the Commitment Party, (subject to Bankruptcy Court approval of the Company's entry into and performance under this Agreement) constitutes the legal, valid, and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity relating to enforceability.

Section 5.    <u>Representations and Warranties of the Commitment Party</u>. The Commitment Party represents and warrants to the Company as follows:

(a) <u>Organization</u>. The Commitment Party is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, and has all requisite [limited liability company or limited partnership power and authority][2] to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement.

(b) <u>Authorization</u>. The Commitment Party's execution and delivery of this Agreement and the performance by the Commitment Party of its obligations under this Agreement have been authorized by all necessary [limited liability company or partnership] action, as applicable, on the part of the Commitment Party.

(c) <u>No Conflicts</u>. The execution, delivery, and performance of this Agreement by the Commitment Party does not violate any provision of law, rule, or regulation applicable to it or its organizational documents.

(d) <u>Binding Effect</u>. This Agreement has been duly authorized, executed, and delivered by the Commitment Party and, assuming the due authorization, execution, and delivery by the Company, (subject to Bankruptcy Court approval of the Company's entry into and performance under this Agreement) constitutes the legal, valid, and binding obligation of the Commitment Party, enforceable against the Commitment Party in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, or

---

[2] [NTD: to update based on appropriate Mercuria entity.]

other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity relating to enforceability.

Section 6.    Conditions.    The obligations of the Commitment Party under this Agreement shall be subject to the fulfillment, or waiver by the Commitment Party, of each of the following conditions:

(a)    Plan.    The Company and its debtor affiliates shall have complied, in all material respects, with the terms of the Plan and Confirmation Order, as applicable.

(b)    Effective Date.    The Effective Date shall have occurred in accordance with the terms and conditions in the Plan and in the Confirmation Order (excluding the funding of the Litigation Trust Account with the proceeds of the Litigation Trust Loan).

(c)    Loan Agreement.    Definitive documentation with respect to the Litigation Trust Loan, in form and substance satisfactory to the Commitment Party (including, but not limited to, the Loan Agreement and Litigation Trust Agreement), shall have been executed by the Litigation Trust, the Commitment Party, and each of the other parties thereto required to execute such documentation.

(d)    Consents.    All governmental and third-party notifications, filings, consents, waivers, and approvals required for the consummation of the transactions contemplated by this Agreement and the Loan Agreement shall have been made or received.

(e)    No Legal Impediment to Issuance.    No Law or Order shall have been enacted, adopted, or issued by any Governmental Entity (i) of the United States (including any state or subdivision thereof) and (ii) the jurisdiction of incorporation or formation of any Debtor, in each case that prohibits the implementation of the Plan, the transactions contemplated thereunder, or the transactions contemplated by this Agreement.

(f)    Agreement.    This Agreement shall have been executed by the Company and the Commitment Party.

Section 7.    Exclusivity. Subject to participation of the Non-Backstop Commitment Parties in accordance with Section 2, the Commitment Party shall have the exclusive right to provide the Litigation Trust Loan or any other financing intended to substitute therefor.

Section 8.    Termination.    This Agreement shall automatically terminate on the earlier of (a) the Closing Date, (b) upon any of the Debtors entering into any agreement giving effect to or setting forth an Alternative Transaction, (c) if the Restructuring Support Agreement has been terminated pursuant to its terms, (d) in accordance with the provisions of Section 2 as a result of the funding of the Non-Backstop Commitments equal to or in excess of the Maximum Backstop Commitment and (e) the election to terminate the Agreement by the parties hereto; provided, that this Section 8 and Sections 9, 10 and 11(g) shall survive any termination of this Agreement.

Section 9.    Third Party Beneficiaries.    This Agreement may be relied upon and enforced only by the Company, the Commitment Party and the Litigation Trust.  Nothing set forth in this Agreement shall be construed to confer upon or give any person other than the Company,

the Commitment Party and the Litigation Trust any benefits, rights, or remedies under or by reason of, or any rights to enforce or cause the Company or the Commitment Party to enforce this Agreement.

Section 10.    <u>Indemnification</u>.  If following the date hereof any action, suit, or proceeding related to or arising from this Agreement or the transactions contemplated hereby or any claim, challenge, litigation, investigation, or proceeding relating to any of the foregoing shall be commenced against, or any claim or demand (related to or arising from this Agreement or the transactions contemplated hereby) shall be asserted against the Commitment Party by a third-party (including, but not limited to, the Litigation Trustee or any Litigation Trust Beneficiary), then the Company together with it successors, on a joint and several basis, (each, an "<u>Indemnifying Party</u>") shall indemnify, defend, and hold harmless the Commitment Party and its affiliates and each of their respective officers, directors, managers, partners, stockholders, employees, advisors, agents, and other representatives and any affiliate of the foregoing, and each of its respective successors and permitted assigns (each, an "<u>Indemnified Party</u>") from and against, and shall promptly reimburse each Indemnified Party for, all losses, damages, claims, liabilities, costs and expenses, including, without limitation, interest, court costs and reasonable attorneys' fees and expenses arising or resulting from or in connection with any such action, suit, or proceeding by a third-party (collectively, "<u>Indemnified Liabilities</u>"); <u>provided</u>, <u>however,</u> that (a) nothing herein shall prohibit or otherwise restrict the Company (or any successors to the Company, including the Reorganized Debtors) from seeking recovery of any such losses, damages, claims, liabilities, costs, and expenses after reimbursement of an Indemnified Party from any insurance or insurance policies pursuant to which a claim for any of the foregoing may be made, and (b) Indemnified Liabilities shall exclude any portion of such losses, damages, liabilities, costs, or expenses found by a final, non-appealable Order of a court of competent jurisdiction to arise from an Indemnified Party's gross negligence, willful misconduct, or fraud.

Section 11.    <u>Miscellaneous</u>.

(a)    <u>Transfer and Assignment</u>.  This Agreement shall not be assignable by any party without the prior written consent of all other parties hereto (and any purported assignment without such consent shall be null and void *ab initio*) and is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto; <u>provided</u>, <u>however</u>, that the Commitment Party may assign all or any portion of its commitment to an affiliate of the Commitment Party without the prior written consent of any other parties hereto, <u>provided</u>, <u>further</u>, that, notwithstanding such assignment, the Commitment Party shall retain all of its obligations in regard to the Maximum Backstop Commitment.  For the avoidance of doubt, upon entry into definitive documentation governing the Litigation Trust Loan and funding of the Litigation Trust Loan, this <u>Section 11(a)</u> shall terminate and assignments shall be governed by such documentation.

(b)    <u>Amendment and Waiver</u>.  No modification of or amendment to this Agreement shall be valid or binding unless set forth in writing and executed by the Company and the Commitment Party, provided that such modification or amendment has been approved in writing by the Committee, and no waiver of any breach of any term or provision of this Agreement shall be effective or binding unless made in writing and signed by the party purporting to give the same and, unless otherwise provided, shall be limited to the specific

5

breach waived.

(c)  Entire Agreement.  This Agreement together with the Plan and the Confirmation Order set forth the entire understanding of the parties hereto with respect to the subject matter hereof and supersede all prior agreements, discussions or understandings regarding the subject matter hereof, whether written or oral.  This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement.  Delivery of an executed signature page of this Agreement by facsimile (or other form of electronic) transmission shall be effective as delivery of a manually executed counterpart hereof.

(d)  Covenants; Further Assurances.  Each party shall, (i) use commercially reasonable efforts to take or cause to be taken all actions, and do or cause to be done all things, reasonably necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by the Plan and the Confirmation Order and (ii) execute and deliver all such further documents and instruments and do all acts and things as any other party may after the date hereof reasonably require to carry out or better evidence the full intent and meaning of this Agreement in accordance with the Plan and the Confirmation Order.

(e)  Assigns.  To the extent permitted hereby, all terms of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and permitted assigns.

(f)  Headings.  Introduction, Section, and paragraph headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

(g)  Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflict of laws that would require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each of the parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in the United States Bankruptcy Court for the Southern District of New York.  By execution and delivery of this Agreement, each of the parties hereto hereby irrevocably accepts and submits itself to the nonexclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. EACH PARTY HERETO UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO ABOVE.

(h)  Notices.  Any notice required or permitted under this Agreement shall be given in writing and shall be deemed effectively given upon personal delivery to the party to be notified or upon delivery by confirmed facsimile transmission during the regular business hours of the recipient or nationally recognized overnight courier service and addressed to the party to be notified at the address indicated for such party on the signature page hereof, or at such other address as such party may designate by ten (10) days' advance written notice to the other parties. For purposes of this paragraph, the term "regular business hours" shall mean the hours between

8:00 am and 5:00 pm on a business day (being exclusive of Saturdays, Sundays, and holidays) in the jurisdiction in which the address of the recipient is located.

(i)    <u>Documentation</u>.  The Company and the Commitment Party shall negotiate all documentation required to be entered into by the parties hereto in good faith and use their respective reasonable best efforts to enter into such documentation.

**IN WITNESS WHEREOF**, each of the parties has caused this Agreement to be executed as of the date first above written.

<u>**DEBTORS**</u>**:**

By:  _____
        Name:
        Title:


<u>Address for Notices</u>:

**<u>COMMITMENT PARTY</u>:**

[____]


By:_____
Name:
Title:


<u>Address for Notices</u>:

**<u>Exhibit H</u>**

**Form of Reorganized Debtor Organizational Documents**

## Exhibit H-1

**Reorganized Caribbean Renewable Energy
Sources Inc. Memorandum & Articles of Association**

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT (No. 16 of 2004)

# Memorandum

and

# Articles of Association

of

# Caribbean Renewable Energy Sources Inc.

BVI BC No.: 1383829

Incorporated the 2nd day of February, 2007

ILS FIDUCIARY (B.V.I.) LIMITED MILL MALL. SUITE 6 WICKHAMS CAY 1, PO BOX 3085
ROAD TOWN, TORTOLA BRITISH VIRGIN ISLANDS

TERRITORY OF THE VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT, 2004

MEMORANDUM OF ASSOCIATION

OF

**<u>Caribbean Renewable Energy Sources Inc.</u>**

A COMPANY LIMITED BY SHARES

1.    **NAME**

The name of the Company is Caribbean Renewable Energy Sources Inc..

2.    **INCORPORATION**

The Company is incorporated as a company limited by shares.

3.    **REGISTERED OFFICE**

The registered office of the Company is located at ILS FIDUCIARY (B.V.I) LIMITED, Mill Mall, Suite 6, Wickhams Cay 1, P.O. Box 3085, Road Town, Tortola, British Virgin Islands.

4.    **REGISTERED AGENT**

The registered agent of the Company is located at ILS FIDUCIARY (B.V.I) LIMITED of Mill Mall, Suite 6, Wickhams Cay 1, P.O. Box 3085, Road Town, Tortola, British Virgin Islands.

5.    **OBJECTS AND POWERS**

(a)    The object for which the Company is incorporated is to engage without limitation in any act or activities which are not prohibited under any law for the time being in force in the British Virgin Islands.

(b)    The Company shall have full capacity, power, right and privilege to:

(i)    engage in any business or businesses whatsoever, or in any act or activities which are not prohibited under any law for the time being in force in the British Virgin Islands;

(ii)    carry on business with persons resident in the British Virgin Islands.

(iii)    carry on banking or trust business, pursuant to a license issued to it

2

under the Banks and Trust Companies Act, 1990 and to act as trustee of a Virgin Islands Special Trust;

(iv)  carry on business as an insurance company or as a reinsurance company, insurance agent, or insurance broker, pursuant to a license issued to it under the Insurance Act, 1994;

(v)  carry on the business of company management pursuant to a license issued to it under the Company Management Act, 1990;

(vi)  act a as a custodian of shares in a company incorporated under the laws of the British Virgin Islands, pursuant to a license issued to it under the Financial Services Commission Act, 2001;

(vii)  issue, cancel, and hold treasury shares, grant options over unissued shares in the Company and treasury shares, issue securities that are converted into shares, and give financial assistance to any person in connection with the acquisition of its own shares;

(viii)  issue debentures, guarantee a liability or obligation of any person and secure any of its obligations by mortgage, pledge or other charge of any of its assets;

(ix)  protect the assets of the Company for the benefit of the Company, its creditors and its members and, at the discretion of the directors, for any person having a direct or indirect interest in the Company;

(x)  buy, sell, underwrite, invest in, exchange or otherwise acquire and hold, manage, develop, deal with and turn to account any bonds, debentures, shares, (whether fully paid or not) stocks, options, commodities, futures, forward contracts, notes or securities of Governments, States, municipalities, public authorities or public or private limited or unlimited companies in any part of the world, precious metals, gems, works of art and other articles of value and whether on a cash or margin basis and including short sales, and to lend money against the security of any of the aforementioned property;

(xi)  buy, own, hold, subdivide, lease, sell, rent, prepare building sites, construct, reconstruct, alter, improve, decorate, furnish, operate, maintain, reclaim or otherwise deal with and/or develop land and buildings and otherwise deal in real estate in all its branches, make advances upon the security of land or houses or other property or any interest therein, and whether erected or in course of erection and whether on first mortgage or charge or subject to prior mortgage or charge, and to develop land and buildings as may seem expedient to the Company;

3

(xii)   borrow or raise money by the issue of debentures, debenture stock (perpetual or terminable), bonds, mortgages, or any other securities founded or based upon all or any of the assets or property of the Company or without any such security and upon such terms as to priority or otherwise as the Company may think fit;

(xiii)  do all such other things as are incidental to, or which the company may think conducive to the attainment of all the above objects, powers, rights and privileges.

(c)   For the purposes of Section 9(4) of the Act, there are no limitations on the business that the Company may carry on.

## 6.  SHARES IN THE COMPANY

(1)    The Company shall be authorised to issue a maximum of 50,000 shares with a par value of US$1.00 for each share.

(2)    The shares in the Company shall be issued in the currency of the United States of America.

(3)    Shares in the Company shall be issued as registered shares only.

(4)    The shares may be divided into such number of classes and series as the directors may by resolution from time to time determine, and until so divided shall comprise one class and series.

(5)    The Company shall not be authorized to issue bearer shares; convert registered shares to bearer shares; or exchange registered shares for bearer shares.

(6)    To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares in the Company; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.

## 7.  DESIGNATIONS, RIGHTS, PRIVILEGES, RESTRICTIONS AND CONDITIONS ATTACHING TO SHARES

The directors shall by resolution have the power to issue any class or series of shares that the Company is authorized to issue, with or subject to any designations, powers, preferences, rights, qualifications, limitations and restrictions.

4

8.       **VARIATION OF CLASS RIGHTS**

If at any time the number of shares which the Company is authorised to issue is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) shall whether or not the Company is being wound up, be varied by way of resolution or with the consent in writing of the holders of not less than 51% of the issued shares of that class and of the holders of not less than 30% of the issued shares of any other class of shares which may be affected by such variation.

## 9.    RIGHTS NOT VARIED BY THE ISSUE OF SHARES PARI PASSU

Rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of such further shares ranking pari passu therewith.

## 10.    AMENDMENTS

(1)     The Company may by resolution of the members, or by a resolution of directors if no shares have been issued, amend this Memorandum of Association and the Articles of Association of the Company.

(2)     Amendments to this Memorandum of Association and to the Articles of Association may include changing the name of the Company; and increasing the number of shares which the Company is authorised to issue.

(3)     No amendment may be made by a Resolution of Directors:

       (i)     to restrict the rights or powers of members to amend the Memorandum of Association or the Articles of Association;

      (ii)     to change the percentage of members required to pass a resolution of members to amend the Memorandum of Association or Articles of Association;

     (iii)     to clauses 7, 8, 9, and 10 of this Memorandum of Association of the Company;

     (iv)     to prohibit members from amending the Memorandum of Association or Articles of Association; or

      (v)     to Regulations 122, 126, or 127 of the Articles of Association of the Company.

(4)    Where a resolution is passed to amend the Memorandum or Articles of Association, the Company shall file for registration with the Registrar of Corporate Affairs:

(i)    a notice of amendment in the approved form; or

(ii)    a restated Memorandum or Articles of Association incorporating the amendment made.

We, ILS FIDUCIARY (BVI) LIMITED, Mill Mall, Suite 6, Wickhams Cay 1, P.O. Box 3085, Road Town, Tortola, British Virgin Islands for the purpose of incorporating a BVI Business Company under the laws of the British Virgin Islands hereby sign this Memorandum of Association [●] day of [_____], 2019.

Incorporator

_____
[                            ], *Authorised Signatory*
ILS FIDUCIARY (B.V.I.) LIMITED
Mill Mall, Suite 6
Wickhams Cay 1
P.O. Box 3085
Road Town, Tortola
British Virgin Islands

TERRITORY OF THE VIRGIN ISLANDS

THE BVI BUSINESS COMPANIES ACT, 2004

ARTICLES OF ASSOCIATION

OF

**Caribbean Renewable Energy Sources Inc.**

A COMPANY LIMITED BY SHARES

## INTERPRETATION

1.    References in these Articles to the "Act" shall mean the BVI Business Companies Act, 2004 and shall include amendments to the Act and any regulations as may from time to time be made under the Act.

2.    (1) The following Regulations shall constitute the Articles of the Company.

(2) In these Articles words and expressions defined in the Act shall have the same meaning.

(3) Unless otherwise required by the context, the singular shall include the plural and vice versa, and the masculine gender shall include the feminine and the neuter genders.

(4)  References to "person" shall include corporations and all other entities which are capable of having legal existence.

## ISSUE OF SHARES AND VARIATION OF RIGHTS

3.   (1) Subject to the provisions of these Articles, the unissued shares of the Company shall be at the disposal of the directors who may offer, allot, grant options over, or otherwise dispose of them to such persons at such times and for such consideration, and upon such terms and conditions as the directors may determine.

(2) The directors shall not issue a share for a consideration which shall be less than the par value of the share.

(3) Section 46 of the Act in respect of pre-emptive rights shall not apply to the Issue, allotment, transfer, purchase, redemption, or acquisition of shares in the Company.

(4) The Company shall not be authorized to issue bearer shares; convert registered shares to bearer shares; or exchange registered shares for bearer shares.

(5) The directors shall issue no shares for a consideration other than money, unless the directors have passed a resolution stating:

(a)    the amount to be credited for the issue of the Shares;

(b)    their determination of the reasonable present cash value of the nonmoney consideration for the issue; and

(c)  that, in their opinion, the present cash value of the non money consideration for the issue is not less that the amount to be credited for the issue of the Shares.

4.  The directors may issue shares in the Company with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the directors may determine.

5.  The Company shall keep a register of members which shall contain the following:

(a)  the names and addresses of the persons who hold registered shares in the Company;

(b)  the number of each class and series of shares held by each shareholder;

(c)  the date on which the name of each shareholder was entered in the register of members; and

(d)  the date on which a person ceased to be a shareholder.

6.  (1) Every person whose name is entered as a member in the register of members, being the holder of shares shall, without payment, be entitled to a certificate signed by two directors or two officers or by one director or one officer of the Company or under the common seal of the Company with or without the signature of any director or officer of the Company.

(2) The certificate shall specify the share or shares held and the par value thereof (if any) provided that in respect of a share, or shares, held jointly by several persons, the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all.

(3) If a certificate is worn out or lost it may be renewed on production of the worn out certificate, or on satisfactory proof of its loss together with such indemnity as the directors may reasonably require.

(4) Any member receiving a share certificate shall indemnify and hold the Company and its officers harmless from any loss or liability which it or they may incur by reason of wrongful or fraudulent use or representation made by any person by virtue of the possession of such a certificate.

7.  A share issued by the Company upon conversion of, or in exchange for, another share or a debt obligation or other security in the Company, shall be treated for all purposes as having been issued for money equal to the consideration received or deemed to have been received by the Company in respect of the other share, debt obligation or security.

8.  The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

9.  The consideration in respect of the shares constitutes capital to the extent designated by the directors and the excess constitutes surplus, except that the directors must designate as capital an amount of the consideration that is at least equal to the amount that the share is entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

9

10.    Subject to the provisions of the Act, shares may be issued on the terms that they are redeemable, or at the option of the Company be liable to be redeemed on such terms and in such manner as the directors before or at any time of the issue of the shares may determine.

## ACQUISITION OF OWN SHARES AND REDEMPTION OF SHARES

11.  (1) The directors may, in accordance with the Act, on behalf of the Company purchase, redeem, or otherwise acquire any of the Company's own shares for such consideration as they consider fit, and may either cancel or hold such shares as treasury shares.

(2) The directors may dispose of any shares held as treasury shares on such terms and conditions as they may from time to time determine. Shares may be purchased or otherwise acquired in exchange for newly issued shares in the Company.

(3) The directors may redeem any such share at a premium.

(4) The directors shall by resolution determine whether sections 60, 61, and 62 of the Act shall apply to the acquisition of shares.

(5) Upon cancellation of a share, the amount included as capital of the Company with respect to that share shall be deducted from the capital of the Company.

### NOTICE OF TRUST

12.    No notice of a trust, whether expressed, implied or constructive, shall be entered in the register of members.

13.    Except as required by law, no person shall be recognized by the Company as holding any share upon any trust, and the Company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future, or partial interest in any share or any interest in any fractional part of a share.

### TRANSFER OF SHARES

14.   (1) Registered shares in the Company may be transferred by a written instrument signed by the transferor and containing the name and address of the transferee or such other manner or form and subject to such evidence as the directors shall consider appropriate.

(2) The instrument of transfer shall be signed by the transferee if registration as a holder of the share imposes a liability to the Company on the transferee.

(3) The instrument of transfer of a registered share shall be sent to the Company for registration.

15.   (1) The directors shall pass a resolution to register or refuse to register a transfer of shares.

(2) The directors having resolved to register the shares shall enter the name of the transferee of the shares in the register of members.

(3) If the directors of the Company are satisfied that an instrument of transfer relating to Shares has been signed but that the instrument has been lost or destroyed, they may resolve by Resolution:

    (a)    to accept such evidence of the transfer of shares as they consider appropriate; and

    (b)    that the transferee's name should be entered in the register of members notwithstanding the absence of the instrument of transfer.

## TRANSMISSION OF SHARES

16.   (1) The personal representative of a deceased member, the guardian of an incompetent member, or the trustee of a bankrupt member shall be the only person recognized by the Company as having any title to his share.

    (2) Such personal representative, guardian, or trustee shall not be entitled to exercise any rights as a member of the Company until that person has proceeded in the manner set out below.

    (3) The production to the Company of any document which is evidence of:

    (a)    a grant of probate of the will, or grant of letters of administration of the estate, or confirmation of the appointment as executor, of a deceased member; or

    (b)    the appointment of a guardian of an incompetent member; or

    (c)    the trustee of a bankrupt member; or
    (d)    any other documentation providing reasonable evidence of the applicants beneficial ownership of the shares,

shall be accepted by the Company.

    (4) If the deceased, incompetent member or bankrupt member is domiciled outside the British Virgin Islands the Company shall accept the documents referred to in sub- regulation (3) above, if such documents are issued by a foreign court which had competent jurisdiction in the matter.

    (5) For the purposes of establishing whether or not a foreign court had competent jurisdiction in the matter the directors may obtain appropriate legal advice.

    (6) The directors may also require an indemnity to be given by the personal representative, guardian, or trustee of the member.

17.    An application by any such person to be registered as a member shall for all purposes be deemed to be a transfer of shares of the deceased, incompetent, or bankrupt member and the directors shall treat it as such.

18.    Any person who has become entitled to a share in consequence of the death, incompetence, or bankruptcy of any member may, instead of being registered himself, request in writing that some person to be named by him be registered as the transferee of such share and such request shall likewise be treated as if it were a transfer.

11

19.   What amounts to incompetence on the part of a person is a matter to be determined by the court having regard to all the relevant evidence and the circumstances of the case.

**LIEN**

20.   (1) The Company shall have a first and paramount lien on every share which has been registered in the name of a member, whether singly or jointly with any other person, for all the debts incurred before or after the notice to the Company of any interest of any person other than such member, and whether the time for the payment or discharge of the same shall have actually arrived or not, and notwithstanding that the same are joint debts or liabilities of such member or his estate and any other person, whether a member of the Company or not.

(2) The Company's lien on a share shall extend to all dividends payable thereon.

(3) The directors may at any time either generally, or in any particular case, waive any lien that has arisen or may declare any share to be wholly or in part exempt from the provisions of this regulation.

21.   The Company may sell, in such manner as the directors may by resolution determine, any share on which the Company has a lien, but no sale shall be made unless the sum in respect of which the lien exists is payable nor until the expiration of twenty one days after a notice in writing, demanding payment of the sum payable and giving notice of the intention to sell in default of such payment, has been served on the holder for the time being of the share.

22.   (1) The net proceeds of the sale by the Company of any share on which it has a lien shall be applied in or towards payment in respect of which the lien exists so far as the same is payable and any residue shall (subject to a like lien for debts or liabilities not payable as existed upon the share prior to the sale) be paid to the holder of the share immediately before such sale.

(2) For giving effect to any such sale the directors may authorise some person to transfer the share sold to the purchaser thereof.

(3) The purchaser shall be registered as the holder of the share and he shall not be bound to see the application of the purchase money, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the sale.

**MEETINGS OF MEMBERS**

23.   The directors shall convene meetings of the members of the Company at such times and in such manner and place as the directors consider necessary or desirable, and they shall convene such a meeting upon the written request of members holding no less than 30% of the votes of the issued voting shares in the Company.

24.   Seven days' notice at the least specifying the place, the day and the hour of the meeting and general nature of the business to be conducted shall be given in the manner hereinafter mentioned to such persons whose names on the date the notice is given appear as members in the register of members of the Company and who are entitled to vote.

25.   A meeting of the members shall be deemed to have been validly held, notwithstanding that it is

12

held in contravention of the requirement to give notice.

26.    If notice of the meeting is waived by an absolute majority in number of the members having a right to attend and vote at the meeting.

27.    The inadvertent failure of the directors to give notice of a meeting to a member, or the fact that a member has not received the notice, does not invalidate the meeting.

28.    A meeting of the members may on the application of a member, a director or the directors of the Company be ordered by the Court if:

   (a)    it is impracticable to call or conduct a meeting of the members of the Company in the manner specified in the Act or in these Articles; or

   (b)    if it is in the interest of the members of the Company that a meeting of members is held.

## PROCEEDINGS AT MEETINGS OF MEMBERS

29.    No business shall be transacted at any meeting unless a quorum of members is present at the time when the meeting proceeds to business. A quorum shall consist of the holder or holders present in person or by proxy of a majority in excess of 50% of the voting shares.

30.    If, within half an hour from the time appointed for the meeting, a quorum is not present, the meeting shall be dissolved.

31.    At every meeting the members present shall choose someone of their number to be the chairman. If the members are unable to choose a chairman for any reason, then the person representing the greatest number of shares entitled to vote and who is present at the meeting shall preside as chairman failing which the oldest individual person shall take the chair.

32.    The chairman may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting form which the adjournment took place.

33.    At any meeting a resolution put to the vote shall be decided on a show of hands by a simple majority unless a poll is (before or on the declaration of the result of the show of hands) demanded:

   (a)  by the chairman; or

   (b)    by any member present in person, voting trustee, committee or by proxy and representing not less than one tenth of the shares entitled to vote.

34.    Unless a poll be so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried, and an entry to that effect in the book containing the minutes of the proceedings of the Company, shall be sufficient evidence of the fact, without proof of the number or proportion of the votes recorded in favour of or against such resolution.

35.    If a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result

13

of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

36.    The demand for a poll may be withdrawn.

37.    In the case of an equality of votes, whether on a show of hands, or on a poll, the chairman of the meeting at which the show of hands takes place, or at which the poll is demanded, shall be entitled to a second or casting vote.

### VOTES OF MEMBERS

38.    At any meeting of members whether on a show of hands or on a poll, every member entitled to vote and who is present in person, by a voting trustee, by a committee, or by proxy shall have one vote for every voting share of which he is the holder.

39.    A member may be represented at a meeting of members by a voting trustee, by a committee, or by proxy who may speak and vote on behalf of that member.

40.    A resolution which has been notified to all members and which has been approved by a majority in excess of 50% of the votes of those members in the form of one or more documents in writing or by telex, telegram, cable, or other written electronic communication shall forthwith, without the need for any notice, become effectual as a resolution of the members.

41.    If a committee shall be appointed for any member who is entitled to vote and who is of unsound mind that member may vote by his committee.

42.    If two or more persons are jointly entitled to a share or shares and if more than one of such persons shall vote in person or by voting trustee or by committee or by proxy at any meeting of members, the vote of that person whose name appears first among such voting joint holders in the register of members shall alone be counted.

43.    The instrument appointing a proxy shall be in such form as the chairman of the meeting shall accept as properly evidencing the wishes of the member appointing the proxy.

44.    The instrument appointing a proxy shall be in writing under the hand of the appointer unless the appointer is a corporation or other form of legal entity other than one or more individuals holding as joint owners in which case the instrument appointing a proxy shall be in writing under the hand of an individual duly authorised by such corporation or legal entity to execute the same.

45.    The chairman of any meeting at which a vote is cast by proxy so authorised may call for a notarially certified copy of such authority which shall be produced within seven days of being so requested or the vote or votes cast by such proxy shall be disregarded.

46.    The instrument appointing a proxy shall be produced at the place appointed for the meeting before the time for holding the meeting at which the person named in such instrument proposes to vote.

47.    A member of the Company shall be deemed to be present at a meeting of members if:

      (a)    he participates by telephone or other electronic means; and

      (b)    all members participating in the meeting are able to hear each other.

### CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

48.    A corporation or other form of corporate legal entity which is a member of the Company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that

15

corporation could exercise if it were an individual member of the Company.

49.    An action that may be taken by members of the Company at a meeting of members may also be taken by a resolution of members consented to in writing, or by telex, telegram, cable, or other written electronic communication without the need for any notice.

50.    A resolution consented to in writing may consist of several documents including electronic communication in like form each signed or assented to by one or more members.

## DIRECTORS

51.    The number of the directors shall be not less than one nor more than seven.

52.    (1) The first director or directors shall be appointed by the first Registered Agent of the Company within such period after the date of incorporation as may be prescribed by law. Thereafter, the directors shall be elected by the members who are entitled to vote for such period as the members may determine.

(2) Where the Company has only one member who is an individual and that member is also the sole director of the Company, that sole member/director may, by instrument in writing, nominate a person who is not disqualified from being a director of the Company under the Act, as a reserve director of the Company to act in the place of the sole director/member.

(3) The nomination of a person as a reserve director of the Company shall cease if:

(a)    before the death of the sole member/director who nominated him

(i)    he resigns as a reserve director, or

(ii)    the sole member/director revokes the nomination in writing; or

(b)    the sole member/director who nominated him ceases to be the sole member/ director of the Company for any reason other than the death of the sole member/director.

53.    The directors shall only be removed by the members.

54.

A person shall not be appointed as a director of the Company or be nominated as a reserve director unless that person has consented in writing to be a director, or a reserve director as the case may be.

55.    The Company shall keep and maintain a register of directors which shall contain:

(a)    the names and addresses of the persons who are directors of the Company or who has been nominated as a reserve director of the Company;

(b)    the date on which each person whose name is entered in the register was appointed as a director of the Company or who has been nominated as a reserve director of the Company;

(c)    the date on which each person named as a director or who has been nominated as a reserve director of the Company ceased to be a director of the Company or a reserve director; and

(d)    such other information as may be prescribed by law.

56.    Each director holds office until his successor takes office or until his earlier death, resignation, or removal.

57.    A vacancy in the board of directors may be filled by a resolution of the members who are entitled to vote.

58.    The office of director shall be vacated if the director:

(a)    dies; or

(b)    is removed from office by a resolution of members; or

(c)    becomes bankrupt or makes any arrangement or composition with his creditors generally; or

(d)    becomes of unsound mind, or of such infirm health as to be incapable of managing his affairs; or

(e)    resigns his office by a notice in writing to the Company.

59.    (1) A director shall not require a share qualification, but nevertheless shall be entitled to attend and speak at any meeting of the members.

(2) A trustee of designated shares in the Company which may be held under a Virgin Islands Special Trust shall not be a director of the Company.

60.    (1) A director by writing under his hand deposited at the Registered Office of the Company, may from time to time appoint another director or another person to be his alternate.

17

(2) Every such alternate shall be entitled to be given notice of meetings of the directors and to attend and vote as a director at any such meeting at which the director appointing him is not personally present and generally at such meeting to have and exercise all the powers, rights, duties and authorities of the director appointing him.

61.   Every such alternate shall be deemed to be an officer of the Company and shall not be deemed to be an agent of the director appointing him.

62.   If undue delay or difficulty would be occasioned by giving notice to a director of a resolution of which his approval is sought, his alternate (if any) shall be entitled to signify approval of the same on behalf of that director.

63.   The remuneration of an alternate shall be payable out of the remuneration payable to the director appointing him, and shall consist of such portion of the last mentioned remuneration as shall be agreed between such alternate and the director appointing him.

64.   A director by writing under his hand deposited at the Registered Office of the Company may at any time revoke the appointment of an alternate appointed by him.

65.   If a director shall die or cease to hold the office of director, the appointment of his alternate shall thereupon cease.

66.   The directors may, by resolution, fix the emoluments of directors in respect of services rendered or to be rendered in any capacity to the Company. The directors may also be paid such traveling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors, or any committee of the directors or meeting of the members, or in connection with the business of the Company as shall be approved by resolution of the directors.

67.   A director who, by request, goes or resides abroad for any purposes of the Company, or who performs services which in the opinion of the Board go beyond the ordinary duties of a director, may be paid such extra remuneration (whether by way of salary, commission, participation in profits or otherwise) as shall be approved by resolution of the directors.

68.   The Company may pay to a director who at the request of the Company holds any office (including a directorship) in, or renders services to, any company in which the Company may be interested, such remuneration (whether by way of salary, commission, participation in profits or otherwise) in respect of such office or services as shall be approved by resolution of the directors.

69.   A director may hold any other office or position of profit under the Company (except that of auditor) in conjunction with his office of director, and may act in a professional capacity to the Company on such terms as to remuneration or otherwise as the directors shall determine.

## CONFLICT OF INTEREST

70.  (1) A director may be or become a director or officer of, or otherwise be interested in any company promoted by the Company, or in which the Company may be interested, as a member or otherwise and no such director shall be accountable for any remuneration or other benefits received by him as director or officer or from his interest in such other company.

18

(2) A director may also exercise the voting powers conferred by the shares in any other company held or owned by the Company in such manner in all respects as they think fit, including the exercise thereof in favour of any resolutions appointing them, or of their number, directors or officers of such other company, or voting or providing for the payment of remuneration to the directors or officers of such other company.

(3) A director may vote in favour of the exercise of such voting rights in the manner aforesaid notwithstanding that he may be, or be about to become a director or officer of such other company, and as such in any other manner is, or may be, interested in the exercise of such voting rights in the manner aforesaid.

(4) No director shall be disqualified by his office from contracting with the Company either as a vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any director shall in any way interested be voided, nor shall any director so contracting or being so interested be liable to account to the Company for any profit realized by any such contract or arrangement, by reason of such director holding that office or of the fiduciary relationship thereby established.

(5) The nature of a director's interest must be declared by him at the meeting of the directors at which the question of entering into the contract or arrangement is first taken into consideration, and if the director was not at the date of the meeting interested in the proposed contract or arrangement, or shall become interested in a contract or arrangement after it is made, he shall forthwith after becoming so interested, advise the Company in writing of the fact and nature of his interest.

(6) A general notice to the directors by a director that he is a member of a special firm or company, and is to be regarded as interested in any contract or transaction which may, after the date of notice, be made with such firm or company shall (if such director shall give the same at a meeting of the directors, or shall take reasonable steps to secure that the same is brought up and read at the next meeting of the directors after it is given) be a sufficient declaration of interest in relation to such contract or transaction with such firm or company.

(7) A director may be counted as one of a quorum upon a motion in respect of any contract or arrangement which he shall make with the Company, or in which he is so interested as aforesaid, and may vote upon such motion.

## POWERS OF DIRECTORS

71.    The business and affairs of the Company shall be managed by the directors who may pay all expenses incurred preliminary to and in connection with the formation and registration of the Company, and may exercise all such powers of the Company as are not by the Act or by these Articles required to be exercised by the members subject to any delegation of such powers as may be authorised by these Articles and to such requirements as may be prescribed by resolution of the members, but no requirement made by resolution of the members shall prevail if it be inconsistent with these Articles nor shall such requirement invalidate any prior act of the directors which would have been valid if such requirement had not been made.

72.    The Board may entrust to and confer upon any director or officer any of the powers exercisable by it upon such terms and conditions and with such restrictions as it thinks fit, and either collaterally with, or to the exclusion of, its powers, and may from time to time revoke, withdraw, alter or vary

all or any of such powers.

73.    The directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit. Any committee so formed shall in the exercise of powers so delegated conform to any regulations that may be imposed on it by the directors.

74.    Subject to the provisions of the Act, the directors may from time to time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the directors under these Articles) and for such period and subject to such conditions as they think fit, and any such powers of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney to delegate all or any of the powers authorities and discretions vested in him.

75.    Any director who is a body corporate may appoint any person its duly authorised representative for the purpose of representing it at Board meetings and of transacting any of the business of the directors.

76.    All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for monies paid to the Company, shall be signed, drawn, accepted, endorsed or otherwise executed as the case may be, in such manner as the directors shall by resolution determine.

77.    The directors may exercise all of the powers of the Company to borrow money and to mortgage or charge its undertakings, property and uncalled capital or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

78.    If the number of directors shall have been fixed at two or more persons and by reason of vacancies having occurred in the Board there shall be only one continuing director, he shall be authorised to act alone only for the purpose of appointing another director.

## PROCEEDINGS OF DIRECTORS

79.  (1) The meetings of the Board of Directors and any committee thereof shall be held at such place or places as the directors shall determine.

    (2) Any one or more directors may convene a meeting of directors.

80.    A director may at any time summon a meeting of the directors.

81.    A director shall be given no less than seven days' notice of a meeting of directors.

82.    If the Company shall have only one director, the provisions hereinafter contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a resolution of the directors. Such note or memorandum shall constitute sufficient evidence of such resolution for all purposes.

83.    The directors may elect a chairman of their meeting and determine the period for which he is to

hold office; but if no such chairman is elected, or if at any meeting the chairman is not present at the time appointed for holding the same, the directors present may choose one of their number to be chairman for the meeting.

84.     The directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings as they think fit.

85.     Questions arising at any meeting shall be decided by a majority of votes. In case of an equality in votes the Chairman shall have a second or casting vote.

86.     A meeting of the directors held in contravention of the notice requirement shall be valid if a majority of the directors entitled to vote at the meeting have waived notice of the meeting.

87.     The inadvertent failure to give notice of a meeting to a director, or the fact that a director has not received the notice, shall not invalidate the meeting.

88.     A meeting of the directors is duly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate, a majority of the total number of directors. If the total number of directors is two, a meeting shall be duly constituted for all purposes with both directors. If the total number of directors is three, a meeting of directors shall be duly constituted for all purposes if, at the commencement of that meeting, there are present in person, or by alternate, no less than two directors.

89.     If within half an hour from the time appointed for the meeting a quorum is not present, the meeting shall be dissolved.

90.     Any one or more members of the Board of Directors or any committee thereof may participate in a meeting of such Board or committee by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time. Participation by such means shall constitute presence in person at a meeting.

91.     A resolution approved by a majority of the directors for the time being entitled to receive notice of a meeting of the directors or of a committee of the directors and taking the form of one or more documents in writing or by telex, telegram, cable or other written or electronic communication shall be as valid and effectual as if it had been passed at a meeting of the directors or of such committee duly convened and held, without the need for notice.

## OFFICERS AND AGENTS

92.     The directors of the Company may, by resolution, appoint officers of the Company at such times as shall be considered necessary or expedient, and such officers may consist of a President, one or more Vice Presidents, a Secretary, and a Treasurer and such other officers as may from time to time be deemed desirable.

93.     The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modifications in such duties as may be prescribed by the directors. In the absence of any specific allocation of duties it shall be the responsibility of the President to manage the day to day affairs of the Company, the Vice Presidents to act in order of seniority in the absence of the President, but otherwise to perform such duties as may be delegated to them by the President; the Secretary to maintain the registers, minute books and records (other than financial records) of the

Company and to ensure compliance with all procedural requirements imposed on the Company by law; and the Treasurer to be responsible for the financial affairs of the Company.

94.    A person may hold more than one office and no officer need be a director or member of the Company. The officers shall remain in the office until removed from office by the directors whether or not a successor is appointed.

95.    An officer who is a body corporate may appoint any person its duly authorised representative for the purpose of representing it and of transacting any of the business of the Company.

### INDEMNITY

96.    Subject to the provisions of the Act and of any other statute for the time being in force every director or other officer of the Company shall be entitled to be indemnified out of the assets of the Company against all losses or liabilities which he may sustain or incur in or about the execution of the duties of his office or otherwise in relation thereto, and no director or other officer shall be liable for any loss, damage, or misfortune which may happen to, or be incurred by the Company in the execution of the duties of his office, or in relation thereto.

### SEAL

97.  (1) The Company shall have a Common Seal, an imprint of which shall be kept at the office of the registered agent of the Company.

   (2) The directors shall provide for the safe custody of the common seal of the Company.

   (3) The common seal when affixed to any instrument except as provided herein, shall be witnessed by a director or any other person so authorised from time to time by the directors to witness the application of the seal.

98.    The directors may provide for a facsimile of the common seal and approve the signature of any director or authorised person which may be reproduced by printing or other means on any instrument and it shall have the same force and validity as if the seal had been affixed to such instrument and the same had been signed as hereinbefore described.

### DIVIDENDS AND RESERVES

99.    The directors may, by resolution, declare a dividend.

100.    No dividend shall be declared and paid except out of surplus and unless the directors determine that immediately after the payment of the dividend

   (a)    the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business; and

   (b)    the realisable value of the assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in the books of account, and its capital.

101.    The Directors may pay dividends in money, shares, or other property of the Company.

102.    In computing the surplus for the purpose of resolving to declare and pay a dividend, the directors may include in their computation the net unrealised appreciation of the assets of the Company.

103.    The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the surplus of the Company.

104.    Subject to the rights of the holders of shares entitled to special rights as to dividends, all dividends shall be declared and paid according to the par value of the shares in issue, excluding those shares which are held by the Company as treasury shares at the date of declaration of the dividend.

105.    The directors may, before recommending any dividend, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at their discretion, either be employed in the business of the Company or be invested in such investments as the directors may think fit.

106.    If several persons are registered as joint holders of any share, any of them may give effectual receipt for any dividend or other monies payable on or in respect of the share.

107.    Notice of any dividend that may have been declared shall be given to each member and all dividends unclaimed for three years after having been declared may be forfeited by the directors for the benefit of the Company.

108.    No dividend shall bear interest against the Company.

## BOOKS AND RECORDS

109.    The Company shall keep such accounts and records as the directors consider necessary or desirable in order to reflect the financial position of the Company.

110.    The Company shall keep minutes of all meetings of directors, members, committees of directors, committees of officers and committees of members, and copies of all resolutions consented to by the directors, members, committees of directors, committees of officers and committees of members.

111.    The books, records, and minutes shall be kept at the Registered Office of the Company or at such other place as the directors may determine, and shall be open to the inspection of the directors at all times.

112.   (1) The directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the books, records and minutes of the Company or any of them shall be open to the inspection of members not being directors, and no member (not being a director) shall have any right of inspecting any book, record, minute or document of the Company except as conferred by law or authorised by resolution of the directors.

        (2) The Company shall keep the following documents at the office of its registered agent:

            (a)    the Memorandum of Association and the Articles of Association;

            (b)    the register of members, or a copy of the register of members;

23

    (c)   the register of directors, or a copy of the register of directors; and

    (d)   copies of all notices and other documents filed by the Company with the Registrar of Corporate Affairs in the previous 10 (ten) years.

(3) The Company shall maintain only a copy of the register of members or a copy of the register of directors at the office of its registered agent, it shall within such period as may be prescribed by law, in either register, notify the registered agent in writing of the change.

(4)   The Company shall keep the following records at the office of its registered agent or at such other place or places:

    (a)  minutes of meetings and resolutions of shareholders and classes of shareholders;

    (b)  minutes of meetings and Resolutions of Directors and committees of directors; and

    (c)  an impression of the Seal.

(5)   Where the original records referred to in these Regulations are maintained other than at the office of the registered agent of the Company, and the place at which the original records is changed, the Company shall within such time as may be prescribed by law provide the registered agent with the physical address of the new location of the records.

(6)   The records kept by the Company under this Regulation shall be in written form or either wholly or partly as electronic records complying with the requirements of the Electronic Transactions Act (No. 5 of 2001)

## REGISTER OF CHARGES

113.   The Company shall keep at the office of its registered agent a register of charges in which there shall be entered the following particulars regarding each charge created by the Company:

    (a)   the date of creation of the charge;

    (b)   a short description of the liability secured by the charge;

    (b)   a short description of the property charged;

    (c)   the name and address of the trustee for the security or, if there is no such trustee, the name and address of the chargee;

    (d)  unless the charge is a security to bearer, the name and address of the holder of the charge; and

    (e)  details of any prohibition or restriction contained in the instrument creating the charge on the power of the Company to create any future charge ranking in priority to or equally with the charge.

## AUDIT

114.   The directors may, by resolution call for the accounts of the Company to be examined by an

auditor or auditors to be appointed by them at such remuneration as may from time to time be agreed.

115.    The auditor may be a member of the Company but no director or officer shall be eligible to be an auditor of the Company during his continuance in office.

116.    Every auditor of the Company shall have a right of access at all times to the books of accounts and vouchers of the Company, and shall be entitled to require from the officers of the Company such information and explanations as he may think necessary for the performance of his duties.

117.    The report of the auditor shall be annexed to the accounts upon which he reports, and the auditor shall be entitled to receive notice of, and to attend, any meeting at which the Company's audited Profit and Loss Account and Balance Sheet are to be presented.

## NOTICES

118.    Any notice, information, or written statement required to be given to members shall be served by air-mail service addressed to each member at the address shown in the register of members.

119.    All notices directed to be given to the members shall, with respect to any registered shares to which persons are jointly entitled, be given to whichever of such persons is named first in the register of members, and notice so given shall be sufficient notice to all the holders of such shares.

120.    Any notice served by post shall be deemed to have been served within ten days of posting, and in proving such service it shall be sufficient to prove that the letter containing the notice was properly addressed and put into the Post Office.

## PENSION AND SUPERANNUATION FUND

121.    The directors may establish, maintain, or procure the establishment and maintenance of any non-contributory or contributory pension or superannuation fund for the benefit of, and give or procure the giving of donations, gratuities, pensions, allowances or emoluments to any directors, officers or any other persons who are or were at any time in the employment or service of the Company or any company which is a subsidiary of the Company or is allied to or associated with the Company or with any of its subsidiaries, and to the wives, widows, families and dependents of any such persons. The Company may any of the matters aforesaid either alone or in conjunction with any such other company as aforesaid. All persons described above shall be entitled to participate in and retain for his own benefit any such donation, gratuity, pension, allowance, or emolument.

## WINDING UP

122.    (1) The Company may voluntarily commence to wind up and dissolve by resolution of members.

(2) If the Company has never issued shares, it may voluntarily commence to wind up and dissolve by a Resolution of Directors.

(3) If the Company shall be wound up, the Liquidator may, in accordance with a resolution of members, divide amongst the members in specie or in kind the whole or any part of the

assets of the Company and may for such purpose set such value as he deems fair upon any such property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.

123.    The Liquidator may vest the whole or any part of such assets in trustees upon such trust for the benefit of the contributors as the Liquidator shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## ARBITRATION

124.    Whenever any difference arises between the Company on the one hand and any of the members, their personal representatives or assigns on the other hand touching the true intent and construction or the incidence or consequences of these presents or of the Act. The parties agree to refer the same to a single arbitrator, or failing that, be referred to two arbitrators, one to be chosen by each of the parties and the arbitrators shall before entering on the reference appoint an umpire.

125.    If either party to the reference makes default in appointing an arbitrator either originally or by way of substitution (in the event that an appointed arbitrator shall die, be incapable of acting, or refuse to act) for ten days after the other party has given him notice to appoint the same, such other party may appoint an arbitrator to act in the place of the arbitrator of the defaulting party.

## MERGER, CONSOLIDATION AND ARRANGEMENTS

126.    The Company may by resolution of members or by a resolution of Directors if no shares have been issued, merge, consolidate or arrange with other companies in the manner prescribed in the Act.

## CONTINUATION

127.    The Company may by a resolution of members or by a resolution of Directors if no shares have been issued, continue as a company incorporated under the laws of a jurisdiction outside the Virgin Islands.

We, ILS FIDUCIARY (BV1) LIMITED, Mill Mall, Suite 6, Wickhams Cay 1, P.O. Box 3085, Road Town, Tortola, British Virgin Islands for the purpose of incorporating a BV1 Business Company under the laws of the British Virgin Islands hereby sign these Articles of Association the [●] day of [_____], 2019.

Incorporator

_____
[                  ], *Authorised Signatory*
ILS FIDUCIARY (B.V.I.) LIMITED
Mill Mall, Suite 6
Wickhams Cay 1
P.O. Box 3085
Road Town, Tortola
British Virgin Islands

## **Exhibit H-2**

**Reorganized ICS Petroleum (Montreal) Ltd Form to Amend Articles**

Innovation, Science and          Innovation, Sciences et
Economic Development Canada      Développement économique Canada
Corporations Canada              Corporations Canada

## *Canada Business Corporations Act* (CBCA)
## FORM 4
## ARTICLES OF AMENDMENT
### (Sections 27 or 177)

---

**1 - Current corporate name**

I.C.S. Petroleum (Montreal) Ltd.

---

**2 - Corporation number**

0206054 - 0

---

**3 - The articles are amended as follows** (note that more than one section can be filled out)

A: The corporation changes its name to:

B: The corporation changes the province or territory in Canada where the registered office is situated to:
To complete the change, a Form 3 - Change of Registered Office Address **must** accompany the Articles of Amendment.

C: The corporation changes the minimum and/or maximum number of directors to: (for a fixed number of directors, indicate the same number in both boxes).

Minimum number [ ]          Maximum number [ ]

D: Other changes: (for example, to the classes of shares, to the restrictions on share transfers, to restrictions on the businesses of the corporation or to any other provisions that are permitted by the CBCA to be set out in the Articles) **Please specify.**

Add and attach additional special rights and restrictions to the non-voting share classes of the Corporation by adding Section 3. (5) to the Articles of Incorporation as follows:
"Non-Voting Shares. To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of non-voting equity securities as in effect on the date of filing these Articles of Amendment with Corporations Canada; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section 3. (5), any class or series of equity securities that has only such voting rights as are mandated by the Canada Business Corporations Act shall be deemed to be non-voting for purposes of the restrictions of this Section 3. (5)"

---

**4 - Declaration**

I hereby certify that I am a director or an authorized officer of the corporation.

Signature: _____

Print name: _____          Telephone number: _____

---

**Note:** Misrepresentation constitutes an offence and, on summary conviction, a person is liable to a fine not exceeding $5000 or to imprisonment for a term not exceeding six months or to both (subsection 250(1) of the CBCA).

Canada

## **Exhibit H-3**

**Reorganized ICS Petroleum Ltd Shareholder Resolution**

# SHAREHOLDER'S RESOLUTION

## OF

## I.C.S. PETROLEUM LTD.

### (the "Company")

Pursuant to the British Columbia *Business Corporations Act*, the undersigned, being the sole shareholder of the Company, by signing this resolution, in its capacity as the holder of shares of each class entitled to vote on the matters herein, adopt the following resolution and by so doing render the same as valid and effectual as if passed at a meeting of shareholders duly called and constituted.

## WHEREAS:

1. By consent resolutions of the Company's Board of Directors dated November 2, 2018 and January 16, 2019, the Company has previously agreed, amongst other things, to act as a guarantor for certain credit agreements and to authorize certain restructuring transactions, all in connection with proceedings for the Aegean Marine Petroleum Network Inc. ("AMPNI") pursuant to Chapter 11 of the United States Bankruptcy Code (the "AMPNI Chapter 11 Proceedings") being administered under the supervision of the United States Bankruptcy Court for the Southern District of New York, case number 18-13374 (MEW).

2. The Company and other affiliates of AMPNI have been named as affiliated debtors pursuant to the AMPNI Chapter 11 Proceedings.

3. Section 1123 of Chapter 11 of the United States Bankruptcy Code stipulates certain requirements in respect of non-voting shares of a debtor company.

## RESOLVED AS A SPECIAL RESOLUTION THAT:

A. The Articles of the Company be altered by adding and attaching additional special rights and restrictions to all non-voting share classes and adding to the Articles of the Company Part 30 in the form attached hereto as Schedule "A".

Dated effective _____, 2019.


AEGEAN BUNKERING HONG
KONG LIMITED


Per:_____
      Authorized Signatory

{00107482;1}

## SCHEDULE "A"

## PART 30 – NON-VOTING SHARES

30.1    "Non-Voting Shares.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of non-voting equity securities as in effect on the date of filing this Special Resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Part 30, any class or series of equity securities that has only such voting rights as are mandated by the British Columbia *Business Corporations Act* shall be deemed to be non-voting for purposes of the restrictions of this Part 30."

**Exhibit H-4**

**Reorganized West Coast Fuel Transport Ltd Shareholder Resolution**

# SHAREHOLDER'S RESOLUTION

## OF

## WEST COAST FUEL TRANSPORT LTD.

### (the "Company")

Pursuant to the British Columbia *Business Corporations Act*, the undersigned, being the sole shareholder of the Company, by signing this resolution, in its capacity as the holder of shares of each class entitled to vote on the matters herein, adopt the following resolution and by so doing render the same as valid and effectual as if passed at a meeting of shareholders duly called and constituted.

## WHEREAS:

1.  By consent resolutions of the Company's Board of Directors dated November 2, 2018 and January 16, 2019, the Company has previously agreed, amongst other things, to act as a guarantor for certain credit agreements and to authorize certain restructuring transactions, all in connection with proceedings for the Aegean Marine Petroleum Network Inc. ("AMPNI") pursuant to Chapter 11 of the United States Bankruptcy Code (the "AMPNI Chapter 11 Proceedings") being administered under the supervision of the United States Bankruptcy Court for the Southern District of New York, case number 18-13374 (MEW).

2.  The Company and other affiliates of AMPNI have been named as affiliated debtors pursuant to the AMPNI Chapter 11 Proceedings.

3.  Section 1123 of Chapter 11 of the United States Bankruptcy Code stipulates certain requirements in respect of non-voting shares of a debtor company.

## RESOLVED AS A SPECIAL RESOLUTION THAT:

A.  The Articles of the Company be altered by adding and attaching additional special rights and restrictions to all non-voting share classes and adding to the Articles of the Company Part 28 in the form attached hereto as Schedule "A".

Dated effective _____, 2019.

AEGEAN HOLDINGS S.A.

Per:_____
       Authorized Signatory

## SCHEDULE "A"

## PART 28 – NON-VOTING SHARES

28.1     "Non-Voting Shares.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of non-voting equity securities as in effect on the date of filing this Special Resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Part 28, any class or series of equity securities that has only such voting rights as are mandated by the British Columbia *Business Corporations Act* shall be deemed to be non-voting for purposes of the restrictions of this Part 28."

## **Exhibit H-5**

**Reorganized AMPNI Holdings Co. Ltd Amended Articles of Association**

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

# AMPNI HOLDINGS CO. LIMITED

## INTERPRETATION

1.      In these regulations :-

"Cyprus"                means the Republic of Cyprus

"the Law"               means the Companies Law, Cap. 113 or any Law substituting
                        or amending same

"the seal"              means the common seal of the company

"the Secretary"         means any person appointed to perform the duties of the
                        secretary of the company.

Expressions referring to writing shall, unless the contrary intention appears, be
construed as including references to printing, lithography, photography, and other
modes of representing to reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these
regulations shall bear the same meaning as in the Law or any statutory
modification thereof in force at the date at which these regulations become binding
on the company.

## TABLE "A" EXCLUDED

2.      Subject as hereinafter provided, the provisions contained in part I of Table
        A of the First Schedule to the Companies Law Cap. 113 (hereinafter called
        "Table A") shall apply to this Company.

2(a).   It is understood that when and as long as the company has one and sole
        member the following shall apply:

        (i)     The Regulations that are included in Part I of Table A as amended
                hereinbelow shall apply (with the exception of Regulations 24, 53
                111 (a) and 112 which shall not apply at all).
        (ii)    The company is a private company and has one and sole member.

(iii)    The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)    The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing uless they relate to current affairs of the company that are concluded under the normal circumstances.

### INTRODUCTORY PROVISIONS

3.    The company is a private company and accordingly:-

(a)    the right to transfer shares is restricted in manner hereinafter prescribed;

(b)    the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)    any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)    the company shall not have power to issue share warrants to bearer.

### BUSINESS

4.    The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the board of directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

### SHARE CAPITAL AND VARIATION OF RIGHTS

5.    The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

2

1.      Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2.      Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3.      Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may be special resolution determine.

4.      If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class.  To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5.      The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6.      The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of

the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be).  Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.  The company may also on any issue of shares pay such brokerage as may be lawful.

7.      Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8.      Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine.  Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein. Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9.      If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10.     The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

## LIEN

11.     The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share.   The company shall also have a first and

4

paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.  The company's lien, if any, on a share shall extend to all dividends payable therein.

12.    The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13.    To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof.  The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14.    The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15.    The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares.  A call may be revoked or postponed as the directors may determine.

16.    A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17.    The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18.    If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum

as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19. Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20. The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

## TRANSFER OF SHARES

21. The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22. Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23. The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24. The directors may also decline to recognise any instrument of transfer unless:

    (a)    a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

    (b)    The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

    (c)    the instrument of transfer is in respect of only one class of shares.

25.     If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.     The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.     The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.     Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.     (a)     For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

        (b)     Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

        (c)     Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").  Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor  of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.  A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

        (d)     If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares.  The cost of obtaining the certificate shall be born by the company unless the vendor shall give

7

notice of cancellation as aforesaid in which case he shall bear the said cost.

(e)     Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)     If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)     The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company.  On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares.  The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h)     During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor shall be at liberty, (subject nevertheless to the provisions of regulation (8) to transfer to any person and at any price (not being

8

less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice. Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)     Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company. The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

30.     In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

31.     Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

32.     If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares

shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer was a transfer signed by that member.

33.    A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.  Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

34.    If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

35.    The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

36.    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

37.    A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

38.    A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

39.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of

the facts therein stated as against all persons claiming to be entitled to the share. The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

40.    The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

41.    The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

42.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

43.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

44.    Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

45.    The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

46.    The company may by special resolution:

11

(a)     consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)     subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)     cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

47.     The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

48.     The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year.  The annual general meeting shall be held at such time and place as the directors shall appoint.

49.     All general meetings other than annual general meetings shall be called extraordinary general meetings.

50.     The directors may, whenever they think fit, convene an extraordinary general meeting.  Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

51.     An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least.  The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive

12

such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)     in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)     in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

52.     The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

53.     All business shall be deemed special that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

54.     No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business; save as herein otherwise provided, two members present in person or by proxy shall be a quorum.

55.     If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

56.     The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

57.     If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

58.    The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.    When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.    Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

59.    At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

(a)    by the chairman; or

(b)    by at least two members present in person or by proxy; or

(c)    by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

(d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.    Unless a pool be so demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.    The demand for a poll may be withdrawn.

60.    Except as provided in regulation 68, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

61.    In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

62.    A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.    A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

14

## VOTES OF MEMBERS

63.    Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

64.    In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

65.    A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.  Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

66.    No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

67.    No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

68.    On a poll votes may be given either personally or by proxy.

69.    The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.  A proxy need not be a member of the company.

70.    The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.  In default to the above provisions the instrument of proxy shall not be treated as valid.

71.    An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

15

"...................................………………………………………….......
Limited,

(name    of    the
company)

I/We,    ...............…………......……........    of
...............………….................... being a member/members of the
abovenamed    company,    hereby    appoint
...................................…………………....  of ...………...............................,
or failing him ......................................... of ................................ as my/our
proxy to vote for me/us on my/our behalf at the  ...................................
(annual or extraordinary, as the case may be) general meeting of the
company, to be held on the .......... day of .................... ......., and at any
adjournment thereof.
Signed this .......... day of ...................,  ......."

72.    Where it is desired to afford members an opportunity of voting for or against
       a resolution the instrument appointing a proxy shall be in the following form
       or a form as near thereto as circumstances admit –

"...................………......……………………….......... Limited
(name    of
company)
I/We ........................................ of ....................................... being a
member/members of the abovenamed company, hereby appoint
................................................ of ......................................., or failing him
............................................. of ....................................... as my/our proxy to
vote for me/us on my/our behalf at the ........................ (annual or
extraordinary, as the case may be) general meeting of the company to be
held on the ............... day of ................................... .........., and at any
adjournment thereof.

Signed this ............... day of ........................................... .........."

This form is to be used in favour of /* against the resolution.  Unless
otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

73.    The instrument appointing a proxy shall be deemed to confer authority to
       demand or join in demanding a poll.

74.    A vote given in accordance with the terms of an instrument of proxy shall be
       valid notwithstanding the previous death or insanity of the principal or
       revocation of the proxy or of the authority under which the proxy was
       executed of the transfer of the share in respect of which the proxy is given,
       provided that no intimation in writing of such death, insanity, revocation or
       transfer as aforesaid shall have been received by the company at the office
       before the commencement of the meeting or adjourned meeting at which
       the proxy is used.

75.     Subject to the provisions of the Law, a resolution in writing signed by all members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the company duly convened and held.  Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

### CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

76.     Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

### DIRECTORS

77.     The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide defferently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

78.     The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

79.     The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

80.     A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

17

## BORROWING POWERS

81.  The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party.

## POWERS AND DUTIES OF DIRECTORS

82.  The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

83.  The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney of attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

84.  The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

85.  The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

86.  (1)  A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

(2)  A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such

18

contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)     A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.  No director or intending director shall be disqualified by his office from contracting with the company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.  Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.  Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)     Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

87.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

88.    The directors shall cause minutes to be made in books provided for the purpose:

(a)     of all appointments of officers made by the directors;

(b)     of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)     of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

89.    The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.  The company

may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

90.    The office of director shall be vacated if the director:

(a)    ceased to be a director by virtue of section 176 of the Law; or

(b)    becomes bankrupt or makes any arrangements or composition with his creditors generally; or

(c)    becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d)    becomes of unsound mind; or

(e)    resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

91.    The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.  Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

92.    The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director.  Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

93.    At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation (96) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

94.    The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a

meeting of the directors. It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus. All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

95. The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall be two directors or their alternates.

96. The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

97. The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

98. The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

99. A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

100. Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

101. All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

102. A resolution in writing signed or approved by letter, telegram, telex or fax by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held. When signed may consist of several documents each signed by one or more of the persons aforesaid.

21

## ALTERNATE  DIRECTORS

103.    (a)    Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

(b)    An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

(c)    One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

(d)    An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors.    Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(e)    If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(f)    A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(g)    An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

104.    The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.   A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.   His

appointment shall be automatically determined if he ceases from any cause to be a director.

105.   A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

106.   The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

107.   The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

108.   No person shall be appointed or hold office as secretary who is:

    (a)   the sole director of the company; or

    (b)   a corporation the sole director of which is the sole director of the company; or

    (c)   the sole director of a corporation which is the sole director of the company

109.   A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE SEAL

110.   The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf.  Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for the purpose.

## DIVIDENDS AND RESERVE

111.   The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

117.    The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

118.    No dividend shall be paid otherwise than out of profits.

119.    The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit. The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

120.    Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121.    The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

122.    Any general meeting declaring a divident or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient. In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

123.    Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of members or to such person and to such address as the holder or joint holders may in writing direct.  Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.  Any one of two

24

or more joint holders may give effectual receipts for any dividends, bonuses, or other moneys payable in respect of the shares held by them as joint holders.

124.   No dividend shall bear interest against the company.

## ACCOUNTS

125.   The director shall cause proper books of account to be kept with respect to:

   (a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

   (b) all sales and purchases of goods by the company; and

   (c) the assets and liabilities of the company.

   Proper books shall not be deemed to be kept if there are not kept such books of accounts as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

126.   The books of account shall be kept at the registered office of the company, or, subject to section 141 (3) of the Law, at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

127.   The directors shall from time to time determine whether and to what extend and at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors.   No member (not being a director) shall have any right of inspecting any account or book or documents of the company except as conferred by statue or authorised by the directors or by the company in general meeting.

128.   The directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129.   A copy of every balance sheet (including every documents required by law to be annexed thereto) which is to be laid before the company in  general meeting, together with a copy of the auditors report shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the company and to every person registered under regulation 37.   Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION  OF  PROFITS

130. The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution. Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

131. Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

132. Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133. A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him.  Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the

notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

134    A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

135.   A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136.   Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)     every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

(b)     every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)     the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

## WINDING UP

137.   If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

138.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court.  No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto.  But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.


## SPECIAL PROVISION

139.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this section 139, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 139.

## **Exhibit H-6**

**Reorganized AMPNI Investments Co. Ltd Amended Articles of Association**

**THE  COMPANIES  LAW,  CAP.  113**

**PRIVATE  COMPANY  LIMITED  BY  SHARES**

**ARTICLES  OF  ASSOCIATION**

**OF**

# AMPNI INVESTMENTS CO. LIMITED

### I N T E R P R E T A T I O N

1.      In these regulations :-

"Cyprus"                    means the Republic of Cyprus

"the Law"                   means the Companies Law, Cap. 113 or any Law substituting
                            or amending same

"the seal"                  means the common seal of the company

"the Secretary"             means  any  person  appointed  to  perform  the  duties  of  the
                            secretary of the company.

Expressions  referring  to  writing  shall,  unless  the  contrary  intention  appears,  be
construed  as  including  references  to  printing,  lithography,  photography,  and  other
modes of representing to reproducing words in a visible form.

Unless  the  context  otherwise  requires,  words  or  expressions  contained  in  these
regulations  shall  bear  the  same  meaning  as  in  the  Law  or  any  statutory
modification thereof in force at the date at which these regulations become binding
on the company.

### TABLE "A" EXCLUDED

2.      Subject as hereinafter provided, the provisions contained in part I of Table
        A of the First Schedule to the Companies Law Cap. 113 (hereinafter called
        "Table A") shall apply to this Company.

2(a).   It is understood that when and as long as the company has one and sole
        member the following shall apply:

        (i)     The Regulations that are included in Part I of Table A as amended
                hereinbelow shall apply (with the exception of Regulations 24, 53
                111 (a) and 112 which shall not apply at all).
        (ii)    The company is a private company and has one and sole member.

(iii)   The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)   The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing uless they relate to current affairs of the company that are concluded under the normal circumstances.

## INTRODUCTORY PROVISIONS

3.   The company is a private company and accordingly:-

(a)   the right to transfer shares is restricted in manner hereinafter prescribed;

(b)   the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)   any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)   the company shall not have power to issue share warrants to bearer.

## BUSINESS

4.   The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the board of directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5.   The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

1. Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2. Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3. Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may be special resolution determine.

4. If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class.  To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5. The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6. The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of

the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be).  Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.  The company may also on any issue of shares pay such brokerage as may be lawful.

7.    Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8.    Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine.  Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein.  Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9.    If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10.   The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

## LIEN

11.   The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share.  The company shall also have a first and

4

paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation. The company's lien, if any, on a share shall extend to all dividends payable therein.

12. The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13. To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14. The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15. The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares. A call may be revoked or postponed as the directors may determine.

16. A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum

as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19.     Any sum which by the terms of issue of a share becomes payable on allotment or at any fixedate, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20.     The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

## TRANSFER OF SHARES

21.     The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22.     Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23.     The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24.     The directors may also decline to recognise any instrument of transfer unless:

(a)     a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

(b)     The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

(c)     the instrument of transfer is in respect of only one class of shares.

25.    If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.    The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.    The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.    Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.    (a)    For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

(b)    Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c)    Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").  Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor  of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.  A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

(d)    If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares.  The cost of obtaining the certificate shall be born by the company unless the vendor shall give

7

notice of cancellation as aforesaid in which case he shall bear the said cost.

(e) Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f) If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g) The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company.  On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares.  The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h) During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor shall be at liberty, (subject nevertheless to the provisions of regulation (8) to transfer to any person and at any price (not being

8

less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice.  Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)    Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company.  The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

30.    In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

31.    Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

32.    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects.  If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share.  All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares

shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer was a transfer signed by that member.

33.    A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.  Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE  OF  SHARES

34.    If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

35.    The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

36.    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

37.    A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

38.    A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

39.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of

the facts therein stated as against all persons claiming to be entitled to the share.  The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

40.    The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

41.    The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

42.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

43.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

44.    Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

45.    The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

46.    The company may by special resolution:

11

(a)    consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)    subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

47.    The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

48.    The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year. The annual general meeting shall be held at such time and place as the directors shall appoint.

49.    All general meetings other than annual general meetings shall be called extraordinary general meetings.

50.    The directors may, whenever they think fit, convene an extraordinary general meeting.  Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

51.    An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least.  The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive

such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)     in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)     in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

52.     The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

### PROCEEDINGS AT GENERAL MEETINGS

53.     All business shall be deemed special that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

54.     No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business; save as herein otherwise provided, two members present in person or by proxy shall be a quorum.

55.     If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

56.     The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

57.     If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

58.   The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.   When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.   Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

59.   At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

(a)   by the chairman; or

(b)   by at least two members present in person or by proxy; or

(c)   by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

(d)   by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.   Unless a pool be so demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.   The demand for a poll may be withdrawn.

60.   Except as provided in regulation 68, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

61.   In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

62.   A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.   A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

63.     Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

64.     In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

65.     A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.  Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

66.     No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

67.     No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

68.     On a poll votes may be given either personally or by proxy.

69.     The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.  A proxy need not be a member of the company.

70.     The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.  In default to the above provisions the instrument of proxy shall not be treated as valid.

71.     An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

"........................………………………………………………….......
Limited,

(name    of    the
company)

 I/We,    ...............………......……........        of
...............………….................... being  a  member/members  of  the
abovenamed        company,        hereby        appoint
..............................………………….... of ...……….............................,
or failing him ......................................... of .............................. as my/our
proxy to vote for me/us on my/our behalf at the  ..................................
(annual or extraordinary, as the case may be) general meeting of the
company, to be held on the .......... day of ..................... ......., and at any
adjournment thereof.
Signed this .......... day of ..................., ......."

72.    Where it is desired to afford members an opportunity of voting for or against
a resolution the instrument appointing a proxy shall be in the following form
or a form as near thereto as circumstances admit –

"...................………......………………………..........        Limited
(name        of
company)

I/We ........................................    of    ....................................... being  a
member/members  of  the  abovenamed  company,  hereby  appoint
................................................. of ......................................., or failing him
............................................. of ....................................... as my/our proxy to
vote for me/us on my/our behalf at the ........................ (annual or
extraordinary, as the case may be) general meeting of the company to be
held on the ............... day of .................................. .........., and at any
adjournment thereof.

Signed this ............... day of ............................................ .........."

This form is to be used in favour of /* against the resolution.   Unless
otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

73.    The instrument appointing a proxy shall be deemed to confer authority to
demand or join in demanding a poll.

74.    A vote given in accordance with the terms of an instrument of proxy shall be
valid notwithstanding the previous death or insanity of the principal or
revocation of the proxy or of the authority under which the proxy was
executed of the transfer of the share in respect of which the proxy is given,
provided that no intimation in writing of such death, insanity, revocation or
transfer as aforesaid shall have been received by the company at the office
before the commencement of the meeting or adjourned meeting at which
the proxy is used.

16

75.  Subject to the provisions of the Law, a resolution in writing signed by all members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the company duly convened and held.  Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

76.  Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

## DIRECTORS

77.  The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide defferently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

78.  The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

79.  The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

80.  A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

17

## BORROWING POWERS

81. The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party.

## POWERS AND DUTIES OF DIRECTORS

82. The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

83. The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

84. The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

85. The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

86. (1) A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

    (2) A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such

18

contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)   A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.  No director or intending director shall be disqualified by his office from contracting with the company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.  Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.  Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)   Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

87.   All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

88.   The directors shall cause minutes to be made in books provided for the purpose:

(a)   of all appointments of officers made by the directors;

(b)   of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)   of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

89.   The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.  The company

may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

90.    The office of director shall be vacated if the director:

    (a)    ceased to be a director by virtue of section 176 of the Law; or
    (b)    becomes bankrupt or makes any arrangements or composition with his creditors generally; or

    (c)    becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

    (d)    becomes of unsound mind; or

    (e)    resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

91.    The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.  Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

92.    The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director.  Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

93.    At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation (96) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

94.    The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a

meeting of the directors.  It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus.  All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

95.   The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall be two directors or their alternates.

96.   The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

97.   The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

98.   The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

99.   A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

100.  Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

101.  All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

102.  A resolution in writing signed or approved by letter, telegram, telex or fax by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.  When signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE  DIRECTORS

103.    (a)    Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

(b)    An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

(c)    One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

(d)    An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors.   Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(e)    If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(f)    A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(g)    An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

104.    The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.   A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.  His appointment shall be automatically determined if he ceases from any cause to be a director.

105.    A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

106.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

107.    The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

108.    No person shall be appointed or hold office as secretary who is:

   (a)    the sole director of the company; or

   (b)    a corporation the sole director of which is the sole director of the company; or

   (c)    the sole director of a corporation which is the sole director of the company

109.    A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE  SEAL

110.    The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf.  Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for the purpose.

## DIVIDENDS  AND  RESERVE

111.    The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

117.    The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

118. No dividend shall be paid otherwise than out of profits.

119. The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit. The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

120. Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121. The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

122. Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient. In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

123. Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of members or to such person and to such address as the holder or joint holders may in writing direct.  Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other moneys payable in respect of the shares held by them as joint holders.

124.    No dividend shall bear interest against the company.

## ACCOUNTS

125.    The director shall cause proper books of account to be kept with respect to:

(a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the company; and

(c) the assets and liabilities of the company.

Proper books shall not be deemed to be kept if there are not kept such books of accounts as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

126.    The books of account shall be kept at the registered office of the company, or, subject to section 141 (3) of the Law, at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

127.    The directors shall from time to time determine whether and to what extend and at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors.  No member (not being a director) shall have any right of inspecting any account or book or documents of the company except as conferred by statue or authorised by the directors or by the company in general meeting.

128.    The directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129.    A copy of every balance sheet (including every documents required by law to be annexed thereto) which is to be laid before the company in  general meeting, together with a copy of the auditors report shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the company and to every person registered under regulation 37.  Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION  OF  PROFITS

130.    The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts

or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures if the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution. Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

131.    Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

132.    Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133.    A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him.  Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

134   A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

135.   A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136.   Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)   every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

(b)   every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)   the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

## WINDING UP

137.   If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

27

## INDEMNITY

138.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court.  No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto.  But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.

## SPECIAL PROVISION

139.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this section 139, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 139.

## Exhibit H-7

**Reorganized Andros Marine Ltd Amended Articles of Association**

**THE COMPANIES LAW, CAP. 113**

**PRIVATE COMPANY LIMITED BY SHARES**

**ARTICLES OF ASSOCIATION**

**OF**

# ANDROS MARINE LIMITED

## I N T E R P R E T A T I O N

1.      In these regulations :-

| | |
|---|---|
| "Cyprus" | means the Republic of Cyprus |
| "the Law" | means the Companies Law, Cap. 113 or any Law substituting or amending same |
| "the seal" | means the common seal of the company |
| "the Secretary" | means any person appointed to perform the duties of the secretary of the company. |

Expressions referring to "writing" shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, and other modes of representing to reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these regulations shall bear the same meaning as in the Law or any statutory modification thereof in force at the date at which these regulations become binding on the company.

### TABLE "A" EXCLUDED

2.      Subject as hereinafter provided, the provisions contained in part I of Table A of the First Schedule to the Companies Law Cap. 113 (hereinafter called "Table A") shall apply to this Company.

2(a).   It is understood that when and as long as the company has one and sole member the following shall apply:

(i)      The Regulations that are included in Part I of Table A as amended hereinbelow shall apply (with the exception of Regulations 24, 53 111 (a) and 112 which shall not apply at all).

2

(ii)    The company is a private company and has one and sole member.

(iii)   The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)    The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing unless they relate to current affairs of the company that are concluded under the normal circumstances.

### INTRODUCTORY  PROVISIONS

3.    The company is a private company and accordingly:-

(a)    the right to transfer shares is restricted in manner hereinafter prescribed;

(b)    the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)    any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)    the company shall not have power to issue share warrants to bearer.

(e)    at any time when the Company has only one Member the following provisions shall apply:

(i)    The sole Member exercises all the powers of the General Meeting provided, always, that any decisions taken by the said Member in General Meeting are minuted or taken in writing and

(ii)   Agreements concluded between the sole Member and the Company, are minuted or reduced in writing, unless they relate to day-to-day transactions of the Company concluded in the ordinary course of business.

### BUSINESS

4.    The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the board of directors shall

3

approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5.    The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

1.    Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2.    Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3.    Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may by special resolution determine.

4.    If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the

4

issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5.      The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6.      The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be).  Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.  The company may also on any issue of shares pay such brokerage as may be lawful.

7.      Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8.      Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine.  Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein.  Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9.      If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10.     The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding

company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

## LIEN

11.    The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share.  The company shall also have a first and paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.  The company's lien, if any, on a share shall extend to all dividends payable therein.

12.    The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13.    To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof.  The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14.    The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15.    The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares.  A call may be revoked or postponed as the directors may determine.

16.    A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17.     The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18.     If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19.     Any sum which by the terms of issue of a share becomes payable on allotment or at any fixedate, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20.     The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

**TRANSFER OF SHARES**

21.     The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22.     Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23.     The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24.     The directors may also decline to recognise any instrument of transfer unless:

        (a)     a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

7

(b)     The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

(c)     the instrument of transfer is in respect of only one class of shares.

25.    If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.    The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.    The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.    Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.    (a)     For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

(b)     Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c)     Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").   Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor  of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.  A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

(d)     If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in

8

writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares. The cost of obtaining the certificate shall be born by the company unless the vendor shall give notice of cancellation as aforesaid in which case he shall bear the said cost.

(e)    Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)    If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)    The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company. On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares. The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h)    During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor

9

shall be at liberty, (subject nevertheless to the provisions of regulation 28), to transfer to any person and at any price (not being less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice.  Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)    Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company.  The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

### TRANSMISSION OF SHARES

35.    In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

36.    Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

37.    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects.  If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share.  All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the

member had not occurred and the notice or transfer was a transfer signed by that member.

38. A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company. Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

39. If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

40. The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

41. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

42. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

43. A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

44. A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the

share.  The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

45.    The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

46.    The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

47.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

48.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

49.    Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

50.    The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

51.    The company may by special resolution:

(a)    consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

12

(b)    subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

52.    The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

53.    The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year.  The annual general meeting shall be held at such time and place as the directors shall appoint.

54.    All general meetings other than annual general meetings shall be called extraordinary general meetings.

55.    The directors may, whenever they think fit, convene an extraordinary general meeting.  Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

56.    An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least. The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)     in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)     in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

57.     The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

58.     All business that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors, shall be deemed special.

59.     No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business. Two members present in person or by proxy shall be a quorum, save as herein otherwise provided.

60.     If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

61.     The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

62.     If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

63.     The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a meeting is adjourned for

thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

64.    At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

(a)    by the chairman; or

(b)    by at least two members present in person or by proxy; or

(c)    by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

(d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.    Unless a pool be so demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.  The demand for a poll may be withdrawn.

65.    Except as provided in regulation 69, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

66.    In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

67.    A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

68.    Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

69.     In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

70.     A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.   Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

71.     No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

72.     No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.   Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

73.     On a poll votes may be given either personally or by proxy.

74.     The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.   A proxy need not be a member of the company.

75.     The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.   In default to the above provisions the instrument of proxy shall not be treated as valid.

76.     An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

"…………………….………………………………………………………………..……Limited, (name of the company) I/We, …………………...……………..……… of …………….…...………………………. being a member/members of the abovenamed company, hereby appoint …………………………..…………….…. of …..…….………………………., or failing him ……………………………… of …………………………. as my/our proxy to vote for me/us on my/our behalf at the ……………………………. (annual or extraordinary, as the case may be) general meeting of the

company, to be held on the .......... day of .................... ......., and at any adjournment thereof.
Signed this .......... day of ...................., ......."

77.   Where it is desired to afford members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit –

"................................................................            Limited
(name    of    company)    I/We    ....................................    of
.................................... being a member/members of the abovenamed company, hereby appoint ................................................. of ......................................, or failing him ......................................... of ...................................... as my/our proxy to vote for me/us on my/our behalf at the ....................... (annual or extraordinary, as the case may be) general meeting of the company to be held on the .............. day of .........................................., and at any adjournment thereof.

Signed this .............. day of ......................................................"

This form is to be used in favour of /* against the resolution.  Unless otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

78.   The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

79.   A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed of the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the company at the office before the commencement of the meeting or adjourned meeting at which the proxy is used.

80.   Subject to the provisions of the Law, a resolution in writing signed by all members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the company duly convened and held.  Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

81.    Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

## DIRECTORS

82.    The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide differently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

83.    The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

84.    The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

85.    A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

## BORROWING POWERS

86.    The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party, or regardless of such repayment.

## POWERS AND DUTIES OF DIRECTORS

87. The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

88. The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

89. The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

90. The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

91. (1) A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

    (2) A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

    (3) A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.  No director or intending director shall be disqualified by his office from contracting with the

company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.  Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.  Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)    Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

92.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

93.    The directors shall cause minutes to be made in books provided for the purpose:

(a)    of all appointments of officers made by the directors;

(b)    of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)    of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

94.    The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.  The company may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

95.    The office of director shall be vacated if the director:

(a)    ceased to be a director by virtue of section 176 of the Law; or

(b)    becomes bankrupt or makes any arrangements or composition with his creditors generally; or

(c)    becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d)    becomes of unsound mind; or

(e)    resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

96.    The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.  Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

97.    The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director.  Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

98.    At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation 97) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

99.    The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a meeting of the directors.  It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus.  All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

100.    The Board of Directors may determine the quorum necessary for the transaction of its business and unless so determine, then two members of the Board attending the meeting in person or by alternate, shall consist quorum. In the case there is only one director, the said director will, on his own, be considered as quorum

21

101.  The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

102.  The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

103.  The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

104.  A committee may elect a chairman of its meetings. If no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

105.  Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

106.  All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall be valid, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified. All such acts shall be as valid as if every such person had been duly appointed and was qualified to be a director.

107.  A resolution in writing signed or approved by letter, telex, facsimile or telegram by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.  When signed such resolution may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE DIRECTORS

108.  (a)   Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

      (b)   An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the

terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

(c)    An instrument appointing an alternate director shall be in the following form or a form as near thereto as circumstances admit

"................................................................................ Limited (name of company) I/We ...................................... of ...................................... being a Director of the abovenamed company, hereby appoint ................................................. of ......................................, as alternate director to attend and to vote for me/us and on my/our behalf at any Directors meeting of the company to which I am not able to attend and perform any of my powers and duties as Director of the Company.

Signed this ............... day of ........................."

Signature ...........................
Director

(d)    One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

(e)    An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors. Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(f)    If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(g)    A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(h)    An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

109.   The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.   A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.   His appointment shall be automatically determined if he ceases from any cause to be a director.

110.   A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

111.   The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

112.   The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

113.   No person shall be appointed or hold office as secretary who is:

(a)   the sole director of the company; or

(b)   a corporation the sole director of which is the sole director of the company; or

(c)   the sole director of a corporation which is the sole director of the company

114.   A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE  SEAL

115.   The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf.  Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for that purpose.

24

## DIVIDENDS AND RESERVE

116.  The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

117.  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

118.  No dividend shall be paid otherwise than out of profits.

119.  The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit.  The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

120.  Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121.  The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

122.  Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient.  In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

123.    Any dividend, interest or other moneys payable in cash in respect of shares
may be paid by cheque or warrant sent through the post directed to the
registered address of the holder or, in the case of joint holders, to the
registered address of that one of the joint holders who is first named in the
register of members or to such person and to such address as the holder or
joint holders may in writing direct.  Every such cheque or warrant shall be
made payable to the order of the person to whom it is sent.  Any one of two or
more joint holders may give effectual receipts for any dividends, bonuses, or
other moneys payable in respect of the shares held by them as joint holders.

124.    No dividend shall bear interest against the company.

## ACCOUNTS

125.    The director shall cause proper books of account to be kept with respect to:

(a) all sums of money received and expended by the company and the matters
in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the company; and

(c) the assets and liabilities of the company.

Proper books shall not be deemed to be kept if there are not kept such books
of accounts as are necessary to give a true and fair view of the state of the
company's affairs and to explain its transactions.

126.    The books of account shall be kept at the registered office of the company, or,
subject to section 141 (3) of the Law, at such other place or places as the
directors think fit, and shall always be open to the inspection of the directors.

127.    The directors shall from time to time determine whether and to what extend
and at what times and places and under what conditions or regulations the
accounts and books of the company or any of them shall be open to the
inspection of members not being directors.  No member (not being a director)
shall have any right of inspecting any account or book or documents of the
company except as conferred by statue or authorised by the directors or by
the company in general meeting.

128.    The directors shall from time to time, in accordance with sections 142 and 151
of the Law, cause to be prepared and to be laid before the company in general
meeting such profit and loss accounts, balance sheets, group accounts (if any)
and reports as are referred to in those sections.

129.    A copy of every balance sheet (including every documents required by law to
be annexed thereto) which is to be laid before the company in general
meeting, together with a copy of the auditors report shall not less than twenty-
one days before the date of the meeting be sent to every member of, and
every holder of debentures of the company and to every person registered
under regulation 37.

Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION OF PROFITS

130. The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures if the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution.  Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

131. Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

132. Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 155 (both inclusive) of the Law.

## NOTICES

133. A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no

registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him. Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

134.    A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

135.    A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136.    Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)    every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

(b)    every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)    the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

**WINDING UP**

137.    If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so

28

that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

138.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court.  No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto.  But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.

## SPECIAL PROVISION

139.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this section 139, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 139.

## **Exhibit H-8**

**Reorganized Mykonos I Maritime Ltd Amended Articles of Association**

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

# MYKONOS I MARITIME LIMITED

## INTERPRETATION

1.    In these regulations :-

"Cyprus"                means the Republic of Cyprus

"the Law"               means the Companies Law, Cap. 113 or any Law substituting or amending same

"the seal"              means the common seal of the company

"the Secretary"         means any person appointed to perform the duties of the secretary of the company.
Expressions referring to writing shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, and other modes of representing to reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these regulations shall bear the same meaning as in the Law or any statutory modification thereof in force at the date at which these regulations become binding on the company.

### TABLE "A" EXCLUDED

2.    Subject as hereinafter provided, the provisions contained in part I of Table A of the First Schedule to the Companies Law Cap. 113 (hereinafter called "Table A") shall apply to this Company.

2(a).    It is understood that when and as long as the company has one and sole member the following shall apply:

(i)    The Regulations that are included in Part I of Table A as amended hereinbelow shall apply (with the exception of Regulations 24, 53 111 (a) and 112 which shall not apply at all).

(ii)      The company is a private company and has one and sole member.

(iii)     The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)      The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing uless they relate to current affairs of the company that are concluded under the normal circumstances.

## INTRODUCTORY  PROVISIONS

3.     The company is a private company and accordingly:-

(a)      the right to transfer shares is restricted in manner hereinafter prescribed;

(b)      the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)      any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)      the company shall not have power to issue share warrants to bearer.

## BUSINESS

4.     The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the board of directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5.     The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

2

1.   Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2.   Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3.   Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may be special resolution determine.

4.   If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class.  To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5.   The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6.   The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of

the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be). Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other. The company may also on any issue of shares pay such brokerage as may be lawful.

7. Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8. Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine. Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein. Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9. If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10. The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

### LIEN

11. The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share. The company shall also have a first and

paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation. The company's lien, if any, on a share shall extend to all dividends payable therein.

12. The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13. To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14. The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15. The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares. A call may be revoked or postponed as the directors may determine.

16. A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum

as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19.  Any sum which by the terms of issue of a share becomes payable on allotment or at any fixedate, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20.  The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

## TRANSFER OF SHARES

21.  The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22.  Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23.  The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24.  The directors may also decline to recognise any instrument of transfer unless:

(a)  a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

(b)  The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

(c)  the instrument of transfer is in respect of only one class of shares.

25.    If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.    The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.    The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.    Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.    (a)    For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

(b)    Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c)    Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").  Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor  of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.  A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

(d)    If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares.  The cost of obtaining the certificate shall be born by the company unless the vendor shall give

7

notice of cancellation as aforesaid in which case he shall bear the said cost.

(e)    Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)    If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)    The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company.  On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares.  The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h)    During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor shall be at liberty, (subject nevertheless to the provisions of regulation (8) to transfer to any person and at any price (not being

less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice. Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)     Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company. The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

### TRANSMISSION OF SHARES

30.    In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

31.    Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

32.    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares

shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer was a transfer signed by that member.

33.    A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.  Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

34.    If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

35.    The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

36.    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

37.    A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

38.    A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

39.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of

the facts therein stated as against all persons claiming to be entitled to the share. The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

40.    The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

41.    The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

42.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

43.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

44.    Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

45.    The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

46.    The company may by special resolution:

(a)   consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)   subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)   cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

47.   The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

48.   The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year.  The annual general meeting shall be held at such time and place as the directors shall appoint.

49.   All general meetings other than annual general meetings shall be called extraordinary general meetings.

50.   The directors may, whenever they think fit, convene an extraordinary general meeting.  Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

51.   An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least.  The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive

such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)     in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)     in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

52.     The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

53.     All business shall be deemed special that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

54.     No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business; save as herein otherwise provided, two members present in person or by proxy shall be a quorum.

55.     If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

56.     The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

57.     If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

58.    The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.   When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.   Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

59.    At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

(a)    by the chairman; or

(b)    by at least two members present in person or by proxy; or

(c)    by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

(d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.   Unless a pool be so demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.   The demand for a poll may be withdrawn.

60.    Except as provided in regulation 68, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

61.    In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

62.    A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.   A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

63.   Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

64.   In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

65.   A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.  Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

66.   No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

67.   No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

68.   On a poll votes may be given either personally or by proxy.

69.   The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.  A proxy need not be a member of the company.

70.   The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.  In default to the above provisions the instrument of proxy shall not be treated as valid.

71.   An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

"...................................…………………………………………….....Limited,
(name of the company) I/We, ...............…………........………....... of
.................……………................... being a member/members of the
abovenamed company, hereby appoint
.................................………………………... of ...………................................,
or failing him ......................................... of ............................... as my/our
proxy to vote for me/us on my/our behalf at the ....................................
(annual or extraordinary, as the case may be) general meeting of the
company, to be held on the .......... day of .................... ......., and at any
adjournment thereof.
Signed this .......... day of ...................., ......."

72.    Where it is desired to afford members an opportunity of voting for or against
a resolution the instrument appointing a proxy shall be in the following form
or a form as near thereto as circumstances admit –

"........................……….......…………………………........... Limited
(name of company) I/We ........................................ of
...................................... being a member/members of the abovenamed
company, hereby appoint .................................................. of
........................................, or failing him ........................................... of
........................................ as my/our proxy to vote for me/us on my/our
behalf at the ........................ (annual or extraordinary, as the case may be)
general meeting of the company to be held on the ............... day of
............................................, and at any adjournment thereof.

Signed this ............... day of ......................................................"

This form is to be used in favour of /* against the resolution.  Unless
otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

73.    The instrument appointing a proxy shall be deemed to confer authority to
demand or join in demanding a poll.

74.    A vote given in accordance with the terms of an instrument of proxy shall be
valid notwithstanding the previous death or insanity of the principal or
revocation of the proxy or of the authority under which the proxy was
executed of the transfer of the share in respect of which the proxy is given,
provided that no intimation in writing of such death, insanity, revocation or
transfer as aforesaid shall have been received by the company at the office
before the commencement of the meeting or adjourned meeting at which
the proxy is used.

75.    Subject to the provisions of the Law, a resolution in writing signed by all
members for the time being entitled to receive notice of and to attend and
vote at general meetings (or being corporations by their duly authorised
representatives) shall be as valid and effective as if the same had been
passed at a general meeting of the company duly convened and held.  Any

such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

76.     Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

## DIRECTORS

77.     The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide defferently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

78.     The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

79.     The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

80.     A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

## BORROWING POWERS

81.    The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party.

## POWERS AND DUTIES OF DIRECTORS

82.    The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

83.    The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

84.    The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

85.    The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

86.    (1)    A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

         (2)    A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such

18

contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)    A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.  No director or intending director shall be disqualified by his office from contracting with the company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.    Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.  Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)    Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

87.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

88.    The directors shall cause minutes to be made in books provided for the purpose:

(a)    of all appointments of officers made by the directors;

(b)    of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)    of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

89.    The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.  The company

may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

90.  The office of director shall be vacated if the director:

(a)  ceased to be a director by virtue of section 176 of the Law; or

(b)  becomes bankrupt or makes any arrangements or composition with his creditors generally; or

(c)  becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d)  becomes of unsound mind; or

(e)  resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

91.  The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.  Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

92.  The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director.  Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

93.  At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation (96) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

94.  The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a

20

meeting of the directors. It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus. All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

95.     The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall be two directors or their alternates.

96.     The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

97.     The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

98.     The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

99.     A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

100.    Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

101.    All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

102.    A resolution in writing signed or approved by letter, telegram, telex or fax by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held. When signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE DIRECTORS

103.    (a)    Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

(b)    An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

(c)    One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

(d)    An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors.  Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(e)    If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(f)    A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(g)    An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

104.    The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.  A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.  His appointment shall be automatically determined if he ceases from any cause to be a director.

105. A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

106. The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

107. The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

108. No person shall be appointed or hold office as secretary who is:

    (a)    the sole director of the company; or

    (b)    a corporation the sole director of which is the sole director of the company; or

    (c)    the sole director of a corporation which is the sole director of the company

109. A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE SEAL

110. The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf. Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for the purpose.

## DIVIDENDS AND RESERVE

111. The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

117. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

118.   No dividend shall be paid otherwise than out of profits.

119.   The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit. The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

120.   Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121.   The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

122.   Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient. In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

123.   Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of members or to such person and to such address as the holder or joint holders may in writing direct.  Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other moneys payable in respect of the shares held by them as joint holders.

124.    No dividend shall bear interest against the company.

## ACCOUNTS

125.    The director shall cause proper books of account to be kept with respect to:

    (a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

    (b) all sales and purchases of goods by the company; and

    (c) the assets and liabilities of the company.

Proper books shall not be deemed to be kept if there are not kept such books of accounts as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

126.    The books of account shall be kept at the registered office of the company, or, subject to section 141 (3) of the Law, at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

127.    The directors shall from time to time determine whether and to what extend and at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors.  No member (not being a director) shall have any right of inspecting any account or book or documents of the company except as conferred by statue or authorised by the directors or by the company in general meeting.

128.    The directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129.    A copy of every balance sheet (including every documents required by law to be annexed thereto) which is to be laid before the company in  general meeting, together with a copy of the auditors report shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the company and to every person registered under regulation 37.   Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION  OF  PROFITS

130.    The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts

or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures if the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution. Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

131.  Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

132.  Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133.  A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him.  Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

134    A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

135.    A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136.    Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)    every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

(b)    every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)    the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

## WINDING UP

137.    If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

27

## INDEMNITY

138.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court.  No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto.  But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.

## SPECIAL PROVISION

139.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this section 139, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 139.

## Exhibit H-9

**Reorganized Santorini I Maritime Ltd Amended Articles of Association**

**THE COMPANIES LAW, CAP. 113**

**PRIVATE COMPANY LIMITED BY SHARES**

**ARTICLES OF ASSOCIATION**

**OF**

# SANTORINI  I  MARITIME LIMITED

### I N T E R P R E T A T I O N

1.      In these regulations :-

"Cyprus"                    means the Republic of Cyprus

"the Law"                   means the Companies Law, Cap. 113 or any Law substituting or amending same

"the seal"                  means the common seal of the company

"the Secretary"             means any person appointed to perform the duties of the secretary of the company.
Expressions referring to writing shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, and other modes of representing to reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these regulations shall bear the same meaning as in the Law or any statutory modification thereof in force at the date at which these regulations become binding on the company.

### TABLE "A" EXCLUDED

2.      Subject as hereinafter provided, the provisions contained in part I of Table A of the First Schedule to the Companies Law Cap. 113 (hereinafter called "Table A") shall apply to this Company.

2(a).   It is understood that when and as long as the company has one and sole member the following shall apply:

(i)      The Regulations that are included in Part I of Table A as amended hereinbelow shall apply (with the exception of Regulations 24, 53 111 (a) and 112 which shall not apply at all).

(ii)     The company is a private company and has one and sole member.

(iii)    The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)    The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing uless they relate to current affairs of the company that are concluded under the normal circumstances.

### INTRODUCTORY PROVISIONS

3.    The company is a private company and accordingly:-

(a)     the right to transfer shares is restricted in manner hereinafter prescribed;

(b)     the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)     any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)     the company shall not have power to issue share warrants to bearer.

### BUSINESS

4.    The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the board of directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

### SHARE CAPITAL AND VARIATION OF RIGHTS

5.    The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

2

1.    Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2.    Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3.    Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may be special resolution determine.

4.    If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class.  To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5.    The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6.    The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of

the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be). Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other. The company may also on any issue of shares pay such brokerage as may be lawful.

7. Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8. Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine. Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein. Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9. If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10. The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

## LIEN

11. The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share. The company shall also have a first and

4

paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.  The company's lien, if any, on a share shall extend to all dividends payable therein.

12.   The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13.   To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof.  The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14.   The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15.   The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares.  A call may be revoked or postponed as the directors may determine.

16.   A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17.   The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18.   If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum

as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19.     Any sum which by the terms of issue of a share becomes payable on allotment or at any fixedate, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20.     The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

## TRANSFER OF SHARES

21.     The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22.     Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23.     The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24.     The directors may also decline to recognise any instrument of transfer unless:

(a)     a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

(b)     The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

(c)     the instrument of transfer is in respect of only one class of shares.

25.     If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.     The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.     The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.     Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.     (a)    For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

        (b)    Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

        (c)    Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").  Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor  of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.  A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

        (d)    If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares.  The cost of obtaining the certificate shall be born by the company unless the vendor shall give

7

notice of cancellation as aforesaid in which case he shall bear the said cost.

(e)     Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)     If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)     The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company.  On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares.  The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h)     During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor shall be at liberty, (subject nevertheless to the provisions of regulation (8) to transfer to any person and at any price (not being

less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice.  Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)    Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company.  The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

30.    In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

31.    Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

32.    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects.  If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share.  All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares

shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer was a transfer signed by that member.

33.   A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.  Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

34.   If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

35.   The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

36.   If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

37.   A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

38.   A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

39.   A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of

the facts therein stated as against all persons claiming to be entitled to the share.  The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

40.     The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

41.     The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

42.     The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

43.     The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

44.     Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

45.     The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

46.     The company may by special resolution:

(a)    consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)    subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

47.    The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

48.    The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year. The annual general meeting shall be held at such time and place as the directors shall appoint.

49.    All general meetings other than annual general meetings shall be called extraordinary general meetings.

50.    The directors may, whenever they think fit, convene an extraordinary general meeting.  Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

51.    An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least.  The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive

12

such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)    in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)    in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

52.    The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

53.    All business shall be deemed special that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

54.    No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business; save as herein otherwise provided, two members present in person or by proxy shall be a quorum.

55.    If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

56.    The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

57.    If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

58.　　The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.　When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.　Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

59.　　At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

(a)　　by the chairman; or

(b)　　by at least two members present in person or by proxy; or

(c)　　by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

(d)　　by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.　Unless a pool be so demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.　The demand for a poll may be withdrawn.

60.　　Except as provided in regulation 68, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

61.　　In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

62.　　A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.　A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

63.    Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

64.    In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

65.    A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.  Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

66.    No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

67.    No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

68.    On a poll votes may be given either personally or by proxy.

69.    The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.  A proxy need not be a member of the company.

70.    The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.  In default to the above provisions the instrument of proxy shall not be treated as valid.

71.    An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

".......................………………………………………………….....Limited, (name of the company) I/We, ...............………........……........ of ...............…………................... being a member/members of the abovenamed company, hereby appoint ...............................……………………... of ...………............................, or failing him ......................................... of ................................ as my/our proxy to vote for me/us on my/our behalf at the .................................... (annual or extraordinary, as the case may be) general meeting of the company, to be held on the .......... day of .................... ......., and at any adjournment thereof.
Signed this .......... day of ..................., ......."

72.  Where it is desired to afford members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit –

".....................………......…………………….......... Limited (name of company) I/We ........................................ of ...................................... being a member/members of the abovenamed company, hereby appoint ................................................. of ........................................., or failing him ........................................... of ......................................... as my/our proxy to vote for me/us on my/our behalf at the ........................ (annual or extraordinary, as the case may be) general meeting of the company to be held on the ............... day of ..........................................., and at any adjournment thereof.

Signed this ............... day of ....................................................."

This form is to be used in favour of /* against the resolution. Unless otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

73.  The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

74.  A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed of the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the company at the office before the commencement of the meeting or adjourned meeting at which the proxy is used.

75.  Subject to the provisions of the Law, a resolution in writing signed by all members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the company duly convened and held.  Any

such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

76.    Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

## DIRECTORS

77.    The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide defferently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

78.    The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

79.    The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

80.    A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

## BORROWING POWERS

81.  The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party.

## POWERS AND DUTIES OF DIRECTORS

82.  The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

83.  The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

84.  The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

85.  The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

86.  (1)  A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

     (2)  A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such

18

contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)   A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.  No director or intending director shall be disqualified by his office from contracting with the company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.  Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.  Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)   Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

87.   All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

88.   The directors shall cause minutes to be made in books provided for the purpose:

(a)   of all appointments of officers made by the directors;

(b)   of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)   of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

89.   The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.  The company

may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

90.   The office of director shall be vacated if the director:

(a)   ceased to be a director by virtue of section 176 of the Law; or
(b)   becomes bankrupt or makes any arrangements or composition with his creditors generally; or

(c)   becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d)   becomes of unsound mind; or

(e)   resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

91.   The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.  Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

92.   The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director.  Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

93.   At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation (96) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

94.   The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a

20

meeting of the directors.  It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus.  All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

95.    The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall be two directors or their alternates.

96.    The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

97.    The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

98.    The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

99.    A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

100.   Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

101.   All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

102.   A resolution in writing signed or approved by letter, telegram, telex or fax by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.  When signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE DIRECTORS

103.   (a)   Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

(b)   An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

(c)   One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

(d)   An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors.   Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(e)   If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(f)   A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(g)   An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

104.   The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.   A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.   His appointment shall be automatically determined if he ceases from any cause to be a director.

22

105.   A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

106.   The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

107.   The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

108.   No person shall be appointed or hold office as secretary who is:

(a)    the sole director of the company; or

(b)    a corporation the sole director of which is the sole director of the company; or

(c)    the sole director of a corporation which is the sole director of the company

109.   A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE  SEAL

110.   The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf.  Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for the purpose.

## DIVIDENDS  AND  RESERVE

111.   The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

117.   The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

118. No dividend shall be paid otherwise than out of profits.

119. The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit. The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

120. Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121. The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

122. Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient. In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

123. Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of members or to such person and to such address as the holder or joint holders may in writing direct.  Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other moneys payable in respect of the shares held by them as joint holders.

124.   No dividend shall bear interest against the company.

## ACCOUNTS

125.   The director shall cause proper books of account to be kept with respect to:

(a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the company; and

(c) the assets and liabilities of the company.

Proper books shall not be deemed to be kept if there are not kept such books of accounts as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

126.   The books of account shall be kept at the registered office of the company, or, subject to section 141 (3) of the Law, at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

127.   The directors shall from time to time determine whether and to what extend and at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors.  No member (not being a director) shall have any right of inspecting any account or book or documents of the company except as conferred by statue or authorised by the directors or by the company in general meeting.

128.   The directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129.   A copy of every balance sheet (including every documents required by law to be annexed thereto) which is to be laid before the company in  general meeting, together with a copy of the auditors report shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the company and to every person registered under regulation 37.  Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION  OF  PROFITS

130.   The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts

or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures if the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution. Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

131.     Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

132.     Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133.     A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him.  Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

134    A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

135.    A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136.    Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)    every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

(b)    every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)    the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

## WINDING UP

137.    If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

27

## INDEMNITY

138.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court. No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto. But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.

## SPECIAL PROVISION

139.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this section 139, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 139.

**Exhibit H-10**

**Reorganized Zakynthos Marine Ltd Amended Articles of Association**

**THE COMPANIES LAW, CAP. 113**

**PRIVATE COMPANY LIMITED BY SHARES**

**ARTICLES OF ASSOCIATION**

**OF**

# ZAKYNTHOS MARINE LIMITED

## I N T E R P R E T A T I O N

1.      In these regulations :-

"Cyprus"                    means the Republic of Cyprus

"the Law"                   means the Companies Law, Cap. 113 or any Law substituting or
                            amending same

"the seal"                  means the common seal of the company

"the Secretary"             means any person appointed to perform the duties of the
                            secretary of the company.

Expressions referring to writing shall, unless the contrary intention appears, be
construed as including references to printing, lithography, photography, and other
modes of representing to reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these
regulations shall bear the same meaning as in the Law or any statutory modification
thereof in force at the date at which these regulations become binding on the
company.

### TABLE "A" EXCLUDED

2.      Subject as hereinafter provided, the provisions contained in part I of Table A of
        the First Schedule to the Companies Law Cap. 113 (hereinafter called "Table
        A") shall apply to this Company.

2(a).   It is understood that when and as long as the company has one and sole
        member the following shall apply:

        (i)     The Regulations that are included in Part I of Table A as amended
                hereinbelow shall apply (with the exception of Regulations 24, 53 111
                (a) and 112 which shall not apply at all).

(ii)     The company is a private company and has one and sole member.

(iii)    The sole member of the company carries out all the powers of the general meeting under the present Law, provided always that the decisions that will be taken by this member in general meetings will be recorded in minutes or will be made out in writing.

(iv)    The contracts concluded between the sole member and the company are recorded in minutes or are made out in writing unless they relate to current affairs of the company that are concluded under the normal circumstances.

## INTRODUCTORY PROVISIONS

3.    The company is a private company and accordingly:-

(a)    the right to transfer shares is restricted in manner hereinafter prescribed;

(b)    the number of members of the company (exclusive of persons who are in the employment of the company and of persons who having been formerly in the employment of the company were while in such employment and have continued after the determination of such employment to be members of the company) is limited to fifty. Provided that where two or more persons hold one or more shares in the company jointly they shall for the purpose of this regulation be treated as a single member;

(c)    any invitation to the public to subscribe for any shares or debentures of the company is prohibited;

(d)    the company shall not have power to issue share warrants to bearer.

(e)    at any time when the Company has only one Member the following provisions shall apply:

(i)     The sole Member exercises all the powers of the General Meeting provided, always, that any decisions taken by the said Member in General Meeting are minuted or taken in writing and

(ii)    Agreements concluded between the sole Member and the Company, are minuted or reduced in writing, unless they relate to day-to-day transactions of the Company concluded in the ordinary course of business.

## BUSINESS

4.    The company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if

any, as the contracting parties shall agree and the board of directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5.  The shares shall be at the disposal of the company which may by ordinary resolution allot or otherwise dispose of them, subject to regulation 3, and to the provisions of the next following regulation, to such persons at such times and generally on such terms and conditions as they think proper, provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

1.  Unless otherwise determined by the company in general meeting any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the members in proportion, as nearly as may be, to the numbers of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the company may, subject to these regulations, dispose of the same in such manner as it thinks most beneficial to the company.  The company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid or by reason of any other difficulty in apportioning the same cannot in the opinion of the company be conveniently offered in manner hereinbefore provided.

2.  Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the company may from time to time by ordinary resolution determine.

3.  Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed on such terms and in such manner as the company before the issue of the shares may be special resolution determine.

4.  If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these regulations relating to general meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the

4

issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

5.      The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

6.      The company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be).  Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.  The company may also on any issue of shares pay such brokerage as may be lawful.

7.      Except as required by law, no person shall be recognised by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

8.      Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall prove) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 10 cents, for every certificate after the first or such less sum as the directors shall from time to time determine.  Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up therein.  Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

9.      If a share certificate be defaced, lost or destroyed, it may be renewed on payment of a fee of 10 cents or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the company of investigating evidence as the directors think fit.

10.     The company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the company or in its holding company nor shall the company make a loan for any purpose whatsoever on the security of its shares or those of its holding

company, but nothing in this regulation shall prohibit transactions mentioned in the proviso to section 53 (1) of the law.

## LIEN

11.    The company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share.  The company shall also have a first and paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.  The company's lien, if any, on a share shall extend to all dividends payable therein.

12.    The company may sell, in such manner as the directors think fit, any shares on which the company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, and only after until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

13.    To give effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser hereof.  The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall hit title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

14.    The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as in presently payable, and the residue, if any shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

15.    The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each member shall (subject to receiving at lest fourteen days notice specifying the time or times and place of payment) pay to the company at the time or times and place so specified the amounts called on his shares.  A call may be revoked or postponed as the directors may determine.

16.    A call shall be deemed to have been made at the time when the resolution of the directors authorising the call was passed and may be required to be paid by instalments.

17.     The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

18.     If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interested on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum as the directors may determine, but the directors shall be at liberty to waive payment of such interest wholly or in part.

19.     Any sum which by the terms of issue of a share becomes payable on allotment or at any fixedate, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these regulations be deemed to be a call duly made and payable on the date on which the terms of issue the same becomes payable.  In case of non-payment all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable to virtue of a call duly made and notified.  The directors may on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

20.     The directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the company in general meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the directors and the members paying such sum in advance.

## TRANSFER OF SHARES

21.     The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

22.     Subject to such of the restrictions of these regulations as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the directors may approve.

23.     The directors may decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the company has a lien.

24.     The directors may also decline to recognise any instrument of transfer unless:

(a)     a fee of 10 cents or such lesser sum as the directors may from time to time require is paid to the company in respect thereof;

7

(b)     The instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer; and

(c)     the instrument of transfer is in respect of only one class of shares.

25.     If the directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

26.     The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

27.     The company shall be entitled to charge a fee not exceeding 10 cents on the registration of every probate, letters of administration, certificates of death or marriage, power of attorney, or other instrument.

28.     Regulations 26 and 27 shall be read subject to the provisions of regulation 34.

29.     (a)     For the purposes of this regulation, where any person is unconditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a member of the company in respect of that share.

(b)     Except as hereinafter provided no shares in the company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c)     Every member who desires to transfer any share or shares (hereinafter called the "vendor") shall give to the company notice in writing of such desire (hereinafter called "transfer notice").   Subject as hereinafter mentioned, a transfer notice shall constitute the company the vendor's agent for the sale of the share or shares specified therein (hereinafter called the said "shares") in one or more lots at the discretion of the directors to the members other than the vendor at the price to be agreed upon by the vendor and the remaining members of the company, or, in case of difference or no such agreement, at the price which the auditor of the company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.   A transfer notice may contain a provision that unless all the shares comprised therein are sold by the company pursuant to this regulation, none shall be so sold and any such provision shall be binding on the company.

(d)     If the auditor is asked to certify the fair price as aforesaid, the company shall, as soon as it received the auditor's certificate, furnish a certified copy thereof to the vendor and the vendor shall be entitled, by notice in

writing given to the company within ten days of the service upon him of the said certified copy, to cancel the company's authority to sell the said shares.  The cost of obtaining the certificate shall be born by the company unless the vendor shall give notice of cancellation as aforesaid in which case he shall bear the said cost.

(e)    Upon the price being fixed as aforesaid and provided the vendor shall not give notice of cancellation as aforesaid the company shall forthwith by notice in writing inform each member, other than the vendor and other than members holding employees' shares only, of the number and price of the said shares and invite each such member to apply in writing to the company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)    If the said members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the company shall forthwith give notice of such allocations (hereinafter called an "allocation notice") to the vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being not earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)    The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the company or some other person appointed by the directors shall be deemed to have been appointed attorney of the vendor with full power to execute, complete and deliver, in the name and on behalf of the vendor, transfers of the shares to the purchasers thereof against payment of the price to the company.  On payment of the price to the company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of members as the holder by transfer of the shares.  The company shall forthwith pay the price into a separate bank account in the company's name and shall hold such price in trust for the vendor.

(h)    During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this regulation, the vendor

shall be at liberty, (subject nevertheless to the provisions of regulation 28), to transfer to any person and at any price (not being less than the priced fixed under paragraph (c) of this regulation) any share not allocated by the directors in an allocation notice.  Provided that, if the vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this regulation, none should be so sold, the vendor shall not be entitled, save with the written consent of all the other members of the company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)    Any share may be transferred by a member to the spouse, child or remoter issue or parent, a brother or sister of that member or to a company beneficially owned or controlled by such member and any share of a deceased member may be transferred by his personal representatives to any widow, widower, child or remoter issue or parent, brother or sister of such deceased member. Shares standing in the name of the trustees of any deceased member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the member is a body corporate any share may be transferred by such member to its subsidiary or holding company or to a company controlled by such holding company.  The rights of pre-emption hereinbefore conferred in this regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and regulation 28 shall be read subject to this paragraph.

35.    Notwithstanding any other regulation in the Articles of Association of the Company, the Directors shall not decline to register any transfer of fully paid up shares, nor may they suspend registration thereof where such transfer is:

(i)    to any pledgee, mortgagee or chargee (or any nominee thereof) in favour of whom the relevant shares have been pledged, mortgaged or charged; or

(ii)   by any such pledgee, mortgagee or chargee (or any nominee thereof), pursuant to the power of sale under its respective security; or

(iii)  by any such pledgee, mortgagee or charge (or any nominee thereof)  in accordance with the terms of the relevant security document.

This shall be the case provided that:

(a)    a pledge, mortgage or charge of shares has already been registered in the Register of Members of the Company; and

(b)    the Directors have received a relevant dated instrument of transfer duly signed by the pledgee and the transferee.

No members shall have any rights of pre-emption or otherwise in relation to any transfer as aforesaid and such transfer of shares may be freely effected with no restrictions.

Any lien which the Company may have on shares which have been charged by way of security to any pledgee, mortgagee or charge described in any regulation in the Articles of Association of the Company, shall not be

exercisable by the Company insofar as that may affect the interest of such pledgee, mortgagee or chargee.

## TRANSMISSION OF SHARES

36.     In case of the death of a member the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognised by the company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

37.     Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors and subject as hereafter provided, elect either to be registered himself as holder of the shares or to have some person nominated by him registered as the transferee thereof, but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

38.     If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects.  If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share.   All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer was a transfer signed by that member.

39.     A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.  Provided always that the directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days the directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

40.     If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of such amount of the call or instalment as in unpaid, together with any interest which may have accrued.

41.    The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

42.    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time, thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

43.    A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition, the forfeiture may be cancelled on such terms as the directors think fit.

44.    A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which, at the date of forfeiture, were payable by him to the company in respect of the shares but his liability shall cease if and when the company shall have received payment in full of all such moneys in respect of the shares.

45.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share.  The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

46.    The provision of these regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

47.    The company may by special resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

48.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been

transferred, or as near thereto as circumstances admit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

49.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose. But no such privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

50.    Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

51.    The company may from time to time by special resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

52.    The company may by special resolution:

(a)    consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)    subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (l) (d) of the Law;

(c)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

53.    The company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by Law.

## GENERAL MEETINGS

54.    The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it.  Not more than fifteen months shall elapse between the date of one annual general meeting of the company and that of the next.  Provided that so long as the company holds its first annual general meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year.  The annual general meeting shall be held at such time and place as the directors shall appoint.

55.   All general meetings other than annual general meetings shall be called extraordinary general meetings.

56.   The directors may, whenever they think fit, convene an extraordinary general meeting.   Extraordinary general meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## NOTICE OF GENERAL MEETINGS

57.   An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least. The rest general meetings of Company shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given.  The notice shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the company in general meetings to such persons as are, under the regulations of the company, entitled to receive such notices from the company; provided that a meeting of the company shall, notwithstanding that is called by shorter notice than that specified in this regulation, be deemed to have been duly called if it is so agreed:

(a)   in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)   in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95% in nominal value of the shares giving that right

58.   The accidental omission to give notices of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

59.   All business that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the directors and auditors, the election of directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors, shall be deemed special.

60.  No business shall be transacted in any general meeting unless a quorum of members is present at the time when the meeting proceeds to business. Two members present in person or by proxy shall be a quorum, save as herein otherwise provided.

61.  If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the members present shall be a quorum.

62.  The Chairman, if any, of the board of directors shall preside as chairman at every general meeting of the company.  If there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the meeting or is unwilling to act the directors present shall elect one of their number to be chairman of the meeting.

63.  If at any meeting no director is willing to act as chairman or if no director is present within fifteen minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

64.  The chairman may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place; but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Save as aforesaid it shall not be necessary to give notice of an adjournment or of the business to be transacted at any adjourned meeting.

65.  At any general meeting any resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded;

   (a)    by the chairman; or

   (b)    by at least two members present in person or by proxy; or

   (c)    by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all members having the right to vote at the meting; or

   (d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.   Unless a pool be so

demanded a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.  The demand for a poll may be withdrawn.

66.    Except as provided in regulation 69, if a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

67.    In case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting shall not have a casting vote.

68.    A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

69.    Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member shall have one vote for each share of which he is the holder.

70.    In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

71.    A member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver or curator bonis appointed by that Court.  Any such administrator, committee, receiver, curator, bonis or other person may, on a poll, vote by proxy.

72.    No member shall be entitled to vote in any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

73.    No objection shall be raised to the qualification of any voter except at the meeting at which the vote objected to is given or tendered and every vote not disallowed at such meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

74.    On a poll votes may be given either personally or by proxy.

75.    The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal, or under the hand of an officer or attorney duly authorised.  A proxy need not be a member of the company.

76.    The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the company or at such other place within Cyprus as is specified for that purpose in the notice convening the meeting, at any time before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll.  In default to the above provisions the instrument of proxy shall not be treated as valid.

77.    An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit

"....................................................................................................Limited, (name of the company) I/We, ...................................................… of ...............................................… being a member/members of the abovenamed company, hereby appoint ...................................................…, or failing him ....................................… of ...............................… as my/our proxy to vote for me/us on my/our behalf at the  .................................... (annual or extraordinary, as the case may be) general meeting of the company, to be held on the .......... day of .................... ......., and at any adjournment thereof.
Signed this .......... day of ...................., ......."

78.    Where it is desired to afford members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit –

".......................................................................… Limited (name of company) I/We ......................................… of ....................................… being a member/members of the abovenamed company, hereby appoint ...............................................… of ....................................…, or failing him .........................................… of ....................................… as my/our proxy to vote for me/us on my/our behalf at the ....................… (annual or extraordinary, as the case may be) general meeting of the company to be held on the ...............… day of ..........................................…, and at any adjournment thereof.

Signed this ...............… day of ...................................................…"

This form is to be used in favour of /* against the resolution.  Unless otherwise instructed, the proxy will vote as he thinks fit.

/*  Strike out whichever is not desired.

79.    The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

80.    A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed of the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the company at the office before the commencement of the meeting or adjourned meeting at which the proxy is used.

81.    Subject to the provisions of the Law, a resolution in writing signed by all members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the company duly convened and held.  Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a Director or other authorized officer thereof or its duly appointed attorney.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

82.    Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

## DIRECTORS

83.    The number of the members of the Board of Directors shall be determined from time to time by the company in General Meeting.  The number of the members of the Board of Directors shall be one or more and there is no maximum number of members unless the Company shall decide differently in General Meeting. The number of the first Directors of the company shall be appointed in writing by the subscribers to the Memorandum of Association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

84.    The remuneration of the directors shall from time to time be determined by the company in general meeting.  Such remuneration shall be deemed to accrue from day to day.  The directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from

meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

85. The shareholding qualification for directors may be fixed by the company in general meeting, and unless and until so fixed no qualification shall be required.

86. A director of the company may be or become a director or other officer of, or otherwise interested in, any company promoted by the company or in which the company may be interested as a shareholder or otherwise, and no such director shall be accountable to the company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the company otherwise direct.

## BORROWING POWERS

87. The directors may exercise all the powers of the company to borrow money, and to charge or mortgage its undertaking, property and uncalled capital, or any part thereof, and to issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the company or of any third party, or regardless of such repayment.

## POWERS AND DUTIES OF DIRECTORS

88. The business of the company shall be managed by the directors, who may pay all expenses incurred in promoting and registering the company, and may exercise all such powers of the company as are not, by the Law or by these regulations required to be exercised by the company in general meeting, subject, nevertheless to any of these regulations, to the provisions of the Law and to such regulations, being not inconsistent with the aforesaid regulations or provisions as may be prescribed by the company in general meeting but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

89. The directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney of attorneys of the company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these regulations) and for such period and subject to such conditions as they may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

90. The company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the directors.

91. The company may exercise the powers conferred upon the company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a

dominion register, and the directors may (subject to the provisions of those sections) make and vary such regulations as they may think fit respecting the keeping of any such register.

92. (1)    A director who is anyway, whether directly or indirectly, interested in a contract or proposed contract with the company shall declare the nature of his interest at a meeting of the directors in accordance with section 191 of the Law.

(2)    A director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)    A director may hold any other office or place of profit under the company (other than the office of auditor) in conjunction with his office of director for such period and on such terms (as to remuneration and otherwise) as the directors may determine.   No director or intending director shall be disqualified by his office from contracting with the company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise.  Nor shall any such contract, or any contract or arrangement entered into by or on behalf of the company in which any director is in any way interested be liable to be avoided.   Nor shall any director so contracting or being so interested be liable to account to the company for any profit realised by any such contract or arrangement by reason of such director holding that office or of the fiduciary relation thereby established.

(4)    Any director may act by himself or his firm in a professional capacity for the company, and he or his firm shall be entitled to remuneration for professional services as if he were not a director; provided that nothing herein contained shall authorise a director or his firm to act as auditor to the company.

93.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

94.    The directors shall cause minutes to be made in books provided for the purpose:

(a)    of all appointments of officers made by the directors;

(b)    of the names of the directors present at each meeting of the directors and of any committee of the directors;

(c)    of all resolutions and proceedings at all meetings of the company, and of the directors, and of committees of directors.

## PENSIONS

95.    The directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the company whether as managing directors or in any other office or employment under the company or indirectly as officers or employees of any subsidiary, associated or allied company of the company notwithstanding that he or they may be or may have been directors of the company.    The company may make payments towards insurances, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

96.    The office of director shall be vacated if the director:

(a)    ceased to be a director by virtue of section 176 of the Law; or

(b)    becomes bankrupt or makes any arrangements or composition with his creditors generally; or

(c)    becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d)    becomes of unsound mind; or

(e)    resigns his office by notice in writing to the company

## APPOINTMENT OF ADDITIONAL DIRECTORS AND REMOVALS OF DIRECTORS

97.    The directors shall have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but so that the total number of directors shall not at any time exceed the number fixed in accordance with these regulations.    Any director so appointed shall hold office, only until the next following annual general meeting, and shall then be eligible for re-election.

98.    The company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any director before the expiration of his period of office notwithstanding anything in these regulations or in any agreement between the company and such director. Such removal shall be without prejudice to any claim such director may have for damages for breach of any contract of service between him and the company.

99.    At any time, and from time to time, the company may (without prejudice to the powers of the directors under regulation 97) by ordinary resolution appoint any person a director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

100.    The directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings, as they think fit and questions arising at any meeting shall be decided by a majority of votes.  A director may, and the secretary on the requisition of a director shall, at any time summon a meeting of the directors.  It shall be necessary to give a 96 hour notice of a meeting of directors to any director for the time being absent from Cyprus who has supplied to the company a registered address situated outside Cyprus.  All Board and Committee meetings shall take place anywhere in Cyprus or anywhere else abroad.

101.    The Board of Directors may determine the quorum necessary for the transaction of its business and unless so determine, then two members of the Board attending the meeting in person or by alternate, shall consist quorum. In the case there is only one director, the said director will, on his own, be considered as quorum

102.    The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors or director may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purposes.

103.    The directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairman of the meeting.

104.    The directors may delegate any of their powers to a committee or committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors, as to its powers, constitution, proceedings, quorum or otherwise.

105.    A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

106.    Subject to any regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the members present.

107.    All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

108.    A resolution in writing signed or approved by letter, telegram, telex or fax by each director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.  When signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE  DIRECTORS

109.    (a)    Each director shall have power from time to time to nominate another director or any person, not being a director, to act as his alternate director and at his discretion to remove such alternate director.

    (b)    An alternate director shall (except as regards power to appoint an alternative director and remuneration) be subject in all respect to the terms and conditions existing with reference to the other directors, and shall be entitled to receive notices of all meetings of the directors and to attend speak and vote at any such meeting at which his appointer is not present.

    (c)    An instrument appointing an alternate director shall be in the following form or a form as near thereto as circumstances admit

        "…………………….....………..…………………......……… Limited (name  of  company)  I/We  ………………………………….  of ………………………………. being  a  Director  of  the  abovenamed company,  hereby  appoint  …………………………………………  of ……………………………………, as alternate director to attend and to vote for me/us and on my/our behalf at any Directors meeting of the company to which I am not able to attend and perform any of my powers and duties as Director of the Company.

        Signed this …………… day of ……………………"

        Signature ………………………
        Director

    (d)    One person may act as alternate director to more than one director and while he is so acting shall be entitled to a separate vote for each director he is representing and, if he is himself a director, his vote or votes as an alternate director shall be in addition to his own vote.

23

(e)     An appointment or removal of an alternate director may be made by telex, cable, telegram or telefax or in any other manner approved by the directors.  Any telex, cable, telegram or telefax shall be confirmed as soon as possible by letter but may be acted upon by the company meanwhile.

(f)     If a director making any such appointment as aforesaid shall cease to be a director otherwise than by reason of vacating his office at a meeting of the company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate director.

(g)     A director shall not be liable for the acts and defaults of any alternate director appointed by him.

(h)     An alternate director shall not be taken into account in reckoning the minimum or maximum number of directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the directors attended by him at which is entitled to vote.

## MANAGING DIRECTOR

110.    The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.  A director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of directors.  His appointment shall be automatically determined if he ceases from any cause to be a director.

111.    A managing director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the directors may determine.

112.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

113.    The secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

114.    No person shall be appointed or hold office as secretary who is:

(a)    the sole director of the company; or

(b)    a corporation the sole director of which is the sole director of the company; or

(c)    the sole director of a corporation which is the sole director of the company

Provided that the provision of this section shall not apply to a private limited – liability company with one and only member.

115.   A provision of the Law or these regulations requiring or authorising a thing to be done by a director and the secretary shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, the secretary.

## THE SEAL

116.   The director shall provide for the safe custody of the seal, which shall only be used by the authority of the directors or of a committee of the directors authorised by the directors in that behalf.  Every instrument to which the seal shall be affixed shall be signed by a director and shall be countersigned by the secretary or by a second director or by some other person appointed by the directors for that purpose.

## DIVIDENDS AND RESERVE

117.   The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the directors.

118.   The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

119.   No dividend shall be paid otherwise than out of profits.

120.   The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for any purpose to which the profits of the company be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may from time to time think fit.  The directors may also without placing the same reserve carry forward any profits which they may think prudent not to divide.

121.   Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be

treated for the purposes of this regulation as paid on the share.  All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

122.    The directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the company on account of calls or otherwise in relation to the shares of the company.

123.    Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways and the directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the directors may settle the same as they think expedient.  In particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the directors.

124.    Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of members or to such person and to such address as the holder or joint holders may in writing direct.  Every such cheque or warrant shall be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other moneys payable in respect of the shares held by them as joint holders.

125.    No dividend shall bear interest against the company.

### ACCOUNTS

126.    The director shall cause proper books of account to be kept with respect to:

(a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the company; and

(c) the assets and liabilities of the company.

Proper books shall not be deemed to be kept if there are not kept such books of accounts as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

127.  The books of account shall be kept at the registered office of the company, or, subject to section 141 (3) of the Law, at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

128.  The directors shall from time to time determine whether and to what extend and at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors.  No member (not being a director) shall have any right of inspecting any account or book or documents of the company except as conferred by statue or authorised by the directors or by the company in general meeting.

129.  The directors shall from time to time, in accordance with sections 142 and 151 of the Law, cause to be prepared and to be laid before the company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

130.  A copy of every balance sheet (including every documents required by law to be annexed thereto) which is to be laid before the company in general meeting, together with a copy of the auditors report shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the company and to every person registered under regulation 37.  Provided that this regulation shall not require a copy of those documents to be sent to any person of whose address the company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALIZATION OF PROFITS

131.  The company in general meeting may upon the recommendation of the directors resolve that is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and according that such sum be set free for distribution, amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up on full unissued shares or debentures if the company to be allotted, distributed and credited as fully paid up to and amongst such members in the proportion aforesaid, or partly in the one way and partly in the other, and the directors shall give effect so such resolution.  Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this regulation, only be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares.

132.  Whenever such a resolution as aforesaid shall have been passed the directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares or debentures, if any.  The Directors generally shall do all acts and things

required to give effect thereto, with full power to the directors to make such provisions by the issue of fractional certificates or by payments in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the company providing for the allotment to them respectively credited as fully paid up, or any further shares or debentures to which they may be entitled upon such capitalization, or (as the case may require) for the payment up by the company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDIT

133.    Auditors shall be appointed and their duties are regulated in accordance with sections 153 to 155 (both inclusive) of the Law.

## NOTICES

134.    A notice may be given by the company to any member either personally or by sending it by post to him or to his registered address, or (if he has no registered address within Cyprus) to the address, if any, within Cyprus supplied by him to the company for the giving of notice to him.  Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice, and to have been effected in the case a notice of a meeting at the expiration of 24 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

135.    A notice may be given by the company to the joint holders of a share by giving the notice to the joint holders first named in the register of members in respect of the share.

136.    A notice may be given by the company to the persons entitled to a share in consequent of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustees of the bankrupt, or by any like descriptions, at the address, if any, within Cyprus supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

137.    Notice of every general meeting shall be given in any manner hereinbefore authorised to:

(a)    every member except those members who (having no registered address within Cyprus) have not supplied the company an address within Cyprus for the giving of notices to them;

28

(b)     every person upon whom the ownership of a share devolved by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)     the auditors for the time being of the company.

No other person shall be entitled to receive notices of general meetings.

## WINDING UP

138.    If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Law, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

139.    Every director or other office for the time being of the company shall be indemnified out of the assets of the company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgement is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court.  No director or officer of the company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the company in the execution of the duties of his office or in relation thereto.  But this clause shall only have effect in so far as its provisions are not avoided by section 197 of the Law.

## SPECIAL PROVISION

140.    Notwithstanding anything otherwise provided for in the Company's articles of association, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of the present resolution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b)

29

will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this section 140, any class or series of equity securities that has only such voting rights as are mandated by the Cyprus Companies Law, Cap. 113, shall be deemed to be nonvoting for purposes of the restrictions of this section 140.

## **Exhibit H-11**

**Reorganized Aegean Bunkering (USA) LLC A&R Certificate of Formation**

**AMENDED AND RESTATED CERTIFICATE OF FORMATION**
**OF**
**AEGEAN BUNKERING (USA) LLC**

THIS Amended and Restated Certificate of Formation of Aegean Bunkering (USA) LLC (the "LLC"), dated as of [March __, 2019], has been duly executed and is being filed by the undersigned, as an authorized person, in accordance with the provisions of 6 Del. C. § 18-208, to amend and restate the original Certificate of Formation of the LLC, which was filed in accordance with the Delaware Limited Liability Company Act (the "Act") on November 6, 2013, with the Secretary of State of the State of Delaware (as amended, the "Certificate").

The Certificate is hereby amended and restated in its entirety to read as follows:

1.      Name.  The name of the limited liability company is Aegean Bunkering (USA) LLC.

2.      Registered Agent.  The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The name of the registered agent of the LLC is Corporation Service Company.

3.      Duration.  The duration of the LLC is to be perpetual, unless sooner terminated in accordance with the Act.

4.      Purpose.  The purpose of the LLC is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

5.      Nonvoting Equity.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the LLC shall not issue any class or series of nonvoting equity securities as in effect on the date of filing this Amended and Restated Certificate of Formation with the Secretary of State of the State of Delaware; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the LLC; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Certificate of Formation as of the date first-above written.

**AEGEAN BUNKERING (USA) LLC**


By: _____
Name:
Title:

## **Exhibit H-12**

**Reorganized Aegean Oil (USA), LLC A&R Certificate of Formation**

## AMENDED AND RESTATED CERTIFICATE OF FORMATION
## OF
## AEGEAN OIL (USA), LLC

THIS Amended and Restated Certificate of Formation of Aegean Oil (USA), LLC (the "LLC"), dated as of [March __, 2019], has been duly executed and is being filed by the undersigned, as an authorized person, in accordance with the provisions of 6 Del. C. § 18-208, to amend and restate the original Certificate of Formation of the LLC, which was filed in accordance with the Delaware Limited Liability Company Act (the "Act") on July 12, 2004, with the Secretary of State of the State of Delaware (as amended, the "Certificate").

The Certificate is hereby amended and restated in its entirety to read as follows:

1.    Name.  The name of the limited liability company is Aegean Oil (USA), LLC.

2.    Registered Agent.  The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The name of the registered agent of the LLC is Corporation Service Company.

3.    Duration.  The duration of the LLC is to be perpetual, unless sooner terminated in accordance with the Act.

4.    Purpose.  The purpose of the LLC is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

5.    Nonvoting Equity.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the LLC shall not issue any class or series of nonvoting equity securities as in effect on the date of filing this Amended and Restated Certificate of Formation with the Secretary of State of the State of Delaware; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the LLC; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Certificate of Formation as of the date first-above written.

**AEGEAN OIL (USA), LLC**


By: _____
Name:
Title:

**<u>Exhibit H-13</u>**

**Reorganized AMPN USA, LLC A&R Certificate of Formation**

## AMENDED AND RESTATED CERTIFICATE OF FORMATION
## OF
## AMPN USA, LLC

THIS Amended and Restated Certificate of Formation of AMPN USA, LLC (the "LLC"), dated as of [March __, 2019], has been duly executed and is being filed by the undersigned, as an authorized person, in accordance with the provisions of 6 Del. C. § 18-208, to amend and restate the original Certificate of Formation of the LLC, which was filed in accordance with the Delaware Limited Liability Company Act (the "Act") on December 15, 2006, with the Secretary of State of the State of Delaware (as amended, the "Certificate").

The Certificate is hereby amended and restated in its entirety to read as follows:

1.    Name.  The name of the limited liability company is AMPN USA, LLC.

2.    Registered Agent.  The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The name of the registered agent of the LLC is Corporation Service Company.

3.    Duration.  The duration of the LLC is to be perpetual, unless sooner terminated in accordance with the Act.

4.    Purpose.  The purpose of the LLC is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

5.    Nonvoting Equity.  To the extent prohibited by Section 1123 of Title 11 of the Unites Stated Bankruptcy Code (as amended, the "Bankruptcy Code"), the LLC shall not issue any class or series of nonvoting equity securities as in effect on the date of filing this Amended and Restated Certificate of Formation with the Secretary of State of the State of Delaware; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the LLC; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Certificate of Formation as of the date first-above written.

**AMPN USA, LLC**


By: _____
Name:
Title:

## **Exhibit H-14**

**Reorganized Aegean Agency (Gibraltar) Ltd Amended Articles of Association**

PRIVATE COMPANY LIMITED BY SHARES


Amended and Restated Articles of Association
of

**Aegean Agency (Gibraltar) Limited**

INDEX TO THE ARTICLES

PART 1
INTERPRETATION AND LIMITATION OF LIABILITY

1.      Defined terms and references
2.      Private company
3.      Liability of members
4.      Applicability of standard form memorandum and articles of
        association

PART 2
OFFICERS

5.      First directors

APPOINTMENT OF DIRECTORS

6.      Methods of appointing directors
7.      Termination of director's appointment
8.      Removal of directors
9.      Directors' remuneration
10.     Directors' expenses

ALTERNATE DIRECTORS

11.     Appointment and removal of alternates
12.     Rights and responsibilities of alternate directors
13.     Termination of alternate directorship

DIRECTORS' POWERS AND RESPONSIBILITIES

14.     Directors' general authority
15.     Directors may delegate
16.     Powers of attorney
17-21.  Borrowing powers
22.     Accounts and balance sheets
23.     Committees
24.     Appointment of secretary

DECISION-MAKING BY DIRECTORS

25.     Directors to take decisions collectively
26.     Unanimous decisions
27      Calling a directors' meeting
28.     Participation in directors' meetings
29-30.  Quorum for directors' meetings
31.     Chairing of directors' meetings
32.     Casting vote

33.        Alternates voting at directors' meetings
34-36.    Conflicts of interest
37.        Defect in appointment
38.        Records of decisions to be kept


PART 3
SHARES AND DISTRIBUTIONS

SHARES

39.        Allotment of shares
39A.      Non-voting shares
40.        Fractional shares
41.        Payment of shares
42-45.    Lien
46-50.    All of shares
51.        Powers to issue different classes of share
52.        Company not bound by less than absolute interests
53.        Share certificates
54.        Replacement share certificates
55.        Share transfers
56.        Transmission of shares
57.        Exercise of transmittees' rights
58.        Transmittees bound by prior notices
59-65.    Forfeiture of shares
66-69.    Alteration of capital
70.        Buy back of shares

DIVIDENDS AND OTHER DISTRIBUTIONS

71.        Procedure for declaring dividends
72-75.    Payment of dividends and other distributions
76.        No interest on distributions
77.        Unclaimed distributions
78.        Dividends in specie
79.        Waiver of distributions

CAPITALISATION OF PROFITS

80.        Authority to capitalise and appropriation of capitalised sums


PART 4
DECISION-MAKING BY SHAREHOLDERS

ORGANISATION OF GENERAL MEETINGS

81-82.    Calling of general meetings
83-86.    Notice of general meetings
87.        Attendance and speaking at general meetings
88-89.    Quorum for general meetings
90.        Chairing general meetings
91.        Attendance and speaking by directors and non-shareholders
92.        Adjournment

VOTING AT GENERAL MEETINGS

93-98.    Voting: general

2

99.       Errors and disputes
100.      Poll votes
101.      Content of proxy notices
102-103.  Delivery of proxy notices
104.      Resolution in writing

PART 5
ADMINISTRATIVE ARRANGEMENTS

105.      Place of meetings
106.      Means of communication to be used
107.      Company seals
108.      No right to inspect accounts and other records
109.      Provision for employees on cessation of business

DIRECTORS' INDEMNITY AND INSURANCE

110-111.  Indemnities
112.      Insurance

PART 6
WINDING UP AND RE-DOMICLIATION

113.      Winding up
114.      Transfer by way of re-domiciliation

PART 1

INTERPRETATION AND LIMITATION OF LIABILITY

**Defined terms and references**

1.   (1) In the articles, unless the context requires otherwise:

"Act" shall mean the Companies Act 2014 including any modification or re-enactment thereof.

"alternate" or "alternate director" has the meaning given in article 11;

"appointor" has the meaning given in article 11;

"articles" means the company's articles of association;

"bankruptcy" includes individual insolvency proceedings in a jurisdiction other than Gibraltar which have an effect similar to that of bankruptcy;

"chairman" has the meaning given in article 31;

"chairman of the meeting" has the meaning given in article 90;

"company" shall mean "Aegean Agency (Gibraltar) Limited"

"director" means a director of the company, and includes any person occupying the position of director, by whatever name called;

"distribution recipient" means, in respect of a share in respect of which a dividend or other sum is payable:

   (a)   the holder of the share; or
   (b)   if the share has two or more joint holders, whichever of them is named first in the register of members; or
   (c)   if the holder is no longer entitled to the share by reason of death or bankruptcy, or otherwise by operation of law, the transmittee; and
   (d)   any person to which a shareholder assigns his right to receive a dividend or person which the shareholder has instructed the company in writing to pay the dividend to.

"document" includes, unless otherwise specified, any document sent or supplied in electronic form;

"holder" in relation to shares means the person whose name is entered in the register of members as the holder of the shares;

"instrument" means a document in hard copy form;

"member" means the subscribers of the memorandum of a company and every other person who agrees to become a

4

member of a company, and whose name is entered in its register of members.

"ordinary resolution" has the meaning given in section 200 of the Act;

"paid" means paid or credited as paid;

"participate", in relation to a directors' meeting, has the meaning given in article 28;

"person" shall, where appropriate, mean any real or legal person;

"proxy notice" has the meaning given in article 101;

"shareholder" means a person who is the holder of a share;

"shares" means shares in the company;

"special resolution" has the meaning given in section 201 of the Act;

"subsidiary" has the meaning given in section 2 of the Act;

"transmittee" means a person entitled to a share by reason of the death or bankruptcy of a shareholder or otherwise by operation of law; and

"writing" means the representation or reproduction of words, symbols or other information in a visible form by any method or combination of methods, whether sent or supplied in electronic form or otherwise.

(2)    Unless the context otherwise requires, other words or expressions contained in these articles bear the same meaning as in the Act as in force on the date when these articles become binding on the company.

(3)    When any provision of the Act is referred to, the reference is to that provision as modified by any statute for the time being in force.

## Private company

2.    The company is a "private company" within the meaning of the Act, and accordingly the following provisions shall have effect:

(a)    The company shall not offer any of its shares or debentures to the public for subscription; and

(b)    The right to transfer shares in the company shall be restricted in the manner hereinafter provided.

## Liability of members

3.    The liability of the members is limited to the amount, if any, unpaid on the shares held by them.

**Applicability of standard form memorandum and articles of association**

**4.** The form of memorandum and articles of association of a private company limited by shares contained in the Companies Act (Model Memoranda and Articles) Regulations 2014 shall, unless specific reference is made to the contrary in these articles, not apply to the company.

PART 2

OFFICERS

**First directors**

**5.** (1) The number of directors and the names of the first directors shall be determined in writing by the majority of the subscribers of the memorandum of association of the company.

APPOINTMENT OF DIRECTORS

**Methods of appointing directors**

**6.** (1) Any person who is willing to act as a director, and is permitted by law to do so, may be appointed to be a director:

   (a) by ordinary resolution, or

   (b) by a decision of the directors.

   (2) In any case where, as a result of death, the company has no shareholders and no directors, the personal representatives of the last shareholder to have died have the right, by notice in writing, to appoint a person to be a director.

   (3) For the purposes of paragraph (2), where 2 or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

**Termination of director's appointment**

**7.** A person ceases to be a director as soon as:

   (a) that person ceases to be a director by virtue of any provision of the Act or of the Insolvency Act 2011 or is prohibited from being a director by law;

   (b) a bankruptcy order is made against that person;

   (c) if he is absent from the meetings of the directors for six months without the leave of the other directors or a majority of the other directors;

   (d) a registered medical practitioner who is treating that person gives a written opinion to the company stating that that person has become physically or mentally incapable of

6

acting as a director and may remain so for more than three months;

(e)    notification is received by the company from the director that the director is resigning from office, and such resignation has taken effect in accordance with its terms;

(f)    if he becomes prohibited by law from acting as a Director; and

(g)    if he is removed from office under the  provisions of article 8.

**Removal of directors**

8.    The company may, by ordinary resolution of which special notice has been given, or by special resolution, remove any director from office, notwithstanding any provisions of these presents or of any agreement between the company and such director, but without prejudice to any claim he may make for damages for breach of such agreement. The company may, by ordinary resolution, appoint another person to be a director in the place of a director so removed from office. In default of such appointment the vacancy so arising may be filled by the directors as a casual vacancy.

**Directors' remuneration**

9.    (1)    Directors may undertake any services for the company that the directors decide.

(2)    Directors are entitled to such remuneration as the directors determine:

(a)    for their services to the company as directors, and

(b)    for any other service which they undertake for the company.

(3)    Subject to the articles, a director's remuneration may:

(a)    take any form, and

(b)    include any arrangements in connection with the payment of a pension, allowance or gratuity, or any death, sickness or disability benefits, to or in respect of that director.

(4)    Unless the directors decide otherwise, directors' remuneration accrues from day to day.

(5)    Unless the directors decide otherwise, directors are not accountable to the company for any remuneration which they receive as directors or other officers or employees of the company's subsidiaries or of any other body corporate in which the company is interested.

**Directors' expenses**

7

**10.** The company may pay any reasonable expenses which the directors properly incur in connection with their attendance at:

(a) meetings of directors or committees of directors,

(b) general meetings, or

(c) separate meetings of the holders of any class of shares or of debentures of the company, or otherwise in connection with the exercise of their powers and the discharge of their responsibilities in relation to the company.

ALTERNATE DIRECTORS

**Appointment and removal of alternates**

**11.** (1) Any director (the "appointor") may appoint as an alternate any other director, or any other person approved by resolution of the directors, to:

(a) exercise that director's powers, and

(b) carry out that director's responsibilities, in relation to the taking of decisions by the directors in the absence of the alternate's appointor.

(2) Any appointment or removal of an alternate must be effected by notice in writing to the company signed by the appointor, or in any other manner approved by the directors.

(3) The notice must:

(a) identify the proposed alternate, and

(b) in the case of a notice of appointment, contain a statement signed by the proposed alternate that the proposed alternate is willing to act as the alternate of the director giving the notice.

**Rights and responsibilities of alternate directors**

**12.** (1) An alternate director has the same rights, in relation to any directors' meeting or directors' written resolution, as the alternate's appointor.

(2) Except as the articles specify otherwise, alternate directors:

(a) are deemed for all purposes to be directors;

(b) are liable for their own acts and omissions;

(c) are subject to the same restrictions as their appointors; and

(d) are not deemed to be agents of or for their appointors.

(3) A person who is an alternate director but not a director:

(a) may be counted as participating for the purposes of determining whether a quorum is participating (but

8

only if that person's appointor is not participating), and

(b)    may sign a written resolution (but only if it is not signed or to be signed by that person's appointor).

No alternate may be counted as more than one director for such purposes.

(4)    An alternate director is not entitled to receive any remuneration from the company for serving as an alternate director except such part of the alternate's appointor's remuneration as the appointor may direct by notice in writing made to the company.

**Termination of alternate directorship**

**13.** An alternate director's appointment as an alternate terminates:

(a)    when the alternate's appointor revokes the appointment by notice to the company in writing specifying when it is to terminate;

(b)    on the occurrence in relation to the alternate of any event which, if it occurred in relation to the alternate's appointor, would result in the termination of the appointor's appointment as a director;

(c)    on the death of the alternate's appointor; or

(d)    when the alternate's appointor's appointment as a director terminates, except that an alternate's appointment as an alternate does not terminate when the appointor retires by rotation at a general meeting and is then re-appointed as a director at the same general meeting.

DIRECTORS' POWERS AND RESPONSIBILITIES

**Directors' general authority**

**14.** Subject to the articles, the directors are responsible for the management of the company's business, for which purpose they may exercise all the powers of the company.

**Directors may delegate**

**15.** Subject to the articles, the directors may delegate any of the powers which are conferred on them under the articles:

(a)    to such person or committee;

(b)    by such means (including by power of attorney);

(c)    to such an extent;

(d)    in relation to such matters or territories; and

(e)    on such terms and conditions;

as they think fit.

**Powers of attorney**

16.   Every power of attorney granted by the company pursuant to article 15(b) must be executed as a deed and must make clear on its face that it is intended to be a deed.

**Borrowing Powers**

17.   The directors may exercise all the powers of the company to: borrow money, and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, and to give guarantee and to issue debentures, debenture stock and other securities whether outright or as a security for any debt, liability or obligations of the company or of any third party.

18.   The directors may borrow or raise any such moneys upon or by the issue or sale of any bonds, debentures, debenture stock, or securities, and upon such terms as to time of repayment, rate of interest, price of issue or sale, payment of premium or bonus upon redemption or repayment or otherwise as they may think proper, including a right for the holders of bonds debentures, debenture stock or securities to exchange the same for shares in the company or any class authorised to be issued.

19.   Subject to the provisions contained in these articles, the directors may secure or provide for the payment of any moneys to be borrowed or raised by a mortgage of, or charge upon, all or any part of the undertaking or property of the company, both present and future, and confer upon any mortgagees or persons in whom any debenture, debenture stock or security is vested such rights and powers as they think necessary or expedient, and they may vest any property of the company in trustees for the purpose of securing any moneys so borrowed or raised and confer upon the trustees or any debenture holders such rights and powers as the directors may think necessary or expedient in relation to the undertaking or property of the company, or the management or the realisation thereof, or the making, receiving or enforcing of calls upon the members in respect of unpaid capital and otherwise and may make and issue debentures to trustees for the purpose of further securities and any such trustee may be remunerated.

20.   The directors may give security for the payment of moneys payable by the company in like manner as for the payment of money borrowed or raised.

21.   The directors shall cause a proper register to be kept in accordance with the Act of all mortgages and charges specifically affecting the property of the company and shall keep a copy of every instrument creating a charge at the company's registered office and shall duly comply with the requirements of the Act in relation to any security given by the company.

**Accounts and balance sheets**

22. (1) The directors shall cause to be kept proper books of account with respect to:

    (a) all sums of money received and expended by the company and all bills and receipts and other matters in respect of which the receipt and expenditure takes place;

    (b) all the work and operations and purchases and sales of goods by the company; and

    (c) the assets and liabilities of the company;

(2) The books of account shall be kept at the registered office of the company, or at such other place as the directors think fit, and shall at all times be open to inspection by the directors.

(3) An auditor shall be appointed and duties regulated in accordance with the Act.

(4) The directors shall, in accordance with the Act, cause to be made out in every year and to be laid before the company in general meeting a balance sheet and profit and loss account to be decided upon by the directors, and made up to a date within nine months of the day of the meeting.

(5) The directors shall, in respect of each financial year, deliver to the Registrar of Companies annual accounts:

    (a) within 18 months from the first anniversary of the incorporation of the company; or

    (b) within 12 months after the end of the relevant financial year,

(6) The annual accounts supplied in accordance with sub-article (5) shall be signed by two directors, or, if there is only one director, by that director.

**Committees**

23. (1) Committees to which the directors delegate any of their powers must follow procedures which are based as far as they are applicable on those provisions of the articles which govern the taking of decisions by directors.

(2) The directors may make rules of procedure for all or any committees, which prevail over rules derived from the articles if they are not consistent with them.

**Appointment of Secretary**

24. Subject to the provisions of the Act, the secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

DECISION-MAKING BY DIRECTORS

11

**Directors to take decisions collectively**

**25.** (1)  As a general rule any decision of the directors must be either a majority decision at a meeting or a decision taken in accordance with article 26.

(2)  If:

(a)  the company only has one director, and

(b)  no provision of the articles requires it to have more than one director,

the general rule does not apply, and the director may take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

**Unanimous decisions**

**26.** (1)  A decision of the directors is taken in accordance with this article when all eligible directors indicate to each other by any means that they share a common view on a matter.

(2)  Such a decision shall be recorded as a resolution in writing, copies of which have been signed by each eligible director.

(3)  References in this article to eligible directors are to directors who would have been entitled to vote on the matter had it been proposed as a resolution at a directors' meeting.

(4)  A decision may not be taken in accordance with this article if the eligible directors would not have formed a quorum at such a meeting.

**Calling a directors' meeting**

**27.** (1)  Any director may call a directors' meeting by giving notice of the meeting to the directors or by authorising the company secretary (if any) to give such notice.

(2)  Notice of any directors' meeting must indicate:

(a)  its proposed date and time;

(b)  where it is to take place; and

(c)  if it is anticipated that directors participating in the meeting will not be in the same place, how it is proposed that they should communicate with each other during the meeting.

(3)  Notice of a directors' meeting must be given to each director, but need not be in writing.

**Participation in directors' meetings**

**28.** (1)  Directors participate in a directors' meeting, or part of a directors' meeting, when:

12

(a)   the meeting has been called and takes place in accordance with article 27, and

(b)   they can each communicate to the others any information or opinions they have on any particular item of the business of the meeting.

(2)   If all the directors participating in a meeting are not in the same place, they may decide that the meeting is to be treated as taking place wherever any of them is.

**Quorum for directors' meetings**

**29.**   (1)   At a directors' meeting, unless a quorum is participating, no proposal is to be voted on, except a proposal to call another meeting.

(2)   The quorum for directors' meetings may be fixed from time to time by a decision of the directors, and unless so fixed shall when the number of directors is two or exceeds two, be two, and when the number of directors is one, be one.

**30.**   The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the articles of the company as the necessary quorum of directors, the continuing directors may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purpose.

**Chairing of directors' meetings**

**31.**   (1)   The directors may appoint a director to chair their meetings.

(2)   The person so appointed for the time being is known as the chairman.

(3)   The directors may terminate the chairman's appointment at any time.

(4)   If the chairman is not participating in a directors' meeting within fifteen minutes of the time at which it was to start, the participating directors must appoint one of themselves to chair it.

(5)   Director's meetings shall be deemed to be held where the chairman is located.

**Casting vote**

**32.**   (1)   If the numbers of votes for and against a proposal are equal, the chairman or other director chairing the meeting has a casting vote.

(2)   Sub-article (1) does not apply if, in accordance with the articles, the chairman or other director is not to be counted as participating in the decision-making process for quorum or voting purposes.

13

**Alternates voting at directors' meetings**

33.   A director who is also an alternate director has an additional vote on behalf of each appointor who is:

(a)   not participating in a directors' meeting, and

(b)   would have been entitled to vote if they were participating in it.

**Conflicts of interest**

34.   A director who is in any way, whether directly or indirectly, interested in a contract or proposed contract (being a contract of significance in relation to the company's business) with the company shall, if his interest in the contract or proposed contract is material, declare the nature of his interest at a meeting of the directors in accordance with the Act.

35.   A director, having declared the nature of his interest at the meeting of the directors, may vote in respect of the matter in which he is so interested and may count in the quorum of that meeting.

36.   A director, notwithstanding his interest, may be counted in the quorum present at any meeting whereat he or any other director is appointed to hold any such office or place of profit under the company or whereat the terms of any such appointment are arranged, and he may vote on any such appointment or arrangement other than his own appointment or the arrangement of the terms thereof.

**Defect in appointment**

37.   All acts done by any meeting of the directors or of a committee of directors, or by any person acting as a director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

**Records of decisions to be kept**

38.   The directors must ensure that the company keeps a record, in writing, for at least 6 years from the date of the decision recorded, of every unanimous or majority decision taken by the directors.

PART 3

SHARES AND DISTRIBUTIONS

SHARES

14

**Allotment of shares**

**39.**    The shares of the company shall be allotted by the directors to such persons at such times and upon such terms and conditions and either at a premium or at par as they think fit.

**Non-voting shares**

**39A.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date that this Article is approved the Company; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Article 39A, any class or series of equity securities that has only such voting rights as are mandated by the Companies Act 2014 shall be deemed to be nonvoting for purposes of the restrictions of this Article 39A.

**Fractional shares**

**40.**    The company may not issue fractional shares except as otherwise provided in article 52.

**Payment of shares**

**41.**    (1)    Shares of the company need not be fully-paid up.

(2)    Shares of the company may only be issued at a discount in accordance with the provisions of the Act.

**Lien**

**42.**    (1)    The company shall have a lien on every share (not being a fully-paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the company shall also have a lien on all shares (other than fully-paid shares) standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.

(2)    The company's lien (if any) on a share shall extend to all dividends payable thereon.

**43.**    The company may sell, in such manner as the directors think fit, any shares on which the company has a lien where:

(a)    some sum in respect of which the lien exists is presently payable;

15

(b)  a notice in writing has been given to the registered holder of the shares (or the person entitled thereto by reason of his death or bankruptcy) stating and demanding payment of such part of the amount in respect of which the lien exists; and

(c)  fourteen days have passed since the notice was given to the registered holder.

44. (1)  For giving effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser thereof.

(2)  The purchaser shall be registered as the holder of the shares comprised in any such transfer and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

45.  The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue shall (subject to a like lien for sums not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the date of the sale.

**Calls of shares**

46.  The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares provided that no call shall exceed one-fourth of the nominal amount of the share, or be payable less than one month from the last call; and each member shall (subject to receiving at least fourteen days' notice specifying the time or times of payment) pay to the company at the time or times so specified the amount called on his shares.

47.  The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

48.  If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest upon the sum at such rate as may be prescribed by the directors from the day appointed for the payment thereof to the time of the actual payment, but the directors shall be at liberty to waive payment of that interest wholly or in part.

49.  The provisions of these articles as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

16

50.    The directors may make arrangements on the issue of shares for difference between the holders in the amount of calls to be paid and in times of payment.

**Powers to issue different classes of shares**

51.    (1)    Subject to the articles, but without prejudice to the rights attached to any existing share, the company may authorise the directors to issue shares with such rights or restrictions as may be determined by ordinary resolution.

(2)    The company may authorise the issuance of shares which are to be redeemed, or are liable to be redeemed at the option of the company or the holder, and the directors may determine the terms, conditions and manner of redemption of any such shares.

(3)    All shares created pursuant to this article 51 shall be:

(a)    subject to all the provisions of these articles, including without limitation provisions relating to payment of calls, lien, forfeiture, transfer and transmission; and

(b)    ordinary shares, unless otherwise provided by these articles in which case the articles shall also reflect such rights or restrictions as are applicable to said shares.

**Company not bound by less than absolute interests**

52.    Whenever any fractions arise as a result of a consolidation or sub-division of shares, the directors may on behalf of the members deal with the fractions as they think fit.  In particular, without limitation, the directors may sell shares representing fractions to which any shareholder would otherwise become entitled to any person including (subject to the provisions of the Act) the company and distribute the net proceeds of sale in due proportion among those members.  Where the shares to be sold are held in certificated form the directors may authorise some person to execute an instrument of transfer of the shares to, or in accordance with, the directions of the buyer.  Where the shares to be sold are held in uncertificated form, the directors may do all acts and things he considers necessary or expedient to effect the transfer of the shares to, or in accordance with, the directions of the buyer.  The buyer shall not be bound to see to the application of the purchase moneys and his title to the shares shall not be affected by any irregularity in, or invalidity of, the proceedings in relation to the sale.

**Share certificates**

53.    (1)    The company must issue each shareholder, free of charge, with one or more certificates in respect of the shares which that shareholder holds.

17

(2)   Every certificate must specify:

    (a)   in respect of how many shares it is issued;

    (b)   in respect of which class of shares the issued shares belong;

    (c)   the nominal value of those shares; and

    (d)   any distinguishing numbers assigned to them.

(3)   No certificate may be issued in respect of shares of more than one class.

(4)   If more than one person holds a share, only one certificate may be issued in respect of it.

(5)   Certificates must:

    (a)   have affixed to them the company's common seal, or

    (b)   be otherwise executed in accordance with the Act.

(6)   Each certificate shall be kept at the registered office of the company unless it is requested by the relevant shareholder or unless it is given to a lender or other financial institution as part of a security package.

**Replacement share certificates**

**54.**   (1)   If a certificate issued in respect of a shareholder's shares is:

    (a)   damaged or defaced, or

    (b)   said to be lost, stolen or destroyed, that shareholder is entitled to be issued with a replacement certificate in respect of the same shares.

   (2)   A shareholder exercising the right to be issued with such a replacement certificate:

    (a)   may at the same time exercise the right to be issued with a single certificate or separate certificates;

    (b)   must return the certificate which is to be replaced to the company if it is damaged or defaced; and

    (c)   must comply with such conditions as to evidence, indemnity and the payment of a reasonable fee as the directors decide.

**Share transfers**

**55.**   (1)   Shares may be transferred by means of an instrument of transfer in any usual form or any other form approved by the directors, which is executed by or on behalf of the transferor.

   (2)   The company may retain any instrument of transfer which is registered.

18

(3)    The transferor remains the holder of a share until the transferee's name is entered in the register of members as holder of it.

(4)    The directors may refuse to register the transfer of a share, and if they do so, the instrument of transfer must be returned to the transferee with the notice of refusal unless they suspect that the proposed transfer may be fraudulent.

(5)    The transferee shall acknowledge in writing and consent to their receipt of the transferred shares and shall inform the secretary of such acknowledgement.

## Transmission of shares

**56.**    (1)    If title to a share passes to a transmittee, the company may only recognise the transmittee as having any title to that share.

(2)    A transmittee who produces such evidence of entitlement to shares as the directors may properly require:

(a)    may, subject to the articles, choose either to become the holder of those shares or to have them transferred to another person, and

(b)    subject to the articles, and pending any transfer of the shares to another person, has the same rights as the holder had.

(3)    The transmittee shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the shares, but he shall not have the right to attend or vote at a general meeting, or agree to a proposed written resolution, in respect of shares to which they are entitled, by reason of the holder's death or bankruptcy or otherwise, unless they become the holders of those shares.

(4)    In the case of a share registered in the names of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased survivor, shall be the only persons recognised by the company as having any title to the share.

## Exercise of transmittees' rights

**57.**    (1)    Transmittees who wish to become the holders of shares to which they have become entitled must notify the company in writing of that wish.

(2)    If the transmittee wishes to have a share transferred to another person, the transmittee must execute an instrument of transfer in respect of it.

(3)    The directors shall, in either case set out in sub-article (1) and sub-article (2) above, have the same right to decline or

19

suspend registration as they would have had in the case of a transfer of the share by the deceased or bankrupt person before the death or bankruptcy.

(4)   Any transfer made or executed under this article is to be treated as if it were made or executed by the person from whom the transmittee has derived rights in respect of the share, and as if the event which gave rise to the transmission had not occurred.

### Transmittees bound by prior notices

58.   If a notice is given to a shareholder in respect of shares and a transmittee is entitled to those shares, the transmittee is bound by the notice if it was given to the shareholder before the transmittee's name has been entered in the register of members.

### Forfeiture of shares

59.   If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may, at any time thereafter during such time as any part of such call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

60.   The notice shall name a further day (not earlier than the expiration of fourteen days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

61.   If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

62.   A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the directors think fit.

63.   A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which at the date of forfeiture, were presently payable by him to the company in respect of the shares, but his liability shall cease if and when the company receive payment in full of the nominal amount of the shares.

64.   (1)   A statutory declaration in writing that the declarant is a director of the company, and that a share in the company has been duly forfeited on a date stated in the declaration,

shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share.

(2) The company may receive the consideration (if any) given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money (if any) nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

**65.** The provisions of these articles as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable.

**Alteration of Capital**

**66.** The company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

**67.** The new shares shall be subject to the same provisions with reference to the payment of calls, lien, transfer, transmission, forfeiture and otherwise as the shares in the original share capital.

**68.** The company may by ordinary resolution in a general meeting:

(a) increase its share capital by authorising new shares of such value and of such class as it thinks expedient;

(b) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(c) re-classify all or any of its share capital;

(d) convert all or any of its paid-up shares into stock, and reconvert that stock into paid-up shares of any denomination;

(e) subdivide any of its shares into shares of smaller amount than is fixed by its constitution (ensuring that in the sub-division the proportion of the amount paid and unpaid on each reduced share shall be the same as the share from which the reduced shares are derived);

(f) cancel shares which have not, at the date of the passing of the resolution, been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount so cancelled. A cancellation of shares in pursuance of this sub-article shall not be deemed to be a reduction of share capital within the meaning of this Act.

**69.** The company may by special resolution reduce its share capital and any capital redemption reserve fund in any manner and with,

21

and subject to, any incident authorised, and consent required, by law.

**Buy back of shares**

**70.**   The company shall have the authority, in accordance with the provisions of sections 105 to 116 of the Act (or the relevant sections contained in any modification or re-enactment thereof), to purchase its own shares (including any redeemable shares) in issue.

DIVIDENDS AND OTHER DISTRIBUTIONS

**Procedure for declaring dividends**

**71.**   (1)   The company may by ordinary resolution, on the recommendation of the directors, declare dividends.

(2)   A dividend must not be declared unless the directors have made a recommendation as to its amount. Such a dividend must not exceed the amount recommended by the directors.

(3)   No dividend may be declared or paid unless it is in accordance with shareholders' respective rights.

(4)   Unless the shareholders' resolution to declare or directors' decision to pay a dividend, or the terms on which shares are issued, specify otherwise, it must be paid by reference to each shareholder's holding of shares on the date of the resolution or decision to declare or pay it.

(5)   If the company's share capital is divided into different classes, no interim dividend may be paid on shares carrying deferred or non-preferred rights if, at the time of payment, any preferential dividend is in arrears.

(6)   The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company having regard to the company's up to date management accounts and, where these are not available, the current financial position of the company.

(7)   Notice of any dividend declared shall be given to each shareholder.

(8)   If the directors act in good faith, they do not incur any liability to the holders of shares conferring preferred rights for any loss they may suffer by the lawful payment of an interim dividend on shares with deferred or non-preferred rights.

**Payment of dividends and other distributions**

22

72.    No dividend shall be paid otherwise than out of profits.

73.    The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for meeting contingencies, or for equalising dividends, or for any other purpose to which the profits of the company may be properly applied, and pending such application may, at the like discretion either be employed in the business of the company, or be invested in such investments (other than shares of the company) as the directors may from time to time think fit.

74.    If several persons are registered as joint holders of any share, any one of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share.

75.    Where a dividend or other sum which is a distribution is payable in respect of a share, it must be paid by one or more of the following means:

(a)    transfer to a bank or building society account specified by the distribution recipient either in writing or as the directors may otherwise decide;

(b)    sending a cheque made payable to the distribution recipient by post to the distribution recipient at the distribution recipient's registered address (if the distribution recipient is a holder of the share), or (in any other case) to an address specified by the distribution recipient either in writing or as the directors may otherwise decide;

(c)    sending a cheque made payable to such person by post to such person at such address as the distribution recipient has specified either in writing or as the directors may otherwise decide; or

(d)    any other means of payment as the directors agree with the distribution recipient either in writing or by such other means as the directors decide.

**No interest on distributions**

76.    The company may not pay interest on any dividend or other sum payable in respect of a share unless otherwise provided by:

(a)    the terms on which the share was issued, or

(b)    the provisions of another agreement between the holder of that share and the company.

**Unclaimed distributions**

77.    (1)    All dividends or other sums which are:

(a)    payable in respect of shares, and

23

(b)    unclaimed after having been declared or become payable,

may be invested or otherwise made use of by the directors for the benefit of the company until claimed.

(2)    The payment of any such dividend or other sum into a separate account does not make the company a trustee in respect of it.

(3)    If:

(a)    six years have passed from the date on which a dividend or other sum became due for payment, and

(b)    the distribution recipient has not claimed it,

the distribution recipient is no longer entitled to that dividend or other sum and it ceases to remain owing by the company.

**Dividends in specie**

**78.**    (1)    Subject to the terms of issue of the share in question, the company may, by ordinary resolution on the recommendation of the directors, decide to pay all or part of a dividend or other distribution payable in respect of a share by transferring non-cash assets of equivalent value (including, without limitation, shares or other securities in any company).

(2)    For the purposes of paying a non-cash distribution, the directors may make whatever arrangements they think fit, including, where any difficulty arises regarding the distribution:

(a)    fixing the value of any assets;

(b)    paying cash to any distribution recipient on the basis of that value in order to adjust the rights of recipients; and

(c)    vesting any assets in trustees.

(3)    In calculating the value of the proposed non-cash distribution the directors shall have regard to the book value of the assets calculated by reference to the latest accounts of the company.

**Waiver of distributions**

**79.**    Distribution recipients may waive their entitlement to a dividend or other distribution payable in respect of a share by deed of waiver and by giving notice in writing to the company to that effect, but if:

(a)    the share has more than one holder, or

(b)    more than one person is entitled to the share, whether by reason of the death or bankruptcy of one or more joint holders, or otherwise,

the notice is not effective unless it is expressed to be given, and signed, by all the holders or persons otherwise entitled to the share.

## CAPITALISATION OF PROFITS

**Authority to capitalise and appropriation of capitalised sums**

80. (1) Subject to the articles, the directors may, if they are so authorised by an ordinary resolution:

   (a) decide to capitalise any profits of the company (whether or not they are available for distribution) which are not required for paying a preferential dividend, or any sum standing to the credit of the company's share premium account or capital redemption reserve; and

   (b) appropriate any sum which they so decide to capitalise (a "capitalised sum") to the persons who would have been entitled to it if it were distributed by way of dividend (the "persons entitled") and in the same proportions.

   (2) Capitalised sums must be applied:

   (a) on behalf of the persons entitled, and

   (b) in the same proportions as a dividend would have been distributed to them.

   (3) Any capitalised sum may be applied in paying up new shares of a nominal amount equal to the capitalised sum which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (4) A capitalised sum which was appropriated from profits available for distribution may be applied in paying up new debentures of the company which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (5) Subject to the articles the directors may:

   (a) apply capitalised sums in accordance with paragraphs (3) and (4) partly in one way and partly in another;

   (b) make such arrangements as they think fit to deal with shares or debentures; and

   (c) authorise any person to enter into an agreement with the company on behalf of any interested persons in respect of the allotment of shares and debentures to them under this article. Any such agreement shall be binding on all interested persons.

PART 4

25

DECISION-MAKING BY SHAREHOLDERS

ORGANISATION OF GENERAL MEETINGS

**Calling of General Meetings**

81. All meetings called pursuant to section 193 of the Act (annual general meetings) shall be called ordinary general meetings; all other general meetings shall be called extraordinary general meetings.

82. (1) The directors may, whenever they think fit, convene an extraordinary general meeting in writing as provided by section 196 (3) of the Act.

(2) A meeting of a company, other than a meeting for the passing of a special resolution, may be called by 7 days' notice in writing.

(3) A meeting of a company for the passing of a special resolution may be called by giving at least 21 days' notice in writing of the meeting and specifying in the notice the intention to propose the resolution as a special resolution.

(4) If all the members entitled to attend and vote at any such meetings so agree, a resolution may be proposed and passed at a meeting of which less than the notice period stipulated in sub-article (2) and sub-article (3).

(5) Extraordinary general meetings shall be convened on such requisition, or in default, may be convened by such requisitionists, as provided by section 195 of the Act.

(6) If at any time there are not in Gibraltar sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors, but such convocation must be in writing.

**Notice of General Meetings**

83. Subject to the provisions of section 201 (2) of the Act relating to special resolutions, seven days' notice at the least (exclusive of the day on which the notice is served or deemed to be served, but inclusive of the day for which notice is given) specifying the place, the day and the hour of meeting and, in case of special business, the general nature of that business shall be given in manner hereinafter mentioned, or in such other manner (if any) as may be prescribed by the company in general meeting, to such persons as are, under the articles of the company, entitled to receive such notices from the company; but with the consent of all the members entitled to receive notice of some particular meeting, that meeting may be convened by such shorter notice and in such manner as those members may think fit.

84.   The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any member shall not invalidate the proceedings at any meeting except in relation to a notice given under section 195 of the Act.

85.   All business shall be deemed special that is transacted at an extraordinary meeting.

86.    With the exception of sanctioning a dividend, the consideration of the accounts, balance sheets and the ordinary report of the directors and auditors, and the fixing of the remuneration of the auditors, all business that is transacted at an ordinary meeting shall be deemed special.

### Attendance and speaking at general meetings

87.   (1)   A person is able to exercise the right to speak at a general meeting when that person is in a position to communicate to all those attending the meeting, during the meeting, any information or opinions which that person has on the business of the meeting.

(2)   A person is able to exercise the right to vote at a general meeting when:

(a)   that person is able to vote, during the meeting, on resolutions put to the vote at the meeting, and

(b)   that person's vote can be taken into account in determining whether or not such resolutions are passed at the same time as the votes of all the other persons attending the meeting.

(3)   The directors may make whatever arrangements they consider appropriate to enable those attending a general meeting to exercise their rights to speak or vote at it.

(4)   In determining attendance at a general meeting, it is immaterial whether any two or more members attending it are in the same place as each other.

(5)   Two or more persons who are not in the same place as each other attend a general meeting if their circumstances are such that if they have (or were to have) rights to speak and vote at that meeting, they are (or would be) able to exercise them.

### Quorum for general meetings

88.   No business other than the appointment of the chairman of the meeting is to be transacted at a general meeting if the persons attending it do not constitute a quorum.

89.   No business shall be transacted at any general meeting unless a quorum of Members is present at the time when the meeting

27

proceeds to business. Save as herein otherwise provided two members present in person or by proxy shall be a quorum unless there shall at any time be one member in which event such member alone shall have the authority to transact the business of a general meeting and shall do so by written resolution under his hand.

## Chairing general meetings

**90.** (1) If the directors have appointed a chairman, the chairman shall chair general meetings if present and willing to do so.

(2) If the directors have not appointed a chairman, or if the chairman is unwilling to chair the meeting or is not present within ten minutes of the time at which a meeting was due to start:

   (a) the directors present, or

   (b) (if no directors are present), the meeting,

   must appoint a director or shareholder to chair the meeting, and the appointment of the chairman of the meeting must be the first business of the meeting.

(3) The person chairing a meeting in accordance with this article is referred to as "the chairman of the meeting".

## Attendance and speaking by directors and non-shareholders

**91.** (1) Directors may attend and speak at general meetings, whether or not they are shareholders.

(2) The chairman of the meeting may permit other persons who are not:

   (a) shareholders of the company, or

   (b) otherwise entitled to exercise the rights of shareholders in relation to general meetings,

   to attend and speak at a general meeting.

## Adjournment

**92.** (1) If the persons attending a general meeting within half an hour of the time at which the meeting was due to start do not constitute a quorum, or if during a meeting a quorum ceases to be present, the chairman of the meeting must adjourn it, unless the meeting was convened upon the requisition of members, in which case it shall be dissolved.

(2) The chairman of the meeting may adjourn a general meeting at which a quorum is present if:

   (a) the meeting consents to an adjournment, or

   (b) it appears to the chairman of the meeting that an adjournment is necessary to protect the safety of any person attending the meeting or ensure that the

28

business of the meeting is conducted in an orderly manner.

(3)   The chairman of the meeting must adjourn a general meeting if directed to do so by the meeting.

(4)   When adjourning a general meeting, the chairman of the meeting must:

(a)   either specify the time and place to which it is adjourned or state that it is to continue at a time and place to be fixed by the directors, and

(b)   have regard to any directions as to the time and place of any adjournment which have been given by the meeting.

(5)   If the continuation of an adjourned meeting is to take place more than 10 days after it was adjourned, the company must give at least 7 clear days' notice of it (that is, excluding the day of the adjourned meeting and the day on which the notice is given):

(a)   to the same persons to whom notice of the company's general meetings is required to be given, and

(b)   containing the same information which such notice is required to contain.

(6)   No business may be transacted at an adjourned general meeting which could not properly have been transacted at the meeting if the adjournment had not taken place.

## VOTING AT GENERAL MEETINGS

### Voting: general

**93.**   (1)   An ordinary resolution of the members (or of a class of members) of the company means a resolution that is passed by members representing a simple majority (more than 50%) of the total voting rights of the members or, as the case may be, of the class of members.

(2)   An extraordinary resolution of the members means a resolution that is passed by members representing a majority of not less than 75% of those members at a general meeting of which notice specifying the terms of the resolution and the intention to propose the resolution as an extraordinary resolution has been given.

(3)   A special resolution of the members means a resolution that is passed by members representing a majority of not less than 75% of those members at a general meeting of which not less than 21 days' notice, specifying the intention to propose the resolution as a special resolution has been given in accordance with article 82.

29

94. A resolution put to the vote of a general meeting must be decided on a show of hands unless a poll is duly demanded in accordance with the articles.

95. (1) On a show of hands every member present in person shall have one vote.

(2) On a poll every member shall have one vote for each share of which he is the holder.

96. In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

97. If a member is suffering from mental disorder, a person authorised in that behalf under section 47 of the Mental Health Act or a receiver appointed under section 49 of that Act may vote on behalf of the member, either on a show of hands or on a poll.

98. No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

**Errors and disputes**

99. (1) No objection may be raised to the qualification of any person voting at a general meeting except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting is valid.

(2) Any such objection must be referred to the chairman of the meeting, whose decision is final.

**Poll votes**

100. (1) A poll on a resolution may be demanded:

(a) in advance of the general meeting where it is to be put to the vote, or

(b) at a general meeting, either before a show of hands on that resolution or immediately after the result of a show of hands on that resolution is declared.

(2) A poll may be demanded by:

(a) the chairman of the meeting;

(b) the directors;

(c) three or more persons having the right to vote on the resolution; or

(d) a person or persons representing not less than 15% of the total voting rights of all the shareholders having the right to vote on the resolution.

30

(3)    A demand for a poll may be withdrawn if:

    (a)    the poll has not yet been taken, and

    (b)    the chairman of the meeting consents to the withdrawal.

(4)    Polls must be taken immediately and in such manner as the chairman of the meeting directs.

(5)    On a poll votes may be given either personally or by proxy.

(6)    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

(7)    A poll demanded on the election of a chairman or on a question of adjournment, shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

**Content of proxy notices**

**101.**  (1)    Proxies may only validly be appointed by a notice in writing (a "proxy notice") which:

    (a)    states the name and address of the shareholder appointing the proxy;

    (b)    identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;

    (c)    is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and

    (d)    is delivered to the company in accordance with the articles and any instructions contained in the notice of the general meeting to which they relate and in any event must be deposited at the registered office of the company not less than 24 hours before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote.

(2)    The company may require proxy notices to be delivered in a particular form, and may specify different forms for different purposes.

(3)    Proxy notices may specify how the proxy appointed under them is to vote (or that the proxy is to abstain from voting) on one or more resolutions.

(4)    Unless a proxy notice indicates otherwise, it must be treated as:

    (a)    allowing the person appointed under it as a proxy discretion as to how to vote on any ancillary or procedural resolutions put to the meeting, and

31

(b)    appointing that person as a proxy in relation to any adjournment of the general meeting to which it relates as well as the meeting itself.

(5)    The chairman of the meeting may on behalf of the company waive the requirement for a proxy notice pursuant to this article with the approval of all the directors.

**Delivery of proxy notices**

**102.** (1)    A person who is entitled to attend, speak or vote (either on a show of hands or on a poll) at a general meeting remains so entitled in respect of that meeting or any adjournment of it, even though a valid proxy notice has been delivered to the company by or on behalf of that person.

(2)    An appointment under a proxy notice may be revoked by delivering to the company a notice in writing given by or on behalf of the person by whom or on whose behalf the proxy notice was given.

(3)    A notice revoking a proxy appointment only takes effect if it is delivered before the start of the meeting or adjourned meeting to which it relates.

(4)    If a proxy notice is not executed by the person appointing the proxy, it must be accompanied by written evidence of the authority of the person who executed it to execute it on the appointor's behalf.

**103.**    Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

**Resolution in writing**

**104.** (1)    A resolution in writing signed by all members of the company who would be entitled to vote if that resolution were submitted to a general meeting shall be as effective for all purposes as a resolution of the company passed in general meeting duly convened and constituted, and may consist of several instruments in the like form each executed by one or more of the members.

(2)    Such resolution in writing shall be pasted in or attached to the minute book of the company.

PART 5

ADMINISTRATIVE ARRANGEMENTS

**Place of meetings**

32

**105.** The meetings of the directors or the shareholders of the company may be held in Gibraltar or elsewhere in the world.

**Means of communication to be used**

**106.** (1) Subject to the articles, anything sent or supplied by or to the company under the articles may be sent or supplied in any way in which the Act provides for documents or information which are authorised or required by any provision of that Act to be sent or supplied by or to the company.

(2) A director may agree with the company that notices or documents sent to that director in a particular way are to be deemed to have been received within a specified time of their being sent, and for the specified time to be less than 24 hours.

**Company seals**

**107.** (1) Any common seal may only be used by the authority of the directors.

(2) The directors may decide by what means and in what form any common seal is to be used.

(3) Unless otherwise decided by the directors, if the company has a common seal and it is affixed to a document, the document must also be signed by at least one authorised person in the presence of a witness who attests the signature.

(4) For the purposes of this article, an authorised person is:

(a) any director of the company;

(b) the company secretary; or

(c) any person authorised by the directors for the purpose of signing documents to which the common seal is applied.

**No right to inspect accounts and other records**

**108.** Except as provided by law or authorised by the directors or an ordinary resolution of the company, no person is entitled to inspect any of the company's accounting or other records or documents merely by virtue of being a shareholder.

**Provision for employees on cessation of business**

**109.** The directors may decide to make provision for the benefit of persons employed or formerly employed by the company or any of its subsidiaries (other than a director or former director or shadow director) in connection with the cessation or transfer to any person of the whole or part of the undertaking of the company or that subsidiary.

33

## DIRECTORS' INDEMNITY AND INSURANCE

**Indemnities**

110. The directors, managers, secretary and other officers or servants for the time being of the company acting in relation to any of the affairs of the company, or every one of them shall be indemnified and secured harmless out of the assets and profits of the company from and against all actions, costs, charges, losses, damages and expenses which they, or any of them, shall or may incur or sustain by reason of any contract entered into or act done, concurred in or omitted in or about the execution of their duty or supposed duty in their respective office, except such (if any) as they shall incur or sustain by or through their own wilful neglect or wilful default respectively, and none of them shall be answerable for the acts, receipts, neglects or defaults of the other or others of them, or for joining in any receipt for the sake of conformity or for any bankers or other persons with whom any moneys or effects belonging to the company shall or may be lodged or deposited for safe custody, or for any defect of title of the company to any property purchased, or for any insufficiency or deficiency of or defect of title of the company to any security upon which any moneys of or belonging to the company shall be placed out or invested, or for any loss, misfortune or damage resulting from any such cause as aforesaid or which may happen in the execution of their respective office or in relation thereto, except the same shall happen by or through their own wilful neglect or wilful default respectively.

111. (1) Subject to paragraph (2), a relevant director of an associated company may be indemnified out of the company's assets against any liability which by virtue of any rule of law would otherwise attach to him in respect of any negligence, default, breach of duty or breach of trust of which he may be guilty in relation to the company.

   (2) This article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Act or by any other provision of law.

   (3) In this article:

   (a) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate, and

   (b) a "relevant director" means any director or former director of an associated company.

**Insurance**

112. (1) The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant director in respect of any relevant loss.

   (2) In this article:

34

(a)    a "relevant director" means any director or former director of the company or an associated company,

(b)    a "relevant loss" means any loss or liability which has been or may be incurred by a relevant director in connection with that director's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated company, and

(c)    companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.


PART 6

WINDING UP AND RE-DOMICILIATION

**Winding Up**

113.    If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Act, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and  may for such purpose set such value as he deems fair upon any property to be divided as aforesaid, and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of contributories as the liquidator with the like sanction shall think fit, but so that no member shall be compelled to accept any shares or other securities whereupon there is any liability.

**Transfer by way of re-domiciliation**

114.    The company shall, in accordance with the provisions of the Companies (Re-domiciliation) Regulations (or any modification or re-enactment thereof) and with the approval of a Special Resolution, have the power to register by way of re-domiciliation as a body corporate under the law of any jurisdiction outside Gibraltar and to be deregistered in Gibraltar.

## Exhibit H-15

**Reorganized Aegean Bunkering (Gibraltar) Ltd Amended Articles of Association**

PRIVATE COMPANY LIMITED BY SHARES

Amended and Restated Articles of Association
of

**Aegean Bunkering (Gibraltar) Limited**

INDEX TO THE ARTICLES

PART 1
INTERPRETATION AND LIMITATION OF LIABILITY

1.      Defined terms and references
2.      Private company
3.      Liability of members
4.      Applicability of standard form memorandum and articles of association

PART 2
OFFICERS

5.      First directors

APPOINTMENT OF DIRECTORS

6.      Methods of appointing directors
7.      Termination of director's appointment
8.      Removal of directors
9.      Directors' remuneration
10.     Directors' expenses

ALTERNATE DIRECTORS

11.     Appointment and removal of alternates
12.     Rights and responsibilities of alternate directors
13.     Termination of alternate directorship

DIRECTORS' POWERS AND RESPONSIBILITIES

14.     Directors' general authority
15.     Directors may delegate
16.     Powers of attorney
17-21.  Borrowing powers
22.     Accounts and balance sheets
23.     Committees
24.     Appointment of secretary

DECISION-MAKING BY DIRECTORS

25.     Directors to take decisions collectively
26.     Unanimous decisions
27      Calling a directors' meeting
28.     Participation in directors' meetings
29-30.  Quorum for directors' meetings
31.     Chairing of directors' meetings
32.     Casting vote

1

33.        Alternates voting at directors' meetings
34-36.     Conflicts of interest
37.        Defect in appointment
38.        Records of decisions to be kept


PART 3
SHARES AND DISTRIBUTIONS

SHARES

39.        Allotment of shares
39A.       Non-voting shares
40.        Fractional shares
41.        Payment of shares
42-45.     Lien
46-50.     All of shares
51.        Powers to issue different classes of share
52.        Company not bound by less than absolute interests
53.        Share certificates
54.        Replacement share certificates
55.        Share transfers
56.        Transmission of shares
57.        Exercise of transmittees' rights
58.        Transmittees bound by prior notices
59-65.     Forfeiture of shares
66-69.     Alteration of capital
70.        Buy back of shares

DIVIDENDS AND OTHER DISTRIBUTIONS

71.        Procedure for declaring dividends
72-75.     Payment of dividends and other distributions
76.        No interest on distributions
77.        Unclaimed distributions
78.        Dividends in specie
79.        Waiver of distributions

CAPITALISATION OF PROFITS

80.        Authority to capitalise and appropriation of capitalised sums


PART 4
DECISION-MAKING BY SHAREHOLDERS

ORGANISATION OF GENERAL MEETINGS

81-82.     Calling of general meetings
83-86.     Notice of general meetings
87.        Attendance and speaking at general meetings
88-89.     Quorum for general meetings
90.        Chairing general meetings
91.        Attendance and speaking by directors and non-shareholders
92.        Adjournment

VOTING AT GENERAL MEETINGS

93-98.     Voting: general

99.       Errors and disputes
100.      Poll votes
101.      Content of proxy notices
102-103.  Delivery of proxy notices
104.      Resolution in writing

PART 5
ADMINISTRATIVE ARRANGEMENTS

105.      Place of meetings
106.      Means of communication to be used
107.      Company seals
108.      No right to inspect accounts and other records
109.      Provision for employees on cessation of business

DIRECTORS' INDEMNITY AND INSURANCE

110-111.  Indemnities
112.      Insurance

PART 6
WINDING UP AND RE-DOMICLIATION

113.      Winding up
114.      Transfer by way of re-domiciliation

PART 1

INTERPRETATION AND LIMITATION OF LIABILITY

**Defined terms and references**

**1.**     (1) In the articles, unless the context requires otherwise:

"Act" shall mean the Companies Act 2014 including any modification or re-enactment thereof.

"alternate" or "alternate director" has the meaning given in article 11;

"appointor" has the meaning given in article 11;

"articles" means the company's articles of association;

"bankruptcy" includes individual insolvency proceedings in a jurisdiction other than Gibraltar which have an effect similar to that of bankruptcy;

"chairman" has the meaning given in article 31;

"chairman of the meeting" has the meaning given in article 90;

"company" shall mean "Aegean Bunkering (Gibraltar) Limited"

"director" means a director of the company, and includes any person occupying the position of director, by whatever name called;

"distribution recipient" means, in respect of a share in respect of which a dividend or other sum is payable:

(a)     the holder of the share; or

(b)     if the share has two or more joint holders, whichever of them is named first in the register of members; or

(c)     if the holder is no longer entitled to the share by reason of death or bankruptcy, or otherwise by operation of law, the transmittee; and

(d)     any person to which a shareholder assigns his right to receive a dividend or person which the shareholder has instructed the company in writing to pay the dividend to.

"document" includes, unless otherwise specified, any document sent or supplied in electronic form;

"holder" in relation to shares means the person whose name is entered in the register of members as the holder of the shares;

"instrument" means a document in hard copy form;

"member" means the subscribers of the memorandum of a company and every other person who agrees to become a

4

member of a company, and whose name is entered in its register of members.

"ordinary resolution" has the meaning given in section 200 of the Act;

"paid" means paid or credited as paid;

"participate", in relation to a directors' meeting, has the meaning given in article 28;

"person" shall, where appropriate, mean any real or legal person;

"proxy notice" has the meaning given in article 101;

"shareholder" means a person who is the holder of a share;

"shares" means shares in the company;

"special resolution" has the meaning given in section 201 of the Act;

"subsidiary" has the meaning given in section 2 of the Act;

"transmittee" means a person entitled to a share by reason of the death or bankruptcy of a shareholder or otherwise by operation of law; and

"writing" means the representation or reproduction of words, symbols or other information in a visible form by any method or combination of methods, whether sent or supplied in electronic form or otherwise.

(2)  Unless the context otherwise requires, other words or expressions contained in these articles bear the same meaning as in the Act as in force on the date when these articles become binding on the company.

(3)  When any provision of the Act is referred to, the reference is to that provision as modified by any statute for the time being in force.

## Private company

2.  The company is a "private company" within the meaning of the Act, and accordingly the following provisions shall have effect:

(a)  The company shall not offer any of its shares or debentures to the public for subscription; and

(b)  The right to transfer shares in the company shall be restricted in the manner hereinafter provided.

## Liability of members

3.  The liability of the members is limited to the amount, if any, unpaid on the shares held by them.

**Applicability of standard form memorandum and articles of association**

4.  The form of memorandum and articles of association of a private company limited by shares contained in the Companies Act (Model Memoranda and Articles) Regulations 2014 shall, unless specific reference is made to the contrary in these articles, not apply to the company.

PART 2

OFFICERS

**First directors**

5.  (1)  The number of directors and the names of the first directors shall be determined in writing by the majority of the subscribers of the memorandum of association of the company.

APPOINTMENT OF DIRECTORS

**Methods of appointing directors**

6.  (1)  Any person who is willing to act as a director, and is permitted by law to do so, may be appointed to be a director:

    (a)  by ordinary resolution, or

    (b)  by a decision of the directors.

    (2)  In any case where, as a result of death, the company has no shareholders and no directors, the personal representatives of the last shareholder to have died have the right, by notice in writing, to appoint a person to be a director.

    (3)  For the purposes of paragraph (2), where 2 or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

**Termination of director's appointment**

7.  A person ceases to be a director as soon as:

    (a)  that person ceases to be a director by virtue of any provision of the Act or of the Insolvency Act 2011 or is prohibited from being a director by law;

    (b)  a bankruptcy order is made against that person;

    (c)  if he is absent from the meetings of the directors for six months without the leave of the other directors or a majority of the other directors;

    (d)  a registered medical practitioner who is treating that person gives a written opinion to the company stating that that person has become physically or mentally incapable of

6

acting as a director and may remain so for more than three months;

(e)    notification is received by the company from the director that the director is resigning from office, and such resignation has taken effect in accordance with its terms;

(f)    if he becomes prohibited by law from acting as a Director; and

(g)    if he is removed from office under the provisions of article 8.

**Removal of directors**

**8.**    The company may, by ordinary resolution of which special notice has been given, or by special resolution, remove any director from office, notwithstanding any provisions of these presents or of any agreement between the company and such director, but without prejudice to any claim he may make for damages for breach of such agreement. The company may, by ordinary resolution, appoint another person to be a director in the place of a director so removed from office. In default of such appointment the vacancy so arising may be filled by the directors as a casual vacancy.

**Directors' remuneration**

**9.**    (1)    Directors may undertake any services for the company that the directors decide.

(2)    Directors are entitled to such remuneration as the directors determine:

(a)    for their services to the company as directors, and

(b)    for any other service which they undertake for the company.

(3)    Subject to the articles, a director's remuneration may:

(a)    take any form, and

(b)    include any arrangements in connection with the payment of a pension, allowance or gratuity, or any death, sickness or disability benefits, to or in respect of that director.

(4)    Unless the directors decide otherwise, directors' remuneration accrues from day to day.

(5)    Unless the directors decide otherwise, directors are not accountable to the company for any remuneration which they receive as directors or other officers or employees of the company's subsidiaries or of any other body corporate in which the company is interested.

**Directors' expenses**

7

10.    The company may pay any reasonable expenses which the directors properly incur in connection with their attendance at:

(a)    meetings of directors or committees of directors,

(b)    general meetings, or

(c)    separate meetings of the holders of any class of shares or of debentures of the company, or otherwise in connection with the exercise of their powers and the discharge of their responsibilities in relation to the company.

ALTERNATE DIRECTORS

**Appointment and removal of alternates**

11.    (1)    Any director (the "appointor") may appoint as an alternate any other director, or any other person approved by resolution of the directors, to:

(a)    exercise that director's powers, and

(b)    carry out that director's responsibilities, in relation to the taking of decisions by the directors in the absence of the alternate's appointor.

(2)    Any appointment or removal of an alternate must be effected by notice in writing to the company signed by the appointor, or in any other manner approved by the directors.

(3)    The notice must:

(a)    identify the proposed alternate, and

(b)    in the case of a notice of appointment, contain a statement signed by the proposed alternate that the proposed alternate is willing to act as the alternate of the director giving the notice.

**Rights and responsibilities of alternate directors**

12.    (1)    An alternate director has the same rights, in relation to any directors' meeting or directors' written resolution, as the alternate's appointor.

(2)    Except as the articles specify otherwise, alternate directors:

(a)    are deemed for all purposes to be directors;

(b)    are liable for their own acts and omissions;

(c)    are subject to the same restrictions as their appointors; and

(d)    are not deemed to be agents of or for their appointors.

(3)    A person who is an alternate director but not a director:

(a)    may be counted as participating for the purposes of determining whether a quorum is participating (but

8

only if that person's appointor is not participating), and

(b)     may sign a written resolution (but only if it is not signed or to be signed by that person's appointor).

No alternate may be counted as more than one director for such purposes.

(4)     An alternate director is not entitled to receive any remuneration from the company for serving as an alternate director except such part of the alternate's appointor's remuneration as the appointor may direct by notice in writing made to the company.

**Termination of alternate directorship**

**13.**     An alternate director's appointment as an alternate terminates:

(a)     when the alternate's appointor revokes the appointment by notice to the company in writing specifying when it is to terminate;

(b)     on the occurrence in relation to the alternate of any event which, if it occurred in relation to the alternate's appointor, would result in the termination of the appointor's appointment as a director;

(c)     on the death of the alternate's appointor; or

(d)     when the alternate's appointor's appointment as a director terminates, except that an alternate's appointment as an alternate does not terminate when the appointor retires by rotation at a general meeting and is then re-appointed as a director at the same general meeting.

DIRECTORS' POWERS AND RESPONSIBILITIES

**Directors' general authority**

**14.**     Subject to the articles, the directors are responsible for the management of the company's business, for which purpose they may exercise all the powers of the company.

**Directors may delegate**

**15.**     Subject to the articles, the directors may delegate any of the powers which are conferred on them under the articles:

(a)     to such person or committee;

(b)     by such means (including by power of attorney);

(c)     to such an extent;

(d)     in relation to such matters or territories; and

(e)     on such terms and conditions;

as they think fit.

**Powers of attorney**

9

16.   Every power of attorney granted by the company pursuant to article 15(b) must be executed as a deed and must make clear on its face that it is intended to be a deed.

**Borrowing Powers**

17.   The directors may exercise all the powers of the company to: borrow money, and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, and to give guarantee and to issue debentures, debenture stock and other securities whether outright or as a security for any debt, liability or obligations of the company or of any third party.

18.   The directors may borrow or raise any such moneys upon or by the issue or sale of any bonds, debentures, debenture stock, or securities, and upon such terms as to time of repayment, rate of interest, price of issue or sale, payment of premium or bonus upon redemption or repayment or otherwise as they may think proper, including a right for the holders of bonds debentures, debenture stock or securities to exchange the same for shares in the company or any class authorised to be issued.

19.   Subject to the provisions contained in these articles, the directors may secure or provide for the payment of any moneys to be borrowed or raised by a mortgage of, or charge upon, all or any part of the undertaking or property of the company, both present and future, and confer upon any mortgagees or persons in whom any debenture, debenture stock or security is vested such rights and powers as they think necessary or expedient, and they may vest any property of the company in trustees for the purpose of securing any moneys so borrowed or raised and confer upon the trustees or any debenture holders such rights and powers as the directors may think necessary or expedient in relation to the undertaking or property of the company, or the management or the realisation thereof, or the making, receiving or enforcing of calls upon the members in respect of unpaid capital and otherwise and may make and issue debentures to trustees for the purpose of further securities and any such trustee may be remunerated.

20.   The directors may give security for the payment of moneys payable by the company in like manner as for the payment of money borrowed or raised.

21.   The directors shall cause a proper register to be kept in accordance with the Act of all mortgages and charges specifically affecting the property of the company and shall keep a copy of every instrument creating a charge at the company's registered office and shall duly comply with the requirements of the Act in relation to any security given by the company.

**Accounts and balance sheets**

22. (1) The directors shall cause to be kept proper books of account with respect to:

   (a) all sums of money received and expended by the company and all bills and receipts and other matters in respect of which the receipt and expenditure takes place;

   (b) all the work and operations and purchases and sales of goods by the company; and

   (c) the assets and liabilities of the company;

   (2) The books of account shall be kept at the registered office of the company, or at such other place as the directors think fit, and shall at all times be open to inspection by the directors.

   (3) An auditor shall be appointed and duties regulated in accordance with the Act.

   (4) The directors shall, in accordance with the Act, cause to be made out in every year and to be laid before the company in general meeting a balance sheet and profit and loss account to be decided upon by the directors, and made up to a date within nine months of the day of the meeting.

   (5) The directors shall, in respect of each financial year, deliver to the Registrar of Companies annual accounts:

   (a) within 18 months from the first anniversary of the incorporation of the company; or

   (b) within 12 months after the end of the relevant financial year,

   (6) The annual accounts supplied in accordance with sub-article (5) shall be signed by two directors, or, if there is only one director, by that director.

**Committees**

23. (1) Committees to which the directors delegate any of their powers must follow procedures which are based as far as they are applicable on those provisions of the articles which govern the taking of decisions by directors.

   (2) The directors may make rules of procedure for all or any committees, which prevail over rules derived from the articles if they are not consistent with them.

**Appointment of Secretary**

24. Subject to the provisions of the Act, the secretary shall be appointed by the directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

DECISION-MAKING BY DIRECTORS

11

**Directors to take decisions collectively**

**25.**  (1)  As a general rule any decision of the directors must be either a majority decision at a meeting or a decision taken in accordance with article 26.

(2)  If:

(a)  the company only has one director, and

(b)  no provision of the articles requires it to have more than one director,

the general rule does not apply, and the director may take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

**Unanimous decisions**

**26.**  (1)  A decision of the directors is taken in accordance with this article when all eligible directors indicate to each other by any means that they share a common view on a matter.

(2)  Such a decision shall be recorded as a resolution in writing, copies of which have been signed by each eligible director.

(3)  References in this article to eligible directors are to directors who would have been entitled to vote on the matter had it been proposed as a resolution at a directors' meeting.

(4)  A decision may not be taken in accordance with this article if the eligible directors would not have formed a quorum at such a meeting.

**Calling a directors' meeting**

**27.**  (1)  Any director may call a directors' meeting by giving notice of the meeting to the directors or by authorising the company secretary (if any) to give such notice.

(2)  Notice of any directors' meeting must indicate:

(a)  its proposed date and time;

(b)  where it is to take place; and

(c)  if it is anticipated that directors participating in the meeting will not be in the same place, how it is proposed that they should communicate with each other during the meeting.

(3)  Notice of a directors' meeting must be given to each director, but need not be in writing.

**Participation in directors' meetings**

**28.**  (1)  Directors participate in a directors' meeting, or part of a directors' meeting, when:

12

    (a)    the meeting has been called and takes place in accordance with article 27, and

    (b)    they can each communicate to the others any information or opinions they have on any particular item of the business of the meeting.

(2)    If all the directors participating in a meeting are not in the same place, they may decide that the meeting is to be treated as taking place wherever any of them is.

**Quorum for directors' meetings**

**29.** (1)    At a directors' meeting, unless a quorum is participating, no proposal is to be voted on, except a proposal to call another meeting.

(2)    The quorum for directors' meetings may be fixed from time to time by a decision of the directors, and unless so fixed shall when the number of directors is two or exceeds two, be two, and when the number of directors is one, be one.

**30.**    The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the articles of the company as the necessary quorum of directors, the continuing directors may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purpose.

**Chairing of directors' meetings**

**31.** (1)    The directors may appoint a director to chair their meetings.

(2)    The person so appointed for the time being is known as the chairman.

(3)    The directors may terminate the chairman's appointment at any time.

(4)    If the chairman is not participating in a directors' meeting within fifteen minutes of the time at which it was to start, the participating directors must appoint one of themselves to chair it.

(5)    Director's meetings shall be deemed to be held where the chairman is located.

**Casting vote**

**32.** (1)    If the numbers of votes for and against a proposal are equal, the chairman or other director chairing the meeting has a casting vote.

(2)    Sub-article (1) does not apply if, in accordance with the articles, the chairman or other director is not to be counted as participating in the decision-making process for quorum or voting purposes.

13

**Alternates voting at directors' meetings**

33.     A director who is also an alternate director has an additional vote on behalf of each appointor who is:

(a)     not participating in a directors' meeting, and

(b)     would have been entitled to vote if they were participating in it.

**Conflicts of interest**

34.     A director who is in any way, whether directly or indirectly, interested in a contract or proposed contract (being a contract of significance in relation to the company's business) with the company shall, if his interest in the contract or proposed contract is material, declare the nature of his interest at a meeting of the directors in accordance with the Act.

35.     A director, having declared the nature of his interest at the meeting of the directors, may vote in respect of the matter in which he is so interested and may count in the quorum of that meeting.

36.     A director, notwithstanding his interest, may be counted in the quorum present at any meeting whereat he or any other director is appointed to hold any such office or place of profit under the company or whereat the terms of any such appointment are arranged, and he may vote on any such appointment or arrangement other than his own appointment or the arrangement of the terms thereof.

**Defect in appointment**

37.     All acts done by any meeting of the directors or of a committee of directors, or by any person acting as a director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

**Records of decisions to be kept**

38.     The directors must ensure that the company keeps a record, in writing, for at least 6 years from the date of the decision recorded, of every unanimous or majority decision taken by the directors.

PART 3

SHARES AND DISTRIBUTIONS

SHARES

14

### Allotment of shares

**39.**  The shares of the company shall be allotted by the directors to such persons at such times and upon such terms and conditions and either at a premium or at par as they think fit.

### Non-voting shares

**39A.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date that this Article is approved the Company; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Article 39A, any class or series of equity securities that has only such voting rights as are mandated by the Companies Act 2014 shall be deemed to be nonvoting for purposes of the restrictions of this Article 39A.

### Fractional shares

**40.**  The company may not issue fractional shares except as otherwise provided in article 52.

### Payment of shares

**41.**  (1)  Shares of the company need not be fully-paid up.

(2)  Shares of the company may only be issued at a discount in accordance with the provisions of the Act.

### Lien

**42.**  (1)  The company shall have a lien on every share (not being a fully-paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the company shall also have a lien on all shares (other than fully-paid shares) standing registered in the name of a single person for all moneys presently payable by him or his estate to the company; but the directors may at any time declare any share to be wholly or in part exempt from the provisions of this regulation.

(2)  The company's lien (if any) on a share shall extend to all dividends payable thereon.

**43.**  The company may sell, in such manner as the directors think fit, any shares on which the company has a lien where:

(a)  some sum in respect of which the lien exists is presently payable;

15

(b)    a notice in writing has been given to the registered holder of the shares (or the person entitled thereto by reason of his death or bankruptcy) stating and demanding payment of such part of the amount in respect of which the lien exists; and

(c)    fourteen days have passed since the notice was given to the registered holder.

44.    (1)    For giving effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser thereof.

    (2)    The purchaser shall be registered as the holder of the shares comprised in any such transfer and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

45.    The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue shall (subject to a like lien for sums not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the date of the sale.

**Calls of shares**

46.    The directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares provided that no call shall exceed one-fourth of the nominal amount of the share, or be payable less than one month from the last call; and each member shall (subject to receiving at least fourteen days' notice specifying the time or times of payment) pay to the company at the time or times so specified the amount called on his shares.

47.    The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

48.    If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest upon the sum at such rate as may be prescribed by the directors from the day appointed for the payment thereof to the time of the actual payment, but the directors shall be at liberty to waive payment of that interest wholly or in part.

49.    The provisions of these articles as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

**50.**   The directors may make arrangements on the issue of shares for difference between the holders in the amount of calls to be paid and in times of payment.

**Powers to issue different classes of shares**

**51.**   (1)   Subject to the articles, but without prejudice to the rights attached to any existing share, the company may authorise the directors to issue shares with such rights or restrictions as may be determined by ordinary resolution.

(2)   The company may authorise the issuance of shares which are to be redeemed, or are liable to be redeemed at the option of the company or the holder, and the directors may determine the terms, conditions and manner of redemption of any such shares.

(3)   All shares created pursuant to this article 51 shall be:

(a)   subject to all the provisions of these articles, including without limitation provisions relating to payment of calls, lien, forfeiture, transfer and transmission; and

(b)   ordinary shares, unless otherwise provided by these articles in which case the articles shall also reflect such rights or restrictions as are applicable to said shares.

**Company not bound by less than absolute interests**

**52.**   Whenever any fractions arise as a result of a consolidation or sub-division of shares, the directors may on behalf of the members deal with the fractions as they think fit.  In particular, without limitation, the directors may sell shares representing fractions to which any shareholder would otherwise become entitled to any person including (subject to the provisions of the Act) the company and distribute the net proceeds of sale in due proportion among those members.  Where the shares to be sold are held in certificated form the directors may authorise some person to execute an instrument of transfer of the shares to, or in accordance with, the directions of the buyer.  Where the shares to be sold are held in uncertificated form, the directors may do all acts and things he considers necessary or expedient to effect the transfer of the shares to, or in accordance with, the directions of the buyer.  The buyer shall not be bound to see to the application of the purchase moneys and his title to the shares shall not be affected by any irregularity in, or invalidity of, the proceedings in relation to the sale.

**Share certificates**

**53.**   (1)   The company must issue each shareholder, free of charge, with one or more certificates in respect of the shares which that shareholder holds.

17

(2) Every certificate must specify:

    (a)   in respect of how many shares it is issued;

    (b)   in respect of which class of shares the issued shares belong;

    (c)   the nominal value of those shares; and

    (d)   any distinguishing numbers assigned to them.

(3) No certificate may be issued in respect of shares of more than one class.

(4) If more than one person holds a share, only one certificate may be issued in respect of it.

(5) Certificates must:

    (a)   have affixed to them the company's common seal, or

    (b)   be otherwise executed in accordance with the Act.

(6) Each certificate shall be kept at the registered office of the company unless it is requested by the relevant shareholder or unless it is given to a lender or other financial institution as part of a security package.

### Replacement share certificates

**54.** (1) If a certificate issued in respect of a shareholder's shares is:

    (a)   damaged or defaced, or

    (b)   said to be lost, stolen or destroyed, that shareholder is entitled to be issued with a replacement certificate in respect of the same shares.

(2) A shareholder exercising the right to be issued with such a replacement certificate:

    (a)   may at the same time exercise the right to be issued with a single certificate or separate certificates;

    (b)   must return the certificate which is to be replaced to the company if it is damaged or defaced; and

    (c)   must comply with such conditions as to evidence, indemnity and the payment of a reasonable fee as the directors decide.

### Share transfers

**55.** (1) Shares may be transferred by means of an instrument of transfer in any usual form or any other form approved by the directors, which is executed by or on behalf of the transferor.

(2) The company may retain any instrument of transfer which is registered.

18

(3) The transferor remains the holder of a share until the transferee's name is entered in the register of members as holder of it.

(4) The directors may refuse to register the transfer of a share, and if they do so, the instrument of transfer must be returned to the transferee with the notice of refusal unless they suspect that the proposed transfer may be fraudulent.

(5) The transferee shall acknowledge in writing and consent to their receipt of the transferred shares and shall inform the secretary of such acknowledgement.

## Transmission of shares

**56.** (1) If title to a share passes to a transmittee, the company may only recognise the transmittee as having any title to that share.

(2) A transmittee who produces such evidence of entitlement to shares as the directors may properly require:

    (a) may, subject to the articles, choose either to become the holder of those shares or to have them transferred to another person, and

    (b) subject to the articles, and pending any transfer of the shares to another person, has the same rights as the holder had.

(3) The transmittee shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the shares, but he shall not have the right to attend or vote at a general meeting, or agree to a proposed written resolution, in respect of shares to which they are entitled, by reason of the holder's death or bankruptcy or otherwise, unless they become the holders of those shares.

(4) In the case of a share registered in the names of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased survivor, shall be the only persons recognised by the company as having any title to the share.

## Exercise of transmittees' rights

**57.** (1) Transmittees who wish to become the holders of shares to which they have become entitled must notify the company in writing of that wish.

(2) If the transmittee wishes to have a share transferred to another person, the transmittee must execute an instrument of transfer in respect of it.

(3) The directors shall, in either case set out in sub-article (1) and sub-article (2) above, have the same right to decline or

suspend registration as they would have had in the case of a transfer of the share by the deceased or bankrupt person before the death or bankruptcy.

(4)   Any transfer made or executed under this article is to be treated as if it were made or executed by the person from whom the transmittee has derived rights in respect of the share, and as if the event which gave rise to the transmission had not occurred.

**Transmittees bound by prior notices**

58.   If a notice is given to a shareholder in respect of shares and a transmittee is entitled to those shares, the transmittee is bound by the notice if it was given to the shareholder before the transmittee's name has been entered in the register of members.

**Forfeiture of shares**

59.   If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may, at any time thereafter during such time as any part of such call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

60.   The notice shall name a further day (not earlier than the expiration of fourteen days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

61.   If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

62.   A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the directors think fit.

63.   A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which at the date of forfeiture, were presently payable by him to the company in respect of the shares, but his liability shall cease if and when the company receive payment in full of the nominal amount of the shares.

64.   (1)   A statutory declaration in writing that the declarant is a director of the company, and that a share in the company has been duly forfeited on a date stated in the declaration,

20

shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share.

(2) The company may receive the consideration (if any) given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money (if any) nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

**65.** The provisions of these articles as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable.

**Alteration of Capital**

**66.** The company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

**67.** The new shares shall be subject to the same provisions with reference to the payment of calls, lien, transfer, transmission, forfeiture and otherwise as the shares in the original share capital.

**68.** The company may by ordinary resolution in a general meeting:

(a) increase its share capital by authorising new shares of such value and of such class as it thinks expedient;

(b) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(c) re-classify all or any of its share capital;

(d) convert all or any of its paid-up shares into stock, and reconvert that stock into paid-up shares of any denomination;

(e) subdivide any of its shares into shares of smaller amount than is fixed by its constitution (ensuring that in the sub-division the proportion of the amount paid and unpaid on each reduced share shall be the same as the share from which the reduced shares are derived);

(f) cancel shares which have not, at the date of the passing of the resolution, been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount so cancelled. A cancellation of shares in pursuance of this sub-article shall not be deemed to be a reduction of share capital within the meaning of this Act.

**69.** The company may by special resolution reduce its share capital and any capital redemption reserve fund in any manner and with,

and subject to, any incident authorised, and consent required, by law.

**Buy back of shares**

**70.**  The company shall have the authority, in accordance with the provisions of sections 105 to 116 of the Act (or the relevant sections contained in any modification or re-enactment thereof), to purchase its own shares (including any redeemable shares) in issue.


DIVIDENDS AND OTHER DISTRIBUTIONS

**Procedure for declaring dividends**

**71.**  (1)  The company may by ordinary resolution, on the recommendation of the directors, declare dividends.

(2)  A dividend must not be declared unless the directors have made a recommendation as to its amount. Such a dividend must not exceed the amount recommended by the directors.

(3)  No dividend may be declared or paid unless it is in accordance with shareholders' respective rights.

(4)  Unless the shareholders' resolution to declare or directors' decision to pay a dividend, or the terms on which shares are issued, specify otherwise, it must be paid by reference to each shareholder's holding of shares on the date of the resolution or decision to declare or pay it.

(5)  If the company's share capital is divided into different classes, no interim dividend may be paid on shares carrying deferred or non-preferred rights if, at the time of payment, any preferential dividend is in arrears.

(6)  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company having regard to the company's up to date management accounts and, where these are not available, the current financial position of the company.

(7)  Notice of any dividend declared shall be given to each shareholder.

(8)  If the directors act in good faith, they do not incur any liability to the holders of shares conferring preferred rights for any loss they may suffer by the lawful payment of an interim dividend on shares with deferred or non-preferred rights.


**Payment of dividends and other distributions**

22

72.   No dividend shall be paid otherwise than out of profits.

73.   The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for meeting contingencies, or for equalising dividends, or for any other purpose to which the profits of the company may be properly applied, and pending such application may, at the like discretion either be employed in the business of the company, or be invested in such investments (other than shares of the company) as the directors may from time to time think fit.

74.   If several persons are registered as joint holders of any share, any one of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share.

75.   Where a dividend or other sum which is a distribution is payable in respect of a share, it must be paid by one or more of the following means:

(a)   transfer to a bank or building society account specified by the distribution recipient either in writing or as the directors may otherwise decide;

(b)   sending a cheque made payable to the distribution recipient by post to the distribution recipient at the distribution recipient's registered address (if the distribution recipient is a holder of the share), or (in any other case) to an address specified by the distribution recipient either in writing or as the directors may otherwise decide;

(c)   sending a cheque made payable to such person by post to such person at such address as the distribution recipient has specified either in writing or as the directors may otherwise decide; or

(d)   any other means of payment as the directors agree with the distribution recipient either in writing or by such other means as the directors decide.

**No interest on distributions**

76.   The company may not pay interest on any dividend or other sum payable in respect of a share unless otherwise provided by:

(a)   the terms on which the share was issued, or

(b)   the provisions of another agreement between the holder of that share and the company.

**Unclaimed distributions**

77.   (1)   All dividends or other sums which are:

(a)   payable in respect of shares, and

23

    (b)    unclaimed after having been declared or become payable,

may be invested or otherwise made use of by the directors for the benefit of the company until claimed.

(2)    The payment of any such dividend or other sum into a separate account does not make the company a trustee in respect of it.

(3)    If:

    (a)    six years have passed from the date on which a dividend or other sum became due for payment, and

    (b)    the distribution recipient has not claimed it,

the distribution recipient is no longer entitled to that dividend or other sum and it ceases to remain owing by the company.

### Dividends in specie

**78.**  (1)    Subject to the terms of issue of the share in question, the company may, by ordinary resolution on the recommendation of the directors, decide to pay all or part of a dividend or other distribution payable in respect of a share by transferring non-cash assets of equivalent value (including, without limitation, shares or other securities in any company).

(2)    For the purposes of paying a non-cash distribution, the directors may make whatever arrangements they think fit, including, where any difficulty arises regarding the distribution:

    (a)    fixing the value of any assets;

    (b)    paying cash to any distribution recipient on the basis of that value in order to adjust the rights of recipients; and

    (c)    vesting any assets in trustees.

(3)    In calculating the value of the proposed non-cash distribution the directors shall have regard to the book value of the assets calculated by reference to the latest accounts of the company.

### Waiver of distributions

**79.**  Distribution recipients may waive their entitlement to a dividend or other distribution payable in respect of a share by deed of waiver and by giving notice in writing to the company to that effect, but if:

    (a)    the share has more than one holder, or

    (b)    more than one person is entitled to the share, whether by reason of the death or bankruptcy of one or more joint holders, or otherwise,

24

the notice is not effective unless it is expressed to be given, and signed, by all the holders or persons otherwise entitled to the share.

## CAPITALISATION OF PROFITS

**Authority to capitalise and appropriation of capitalised sums**

80. (1) Subject to the articles, the directors may, if they are so authorised by an ordinary resolution:

   (a) decide to capitalise any profits of the company (whether or not they are available for distribution) which are not required for paying a preferential dividend, or any sum standing to the credit of the company's share premium account or capital redemption reserve; and

   (b) appropriate any sum which they so decide to capitalise (a "capitalised sum") to the persons who would have been entitled to it if it were distributed by way of dividend (the "persons entitled") and in the same proportions.

   (2) Capitalised sums must be applied:

   (a) on behalf of the persons entitled, and

   (b) in the same proportions as a dividend would have been distributed to them.

   (3) Any capitalised sum may be applied in paying up new shares of a nominal amount equal to the capitalised sum which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (4) A capitalised sum which was appropriated from profits available for distribution may be applied in paying up new debentures of the company which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (5) Subject to the articles the directors may:

   (a) apply capitalised sums in accordance with paragraphs (3) and (4) partly in one way and partly in another;

   (b) make such arrangements as they think fit to deal with shares or debentures; and

   (c) authorise any person to enter into an agreement with the company on behalf of any interested persons in respect of the allotment of shares and debentures to them under this article. Any such agreement shall be binding on all interested persons.

PART 4

25

DECISION-MAKING BY SHAREHOLDERS

ORGANISATION OF GENERAL MEETINGS

**Calling of General Meetings**

81. All meetings called pursuant to section 193 of the Act (annual general meetings) shall be called ordinary general meetings; all other general meetings shall be called extraordinary general meetings.

82. (1) The directors may, whenever they think fit, convene an extraordinary general meeting in writing as provided by section 196 (3) of the Act.

   (2) A meeting of a company, other than a meeting for the passing of a special resolution, may be called by 7 days' notice in writing.

   (3) A meeting of a company for the passing of a special resolution may be called by giving at least 21 days' notice in writing of the meeting and specifying in the notice the intention to propose the resolution as a special resolution.

   (4) If all the members entitled to attend and vote at any such meetings so agree, a resolution may be proposed and passed at a meeting of which less than the notice period stipulated in sub-article (2) and sub-article (3).

   (5) Extraordinary general meetings shall be convened on such requisition, or in default, may be convened by such requisitionists, as provided by section 195 of the Act.

   (6) If at any time there are not in Gibraltar sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors, but such convocation must be in writing.

**Notice of General Meetings**

83. Subject to the provisions of section 201 (2) of the Act relating to special resolutions, seven days' notice at the least (exclusive of the day on which the notice is served or deemed to be served, but inclusive of the day for which notice is given) specifying the place, the day and the hour of meeting and, in case of special business, the general nature of that business shall be given in manner hereinafter mentioned, or in such other manner (if any) as may be prescribed by the company in general meeting, to such persons as are, under the articles of the company, entitled to receive such notices from the company; but with the consent of all the members entitled to receive notice of some particular meeting, that meeting may be convened by such shorter notice and in such manner as those members may think fit.

84. The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any member shall not invalidate the proceedings at any meeting except in relation to a notice given under section 195 of the Act.

85. All business shall be deemed special that is transacted at an extraordinary meeting.

86. With the exception of sanctioning a dividend, the consideration of the accounts, balance sheets and the ordinary report of the directors and auditors, and the fixing of the remuneration of the auditors, all business that is transacted at an ordinary meeting shall be deemed special.

**Attendance and speaking at general meetings**

87. (1) A person is able to exercise the right to speak at a general meeting when that person is in a position to communicate to all those attending the meeting, during the meeting, any information or opinions which that person has on the business of the meeting.

(2) A person is able to exercise the right to vote at a general meeting when:

(a) that person is able to vote, during the meeting, on resolutions put to the vote at the meeting, and

(b) that person's vote can be taken into account in determining whether or not such resolutions are passed at the same time as the votes of all the other persons attending the meeting.

(3) The directors may make whatever arrangements they consider appropriate to enable those attending a general meeting to exercise their rights to speak or vote at it.

(4) In determining attendance at a general meeting, it is immaterial whether any two or more members attending it are in the same place as each other.

(5) Two or more persons who are not in the same place as each other attend a general meeting if their circumstances are such that if they have (or were to have) rights to speak and vote at that meeting, they are (or would be) able to exercise them.

**Quorum for general meetings**

88. No business other than the appointment of the chairman of the meeting is to be transacted at a general meeting if the persons attending it do not constitute a quorum.

89. No business shall be transacted at any general meeting unless a quorum of Members is present at the time when the meeting

27

proceeds to business. Save as herein otherwise provided two members present in person or by proxy shall be a quorum unless there shall at any time be one member in which event such member alone shall have the authority to transact the business of a general meeting and shall do so by written resolution under his hand.

### Chairing general meetings

**90.** (1)  If the directors have appointed a chairman, the chairman shall chair general meetings if present and willing to do so.

(2)  If the directors have not appointed a chairman, or if the chairman is unwilling to chair the meeting or is not present within ten minutes of the time at which a meeting was due to start:

(a)  the directors present, or

(b)  (if no directors are present), the meeting,

must appoint a director or shareholder to chair the meeting, and the appointment of the chairman of the meeting must be the first business of the meeting.

(3)  The person chairing a meeting in accordance with this article is referred to as "the chairman of the meeting".

### Attendance and speaking by directors and non-shareholders

**91.** (1)  Directors may attend and speak at general meetings, whether or not they are shareholders.

(2)  The chairman of the meeting may permit other persons who are not:

(a)  shareholders of the company, or

(b)  otherwise entitled to exercise the rights of shareholders in relation to general meetings,

to attend and speak at a general meeting.

### Adjournment

**92.** (1)  If the persons attending a general meeting within half an hour of the time at which the meeting was due to start do not constitute a quorum, or if during a meeting a quorum ceases to be present, the chairman of the meeting must adjourn it, unless the meeting was convened upon the requisition of members, in which case it shall be dissolved.

(2)  The chairman of the meeting may adjourn a general meeting at which a quorum is present if:

(a)  the meeting consents to an adjournment, or

(b)  it appears to the chairman of the meeting that an adjournment is necessary to protect the safety of any person attending the meeting or ensure that the

28

business of the meeting is conducted in an orderly manner.

(3) The chairman of the meeting must adjourn a general meeting if directed to do so by the meeting.

(4) When adjourning a general meeting, the chairman of the meeting must:

(a) either specify the time and place to which it is adjourned or state that it is to continue at a time and place to be fixed by the directors, and

(b) have regard to any directions as to the time and place of any adjournment which have been given by the meeting.

(5) If the continuation of an adjourned meeting is to take place more than 10 days after it was adjourned, the company must give at least 7 clear days' notice of it (that is, excluding the day of the adjourned meeting and the day on which the notice is given):

(a) to the same persons to whom notice of the company's general meetings is required to be given, and

(b) containing the same information which such notice is required to contain.

(6) No business may be transacted at an adjourned general meeting which could not properly have been transacted at the meeting if the adjournment had not taken place.

VOTING AT GENERAL MEETINGS

**Voting: general**

93. (1) An ordinary resolution of the members (or of a class of members) of the company means a resolution that is passed by members representing a simple majority (more than 50%) of the total voting rights of the members or, as the case may be, of the class of members.

(2) An extraordinary resolution of the members means a resolution that is passed by members representing a majority of not less than 75% of those members at a general meeting of which notice specifying the terms of the resolution and the intention to propose the resolution as an extraordinary resolution has been given.

(3) A special resolution of the members means a resolution that is passed by members representing a majority of not less than 75% of those members at a general meeting of which not less than 21 days' notice, specifying the intention to propose the resolution as a special resolution has been given in accordance with article 82.

**94.** A resolution put to the vote of a general meeting must be decided on a show of hands unless a poll is duly demanded in accordance with the articles.

**95.** (1)  On a show of hands every member present in person shall have one vote.

    (2)  On a poll every member shall have one vote for each share of which he is the holder.

**96.** In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

**97.** If a member is suffering from mental disorder, a person authorised in that behalf under section 47 of the Mental Health Act or a receiver appointed under section 49 of that Act may vote on behalf of the member, either on a show of hands or on a poll.

**98.** No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid.

### Errors and disputes

**99.** (1)  No objection may be raised to the qualification of any person voting at a general meeting except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting is valid.

    (2)  Any such objection must be referred to the chairman of the meeting, whose decision is final.

### Poll votes

**100.** (1)  A poll on a resolution may be demanded:

    (a)  in advance of the general meeting where it is to be put to the vote, or

    (b)  at a general meeting, either before a show of hands on that resolution or immediately after the result of a show of hands on that resolution is declared.

    (2)  A poll may be demanded by:

    (a)  the chairman of the meeting;

    (b)   the directors;

    (c)  three or more persons having the right to vote on the resolution; or

    (d)  a person or persons representing not less than 15% of the total voting rights of all the shareholders having the right to vote on the resolution.

(3)    A demand for a poll may be withdrawn if:

   (a)    the poll has not yet been taken, and

   (b)    the chairman of the meeting consents to the withdrawal.

(4)    Polls must be taken immediately and in such manner as the chairman of the meeting directs.

(5)    On a poll votes may be given either personally or by proxy.

(6)    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

(7)    A poll demanded on the election of a chairman or on a question of adjournment, shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

**Content of proxy notices**

**101.** (1)    Proxies may only validly be appointed by a notice in writing (a "proxy notice") which:

   (a)    states the name and address of the shareholder appointing the proxy;

   (b)    identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;

   (c)    is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and

   (d)    is delivered to the company in accordance with the articles and any instructions contained in the notice of the general meeting to which they relate and in any event must be deposited at the registered office of the company not less than 24 hours before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote.

(2)    The company may require proxy notices to be delivered in a particular form, and may specify different forms for different purposes.

(3)    Proxy notices may specify how the proxy appointed under them is to vote (or that the proxy is to abstain from voting) on one or more resolutions.

(4)    Unless a proxy notice indicates otherwise, it must be treated as:

   (a)    allowing the person appointed under it as a proxy discretion as to how to vote on any ancillary or procedural resolutions put to the meeting, and

31

(b)  appointing that person as a proxy in relation to any adjournment of the general meeting to which it relates as well as the meeting itself.

(5)  The chairman of the meeting may on behalf of the company waive the requirement for a proxy notice pursuant to this article with the approval of all the directors.

**Delivery of proxy notices**

**102.** (1)  A person who is entitled to attend, speak or vote (either on a show of hands or on a poll) at a general meeting remains so entitled in respect of that meeting or any adjournment of it, even though a valid proxy notice has been delivered to the company by or on behalf of that person.

(2)  An appointment under a proxy notice may be revoked by delivering to the company a notice in writing given by or on behalf of the person by whom or on whose behalf the proxy notice was given.

(3)  A notice revoking a proxy appointment only takes effect if it is delivered before the start of the meeting or adjourned meeting to which it relates.

(4)  If a proxy notice is not executed by the person appointing the proxy, it must be accompanied by written evidence of the authority of the person who executed it to execute it on the appointor's behalf.

**103.**  Any corporation which is a member of the company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the company.

**Resolution in writing**

**104.** (1)  A resolution in writing signed by all members of the company who would be entitled to vote if that resolution were submitted to a general meeting shall be as effective for all purposes as a resolution of the company passed in general meeting duly convened and constituted, and may consist of several instruments in the like form each executed by one or more of the members.

(2)  Such resolution in writing shall be pasted in or attached to the minute book of the company.

PART 5

ADMINISTRATIVE ARRANGEMENTS

**Place of meetings**

32

**105.** The meetings of the directors or the shareholders of the company may be held in Gibraltar or elsewhere in the world.

**Means of communication to be used**

**106.** (1) Subject to the articles, anything sent or supplied by or to the company under the articles may be sent or supplied in any way in which the Act provides for documents or information which are authorised or required by any provision of that Act to be sent or supplied by or to the company.

(2) A director may agree with the company that notices or documents sent to that director in a particular way are to be deemed to have been received within a specified time of their being sent, and for the specified time to be less than 24 hours.

**Company seals**

**107.** (1) Any common seal may only be used by the authority of the directors.

(2) The directors may decide by what means and in what form any common seal is to be used.

(3) Unless otherwise decided by the directors, if the company has a common seal and it is affixed to a document, the document must also be signed by at least one authorised person in the presence of a witness who attests the signature.

(4) For the purposes of this article, an authorised person is:

(a) any director of the company;

(b) the company secretary; or

(c) any person authorised by the directors for the purpose of signing documents to which the common seal is applied.

**No right to inspect accounts and other records**

**108.** Except as provided by law or authorised by the directors or an ordinary resolution of the company, no person is entitled to inspect any of the company's accounting or other records or documents merely by virtue of being a shareholder.

**Provision for employees on cessation of business**

**109.** The directors may decide to make provision for the benefit of persons employed or formerly employed by the company or any of its subsidiaries (other than a director or former director or shadow director) in connection with the cessation or transfer to any person of the whole or part of the undertaking of the company or that subsidiary.

## DIRECTORS' INDEMNITY AND INSURANCE

**Indemnities**

110.  The directors, managers, secretary and other officers or servants for the time being of the company acting in relation to any of the affairs of the company, or every one of them shall be indemnified and secured harmless out of the assets and profits of the company from and against all actions, costs, charges, losses, damages and expenses which they, or any of them, shall or may incur or sustain by reason of any contract entered into or act done, concurred in or omitted in or about the execution of their duty or supposed duty in their respective office, except such (if any) as they shall incur or sustain by or through their own wilful neglect or wilful default respectively, and none of them shall be answerable for the acts, receipts, neglects or defaults of the other or others of them, or for joining in any receipt for the sake of conformity or for any bankers or other persons with whom any moneys or effects belonging to the company shall or may be lodged or deposited for safe custody, or for any defect of title of the company to any property purchased, or for any insufficiency or deficiency of or defect of title of the company to any security upon which any moneys of or belonging to the company shall be placed out or invested, or for any loss, misfortune or damage resulting from any such cause as aforesaid or which may happen in the execution of their respective office or in relation thereto, except the same shall happen by or through their own wilful neglect or wilful default respectively.

111.  (1)  Subject to paragraph (2), a relevant director of an associated company may be indemnified out of the company's assets against any liability which by virtue of any rule of law would otherwise attach to him in respect of any negligence, default, breach of duty or breach of trust of which he may be guilty in relation to the company.

   (2)  This article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Act or by any other provision of law.

   (3)  In this article:

      (a)  companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate, and

      (b)  a "relevant director" means any director or former director of an associated company.

**Insurance**

112.  (1)  The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant director in respect of any relevant loss.

   (2)  In this article:

34

(a) a "relevant director" means any director or former director of the company or an associated company,

(b) a "relevant loss" means any loss or liability which has been or may be incurred by a relevant director in connection with that director's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated company, and

(c) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.

PART 6

WINDING UP AND RE-DOMICILIATION

**Winding Up**

113. If the company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the company and any other sanction required by the Act, divide amongst the members in specie or kind the whole or any part of the assets of the company (whether they shall consist of property of the same kind or not) and may for such purpose set such value as he deems fair upon any property to be divided as aforesaid, and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of contributories as the liquidator with the like sanction shall think fit, but so that no member shall be compelled to accept any shares or other securities whereupon there is any liability.

**Transfer by way of re-domiciliation**

114. The company shall, in accordance with the provisions of the Companies (Re-domiciliation) Regulations (or any modification or re-enactment thereof) and with the approval of a Special Resolution, have the power to register by way of re-domiciliation as a body corporate under the law of any jurisdiction outside Gibraltar and to be deregistered in Gibraltar.

## **Exhibit H-16**

**Reorganized Aegean Management Services M.C. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN MANAGEMENT SERVICES M.C.

A meeting of the Shareholders of **AEGEAN MANAGEMENT SERVICES M.C.**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## Exhibit H-17

**Reorganized Aegean Ace Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF
## AEGEAN ACE MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN ACE MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting. [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                                 THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## **Exhibit H-18**

**Reorganized Aegean Breeze Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN BREEZE MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN BREEZE MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                    THE SECRETARY

True certified copy
The Chairman of the Meeting

1

## **Exhibit H-19**

**Reorganized Aegean Gas Maritime Co. Shareholder Resolution**

# MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN GAS MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN GAS MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                    THE SECRETARY


True certified copy
The Chairman of the Meeting

1

**<u>Exhibit H-20</u>**

**Reorganized Aegean Maistros Maritime Co. Shareholder Resolution**

# MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN MAISTROS MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN MAISTROS MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                    THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## **Exhibit H-21**

**Reorganized Aegean Ship III Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN SHIP III MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN SHIP III MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                                    THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## Exhibit H-22

**Reorganized Aegean Ship VIII Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN SHIP VIII MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN SHIP VIII MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                    THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## **Exhibit H-23**

**Reorganized Aegean Ship XII Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN SHIP XII MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN SHIP XII MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                        THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## Exhibit H-24

**Reorganized Aegean Tiffany Maritime Co. Shareholder Resolution**

## MINUTES OF AN EXTRAORDINARY MEETING OF THE SHAREHOLDERS OF AEGEAN TIFFANY MARITIME COMPANY

A meeting of the Shareholders of **AEGEAN TIFFANY MARITIME COMPANY**, a company duly incorporated and validly existing under the laws of the Republic of Greece (hereinafter the "**Company**") was held on [•] March 2019 at [•] hours, at 15, Andrea Metaxa, Kifissia, Greece.

Present at the meeting were:

[•] of [•], holder of [•] registered shares in the Company and
[•]of [•], holder of [•] registered shares in the Company [•]
being all the Shareholders of the Company and represented by their duly authorised proxy [•]

And [•]- President/Director and
Mr. [•] - Secretary/Director

All the Shareholders of the Company having acquired their shares according to  the applicable provisions of the law, being present and constituting a quorum, prior notice was waived and the meeting was called to order by [•] (in his capacity as President/Director of the Company) who acted as Chairman of the meeting.  [•] (in his capacity as Secretary/Director of the Company) acted as Secretary of the Meeting and kept the Minutes thereof.

The Chairman stated that the purpose of the meeting was to consider an amendment to the Articles of Association of the Company, by adding a new paragraph 3.4 in article 3 of the Articles of Association of the Company referring to the prohibition of issuance of non-voting shares.

 After discussion and upon motion duly made it was unanimously resolved by all the Shareholders of the Company that a new paragraph 3.4 be added at the end of article 3 of the Articles of Association of the Company reading as follows:

*"3.4 The Company is not permitted to issue any non-voting shares or other non-voting equity securities (in the form of preferred shares), so that all shares in the Company are at all times voting shares, each entitled to one vote on all matters falling within the scope of the general meeting of Shareholders of the Company."*

It was also resolved that the Secretary of the Meeting be and is hereby authorised to issue certified copies of the present resolutions and arrange for their filing with YMNE.

There being no further business to come before the Meeting, and upon motion duly made, and carried, the Meeting was adjourned until further notice.

THE SHAREHOLDERS

THE CHAIRMAN                                        THE SECRETARY


True certified copy
The Chairman of the Meeting

1

## Exhibit H-25

**Reorganized Aegean Bunkering (Hong Kong) Ltd Memorandum and Articles of Association**

Certificate of Incorporation No. **1616638**

**MEMORANDUM**

**AND**

**ARTICLES OF ASSOCIATION**

OF

**Aegean Bunkering (Hong Kong) Limited**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Incorporated on the 15th day of June, 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INCORPORATED

IN

HONG KONG

THE COMPANIES ORDINANCE (Cap. 32)

_____

Company Limited by Shares

_____

MEMORANDUM OF ASSOCIATION

OF

**Aegean Bunkering (Hong Kong) Limited**

_____

1.  The name of the Company is Aegean Bunkering (Hong Kong) Limited.

2.  The Registered Office of the Company will be situated in Hong Kong.

3.  The Company has the capacity and the rights, powers and privileges of a natural person and the objects for which the Company is established are unrestricted.

4.  The liability of the members is limited.

5.  The capital of the Company is US$10,000.00 divided into 10,000 shares of US$1.00 each and the Company shall have power to divide the original or any increased capital into several classes, and to attach thereto any preferential, deferred, qualified, or other special rights, privileges, restrictions or conditions.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

We, whose name, address and description are hereto given below, wish to form the Company in pursuance of this Memorandum of Association, and we agree to take the number of share(s) in the capital of the Company set opposite to our name: -

| Name, Address and Description of Signatory | Number of Share(s) taken by Signatory |
|---|---|
| For and on behalf of<br>SOVEREIGN NOMINEES LIMITED<br><br><br>(Sd.) Carmen Lovsky Fernandez<br><br>Carmen Lovsky Fernandez, Authorised Representative<br>Suite B, 12th Floor,<br>Two Chinachem Plaza,<br>135 Des Voeux Road Central, Hong Kong<br><br>Corporation | -10,000- |
| Total Number of Share(s) Taken | -10,000- |

DATED the [●]th day of [_____], 2019.

3

THE COMPANIES ORDINANCE (Cap. 32)

_____

Private Company Limited by Shares
_____

ARTICLES OF ASSOCIATION

OF

**Aegean Bunkering (Hong Kong) Limited**

Note: As amended by special resolution dated _____ 2019

_____

## PRELIMINARY

1.    The regulations in Table A in the First Schedule to the Ordinance shall not apply to the Company.

## INTERPRETATION

2.    (a)    In these Articles, save where the context otherwise requires:-

"Company" means the above named company;

"Directors" mean the directors for the time being of the Company or the directors present at a duly convened meeting of directors at which a quorum is present;

"Hong Kong" means the Hong Kong Special Administrative Region of The People's Republic of China;

"Ordinance" means the Companies Ordinance (Cap. 32, Laws of Hong Kong);

"Seal" means the common seal of the Company, or the official seal kept by the Company under Section 73A of the Ordinance;

"Secretary" means any person appointed to perform the duties of the secretary of the Company.

(b)    Expressions used in these Articles referring to writing shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, electronic and other modes of representing or reproducing words in a visible form.

(c)    Wherever any provision of these Articles (except a provision for the appointment of a proxy) requires that a communication as between the Company, its Directors or members be effected in writing, the requirement may

4

be satisfied by the communication being given in the form of an electronic record if the person to whom the communication is given consents to it being given to him in that form.

(d)    Wherever any provision of these Articles requires that a meeting of the Company, its Directors or members be held, the requirement may be satisfied by the meeting being held by such lawful electronic means and in such manner as may be agreed by the Company in general meeting.

(e)    Unless the context otherwise requires, words or expressions used in these Articles shall have the same meaning as in the Ordinance or any statutory modification thereof in force at the date at which these Articles become binding on the Company.

## PRIVATE COMPANY

3.    The Company is a private company, and accordingly: -

(a)    the right to transfer shares is restricted in the manner hereinafter prescribed;

(b)    the number of members of the Company (exclusive of persons who are in the employment of the Company and of persons who having been formerly in the employment of the Company were while in such employment and have continued after the determination of such employment to be members of the Company) is limited to 50; provided that where two or more persons hold one or more shares in the Company jointly they shall for the purpose of this Article be treated as a single member;

(c)    any invitation to the public to subscribe for any shares or debentures of the Company is prohibited; and

(d)    the Company shall not have power to issue share warrants to bearer.

## SHARE CAPITAL

4.    Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any share in the Company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the Company may from time to time by ordinary resolution determine.

4A.    Notwithstanding anything to the contrary in these Articles, to the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares or other equity securities as in effect on the date of the resolution adopting these Articles; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.

5.    The Company may exercise the powers of paying commissions conferred by Section

5

46 of the Ordinance, provided that the rate percentage or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said Section and the rate of the commission shall not exceed the rate of ten per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to ten per cent of such price (as the case may be). Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other. The Company may also on any issue of shares pay such brokerage as may be lawful.

6. Except as required by law, no person shall be recognized by the Company as holding any share upon any trust, and the Company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these Articles or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

7. Where two or more persons are registered as the holders of any shares, they shall be deemed to hold the same as joint tenants with the benefit of survivorship, subject to the following provisions: -

(a) the Company shall not be bound to register more than two persons as the holders of any shares except in the case of the legal personal representative of a deceased member;

(b) the joint holders of any shares shall be liable severally as well as jointly in respect of all payments which ought to be made for such shares;

(c) on the death of any one of such joint holders, the survivor or survivors shall be the only person or persons recognized by the Company as having any title to such shares, but the Directors may require such evidence of death as they may deem fit;

(d) any one of such joint holders may give effectual receipts of any dividend, return of capital or other payment in the shares; and

(e) the Company shall be at liberty to treat the person whose name stands first in the register of members as joint holders of any shares as the one solely entitled to the delivery of the certificate relating to such shares, or to receive notices from the Company, or to attend and vote at general meetings of the Company, and any notice given to such person shall be deemed notice to all the joint holders; but any one of such joint holders may be appointed the proxy of the persons entitled to vote at general meetings of the Company, and if more than one of such joint holders shall be present at any meeting personally or by proxy, that one so present whose name stands first in the register of members for such shares shall alone be entitled to vote in respect thereof.

## ALLOTMENT OF SHARES

8. The Directors shall not exercise any power conferred on them to allot shares in the Company without the prior approval of the Company in general meeting where such

6

approval is required by Section 57B of the Ordinance.

## SHARE CERTIFICATE

9.      Every person whose name is entered as a member in the register of members shall be entitled without payment to receive within two months after allotment or lodgment of a duly stamped instrument of transfer (or within such other period as the conditions of issue may provide) one certificate for all his shares or several certificates each for one or more of his shares upon payment of such fee, not exceeding $5, for every certificate after the first as the Directors shall from time to time determine; Provided that in the event of a member transferring part of the shares represented by a certificate in his name, a new certificate in respect of the balance thereof shall be issued in his name without payment.

10.     Every certificate shall be under the Seal and shall specify the shares to which it relates and the amount paid up thereon; Provided that in respect of a share or shares held jointly by several persons the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

11.     If a share certificate shall be defaced, lost or destroyed, it may be renewed on payment of a fee of $5 or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the Company of investigating evidence as the Directors think fit.

## LIEN

12.     The Company shall have a first and paramount lien on every share (not being a fully paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the Company shall also have a first and paramount lien on all shares (other than fully paid shares) standing registered in the name of a single person for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Article. The Company's lien, if any, on a share shall extend to all dividends payable thereon.

13.     The Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, nor until the expiration of 14 days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death, bankruptcy, winding up or otherwise by operation of law or court order.

14.     To give effect to any such sale the Directors may authorise some person to transfer the shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

15.     The proceeds of the sale shall be received by the Company and applied in payment of

such part of the amount in respect of which the lien exists as is presently payable, and the residue, if any, shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

16. The Directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, provided that no call shall exceed one-fourth of the nominal value of the share or be payable at less than 1 month from the date fixed for the payment of the last preceding call, and each member shall (subject to receiving at least 14 days' notice in writing specifying the time or times and place of payment) pay to the Company at the time or times and place so specified the amount called on his shares. The non-receipt of a notice of any call by, or the accidental omission to give notice of a call to, any of the members shall not invalidate the call. A call may be revoked or postponed as the Directors may determine.

17. A call shall be deemed to have been made at the time when the resolution of the Directors authorising the call was passed and may be required to be paid by instalments.

18. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

19. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding ten per cent per annum as the Directors may determine, but the Directors shall be at liberty to waive payment of such interest wholly or in part.

20. Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these Articles be deemed to be a call duly made and payable on the date on which by the terms of issue the same becomes payable, and in case of non-payment all the relevant provisions of these Articles as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified.

21. The Directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

22. The Directors may, if they think fit, receive from any member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him, and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the Company in general meeting shall otherwise direct) eight per cent per annum, as may be agreed upon between the Directors and the member paying such sum in advance.

23. On the trial or hearing of any action for the recovery of any money due for any call, it shall be sufficient to prove that the name of the member sued is entered in the register

8

of members as the holder, or one of the holders, of the shares in respect of which such debt accrued, that the resolution making the call is duly recorded in the minute book of the Company and that notice in writing of such call was duly given to the member sued pursuant to these Articles, and it shall not be necessary to prove the appointment of the Directors who made such call, nor any other matters whatsoever, but the proof of the matters aforesaid shall be conclusive evidence of the debt.

24.    No member shall, unless the Directors otherwise determine, be entitled to receive any dividend or, subject to the Ordinance, to receive notice of or to be present or vote at any general meeting, either personally or (save as proxy for another member) by proxy, or to exercise any privileges as a member, or be reckoned in a quorum, until he shall have paid all calls or other sums for the time being due and payable on every share held by him, whether alone or jointly with any other person, together with interest and expenses (if any).

## FORFEITURE OF SHARES

25.    If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice in writing on him requiring payment of so much of the call or instalment as is unpaid, together with any interest accrued and expenses incurred by reason of such non-payment.

26.    The notice shall name a further day (not earlier than the expiration of 14 days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

27.    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the Directors to that effect, and any such forfeiture shall extend to all dividends declared in respect of the shares so forfeited but not actually paid before such forfeiture. The Directors may accept the surrender of any shares liable to be forfeited hereunder and in such case, the references in these Articles to forfeiture shall include surrender.

28.    A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the Directors think fit.

29.    The Directors may, at any time before any shares so forfeited shall have been sold or otherwise disposed of, annul the forfeiture thereof upon such conditions as they think fit.

30.    A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of forfeiture, were payable by him to the Company in respect of the shares, but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

31.    A statutory declaration in writing that the declarant is a Director or the Secretary of the

9

Company and that a share has been duly forfeited or surrendered or sold to satisfy a lien of the Company on a date stated in the declaration shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

32.    When any shares have been forfeited, an entry shall be made in the register of members recording the forfeiture and the date thereof, and so soon as the shares so forfeited have been sold or otherwise disposed of, an entry shall be made of the manner and date of the sale or disposal thereof.

33.    The provisions of these Articles as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the share or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## PURCHASE OF OWN SHARES

34.    (a)    Subject to Sections 49 to 49S of the Ordinance, the Company may issue shares on the terms that they are, or at the option of the Company or the holder of the shares are liable, to be redeemed on such terms and in such manner as may be provided by these Articles.

(b)    Subject to Sections 49 to 49S of the Ordinance, the Company may purchase its own shares (including any redeemable shares).

(c)    Subject to Sections 49I to 49O of the Ordinance, the Company may make a payment in respect of the redemption or purchase of its own shares otherwise than out of the distributable profits of the Company or the proceeds of a fresh issue of shares.

(d)    For the purposes of Articles 34(b) and (c), the Directors are authorised to make such statements or take such steps as may be required by law in relation to the redemption or purchase by the Company of its own shares out of capital.

35.    Notwithstanding Section 49B(1) and (2) but subject to Sections 49, 49A, 49B(6), 49F, 49G, 49H, 49I(4) and (5), 49P, 49Q, 49R and 49S of the Ordinance (except that such purchases may be made either out of or otherwise than out of the distributable profits of the Company or the proceeds of a fresh issue of shares), the Company may purchase its own shares (including any redeemable shares) in order to: -

(a)    settle or compromise a debt or claim;

(b)    eliminate a fractional share or fractional entitlement or an odd lot of shares (as defined in Section 49B(5) of the Ordinance);

(c)    fulfil an agreement in which the Company has an option, or under which the Company is obliged, to purchase shares under an employee share scheme which

10

had previously been approved by the Company in general meeting; or

(d)    comply with an order of the court under: -

    (i)    Section 8(4);

    (ii)    Section 47G(5), where such order provides for the matters referred to in Section 47G(6); or

    (iii)    Section 168A(2),

of the Ordinance.

## VARIATION OF RIGHTS

36.    If at any time the share capital is divided into different classes of shares, the rights attached to any class may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of three-fourths in nominal value of the issued shares of that class, or with the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class.

37.    The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

## CONVERSION OF SHARES INTO STOCK

38.    The Company may by ordinary resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination. After the passing of any resolution converting all the fully paid up shares of any class in the capital of Company into stock, any shares of that class which subsequently become fully paid up and rank pari passu in all other respects with such shares shall, by virtue of this Article and such resolution, be converted into stock transferable in the same units as the shares already converted.

39.    The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same Articles, as and subject to which the shares from which the stock arose might prior to conversion have been transferred, or as near thereto as circumstances admit; and the Directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

40.    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by an amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

41.    Such of the Articles of the Company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and

"stockholder".

## ALTERATION OF SHARE CAPITAL

42.    The Company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

43.    Without prejudice to any rights, privileges or_ restrictions for the time being attaching to any class of shares then existing in the capital of the Company, any new shares created pursuant to Article 42 may be issued upon such terms and conditions, and with such rights, privileges and restrictions attached thereto as the general meeting resolving upon the creation thereof shall direct or, if no such direction is given, as the Directors shall determine, and in particular such shares may be issued with a preferential, qualified or deferred right to dividends and in the distribution of assets of the Company, and with a special, or without any, right of voting.

44.    The Company may by ordinary resolution: -

(a)    consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)    sub-divide its existing shares, or any of them, into shares of smaller amount than is fixed by the Memorandum of Association of the Company subject, nevertheless, to the provisions of Section 53(1)(d) of the Ordinance; or

(c)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

45.    Where any difficulty arises in regard to any consolidation or division of shares under paragraph (a) of Article 44, the Directors may settle the same as they think expedient and in particular may arrange for the sale of the shares representing fractions and the distribution of the proceeds of sale in due proportion amongst the members who would have been entitled to the fractions, and for this purpose, the Directors may authorise some person to transfer the shares representing fractions to the purchaser thereof, who shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings relating to the sale.

46.    The Company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by law.

## TRANSFER OF SHARES

47.    The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

48.    Subject to such of the restrictions of these Articles as may be applicable, any member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the Directors may approve.

49.  The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register any transfer of any share, whether or not it is a fully paid share.

50.  The Directors may also decline to recognize any instrument of transfer unless: -

    (a)  a fee of $5 or such lesser sum as the Directors may from time to time require is paid to the Company in respect thereof;

    (b)  the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer; and

    (c)  the instrument of transfer is in respect of only one class of share.

51.  If the Directors refuse to register a transfer they shall within two months after the date on which the transfer was lodged with the Company send to the transferor and transferee notice of the refusal.

52.  The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine, provided always that such registration shall not be suspended in any year for more than 30 days or, where the period for closing the register of members is extended in respect of that year under Section 99(2)(a) of the Ordinance, for more than that extended period.

53.  The Company shall be entitled to charge a fee not exceeding $5 on the registration of every probate, letters of administration, certificate of death or marriage, power of attorney, or other instrument.

## TRANSMISSION OF SHARES

54.  In case of the death of a member, the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognized by the Company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

55.  Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the Directors and subject as hereinafter provided, elect either to be registered himself as holder of the share or to have some person nominated by him registered as the transferee thereof, but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that member before his death or bankruptcy, as the case may be.

56.  If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these Articles relating to the right to transfer and the registration of transfers of shares

13

shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the member had not occurred and the notice or transfer were a transfer signed by that member.

57.    A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company: Provided always that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within 90 days the Directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

58.    Any person to whom the right to any shares in the Company has been transmitted by operation of law shall, if the Directors refuse to register the transfer, be entitled to call on the Directors to furnish within 28 days a statement of the reasons for the refusal.

## GENERAL MEETINGS

59.    The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notices calling it; and not more than 15 months shall elapse between the date of one annual general meeting of the Company and that of the next. Provided that so long as the Company holds its first annual general meeting within 18 months of its incorporation, it need not hold it in the year of its incorporation or in the following year. The annual general meeting shall be held at such time and place as the Directors shall appoint.

60.    All general meetings other than annual general meetings shall be called extraordinary general meetings.

61.    The Directors may, whenever they think fit, convene an extraordinary general meeting, and extraordinary general meetings shall also be convened on such requisition, or in default, may be convened by such requisitionists, as provided by Section 113 of the Ordinance. The provisions of the Ordinance shall apply to any requisition and to any failure by the Directors to convene an extraordinary general meeting when so requisitioned. If at any time there are riot within Hong Kong sufficient Directors capable of acting to form a quorum, any Director or any 2 members of the Company where the Company has more than one member may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

## NOTICE OF GENERAL MEETINGS

62.    An annual general meeting and a meeting called for the passing of a special resolution shall be called by 21 days' notice in writing at the least, and a meeting of the Company other than an annual general meeting or a meeting for the passing of a special resolution shall be called by 14 days' notice in writing at the least. The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is

14

given, and shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business, and shall be given, in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meeting, to such persons as are, under the Articles of the Company, entitled to receive such notices from the Company: -

Provided that a meeting of the Company shall, notwithstanding that it is called by shorter notice than that specified in this Article, be deemed to have been duly called if it is so agreed: -

(a)    in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)    in the case of any other meeting, by a majority in number of the members having a right to attend and vote at the meeting, being a majority together holding not less than 95 per cent in nominal value of the shares giving that right.

63.    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

64.    All business shall be deemed special that is transacted at an extraordinary general meeting, and also all that is transacted at an annual general meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets, and the reports of the Directors and auditors, the election of Directors in the place of those retiring (if any) and the appointment of, and the fixing of the remuneration of, the auditors.

65.    No business shall be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business and continues to be present until the conclusion of the meeting; save as herein otherwise provided, two members present in person or by proxy and holding between them at least 51 percent in nominal value of the issued shares of the Company for the time being shall be a quorum. If the Company has only one member, one member present in person or by proxy shall be a quorum for all purposes.

66.    A meeting of the members or any class thereof may be held by means of such telephone, electronic or other communication facilities (including, without limiting the generality of the foregoing, by telephone or video conferencing) which permit all persons participating in the meeting to communicate with each other simultaneously and instantaneously, and participation in such a meeting shall constitute presence in person at such meeting.

67.    If within 15 minutes from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the Directors may determine, and if at the adjourned meeting a quorum is not present within 15 minutes from the time appointed for the meeting, the members present shall be a quorum.

15

68.  The Chairman, if any, of the board of Directors shall preside as chairman at every general meeting of the Company, or if there is no such Chairman, or if he shall not be present within 15 minutes after the time appointed for the holding of the meeting or is unwilling to act or is absent from Hong Kong or has given notice to the Company of his intention not to attend the meeting, the Directors present shall elect one of their number to be chairman of the meeting.

69.  If at any meeting no Director is willing to act as chairman or if no Director is present within 15 minutes after the time appointed for holding the meeting, the members present shall choose one of their number to be chairman of the meeting.

70.  The chairman of any general meeting at which a quorum is present may, with the consent of the meeting (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place or sine die, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place, unless due notice in writing thereof is given or such notice is waived in the manner prescribed by these Articles. When a meeting is adjourned for 30 days or more or sine die, notice of the adjourned meeting shall be given as in the case of an original meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting. Where a general meeting is adjourned sine die, the time and place for the adjourned meeting shall be fixed by the Directors.

71.  Subject to the provisions of the Ordinance, a resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at general meetings (or, being corporation, by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held. A written notice of confirmation of such resolution in writing sent by or on behalf of a member shall be deemed to be his signature to such resolution in writing for the purposes of this Article. Such resolution in writing may consist of several documents, and each such document shall be certified by the Secretary to contain the correct version of the proposed resolution.

72.  Where the Company has only one member, and that member takes any decision that may be taken by the Company in general meeting, and that has effect as if agreed by the Company in general meeting, unless that decision is taken by way of a written resolution agreed in accordance with Section 116B of the Ordinance, a written record of that decision shall be sufficient evidence of the decision having been taken by the member. The member shall provide the Company with such written record of the decision within seven days after the decision is taken provided that any failure of the member to provide the written record within such time limit shall not affect the validity of any decision concerned.

## VOTES OF MEMBERS

73.  At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded: -

(a)  by the chairman;

16

(b)      by at least two members present in person or by proxy;

(c)      by any member or members present in person or by proxy and representing not less than one-tenth of the total voting rights of all the members having the right to vote at the meeting; or

(d)      by any member or members present in person or by proxy and holding shares in the Company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.

74.     Unless a poll be so demanded and the demand is not withdrawn, a declaration by the chairman of the meeting that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the Company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

75.     A demand for a poll may be withdrawn only with the approval of the meeting. Except as provided in Article 77, if a poll is duly demanded it shall be taken in such manner as the chairman of the meeting directs. No notice need be given of a poll not taken immediately. The result of the poll shall be deemed for all purposes to be the resolution of the meeting at which the poll was demanded.

76.     In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

77.     A poll demanded on the election of a chairman of a meeting or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs, and any business other than that upon which a poll has been demanded may be proceeded with pending the taking of the poll.

78.     Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every member present in person shall have one vote, and on a poll every member present in person or by proxy shall have one vote for each share of which he is the holder.

79.     In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

80.     A member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee, receiver, curator bonis, or other person in the nature of a committee, receiver or curator bonis appointed by that court, and any such committee, receiver, curator bonis or other person may, on a poll, vote by proxy.

81.     No member shall be entitled to vote at any general meeting unless all calls or other

17

sums presently payable by him in respect of any shares in the Company have been paid.

82.   No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes. Any such objection made in due time shall be referred to the chairman of the meeting, whose decision shall be final and conclusive.

83.   On a poll votes may be given either personally or by proxy, and a member present in person or by proxy and entitled to more than one vote need not use all his votes or cast all the votes he uses in the same way.

## PROXIES

84.   An instrument appointing a proxy shall be in writing in any usual or common form or in any other form which the Directors may accept and shall be deemed, save where the contrary appears on the face of the instrument of proxy, to confer authority to demand or concur in demanding a poll and to include power to act generally at the meeting for the person giving the proxy and any adjournment thereof. An instrument appointing a proxy may either permit the proxy to vote on any resolution, or all resolutions (or amendments thereto) put to the meeting for which it is given as the proxy thinks fit or direct the manner in which the proxy shall vote on any such resolution, or resolutions (or amendments thereto). No instrument appointing a proxy shall be valid except for the meeting mentioned therein and any adjournment thereof.

85.   The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under Seal, or under the hand of an officer or attorney duly authorised. A proxy need not be a member of the Company.

86.   The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed, or a notarially certified copy of that power or authority shall be deposited at the registered office of the Company or at such other place within Hong Kong as is specified for that purpose in the notice convening the meeting, not less than 48 hours before the time for holding the meeting or adjourned meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll, and in default the instrument of proxy shall not be treated as valid.

87.   Any member may by power of attorney appoint any person to be his attorney for the purpose of voting at any meeting, and such power may be a special power limited to any particular meeting or a general power extending to all meetings at which such member is entitled to vote. Every such power shall be deposited at the registered office of the Company at least 48 hours before being acted upon.

88.   An instrument of proxy may be revoked by forwarding to the registered office of the Company a written notification of such revocation signed by or on behalf of the person who issued or authorised the issue of the instrument of proxy and much revocation shall be effective upon receipt by the Company.

89.   A vote given in accordance with the terms of an instrument of proxy shall be valid

18

notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the Company at the office before the commencement of the meeting or adjourned meeting at which the proxy is used.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

90.    Any corporation which is a member of the Company may by resolution of its Directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the Company.

## DIRECTORS

91.    The number of the Directors and the names of the first Directors shall be determined in writing by the founder members or a majority of them.

92.    (a)    Unless and until otherwise determined by an ordinary resolution of the Company, the Directors shall not be less than one in number, and there shall be no maximum number of Directors.

(b)    Where the Company has only one member, and that member is the sole Director of the Company, the Company may in general meeting, notwithstanding anything contained in these Articles, nominate a person (other than a body corporate) who has attained the age of 18 years as a reserve director of the Company to act in place of the sole Director in the event of his death.

(c)    The nomination of a person as a reserve director of the Company ceases to be valid if, before the death of the Director in respect of whom he was nominated, he resigns as reserve director in accordance with Section 157D of the Ordinance or the Company in general meeting revokes the nomination or the Director in respect of whom he was nominated ceases to be the sole member and sole Director of the Company for any reason other than the death of that Director.

93.    The shareholding qualification for Directors may be fixed by the Company in general meeting, and unless and until so fixed no qualification shall be required.

94.    A Director of the Company may be or become a Director or other officer of, or otherwise interested in, any company promoted by the Company or in which the Company may be interested as shareholder or otherwise, and, subject to the Ordinance, no such Director shall be accountable to the Company for any remuneration or other benefits received by him as a Director or officer of, or from his interest in, such other company unless the Company shall otherwise direct.

## APPOINTMENT AND REMOVAL OF DIRECTORS

95.    The Directors shall have the power, exercisable at any time and from time to time by resolution, to appoint any other person as a Director, either to fill a casual vacancy or

19

as addition to the Board of Directors, but so that the total number of Directors shall not at any time exceed the number fixed in accordance with these Articles.

96.     The Company may from time to time by ordinary resolution remove any Director before the expiration of his period of office notwithstanding anything contained in these Articles or in any agreement between him and the Company (but without prejudice to any right to damages for termination of such agreement not in accordance with the terms thereof) provided special notice is given in accordance with Section 157B of the Ordinance. The Company may, if thought fit, by ordinary resolution, appoint another person in his stead.

97.     Without prejudice to the powers of the Directors under Article 95 hereof, the Company may from time to time, by ordinary resolution, appoint new Directors either to fill a casual vacancy or as an addition to the existing Directors and change the minimum or maximum number of Directors specified in Article 92 or prescribe such minimum or maximum if there shall be none so specified.

98.     The continuing Directors may act notwithstanding any vacancy in their body, but if and so long as the number of Directors is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number of Directors to that number, or of summoning a general meeting of the Company, but for no other purpose. If there shall be no Directors able or willing to act, then any member of the Company may summon a general meeting for the purpose of appointing Directors.

## ALTERNATE DIRECTORS

99.     Each Director may by written notification to the Company nominate any other person to act as alternate Director in his place and, at his absolute discretion, in similar manner remove such alternate Director. A Director may appoint two or more persons in the alternative to act as alternate Director, and in the event of any dispute as to who is to represent the Director as his alternate, the first named of such alternative persons shall be the only person recognised as the alternate Director and shall in any event, if in Hong Kong, be the only person entitled to receive notices of Directors' meetings in the absence of his appointer from Hong Kong. The alternate Director shall (except as regards the power to appoint an alternate) be subject in all respects to the terms and conditions existing with reference to the other Directors of the Company; and each alternate Director, whilst acting as such, shall exercise and discharge all the functions, powers and duties of the Director he represents but shall look to such Director solely for his remuneration as alternate Director. Every person acting as an alternate Director shall have one vote for each Director for whom he acts as alternate (in addition to his own vote if he is also a Director). The signature of an alternate Director to any resolution in writing of the board of Directors or a committee of Directors shall, unless the notice of his appointment provides to the contrary, be as valid and effective as the signature of his appointer. Any person appointed as an alternate Director shall vacate his office as such alternate Director as and when the Director by whom he has been appointed removes him or vacates office as Director. A Director shall not be liable for the acts or defaults of any alternate Director appointed by him.

## DISQUALIFICATION OF DIRECTORS

20

100.    The office of a Director shall ipso facto be vacated if the Director: -

(a)    ceases to be a Director by virtue of Section 155 of the Ordinance;

(b)    becomes bankrupt or makes any arrangement or composition with his creditors generally or is subject to a receiving order or, in the case of a company, a winding up order;

(c)    becomes prohibited from being a Director by reason of any disqualification order made under Part IVA of the Ordinance;

(d)    becomes of unsound mind;

(e)    resigns his office by notice in writing to the Company given in accordance with Section 157D(3)(a) of the Ordinance;

(f)    is removed by an ordinary resolution of the Company in accordance with the provisions of these Articles; or

(g)    is convicted of an arrestable offence.

## DIRECTORS' REMUNERATION

101.    The remuneration of the Directors shall from time to time be determined by the Company in general meeting. Such remuneration shall be deemed to accrue from day to day. The Directors may also be paid all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the Directors or any committee of the Directors or general meetings of the Company or in connection with the business of the Company.

102.    The Directors, on behalf of the Company, may pay a gratuity or pension or allowance on retirement to any Director who has held any other salaried office or place of profit with the Company or to the Director's spouse or dependants and may make contributions to any fund and pay premiums for the purchase or provision of any such gratuity, pension or allowance.

## MANAGING DIRECTOR

103.    The Directors may from time to time appoint one or more of their number to the office of Managing Director or Joint Managing Directors of the Company, or to hold such office in the management, administration or conduct of the business of the Company as they may decide and for such period and on such terms and for such remuneration as they think fit, and, subject to the terms of any agreement entered into in any particular case, the Directors may revoke such appointment and appoint another Director or other Directors in his place or their places, as the case may be.

104.    Subject to the terms and conditions of any agreement between him as Managing Director or a Joint Managing Director and the Company, a Managing Director or a Joint Managing Director shall be subject to the same provisions as to resignation and removal as the other Directors of the Company and shall ipso facto and immediately cease to be Managing Director or a Joint Managing Director if he shall cease to hold the office of Director.

21

105.  The Directors may, from time to time, entrust to and confer upon a Managing Director, Joint Managing Director or Director holding any other office in the management, administration or conduct of the business of the Company any such powers for such time and to be exercised for such objects and purposes and upon such terms and conditions and with such restrictions as they may consider expedient and may confer any such powers collaterally with, or to the exclusion of, and in substitution for, all or any of the powers of the Directors on their behalf and may, from time to time, revoke, withdraw, alter or vary all or any of such powers as they may consider expedient.

## DIRECTORS' POWERS

106.  Subject to the provisions of the Ordinance, the Memorandum of Association and these Articles and to any directions given by special resolution, the business and affairs of the Company shall be managed by the Directors, who may exercise all the powers of the Company. No alteration of the Memorandum of Association or these Articles and no such direction shall invalidate any prior act of the Directors which would have been valid if that alteration had not been made or that direction had not been given. The powers given by this Article shall not be limited by any special power given to the Directors by these Articles, and a meeting of the Directors at which a quorum is present may exercise all powers exercisable by the Directors.

107.  The Directors may from time to time and at any time by power of attorney or otherwise appoint any company, firm or person or any fluctuating body of persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such powers of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Directors may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretions vested in him.

108.  The Directors may establish any local boards or agencies for managing any of the businesses and affairs of the Company, either in Hong Kong or elsewhere, and may appoint any persons to be members of such local boards, managers or agents for the Company and may fix their remuneration and may delegate to any local board, manager or agent any of the powers, authorities and discretions vested in the Directors, with the power to sub-delegate, and may authorise the members of any local boards or agencies, or any of them, to fill any vacancies therein and to act notwithstanding vacancies, and any such appointment and delegation may be made upon such terms and subject to such conditions as the Directors may think fit, and the Directors may remove any person so appointed and may annul or vary any such delegation, but no person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

109.  Subject to and to the extent permitted by the Ordinance, the Company, or the Directors on its behalf, may cause to be kept in any territory a branch register of members resident in such territory, and the Directors may make and vary such regulations as they may think fit respecting the keeping of any such branch register.

110.  All cheques, promissory notes, drafts, bills of exchange and other negotiable or transferable instruments, and all receipts for moneys paid to the Company, shall be

22

signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by resolution determine.

111.    The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge all or any of the undertakings, properties, assets (present and future) and uncalled capital of the Company and to issue debentures, debenture stock, and, subject to Section 57B of the Ordinance, convertible debentures and convertible debenture stock, and other securities, whether outright or as security for any debt, liability or obligation of the Company or of any third party.

## DIRECTORS' INTERESTS

112.    A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract (being a contract of significance in relation to the Company's business) with the Company shall, if his interest in the contract or proposed contract is material, declare the nature of his interest at a meeting of the Directors in accordance with Section 162 of the Ordinance. A general notice given by a Director to the Directors to the effect that he is a member of a specified company or firm and is to be regarded as interested in any contract, arrangement or dealing which may, after the date of the notice, be entered into or made with that company or firm, shall, for the purposes of this Article, be deemed to be a sufficient disclosure of interest in relation to any contract, arrangement or dealing so entered into or made.

113.    A Director, having declared the nature of his interest in accordance with Article 112 and Section 162 of the Ordinance, may vote as a Director in respect of any contract, arrangement or dealing in which he is interested or upon any matter arising out of any such contract, arrangement or dealing, and if he shall so vote, his vote shall be counted, and he shall be taken into account in determining a quorum when any such contract, arrangement or dealing is under consideration.

114.    A Director may hold any other office or place of profit under the Company (other than the office of auditor), and he or any firm of which he is a member may act in a professional capacity for the Company, in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine, and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract, or any contract, arrangement or dealing entered into or made by or on behalf of the Company in which any Director or intending Director is in any way interested, be liable to be avoided, nor shall any Director or intending Director so contracting or being so interested be liable to account to the Company for any profit, remuneration or other benefits realised by or from any such contract, arrangement or dealing by reason of such Director holding that office or of the fiduciary relation thereby established.

115.    A Director may hold office as a Director in or as a manager of any other company in which the Company is a shareholder or is otherwise interested and (subject to any agreement with the Company to the contrary) shall not be liable to account to the Company for any remuneration or other benefits receivable by him from such other company. The Directors may exercise the voting power conferred by the shares in any company held or owned by the Company in such manner and in all respects as the Directors think fit (including but not limited to the exercise thereof in favour of any

resolution appointing the directors or any of the directors of such company or voting or providing for the payment of remuneration to the directors of such company), and any Director of the Company may vote in favour of the exercise of such voting rights other than in respect of his own appointment or the arrangement of the terms thereof, in the manner aforesaid.

## PROCEEDINGS OF DIRECTORS

116. The Directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit and determine the quorum necessary for the transaction of business. Unless otherwise determined by the board of Directors, two Directors shall constitute a quorum or, where the Company has only one Director, one Director shall constitute a quorum. A Director or the Secretary may, at any time summon a meeting of the Directors. In the absence of any decision of the Directors to otherwise regulate such time, notice convening a meeting of the Directors shall be a minimum of 24 hours.

117. Notice of a meeting of the Directors shall be deemed to be duly given to a Director if it is given to him personally in writing or by word of mouth or sent to him at his last known address or any other address given by him to the Company for this purpose. A Director may consent to short notice of and may waive notice of any meeting, and any such consent and waiver may be retrospective.

118. The Directors may elect a Chairman of the board of Directors and determine the period for which he is to hold office, and such Chairman shall preside as chairman at every meeting of the Directors; but if no such Chairman is elected, or if the Chairman is not present within 15 minutes after the time appointed for holding the meeting or is unwilling to act or has given his intention not to attend the meeting, the Directors present may choose one of their number to be chairman of the meeting.

119. A meeting of the Directors or a committee of the Directors may be held by means of such telephone, electronic or other communication facilities (including, without limiting the generality of the foregoing, by telephone or video conferencing) which permit all persons participating in the meeting to communicate with each other simultaneously and instantaneously, and participation in such a meeting shall constitute presence in person at such meeting.

120. Questions arising at any meeting shall be determined by a majority of votes of the Directors present, and in the case of an equality of votes the chairman shall have a second or casting vote.

121. A resolution in writing signed by a simple majority of the Directors for the time being (or, being a corporation, by its duly authorised representative) shall be as valid and effective for all purposes as a resolution of the Directors passed at a meeting duly convened, held and constituted. A written notice of confirmation of such resolution in writing sent by a Director shall be deemed to be his signature to such resolution in writing for the purposes of this Article. Such resolution in writing may consist of several documents, and each signed by one or more Directors.

122. Where the Company has only one Director, and that Director takes any decision that may be taken in a meeting of the Directors, and that has effect as if agreed in a meeting

of the Directors, unless that decision is taken by way of a resolution in writing, a written record of that decision shall be sufficient evidence of the decision having been taken by that Director. The Director shall provide the Company with such written record of the decision within seven days after the decision is taken provided that any failure of the Director to provide the written record within such time limit shall not affect the validity of any decision concerned.

123.   A meeting of the Directors at which a quorum is present shall be competent to exercise all the powers, authorities and discretions for the time being vested in or exercisable by the Directors generally.

124.   The Directors may, from time to time, appoint committees consisting of such persons as they think fit and may delegate any of their powers to any such committee and, from time to time, revoke any such delegation and discharge any such committee wholly or in part. Any committee so formed shall, in the exercise of the powers so delegated, conform to any regulations that may be imposed on it by the Directors from time to time. Any such committee shall be properly constituted even if it consists of one person.

125.   The meetings and proceedings of any such committee consisting of two or more members shall be governed mutatis mutandis by the provisions of these Articles regulating the meetings and proceedings of the Directors insofar as the same are not superseded by any regulations made by the Directors under Article 124 or otherwise inconsistent with any other provisions of these Articles.

126.   All acts done bona fide by any meeting of the Directors or of a committee of Directors or by any person acting as a Director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Directors or persons acting as aforesaid, or that they or any of them were disqualified, or had vacated office, be as valid as if every such person had been duly appointed and was qualified and continued to be a Director.

**MINUTES**

127.   The Directors shall cause to be entered and kept in books or files provided for the purpose minutes or memoranda of the following: -

(a)   all appointments of officers made by the Directors;

(b)   the names of the Directors, and any alternate Director who is not also a Director, present at each meeting of the Directors and of any committee of the Directors; and

(c)   all resolutions and proceedings of all general meetings of the Company, all meetings of the Directors and all meetings of committees and, where the Company has only one member and/or one Director, all written records of the decisions of the sole member and/or the sole Director;

and any such minutes or memoranda of any meeting or decisions of the Directors, or any committee, or of the Company, if purporting to be signed by the chairman of such meeting, or by the chairman of the next succeeding meeting, shall be receivable as prima facie evidence of the matters stated therein.

25

## THE SEAL

128.  The Directors shall forthwith procure a common seal to be made for the Company, which shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors on that behalf, and shall provide for the safe custody of the Seal. The Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors or a committee of the Directors, and every instrument to which the Seal shall be affixed shall be signed by one Director or some other person nominated by the Directors for the purpose.

129.  The Company may exercise all the powers conferred by Section 35 of the Ordinance with regard to having official seals for use outside Hong Kong, and such powers shall be vested in the Directors.

## SECRETARY

130.  The Company shall have one Secretary. The Secretary or deputy or assistant secretary or secretaries may be appointed by the Directors for such term, at such remuneration and upon such conditions as the Directors may think fit, and the Secretary or deputy or assistant secretary or secretaries so appointed may at any time be removed from office by the Directors. A Director may also be the Secretary; but if the Company has only one Director, the sole Director shall not also be the Secretary.

131.  A provision of the Ordinance or these Articles requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same person acting both as Director and as, or in place of, the Secretary.

## DIVIDENDS AND RESERVES

132.  The Company may by ordinary resolution declare dividends, but no dividend shall exceed the amount recommended by the Directors.

133.  The Directors may from time to time pay to the members such interim dividends as appear to the Directors to be justified by the profits of the Company. If at any time the share capital of the Company is divided into different classes, the Directors may pay such interim dividends in respect of those shares in the capital of the Company which confer on the holders thereof deferred or non-preferred rights as well as in respect of those shares which confer on the holders thereof preferential or special rights in regard to dividends, and provided that the Directors act bona fide, they shall not incur any responsibility to the holders of shares conferring a preference for any damages that they may suffer by reason of the payment of an interim dividend on any shares having deferred or non-preferred rights. The Directors may also pay at half-yearly or at other suitable time intervals to be settled by them any dividend which may be payable at a fixed rate if they are of the opinion that the profits of the Company justify such payment.

134.  No dividend shall be paid otherwise than out of profits in accordance with the provisions of Part IIA of the Ordinance.

135.  The Directors may, before recommending any dividend, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors, be applicable for any purpose to which the profits of the

26

Company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the Company or be invested in such investments (other than shares of the Company) as the Directors may from time to time think fit. The Directors may also, without placing the same to reserve, carry forward any profits which they may think prudent not to divide.

136.  Any resolution declaring a dividend on shares of any class, whether a resolution of the Company in general meeting or a resolution of the Directors, may specify that the same shall be payable to the persons registered as the holders of such shares at the close of business on a particular date, notwithstanding that it may be a date prior to that on which the resolution is passed, and thereupon the dividend shall be payable to them in accordance with their respective holdings so registered, but without prejudice to the rights inter se in respect of such dividend of transferors and transferees of any such shares. The provisions of this Article shall mutatis mutandis apply to capitalisation to be effected pursuant to these Articles.

137.  Unless and to the extent that the rights attached to any shares or the terms thereof otherwise provide, all dividends shall (as regards any shares not fully paid up throughout the period for which the dividend is paid) be apportioned and paid pro rata according to the amounts paid on the shares during any portion or portions of the period for which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly. For the purposes of this Article, no amount paid on a share in advance of calls shall be treated as paid on the share.

138.  The Directors may deduct from any dividend payable to any member all sums of money (if any) presently payable by him to the Company on account of calls in relation to the shares of the Company or otherwise in respect of the shares on which the Company has a lien and may apply the dividend so deducted in or towards satisfaction of the debts and liabilities on account of such calls or lien.

139.  Any general meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other company or in any one or more of such ways, and the Directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient, and in particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the Directors.

140.  Without prejudice to the generality of Article 139, unless otherwise directed, any dividend, bonus, interest or other monies payable in cash on or in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or joint holders (in case of joint holders, to the registered address of the joint holder whose name stands first on the register of members of the Company in respect of the joint holding) or addressed to such person at such address as the holder or joint holders may in writing direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent, but in any event the Company shall not be liable or responsible for any cheque or warrant lost in transmission nor for any dividend,

27

bonus, interest or other monies lost to the member or person entitled thereto by the forged endorsement of any cheque or warrant. Any payment of the cheque or warrant by the Company's banker on whom it is drawn shall be a good discharge to the Company.

141. No dividend shall bear interest against the Company.

142. The Directors may, with the sanction of the Company in general meeting, distribute in specie or in kind among the members in satisfaction in whole or in part of any dividend any of the assets of the Company, and in particular any shares or securities of other companies to which the Company is entitled.

143. All dividends unclaimed for one year after having been declared may be invested or otherwise made use of by the Directors for the benefit of the Company until claimed, and all dividends unclaimed for two years after having been declared may be forfeited by the Directors and shall revert to the Company. The payment into a separate account of any monies payable in respect of a share shall not constitute the Company a trustee in respect thereof for any person.

## CAPITALISATION OF PROFITS

144. The Company in general meeting may upon the recommendation of the Directors resolve that it is desirable to capitalise any part of the amount for the time being standing to the credit of any of the Company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and accordingly that such sum be set free for distribution amongst the members who would have been entitled thereto if distributed by way of dividend and in the same proportions, on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up in full unissued shares or debentures or other obligations of the Company to be allotted and distributed credited as fully paid up to and amongst such members in the proportions aforesaid, or partly in the one way and partly in the other, and the Directors shall give effect to such resolution:

Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this Article, only be applied in the paying up of unissued shares to be allotted to members of the Company as fully paid bonus shares.

145. Whenever such a resolution as referred to in Article 144 shall have been passed, the Directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully-paid shares or debentures or other obligations, if any, and generally shall do all acts and things required to give effect thereto, with full power to the Directors to make such provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures or other obligations becoming distributable in fractions and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the Company providing for the allotment to them respectively, credited as fully paid up, of any further shares or debentures or other obligations to which they may be entitled upon such capitalisation, or (as the case may require) for the payment up by the Company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts

28

or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## ACCOUNTS

146.    The Directors shall cause proper and true books of account to be kept with respect to: -

(a)    all sums of money received and expended by the Company and the matters in respect of which such receipt and expenditure take place;

(b)    all sales and purchases of goods by the Company; and

(c)    the assets and liabilities of the Company.

Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

147.    The books of account shall be kept at the registered office of the Company, or, subject to Section 121(3) of the Ordinance, at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

148.    The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of members not being Directors, and no member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by statute or authorised by the Directors or by the Company in general meeting.

149.    The Directors shall from time to time, in accordance with Sections 122, 124 and 129D of the Ordinance, cause to be prepared and to be laid before the Company in general meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those Sections of the Ordinance.

150.    A copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the Company in general meeting, together with a copy of the Directors' report and a copy of the auditors' report, shall, not less than 21 days before the date of the meeting, be sent to every member of, and every holder of debentures of, the Company and to all persons other than members or holders of debentures of the Company, being persons entitled to receive notices of general meetings of the Company:

Provided that this Article shall not require a copy of those documents to be sent to any person of whose address the Company is not aware nor to more than one of the joint holders of any shares or debentures.

## AUDITORS

151.    Auditors shall be appointed and their duties regulated in accordance with Sections 131, 132, 133, 140, 140A, 140B and 141 of the Ordinance.

## NOTICES

152.    A notice may be given by the Company to any member either personally to him or by sending it by post to his registered address or (if his registered address is outside Hong Kong) by prepaid airmail. Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying, and posting a letter containing the notice and to have been effected in the case of a notice of a meeting at the expiration of 48 hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

153.    A notice may be given by the Company to the joint holders of a share by giving the notice to the joint holder first named in the register of members in respect of the share.

154.    Each member shall, from time to time, notify the Company in writing his address to be registered by the Company for the giving of notice to him.

155.    A notice may be given by the Company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description, at the address, if any, within Hong Kong supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

156.    Notice of every general meeting shall be given in any manner hereinbefore authorised to: -

    (a)    every member;

    (b)    every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his death or bankruptcy, would be entitled to receive notice of the meeting; and

    (c)    the auditors for the time being of the Company.

    No other person shall be entitled to receive notices of general meetings.

157.    In reckoning the period for any notice given under these Articles, the day on which notice is given, or deemed to be given and the day for which such notice is given shall be excluded.

## WINDING UP

158.    If the Company shall be wound up, the surplus assets remaining after payment to all creditors shall be divided among the members of the Company in proportion to the capital which at the commencement of the winding up is paid up on the shares held by them respectively, and if such surplus assets shall be insufficient to repay the whole of the paid up capital, they shall be distributed so that, as nearly as may be, the losses shall be borne by the members in proportion to the capital paid up at the commencement of the winding up on the shares held by them respectively. This Article is, however, subject to the rights of any shares which may be issued on special terms or conditions.

159.    If the Company shall be wound up the liquidator may, with the sanction of a special resolution of the Company and any other sanction required by the Ordinance, divide

amongst the members in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for such purpose, set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the members or different classes of members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

160.    Every Director, Managing Director, agent, auditor, Secretary and other officer for the time being of the Company shall be indemnified out of the assets of the Company against any liability incurred by him in relation to the Company in defending any proceedings, whether civil or criminal, in which judgment is given in his favour or in which he is acquitted or in connection with any application under Section 358 of the Ordinance in which relief is granted to him by the court.

*****************************************

| Name, Address and Description of Signatory |
| --- |
| For and on behalf of<br>SOVEREIGN NOMINEES LIMITED<br><br><br>(Sd.) Carmen Lovsky Fernandez<br> ....................................................................................<br>Carmen Lovsky Fernandez, Authorised Representative<br>Suite B, 12th Floor,<br>Two Chinachem Plaza,<br>135 Des Voeux Road Central,<br>Hong Kong<br><br>Corporation |

DATED the [●]th day of [_____], 2019.

**<u>Exhibit H-26</u>**

**Reorganized Aegean Bunkering (Jamaica) Ltd Amended and Restated Articles of Incorporation**

SCHEDULE 1

THE COMPANIES ACT
COMPANY LIMITED BY SHARES

AEGEAN BUNKERING (JAMAICA) LIMITED

AMENDED AND RESTATED
ARTICLES OF INCORPORATION
(Adopted                    ) 2019

1.    Name of Company:  See Paragraph 1A of Form 1A.

2.    Core Business of Company: See Paragraph 1E of Form 1A.

3.    Liability of Members: See Paragraph 2 of Form 1A.

4.    Form of Company:     See Paragraph 1C of Form 1A.

5.    Authorized Capital (if any): See Paragraph 4 of Form 1A.

6.    In these articles, unless the context otherwise requires:-

| | |
|---|---|
| "The Act" | shall mean the Companies Act and every other Act incorporated therewith, or any Act or Acts substituted therefore; and in case of any such substitution the references in these articles to the provisions of the Act shall be read as references to the provisions substituted therefore in the new Act or Acts. |
| "The Company" | shall mean Aegean Bunkering (Jamaica) Limited |
| "The Register" | shall mean the Register of Members to be kept as required by the Act. |
| "Month" | shall mean calendar month. |
| "Paid Up" | shall include "credited as paid up". |
| "Jamaica" | shall mean the Island of Jamaica. |
| "Seal" | shall mean the Common Seal of the Company. |
| "Office" | shall mean the registered office for the time being of the Company. |
| "Secretary" | shall include any assistant or deputy Secretary and any person appointed to perform the duties or any particular duty of the Secretary temporarily. |
| "In Writing" | or other cognate expression shall, unless the contrary intention appears, be construed as including references to:(i) printing, lithography, |

<table>
<tr><td></td><td>typewritten and other modes of representing or reproducing words in visible form; or (ii) in electronic form, in a case where the relevant member or other intended recipient of such documents consents to such documents or information being sent to him in that case.</td></tr>
</table>

|  |  |
|---|---|
| "electronic address" | shall mean any address or number used for the purposes of sending or receiving documents or information by electronic means. |
| "Bankrupt" | shall include a person becoming bankrupt or entering into or making any composition or arrangement statutory or otherwise with or without assignment of all his property for the benefit of his creditors generally, and |
| "Bankruptcy" | shall have a corresponding meaning. |
| "the presents" | shall mean the Articles of Incorporation and all the regulations of the Company for the time being in force. |

Words and expression which have a special meaning assigned to them in the Act shall have the same meaning in these presents.

Words importing the singular number only shall include the plural, and the converse shall also apply. Words importing individual shall include corporations.

For the purposes of these Articles a document or information is sent:

(a)     in "*hard copy form*" if it is sent or supplied in paper copy or similar form capable of being read and references to "*hard copy*" shall have a corresponding meaning;

(b)     in "*electronic form*" if it is sent or supplied in electronic form (for example, by e-mail, or fax or by other means while in electronic form (for example, sending a computer disc or tape by post or hand delivery);

(c)     by "*electronic means*" if it is:

(i)     sent initially and received at its destination by means of a computer or other electronic equipment for the processing (which expression includes digital compression) or storage of data;

(ii)    entirely transmitted, conveyed and received by wire, by radio, by optical means or other electromagnetic means.

Where in these Articles it is provided that a document or information may be sent in electronic form or

2

by electronic means it only means that the Company may send the document or information in electronic form or by electronic means if the intended recipient has consented in writing to such document or information being sent to him in that form or by that means and has provided the company with an electronic address at which such document or information may be sent in electronic form or by electronic means.

## EXCLUSION OF TABLE A

7.    The Regulations in Table A in the First Schedule to the Act shall not apply to the Company except in so far as they are repeated or contained in these Articles.

## PRIVATE COMPANY

8.    The Company is a private company and accordingly:-

(a)    the right to transfer shares is restricted in manner hereinafter prescribed;

(b)    the number of members of the Company (exclusive of persons who are in the employment of the Company and of persons who having been formerly in the employment of the Company were while in such employment and have continued after the determination of such employment to be members of the Company) is limited to twenty; provided that where two or more persons hold one or more shares in the Company jointly they shall for the purpose of this article be treated as a single member;

(c)    any invitation to the public to subscribe for any shares or debentures of the Company is prohibited;

(d)    the Company shall not make any invitation to the public to deposit money for fixed periods or payable on call whether bearing or not bearing interest;

(e)    subject to any exceptions in this behalf which may be provided for by the Twelfth Schedule to the Act no person other than the holder shall have any interest in any of the Company's shares;

(f)    the Company shall not have power to issue share warrants to bearer.

9.    The Directors may at any time require any person whose name is entered in the Register to furnish any information, supported (if the Directors so require) by a statutory declaration, which they may consider necessary for the purpose of determining whether or not the Company is a private company within the meaning of the Act.

3

## SHARE CAPITAL, CERTIFICATES
## AND VARIATION OF RIGHTS

10.     Without prejudice to any special rights previously conferred on the holders of existing shares in the Company, any share in the Company may be issued with such preferred, deferred or other special rights, or such restrictions, whether in regard to dividend, voting, return of capital, transfer or transmission, or otherwise as the Company may from time to time by ordinary resolution determine. To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of adoption of these Articles; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For the purpose of this Article 10 any class or series of equity securities that has only such rights as are mandated by the Act shall be deemed to be nonvoting for purposes of the restrictions of this Article 10.

11.     Subject to the provisions of Section 56 of the Act, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable, to be redeemed on such terms and in such manner as the Company before the issue of the shares may by special resolution determine.

12.     If at any time the capital is divided into different classes of shares, the rights attached to any class or any of such rights, (unless otherwise provided by the terms of issue of the shares of that class), may whether or not the Company is being wound up be modified, abrogated, or varied with the consent in writing of the holders of a majority of the issued shares of that class, or with the sanction of an ordinary resolution passed at a separate general meeting of the holders of the shares of the class, but not otherwise, subject however to any right which may be given by the Act to any persons to apply to the Court to have the variation cancelled.  To every such separate general meeting the provisions of these articles relating to general meetings shall, mutatis mutandis, apply but so that at every such separate general meeting the quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class, and that any holder of shares of the class present in person or by proxy may demand a poll.

13.     The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall be deemed to be varied by the creation or issue of further shares ranking pari passu therewith provided that the effect of such an issue is to reduce the proportion of dividends or distribution payable at any time to the holders of the existing shares of that class or to diminish the proportion of the total votes exercisable by the holders of the existing shares of that class.

14.     The Company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the Company or in its holding company nor shall the Company make a loan for any purpose whatsoever on the security of its shares or those of its holding company:

4

Provided that nothing in this article shall be taken to prohibit:

(a)     where the lending of money is part of the ordinary business of the Company, the lending of money in the ordinary course of its business;

(b)     (Subject to section 184 of the Act) the provision of financial assistance by means of a loan, guarantee or otherwise to a shareholder, director or associate of any such person for any purpose;

(c)     (Subject to section 184 of the Act) the provisions by the Company in accordance with any scheme for the time being in force, of money for the purchase of, or subscription for fully paid shares in the Company or its holding company, being a purchase of subscription by trustees of the employees of the Company, including any Director holding a salaried employment or office in the Company;

(d)     (Subject to section 184 of the Act) the making by the Company of loans to persons other than Directors, bona fide in the employment of the Company with a view to enabling those persons to purchase or subscribe for fully paid shares in the Company or its holding company to be held by way of beneficial ownership.

15.     Subject to the provisions of Section 53 of the Act, the Company may pay a commission to any person in consideration of his subscribing or agreeing to subscribe, whether absolutely or conditionally, for any shares in the Company, or procuring or agreeing to procure subscriptions, whether absolute or conditional, for any shares in the Company at any rate approved by the Directors, provided that the rate per centum or the amount of the commission paid or agreed to be paid shall be disclosed in any manner required by the Act and the rate of the commission shall not exceed the rate of ten per centum of the price at which the shares in respect whereof the same is paid are issued or an amount equal to ten per centum of such price (as the case may be).  Such commission may be satisfied by payment in cash or by the allotment of fully or partly paid shares, or partly in one way and partly in the other.  The Company may also on any issue of shares pay such brokerage as may be lawful.

16.     Except as required by law, no person shall be recognised by the Company as holding any share upon any trust, and the Company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these articles or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

17.     Every member shall be entitled without payment to one certificate under the Seal for all the shares registered in his name, or, in the case of shares of more than one class being registered in his name, to a separate certificate for each class of shares so registered.  Every certificate shall specify the number and class of shares in respect of which it is issued and the distinctive numbers of such shares and the amount paid up thereon respectively.  Every such certificate shall be delivered to the member within two months after the allotment or within three months of the lodging with the Company of the transfer, as the case may be, of the shares comprised therein, unless on allotment the conditions of issue

5

of the shares otherwise provide.

18.    If any member shall require additional certificates, he shall pay for each additional certificate such reasonable sum as the Directors shall determine.

19.    If any certificate be defaced, worn-out, lost or destroyed, a new certificate may be issued on payment of such reasonable sum as the Directors may prescribe, and the person requiring the new certificate shall surrender the defaced or worn-out certificate or give such evidence of the loss or destruction of the certificate and such indemnity to the Company as the Directors may think fit.

20.    The shares shall be under the control of the Directors, who may allot and dispose of or grant options over the same to such persons, on such terms, and in such manner as they think fit.  All shares are issued without nominal or par value.

PURCHASE OF OWN SHARES

21.    Subject to the provisions of section 58 of the Act, a Company may purchase or otherwise acquire shares issued by it.

22.    Subject to section 59 of the Act, the Company may acquire its own shares of any class to:

(a)    settle or compromise a debt or claim asserted by or against the company;

(b)    eliminate fractional shares, or

(c)    fulfill the terms of a non-assignable agreement under which the company has an option or is obliged to purchase shares owned by an officer or an employee of the company.

22A.    <u>FINANCIAL ASSISTANCE TO PURCHASE OWN SHARES</u>

The Company may, to the extent permitted by law give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the Company or in its holding company and the Company may, to the extent permitted by law, make a loan for any purpose whatsoever on the security of its shares.

<u>JOINT HOLDERS OF SHARES</u>

23.    Where two or more persons are registered as the holders of any share they shall be deemed to hold the same as joint tenants with benefit of survivorship, subject to the provisions following:

(a)    the joint holders of any share shall be liable severally as well as jointly in respect of all calls and payments which ought to be made in respect of such share;

6

(b)     on the death of any one of such joint holders the survivor or survivors shall be the only person or persons recognised by the Company as having any title to such share; but nothing herein contained shall release the estate of the deceased joint holder from any liability in respect of any share which had been jointly held by him;

(c)     any one of such joint holders may give effectual receipts for any dividend, bonus or return of capital payable to such joint holders;

(d)     only the person whose name stands first in the Register as one of the joint holders of any share shall be entitled to delivery of the certificate relating to such share, or to receive notices from the Company, and any notice given to such person shall be deemed notice to all the joint holders.  Where such person does not register with the Company an address within the Island, notice may be given by the Company to any other joint holder and similar such notice shall be deemed to be notice to all the joint holders;

(e)     any one of the joint holders of any share for the time being conferring a right to vote may vote either personally or by proxy at any meeting in respect of such share as if he were solely entitled thereto, providing that if more than one of such joint holders be present at any meeting, either personally or by proxy, the person whose name stands first in the Register as one of such holders, and no other, shall be entitled to vote in respect of the said shares;

(f)     the Company shall not be obliged to register more than four persons as joint holders of a share.

<u>LIEN</u>

24.     The Company shall have a first and paramount lien upon all shares held by any member of the Company (whether alone or jointly with other persons) and upon all dividends and bonuses which may be declared in respect of such shares, for all debts, obligations and liabilities whatsoever of such member or his estate to the Company; provided always that if the Company shall register a transfer of any shares upon which it has such a lien as aforesaid without giving up to the transferee notice of its claim the said shares shall, in default of agreement to the contrary between the Company and the transferee be freed and discharged from the lien of the Company.  The Directors may at any time declare any share to be wholly or in part exempt from the provisions of this article.

25.     The Directors may, at any time after the date for the payment or satisfaction of such debts, obligations or liabilities shall have arrived, serve upon any member who is indebted or under any obligation or liability to the Company, or upon the person entitled to his share by reason of the death or bankruptcy of such a member, a notice requiring him to pay the amount due to the Company or satisfy the said obligation or liability and stating that if payment is not made or the said obligation or liability is not satisfied within a time (not being less than fourteen days) specified in such notice, the shares held by such member will be liable to be sold; and if such member or the person entitled to his shares as aforesaid shall not comply with such notice within the time aforesaid the Directors may sell such shares without further notice, and for the purpose of giving effect to any such sale the Directors may authorise

7

some person to transfer the shares so sold to the purchaser thereof.

26.     Upon any sale being made by the Directors of any shares to satisfy the lien of the Company thereon, the proceeds shall be applied:   firstly, in payment of all costs of such sale; secondly, in satisfaction of the debts, obligations and liabilities of the members of the Company; and lastly, the residue (if any) shall be paid to the person entitled to the shares at the date of the sale, or as he shall in writing direct.

27.     An entry in the Directors' Minute Book that any shares have been sold to satisfy a lien of the Company shall be sufficient evidence as against all persons claiming to be entitled to such shares that the said shares were properly forfeited or sold; and such entry, the receipt of the Company for the price of such shares and the appropriate share certificate, shall constitute a good title to such shares and subject to the due signature of a transfer if the same be required, the name of the purchaser or other person entitled shall be entered in the Register as a member of the Company and he shall be entitled to a certificate of title to the shares, and shall not be bound to see to the application of the purchase money nor shall his title to the said shares be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture of sale.  The remedy (if any) of the former holder of such shares and of any person claiming under or through him, shall be against the Company and in damages only.

<u>CALLS ON SHARES</u>

28.     The Directors may from time to time make calls upon the members in respect of all moneys unpaid on their shares (whether on account of the nominal amount of the shares or by way of premium) and not by the terms of issue thereof made payable at any fixed time; provided that no call shall exceed one fourth of the nominal amount of the share, or be made payable within one month after the date when the last installment of the last preceding call shall have been made payable; and each member shall, subject to receiving fourteen days' notice (in hard copy or electronic form or by electronic means, where permitted) at least specifying the time and place for payment, pay the amount called on his shares to the persons and at the time and place appointed by the Directors.  A call may be made payable by installments.  A call may be revoked or postponed as the Directors may determine.

29.     A call shall be deemed to have been made at the time when the resolution of the Directors authorising such call was passed.

30.     If a call payable in respect of any share or any installment of a call be not paid before or on the day appointed for payment thereof, the holder for the time being of such share shall be liable to pay interest on the same at such rate, not exceeding ten per centum per annum, as the Directors shall determine from the day appointed for the payment of such call or installment to the time of actual payment; but the Directors may, if they shall think fit, waive the payment of such interest or any part thereof.

31.     If by the terms of issue of any shares, or otherwise, any amount is made payable at any fixed time, whether on account of the nominal amount of the shares or by way of premium, every such amount shall be payable as if it were a call duly made by the Directors of which due notice had been given; and all the provisions hereof with respect to the payment of calls and interest thereon, expenses,

8

or to the forfeiture of shares for non-payment of calls, shall apply to every such amount and the shares in respect of which it is payable.

32.    The Directors may make arrangements on the issue of shares for a difference between the holders of such shares in the amount of calls to be paid and the time of payment of such calls.

33.    The Directors may, if they think fit, receive from any member willing to advance the same all or any part of the moneys uncalled and unpaid upon any shares held by him; and upon all or any of the moneys so paid in advance the Directors may (until the same would, but for such advance, become presently payable) pay interest at such rate (not exceeding, without the sanction of the Company in general meeting, six per centum per annum) as may be agreed upon between the member paying the moneys in advance and the Directors.

<u>TRANSFER OF SHARES</u>

34.    The instrument of transfer of any share in the Company shall be in writing in hard copy form, and shall be signed by or on behalf of the transferor and the transferee, and duly attested, and the transferor shall be deemed to remain the holder of such share until the name of the transferee is entered in the Register in respect thereof.

35.    The Directors may at any time in their absolute and uncontrolled discretion and without assigning any reason decline to register any transfer of shares.  The Directors may also suspend the registration of transfers at such times and for such periods as they may from time to time determine but so that such registration shall not be suspended for more than thirty days in any year.  The Directors may decline to recognise any instrument of transfer unless:

(a)    a fee not exceeding two dollars is paid to the Company in respect therefor;

(b)    the instrument of transfer is accompanied by the certificate of the share to which it relates and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer; and

(c)    the instrument of transfer is in respect of only one class of share.

36.    Subject to the restrictions contained in these articles shares in the Company may be transferred in any usual or common form or in any other form of which the Directors shall approve.

36A.    Except in the case of the holders of shares by the terms of issue of which the provisions of this article are excluded or modified no member shall be entitled to transfer any share otherwise than in accordance with the following provisions and the Directors shall refuse to register any transfer of shares made or expressed to be made in contravention of the provisions of this article:

(i)    a member desirous of transferring his shares or any of them (hereinafter called "the transferring member") shall give a notice (hereinafter called "the notice of transfer") to the Secretary of the Company containing an offer to sell the same, and stating the

9

number and class of shares which he desires to transfer and the price which he is willing to accept for such shares;

(ii)     the Secretary shall thereupon send to each of the other members a circular containing the same particulars and naming a day (being fourteen days after the service on him of the notice of transfer) on or before which offers to purchase the same will be received. If on or before the day so named offers to purchase the shares referred to in the notice of transfer at the price named shall be received from members of the Company by the Secretary, he shall, as agent for the transferring member and the proposing purchaser or purchasers, declare a contract of sale to be concluded and shall give notice thereof to the transferring member and the purchaser or purchasers;

(iii)    if the offers to purchase shall together constitute offers to purchase a greater number of shares than those offered for sale, the shares offered for sale shall be divided among the proposing purchasers in the proportions as nearly as possible in which they already hold shares in the Company:  PROVIDED that no proposing purchaser shall be liable to take more shares than those he shall have offered to purchase, and any shares which cannot be so divided as aforesaid without creating fractions shall be apportioned by lot among the proposing purchasers.  The transferring member and the members declared to be the purchasers of the shares shall give effect to the contract or contracts so made as aforesaid by the execution of proper transfers and the payment of the purchase price;

(iv)    if within twenty-one days after the  service of the notice of transfer on the Secretary the transferring member shall not receive notice that his offer to sell has been accepted on behalf of some member or members of the Company, he may within six months from the date of serving the notice (but subject to the provisions of article  35) sell or otherwise dispose of the shares referred to in such notice of transfer to any other person:  PROVIDED that such sale or disposal be at a price not less than that named in the notice of transfer; AND PROVIDED FURTHER however that the transferring member if he so desires may transfer during his lifetime any shares by way of gift to any person if he shall first offer the shares for sale as aforesaid but to the extent only that the offer is not accepted by the other members, or if the other members consent to such transfer;

(v)    a notice of transfer may be renewed from time to time but the offer therein contained shall not be withdrawn until the expiration of twenty-one days from the service thereof on the Secretary;

(vi)    unless specifically authorised in the notice of transfer the Secretary shall not conclude a contract of sale for any shares of a lesser amount than is specified in the notice of transfer;

(vii)    if any person shall become entitled to any share by reason of the death or bankruptcy of any member he shall be bound forthwith to offer the same for sale to the members of the Company at a fair price, such fair price to be determined by agreement between such

10

person and the Directors, or in default of agreement by the Auditors for the time being of the Company whose decision shall be conclusive and binding on the Company and on all persons interested in the share; and so soon as the said fair price shall have been determined the said person shall give to the Secretary a notice of transfer in the manner hereinbefore mentioned containing as the price which he is willing to accept the said fair price, and the same results shall follow as in the case of a notice of transfer voluntarily given.  If the said person shall fail to give such notice of transfer the Directors may, as his agents, give the same for him;

(viii)   for the purpose of giving effect to any sale pursuant to the foregoing provisions of this article the Directors may authorise some person to execute any document or do any act in order to transfer the shares so sold to the purchaser thereof;

(ix)   any member may (subject to the provisions of the article next following) transfer by way of sale or otherwise or by will bequeath any share held by him to trustees in trust for or to a member or members of his family as hereinafter defined or to another person who is already a member of the Company and in such case the foregoing provisions of this article shall not apply; and in the case of such bequest the legal personal representatives of the deceased member may, subject as aforesaid, transfer the shares so bequeathed to such trustees (whether themselves or others) or to the legatee, legatees or beneficiaries. For the purposes hereof a member of the family of any member shall include a husband, wife, son, daughter, grandchild, or a father, mother, brother or sister of such member, but no other person;

(x)   where any shares are held upon trust (whether such trust be created by deed, will or otherwise) a transfer thereof may be made upon any change or appointment of new trustees, but the Directors may require evidence to satisfy themselves of the facts in relation to such transfer.

37.    If the Directors refuse to register a transfer they shall within two months after the date on which the transfer was lodged with the Company send to the transferee notice of the refusal.

38.    The Company shall be entitled to charge such fee not exceeding Two Dollars, as the Directors may from time to time determine for registering any probate, letters of administration, certificate of marriage or death, power of attorney, notice in lieu of distringas or other instrument relating to or affecting the title to any shares.

<u>TRANSMISSION OF SHARES</u>

39.    On the death of any member (not being one of two or more joint holders of a share) the legal personal representatives of such deceased, shall be the only persons recognised by the Company as having any title to the share or shares registered in his name.

40.    Any person becoming entitled to a share by reason of the death or bankruptcy of a member may upon such evidence being produced as may from time to time be required by the Directors, elect either

11

to be registered as a member in respect of such share or to make and execute such transfer of the shares as the deceased or bankrupt person could have made.  If the person so becoming entitled shall elect to be registered himself he shall give to the Company a notice in writing signed by him that he so elects. The Directors shall in either case have the same right to refuse or suspend registration as they would have had if the death or bankruptcy of the member had not occurred and the notice of election or transfer were a transfer executed by that member.

41.    Any person becoming entitled to a share by reason of the death or bankruptcy of the holder shall  be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, unless and until he is registered as a member in respect of the share, be entitled in respect of it to receive notice of, or to exercise any right conferred by membership in relation to, meetings of the Company:  Provided always that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to make such transfer as aforesaid, and if such notice is not complied with within ninety days after service thereof the Directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of such share until the requirement of the notice has been complied with.

## FORFEITURE OF SHARES

42.    If any member fails to pay any call or instalment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of the call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest on such non-payment.

43.    The notice shall name a further day (not being earlier than the expiration of fourteen days from the date of the notice) on or before which such call or instalment and all interest accrued and expenses incurred by reason of such nonpayment are to be paid, and it shall also name the place where payment is to be made.  The notice shall also state that in the event of non-payment on or before the time and at the place appointed the shares in respect of which such call or instalment is payable will be liable to forfeiture.

44.    If the requirements of any such notice as aforesaid be not complied with, any shares in respect of which such notice has been given may, at any time thereafter before the payment required by the notice has been made, be forfeited by a resolution of the Directors to that effect and any such forfeiture shall extend to all dividends declared in respect of the shares so forfeited, but not actually paid before such forfeiture.

45.    Any shares so forfeited shall be deemed to be the property of the Company, and may be sold or otherwise disposed of in such manner, either subject to or discharged from all calls made or instalments due prior to the forfeiture, as the Directors think fit; or the Directors may, at any time before such shares are sold or otherwise disposed of, annul the forfeiture upon such terms as they may approve.  For the purpose of giving effect to any such sale or other disposition the Directors may authorise some person to transfer the shares so sold or otherwise disposed of to the purchaser thereof or other person becoming entitled thereto, and he shall thereupon be registered as the holder of the shares, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the shares be

12

affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the shares.

46.     Any person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall notwithstanding, remain liable to pay to the Company all moneys which at the date of the forfeiture were presently payable by him to the Company in respect of the shares, together with interest thereon at such rate, not exceeding ten per centum per annum, as the Directors shall appoint, down to the date of payment, but his liability shall cease if and when the Company receives payment in full of all such moneys in respect of the shares, together with interest as aforesaid. The Directors may, if they shall think fit, remit the payment of such interest or any part thereof.

47.     When any shares have been forfeited an entry shall forthwith be made in the Register recording the forfeiture and the date thereof, and so soon as the shares so forfeited have been sold or otherwise disposed of an entry shall also be made of the manner and date of the sale or disposal thereof. The entry in the Register or in the Directors' Minute Book recording forfeiture of the share shall be conclusive evidence of that fact as against all persons claiming to be entitled to the shares.

48.     The provisions of these articles as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the share or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

<u>ALTERATION OF CAPITAL</u>

49.     The Company may by ordinary resolution increase the share capital of the Company by the creation of new shares, such increase to be of such aggregate amount and to be divided into shares of such respective amounts as the resolution shall prescribe.

50.     Any capital raised by the creation of new shares shall, unless otherwise provided by the conditions of issue, be considered as part of the original capital, and shall be subject to the same provisions with reference to the payment of calls and the forfeiture of shares on non-payment of calls, transfer and transmission of shares, lien, or otherwise, as if it had been part of the original capital.

51.     Subject to any direction to the contrary that may be given by the Company in general meeting, all new shares shall before issue, be offered to such persons as at the date of the offer are entitled to receive notices from the Company of general meetings in proportion, as nearly as the circumstances admit, to the amount of the existing shares to which they are entitled. The offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted will be deemed to be declined, and after the expiration of that time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the Directors may dispose of those shares in such manner as they think most beneficial to the Company. The Directors may likewise so dispose of any new shares which (by reason of the ratio which the new shares bear to the shares held by persons entitled to an offer of new shares) cannot, in the opinion of the Directors, be conveniently offered under this article.

13

52.     The Company may by ordinary resolution:-

    (a)     subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association:  Provided that in the sub-division of an existing share the proportion between the amount paid and the amount (if any) unpaid on each reduced share shall be the same as it was in the case of the share from which the reduced share is derived and subject to the provisions of Section 65(1) (d) of the Act;

    (b)     consolidate and divide its capital or any part thereof into shares of larger amount than its existing shares;

    (c)     cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

53.     The Company may by special resolution reduce its share capital, any capital redemption reserve fund and any share premium account in any manner authorised by law.

54.     Subject to section 71 of the Act, the company may by special resolution:

    (a)     extinguish or reduce a liability in respect of an amount unpaid on any shares;

    (b)     reduce its stated capital by an amount that is not represented by realizable assets; or

    (c)     return to its shareholders any of its assets which are in excess of the wants of the company.

## GENERAL MEETINGS

55.     The first ordinary general meeting shall be held at such time (within a period of not more than eighteen months from the date of the Company's incorporation) and at such place as the Directors may determine.

56.     The Company shall in each year hold a general meeting as its annual general meeting in addition to any other meetings in that year, and shall specify the meeting as such in the notice calling it, and not more than fifteen months shall elapse between the date of one annual general meeting of the Company and that of the next.  The annual general meeting shall be held at such time and place as the Directors shall appoint.  All general meetings other than annual general meetings shall be called "extraordinary general meetings".

57.     The Directors may, whenever they think fit, and they shall on the requisition of members of the Company holding at the date of the deposit of the requisition not less than one tenth of such of the paid up capital of the Company as at the date of the deposit carries the right of voting at general meetings of the Company convene an extraordinary general meeting.  The requisition shall state the objects of the meeting and must be signed by the requisitionists and deposited at the registered office of the Company and may consist of several documents in like form each signed by one or more requisitionists.  If the

14

Directors do not within twenty-one days from the date of the deposit of the requisition proceed duly to convene a meeting the requisitionists or any of them representing more than one-half of the total voting rights of all of them may themselves convene a meeting but any meeting so convened shall not be held after the expiration of three months from the said date. A meeting convened under this article by the requisitionists shall be convened in the same manner as nearly as possible as that in which meetings are to be convened by Directors. Any reasonable expenses incurred by the requisitionists by reason of the failure of the Directors duly to convene a meeting shall be repaid to the requisitionists by the Company and any sum so repaid shall be retained by the Company out of any sums due or to become due from the Company by way of fees or other remuneration in respect of their services to such of the Directors as were in default. If at any time there are not within the Island sufficient Directors capable of acting to form a quorum, any Director or any two members of the Company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

58.    In the case of an extraordinary general meeting called in pursuance of a requisition, unless such meeting shall have been called by the Directors, no business other than that stated in the requisition as the objects of the meeting shall be transacted.

<u>NOTICE OF GENERAL MEETINGS</u>

59.    An annual general meeting and a meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing (sent in hard copy form or in the case of members and other persons entitled to receive such notice who have given the requisite consent, in electronic form or by electronic means) at the least, and a meeting of the Company other than an annual general meeting or a meeting for the passing of a special resolution shall be called by fourteen days' notice in writing at the least (sent in hard copy form or in electronic form or by electronic means, as aforesaid). The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, the day and the hour of meeting and, in case of special business, the general nature of that business, and shall be given in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meeting, to such persons as are, under these articles of the Company, entitled to receive such notices from the Company.

60.    A meeting of the Company shall, notwithstanding that it is called by a shorter notice than that specified in the last preceding article, be deemed to have been duly called with regard to length of notice if it is so agreed:-

(a)    in the case of a meeting called as the annual general meeting, by all the members entitled to attend and vote thereat; and

(b)    in the case of any other meeting, by a majority in number of the members having the right to attend and vote at the meeting, being a majority together holding not less than ninety-five per centum in nominal value of the shares giving that right.

61.    The accidental omission to give notice to any person entitled under these articles to receive notice of a general meeting, or the non-receipt by any such person of such notice shall not invalidate the

15

proceedings at that meeting.

## PROCEEDINGS AT GENERAL MEETINGS

62.    The business of any ordinary general meeting shall be to receive and consider the accounts and balance sheets, the reports of the Directors and auditors and any other documents required by law to be attached or annexed to the balance sheets, to elect Directors in place of those retiring, to elect auditors and fix their remuneration and to declare a dividend. All other business transacted at ordinary general meetings, and all business (save as above) transacted at an extraordinary general meeting, shall be deemed special.

63.    No business shall be transacted at any general meeting unless a quorum of members is present and such quorum shall consist of not less than two members present in person or by proxy.

64.    If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened by or on the requisition of members, shall be dissolved.  In any other case it shall stand adjourned to the same day in the next week, at the same time and place; and if at such adjourned meeting a quorum be not present within half an hour from the time appointed for the meeting, those members who are present shall be deemed to be a quorum, and may do all business which a quorum might have done.

65.    The chairman, if any, of the Board of Directors shall preside as chairman at every general meeting of the Company.  If there be no such chairman, or if at any meeting he be not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman, the members present shall choose one of the Directors present to be chairman; or if no Director be present and willing to take the chair, the members present shall choose one of their number to be chairman.

66.    The chairman may, with the consent of any general meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Save as aforesaid, it shall not be necessary to give any notice of an adjourned meeting or of the business to be transacted thereat.

67.    At any general meeting every question shall be decided in the first instance by a show of hands; and unless a poll be (on or before the declaration of the result of the show of hands) directed by the chairman or demanded by at least two members entitled to vote, a declaration by the chairman that a resolution has been carried or not carried by a particular majority, and an entry to that effect in the Minute Book of the Company shall be conclusive evidence of the facts, without proof of the number or proportion of the votes recorded in favour of or against such resolution.  The demand for a poll may be withdrawn.

68.    If a poll be directed or demanded in the manner before mentioned it shall (subject to the

16

provisions of article 63 hereof) be taken at such time (but not more than thirty days after such direction or demand) and in such manner as the chairman may appoint and the result of such poll shall be deemed to be the resolution of the meeting at which the poll was directed or demanded.

69.    In the case of an equality of votes at any general meeting, whether on a show of hands or on a poll, the chairman shall be entitled to a second or casting vote.

70.    No objection to the admission or rejection of any vote shall be taken except at the meeting or adjourned meeting at which the vote in dispute is given or tendered.  The chairman shall determine any such objection if made within due time, and such determination shall be final and conclusive.

71.    A poll demanded upon the election of a chairman or upon a question of adjournment shall be taken forthwith.  Any business other than that upon which a poll has been demanded may be proceeded with pending the taking of the poll.

## VOTES OF MEMBERS

72.    Subject to any special terms as to voting upon which any shares or class of shares may for the time being be held, upon a show of hands every member present in person or by proxy shall have one vote, and upon a poll every member present in person or by proxy shall have one vote for every share held by him.  Nothing herein contained shall be deemed to affect the existing rights attaching to the issued shares in the Company or any class thereof.

73.    If any member be a person of unsound mind he may vote by his committee, receiver, curator bonis, or other legal curator.

74.    No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares held by him in the Company have been paid.

75.    All votes may be given either personally or by proxy, but no member shall be entitled to appoint more than one proxy to attend on the same occasion.

76.    The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if such appointer be a corporation, either under its common seal or under the hand of an officer or attorney duly authorised.  A proxy shall have the same right as the member appointing him to speak at the meeting.

77.    A proxy need not be a member of the Company.

78.    The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed, or a notarially certified or office copy of such power or authority, shall be deposited (in hard copy form) at the registered office or received by electronic means not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, or in the case of a poll not less than twenty-four hours before the time appointed for the taking of the poll, and in default the instrument of proxy shall not be treated as valid.

17

79.    An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit:

**Aegean Bunkering (Jamaica) Limited**

**I/ We**
**of**                                                    **, being a  member/members of the abovenamed company, hereby appoint**                        **of**
**,or failing him,**                                **of**                    **, as my/our proxy to vote for me/us on my/our behalf at the [annual or extraordinary, as the case may be] general meeting of the company to be held on the      day of                    , and at any adjournment thereof.**

**Signed this**                        **day of**                            **."**

or in any other form of which the Directors shall approve.  Any member shall be entitled to appoint a proxy to vote for him at all general meetings of the Company.

80.    Where it is desired to afford members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit:

**Aegean Bunkering (Jamaica) Limited**

**I/We**
**of**                                **, being a  member/members of the abovenamed company, hereby appoint**                        **of**
**, or failing him,**                        **of**                    **, as my/our proxy to vote for me/us on my/our behalf at the [annual or extraordinary, as the case may be] general meeting of the company to be held on the day of**                        **, and at any adjournment thereof.**

**Signed this**                        **day of**                        **."**

or in any form of which the Directors shall approve.  This form is to be used [*in favour of/against] the resolution. Unless otherwise instructed, the proxy will vote as he thinks fit.

* Strike out whichever is not desired.

81.    The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

82.    A vote given or act done in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the appointer, or revocation of the proxy or of the

18

authority under which the proxy was executed, on the transfer of the share in respect of which the proxy is given, unless notice in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the Company at the registered office before the commencement of the meeting or adjourned meeting or poll at which the vote was given or the act was done.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

83.    Any corporation which is a member of the Company may by instrument in writing under its seal or under the hand of an officer or attorney so authorised or by a resolution of its Directors or other governing body appoint any person to act as its representative at any meeting of the Company or at all meetings of the Company until such instrument in writing or resolution be revoked by a similar instrument in writing or resolution, and such representative shall be entitled to exercise the same functions on behalf of the corporation which he represents as if he had been an individual member of the Company.

## ROUND ROBIN

84.    Subject to the provisions of the Act, a resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

## DIRECTORS

85.    The number of the Directors excluding alternate Directors and the name of the first Directors shall be as set forth in Form 1A.  The number of Directors may at any time  be increased or reduced as the Company in general meeting shall determine.   In the event that the number of Directors is determined as one, or only one Director is appointed, any provision in these articles relating to a quorum of Directors shall be inapplicable and that Director shall have all the rights and be entitled to exercise all the powers of Directors contained in these articles.

85A.    Subject to Article 113 hereof, Directors are present and participating in a directors' meeting or part of a directors' meeting for all purposes (including quorum and carrying out the business of the Company) when:

(a)    the meeting has been called and takes place in accordance with the articles, and

(b)    they can each communicate to the others any information or opinions they have on any particular item of the business of the meeting (for the avoidance of any doubt this shall include communication by telephone, teleconference, web conference or other similar medium).

85B.    Subject to Article 113 hereof, in determining whether directors are participating in a directors' meeting, it is irrelevant where any director is or how they communicate with each other.

19

85C.    Subject to Article 113 hereof, if all the directors participating in a meeting are not in the same place, they may decide that the meeting is to be treated as taking place wherever any of them is.

86.    A Director need not be a member of the Company.

87.    The remuneration of the Directors shall be such sum or sums as may from time to time be determined by them and approved by the Company in general meeting.

88.    The Directors shall be paid such travelling, hotel and other expenses as may properly be incurred by them in the execution of their duties, including any such expenses incurred in connection with their attendance at meetings of Directors and at general meetings or in connection with the business of the Company.

89.    The Directors may award special remuneration out of the funds of the Company to any Director going or residing abroad in the interest of the Company, or undertaking any work additional to that usually required of Directors of a company similar to this.

90.    The Company may by ordinary resolution remove any Director before the expiration of his period of office notwithstanding anything in these articles or in any agreement between the Company and such Director and may by ordinary resolution appoint another person in his stead.  The person so appointed shall be treated for the purpose of determining the time at which he or any other Director is to retire as if he had become a Director on the day on which the Director in whose place he is appointed was last appointed a Director.

BORROWING POWERS

91.    The Directors may raise or borrow for the purposes of the Company such sum or sums of money as they think fit.  The Directors may secure the repayment of or raise any such sum or sums as aforesaid and also secure the repayment of any sum or sums due or owing by the Company or by any other person by bill of sale, mortgage or charge upon the whole or any part of the property and assets of the Company, present and future including its uncalled capital, or by issue, at such price as they may think fit, of bonds, debentures or debenture stock either charged upon the whole or any part of the property and assets of the Company or not so charged or by bonds, bills of exchange, promissory notes or in such other way as the Directors may think expedient.

92.    Any bonds debentures debenture stock or other securities issued or to be issued by the Company shall be under the control of the Directors who may issue them upon such terms and conditions and in such manner and for such consideration as they shall consider to be for the benefit of the Company.

POWERS AND DUTIES OF DIRECTORS

93.    The business of the Company shall be managed by the Directors, who may pay all expenses incurred in the formation and registration of the Company, and may exercise all such powers of the

20

Company as are not by the Act or by these articles required to be exercised by the Company in general meeting, subject, nevertheless to the provisions of these articles and of the Act, and to such regulations not being inconsistent with the aforesaid provisions, as may be prescribed by the Company in general meeting; but no regulation made by the Company in general meeting shall invalidate any prior act of the Directors which would have been valid if such regulation had not been made. The general powers conferred upon the Directors by this article shall not be deemed to be abridged or restricted by any specific power conferred upon the Directors by any other article.

94.    The Directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these articles) and for such period and subject to such conditions as they may think fit and any such powers of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Directors may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretions vested in him.

95.    The Company may exercise any powers conferred by the Act with regard to having an official seal for use abroad, and such powers shall be vested in the Directors.

96.    A Director may enter into or be interested in contracts or arrangements with the Company (whether with regard to any such office or place of profit or any such acting in a professional capacity or as vendor, purchaser or otherwise howsoever) and may have or be interested in dealings of any nature whatsoever with the Company and shall not be disqualified from office thereby. No such contract, arrangement, or dealing shall be liable to be avoided nor shall any Director so contracting, dealing or being so interested be liable to account to the Company for any profit arising out of any such contract, arrangement, or dealing to which he is a party or in which he is interested by reason of his being a Director of the Company or of the fiduciary relationship thereby established. A Director may vote as a Director in respect of any contract or arrangement in which he is so interested as aforesaid and shall be counted in the quorum at any meeting at which such matter is considered.

97.    A Director may be or continue or may become a Director or other officer or servant of, or otherwise interested in, any other company in which the Company is in any way interested and shall not (in the absence of agreement to the contrary) be liable to account to the Company for any emoluments or other benefits received or receivable by him as Director, officer or servant of, or from his interest in such other company.

98.    (a)    A Director who is, in any way, whether directly or indirectly, interested in a contract with the Company shall declare the nature and extent of his interest at a meeting of the Directors.

       (b)    In the case of a proposed contract, the declaration required by this article to be made by a Director shall be made at the meeting of the Directors at which the question of entering into the contract is first taken into consideration, or if the Director was not at the date of that meeting interested in the proposed contract, at the next meeting of the

21

Directors held after he became so interested, and in a case where the Director becomes interested in a contract after it is made, the said declaration shall be made at the first meeting of the Directors held after the Director becomes so interested.

(c) For the purpose of this article, a general notice given to the Directors of the Company by a Director to the effect that he is a member of a specified company or firm and is to be regarded as interested in any contract which may, after the date of the notice be made with that company or firm shall be deemed to be a sufficient declaration of interest in relation to any contract so made if the following conditions are satisfied, that is to say that:

(i) there are stated in the said notice the nature and extent of the interest of the said Director in such company or firm; and

(ii) at the time the question of confirming or entering into any contract is first taken into consideration the extent of his interest in such company or firm is not greater than is stated in the notice; and

(iii) either the notice is given at the meeting of the Directors or the Director takes all reasonable steps to secure that it is brought up and read at the next meeting of the Directors after it is given.

99. A Director may hold any other office or place of profit under the Company in conjunction with the office of Director for such period and on such terms as to remuneration and otherwise as the Directors may determine, and a Director or any firm in which he is interested may act in a professional capacity for the Company and he or such firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing contained in these presents shall authorise a Director or any such firm to act as auditor to the Company.

100 All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments, and all receipts for moneys paid to the Company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by resolution determine.

101. The Directors may give or award pensions, annuities, gratuities and superannuation or other allowances or benefits to any persons who are or have at any time been Directors of or employed by or in the service of the Company, or any company which is a subsidiary of the Company and to the wives, widows, children and other relatives and dependants of any such persons, and may set up, establish, support and maintain pension, superannuation or other funds or schemes (whether contributory or non-contributory) for the benefit of such persons as are hereinbefore referred to or any of them or any class of them. Any Director shall be entitled to receive and retain for his own benefit any such pension, annuity, gratuity, allowance or other benefit, and may vote as a Director in respect of the exercise of any of the powers of this article conferred upon the Directors notwithstanding that he is or may be or become interested therein.

22

102.    The Company may upon the issue of any debentures or other securities confer upon the creditors of the Company holding the same or any trustees or other persons acting on their behalf, a voice in the management of the Company, whether by giving them the right of attending and voting at general meetings or by empowering them to appoint one or more persons to be Directors of the Company or otherwise as may be agreed.

103.    If any Director or other person shall become personally liable for the payment of any sums primarily due from the Company, the Directors may execute or cause to be executed any mortgage, charge, bill of sale or security over or affecting the whole or any part of the assets of the Company by way of indemnity to secure the Director or person so becoming liable as aforesaid from any loss in respect of such liability.

104.    A register of the holders of debentures of the Company shall be kept at the office in accordance with the provisions of the Act and shall be open to the inspection of the registered holders of such debentures and of any member of the Company, subject to such restrictions as the Company in general meeting may from time to time impose.  The Directors may close such register for such period or periods as they think fit, not exceeding in the aggregate thirty days in each year.  The Directors shall cause a proper Register of Charges to be kept in accordance with Section 103 of the Act and same shall be kept open for inspection as provided for in the Act.

105.    The Directors may exercise or procure the exercise of the voting rights attached to shares in any other Company in which this Company is or becomes in any way interested, and may exercise any voting rights to which they are entitled as Directors of such other company in such manner as they shall in their absolute discretion think fit, including the exercise thereof in favour of any resolution appointing themselves or any of them as Directors, officers or servants of such other company, and fixing their remuneration as such, and may vote as Directors of this Company in connection with any of the matters aforesaid.

106.    The Directors shall have power at any time and from time to time to appoint any other person to be a Director of the Company, either to fill a casual vacancy or as an addition to the Board, but so that the total number of Directors shall not at any time exceed the maximum number fixed as hereinbefore mentioned.  Any Director so appointed shall hold office only until the next following annual general meeting, when he shall retire but shall be eligible for re-election.

<u>DISQUALIFICATION OF DIRECTORS</u>

107.    The office of a Director shall be vacated if:-

(a)    he becomes bankrupt or makes an arrangement or composition with his creditors generally;

(b)    he becomes of unsound mind;

(c)    he absents himself from the meetings of Directors for a period of six months without

23

special leave of absence from the Board of Directors;

(d)    he resigns his office by not less than thirty days' notice in writing to the Company, but this paragraph shall not apply to a Managing Director holding office as such for a fixed term;

(e)    he ceases to be or become prohibited from being a Director by reason of any provision in or any order made under the Act;

but any act done in good faith by a Director whose office is vacated as aforesaid shall be valid unless, prior to the doing of such act, written notice shall have been served upon the Company or an entry shall have been made in the Directors' Minute Book stating that such Director has ceased to be a Director of the Company.

## ROTATION OF DIRECTORS

108.    At the annual general meeting in every year one-third of the Directors for the time being, or if their number is not three or a multiple of three then the number nearest to one-third shall retire from office, the Directors to retire in each year being those who have been longest in office since their last election, but as between persons who become Directors on the same day those to retire shall (unless they otherwise agree among themselves) be determined by lot. A retiring Director shall be eligible for re-election.

109.    The Company at the annual general meeting at which any Director retires in manner aforesaid may fill up the vacated office, and may fill up any other offices which may then be vacant by electing the necessary number of persons. The Company may also at any extraordinary general meeting, on notice duly given, fill up any vacancies in the office of Director, or appoint additional Directors, provided that the maximum number fixed as hereinbefore mentioned be not exceeded.

110.    No person other than a Director retiring at the meeting shall, unless recommended by the Directors for election, be eligible for election to the office of Directors at any general meeting unless, not less than seven nor more than twenty-one days before the day appointed for the meeting there shall have been left at the office notice in writing signed by a member duly qualified to attend and vote at such meeting, of his intention to propose such person for election, and also notice in writing signed by that person of his willingness to be elected.

111.    If at any general meeting at which an election of Directors ought to take place, the place of any retiring Director be not filled up, such retiring Director shall (unless a resolution for his re-election shall have been put to the meeting and lost) continue in office until the annual general meeting in the next year, and so on from time to time until his place has been filled up, unless at any such meeting it shall be determined to reduce the number of Directors in office.

112.    The Company may from time to time in general meeting increase or reduce the number of Directors, and may also determine in what rotation such increased or reduced number is to go out of office.

24

## PROCEEDINGS OF DIRECTORS

113.    The Directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings as they think fit, and determine the quorum necessary for the transaction of business. Until otherwise determined two Directors shall constitute a quorum. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the Chairman shall have a second or casting vote. A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors. It shall not be necessary to give notice of a meeting of Directors to any Director for the time being absent from the Island.

114.    The continuing Directors may act notwithstanding any vacancy in their body, but if and so long as the number of Directors is reduced below the number fixed by or pursuant to these articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number of Directors to that number, or of summoning a general meeting of the Company, but for no other purpose.

115.    The Directors may elect a chairman of their meetings and determine the period for which he is to hold office; but if no such chairman be elected, or if at any meeting the chairman be not present within five minutes after the time appointed for holding the same, the Directors present shall choose some one of their number to be chairman of such meeting.

116.    The Directors may delegate any of their powers to committees, consisting of such one or more of their body as they think fit. Any committee so formed shall, in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors. The regulations herein contained for the meetings and proceedings of Directors shall, so far as not altered by any regulations made by the Directors apply also to the meetings and proceedings of any committee.

117.    All acts done by any meeting of the Directors or of a committee of Directors, or by any persons acting as Directors shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Directors or persons acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a Director.

118.    A resolution in writing signed by all the Directors for the time being entitled to receive notice of a meeting including any alternate Director if entitled and annexed or attached to the Directors' Minute Book shall be as valid and effectual for all purposes as a Resolution of the Directors passed at a meeting duly convened, held and constituted. Any such resolution may consist of several documents in like form each signed by one or more of such Directors but a resolution signed by an alternate Director need not also be signed by his appointer, and if it is signed by a Director who has appointed an alternate Director it need not be signed by the alternate Director in that capacity.

## ALTERNATE DIRECTORS

25

119.    Any Director may, by writing under his hand, appoint any person (whether a member of the Company or not) who is approved by the Board of Directors to be his alternate; and every such alternate shall be entitled to notice of all meetings of Directors and shall be entitled to attend and vote at meetings of the Directors, and shall have and exercise all the powers, rights, duties and authorities of the Director appointing him, but shall not be required to hold or acquire a share qualification: Provided always that no such appointment shall be operative unless or until the approval of the Board of Directors shall have been given and entered in the Directors' Minute Book.  A Director may at any time in writing revoke the appointment of an alternate appointed by him, and, subject to such approval as aforesaid, appoint another person in his place, and if a Director shall die or cease to hold the office of Director the appointment of his alternate shall thereupon cease and determine: Provided nevertheless that if a Director retires by rotation and is re-elected by the meeting at which such retirement took effect, an appointment made by him pursuant to this article which was in force immediately prior to his retirement shall continue to operate after his re-election as if he had not so retired.  All appointments and removals of alternate Directors shall be left with the Secretary or the chairman of the Directors or may be effected by telegram or cable sent to the Secretary or the chairman of the Directors.

120.    Every person acting as an alternate for a Director shall be an officer of the Company, and shall alone be responsible to the Company for his own acts and defaults and he shall not be deemed to be the agent of or for the Director appointing him.  The remuneration of any such alternate shall be payable out of the remuneration payable to the Director appointing him and shall consist of such portion of the last mentioned remuneration, as shall be agreed between the alternate and the Director appointing him, and as is notified in writing to the Company by the Director making the appointment.

## MANAGING DIRECTOR

121.    The Directors may from time to time appoint one or more of their body to be a Managing Director or Managing Directors of the Company, and may fix his or their remuneration either by way of salary or commission or by conferring a right to participation in the profits of the Company, or by a combination of two or more of those modes, and may provide as a term of his appointment that there be paid to him, his widow or other dependents a pension or gratuity on retirement or death and the terms of such employment need not be confirmed by the Company in general meeting.

122.    Every Managing Director shall, subject to the provisions of any contract between himself and the Company with regard to his employment as Managing Director, be liable to be dismissed or removed by the Board of Directors, and another person may be appointed in his place.

123.    A Managing Director shall not, while he continues to hold that office, be liable to retire by rotation, and he shall not be taken into account in determining the rotation in which the other Directors shall retire or the number to retire, but he shall be subject to the same provisions as regards resignation, removal and disqualification as the other Directors, and if he ceases to hold office of Director from any cause he shall ipso facto cease to be a Managing Director.

124.        The Directors may from time to time entrust to and confer upon the Managing Director

26

all or any of the powers of the Directors (excepting the power to make calls, forfeit shares, borrow money, or issue debentures, or mortgage or charge the property and assets of the Company) that they may think fit, but the exercise of all such powers by the Managing Director shall be subject to such regulations and restrictions as the Directors may from time to time make and impose, and the said powers may at any time be withdrawn, revoked or varied.

## SECRETARY

125.    The Directors shall appoint a Secretary, and shall fix his remuneration and terms and conditions of employment and any Secretary so appointed may be removed by them.

126.    No person shall be appointed or hold office as Secretary who is:-

(a)    the sole Director of the Company; or

(b)    a corporation the sole director of which is the sole Director of the Company; or

(c)    the sole director of a corporation which is the sole Director of the Company.

127.    A provision of the Act or these articles requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same person acting both as Director and as or in the place of the Secretary.

## MINUTES

128.    The Directors shall cause minutes to be made in books provided for the purpose :-

(a)    of all appointments of officers made by the Directors;

(b)    of the names of the Directors present at each meeting of the Directors and of any committee of the Directors;

(c)    of all resolutions and proceedings at all meetings of the Company and of Directors and of committees of Directors.

## THE SEAL

129.    The Directors shall forthwith procure a Seal to be made for the Company, and shall provide for the safe custody thereof.  Every instrument to which the Seal shall be affixed shall be signed by a Director and shall be countersigned by the Secretary or by a second Director or by some other person appointed by the Directors for the purpose.

## DIVIDENDS

130.    Subject to the right of the holders of any shares entitled to any priority preference or special

27

privileges, all dividends shall be declared and paid to the members in proportion to the amounts paid up on the shares held by them respectively. No amount paid on a share in advance of calls shall, while carrying interest, be treated for the purpose of this article as paid on the share. All dividends shall subject as aforesaid be apportioned and paid proportionately to the amounts paid up on the shares during any portion or portions of the period in respect of which the dividend is paid, but if any share is issued on terms providing that it shall rank for dividend from a particular date it shall rank accordingly.

131. The Directors shall lay before the Company in general meeting a recommendation as to the amount (if any) which they consider should be paid by way of dividend, and the Company shall declare the dividend to be paid, but such dividend shall not exceed the amount recommended by the Directors.

132. No dividend shall be paid otherwise than out of the profits of the Company and for the purposes of this article profits shall include all realised profits whether arising by way of trade or by way of disposal of fixed assets or investments.

133. The Directors may from time to time pay to the members, or any class of members, such interim dividends as appear to the Directors to be justified by the profits of the Company.

134. The Directors may deduct from the dividends payable to any member all such sums of money as may be due from him to the Company on account of calls or otherwise howsoever and whether any such indebtedness be statute-barred or not.

135. The Company may transmit any dividend or bonus payable in respect of any share by ordinary post to the registered address of the holder or, in the case of joint holders of one of the holders of such share or to such person and address as the holder or joint holders may direct, and shall not be responsible for any loss arising in respect of such transmission.

136. No dividend shall bear interest against the Company.

137 The Directors may with the sanction of the Company in general meeting, distribute in kind among the members by way of dividend any of the assets of the Company, and in particular any shares or securities of other companies to which the Company is entitled: Provided always that no distribution shall be made which would amount to a reduction of capital except in the manner appointed by the Act.

138. All dividends unclaimed for one year after having been declared, may be invested or otherwise made use of by the Directors for the benefit of the Company until claimed and if unclaimed for 12 years may be forfeited and retained by the Company.

<u>RESERVE FUNDS</u>

139. Before recommending a dividend the Directors may set aside any part of the net profits of the Company to a reserve fund, and may apply the same either by employing it in the business of the Company or by investing it in such a manner (subject to article 9 hereof) as they shall think fit, and the income arising from such reserve fund shall be treated as part of the gross profits of the Company.

28

Such reserve may be applied for the purpose of maintaining the property of the Company, replacing wasting assets, meeting contingencies, forming an insurance fund, equalising dividends, paying special dividends or bonuses, or for any other purpose for which the net profits of the Company may lawfully be used and until the same shall be so applied it shall be deemed to remain undivided profit.  The Directors may also carry forward to the accounts of the succeeding year or years any profit or balance of profit which they shall not think fit to divide or to place to reserve.

## ACCOUNTS

140.    The Directors shall cause proper books of account (being such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions) to be kept with respect to:-

(a)    all sums of money received and expended by the Company, and the matters in respect of which such receipts and expenditure take place;

(b)    all sales and purchases of goods by the Company;

(c)    the assets and liabilities of the Company.

141.    The books of account shall be kept at the office, or subject to the provisions of the Act at such other place or places as the Directors may determine, and shall always be open to the inspection of the Directors.  The Directors may from time to time by resolution determine whether and to what extent, and at what times and places, and on what conditions the books and accounts of the Company, or any of them, shall be open to the inspection of the members (not being Directors), and the members shall have only such right of inspection as are given to them by the Act or by such resolution as aforesaid.

142.    The Directors shall from time to time, in accordance with Sections 145 and 147 of the Act, cause to be prepared and to be laid before the Company in general meeting such profits and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

143.    A copy of every balance sheet (including every document requiring by law to be annexed thereto) which is to be laid before the Company in general meeting, together with a copy of the auditors' report, shall not less than twenty-one days before the date of the meeting be sent to every member of, and every holder of debentures of the Company and to every person registered under article 41; provided that this article shall not require a copy of those documents to be sent to any person of whose address the Company is not aware or to more than one of the joint holders of any shares or debentures.  For the purposes of this Article the references to "sending documents" or other cognate expressions shall include: (i) sending such documents in hard copy form; or (ii) in cases where the member other intended recipient has consented, in electronic form or by electronic means or by posting the document on the Company's website.

## CAPITALISATION OF PROFITS

144.    The Company in general meeting may upon the recommendation of the Directors resolve that it

29

is desirable to capitalise any part of the amount for the time being standing to the credit of the profit and loss account or otherwise available for distribution and accordingly that such sum be set free for distribution among the members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying up any amounts for the time being unpaid on any shares held by such members respectively or paying up in full unissued shares or debentures of the Company to be allotted and distributed credited as fully paid up to and among such members in the proportion aforesaid or partly in any one way and partly in the other and the Directors shall give effect to such resolution: Provided that a share premium account and a capital redemption reserve fund may, for the purpose of this article only be applied in the paying up of unissued shares to be issued to members of the Company as fully paid bonus shares.

145.    Whenever such a resolution as aforesaid shall have been passed the Directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all the allotments and issues of fully paid shares or debentures, if any, and generally shall do all acts and things required to give effect thereto with full power to the Directors to make such provisions by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions, and also to authorise any person to enter on behalf of all the members entitled thereto into an agreement with the Company providing for the allotment to them respectively, credited as fully paid up of any further shares or debentures to which they may be entitled upon such capitalisation, of (as the case may require) for the payment up by the Company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such members.

## AUDITORS

146.    The Company shall at each annual general meeting appoint an auditor or auditors to hold office from the conclusion of that, until the conclusion of the next annual general meeting. The remuneration of the auditors shall be fixed by the Company in general meeting or in such manner as the Company in general meeting shall determine. In all other respects auditors shall be appointed and their duties regulated in accordance with Sections 154 to 157 of the Act.

## NOTICES

147.    (a)    A notice to be given or a document required to be sent by the Company to any member or other person entitled to receive such notice or document may be sent either:

       (i)       personally;

       (ii)     by sending it by post to him;

       (iii)    by sending it by post to his registered address or (if he has no registered address within Jamaica) to the address if any, within Jamaica supplied by him to the Company for the giving of notice to him; or

       (iv)    by sending it to him in electronic form and/or by electronic means, provided that the member or other person has consented in writing to receiving such notices and/or documents from the Company in such

30

electronic form and/or by electronic means and where appropriate, the member has provided the Company with an email address, a facsimile number or other electronic address for such purpose.

(b)      Where a notice or document is sent by post, service of the notice or document shall be deemed to be effected by properly addressing, prepaying, and posting the notice or document and to have been effected, in the case of a notice of a meeting, at the expiration of twenty-four (24) hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

(c)      Where a notice or document is sent by electronic means, service of the notice or document shall be deemed to be effected by properly dispatching the notice or document in the agreed manner to the email address or facsimile number provided by the member, and is deemed to have been received by the intended recipient at the expiration of twenty-four (24) hours after the notice or document is so dispatched by the Company.

(d)      Any notice or document sent by post to, or left at the registered address of, any member, or sent by electronic means to any member in pursuance of these Articles, shall, notwithstanding such member be then deceased or bankrupt and whether or not the Company have notice of his death or bankruptcy, be deemed to have been duly served in respect of any shares, whether held solely or jointly with other persons by such member, until some other person is registered in his stead as the holder or joint holder thereof. And such service shall for all purposes be deemed a sufficient service of such notice or document on all persons interested (whether jointly with or as claiming through or under him) in any such share.

148.    No member shall be entitled to have a notice served on him at any address not in Jamaica, but any member whose registered address is not in Jamaica may by notice in writing require the Company to register an address in Jamaica, which, for the purpose of the service of notices, shall be deemed to be his registered address.  A member who has no registered address in Jamaica, and has not given notice as aforesaid, shall not be entitled to receive any notices from the Company.

149.    Subject to such restrictions affecting the right to receive notices as are for the time being applicable to the holders of any shares, notice of every general meeting shall be given in any manner hereinbefore authorised to:-

(a)      every member except those members who (having no registered address in Jamaica) have not supplied to the Company an address in Jamaica for the giving of notices to them; and

(b)      every person upon whom the ownership of a share devolves by reason of his being a legal personal representative or a trustee in bankruptcy of a member where the member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

31

(c)      the auditor for the time being of the Company.

No other person shall be entitled to receive notices of general meetings.

150.    A notice or document may be given by the Company to the joint holders of a share by giving the notice or document to the joint holder first named in the register of members in respect of the share.

## DISCOVERY OF SECRETS

151.    No member shall be entitled to require or receive any information concerning the business, trading or customers of the Company, or any trade secret or secret process of or used by the Company beyond such information as to the accounts and business of the Company as is by the Act or these articles directed to be placed before the Company in general meeting, and no member shall be entitled to inspection of any of the books, papers, correspondence or documents of the Company except so far as such inspection is authorised by these articles or by the Act.

## INDEMNITY

152.    The Company shall indemnify every Director and other officer and servant of the Company against all losses, costs and expenses (including travelling expenses) in any way incurred by him in the proper discharge of his duties, and the Directors shall pay or retain the same out of the funds of the Company.  If any Director or other officer of the Company is guilty of actual fraud or dishonesty whereby the Company incurs any loss or damage, such Director or other officer shall be liable to recoup the same to the Company.  Except as aforesaid, no officer of the Company shall be liable to the Company for any loss, damage, costs or expenses that may happen to or be incurred by the Company in consequence of any act, omission or default by such officer while purporting to act as such.

153.    Subject to section 201 of the Act, the company may pursuant to section 201 indemnify:

(a)      a director or officer of the company or any person employed by the company as an auditor;

(b)      a former director, officer or auditor of the company; or

(c)      a person who acts or has acted at the company's request as a director or officer of a body corporate of which the company is or was a shareholder or creditor, and his legal representatives, against all costs, charges and expenses reasonably incurred by him in respect of any civil, criminal or administrative action or proceeding to which he is made a party by reason of being, or having been, a director or officer of that company or body corporate, or any person employed by a company or body corporate as an auditor.

## WINDING UP

154.    If the Company shall be wound up the assets remaining after payment of the debts and liabilities

32

of the Company and the costs of liquidation shall be applied:  first, in repaying the members the amounts paid up on the shares held by them respectively; and the balance, (if any) shall be distributed among the members in proportion to the number of shares held by them respectively:  provided always that the provisions hereof shall be subject to the rights of the holders of shares (if any) issued upon special conditions.

155.    In a winding up of any of the assets of the Company including any shares in or securities of other companies may, with the sanction of an ordinary resolution of the Company, be divided among the members of the Company in specie or may, with the like sanction be vested in trustees for the benefit of such members and the liquidation of the Company may be closed and the Company dissolved, but so that no member shall be compelled to accept any shares whereon there is any liability.

**Exhibit H-27**

**Reorganized Aegean Marine Petroleum SA Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### AEGEAN MARINE PETROLEUM S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of AEGEAN MARINE PETROLEUM S.A. (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 4th day of January 1995, with registration number C-76656, hereby **CERTIFY THAT:**

1. The name of the corporation is

    **Aegean Marine Petroleum S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 4th day of January 1995.

3. Previous Amendments to the Articles of Incorporation were filed on the 12th day of September 2005, and the 4th day of January 2019, respectively.

4. Section D of the Articles of Incorporation presently reads as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is One Hundred (100) registered shares without par value.

    The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

    Section D of the Articles of Incorporation is hereby amended to read as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is One Hundred (100) registered shares without par value.

    The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u>.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], 2019.

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

## RESTATED ARTICLES OF INCORPORATION

### of

### AEGEAN MARINE PETROLEUM S.A.

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Liberian Business Corporation Act, does hereby make, subscribe, acknowledge and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

A.      The name of the Corporation shall be:

### AEGEAN MARINE PETROLEUM S.A.

B.      The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Liberian Business Corporation Act, and in furtherance of the foregoing, the general nature of the business to be transacted by the Corporation shall be:

To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world.

To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

To purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in, bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, rights, certificates, receipts or any other instruments or interests in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect

thereof; to do any and all acts and things for the preservation, protection, improvement and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments of interests in the nature of securities of any kind whatsoever which a corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority;

To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein, at any place or places in Liberia or abroad, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or , to the extent permitted by the laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, within or without the Republic of Liberia, and to do all things incidental to such business.

To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of, lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, within or without Liberia, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

To acquire, hold, use, sell, assign, lease and grant licenses or sub-licenses in respect of, pledge or otherwise dispose of, letter patent of Liberia or any foreign country, patent rights, licenses, privileges, inventions, improvements, processes, copyrights, trademarks and trade names relating to or useful in connection with any business of the Corporation.

To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of Liberia or abroad.

To acquire all or any part of the good will, rights, property and business of any person, heretofore or hereafter engaged in any business similar to any business which the Corporation has power to conduct, to pay for the same in cash or in the securities of the Corporation or otherwise, to hold, utilize and in any manner dispose of the whole or any part of the rights and property so acquired, and to assume in connection therewith any liabilities of any such person and conduct in any lawful manner the whole or any part of the business thus acquired.

To make, enter into and carry out any arrangements with any person or public authority, to obtain therefrom or otherwise to acquire by purchase, lease, assignment or otherwise any powers, rights, privileges, immunities, franchises, guaranties, grants and concessions, to acquire, hold, own, exercise, exploit, dispose of and realize upon the same, and to undertake and prosecute any business dependent thereon provided it is such a business as this corporation may engage in; and to promote, cause to be formed and aid in any way any person for any such purpose.

To make and issue deposit receipts, certificate of deposit, interim receipts, or any other receipts for, or certificates of deposit for, any securities or interest therein, to acquire and exercise any proxies or powers of attorney or other privileges pertaining to any securities or interest therein.

To enter into, make, perform and carry out or cancel and rescind contracts for any lawful purposes pertaining to its business with any person or public authority.

To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto: and to render general investment advisory or financial advisory or managerial services to any person or public authority.

To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed as agents or nominees of, this corporation, or upon any other proper terms or conditions which the board of directors may consider for the benefit of this corporation.

To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar

business which this corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Liberian Business Corporation Act to buy, sell and deal in foreign exchange.

To invest its uninvested funds and/or surplus from time to time to such extent as the board of directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the board of directors may determine, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

To make any guaranty so far as the same may be permitted to be done by a corporation organized under the Liberian Business Corporation Act;

To borrow or raise moneys for any of the purposes of the Corporation and from time to time, without limit as to amount to draw, make, accept, endorse, execute and issue promissory notes, drafts, bonds, debentures, and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment thereof and of the interest thereof by mortgage on, or pledge, conveyance or assignment in trust of, the whole or any part of the assets of the corporation, real, personal or mixed, including contract rights, whether at the time owned or thereafter acquire, and to sell, pledge or otherwise dispose of such securities of the Corporation for its corporate purposes.

To issue, purchase, hold, sell, transfer, reissue or cancel the shares or its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law: and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

To act in any and all parts of the world in any capacity whatsoever as agent, broker, or representative, general or special, for any person or public authority, including, but without limitation of the foregoing, to act as agent, broker or representative, general or special, for any person engaged in the business of writing insurance, but only to the extent permitted to corporations organized pursuant to the Liberian Business Corporation Act.

To do any and all of the acts and things herein set forth, as principal, factor, agent, contractor, or otherwise, either alone or in company with others; and in general to carry on any other similar business which is incidental or conductive or convenient or proper to the attainment of the foregoing purposes or any of them and which is not forbidden by law; and to exercise any and all powers which now or hereafter may be lawful for the Corporation to exercise under the laws of Liberia; to establish and maintain offices and agencies within and anywhere outside of Liberia; and to exercise any or all of its corporate powers and rights in Liberia and in any foreign countries.

The foregoing clauses shall be construed as both purpose and powers and the matters expressed in each clause shall, except as otherwise expressly provided, be in no ways limited by

reference or inference from the terms of any clause, but shall be regarded as independent purposes and powers, and the enumerations of specific purposes and powers shall not be construed to limit or restrict in any manner the meaning of general terms or general powers of the Corporation, nor shall the expression of one thing be deemed to exclude another, although it be of like nature, not expressed.

C.      The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia. The name of the Corporation's registered agent at such address shall be The International Trust Company of Liberia.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue is One Hundred (100) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter organized under the Liberian Business Corporation Act may have.

F.      The name and mailing address of each incorporator and subscriber of these Articles of Incorporation and the number of shares of stock subscribed by each incorporator is:

| Name | Post Office Address | No. of Shares of Common Stock Subscribed |
|---|---|---|
| K. Elliott | 80 Broad Street Monrovia, Liberia | One |

G.      The number of directors constituting the initial board of directors is one (1).

H.      The board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the by-laws of the Corporation.

I.      Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], 2019.

**Signature:**                                      **Signature:**

**Name:**        [Full Name]              **Name:**        [Full Name]
**Title:**         [Title]                      **Title:**         [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], 2019, before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8203860 v3

**<u>Exhibit H-28</u>**

**Reorganized Aegean Tanking S.A. Articles of Amendment & Restated Articles of
Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### AEGEAN TANKING S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **AEGEAN TANKING S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 12th day of July, 2006, with registration number C-108789, hereby **CERTIFY THAT:**

1. The name of the corporation is **AEGEAN TANKING S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 12th day of July, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

   The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

   On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

   On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

### of

### AEGEAN TANKING S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

### AEGEAN TANKING S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**    To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

(27) To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28) To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

8

**E.**     The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|------|----------------|----------------------------------------------|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                  **Signature:**

**Name:**        [Full Name]          **Name:**        [Full Name]
**Title:**        [Title]                  **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209297 v1

**<u>Exhibit H-29</u>**

**Reorganized Benmore Services S.A. Articles of Amendment & Restated Articles of Incorporation**

**ARTICLES OF AMENDMENT**

**AND RESTATED ARTICLES OF INCORPORATION**

**OF**

**BENMORE SERVICES S.A.**

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **BENMORE SERVICES S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of December, 2005, with registration number C-108029, hereby **CERTIFY THAT:**

1. The name of the corporation is **BENMORE SERVICES S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of December, 2005.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## BENMORE SERVICES S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**    The name of the Corporation shall be:

## BENMORE SERVICES S.A.

**B.**    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft or any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment, appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

**(2)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of freight, goods, cargo in bulk, passengers, mail and personal effects by water between the various ports of the world and to engage generally in waterborne commerce.

**(3)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

**(4)**    To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

3

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

|                      |                      |
|----------------------|----------------------|
| <u>Name</u>          | <u>Postal Address</u> |
| A. Abedje            | 80 Broad Street      |
|                      | Monrovia Liberia     |

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                    **Signature:**

**Name:**        [Full Name]              **Name:**        [Full Name]
**Title:**        [Title]                      **Title:**        [Title]

5

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209307 v1

**<u>Exhibit H-30</u>**

**Reorganized Cephallonia Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## CEPHALLONIA MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **CEPHALLONIA MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109064, hereby **CERTIFY THAT:**

1. The name of the corporation is **CEPHALLONIA MARINE S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## CEPHALLONIA MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**    The name of the Corporation shall be:

## CEPHALLONIA MARINE S.A.

**B.**    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**    To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)** To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)** To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)** To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)** To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)** To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**   To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**   To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**   To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**   To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**   To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)   To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)   To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.   The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**   The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**   The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|---|---|---|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**   The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**   The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**   Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                    **Signature:**

**Name:**     [Full Name]            **Name:**     [Full Name]
**Title:**      [Title]                    **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209313 v1

11

## **Exhibit H-31**

**Reorganized Dilos Marine Inc. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### DILOS MARINE INC.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **DILOS MARINE INC.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of February, 2007, with registration number C-109608, hereby **CERTIFY THAT:**

1. The name of the corporation is **DILOS MARINE INC.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of February, 2007.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Section D of the Articles of Incorporation is hereby amended to read as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

### of

### DILOS MARINE INC.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

### DILOS MARINE INC.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)** To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)** To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)** To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)** To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)** To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**    To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

**(27)**    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

**(28)**    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

|            Name            |        Postal Address        |
|----------------------------|------------------------------|
|         A. Abedje          |        80 Broad Street        |
|                            |       Monrovia Liberia       |

8

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**    Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                  **Signature:**

**Name:**        [Full Name]          **Name:**        [Full Name]
**Title:**        [Title]                    **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209103 v1

11

## Exhibit H-32

**Reorganized Eton Marine Ltd. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## ETON MARINE LTD.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **ETON MARINE LTD.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of December, 2005, with registration number C-108027, hereby **CERTIFY THAT:**

1.  The name of the corporation is **ETON MARINE LTD.**

2.  The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of December, 2005.

3.  No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4.  Section D of the Articles of Incorporation presently reads as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

    The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

    On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

    On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## ETON MARINE LTD.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## ETON MARINE LTD.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft or any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment, appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

**(2)**     To engage in ocean, coastwise and inland commerce, and generally in the carriage of freight, goods, cargo in bulk, passengers, mail and personal effects by water between the various ports of the world and to engage generally in waterborne commerce.

**(3)**     To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

**(4)**     To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

**C.**     The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.     The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

F.     The name and mailing address of the incorporator of these Articles of Incorporation is:

| <u>Name</u> | <u>Postal Address</u> |
|---|---|
| A. Abedje | 80 Broad Street<br>Monrovia Liberia |

G.     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

H.     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

4

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                      **Signature:**

**Name:**        [Full Name]             **Name:**        [Full Name]
**Title:**         [Title]                        **Title:**         [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209316 v1

6

**<u>Exhibit H-33</u>**

**Reorganized Halki Navigation S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### HALKI NAVIGATION S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **HALKI NAVIGATION S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 14th day of February, 2008, with registration number C-111226, hereby **CERTIFY THAT:**

1.  The name of the corporation is **HALKI NAVIGATION S.A.**

2.  The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 14th day of February, 2008.

3.  A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4.  Section D of the Articles of Incorporation presently reads as follows:

    > The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

    > The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

    Section D of the Articles of Incorporation is hereby amended to read as follows:

    > The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

    > The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

    > <u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as previously and hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## HALKI NAVIGATION S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## HALKI NAVIGATION S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)** To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)** To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)** To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)** To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)** To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**    To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

**(27)**   To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

**(28)**   To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**   The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.   The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**   The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**   The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address |
|------|----------------|
| A. Abedje | 80 Broad Street |
|  | Monrovia Liberia |

8

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**    Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                          **Signature:**

**Name:**     [Full Name]                 **Name:**     [Full Name]
**Title:**      [Title]                          **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209133 v1

**<u>Exhibit H-34</u>**

**Reorganized Ingram Enterprises Co. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### INGRAM ENTERPRISES CO.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **INGRAM ENTERPRISES CO.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 10th day of January, 2006, with registration number C-108086, hereby **CERTIFY THAT:**

1. The name of the corporation is **INGRAM ENTERPRISES CO.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 10th day of January, 2006.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   Section D of the Articles of Incorporation is hereby amended to read as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

### of

### INGRAM ENTERPRISES CO.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

### INGRAM ENTERPRISES CO.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft or any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment, appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

**(2)**     To engage in ocean, coastwise and inland commerce, and generally in the carriage of freight, goods, cargo in bulk, passengers, mail and personal effects by water between the various ports of the world and to engage generally in waterborne commerce.

**(3)**     To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

**(4)**     To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

**C.**     The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

| <u>Name</u> | <u>Postal Address</u> |
|---|---|
| A. Abedje | 80 Broad Street |
| | Monrovia Liberia |

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

4

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                              **Signature:**

**Name:**      [Full Name]        **Name:**      [Full Name]
**Title:**      [Title]                  **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209154 v1

## **Exhibit H-35**

**Reorganized Ios Marine Inc. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## IOS MARINE INC.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **IOS MARINE INC.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of February, 2007, with registration number C-109609, hereby **CERTIFY THAT:**

1. The name of the corporation is **IOS MARINE INC.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of February, 2007.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Section D of the Articles of Incorporation is hereby amended to read as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

> <u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## IOS MARINE INC.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## IOS MARINE INC.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**  To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**  To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**  To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**  To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**  To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

**(27)**    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

**(28)**    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

| <u>Name</u> | <u>Postal Address</u> |
|---|---|
| A. Abedje | 80 Broad Street |
|  | Monrovia Liberia |

8

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                    **Signature:**

**Name:**        [Full Name]              **Name:**        [Full Name]
**Title:**        [Title]                        **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209160 v1

11

**<u>Exhibit H-36</u>**

**Reorganized Ithaki Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

## OF

## ITHAKI MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **ITHAKI MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109065, hereby **CERTIFY THAT:**

1. The name of the corporation is **ITHAKI MARINE S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

### of

### ITHAKI MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

### ITHAKI MARINE S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)** To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)** To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)** To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)** To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)** To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**    To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

8

**E.**     The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|------|---------------|---------------------------------------------|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                          **Signature:**

**Name:**      [Full Name]          **Name:**      [Full Name]
**Title:**      [Title]                 **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209318 v1

**<u>Exhibit H-37</u>**

**Reorganized Kassos Navigation S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### KASSOS NAVIGATION S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **KASSOS NAVIGATION S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 14th day of February, 2008, with registration number C-111227, hereby **CERTIFY THAT:**

1. The name of the corporation is **KASSOS NAVIGATION S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 14th day of February, 2008.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

>   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

>   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Section D of the Articles of Incorporation is hereby amended to read as follows:

>   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

>   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

>   <u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## KASSOS NAVIGATION S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## KASSOS NAVIGATION S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**   To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**   To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**   To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**   To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**   To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)** To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)** To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)** To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)** To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)** To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

**(27)**    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

**(28)**    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

|   Name   |   Postal Address   |
|----------|--------------------|
| A. Abedje | 80 Broad Street |
|          | Monrovia Liberia |

8

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**    Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                            **Signature:**

**Name:**      [Full Name]          **Name:**      [Full Name]
**Title:**      [Title]                    **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209167 v1

11

## Exhibit H-38

**Reorganized Kerkyra Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

## OF

## KERKYRA MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **KERKYRA MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109061, hereby **CERTIFY THAT:**

1. The name of the corporation is **KERKYRA MARINE S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

   The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

   On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

   On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

   Section D of the Articles of Incorporation is hereby amended to read as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## KERKYRA MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## KERKYRA MARINE S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**     To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**     To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**     To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**     To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**     To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**   To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**   To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**   To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**   To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**   To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**  To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**  To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**  To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**  To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**  To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**  To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**  To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**  To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**  To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia. The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

|  |  | Number of shares of |
| :---: | :---: | :---: |
| Name | Postal Address | Common Stock Subscribed |
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                **Signature:**

| **Name:** | [Full Name] | **Name:** | [Full Name] |
|-----------|-------------|-----------|-------------|
| **Title:** | [Title] | **Title:** | [Title] |

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209321 v1

**Exhibit H-39**

**Reorganized Kythira Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

## OF

## KYTHIRA MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **KYTHIRA MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109067, hereby **CERTIFY THAT:**

1.  The name of the corporation is **KERKYRA MARINE S.A.**

2.  The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3.  No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4.  Section D of the Articles of Incorporation presently reads as follows:

    > The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

    > The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

    > On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

    > On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

    Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

### of

### KYTHIRA MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**    The name of the Corporation shall be:

### KYTHIRA MARINE S.A.

**B.**    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

    **(1)**    To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

    As used herein the term:

    "Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)   To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)   To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)   To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)  To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)  To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)  To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)** To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)** To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)** To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)** To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)** To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**     To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**     To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**     To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**     To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**     To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**     To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**     To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**     To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**     To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

 **(27)** To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

 **(28)** To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.** The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia. The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.** The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.** The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|------|----------------|---------------------------------------------|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                      **Signature:**

**Name:**        [Full Name]              **Name:**        [Full Name]
**Title:**        [Title]                       **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209323 v1

11

**Exhibit H-40**

**Reorganized Lefkas Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## LEFKAS MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **LEFKAS MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109063, hereby **CERTIFY THAT:**

1. The name of the corporation is **LEFKAS MARINE S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

### of

### LEFKAS MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

### LEFKAS MARINE S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

(3)    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**    To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)   To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)   To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)   To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)   To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)   To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)   To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)   To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)   To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)   To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

8

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|---|---|---|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                    **Signature:**

**Name:**       [Full Name]              **Name:**       [Full Name]
**Title:**      [Title]                  **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209326 v1

**Exhibit H-41**

**Reorganized Nevado Navigation S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## NEVADO NAVIGATION S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **NEVADO NAVIGATION S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 10th day of April, 2008, with registration number C-111429, hereby **CERTIFY THAT:**

1. The name of the corporation is **NEVADO NAVIGATION S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 10th day of April, 2008.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## NEVADO NAVIGATION S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## NEVADO NAVIGATION S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**   To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**   To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**   To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**   To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**   To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

8

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| <u>Name</u> | <u>Postal Address</u> |
|:---:|:---:|
| A. Abedje | 80 Broad Street |
| | Monrovia Liberia |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

9

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].


**Signature:**                                    **Signature:**

**Name:**        [Full Name]            **Name:**        [Full Name]
**Title:**        [Title]                    **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209331 v1

11

**<u>Exhibit H-42</u>**

**Reorganized Paxoi Marine S.A. Articles of Amendment & Restated Articles of Incorporation**

## ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

## OF

## PAXOI MARINE S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **PAXOI MARINE S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 26th day of September, 2006, with registration number C-109062, hereby **CERTIFY THAT:**

1. The name of the corporation is **PAXOI MARINE S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 26th day of September, 2006.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

> The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

> On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

> On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## PAXOI MARINE S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## PAXOI MARINE S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)** To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)** To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)** To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)** To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)** To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**  To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**  To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**  To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**  To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**  To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**  To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**  To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**  To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**  To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**  To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**  To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**  To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**  To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**  To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

**(27)**    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

**(28)**    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address | Number of shares of Common Stock Subscribed |
|------|----------------|---------------------------------------------|
| A. Abedje | 80 Broad Street Monrovia Liberia | One (1) |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                        **Signature:**

**Name:**      [Full Name]            **Name:**      [Full Name]
**Title:**      [Title]                      **Title:**      [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209342 v1

**<u>Exhibit H-43</u>**

**Reorganized Santon Limited Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### SANTON LIMITED

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **SANTON LIMITED** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 10th day of January, 2006, with registration number C-108088, hereby **CERTIFY THAT:**

1.  The name of the corporation is **SANTON LIMITED**

2.  The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 10th day of January, 2006.

3.  A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4.  Section D of the Articles of Incorporation presently reads as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

    The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

    Section D of the Articles of Incorporation is hereby amended to read as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

    The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5.  This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6.  The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7.  The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## SANTON LIMITED

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## SANTON LIMITED

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft or any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment, appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

**(2)**     To engage in ocean, coastwise and inland commerce, and generally in the carriage of freight, goods, cargo in bulk, passengers, mail and personal effects by water between the various ports of the world and to engage generally in waterborne commerce.

**(3)**     To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

**(4)**     To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

**C.**     The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.   The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

3

**D.**     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address |
|------|----------------|
| A. Abedje | 80 Broad Street |
|  | Monrovia Liberia |

**F.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**G.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**H.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

4

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                          **Signature:**

**Name:**      [Full Name]              **Name:**      [Full Name]
**Title:**     [Title]                  **Title:**     [Title]

5

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209130 v1

6

**<u>Exhibit H-44</u>**

**Reorganized Sifnos Marine Inc. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### SIFNOS MARINE INC.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **SIFNOS MARINE INC.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of February, 2007, with registration number C-109610, hereby **CERTIFY THAT:**

1. The name of the corporation is **SIFNOS MARINE INC.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of February, 2007.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   Section D of the Articles of Incorporation is hereby amended to read as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   <u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## SIFNOS MARINE INC.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**    The name of the Corporation shall be:

## SIFNOS MARINE INC.

**B.**    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**    To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)** To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)** To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)** To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)** To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)** To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

**(18)**    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

**(19)**    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry•docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

**(20)**    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

**(21)**    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

**(22)**    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

**(23)**    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

**(24)**    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

**(25)**    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

**(26)**    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

| Name | Postal Address |
|------|----------------|
| A. Abedje | 80 Broad Street |
| | Monrovia Liberia |

8

**G.**  The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**  The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**  Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                **Signature:**

**Name:**  [Full Name]               **Name:**  [Full Name]
**Title:**  [Title]                    **Title:**  [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209152 v1

11

## **Exhibit H-45**

**Reorganized Symi Navigation S.A. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### SYMI NAVIGATION S.A.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **SYMI NAVIGATION S.A.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 14th day of February, 2008, with registration number C-111228, hereby **CERTIFY THAT:**

1. The name of the corporation is **SYMI NAVIGATION S.A.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 14th day of February, 2008.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Section D of the Articles of Incorporation is hereby amended to read as follows:

> The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

> The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

> <u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as previously and hereby amended, are restated as follows:

2

# RESTATED ARTICLES OF INCORPORATION

## of

## SYMI NAVIGATION S.A.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## SYMI NAVIGATION S.A.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

**(2)**    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

**(3)**    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

**(4)**    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

**(5)**    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

**(6)**    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

**(7)**     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

**(8)**     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

**(9)**     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

**(10)**    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

**(11)**    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

**(12)**    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)** To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)** To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)** To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)** To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)** To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)    To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)    To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

<u>Name</u>                                            <u>Postal Address</u>

A. Abedje                                        80 Broad Street
                                                 Monrovia Liberia

8

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**     Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                              **Signature:**

**Name:**      [Full Name]           **Name:**      [Full Name]
**Title:**       [Title]                    **Title:**       [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209158 v1

11

## Exhibit H-46

**Reorganized Tasman Seaways Inc. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

## TASMAN SEAWAYS INC.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **TASMAN SEAWAYS INC.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of December, 2005, with registration number C-108028, hereby **CERTIFY THAT:**

1. The name of the corporation is **TASMAN SEAWAYS INC.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of December, 2005.

3. No Amendment has been made to the Articles of Incorporation prior to the filing of these Articles of Amendment.

4. Section D of the Articles of Incorporation presently reads as follows:

    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

    The Corporation shall mail notices and information to a holder of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

    On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

    On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

    Section D of the Articles of Incorporation is hereby amended to read as follows:

The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## TASMAN SEAWAYS INC.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**     The name of the Corporation shall be:

## TASMAN SEAWAYS INC.

**B.**     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**     To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build, and repair steamships, motorships, tankers, whaling vessels, sailing vessels, tugs, lighters, barges, and all other vessels and craft or any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment, appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

**(2)**     To engage in ocean, coastwise and inland commerce, and generally in the carriage of freight, goods, cargo in bulk, passengers, mail and personal effects by water between the various ports of the world and to engage generally in waterborne commerce.

**(3)**     To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

**(4)**     To act as ship's husband, ship brokers, custom house brokers, ship's agents, manager of shipping property, freight contractors, forwarding agents, warehousemen, wharfingers, ship chandlers, and general traders.

**C.**     The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

3

**D.**     The The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

On the request of the holder of bearer shares and the surrender to the Corporation of the share certificate in respect of those shares, the shares shall be exchanged for a like number of registered shares and the name of the shareholder shall be entered in the share register of the Corporation and a new certificate shall be issued to the shareholder in his name and the exchange shall be entered in the share register of the Corporation.

On the request of the owner of shares registered in his name in the share register of the Corporation and the surrender to the Corporation of the share certificate in his name in respect of those shares, the shares shall be exchanged for a like number of bearer shares and a new certificate shall be issued to bearer and the exchange shall be entered in the share register of the Corporation.

<u>Nonvoting Stock</u> To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**     The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**     The name and mailing address of the incorporator of these Articles of Incorporation is:

|              <u>Name</u>              |              <u>Postal Address</u>              |
|---------------------------------------|-------------------------------------------------|
|              A. Abedje                |              80 Broad Street                     |
|                                       |              Monrovia Liberia                    |

**G.**     The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**     The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].

**Signature:**                                    **Signature:**

**Name:**        [Full Name]              **Name:**        [Full Name]
**Title:**        [Title]                        **Title:**        [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209346 v1

6

## Exhibit H-47

**Reorganized Tinos Marine Inc. Articles of Amendment & Restated Articles of Incorporation**

# ARTICLES OF AMENDMENT

## AND RESTATED ARTICLES OF INCORPORATION

### OF

### TINOS MARINE INC.

We, the undersigned, being the duly appointed, qualified and acting [Title of Officer 1] and [Title of Officer 2] of **TINOS MARINE INC.** (the "Corporation"), a Corporation organized under the Laws of the Republic of Liberia on the 21st day of February, 2007, with registration number C-109611, hereby **CERTIFY THAT:**

1. The name of the corporation is **TINOS MARINE INC.**

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 21st day of February, 2007.

3. A previous Amendment to the Articles of Incorporation was filed on the 4th day of January, 2019.

4. Section D of the Articles of Incorporation presently reads as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   Section D of the Articles of Incorporation is hereby amended to read as follows:

   The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

   The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

   Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation

shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

5. This Amendment to the Articles of Incorporation was authorized by a joint unanimous written consent of the sole shareholder and board of directors executed on the [Day] day of [Month], [Year].

6. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

7. The Articles of Incorporation, as previously and hereby amended, are restated as follows:

# RESTATED ARTICLES OF INCORPORATION

## of

## TINOS MARINE INC.

The undersigned, for the purpose of incorporating a nonresident domestic corporation in accordance with the provisions of the Business Corporation Act of the Republic of Liberia, does hereby execute, as incorporator and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

**A.**    The name of the Corporation shall be:

## TINOS MARINE INC.

**B.**    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Business Corporation Act and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

**(1)**    To carry on the business of an investment holding company or corporation, and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares of stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organization, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guarantee or otherwise those issuing, creating or responsible for any such securities; to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose, and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution;

As used herein the term:

"Securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a

3

corporation organized under the Business Corporation Act is legally permitted to acquire or deal in, by whomsoever issued or created;

"Person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and

"Public authority" shall include any domestic or foreign governmental, municipal or other public authority;

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, and any interest therein either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the Laws of Liberia, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or other similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution;

(3)    To borrow or raise money and contract debts, when necessary for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust, or otherwise, or unsecured;

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which the Corporation is authorized to carry on, and in connection therewith to acquire the good will and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business;

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation wheresoever situated;

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation, and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but the Corporation shall not engage in the business of banking or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

4

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation;

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto, and to render general investment advisory or financial advisory or managerial services to any person or public authority;

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the Corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of the Corporation;

(10)    To cause or allow the legal title or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by the Corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for, or as agents or nominees of, the Corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of the Corporation;

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act, to bit', sell and deal in foreign exchange;

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Business Corporation Act and to mortgage, pledge or charge the property of the Corporation, of whatsoever nature the property may be, as security for any such guarantee made or given and to assist financially or otherwise with or without consideration and on such terms as the Corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company or corporation and to mortgage and hypothecate the Corporation's vessels or real or personal property or immovable or

5

movable property of other form or property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid;

**(13)**  To issue, purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities of the Corporation in the manner and to the extent now or hereafter permitted by law, and provide further that shares of its own capital stock owned by the Corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote;

**(14)**  To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the Corporation shall not engage in the banking business or the provision of insurance services or exercise banking or insurance service provider's powers, and nothing in these Articles contained shall be deemed to authorize it to do so;

**(15)**  To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, sub-charter, sell, build and repair steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, scows, rafts, dredges, pontoons, offshore installations and service craft, rocket-launching platforms, non-displacement vessels and all other vessels and craft of any and all means of conveyance and transportation by land, water or air, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof, and to equip, furnish, and outfit such vessels and ships;

**(16)**  To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne and airborne commerce throughout the world;

**(17)**  To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, whaling vessels, sailing vessels, yachts, tugs, lighters, barges, seaplanes, submersible craft, offshore installations and service craft, rocket-launching platforms, non-displacement vessels, scows, rafts, dredges, pontoons, airplanes, airships, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including aircraft, landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign;

6

(18)  To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign;

(19)  To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry• docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith;

(20)  To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of Liberia, and to do all things incidental to such business;

(21)  To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of, and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world, and to appoint agents, brokers, or representatives;

(22)  To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused;

(23)  To apply for, purchase, or in any manner to acquire, hold, own, use and operate, to sell or in any manner dispose of, to grant, or license other rights in respects of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks of the Republic of Liberia or other countries or otherwise, and to work, operate or develop the same;

(24)  To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatever kind and nature, real, personal or mixed, tangible or intangible in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties;

(25)  To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, country, state, body politic, or government or colony or any dependency thereof;

(26)  To carry on its business, to have one or more offices, and to exercise its powers wheresoever, subject to the laws of the particular country;

7

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights;

(28)    To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

**C.**    The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia.  The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

**D.**    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered shares without par value.

The Corporation shall mail notices and information to holders of registered shares to their address, as it appears on the records of the shareholders of the Corporation, or if they shall have filed with secretary of the Corporation a written request that notices to them be mailed to some other address, then directed to them at such other address.

Nonvoting Stock To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Amendment and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of shares of stock or other equity securities that has only such voting rights as are mandated by the Liberian Business Corporation Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

**E.**    The Corporation shall have every power which a corporation now or hereafter organized under the Business Corporation Act may have.

**F.**    The name and mailing address of the incorporator of these Articles of Incorporation is:

|     Name     |     Postal Address     |
| :---: | :---: |
| A. Abedje | 80 Broad Street |
|  | Monrovia Liberia |

8

**G.**    The number of directors constituting the initial Board of Directors of the Corporation is one (1).

**H.**    The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

**I.**    Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

**IN WITNESS WHEREOF,** the undersigned have executed the Articles of Amendment and Restated Articles of Incorporation on this [Day] day of [Month], [Year].


**Signature:**                              **Signature:**

**Name:**    [Full Name]              **Name:**    [Full Name]
**Title:**    [Title]                      **Title:**    [Title]

**ACKNOWLEDGMENT:**

On this [Day] day of [Month], [Year], before me personally came [Name] and [Name] known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

SK 23250 0033 8209164 v1

## Exhibit H-48

**Reorganized Aegean VII Shipping Ltd Memorandum and Articles of Association**

**MERCHANT SHIPPING ACT
CAP 234**

---

**LIMITED LIABILITY COMPANY**

---

**MEMORANDUM AND ARTICLES OF ASSOCIATION**

**of**

# AEGEAN VII SHIPPING LTD

## MEMORANDUM OF ASSOCIATION

### I. <u>NAME</u>

The name of the Company is **AEGEAN VII SHIPPING LTD**

### 2. <u>PRIVATE</u> <u>COMPANY</u>

The Company shall be a single member, private Company and registered under the Merchant Shipping (Shipping Organisations – Private Companies) Regulations 2004, Legal Notice 223, and qualifying as a shipping organisation in terms of Article 84Z of the Merchant Shipping Act.

### 3. <u>REGISTERED</u> <u>OFFICE</u>

The registered office of the Company shall be situated at 25/16, Vincenti Buildings, Strait Street, Valletta, Malta VLT 1432 or at such other address as may be determined by the Board of Directors of the Company.

### 4. <u>OBJECTS</u>

The main object of the Company is:

(a)  To buy or acquire on any title, sell, lease, operate, charter on a bare boat or on a fully equipped basis or exchange, administer, and manage ships, yachts, boats and  any other vessel,  and to register same under  and  in accordance  with  the Merchant Shipping Act,  1973 or  in any jurisdiction whatsoever.

Other objects shall be the following:

(b) To obtain loans, overdrafts, credits and other financial and monetary facilities  either alone or jointly and severally with third parties for  the purposes  of  purchasing,  selling, chartering,  hiring and generally operating ships and to  provide by way of security for the repayment of the principal and   interest  thereon, and the fulfillment of any obligations, a  hypothec, privilege,  lien and/or mortgage over the assets and/or seacraft of the Company.

(c) To guarantee and or undertake the repayment of any indebtedness of any person, corporation or firm of any kind, whether associated to or forming part of the same group as the company or not, although not in furtherance of its corporate purpose and although not for the direct or indirect benefit of the Company  and to secure such guarantee and or undertaking by a mortgage, charge, hypothec, pledge or the creation of a  security interest in the company's vessels or sea-craft and/or any part of the corporate assets or property or any interest therein wherever situated.

2

(d) To  do all other things as may be considered  conducive  or ancillary  to the fulfillment of the foregoing objects or  any  of them  and in particular to buy, sell, charter, own and  otherwise operate any vessel and to hold shares or other equity interests in other companies with similar objects.

## 5. <u>LIMITED</u> <u>LIABILITY</u>

The liability of its single member is limited to the unpaid capital subscribed by such single member in the Company.

## 6. <u>CAPITAL</u>

The authorised share capital shall be of One Thousand Two Hundred Euro (€ 1,200.00) divided into one thousand two hundred (1,200) ordinary shares of € 1.00 each.

The issued share capital shall be of One Thousand Two Hundred Euro (€ 1,200.00) divided into one thousand two hundred (1,200) ordinary shares of € 1.00 each. Each issued share shall be 20% paid up.

## 7. <u>SUBSCRIBER</u>

**AEGEAN SHIPHOLDINGS INC**
TRUST COMPANY COMPLEX,
AJELTAKE ROAD, AJELTAKE ISLAND,
MAJURO
MARSHALL ISLANDS
(Registration No: 15000)

Holder of 1,200 shares of Euro 1.00 each, hundred per cent (20%) paid up

## 8. <u>DIRECTORS</u>

(a) The Company's affairs shall be entrusted to a Board of Directors which shall consist of not less than one (1) and not more than five (5) Directors.

(b) The Director/s of the Company shall be:

    **KONSTANTINOS POLYDAKIS**
    34G, ALONION STR.
    KIFISSIA 14562
    GREECE
    (Greek Passport: AN0201104)

**DIMITRIOS YAMOLAS**

7, ARISTOMENOUS STR.
AGIA PARASKEVI
ATHENS 15343
GREECE
(Greek Passport: AP0159711)

(c) Any one director is empowered to appoint another person as the Company's attorney with full power of substitution to enter into any agreement, whether by public deed or by private writing or instrument on behalf of the Company and to sign and execute any document on behalf of the Company, including in particular any loan agreement, deed of covenant, mortgage form, or other related documents in connection with the raising of loans (i) for the purchase and operation of ships by the Company and/or (ii) for the giving of collateral security for the purchase and operation of ships by any other company and any bill of sale in connection with the purchase and/or sale by the Company of any ship, vessel or sea-craft.

(d) The legal and judicial representation of the Company shall be vested in any ONE Director or, in addition and without prejudice to the aforesaid, the Board of Directors may, from time to time, appoint any other person or persons to represent the Company in a particular case or cases or classes of cases.

(e) Any Power of Attorney issued by the company shall be executed by any director or any person authorised by the board of directors for the purpose and such power of attorney shall be considered as executed by the company.

(f) A director of the Company is empowered to appoint another person in his stead as an alternate director by means of a written instrument and such person so appointed shall enjoy all the powers and rights of the said Director including the right to attend and vote at meetings of the Board of Directors.  Such alternate Director shall have a vote or votes in addition to his own vote, if any. Written instrument includes a telefax, telex, or e-mail message.

## 9.  **SPECIAL ATTORNEY/S**

Without prejudice to the rights and powers conferred upon the Board of Directors in terms of law or by virtue of any of the provisions contained in the foregoing Clauses, Dr. Robert Radmilli B.A., M.Jur, LL.D. and / or Dr. Mark Camilleri LL.D. and/or Ms. Joanne Baldacchino all of 25/16, Vincenti Buildings, Strait Street, Valletta, Malta, are hereby jointly and severally authorised and empowered to act on behalf of the Company for the purpose of registering, whether provisionally and/or permanently, any boat, ship, vessel or other sea-craft, under the Malta Flag, and, but without prejudice to the generality of the foregoing, to pay all fees relative to such registration, to make any declarations that may be necessary on behalf of the Company, to apply to any Competent Authority on behalf of the said Company for any exemption, licence or permit, and to take all such steps, to do all such things, sign, execute and deliver all such acts, deeds or documents as may be necessary or conducive for the better fulfillment of all or any of the powers conferred above.

4

The said Attorneys are jointly and severally empowered to sign, execute and deliver any act, deed or document and generally to do or perform any act, deed or thing which may be necessary or conducive to effect the deletion from the Maltese Registry of Shipping of the company's Maltese-registered vessel/s and accordingly to obtain the issuance of the relative Closed Transcript/s of Registry in terms of law.

Furthermore the said Attorneys are jointly and severally empowered to do the following on behalf of the Company:

a. to sign and submit the Company's Annual Return to the Registrar of Companies in Malta.

b. to sign and submit the Company's Tax Return and any other supporting documents as may be required to the Commissioner of Inland Revenue in Malta.

c. to pay any fees, penalties or any other dues or charges relative to the above returns.

d. to make any declaration, do all such things, and to sign, execute and deliver any other act, deed or document that may be necessary in furtherance of any of the above named powers.

e. to sign, seal and deliver any form or document advising any change in the Shareholders, Directorship or any change in the Memorandum and Articles of Association of the Company.

f. to sign, deliver and register any application for the registration of the Company for VAT purposes, and for the obtaining of a VAT number in favour of the Company

We, the several persons whose names and addresses are subscribed are desirous of being formed into a Company in pursuance of this Memorandum of Association, and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.


_____
Signed by Dr. Robert Radmilli B.A., M. Jur, LL.D.
For and on behalf of
AEGEAN SHIPHOLDINGS INC

# ARTICLES OF ASSOCIATION

## 1. **PRELIMINARY**

### **Regulations for the Management of a Private Company**

The Company is established as a single member, private company as defined in the Merchant Shipping (Shipping Organisations – Private Companies) Regulations 2004, Legal Notice 223, (hereinafter called the "Regulations") and accordingly:

(i)      the right to transfer shares is restricted in the manner hereinafter prescribed;

(ii)     the number of members of the company is limited to one;

(iii)    the invitation to the public to subscribe to shares or debentures of the company is prohibited;

(iv)    the company shall not have the power to issue share warrants to bearer; and

(v)     the number of persons holding debentures of the company is limited to fifty.

### **Regulations for the Management of a Limited Liability Company**

The regulations contained in Part I of the First Schedule of the Regulations shall apply, save as amended by these Articles and subject to Regulations 1, 2, and 3 of Part II of the Schedule.

## 2. **RESOLUTIONS**

A resolution in writing signed by:

(a)      the sole member or

(b)      all the Directors, or if there is only one, the Sole Director, appearing as directors of the company from time to time in the public register of the company at the Registry of Companies,

shall be valid and effectual as if it had been passed at a meeting of the relevant body duly convened and held.

Several distinct copies (including fax copies) of the same document or resolution signed by the sole member or directors shall when placed together constitute one writing for the purposes of this regulation.

6

### 3. <u>NONVOTING STOCK</u>

To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of registration of the Memorandum & Articles of Association of the Company provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Article 3 any class or series of equity securities that has only such voting rights as are mandated by the Laws of Malta, shall be deemed to be nonvoting for purposes of the restrictions of this Article 3

### 4. <u>BORROWING POWERS</u>

Any Director may from time to time borrow or raise any  sum  or sums of money upon any terms as to interest or otherwise as  they may deem fit, and for the purpose of securing the same and interest, or for any other purpose, grant any mortgage or hypothec  on any  of  the assets of the company and/or create  and  issue  any perpetual  or redeemable debentures or debenture stock or  charge on the  undertaking or the whole or any part  of  the  property, present or future; and any debentures, debenture stock and  other securities may be issued at a discount, premium or otherwise, and with any special privileges as to redemption, surrender, drawing, allotments of shares, attending and voting at general meetings of the Company, appointment of Directors and otherwise.

### 5. <u>WINDING-UP</u>

If  the  Company shall be wound up the liquidator may,  with  the  sanction  of an extraordinary resolution of the Company  and  any other sanction required  by Regulations, divide amongst the members in  specie or in kind the whole or any part of the assets of  the Company (whether they shall consist of property of the said  kind or  not)  and may, for such purpose, set such value as  he deems fair upon any property to be divided as  aforesaid and may determine  how such division shall be carried out as between the  numbers  of different classes of members.  The liquidator, with the like  sanction, shall think fit, but so that no member  shall  be compelled to accept any shares or other securities whereon  there is any liability.

### 6. <u>PROXIES</u>

Proxies may be given by means of a telex, telefax or cable  and the person so appointed shall enjoy all the rights of the  person issuing  such proxy, provided the veracity of the source  of  the telex, telefax  or cable is confirmed or accepted by the directors.

### 7. <u>NOTICE</u>

Any notice must be served by registered post or telex or telefax, and shall be deemed to have been served in the case of registered post on the day immediately following that on which it was posted and in the case of a telex or a telefax on the day of  transmission, and in proving such service it shall

be sufficient to prove that the notice was addressed properly and posted or transmitted to such telex or telefax number as may be notified by the shareholder and directors of the company.

A registered member for the time being of the Company shall be entitled to receive the notice of general meeting.

## 7. MEETINGS BY TELEPHONE

It shall be permissible for a person to participate at a meeting of the Board of Directors or at any General meeting by means of a telephone link provided the member or directors agree. The Chairman, in such cases, shall sign on behalf of the person participating by telephone and shall declare the fact that all persons present have agreed to such participation.

## 8. PLEDGING OF SECURITIES

(a)    The single member may enter into any agreement relating to the pledging of his/ its shares or the creation of any rights in connection with the said shares for any reason he may deem fit and with such third parties as he may deem appropriate.

(b)    The holders of other securities issued by the Company may enter into any agreement relating to the pledging of their securities or the creation of any rights in connection with the said securities for any reason they may deem fit and with such third parties as they deem appropriate.

(c)    Upon the Company being notified of such a pledge agreement, the Company shall record that fact in its register of members or debentures and the Company shall recognize all rights validly granted to any third parties and shall act according to and consistently with the terms of such agreement in all matters.

(d)    Insofar as and to the extent that such a pledge agreement validly vests third parties with rights pertaining to the shares or debentures normally exercisable respectively by the members or the debenture holders of the Company, such rights shall be exercisable by the third parties as though they were the members or debenture holders of the Company to the exclusion of the member or members or holder or holders of the relevant securities.

_____

Signed by Dr. Robert Radmilli B.A., M. Jur, LL.D.
For and on behalf of
AEGEAN SHIPHOLDINGS INC

8

**Exhibit H-49**

**Reorganized Ios Shipping Ltd Memorandum & Articles of Association**

**MERCHANT SHIPPING ACT
CAP 234**

---

**LIMITED LIABILITY COMPANY**

---

**MEMORANDUM AND ARTICLES OF ASSOCIATION**

**of**

# IOS SHIPPING LTD

## MEMORANDUM OF ASSOCIATION

### I. **NAME**

The name of the Company is **IOS SHIPPING LTD**

### 2. **PRIVATE COMPANY**

The Company shall be a single member, private Company and registered under the Merchant Shipping (Shipping Organisations – Private Companies) Regulations 2004, Legal Notice 223, and qualifying as a shipping organisation in terms of Article 84Z of the Merchant Shipping Act.

### 3. **REGISTERED OFFICE**

The registered office of the Company shall be situated at 25/16, Vincenti Buildings, Strait Street, Valletta, Malta VLT 1432 or at such other address as may be determined by the Board of Directors of the Company.

### 4. **OBJECTS**

The main object of the Company is:

(a)  To buy or acquire on any title, sell, lease, operate, charter on a bare boat or on a fully equipped basis or exchange, administer, and manage ships, yachts, boats and  any other vessel,   and to register same under  and  in accordance  with  the Merchant Shipping Act,  1973 or  in any jurisdiction whatsoever.

Other objects shall be the following:

(b) To obtain loans, overdrafts, credits and other financial and monetary facilities  either alone or jointly and severally with third parties for  the purposes  of  purchasing,  selling, chartering,  hiring and generally operating ships and to  provide by way of security for the repayment of the principal and   interest  thereon, and the fulfillment of any obligations, a  hypothec, privilege,  lien and/or mortgage over the assets and/or seacraft of the Company.

(c) To guarantee and or undertake the repayment of any indebtedness of any person, corporation or firm of any kind, whether associated to or forming part of the same group as the company or not, although not in furtherance of its corporate purpose and although not for the direct or indirect benefit of the Company  and to secure such guarantee and or undertaking by a mortgage, charge, hypothec, pledge or the creation of a  security interest in the company's vessels or sea-craft and/or any part of the corporate assets or property or any interest therein wherever situated.

2

(d) To  do all other things as may be considered  conducive  or ancillary  to the fulfillment of the foregoing objects or  any  of them  and in particular to buy, sell, charter, own and  otherwise operate any vessel and to hold shares or other equity interests in other companies with similar objects.

## 5. LIMITED LIABILITY

The liability of its single member is limited to the unpaid capital subscribed by such single member in the Company.

## 6. CAPITAL

The authorised share capital shall be of One Thousand Two Hundred Euro (€ 1,200.00) divided into one thousand two hundred (1,200) ordinary shares of € 1.00 each.

The issued share capital shall be of One Thousand Two Hundred Euro (€ 1,200.00) divided into one thousand two hundred (1,200) ordinary shares of € 1.00 each. Each issued share shall be 20% paid up.

## 7. SUBSCRIBER

**AEGEAN SHIPHOLDINGS INC**
TRUST COMPANY COMPLEX,
AJELTAKE ROAD, AJELTAKE ISLAND,
MAJURO
MARSHALL ISLANDS
(Registration No: 15000)

Holder of 1,200 shares of Euro 1.00 each, hundred per cent (20%) paid up

## 8. DIRECTORS

(a) The Company's affairs shall be entrusted to a Board of Directors which shall consist of not less than one (1) and not more than five (5) Directors.

(b) The Director/s of the Company shall be:

    **KONSTANTINOS POLYDAKIS**
    34G, ALONION STR.
    KIFISSIA 14562
    GREECE
    (Greek Passport: AN0201104)

**DIMITRIOS YAMOLAS**

7, ARISTOMENOUS STR.
AGIA PARASKEVI
ATHENS 15343
GREECE
(Greek Passport: AP0159711)

(c) Any one director is empowered to appoint another person as the Company's attorney with full power of substitution to enter into any agreement, whether by public deed or by private writing or instrument on behalf of the Company and to sign and execute any document on behalf of the Company, including in particular any loan agreement, deed of covenant, mortgage form, or other related documents in connection with the raising of loans (i) for the purchase and operation of ships by the Company and/or (ii) for the giving of collateral security for the purchase and operation of ships by any other company and any bill of sale in connection with the purchase and/or sale by the Company of any ship, vessel or sea-craft.

(d) The legal and judicial representation of the Company shall be vested in any ONE Director or, in addition and without prejudice to the aforesaid, the Board of Directors may, from time to time, appoint any other person or persons to represent the Company in a particular case or cases or classes of cases.

(e) Any Power of Attorney issued by the company shall be executed by any director or any person authorised by the board of directors for the purpose and such power of attorney shall be considered as executed by the company.

(f) A director of the Company is empowered to appoint another person in his stead as an alternate director by means of a written instrument and such person so appointed shall enjoy all the powers and rights of the said Director including the right to attend and vote at meetings of the Board of Directors.  Such alternate Director shall have a vote or votes in addition to his own vote, if any. Written instrument includes a telefax, telex, or e-mail message.

## 9.  **SPECIAL ATTORNEY/S**

Without prejudice to the rights and powers conferred upon the Board of Directors in terms of law or by virtue of any of the provisions contained in the foregoing Clauses, Dr. Robert Radmilli B.A., M.Jur, LL.D. and / or Dr. Mark Camilleri LL.D. and/or Ms. Joanne Baldacchino all of 25/16, Vincenti Buildings, Strait Street, Valletta, Malta, are hereby jointly and severally authorised and empowered to act on behalf of the Company for the purpose of registering, whether provisionally and/or permanently, any boat, ship, vessel or other sea-craft, under the Malta Flag, and, but without prejudice to the generality of the foregoing, to pay all fees relative to such registration, to make any declarations that may be necessary on behalf of the Company, to apply to any Competent Authority on behalf of the said Company for any exemption, licence or permit, and to take all such steps, to do all such things, sign, execute and deliver all such acts, deeds or documents as may be necessary or conducive for the better fulfillment of all or any of the powers conferred above.

4

The said Attorneys are jointly and severally empowered to sign, execute and deliver any act, deed or document and generally to do or perform any act, deed or thing which may be necessary or conducive to effect the deletion from the Maltese Registry of Shipping of the company's Maltese-registered vessel/s and accordingly to obtain the issuance of the relative Closed Transcript/s of Registry in terms of law.

Furthermore the said Attorneys are jointly and severally empowered to do the following on behalf of the Company:

a. to sign and submit the Company's Annual Return to the Registrar of Companies in Malta.

b. to sign and submit the Company's Tax Return and any other supporting documents as may be required to the Commissioner of Inland Revenue in Malta.

c. to pay any fees, penalties or any other dues or charges relative to the above returns.

d. to make any declaration, do all such things, and to sign, execute and deliver any other act, deed or document that may be necessary in furtherance of any of the above named powers.

e. to sign, seal and deliver any form or document advising any change in the Shareholders, Directorship or any change in the Memorandum and Articles of Association of the Company.

f. to sign, deliver and register any application for the registration of the Company for VAT purposes, and for the obtaining of a VAT number in favour of the Company

We, the several persons whose names and addresses are subscribed are desirous of being formed into a Company in pursuance of this Memorandum of Association, and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.


_____
Signed by Dr. Robert Radmilli B.A., M. Jur, LL.D.
For and on behalf of
AEGEAN SHIPHOLDINGS INC

# ARTICLES OF ASSOCIATION

## 1. **PRELIMINARY**

### **Regulations for the Management of a Private Company**

The Company is established as a single member, private company as defined in the Merchant Shipping (Shipping Organisations – Private Companies) Regulations 2004, Legal Notice 223, (hereinafter called the "Regulations") and accordingly:

(i)        the right to transfer shares is restricted in the manner hereinafter prescribed;

(ii)       the number of members of the company is limited to one;

(iii)      the invitation to the public to subscribe to shares or debentures of the company is prohibited;

(iv)      the company shall not have the power to issue share warrants to bearer; and

(v)       the number of persons holding debentures of the company is limited to fifty.

### **Regulations for the Management of a Limited Liability Company**

The regulations contained in Part I of the First Schedule of the Regulations shall apply, save as amended by these Articles and subject to Regulations 1, 2, and 3 of Part II of the Schedule.

## 2. **RESOLUTIONS**

A resolution in writing signed by:

(a)        the sole member or

(b)        all the Directors, or if there is only one, the Sole Director, appearing as directors of the company from time to time in the public register of the company at the Registry of Companies,

shall be valid and effectual as if it had been passed at a meeting of the relevant body duly convened and held.

Several distinct copies (including fax copies) of the same document or resolution signed by the sole member or directors shall when placed together constitute one writing for the purposes of this regulation.

### 3. NONVOTING STOCK

To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of registration of the Memorandum & Articles of Association of the Company provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Article 3 any class or series of equity securities that has only such voting rights as are mandated by the Laws of Malta, shall be deemed to be nonvoting for purposes of the restrictions of this Article 3

### 4. BORROWING POWERS

Any Director may from time to time borrow or raise any sum or sums of money upon any terms as to interest or otherwise as they may deem fit, and for the purpose of securing the same and interest, or for any other purpose, grant any mortgage or hypothec on any of the assets of the company and/or create and issue any perpetual or redeemable debentures or debenture stock or charge on the undertaking or the whole or any part of the property, present or future; and any debentures, debenture stock and other securities may be issued at a discount, premium or otherwise, and with any special privileges as to redemption, surrender, drawing, allotments of shares, attending and voting at general meetings of the Company, appointment of Directors and otherwise.

### 5. WINDING-UP

If the Company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the Company and any other sanction required by Regulations, divide amongst the members in specie or in kind the whole or any part of the assets of the Company (whether they shall consist of property of the said kind or not) and may, for such purpose, set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the numbers of different classes of members. The liquidator, with the like sanction, shall think fit, but so that no member shall be compelled to accept any shares or other securities whereon there is any liability.

### 6. PROXIES

Proxies may be given by means of a telex, telefax or cable and the person so appointed shall enjoy all the rights of the person issuing such proxy, provided the veracity of the source of the telex, telefax or cable is confirmed or accepted by the directors.

### 7. NOTICE

Any notice must be served by registered post or telex or telefax, and shall be deemed to have been served in the case of registered post on the day immediately following that on which it was posted and in the case of a telex or a telefax on the day of transmission, and in proving such service it shall

be sufficient to prove that the notice was addressed properly and posted or transmitted to such telex or telefax number as may be notified by the shareholder and directors of the company.

A registered member for the time being of the Company shall be entitled to receive the notice of general meeting.

## 7. <u>MEETINGS BY TELEPHONE</u>

It shall be permissible for a person to participate at a meeting of the Board of Directors or at any General meeting by means of a telephone link provided the member or directors agree. The Chairman, in such cases, shall sign on behalf of the person participating by telephone and shall declare the fact that all persons present have agreed to such participation.

## 8. <u>PLEDGING OF SECURITIES</u>

(a)     The single member may enter into any agreement relating to the pledging of his/ its shares or the creation of any rights in connection with the said shares for any reason he may deem fit and with such third parties as he may deem appropriate.

(b)     The holders of other securities issued by the Company may enter into any agreement relating to the pledging of their securities or the creation of any rights in connection with the said securities for any reason they may deem fit and with such third parties as they deem appropriate.

(c)     Upon the Company being notified of such a pledge agreement, the Company shall record that fact in its register of members or debentures and the Company shall recognize all rights validly granted to any third parties and shall act according to and consistently with the terms of such agreement in all matters.

(d)     Insofar as and to the extent that such a pledge agreement validly vests third parties with rights pertaining to the shares or debentures normally exercisable respectively by the members or the debenture holders of the Company, such rights shall be exercisable by the third parties as though they were the members or debenture holders of the Company to the exclusion of the member or members or holder or holders of the relevant securities.

_____

Signed by Dr. Robert Radmilli B.A., M. Jur, LL.D.
For and on behalf of
AEGEAN SHIPHOLDINGS INC

8

**Exhibit H-50**

**Reorganized Maistros Roro Shipholdings Ltd Memorandum & Articles of Association**

COMPANIES ACT, 1995

LIMITED LIABILITY COMPANY

_____

MEMORANDUM OF ASSOCIATION

Of

# MAISTROS RORO SHIPHOLDINGS LTD

## 1. NAME

The name of the Company is **MAISTROS RORO SHIPHOLDINGS LTD**

## 2. REGISTERED OFFICE

The registered office of the company shall be at 25/16, Vincenti Buildings, Strait Street, Valletta, VLT 1432, Malta or at such other address, as the Board of Directors shall from time to time determine.

## 3. OBJECTS

(1) The objects for which the Company is constituted shall be the following:-

    a)      To acquire and hold, buy and/or sell shares, stocks, bonds, debentures or securities of or in any other company or body of persons (whether such shares or other securities be fully paid up or not), and to invest the funds and assets of the Company in such manner as the Board may deem fit, where the so doing may seem desirable in the interest of the Company, and in such manner as may from time to time be determined, solely in the name of, for and on behalf of the Company and the carrying out of such other acts and entering into such agreements as may be necessary, desirable, connected or ancillary in respect of the above

    b)      To lend and advance money, give credit (on such terms as it may deem appropriate), grant or provide guarantees, hypothecs, privileges, charges, security interests or other

1

security exclusively to, or in favour of, companies or partnerships which form part of the same group of companies and partnerships as the Company (that is to companies and partnerships which have more than fifty per cent of their share capital owned directly or indirectly by the same parent or ultimate parent company or partnership as the Company);

c)   To receive funds from any company or partnership which form part of the same group of companies and partnerships as the Company as defined in clause 3(1)(a) hereof and to transfer funds to any company or partnership forming part of the same group of companies and partnerships as the Company.

d)   To carry out such activities as may be ancillary to the above or as may be necessary or desirable to achieve the above objects.

e)   To receive from the assets mentioned in paragraph 3(1)(a) above, including dividends, capital gains,  interest, and any other income derived from investments including income or  gains on their disposal, rents, royalties and similar income whether arising in  or outside Malta, and profits or gains attributable to a permanent establishment  (including a branch) whether situated in or outside Malta.

(2) In attaining its objects, the Company has the following powers;

a)   To purchase, take on lease or otherwise acquire any movable or immovable property, whether developed or undeveloped, and any rights necessary or convenient for the carrying on of the Company's business or any of them;

b)   To invest, hold, sell or otherwise deal with the moneys of the Company not immediately required in such investments and other property as the Company may from time to time deem fit;

c)   To improve, manage, develop, let on lease or otherwise, hypothecate, charge, sell, dispose of or otherwise deal with all or any of the property and rights of the Company;

d)   To borrow or raise money in such manner as the Company may deem fit and in particular by the issue of debentures, and to secure the repayment of any money borrowed or raised by hypothecation, charge or lien upon the whole or any part of the Company's property or assets (whether present or future), including its uncalled capital and its interests in its subsidiaries and also by a similar hypothecation, charge or lien to secure and guarantee any debt, liability or obligation of the Company or of any third party;

e)   To procure from any person, company, bank or similar institution the security required in favour of third parties to secure and guarantee any obligation undertaken by the Company, including inter alia, hypothecs, privileges, charges or other security or guarantee;

f) To sell, give on lease or otherwise dispose of the whole or any part of the business or property of the Company for such consideration as the Company may think fit, including, inter alia, for shares, debentures or securities of any other Company;

g) To sell or dispose of the undertaking of the Company or any part thereof, or to amalgamate with any other company for such consideration as the Company may think fit and in particular for shares (whether such shares be fully paid up or not), debentures or securities of any other company having objects altogether or in part similar to those of the Company;

h) To lend and advance money or give credit to such person, or persons, firms or partnerships and others having dealings with the Company on such terms as may seem expedient to the Company;

i) To act as agents and/or representatives of any local and/or overseas companies and other business concerns connected with the import and/or export trade or with the provision of services;

j) To enter into partnership or any arrangement for sharing benefits, union of interests, reciprocal concessions, joint venture or co-operation with any person, firm or partnership;

k) To do all or any of the above things in any part of the world and either as principals, agents or otherwise and either alone or in conjunction with others and either by or through agents or otherwise;

l) To pay out of the funds of the Company all costs, charges and expenses

m) To do all such other things as are incidental or conducive to the attainment of the above objects or powers or any of them.

(3)    Nothing in the foregoing shall be construed as empowering or enabling the company to carry out any activity or service which requires a licence or other authorisation under any law in force in Malta without such a licence or other appropriate authorisation from the relevant competent authority and the provisions of Article 77(3) of the Companies Act shall apply.

The objects set forth in each sub-clause of this clause shall not be restrictively construed but the widest interpretation shall be given thereto, and they shall not, except where the context expressly or so requires, be in any way limited or restricted by reference to or inference from any other object or objects set forth in such sub-clause or from the terms of any other sub-clause or by the name of the Company. None of such sub-clauses or the object or objects therein specified or the powers thereby conferred shall be deemed subsidiary or ancillary to the objects or powers mentioned in any other sub-clause, but the Company shall have as full a power to exercise all or any of the objects conferred by and provided in each of the said sub-clauses as if each sub-clause contained the objects of a separate company.

## 4. LIMITED LIABILITY

The liability of the shareholders is limited to the amount, if any, unpaid on the share (or shares) in the company.

## 5. SHARE CAPITAL

The authorised share capital of the Company shall be One thousand Two Hundred Euros (€ 1,200) divided into five hundred (500) shares of a nominal value of two Euros and forty Euro cents (€ 2.40) each.

The issued share capital of the Company shall be One thousand Two Hundred Euros (€ 1,200) divided into five hundred (500) shares of a nominal value of two Euros and forty Euro cents (€ 2.40) each, all of which have been subscribed for and allotted, fully paid up, as follows:

| | No. of Shares |
|---|---|
| **Aegean Shipholdings Inc.**<br>Trust Company Complex<br>Ajeltake Road, Ajeltake Island<br>Majuro, Marshall Islands MH 96960<br>(Company Registration number 15000) | 499 |
| **Aegean Investments S.A.**<br>Trust Company Complex<br>Ajeltake Road, Ajeltake Island<br>Majuro, Marshall Islands MH 96960<br>(Company Registration number 9825) | 1 |

## 6.    CLASS RIGHTS

The holder(s) of the Ordinary Shares shall have:

i)        the right to receive notice of and to attend all General Meetings of the Company and

ii)       the right to one (1) vote in respect of all Ordinary and Extraordinary resolutions.

iii)      Ordinary Shares shall rank *pari passu* in all respects particularly as regards dividend and participation in the assets on a winding up of the Company, independently of the letter (if any) by which they are denoted.

## 7.    DIRECTOR

The business and affairs of the company shall be managed by a Board of Directors that shall be composed of not less than one and not more than two directors.

The director of the company is:

> **DIMITRIOS KOKKINIS**
> 32 MARKOU BOTSARI STR.
> DAFNI 17234
> ATHENS
> GREECE
> (Greek Passport: AN2116466)

The appointment and/or removal of directors shall require the consent in general meeting of members holding not less than fifty one per cent (51%) of the issued paid up share capital of the company. A written notice addressed to the secretary of the company shall be sufficient for such a purpose.

## 8.  SECRETARY

The secretary of the company is:

> **SPYRIDON FOKAS**
> 53-55
> AKTI MIAOULI
> PIRAEUS 18536
> GREECE
> (Greek Passport: AN3330449)

## 9.  PRIVATE COMPANY

The company is a private company in accordance with the Companies Act, 1995.

## 10. LEGAL AND JUDICIAL REPRESENTATION

1.        Deeds of whatever nature engaging the Company and all other documents purporting to bind the Company, as well as cheques, bills of exchange, promissory notes and other negotiable instruments shall be signed, made, executed, drawn, accepted and endorsed, as the case may be, on behalf of the Company, by any Director.

2.        Any Director may represent the Company in judicial proceedings; provided that no proceedings may be instituted by the Company without the Board's authority. Nothing herein

5

contained shall prevent the Board from convalidating any judicial action taken by any Director in anticipation of its approval.

3.        In addition to and without prejudice to paragraphs 1 and 2 above, the Board may from time to time by resolution delegate such powers for a specific purpose or transaction/class of transactions to any one director and/or other person or persons, jointly or severally.

Signed by:-


_____          _____
Dr. Robert Radmilli B.A., M.Jur., LL.D.               Dr. Robert Radmilli B.A., M.Jur., LL.D
for and on behalf of                                          for and on behalf of
**Aegean Shipholdings Inc.**                              **Aegean Investments S.A.**

COMPANIES ACT, 1995
LIMITED LIABILITY COMPANY

_____

## ARTICLES OF ASSOCIATION
### Of

## MAISTROS RORO SHIPHOLDINGS LTD

**Definitions**

1        In these Articles, unless the context otherwise requires:-

    a)        "the Act" means the Companies Act, 1995;

    b)        "the Schedule" means the First Schedule to the Act;

    c)        words or expressions contained in these Articles bear the same meaning as in the Act as in force at the date at which these Articles are registered.

**Non-applicability of the First Schedule**

2        The regulations contained in Part 1 of the Schedule shall not apply to the Company except as otherwise expressly provided in these Articles.

**Private Company**

3        The Company is established as a Private Company within the meaning of the Companies Act, 1995 and accordingly:-

    a)        the right to transfer its shares is restricted;

    b)        the number of shareholders of the Company is limited to fifty (50) provided that where two (2) or more persons hold one (1) or more shares in the Company jointly, they shall for the purpose of this regulation be treated as a single member;

    c)        any invitation to the public to subscribe for any shares or debentures in the Company is prohibited; and

    d)        regulations 1 and 3 contained in Part II of the Schedule do not apply to the Company.

**Share Capital and Share Rights**

4    Issues of new shares in the Company shall be made by ordinary resolution of the Company in general meeting.  Provided that the General Meeting may authorise by ordinary resolution the Board of directors to issue shares up to the level of the authorised share capital , which authorisation shall be valid for a maximum period of five years from the date of such resolution,

5    The ordinary shares shall not be redeemable.

6    The Company is authorised to acquire other than by subscription any of its fully paid up shares, subject to all the relevant provisions of the Act.

7    Any share in the Company may be issued with such preferred, deferred or other special rights or such restriction, whether in regard to dividend, voting, return of capital or otherwise as the Company may from time to time by extraordinary resolution determine.

8    Subject to the provisions of article 115 of the Act any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable to be redeemed on such terms and in such manner as the Company before the issue of the shares may by ordinary resolution determine.

9    The Company may exercise the power of paying commissions or of making discounts or allowances provided it complies with the requirements of article 113 of the Act. Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.

10    Where a shareholder is bankrupt, its rights as a shareholder in the Company shall vest in and be exercised by its legal representative.

11    Where a share is held jointly by several persons, the name of only one such person shall be entered in the register of members. Such person shall be elected by the joint holders or, unless and until such an election is made, be determined by the Board of Directors and shall for all intents and purposes be deemed, *vis-à-vis* the Company, to be the registered holder of the share so held.

12    Regulations 6 to 11 of the Schedule relating to calls on shares shall apply to the Company.

**Nonstock Voting**

13    To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of registration of the Memorandum & Articles of Association of the Company provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this

Article 13 any class or series of equity securities that has only such voting rights as are mandated by the Laws of Malta, shall be deemed to be nonvoting for purposes of the restrictions of this Article 13

**Transfer of shares**

14          Any transfer of shares requires the authority of the Board of Directors.

15          The Board of Directors may decline to recognise any instrument of transfer unless:-

   a.     the instrument of transfer is accompanied by the certificate, if any, of the shares to which it relates, and such other evidence as the Board of Directors may reasonably require to show the right of the transferor to make the transfer;

   b.     the transfer complies with the relevant requirements of Maltese law.

16          The registration of transfers may be suspended at such times and for such periods as the Board of Directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty (30) days in any year.

**Forfeiture or surrender of shares**

17          If a member fails to pay any call or installment of a call on the day appointed for payment thereof, the directors may, at any time thereafter during such time as any part of the call or installment remains unpaid, require payment of so much of the call or installment as is unpaid, together with any interest which may have accrued, by means of a notice which shall also name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment, at or  before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

18          If the requirements specified in any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect, or otherwise be surrendered in favour of the Company by the member to whom the said notice is addressed, if the directors of the Company accept such surrender.

19          A forfeited or a surrendered share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and the Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of, who shall thereupon be registered as the holder of the share.   At any time before a sale or disposition the forfeiture or surrender may be cancelled on such terms as the directors think fit.

20          A person whose shares have been forfeited or who has surrendered his shares to the Company, shall cease to be a member in respect of the forfeited or surrendered shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of

9

the forfeiture or surrender, were payable by him to the Company in respect of the shares; but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

**Conversion of shares into stock**

21    The Company may by ordinary resolution convert any paid up shares into stock, and re-convert any stock into paid up shares of any denomination.  Such of the regulations of the Company as are applicable to paid up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

22    The holders of stock may transfer the same, or any part thereof, in the same manner and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances permit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

23    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by any amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

**General meetings**

24    Subject to the provisions of the Act the annual general meetings shall be held at such time and place as the Board of Directors may appoint.

25    The Board of Directors may, whenever they think fit, convene an extraordinary general meeting. Extraordinary general meetings may also be convened on requisition or, in default, by requisitionists, as provided in article 129 of the Act.

26    A general meeting of the Company shall be called by giving at least fourteen (14) clear days' notice in writing to every member of the Company. The notice shall specify the place, day and hour of the meeting and the general nature of the business:

Provided that a meeting of the Company shall, notwithstanding that it is called by shorter notice be deemed to have been duly called if it is so agreed to by all the members entitled to attend and vote at that meeting.

27    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting.

28          No business shall be transacted at any general meeting other than that stated in the notice convening it and unless a quorum of members is present at the time the meeting proceeds to business.

29          Save as herein otherwise provided a member or members holding at least fifty point one per cent (51%) of the issued share capital carrying voting rights shall constitute a quorum.

30          If within an hour from the time appointed for a meeting a quorum is not present the meeting shall be adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within an hour from the time appointed for the meeting, the members present shall be a quorum.

31          The chairman of the Company shall preside as Chairman of the Meeting in every general meeting and, if there is no chairman of the Company or if the chairman of the Company is not present within fifteen (15) minutes after the appointed time, the Chairman of the Meeting shall be elected by the members present.

32          Any decision of the general meeting for which an extraordinary resolution is not required by these regulations or by the Act shall be validly taken if approved by an ordinary resolution.

33          An ordinary resolution of the Company shall be validly passed if approved in a general meeting by a member or members having the right to attend and vote at that meeting and holding in the aggregate more than fifty per cent (50%) in nominal value of the shares represented and entitled to vote at the meeting.

34          An extraordinary resolution of the Company shall be validly passed if:-

a)          it has been taken at a general meeting of which notice specifying the intention to propose that resolution as an extraordinary resolution and the principal purpose thereof has been duly given; and

b)          it has been passed by a number of members holding in the aggregate not less than seventy five per cent (75%) in nominal value of the issued shares conferring the right to attend at that meeting and to vote for that resolution.

35          A resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at general meetings shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held. When the matters which require the approval of the annual general meeting in accordance with the relevant provisions of the Act are approved by a resolution in writing signed as aforesaid the Company shall be deemed to have duly convened and held that annual general meeting.

36          Any member entitled to attend and vote at a general meeting of the Company may appoint another person as his proxy to attend and vote in his stead and a proxy so

appointed shall have the same right as that member to speak at the meeting and to demand a poll.

37        The appointment of a proxy shall be in writing and shall be registered at the Company's office before the time for holding the meeting.

## Directors

38        The directors shall be appointed by an ordinary resolution of the Company in general meeting. The Company may by ordinary resolution taken at the time of his appointment or at any later date determine the period for which a director shall hold office. Subject to the provisions of article 140 of the Act, a director shall hold office, unless he dies or tenders his resignation at an earlier date, until the expiration of the period determined as aforesaid but shall thereafter be eligible for re-appointment.

39        The directors shall appoint from amongst their number the Chairman of the Board who shall also be the Chairman of the General Meeting.  The directors shall exercise their powers subject to these regulations, to the provisions of the Act, and to the resolutions of the Company in general meetings; but no resolution taken by the Company in general meeting shall invalidate any prior act of the directors which would have been valid if that resolution had not been taken. Save as aforesaid, the Board of Directors shall have the power:-

a.        to borrow or raise money or secure the payment of money and in conjunction with and independently therefrom to charge or hypothecate the property of the Company or any part thereof for any debt, liability or obligation of the Company, and this without any limitation whatsoever;

b.        to do all such other matters on behalf of the Company as are not by these regulations or by the Act reserved to the general meeting.

40        The directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings, as they think fit. Questions arising at any meeting shall be decided by a majority of votes. Each director shall have one vote and in case of equality of votes the Chairman shall have a second or casting vote. A director shall be deemed to be present at a meeting of the Board if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

41        The quorum necessary for the transaction of the business of the Board of Directors shall be any one director. If a quorum is not present within half an hour from the appointed time the meeting shall be dissolved.

42        Meetings of the Board of Directors shall be convened by the Chairman or by the Company secretary at the request of any director.

43        Saving the provisions of the preceding clause in any meeting where the Chairman is not present the directors present shall appoint one of their number to be chairman of that meeting and the person so appointed shall with respect only to that meeting have the same

functions, rights and obligations of the Chairman of the Board.

44  The continuing directors may act notwithstanding any vacancy in their body but if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the Company as the necessary quorum of directors the continuing directors or director may act for the purpose of increasing the number of directors to that number or of summoning a general meeting of the Company, but for no other purpose.

45  A resolution in writing, signed by all the directors of the Company shall be as valid and effective as if it had been passed at a meeting of the Board of Directors duly convened and held.

46  Subject to the provisions of articles 143, 144 and 145 of the Act, no director shall be disqualified by his position as a director from entering into any agreement with the Company, and a director may vote and be taken into account for the purpose of forming a quorum, in respect of any contract or arrangement in which he may be in any way interested and may retain for his own use and benefit all profits and advantages accruing therefrom.

47  Each director shall have the right to appoint in writing an alternate director to act in his place. The following provisions shall apply to alternate directors:-

a)  an alternate shall have the same rights and privileges as the director whom he represents at any meeting of the Board of Directors at which he is present.

b)  a director cannot be an alternate for another director.

48  The Board of Directors shall have power to appoint any person to be the attorney of the Company for such purpose and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Board of Directors under these regulations) as they may deem appropriate and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

49  The Board of Directors may from time to time appoint a managing director or a director or directors holding any other executive office or offices from amongst themselves delegating to him or them any of the powers exercisable by them either collaterally with or to the exclusion of their own powers. Subject to the provisions of the next following clause, any such appointment shall be valid for such period and subject to such terms and conditions as the Board may impose. Any such appointment shall be automatically determined if the person so appointed ceases for any reason to be a director.

50  The provisions of the foregoing two clauses shall be subject to the provisions contained in the Memorandum of Association of the Company relating to legal and judicial representation of the Company.

51  No remuneration shall be payable to the directors, including directors holding an executive office, unless and to the extent approved by the Company in general meeting. The directors shall, however, be entitled to a reimbursement of all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the Board

of Directors or general meetings of the Company or in connection with the business of the Company.

## Company Secretary

52        Without prejudice to the provisions of the Act regulating the appointment and functions of the Company secretary, the appointment or replacement of the Company secretary and the conditions of holding office shall be determined by the Board of Directors.

53        The Company secretary shall be responsible for keeping:-

a.        the minute book of general meetings of the Company;
b.        the minute book of meetings of the Board of Directors;
c.        the register of members;
d.        the register of debentures; and
e.        such other registers and records as the Company secretary may be requested to keep by the Board of Directors.

54    The Company Secretary shall, moreover:-

a.    ensure that proper notices are given of all meetings;

b.    ensure that all returns and other documents of the Company are prepared and delivered in accordance with the requirements of the Act.

## Dividends

55        The Company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the Board of Directors.

56        The Board of Directors may from time to time pay to the members of the Company such interim dividends as may appear to the Board of Directors to be justified by the profits of the Company.

57        Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share. All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

58        The Board of Directors may deduct from any dividend payable to any member all sums of money presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company.

59          No dividend shall bear interest against the Company.

**Capitalisation of Profits**

60          The provisions on capitalisation of profits contained in regulation 80 in Part I of the Schedule shall apply to the Company.

**Indemnity**

61          Every director, managing director, agent, auditor or secretary and in general any officer for the time being of the Company shall be indemnified out of the assets of the Company against any liability incurred by him in defending any proceedings in his capacity as aforesaid in which judgment is given in his favour or in which he is acquitted or which are withdrawn.

**Authentication of Documents**

62          Any document or proceeding requiring authentication by the Company may be signed by a director or by the Company secretary or other authorised officer of the company.

**Notice**

63          A notice required to be given by the Company to any person in terms of these regulations or of the Act shall be deemed to have been validly given if it is delivered personally to that person or sent to him by post in an envelope addressed to the last known address of that person.

64          A notice sent by post shall be deemed to have been delivered three days after it is posted in the case of delivery to an address in Malta and ten days after it is posted in the case of delivery to an address outside Malta.

65          Notice of every general meeting shall be given in the manner hereinbefore authorised to:-

    a)      every registered member; and

    b)      the auditor for the time being of the Company.

Signed by:-


_____          _____
Dr. Robert Radmilli B.A., M.Jur., LL.D.          Dr. Robert Radmilli B.A., M.Jur., LL.D
for and on behalf of                             for and on behalf of
**Aegean Shipholdings Inc.**                      **Aegean Investments S.A.**

15

## Exhibit H-51

**Reorganized Ostria Roro Shipholdings Ltd Memorandum & Articles of Association**

COMPANIES ACT, 1995

LIMITED LIABILITY COMPANY

_____

MEMORANDUM OF ASSOCIATION

Of

# OSTRIA RORO SHIPHOLDINGS LTD

## 1. NAME

The name of the Company is **OSTRIA RORO SHIPHOLDINGS LTD**

## 2. REGISTERED OFFICE

The registered office of the company shall be at 25/16, Vincenti Buildings, Strait Street, Valletta, VLT 1432, Malta or at such other address, as the Board of Directors shall from time to time determine.

## 3. OBJECTS

(1) The objects for which the Company is constituted shall be the following:-

a)      To acquire and hold, buy and/or sell shares, stocks, bonds, debentures or securities of or in any other company or body of persons (whether such shares or other securities be fully paid up or not), and to invest the funds and assets of the Company in such manner as the Board may deem fit, where the so doing may seem desirable in the interest of the Company, and in such manner as may from time to time be determined, solely in the name of, for and on behalf of the Company and the carrying out of such other acts and entering into such agreements as may be necessary, desirable, connected or ancillary in respect of the above

b)      To lend and advance money, give credit (on such terms as it may deem appropriate), grant or provide guarantees, hypothecs, privileges, charges, security interests or other

1

security exclusively to, or in favour of, companies or partnerships which form part of the same group of companies and partnerships as the Company (that is to companies and partnerships which have more than fifty per cent of their share capital owned directly or indirectly by the same parent or ultimate parent company or partnership as the Company);

c)      To receive funds from any company or partnership which form part of the same group of companies and partnerships as the Company as defined in clause 3(1)(a) hereof and to transfer funds to any company or partnership forming part of the same group of companies and partnerships as the Company.

d)      To carry out such activities as may be ancillary to the above or as may be necessary or desirable to achieve the above objects.

e)      To receive from the assets mentioned in paragraph 3(1)(a) above, including dividends, capital gains,  interest, and any other income derived from investments including income or  gains on their disposal, rents, royalties and similar income whether arising in  or outside Malta, and profits or gains attributable to a permanent establishment  (including a branch) whether situated in or outside Malta.

(2) In attaining its objects, the Company has the following powers;

a)      To purchase, take on lease or otherwise acquire any movable or immovable property, whether developed or undeveloped, and any rights necessary or convenient for the carrying on of the Company's business or any of them;

b)      To invest, hold, sell or otherwise deal with the moneys of the Company not immediately required in such investments and other property as the Company may from time to time deem fit;

c)      To improve, manage, develop, let on lease or otherwise, hypothecate, charge, sell, dispose of or otherwise deal with all or any of the property and rights of the Company;

d)      To borrow or raise money in such manner as the Company may deem fit and in particular by the issue of debentures, and to secure the repayment of any money borrowed or raised by hypothecation, charge or lien upon the whole or any part of the Company's property or assets (whether present or future), including its uncalled capital and its interests in its subsidiaries and also by a similar hypothecation, charge or lien to secure and guarantee any debt, liability or obligation of the Company or of any third party;

e)      To procure from any person, company, bank or similar institution the security required in favour of third parties to secure and guarantee any obligation undertaken by the Company, including inter alia, hypothecs, privileges, charges or other security or guarantee;

f)      To sell, give on lease or otherwise dispose of the whole or any part of the business or property of the Company for such consideration as the Company may think fit, including, inter alia, for shares, debentures or securities of any other Company;

g)      To sell or dispose of the undertaking of the Company or any part thereof, or to amalgamate with any other company for such consideration as the Company may think fit and in particular for shares (whether such shares be fully paid up or not), debentures or securities of any other company having objects altogether or in part similar to those of the Company;

h)      To lend and advance money or give credit to such person, or persons, firms or partnerships and others having dealings with the Company on such terms as may seem expedient to the Company;

i)      To act as agents and/or representatives of any local and/or overseas companies and other business concerns connected with the import and/or export trade or with the provision of services;

j)      To enter into partnership or any arrangement for sharing benefits, union of interests, reciprocal concessions, joint venture or co-operation with any person, firm or partnership;

k)      To do all or any of the above things in any part of the world and either as principals, agents or otherwise and either alone or in conjunction with others and either by or through agents or otherwise;

l)      To pay out of the funds of the Company all costs, charges and expenses

m)      To do all such other things as are incidental or conducive to the attainment of the above objects or powers or any of them.

(3)    Nothing in the foregoing shall be construed as empowering or enabling the company to carry out any activity or service which requires a licence or other authorisation under any law in force in Malta without such a licence or other appropriate authorisation from the relevant competent authority and the provisions of Article 77(3) of the Companies Act shall apply.

The objects set forth in each sub-clause of this clause shall not be restrictively construed but the widest interpretation shall be given thereto, and they shall not, except where the context expressly or so requires, be in any way limited or restricted by reference to or inference from any other object or objects set forth in such sub-clause or from the terms of any other sub-clause or by the name of the Company. None of such sub-clauses or the object or objects therein specified or the powers thereby conferred shall be deemed subsidiary or ancillary to the objects or powers mentioned in any other sub-clause, but the Company shall have as full a power to exercise all or any of the objects conferred by and provided in each of the said sub-clauses as if each sub-clause contained the objects of a separate company.

3

## 4. LIMITED LIABILITY

The liability of the shareholders is limited to the amount, if any, unpaid on the share (or shares) in the company.

## 5. SHARE CAPITAL

The authorised share capital of the Company shall be One thousand Two Hundred Euros (€ 1,200) divided into five hundred (500) shares of a nominal value of two Euros and forty Euro cents (€ 2.40) each.

The issued share capital of the Company shall be One thousand Two Hundred Euros (€ 1,200) divided into five hundred (500) shares of a nominal value of two Euros and forty Euro cents (€ 2.40) each, all of which have been subscribed for and allotted, fully paid up, as follows:

|  | No. of Shares |
|---|---|
| **Aegean Shipholdings Inc.**<br>Trust Company Complex<br>Ajeltake Road, Ajeltake Island<br>Majuro, Marshall Islands MH 96960<br>(Company Registration number 15000) | 499 |
| **Aegean Investments S.A.**<br>Trust Company Complex<br>Ajeltake Road, Ajeltake Island<br>Majuro, Marshall Islands MH 96960<br>(Company Registration number 9825) | 1 |

## 6.    CLASS RIGHTS

The holder(s) of the Ordinary Shares shall have:

i)    the right to receive notice of and to attend all General Meetings of the Company and

ii)    the right to one (1) vote in respect of all Ordinary and Extraordinary resolutions.

iii)    Ordinary Shares shall rank *pari passu* in all respects particularly as regards dividend and participation in the assets on a winding up of the Company, independently of the letter (if any) by which they are denoted.

4

## 7.    DIRECTOR

The business and affairs of the company shall be managed by a Board of Directors that shall be composed of not less than one and not more than two directors.

The director of the company is:

> **DIMITRIOS KOKKINIS**
> 32 MARKOU BOTSARI STR.
> DAFNI 17234
> ATHENS
> GREECE
> (Greek Passport: AN2116466)

The appointment and/or removal of directors shall require the consent in general meeting of members holding not less than fifty one per cent (51%) of the issued paid up share capital of the company. A written notice addressed to the secretary of the company shall be sufficient for such a purpose.

## 8.  SECRETARY

The secretary of the company is:

> **SPYRIDON FOKAS**
> 53-55
> AKTI MIAOULI
> PIRAEUS 18536
> GREECE
> (Greek Passport: AN3330449)

## 9.  PRIVATE COMPANY

The company is a private company in accordance with the Companies Act, 1995.

## 10. LEGAL AND JUDICIAL REPRESENTATION

1.      Deeds of whatever nature engaging the Company and all other documents purporting to bind the Company, as well as cheques, bills of exchange, promissory notes and other negotiable instruments shall be signed, made, executed, drawn, accepted and endorsed, as the case may be, on behalf of the Company, by any Director.

2.      Any Director may represent the Company in judicial proceedings; provided that no proceedings may be instituted by the Company without the Board's authority. Nothing herein

contained shall prevent the Board from convalidating any judicial action taken by any Director in anticipation of its approval.

3.        In addition to and without prejudice to paragraphs 1 and 2 above, the Board may from time to time by resolution delegate such powers for a specific purpose or transaction/class of transactions to any one director and/or other person or persons, jointly or severally.

Signed by:-


_____          _____
Dr. Robert Radmilli B.A., M.Jur., LL.D.                  Dr. Robert Radmilli B.A., M.Jur., LL.D
for and on behalf of                                            for and on behalf of
**Aegean Shipholdings Inc.**                                **Aegean Investments S.A.**

6

COMPANIES ACT, 1995
LIMITED LIABILITY COMPANY

————————————————————

# ARTICLES OF ASSOCIATION
## Of

# OSTRIA RORO SHIPHOLDINGS LTD

**Definitions**

1	In these Articles, unless the context otherwise requires:-

a)	"the Act" means the Companies Act, 1995;

b)	"the Schedule" means the First Schedule to the Act;

c)	words or expressions contained in these Articles bear the same meaning as in the Act as in force at the date at which these Articles are registered.

**Non-applicability of the First Schedule**

2	The regulations contained in Part 1 of the Schedule shall not apply to the Company except as otherwise expressly provided in these Articles.

**Private Company**

3	The Company is established as a Private Company within the meaning of the Companies Act, 1995 and accordingly:-

a)	the right to transfer its shares is restricted;

b)	the number of shareholders of the Company is limited to fifty (50) provided that where two (2) or more persons hold one (1) or more shares in the Company jointly, they shall for the purpose of this regulation be treated as a single member;

c)	any invitation to the public to subscribe for any shares or debentures in the Company is prohibited; and

d)	regulations 1 and 3 contained in Part II of the Schedule do not apply to the Company.

**Share Capital and Share Rights**

4      Issues of new shares in the Company shall be made by ordinary resolution of the Company in general meeting.  Provided that the General Meeting may authorise by ordinary resolution the Board of directors to issue shares up to the level of the authorised share capital , which authorisation shall be valid for a maximum period of five years from the date of such resolution,

5      The ordinary shares shall not be redeemable.

6      The Company is authorised to acquire other than by subscription any of its fully paid up shares, subject to all the relevant provisions of the Act.

7      Any share in the Company may be issued with such preferred, deferred or other special rights or such restriction, whether in regard to dividend, voting, return of capital or otherwise as the Company may from time to time by extraordinary resolution determine.

8      Subject to the provisions of article 115 of the Act any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable to be redeemed on such terms and in such manner as the Company before the issue of the shares may by ordinary resolution determine.

9      The Company may exercise the power of paying commissions or of making discounts or allowances provided it complies with the requirements of article 113 of the Act. Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.

10      Where a shareholder is bankrupt, its rights as a shareholder in the Company shall vest in and be exercised by its legal representative.

11      Where a share is held jointly by several persons, the name of only one such person shall be entered in the register of members. Such person shall be elected by the joint holders or, unless and until such an election is made, be determined by the Board of Directors and shall for all intents and purposes be deemed, *vis-à-vis* the Company, to be the registered holder of the share so held.

12      Regulations 6 to 11 of the Schedule relating to calls on shares shall apply to the Company.

**Nonstock Voting**

13      To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of registration of the Memorandum & Articles of Association of the Company provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this

Article 13 any class or series of equity securities that has only such voting rights as are mandated by the Laws of Malta, shall be deemed to be nonvoting for purposes of the restrictions of this Article 13

**Transfer of shares**

14          Any transfer of shares requires the authority of the Board of Directors.

15          The Board of Directors may decline to recognise any instrument of transfer unless:-

  a.      the instrument of transfer is accompanied by the certificate, if any, of the shares to which it relates, and such other evidence as the Board of Directors may reasonably require to show the right of the transferor to make the transfer;

  b.      the transfer complies with the relevant requirements of Maltese law.

16          The registration of transfers may be suspended at such times and for such periods as the Board of Directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty (30) days in any year.

**Forfeiture or surrender of shares**

17          If a member fails to pay any call or installment of a call on the day appointed for payment thereof, the directors may, at any time thereafter during such time as any part of the call or installment remains unpaid, require payment of so much of the call or installment as is unpaid, together with any interest which may have accrued, by means of a notice which shall also name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment, at or  before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

18          If the requirements specified in any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect, or otherwise be surrendered in favour of the Company by the member to whom the said notice is addressed, if the directors of the Company accept such surrender.

19          A forfeited or a surrendered share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and the Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of, who shall thereupon be registered as the holder of the share.   At any time before a sale or disposition the forfeiture or surrender may be cancelled on such terms as the directors think fit.

20          A person whose shares have been forfeited or who has surrendered his shares to the Company, shall cease to be a member in respect of the forfeited or surrendered shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of

the forfeiture or surrender, were payable by him to the Company in respect of the shares; but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

## Conversion of shares into stock

21    The Company may by ordinary resolution convert any paid up shares into stock, and re-convert any stock into paid up shares of any denomination.  Such of the regulations of the Company as are applicable to paid up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

22    The holders of stock may transfer the same, or any part thereof, in the same manner and subject to the same regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstances permit; and the directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

23    The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by any amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

## General meetings

24    Subject to the provisions of the Act the annual general meetings shall be held at such time and place as the Board of Directors may appoint.

25    The Board of Directors may, whenever they think fit, convene an extraordinary general meeting. Extraordinary general meetings may also be convened on requisition or, in default, by requisitionists, as provided in article 129 of the Act.

26    A general meeting of the Company shall be called by giving at least fourteen (14) clear days' notice in writing to every member of the Company. The notice shall specify the place, day and hour of the meeting and the general nature of the business:

Provided that a meeting of the Company shall, notwithstanding that it is called by shorter notice be deemed to have been duly called if it is so agreed to by all the members entitled to attend and vote at that meeting.

27    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice shall not invalidate the proceedings at that meeting.

28        No business shall be transacted at any general meeting other than that stated in the notice convening it and unless a quorum of members is present at the time the meeting proceeds to business.

29        Save as herein otherwise provided a member or members holding at least fifty point one per cent (51%) of the issued share capital carrying voting rights shall constitute a quorum.

30        If within an hour from the time appointed for a meeting a quorum is not present the meeting shall be adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within an hour from the time appointed for the meeting, the members present shall be a quorum.

31        The chairman of the Company shall preside as Chairman of the Meeting in every general meeting and, if there is no chairman of the Company or if the chairman of the Company is not present within fifteen (15) minutes after the appointed time, the Chairman of the Meeting shall be elected by the members present.

32        Any decision of the general meeting for which an extraordinary resolution is not required by these regulations or by the Act shall be validly taken if approved by an ordinary resolution.

33        An ordinary resolution of the Company shall be validly passed if approved in a general meeting by a member or members having the right to attend and vote at that meeting and holding in the aggregate more than fifty per cent (50%) in nominal value of the shares represented and entitled to vote at the meeting.

34        An extraordinary resolution of the Company shall be validly passed if:-

a)        it has been taken at a general meeting of which notice specifying the intention to propose that resolution as an extraordinary resolution and the principal purpose thereof has been duly given; and

b)        it has been passed by a number of members holding in the aggregate not less than seventy five per cent (75%) in nominal value of the issued shares conferring the right to attend at that meeting and to vote for that resolution.

35        A resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at general meetings shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held. When the matters which require the approval of the annual general meeting in accordance with the relevant provisions of the Act are approved by a resolution in writing signed as aforesaid the Company shall be deemed to have duly convened and held that annual general meeting.

36        Any member entitled to attend and vote at a general meeting of the Company may appoint another person as his proxy to attend and vote in his stead and a proxy so

appointed shall have the same right as that member to speak at the meeting and to demand a poll.

37          The appointment of a proxy shall be in writing and shall be registered at the Company's office before the time for holding the meeting.

## Directors

38          The directors shall be appointed by an ordinary resolution of the Company in general meeting. The Company may by ordinary resolution taken at the time of his appointment or at any later date determine the period for which a director shall hold office. Subject to the provisions of article 140 of the Act, a director shall hold office, unless he dies or tenders his resignation at an earlier date, until the expiration of the period determined as aforesaid but shall thereafter be eligible for re-appointment.

39          The directors shall appoint from amongst their number the Chairman of the Board who shall also be the Chairman of the General Meeting.  The directors shall exercise their powers subject to these regulations, to the provisions of the Act, and to the resolutions of the Company in general meetings; but no resolution taken by the Company in general meeting shall invalidate any prior act of the directors which would have been valid if that resolution had not been taken. Save as aforesaid, the Board of Directors shall have the power:-

  a.          to borrow or raise money or secure the payment of money and in conjunction with and independently therefrom to charge or hypothecate the property of the Company or any part thereof for any debt, liability or obligation of the Company, and this without any limitation whatsoever;
  b.       to do all such other matters on behalf of the Company as are not by these regulations or by the Act reserved to the general meeting.

40          The directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings, as they think fit. Questions arising at any meeting shall be decided by a majority of votes. Each director shall have one vote and in case of equality of votes the Chairman shall have a second or casting vote. A director shall be deemed to be present at a meeting of the Board if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

41          The quorum necessary for the transaction of the business of the Board of Directors shall be any one director. If a quorum is not present within half an hour from the appointed time the meeting shall be dissolved.

42          Meetings of the Board of Directors shall be convened by the Chairman or by the Company secretary at the request of any director.

43          Saving the provisions of the preceding clause in any meeting where the Chairman is not present the directors present shall appoint one of their number to be chairman of that meeting and the person so appointed shall with respect only to that meeting have the same

functions, rights and obligations of the Chairman of the Board.

44    The continuing directors may act notwithstanding any vacancy in their body but if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the Company as the necessary quorum of directors the continuing directors or director may act for the purpose of increasing the number of directors to that number or of summoning a general meeting of the Company, but for no other purpose.

45    A resolution in writing, signed by all the directors of the Company shall be as valid and effective as if it had been passed at a meeting of the Board of Directors duly convened and held.

46    Subject to the provisions of articles 143, 144 and 145 of the Act, no director shall be disqualified by his position as a director from entering into any agreement with the Company, and a director may vote and be taken into account for the purpose of forming a quorum, in respect of any contract or arrangement in which he may be in any way interested and may retain for his own use and benefit all profits and advantages accruing therefrom.

47    Each director shall have the right to appoint in writing an alternate director to act in his place. The following provisions shall apply to alternate directors:-

a)    an alternate shall have the same rights and privileges as the director whom he represents at any meeting of the Board of Directors at which he is present.

b)    a director cannot be an alternate for another director.

48    The Board of Directors shall have power to appoint any person to be the attorney of the Company for such purpose and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Board of Directors under these regulations) as they may deem appropriate and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

49    The Board of Directors may from time to time appoint a managing director or a director or directors holding any other executive office or offices from amongst themselves delegating to him or them any of the powers exercisable by them either collaterally with or to the exclusion of their own powers. Subject to the provisions of the next following clause, any such appointment shall be valid for such period and subject to such terms and conditions as the Board may impose. Any such appointment shall be automatically determined if the person so appointed ceases for any reason to be a director.

50    The provisions of the foregoing two clauses shall be subject to the provisions contained in the Memorandum of Association of the Company relating to legal and judicial representation of the Company.

51    No remuneration shall be payable to the directors, including directors holding an executive office, unless and to the extent approved by the Company in general meeting. The directors shall, however, be entitled to a reimbursement of all travelling, hotel and other expenses properly incurred by them in attending and returning from meetings of the Board

of Directors or general meetings of the Company or in connection with the business of the Company.

## Company Secretary

52          Without prejudice to the provisions of the Act regulating the appointment and functions of the Company secretary, the appointment or replacement of the Company secretary and the conditions of holding office shall be determined by the Board of Directors.

53          The Company secretary shall be responsible for keeping:-

    a.          the minute book of general meetings of the Company;
    b.          the minute book of meetings of the Board of Directors;
    c.          the register of members;
    d.          the register of debentures; and
    e.          such other registers and records as the Company secretary may be requested to keep by the Board of Directors.

54          The Company Secretary shall, moreover:-

    a.          ensure that proper notices are given of all meetings;

    b.          ensure that all returns and other documents of the Company are prepared and delivered in accordance with the requirements of the Act.

## Dividends

55          The Company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the Board of Directors.

56          The Board of Directors may from time to time pay to the members of the Company such interim dividends as may appear to the Board of Directors to be justified by the profits of the Company.

57          Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but no amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share. All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

58          The Board of Directors may deduct from any dividend payable to any member all sums of money presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company.

59          No dividend shall bear interest against the Company.

**Capitalisation of Profits**

60          The provisions on capitalisation of profits contained in regulation 80 in Part I of the Schedule shall apply to the Company.

**Indemnity**

61          Every director, managing director, agent, auditor or secretary and in general any officer for the time being of the Company shall be indemnified out of the assets of the Company against any liability incurred by him in defending any proceedings in his capacity as aforesaid in which judgment is given in his favour or in which he is acquitted or which are withdrawn.

**Authentication of Documents**

62          Any document or proceeding requiring authentication by the Company may be signed by a director or by the Company secretary or other authorised officer of the company.

**Notice**

63          A notice required to be given by the Company to any person in terms of these regulations or of the Act shall be deemed to have been validly given if it is delivered personally to that person or sent to him by post in an envelope addressed to the last known address of that person.

64          A notice sent by post shall be deemed to have been delivered three days after it is posted in the case of delivery to an address in Malta and ten days after it is posted in the case of delivery to an address outside Malta.

65     Notice of every general meeting shall be given in the manner hereinbefore authorised to:-

a)          every registered member; and

b)          the auditor for the time being of the Company.

Signed by:-


_____                    _____
Dr. Robert Radmilli B.A., M.Jur., LL.D.              Dr. Robert Radmilli B.A., M.Jur., LL.D
for and on behalf of                                for and on behalf of
**Aegean Shipholdings Inc.**                         **Aegean Investments S.A.**

**<u>Exhibit H-52</u>**

**Reorganized Aegean Marine Petroleum Network Inc. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

## AEGEAN MARINE PETROLEUM NETWORK INC.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Marine Petroleum Network Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN MARINE PETROLEUM NETWORK INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue is [●] registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.      The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.      Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:    _____

**<u>Exhibit H-53</u>**

**Reorganized Aegean Bunkering Services Inc. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN BUNKERING SERVICES INC.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Bunkering Services Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN BUNKERING SERVICES INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)　　To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)　　To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)　　To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)　　To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)　　To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)　　To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.     The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.     The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.     Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by: _____

## Exhibit H-54

**Reorganized Aegean (Fujairah) Bunkering S.A. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN (FUJAIRAH) BUNKERING S.A.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean (Fujairah) Bunkering S.A., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN (FUJAIRAH) BUNKERING S.A.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)     To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)     To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)     To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)     To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)     To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)     To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)     To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)     To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)     To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue
is [●] registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to
the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be
exchanged for another certificate in his name for a like number of shares, and the
holder of shares issued in the name of the owner may cause his certificate to be
exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the
United States Bankruptcy Code (as amended, the "**Bankruptcy Code**"), the
Corporation shall not issue any class or series of nonvoting equity securities as in
effect on the date of filing these Amended and Restated Articles of Incorporation;
provided, however, that the foregoing (a) will have such force and effect only for so
long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to
the Corporation; (b) will have no further force and effect beyond that required under
Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in
accordance with applicable law from time to time in effect.  For purposes of this
Section D, any class or series of equity securities that has only such voting rights as
are mandated by the Marshall Islands Business Corporations Act shall be deemed to
be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter
organized under the Marshall Islands Business Corporations Act may have.

F.      The Board of Directors as well as the shareholders of the Corporation shall have the
authority to adopt, amend or repeal the bylaws of the Corporation.

G.      Corporate existence shall begin upon filing these Amended and Restated Articles of
Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of
March, 2019.


by:  _____

**<u>Exhibit H-55</u>**

**Reorganized Aegean Investments S.A. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN INVESTMENTS S.A.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Investments S.A., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.  The name of the Corporation shall be:

AEGEAN INVESTMENTS S.A.

B.  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)  To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.      The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.      Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:  _____

**Exhibit H-56**

**Reorganized Aegean Holdings S.A. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### AEGEAN HOLDINGS S.A.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Holdings S.A., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN HOLDINGS S.A.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.     The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.     The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.     Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:        _____

## **Exhibit H-57**

**Reorganized Aegean Oil Terminal Corp. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN OIL TERMINAL CORPORATION

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Oil Terminal Corporation, (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.      The name of the Corporation shall be:

## AEGEAN OIL TERMINAL CORPORATION

B.      The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)      To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.      The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.      Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.


by: _____

## Exhibit H-58

**Reorganized Aegean Petroleum International Inc. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN PETROLEUM INTERNATIONAL INC.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Petroleum International Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN PETROLEUM INTERNATIONAL INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock. To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.     The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.     The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.     Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:    _____

## **Exhibit H-59**

**Reorganized Aegean Shipholdings Inc. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### AEGEAN SHIPHOLDINGS INC.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Shipholdings Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN SHIPHOLDINGS INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.  The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.  The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.  The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.  Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:  _____

## <u>Exhibit H-60</u>

**Reorganized Aegean Tankfarms Holdings S.A. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## AEGEAN TANKFARMS HOLDINGS S.A.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Aegean Tankfarms Holdings S.A., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AEGEAN TANKFARMS HOLDINGS S.A.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)     To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)     To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)     To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)     To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)     To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)     To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)     To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)     To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)     To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.  The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock. To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "**_Bankruptcy Code_**"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect. For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.  The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.  The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.  Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by: _____

## **Exhibit H-61**

**Reorganized Amorgos Maritime Inc. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### AMORGOS MARITIME INC.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Amorgos Maritime Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

AMORGOS MARITIME INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.    The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.    Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:    _____

## **Exhibit H-62**

**Reorganized Kimolos Maritime Inc. A&R Articles of Incorporation**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**OF**

**KIMOLOS MARITIME INC.**

**PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT**

The undersigned, for the purpose of amending and restating the articles of incorporation of Kimolos Maritime Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.     The name of the Corporation shall be:

KIMOLOS MARITIME INC.

B.     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)     To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)     To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)     To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)     To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)     To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.     The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.     The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.     The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.     Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:     _____

**Exhibit H-63**

**Reorganized Kithnos Maritime Inc. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### KITHNOS MARITIME INC.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Kithnos Maritime Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.      The name of the Corporation shall be:

KITHNOS MARITIME INC.

B.      The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)      To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)     To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)     To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)     To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)     To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)     To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)     To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.    The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.    Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by:  _____

## **Exhibit H-64**

**Reorganized Paros Maritime Inc. A&R Articles of Incorporation**

# AMENDED AND RESTATED ARTICLES OF INCORPORATION

## OF

## PAROS MARITIME INC.

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Paros Maritime Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

PAROS MARITIME INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.    The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.    Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by: _____

**<u>Exhibit H-65</u>**

**Reorganized Sealand Navigation Inc. A&R Articles of Incorporation**

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### SEALAND NAVIGATION INC.

### PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of amending and restating the articles of incorporation of Sealand Navigation Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

SEALAND NAVIGATION INC.

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)     To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)     To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)     To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)     To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)     To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)     To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.      The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.      The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.      The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.      Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.

by: _____

# Exhibit H-66

**Reorganized Serifos Maritime Inc. A&R Articles of Incorporation**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**OF**

**SERIFOS MARITIME INC.**

**PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT**

The undersigned, for the purpose of amending and restating the articles of incorporation of Serifos Maritime Inc., (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.   The name of the Corporation shall be:

SERIFOS MARITIME INC.

B.   The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)   To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.  The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.  The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.  The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.  Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this [●] day of March, 2019.


by: _____

**Exhibit H-67**

**Reorganized Tempest Shiptrade Ltd A&R Articles of Incorporation**

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

**OF**

**TEMPEST SHIPTRADE LTD**

**PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT**

The undersigned, for the purpose of amending and restating the articles of incorporation of Tempest Shiptrade Ltd, (the "*Corporation*"), and pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.    The name of the Corporation shall be:

TEMPEST SHIPTRADE LTD

B.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)    To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)      To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)      To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)     To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)     To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)     To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)     To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.       The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Amended and Restated Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.       The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.       The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

G.       Corporate existence shall begin upon filing these Amended and Restated Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this _____ day of March, 2019.

by: _____

## **Exhibit H-68**

**Reorganized Aegean Bunkering Morocco SARLAU**

**AEGEAN BUNKERING MOROCCO**
**Société à Responsabilité Limitée A Associé Unique**
**Au capital de 10.000 Euros (ou la contrevaleur en Dirhams Marocain)**
**Siège social : Tanger-Zone Franche de Ksar Majaz**
**Registre du commerce de Tanger numéro 46175**

**STATUTS**

**Mis à jour suite aux décisions de l'Associé Unique en date du [date of the sole shareholder's decisions]**

**TITRE 1**
**FORME - OBJET- DENOMINATION - SIEGE - DUREE**

**LA SOUSSIGNEE**

La société AEGEAN INVESTMENT SA, société d'îles de Marshall, sise à Trust company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 inscrite au registre de commerce de Marshall Islands et représentée par M. Theodora Papadogianni ; a établi, ainsi qu'il suit, les statuts, d'une Société à Responsabilité Limitée à Associé Unique.

**ARTICLE 1ER : FORME**

Il est formé par les présentes une société à responsabilité limitée à associé unique qui sera régie par les présents statuts et par les lois en vigueur.

**ARTICLE 2 : OBJET**

La société a pour objet, soit pour son compte soit le compte de tiers, au Maroc et dans tous autres pays :

- Les services de prestations de fournitures de services de logistique, d'alimentation en fuel pour les navires;

- Les services connexes et complémentaires aux services décrits ci-dessus, y compris les services de conseil, de mise en place de données relatives aux clients et aux services fournis par la société;

- Et généralement, toutes opérations commerciales, industrielles, financières, mobilières ou immobilières pouvant se rattacher directement ou indirectement à son activité ou susceptibles d'en faciliter la réalisation.

**ARTICLE 3 : DÉNOMINATION**

La société a pour dénomination : « **AEGEAN BUNKERING MOROCCO**».

Tous les actes et documents émanant de la société et destinés aux tiers, notamment, les lettres, factures, annonces et publications diverses, doivent indiquer la dénomination sociale précédée ou suivie immédiatement et lisiblement des mots "**Société à Responsabilité Limitée à Associé Unique**" ou des initiales " S.A.R.L. à associé unique " de l'énonciation du montant du capital social et du numéro d'immatriculation au registre du commerce, ainsi que des autres mentions légales obligatoires

## ARTICLE 4 : DUREE

La durée de la société est fixée à 99 ans à compter de la date d'immatriculation de la société au registre du commerce, sauf les cas de dissolution anticipée ou de prorogation prévus par les lois et par les présents statuts.

## ARTICLE 5 : SIÈGE SOCIAL

Le siège social est fixé à Tanger - Zone Franche de Ksar Majaz.

Il pourra être transféré en tout autre lieu par décision de l'associé unique.

## TITRE II
## APPORTS - CAPITAL - PARTS SOCIALES

## ARTICLE 6 : APPORTS

L'associé unique apporte à la société la somme de dix mille (**10.000,00**) Euros (ou la contre-valeur en Dirhams Marocain). Laquelle somme de dix mille (10.000,00) Euros a été intégralement libérée et déposée dans un compte bancaire indisponible ouvert au nom de la société « **AEGEAN BUNKERING MOROCCO**» société à responsabilité limitée à associé unique en formation.

Conformément à la loi, le retrait de cette somme ne pourra être effectué par la gérance qu'après immatriculation de la société au registre de commerce et sur présentation d'une attestation du greffe du tribunal attestant l'accomplissement de cette formalité.

## ARTICLE 7 : CAPITAL SOCIAL

**7.1. Capital social et parts sociales**

Le capital social est fixé à la somme de dix mille (10.000,00) Euros (ou la contre-valeur en Dirhams Marocain) et divisé en mille (1.000) parts sociales de dix (10) Euros (ou la contre-valeur en Dirhams Marocain) chacune, numérotées de 1 à 1.000, entièrement souscrites et libérées en numéraire, et attribuées en totalité à l'associé unique.

**7.2. Parts sociales sans droit de vote**

Dans la mesure où l'article 1123 du Titre 11 du Code de la Faillite des Etats-Unis d'Amérique (tel que modifié, le "'**Code de la Faillite Américain**'") l'interdit, la Société ne pourra émettre aucune part sociale

(ni catégorie de parts sociales) sans droit de vote à compter du [date of the sole shareholder's decisions to be completed] 2019, sous réserve des conditions suivantes : ladite interdiction (a) ne demeurera en vigueur que tant que l'article 1123 du Code de la Faillite Américain sera en vigueur et applicable à la Société, (b) sera sans effet pour tout objet autre que celui visé à l'article 1123 du Code de la Faillite Américain et (c) pourra faire l'objet de modification ou être supprimée aux fins de se conformer à la loi applicable à tout moment.

## ARTICLE 8: AUGMENTATION ET RÉDUCTION DU CAPITAL

Le capital social pourra être augmenté ou réduit en vertu d'une décision de l'associé unique.

## ARTICLE 9 : DROITS DE L'ASSOCIÉ UNIQUE

Les droits de l'associé unique résulteront seulement des présents statuts, des actes ultérieurs qui pourraient modifier le capital social et des cessions de parts qui seraient régulièrement consentis.

Une copie ou un extrait de ces actes et pièces certifiés conformes par la gérance pourra être délivré à l'associé unique sur sa demande et à ses frais. En aucun cas, les parts sociales ne pourront être représentées par des titres négociables.

## TITRE III
## GERANCE DE LA SOCIETE

## ARTICLE 10 : GÉRANT - POUVOIRS

La société est gérée et administrée par un ou plusieurs gérants, personnes physiques.

Est nommé en qualité de premier gérant de la société pour une durée illimitée, **M. Jean- José Jacques Metey**, de nationalité française, né le 06 Mai 1953, titulaire du passeport n° 04AE17222, et demeurant à Athènes - Grèce.

Le gérant est investi des pouvoirs les plus étendus pour agir en toute circonstance au nom de la société, sous réserve des pouvoirs que la loi attribue expressément à l'associé unique.

La société est engagée même par les actes du gérant qui ne relèvent pas de l'objet social, à moins qu'elle ne prouve que le tiers savait que l'acte dépassait cet objet ou qu'il ne pouvait l'ignorer, compte tenu des circonstances, étant exclu que la seule publication des statuts suffise à constituer cette preuve.

Dans les rapports avec la société, il est stipulé que toutes garanties ou cautions, tous avals, tous emprunts ou engagements ou tous actes emportant ou susceptibles d'emporter, directement ou indirectement, modification de l'objet social ou des statuts, ne pourront être réalisés sans avoir été au préalable autorisés par l'associé unique.

Toutes limitations statutaires des pouvoirs du ou des gérant(s) sont inopposables aux tiers.

En cas de pluralité des gérants, ceux-ci détiennent séparément les pouvoirs prévus au présent article. L'opposition formée par un gérant aux actes d'un autre gérant est sans effet à l'égard des tiers, à moins qu'il ne soit établi qu'ils en ont eu connaissance.

Il est interdit au gérant d'exercer toute activité similaire à celle de la société, à moins qu'il ne soit autorisé par l'associé unique.

## ARTICLE 11: DÉLÉGATION DE POUVOIRS

Le ou les gérants peuvent sous leur responsabilité conférer des pouvoirs spéciaux à telle personne que bon leur semblera pour un ou plusieurs objets déterminés.

## ARTICLE 12 : LES CONVENTIONS RÉGLEMENTÉES ET LES CONVENTIONS INTERDITES

### 12.1. CONVENTIONS RÉGLEMENTÉES

Le gérant ou, le cas échéant, le ou les commissaires aux comptes, présentent à l'associé unique un rapport sur les conventions intervenues directement ou par personne interposée entre la société et l'un de ses gérants.

Lorsque la convention est conclue avec l'associé unique, il en est seulement fait mention au registre des délibérations.

A défaut de commissaire aux comptes, les conventions conclues par un gérant non associé sont soumises à l'approbation préalable de l'associé unique.

Les conventions non approuvées produisent néanmoins leurs effets, à charge pour le gérant et, s'il y a lieu, pour l'associé unique de supporter individuellement ou solidairement, selon le cas, les conséquences du contrat préjudiciable à la société.

Le dispositions ci-dessus s'appliquent aux conventions passées avec une société dont un associé indéfiniment responsable, gérant, administrateur, directeur général, membre du directoire ou membre du conseil de surveillance, est simultanément gérant ou associé de la société.

Toutefois, les conventions portant sur des opérations courantes et conclues à des conditions normales ne sont pas soumises aux dispositions susvisées.

### 12.2. CONVENTIONS INTERDITES

A peine de nullité du contrat, il est interdit aux gérants ou aux associés personne physique de contracter, sous quelque forme que ce soit, des emprunts auprès de la société, de se faire consentir par elle un découvert en compte courant ou autrement, ainsi que de faire cautionner ou avaliser par elle leurs engagements envers les tiers.

Cette interdiction s'applique aux représentants légaux de la personne morale associée unique.

Cette interdiction s'applique également aux conjoints, parents et alliés jusqu'au deuxième degré inclusivement des personnes visées aux alinéas précédents ainsi qu'à toute personne interposée.

## ARTICLE 13 : CESSATION DES FONCTIONS DE LA GÉRANCE

Le gérant est révocable par décision de l'associé unique. Si la révocation est décidée sans juste motif, elle peut donner lieu à dommages intérêts.

Il peut se démettre de ses fonctions mais seulement en fin d'exercice, en prévenant l'associé unique 3 mois à l'avance.

Au cas où les fonctions du gérant unique cesseraient pour un motif quelconque, la société ne sera pas dissoute. II sera tout simplement pourvu à son remplacement par décision de l'associé unique.

La cessation des fonctions d'un seul gérant, au cas de pluralité de gérants, pour quelque motif que ce soit, n'entraîne pas la dissolution de la société ; le ou les gérants restant en fonction assureront la gérance avec tous les pouvoirs ci-dessus conférés à la gérance, sauf décision contraire de l'associé unique.

## ARTICLE 14 : RÉMUNÉRATION

A titre de rémunération de leurs fonctions et en raison de leur responsabilité, le ou les gérants ont droit à une rémunération qui sera fixée par l'associé unique. Ladite rémunération pourra être fixe et/ou proportionnelle.

## TITRE IV
## DECISIONS DE L'ASSOCIE UNIQUE

## ARTICLE 15 : EPOQUE DES DÉCISIONS

L'associé unique peut prendre des décisions à toute époque. Mais, il doit être obligatoirement convoqué dans les six mois qui suivent la clôture de chaque exercice social, pour statuer sur les comptes ainsi que sur le rapport de gestion de la société.

## ARTICLE 16 : PROCÈS-VERBAUX

Toute décision de l'associé unique est constatée par un procès-verbal qui mentionne la date et le lieu de décisions avec l'indication des documents et rapports qui lui sont soumis ainsi que le projet du texte des décisions soumises à l'approbation dudit associé.

L'associé unique ne peut déléguer ses pouvoirs.

Les procès-verbaux sont établis et signés par l'associé unique. Ils sont consignés dans un registre spécial tenu au siège social, coté et paraphé par le greffier du Tribunal du lieu du siège de la société.

Les copies ou extraits des procès-verbaux des décisions de l'associé unique sont valablement certifiés conformes par un seul gérant. Au cours de la liquidation de la société, leur certification est valablement effectuée par un seul liquidateur.

## ARTICLE 17 : COMMISSAIRE AUX COMPTES

L'associé unique peut nommer un ou plusieurs commissaires aux comptes. Toutefois si le chiffre d'affaires de la société, à la clôture d'un exercice social, dépasse le montant de cinquante millions (50.000.000,00) de dirhams hors taxes, l'associé unique est tenu de désigner un commissaire aux comptes, au moins.

**TITRE V**
**EXERCICE SOCIAL - COMPTES SOCIAUX -**
**AFFECTATION ET REPARTITION DES RESULTATS**

## ARTICLE 18 : EXERCICE SOCIAL - COMPTES SOCIAUX

Chaque exercice social commence le 1$^{er}$ janvier et finit le 31 décembre.

Par exception, le premier exercice commencera le jour de l'immatriculation de la société au registre de commerce et se terminera le 31 décembre de la même année.

A la clôture de chaque exercice, la gérance dresse l'inventaire de la société ainsi que les états de synthèse et établit un rapport de gestion sur la situation de la société.

## ARTICLE 19 : REPARTITION DES BÉNÉFICES

Le produit de la société déduction faite de tous frais généraux, des charges sociales, de tous amortissements de l'actif social et de toutes provisions de toute nature constitue le résultat net.

## 19.1.    RÉSERVE LÉGALE

Sur les bénéfices nets, diminués éventuellement des pertes antérieures, il est prélevé cinq pour cent (5%) pour constituer le fonds de réserve légale.

Ce prélèvement cesse d'être obligatoire lorsque le fonds de réserve atteint une somme égale au cinquième du capital social; il reprend son cours lorsque, pour une cause quelconque, la réserve est descendue au-dessous de ce cinquième.

## 19.2.    DIVIDENDE

Le solde des bénéfices est attribué à l'associé unique sur décision de celui-ci.

Toutefois l'associé unique, par la décision approuvant les comptes d'un exercice, a la faculté de prélever sur les bénéfices de cet exercice les sommes qu'il juge convenables de fixer, soit pour être reportées à nouveau, soit pour être affectées à un ou plusieurs fonds de réserves généraux ou spéciaux.

## TITRE VI
## DISSOLUTION - LIQUIDATION - CONTESTATIONS

### ARTICLE 20 : DISSOLUTION ANTICIPÉE

Si du fait de pertes constatées dans les états de synthèse, la situation nette de la société devient inférieure au quart du capital social, l'associé unique décide, dans un délai de trois mois qui suivent l'approbation des comptes ayant fait apparaître cette perte, s'il y a lieu à dissolution anticipée de la société.

Si la dissolution de la société n'est pas prononcée, celle-ci est tenue, au plus tard à la clôture de l'exercice suivant celui au cours duquel la constatation des pertes est intervenue et sous réserve des dispositions de l'article 46 de la loi n° 5/96 de réduire son capital d'un montant au moins égal à celui des pertes qui n'ont pu être imputées sur les réserves, si, dans ce délai, le capital propre n'a pas été reconstitué à concurrence d'une valeur au moins égale au quart du capital social.

Dans les deux cas, la décision de l'associé unique est publiée dans un journal habilité à recevoir des annonces légales, déposée au greffe du tribunal du lieu du siège social et inscrite au registre du commerce.

A défaut par le ou les gérants ou par le ou les commissaires aux comptes, le cas échéant, de provoquer une décision ou si l'associé unique n'a pu délibérer valablement, tout intéressé peut demander au tribunal la dissolution de la société. Il en est de même si les dispositions de l'alinéa 2 ci-dessus n'ont pas été appliquées.

Les dispositions de cet article ne sont pas applicables lorsque la société est en redressement judiciaire.

### ARTICLE 21 : LIQUIDATION

La société est en liquidation dès l'instant de sa dissolution pour quelque cause que ce soit. La personnalité morale de la société subsiste, pour les besoins de la liquidation, jusqu'à la clôture de celle-ci. La dissolution de la société ne produit ses effets à l'égard des tiers qu'à compter de la date à laquelle elle est publiée au registre du commerce. La mention "société en liquidation" doit figurer sur tous les actes et documents émanant de la société.

L'associé unique conserve ses pouvoirs et règle le mode de liquidation, nomme un ou plusieurs liquidateurs et détermine leurs pouvoirs. La liquidation est effectuée conformément à la loi.

Après remboursement du montant des parts sociales, le boni de liquidation s'il existe est attribué à l'associé unique.

**ARTICLE 22 : CONTESTATIONS**

Toutes contestations qui peuvent s'élever pendant la durée de la société ou lors de sa dissolution, entre l'associé unique et la société concernant l'interprétation ou l'exécution des présents statuts sont soumises à la juridiction des tribunaux compétents du lieu du siège social.

**TITRE VII**
**DISPOSITIONS DIVERSES**

**ARTICLE 23 : FRAIS**

Tous les frais et honoraires des présents statuts, dépôts, publications, etc, et en général toutes dépenses qui auraient pu être engagées en vue de la constitution de la société, seront supportés par cette dernière et portés comme frais de premier établissement.

**ARTICLE 24 : DEPOT DES STATUTS**

Les statuts seront déposés au greffe du tribunal de commerce de Tanger.

**ARTICLE 25 : JOUISSANCE  DE LA PERSONNALITÉ MORALE**

La présente société ne jouira de la personnalité morale qu'à dater de son immatriculation au registre du commerce.

**ARTICLE 26 : POUVOIRS**

Tous pouvoirs sont donnés au porteur d'un original, d'une expédition, d'une copie ou d'un extrait des présents statuts pour accomplir les formalités prescrites par la loi, et notamment à l'effet de signer la déclaration de conformité.

Fait à [place of execution]

**L'ASSOCIE UNIQUE**

**La société AEGEAN INVESTMENTS SA**

**représentée par [name of the legal representative of Aegean Investments SA]**

## **Exhibit H-69**

**Reorganized Aegean Caribbean Holdings Inc. Amended Memorandum of Association**

# SAINT LUCIA

# THE INTERNATIONAL BUSINESS COMPANIES ACT, CAP. 12.14

# AMENDED AND RESTATED MEMORANDUM OF ASSOCIATION

## OF

## Aegean Caribbean Holdings Inc.
## International Business Company

1. The Name of the Company is **Aegean Caribbean Holdings Inc.**

2. The Registered Agent of the Company will be **PKF Corporate Services Ltd.**

3. The Registered Office of the Company will be located at the offices of

   **PKF Corporate Services Ltd., Adjodha Building, Laborie Street, Castries, St. Lucia.**

---

(1) The Company is established to engage in any act or activity that is not prohibited under any law for the time being in force in Saint Lucia.

(2) The Company shall have all such powers as are permitted by law for the time being in force in Saint Lucia, irrespective of corporate benefit, to perform all acts and engage in all activities necessary or conductive to the conduct, promotion or attainment of the object of the Company.

(3) The Company may not

    (a) carry on business with persons resident in Saint Lucia;

    (b) own an interest in real property situated in Saint Lucia, other than a lease referred to in paragraph (e) of sub-clause (4);

    (c) carry on banking business unless it is licensed to do so under the International Banks Act, Cap. 12.17;

    (d) carry on trust business as a Registered Trustee unless it is licensed to do so under the Registered Agent and Trustee Licensing Act, Cap. 12.12 and in accordance with the International Trusts Act, Cap.12.19;

    (e)   carry on the business of insurance or reinsurance business unless it is licensed to do so under the International Insurance Act, Cap. 12.15;

    (f)   carry on mutual fund business or the business of mutual fund administration unless it is licensed to do so under the International Mutual Funds Act, Cap.12.16; or

    (g)   carry on the business of international financial services representation as a Registered Agent unless it is licensed under the Registered Agent and Trustee Licensing Act, Cap. 12.12.

(4)   For purposes of paragraph (a) of subclause (3), an International Business Company shall not be treated as carrying on business with persons resident in Saint Lucia, if:

    (a)   it makes or maintains deposits with a person carrying on business within Saint Lucia;

    (b)   it makes or maintains professional contact with solicitors, barristers, accountants, book-keepers, trust companies, administration companies, investment advisers or other similar persons carrying on business within Saint Lucia;

    (c)   it prepares or maintains books and records within Saint Lucia;

    (d)   it holds, within Saint Lucia, meetings of its directors or members;

    (e)   it holds a lease of property for use as an office from which to communicate with members or where books and records of the Company are prepared or maintained;

    (f)   it holds shares, debt obligations or other securities in a company incorporated under the International Business Companies Act or under the Companies Act; or

    (g)   shares, debt obligations or other securities in the Company are owned by any person resident in Saint Lucia or by any company incorporated under the International Business Companies Act or under the Companies Act.

4.   Shares in the Company shall be issued in the currency of **United States Dollars.**

5.   The authorised capital of the Company is (Currency) **US$10,000.**

2

6.  The authorised capital is made up of one class of shares divided into 1,000 shares at no par value with one vote for each share.

7.  The designations, powers, preferences, rights, qualifications, limitations and restrictions of each class and series of shares that the Company is authorised to issue shall be fixed by resolution of directors, but the directors shall not allocate different rights as to voting, dividends, redemption or distributions on liquidation unless the Memorandum of Association shall have been amended to create separate classes of shares and all the aforesaid rights as to voting, dividends, redemption and distributions shall be identical in each separate class.

8.  If at any time the authorised capital is divided into different classes or series of shares, the rights attached to any class or series (unless otherwise provided by the terms of issue of the shares of that class or series) may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of not less than three-fourths of the issued shares of that class or series and of the holders of not less than three-fourths of the issued shares of any other class or series of shares which may be affected by such variation.

9.  The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking *pari passu* therewith.

10.  Shares in the Company shall only be issued as registered shares.

11.  Nonvoting shares.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting equity securities as in effect on the date of filing this Amended and Restated Memorandum of Association with the Registrar of International Business Companies; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For the purposes of this Clause 11, any class or series of equity securities that has only such voting rights as are mandated by the International Business Companies Act shall be deemed to be nonvoting for the purposes of the restrictions of this Clause 11.

12.  The Company may amend its Memorandum of Association and Articles of Association by a resolution of members or directors.

13.  The meanings of words in this Memorandum of Association are as defined in the Articles of Association annexed hereto.

3

We, **PKF Corporate Services Ltd.** hereby subscribe our names to this Amended and Restated Memorandum of Association the        day of                  , **2019.**


…………………………………………………..                ……………………….
      **PKF Corporate Services Ltd.**                            **Date**
      **Registered Agent**

4

## **Exhibit H-70**

**Reorganized Aegean Bunkering (Singapore) Pte. Ltd. A&R Constitution**

THE COMPANIES ACT, CAP. 50

———————————

PRIVATE COMPANY LIMITED BY SHARES

———————————

CONSTITUTION

of

AEGEAN BUNKERING (SINGAPORE) PTE. LTD.

———————————

1.    The name of the Company is "AEGEAN BUNKERING (SINGAPORE) PTE. LTD."

2.    The registered office of the company is situated in the Republic of Singapore.

3.    The liability of the members is limited.

4.    The share capital of the company is SGD [1 / 1 / 1 / 5,000,000].

5.    We, the persons whose names and occupations are set out in this Constitution, desire to form a company in pursuance of this Constitution and we each agree to take the number of shares in the capital of the company set out against our respective names.

| NAME, ADDRESS AND OCCUPATION OF SUBSCRIBER(S) | NUMBER OF SHARE(S) TAKEN BY SUBSCRIBER(S) |
|---|---|
| [TO BE INSERTED] | [TO BE INSERTED] |
| TOTAL NUMBER OF SHARE(S) TAKEN | [TO BE INSERTED] |

DATED THIS [MARCH __, 2019]

*Interpretation*

6.    (1) In this Constitution —

"Act" means the Companies Act (Cap. 50);

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"member" means a member of the company;

"Registrar" has the same meaning as in section 4(1) of the Act;

"seal" means the common seal of the company;

"secretary" means a secretary of the company appointed under section 171 of the Act.

(2) In this Constitution —

(a)    expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form; and

(b)    words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company.

*Share capital and variation of rights*

7.    (1) Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act and regulation 7(2A), shares in the company may be issued by the directors.

(2) Subject to regulation 7(2A), shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors determine.

(2A)  **Nonvoting Shares.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares with effect from the date of the special resolution approving this Amended and Restated Constitution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or removed in accordance with applicable law from time to time in effect.  For purposes of this regulation 7(2A), any class or series of shares that has only such voting rights as are mandated by the Act shall be deemed to be nonvoting for purposes of the restrictions of this regulation 7(2A).

8.    (1) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with —

(a)    the consent in writing of the holders of 75% of the issued shares of that class; or

3

(b)   the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that —

(a)   the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of the class; and

(b)   any holder of shares of the class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

9.   The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which ranks equally with the shares of that class.

10.   The company may on any issue of shares pay any brokerage that is permitted by law.

11.   (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise —

(a)   any equitable, contingent, future or partial interest in any share or unit of a share; or

(b)   any other rights in respect of any share or unit of share,

other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(*a*) or (*b*).

12.   (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate under the seal of the company in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders is sufficient delivery to all such holders.

***Lien***

13.   (1) The company has a first and paramount lien on —

(a)   every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b)   all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

4

(2)  The company's lien, if any, on a share extends to all dividends payable on the share.

(3)  The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

14.    (1)  Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2)  No sale may be made under paragraph (1) unless —

(a)      a sum in respect of which the lien exists is presently payable;

(b)      a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c)      a period of 14 days has expired after the giving of the notice in sub paragraph (b).

15.    (1)  To give effect to any sale of shares under regulation 14, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2)  Subject to regulations 25, 26 and 27, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3)  The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

16.    (1)  The proceeds of any sale of shares under regulation 14 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2)  Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

### *Calls on shares*

17.    (1)  The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a)      no call is payable at less than one month after the date fixed for the payment of the last preceding call;

(b)      at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2)  Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(*b*) the amount called on the member's shares.

(3)  The directors may revoke or postpone a call.

18.    (1)  A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

5

(2)  A call may be required to be paid by instalments.

19.    The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

20.    (1)  If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2)  The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

21.    (1)  Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2)  In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

22.    The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

23.    (1)  The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2)  Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

***Transfer of shares***

24.    (1)  Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2)  The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

25.    (1)  To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(*a*) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a)    the instrument of transfer;

(b)    a fee not exceeding $1 as the directors from time to time may require;

(c)    the certificate of the shares to which the instrument of transfer relates;

(d)    any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2)  Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 26, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 24.

6

26.  The directors may decline to lodge a notice of transfer of shares with the Registrar if —

(a)  the shares are not fully paid shares;

(b)  the directors do not approve of the transferee; or

(c)  the company has a lien on the shares.

27.  The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

***Transmission of shares***

28.  (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

29.  (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to —

(a)  be registered as holder of the share in the electronic register of members; or

(b)  nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 26 and 27 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of the member.

30.  (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as holder of the share in the electronic register of members, the person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer to that other person a transfer of the share.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by the member.

7

31.    (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

    (2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

### *Forfeiture of shares*

32.    If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on the member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

33.    The notice under regulation 32 must —

    (a)    name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

    (b)    state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

34.    (1)  If the requirements of a notice referred to in regulation 33 are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

    (2)  Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

35.    A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition, the forfeiture may be cancelled on any terms as the directors think fit.

36.    (1)  A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

    (2)  Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

37.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

38.    (1)  The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

8

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

39.    The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

### Conversion of shares into stock

40.    The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

41.    (1)  Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2)  The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

42.    (1)  Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

(2)  No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

43.    Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

### Alteration of capital

44.    The company may from time to time by ordinary resolution do any of the following:

(a)    consolidate and divide all or any of its share capital;

(b)    subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived;

(c)    cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

45.    (1)  Subject to any direction to the contrary that may be given by the company in general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices from the company of general meetings, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are

9

entitled.

(2)  The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3)  After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4)  The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

46.    The company may, by special resolution and with any consent required by law, reduce its share capital in any manner.

***General meeting***

47.    (1)  An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2)  All general meetings other than the annual general meetings are called extraordinary general meetings.

48.    (1)  An extraordinary general meeting may be requisitioned by —

(a)    any director, whenever the director thinks fit; or

(b)    any requisitionist as provided for by the Act.

(2)  Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

49.    (1)  Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2)  A notice of a general meeting must specify the following:

(a)    the place at which the general meeting is held;

(b)    the date and time of the general meeting;

(c)    in case of special business to be transacted at the general meeting, the general nature of that business.

50.    (1)  All business that is transacted at an extraordinary general meeting is special business.

(2)  All business that is transacted at an annual general meeting is special business, except —

(a)    the declaration of a dividend;

(b)    the consideration of the financial statements, the reports of the auditors and the statements of the directors;

10

(c)     the election of directors in the place of retiring directors; and

(d)     the appointment and fixing of the remuneration of the auditors.

***Proceedings at general meetings***

51.     (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Except as otherwise provided in this Constitution, 2 members present in person form a quorum.

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

52.     If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting —

(a)     in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b)     in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

53.     The chairman of a general meeting is —

(a)     where the board of directors has appointed a chairman amongst the directors, the chairman; or

(b)     where —

    (i)     the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

    (ii)    the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

    (iii)   the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting.

54.     (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

55.     (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded —

11

(a)    by the chairman;

(b)    by at least 3 members present in person or by proxy;

(c)    by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2)  Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3)  The demand for a poll may be withdrawn.

56.    (1)  Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2)  A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3)  The result of the poll is a resolution of the meeting at which the poll was demanded.

57.    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

58.    (1)  Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2)  On a show of hands every member or representative of a member who is present in person has one vote.

(3)  On a poll every member present in person or by proxy or by attorney or other duly authorised representative has one vote for each share the member holds.

59.    (1)  In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2)  For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

60.    A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of the member, and any such person may vote by proxy or attorney.

61.    No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

62.    (1)  No objection may be raised as to the qualification of any voter except at the meeting or

12

adjourned meeting at which the vote objected to is given or tendered.

(2) Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3) Every vote not disallowed at the meeting is valid for all purposes.

63. (1) The instrument appointing a proxy must be in writing, in the common or usual form and —

(a) where the appointer is a corporation or a limited liability partnership, either under seal or under the hand of an officer or attorney duly authorised; or

(b) in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2) A proxy may but need not be a member of the company.

(3) The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

64. Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:

> "I/We*, [name(s)], of [address(es)], being a member/members* of the abovenamed company, appoint [name] of [address], or failing him/her, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.
>
> Signed on [date].
>
> This form is to be used in favour of/against* the resolution.
>
> *Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

65. (1) The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a) the instrument appointing a proxy;

(b) the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2) For the purposes of paragraph (1), the time is —

(a) in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b) in any other case, not less than 72 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3) An instrument of proxy is not valid if paragraph (1) is not complied with.

66. (1) Subject to paragraph (2), a vote given in accordance with the terms of an instrument of

13

proxy or attorney is valid despite —

(a)    the previous death or mental disorder of the principal;

(b)    the revocation of the instrument or of the authority under which the instrument was executed; or

(c)    the transfer of the share in respect of which the instrument is given.

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

### *Directors: Appointment, etc.*

67.    (1)  At the first annual general meeting of the company, all the directors must retire from office.

(2)  At every annual general meeting subsequent to the first annual general meeting of the company, one-third of the directors for the time being, or, if their number is not 3 or a multiple of 3, then the number nearest one-third, must retire from office.

68.    A retiring director is eligible for re-election.

69.    The directors to retire in every year must be those who have been longest in office since their last election, but, as between persons who became directors on the same day, those to retire must (unless they otherwise agree among themselves) be determined by lot.

70.    (1)  The company at the meeting at which a director retires may fill the vacated office by electing a person to fill the vacated office.

(2)  If the company does not fill the vacated office, the retiring director is, if he or she offers himself or herself for re-election and is not disqualified under the Act from holding office as a director, treated as re-elected, unless —

(a)    at that meeting it is expressly resolved not to fill the vacated office; or

(b)    a resolution for the re-election of that director is put to that meeting and lost.

71.    The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors, and may also determine in what rotation the increased or reduced number is to go out of office.

72.    (1)  The directors have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

(2)  Any director appointed under paragraph (1) holds office only until the next annual general meeting, and is then eligible for re-election.

(3)  Any director appointed under paragraph (1) must not be taken into account in determining the directors who are to retire by rotation at the next annual general meeting.

73.    (1)  The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

14

(2)  The person appointed in place of the removed director is subject to retirement at the same time as if the person had become a director on the day on which the director in whose place the person is appointed was last elected a director.

74.    (1)  The remuneration of the directors is, from time to time, to be determined by the company in general meeting.

(2)  The remuneration of the directors is treated as accruing from day to day.

(3)  The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

75.    The shareholding qualification for directors may be fixed by the company in general meeting.

76.    The office of director becomes vacant if the director —

(a)    ceases to be a director by virtue of the Act;

(b)    becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c)    becomes prohibited from being a director by reason of any order made under the Act;

(d)    becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under —

(i)    section 148, 149, 149A, 154, 155, 155A or 155C of the Act;

(ii)    section 50 or 54 of the Banking Act (Cap. 19);

(iii)    section 47 of the Finance Companies Act (Cap. 108);

(iv)    section 57 of the Financial Advisers Act (Cap. 110);

(v)    section 31, 31A, 35ZJ or 41(2)(a)(ii) of the Insurance Act (Cap. 142);

(vi)    section 30AAI of the Monetary Authority of Singapore Act (Cap. 186);

(vii)    section 12A of the Money-changing and Remittance Businesses Act (Cap. 187);

(viii)    section 22 of the Payment Systems (Oversight) Act (Cap. 222A);

(ix)    section 44, 46Z, 81P, 81ZJ, 97 or 292A of the Securities and Futures Act (Cap. 289); or

(x)    section 14 of the Trust Companies Act (Cap. 336);

(e)    being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f)    becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

15

(g)     subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h)     for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i)     without the consent of the company in general meeting, holds any other office of profit under the company except that of managing director or manager; or

(j)     is directly or indirectly interested in any contract or proposed contract with the company and fails to declare the nature of his or her interest in manner required by the Act.

### *Powers and duties of directors*

77.     (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in general meeting.

78.     Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a)     borrow money;

(b)     mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital;

(c)     issue debentures and other securities whether outright or as security.

79.     The directors may exercise all the powers of the company in relation to any official seal for use outside Singapore and in relation to branch registers of debenture holders kept in any place outside Singapore.

80.     (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

81.     All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, by any 2 directors or in such other manner as the directors from time to time determine.

82.     (1) The directors must cause minutes to be made of all of the following matters:

(a)     all appointments of officers to be engaged in the management of the company's affairs;

16

(b)    names of directors present at all meetings of the company and of the directors;

(c)    all proceedings at all meetings of the company and of the directors.

(2)  The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

### *Proceedings of directors*

83.    (1)  The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2)  A director may at any time summon a meeting of the directors.

(3)  The secretary must, on the requisition of a director, summon a meeting of the directors.

84.    (1)  Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2)  In case of an equality of votes the chairman of the meeting has a second or casting vote.

85.    (1)  A director must not vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction.

(2)  If a director referred to in paragraph (1) does vote in respect of any transaction or proposed transaction referred to in that paragraph, the director's vote must not be counted.

86.    The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2.

87.    (1)  Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2)  If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

88.    (1)  The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2)  If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose one of their number to be chairman of the meeting.

89.    (1)  The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

17

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

90.    (1)  A committee may elect a chairman of its meetings.

(2)  If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose one of their number to be chairman of the meeting.

91.    (1)  A committee may meet and adjourn as it thinks proper.

(2)  Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

92.    All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that —

(a)    there was some defect in the appointment of any director or person acting as a director; or

(b)    the directors or person acting as a director or any of them were disqualified.

93.    (1)  A resolution in writing, signed by all the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2)  Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by one or more directors.

94.    Where the company has only one director, the director may pass a resolution by recording it and signing the record.

### *Managing directors*

95.    (1)  The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

(2)  A director appointed under paragraph (1) is not, while holding the office of managing director, subject to retirement by rotation or to be taken into account in determining the rotation of retirement of directors, but his or her appointment automatically determines if he or she ceases from any cause to be a director.

96.    A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by one or more of the following ways as the directors may determine:

18

(a)    salary;

(b)    commission;

(c)    participation in profits.

97.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

### *Alternate directors and substitute directors*

98.    (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

### *Associate directors*

99.    (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    does not have any right to attend or vote at any meeting of directors except by the invitation and with the consent of the directors.

### *Secretary*

100.    (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

19

(2)  Any secretary appointed under paragraph (1) may be removed by the directors.

*Seal*

101.  (1)  The directors must provide for the safe custody of the seal.

(2)  The seal must only be used by the authority of the directors or of a committee of the directors authorised by the directors to use the seal.

(3)  Every instrument to which the seal is affixed must be signed by a director and must be countersigned by the secretary or by a second director or by another person appointed by the directors for the purpose of countersigning the instrument to which the seal is affixed.

*Financial statements*

102.  (1)  The directors must —

(a)    cause proper accounting and other records to be kept;

(b)    distribute copies of financial statements and other documents as required by the Act; and

(c)    determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2)  No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

*Dividends and reserves*

103.  The company in general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

104.  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

105.  No dividend is to —

(a)    be paid otherwise than out of profits; or

(b)    bear interest against the company.

106.  (1)  The directors may, before recommending any dividend —

(a)    set aside out of the profits of the company sums as they think proper as reserves; or

(b)    carry forward any profits which they may think prudent not to divide, without placing the profits to reserve.

20

(2)  The reserves set aside under paragraph (1)(a) —

(a)    are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b)    may, pending any application under sub paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

107.    (1)  Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2)  For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3)  All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4)  If any share is issued on terms providing that it ranks for dividend as from a particular date, that share ranks for dividend accordingly.

108.    The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

109.    (1)  Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including —

(a)    paid-up shares of any other company;

(b)    debentures or debenture stock of any other company; or

(c)    any combination of any specific assets,

and the directors must give effect to the resolution.

(2)  Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a)    settle the distribution as they think expedient;

(b)    fix the value for distribution of the specific assets or any part of the specific assets;

(c)    determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d)    vest any specific assets in trustees as may seem expedient to the directors.

110.    (1)  Any dividend, interest, or other money payable in cash in respect of shares may be paid by

21

cheque or warrant sent through the post directed —

(a)    in the case of joint holders —

(i)    to the registered address of the joint holder who is first named on the electronic register of members; or

(ii)    to a person or to an address as the joint holders may in writing direct; or

(b)    in any other case —

(i)    to the registered address of the holder; or

(ii)    to a person or to an address as the holder may in writing direct.

(2)  Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3)  Any one of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

### *Capitalisation of profits*

111.    (1)  The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2)  The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a)    the capitalised amount must not be paid in cash;

(b)    the capitalised amount must be applied in or towards either or both of the following:

(i)    paying up any amounts for the time being unpaid on any shares held by the members respectively;

(ii)    paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

112.    (1)  Whenever a resolution under regulation 111(1) has been passed, the directors must —

(a)    make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b)    make all allotments and issues of fully paid shares or debentures, if any; and

(c)    do all acts and things required to give effect to the resolution.

(2)  The directors have full power to —

22

(a) make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b) authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing —

(i) for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii) for the payment up by the company on the member's behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

### *Notices*

113. (1) A notice may be given by the company to any member either personally or by sending it by post to the member —

(a) at the member's registered address; or

(b) if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2) Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3) Where a notice is sent by post, service of the notice is treated as effected —

(a) in the case of a notice of a meeting, on the day after the date of its posting; and

(b) in any other case, at the time at which the letter would be delivered in the ordinary course of post.

114. (1) A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2) Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

115. A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

116. (1) A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter

23

addressed to the persons by —

(a)   name;

(b)   the title of representatives of the deceased, or assignee of the bankrupt; or

(c)   any like description.

(2)  The notice referred to in paragraph (1) may be given —

(a)   at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b)   if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

117.  (1)  Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to —

(a)   every member;

(b)   every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c)   the auditor for the time being of the company.

(2)  No other person is entitled to receive notices of general meetings.

### *Winding up*

118.  (1)  If the company is wound up, the liquidator may, with the sanction of a special resolution of the company —

(a)   divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b)   set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c)   determine how the division of property is to be carried out as between the members or different classes of members; and

(d)   vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2)  No member is compelled to accept any shares or other securities on which there is any liability.

### *Indemnity*

119.  Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B(1)(*a*) or (*b*) of the Act) incurred by the

24

officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

120.    Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

**<u>Exhibit H-71</u>**

**Reorganized Milos Shipping (Pte.) Ltd. A&R Constitution**

THE COMPANIES ACT, CAP. 50

―――――――

PRIVATE COMPANY LIMITED BY SHARES

―――――――

CONSTITUTION

of

MILOS SHIPPING (PTE.) LTD.

―――――――

1.    The name of the Company is "MILOS SHIPPING (PTE.) LTD."

2.    The registered office of the company is situated in the Republic of Singapore.

3.    The liability of the members is limited.

4.    The share capital of the company is SGD [1 / 1 / 1 / 5,000,000].

5.    We, the persons whose names and occupations are set out in this Constitution, desire to form a company in pursuance of this Constitution and we each agree to take the number of shares in the capital of the company set out against our respective names.

| NAME, ADDRESS AND OCCUPATION OF SUBSCRIBER(S) | NUMBER OF SHARE(S) TAKEN BY SUBSCRIBER(S) |
|---|---|
| [TO BE INSERTED] | [TO BE INSERTED] |
| TOTAL NUMBER OF SHARE(S) TAKEN | [TO BE INSERTED] |

DATED THIS [MARCH __, 2019]

*Interpretation*

6.    (1)  In this Constitution —

"Act" means the Companies Act (Cap. 50);

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"member" means a member of the company;

"Registrar" has the same meaning as in section 4(1) of the Act;

"seal" means the common seal of the company;

"secretary" means a secretary of the company appointed under section 171 of the Act.

(2)  In this Constitution —

(a)    expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form; and

(b)    words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company.

*Share capital and variation of rights*

7.    (1)  Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act and regulation 7(2A), shares in the company may be issued by the directors.

(2)  Subject to regulation 7(2A), shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors determine.

(2A)  **Nonvoting Shares.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares with effect from the date of the special resolution approving this Amended and Restated Constitution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or removed in accordance with applicable law from time to time in effect.  For purposes of this regulation 7(2A), any class or series of shares that has only such voting rights as are mandated by the Act shall be deemed to be nonvoting for purposes of the restrictions of this regulation 7(2A).

8.    (1)  If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with —

(a)    the consent in writing of the holders of 75% of the issued shares of that class; or

3

(b)   the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that —

(a)   the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of the class; and

(b)   any holder of shares of the class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

9.   The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which ranks equally with the shares of that class.

10.   The company may on any issue of shares pay any brokerage that is permitted by law.

11.   (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise —

(a)   any equitable, contingent, future or partial interest in any share or unit of a share; or

(b)   any other rights in respect of any share or unit of share,

other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(*a*) or (*b*).

12.   (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate under the seal of the company in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders is sufficient delivery to all such holders.

### *Lien*

13.   (1) The company has a first and paramount lien on —

(a)   every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b)   all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

4

(2)  The company's lien, if any, on a share extends to all dividends payable on the share.

(3)  The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

14.    (1)  Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2)  No sale may be made under paragraph (1) unless —

(a)    a sum in respect of which the lien exists is presently payable;

(b)    a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c)    a period of 14 days has expired after the giving of the notice in sub paragraph (b).

15.    (1)  To give effect to any sale of shares under regulation 14, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2)  Subject to regulations 25, 26 and 27, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3)  The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

16.    (1)  The proceeds of any sale of shares under regulation 14 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2)  Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

### *Calls on shares*

17.    (1)  The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a)    no call is payable at less than one month after the date fixed for the payment of the last preceding call;

(b)    at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2)  Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(*b*) the amount called on the member's shares.

(3)  The directors may revoke or postpone a call.

18.    (1)  A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

5

(2)  A call may be required to be paid by instalments.

19.    The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

20.    (1)  If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2)  The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

21.    (1)  Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2)  In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

22.    The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

23.    (1)  The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2)  Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

***Transfer of shares***

24.    (1)  Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2)  The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

25.    (1)  To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(*a*) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a)    the instrument of transfer;

(b)    a fee not exceeding $1 as the directors from time to time may require;

(c)    the certificate of the shares to which the instrument of transfer relates;

(d)    any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2)  Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 26, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 24.

6

26.  The directors may decline to lodge a notice of transfer of shares with the Registrar if —

    (a)  the shares are not fully paid shares;

    (b)  the directors do not approve of the transferee; or

    (c)  the company has a lien on the shares.

27.  The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

*Transmission of shares*

28.  (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

29.  (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to —

    (a)  be registered as holder of the share in the electronic register of members; or

    (b)  nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 26 and 27 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of the member.

30.  (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as holder of the share in the electronic register of members, the person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer to that other person a transfer of the share.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by the member.

7

31.    (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

### *Forfeiture of shares*

32.    If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on the member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

33.    The notice under regulation 32 must —

(a)    name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b)    state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

34.    (1) If the requirements of a notice referred to in regulation 33 are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

35.    A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition, the forfeiture may be cancelled on any terms as the directors think fit.

36.    (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2) Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

37.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

38.    (1) The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

8

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

39. The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

### *Conversion of shares into stock*

40. The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

41. (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

42. (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

43. Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

### *Alteration of capital*

44. The company may from time to time by ordinary resolution do any of the following:

(a)    consolidate and divide all or any of its share capital;

(b)    subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived;

(c)    cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

45. (1) Subject to any direction to the contrary that may be given by the company in general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices from the company of general meetings, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are

9

entitled.

(2) The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3) After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4) The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

46.    The company may, by special resolution and with any consent required by law, reduce its share capital in any manner.

### *General meeting*

47.    (1) An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2) All general meetings other than the annual general meetings are called extraordinary general meetings.

48.    (1) An extraordinary general meeting may be requisitioned by —

(a)    any director, whenever the director thinks fit; or

(b)    any requisitionist as provided for by the Act.

(2) Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

49.    (1) Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2) A notice of a general meeting must specify the following:

(a)    the place at which the general meeting is held;

(b)    the date and time of the general meeting;

(c)    in case of special business to be transacted at the general meeting, the general nature of that business.

50.    (1) All business that is transacted at an extraordinary general meeting is special business.

(2) All business that is transacted at an annual general meeting is special business, except —

(a)    the declaration of a dividend;

(b)    the consideration of the financial statements, the reports of the auditors and the statements of the directors;

10

(c)    the election of directors in the place of retiring directors; and

(d)    the appointment and fixing of the remuneration of the auditors.

### *Proceedings at general meetings*

51.    (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Except as otherwise provided in this Constitution, 2 members present in person form a quorum.

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

52.    If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting —

(a)    in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b)    in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

53.    The chairman of a general meeting is —

(a)    where the board of directors has appointed a chairman amongst the directors, the chairman; or

(b)    where —

(i)    the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii)    the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

(iii)    the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting.

54.    (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

55.    (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded —

11

(a)    by the chairman;

(b)    by at least 3 members present in person or by proxy;

(c)    by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d)    by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2)  Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3)  The demand for a poll may be withdrawn.

56.    (1)  Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2)  A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3)  The result of the poll is a resolution of the meeting at which the poll was demanded.

57.    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

58.    (1)  Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2)  On a show of hands every member or representative of a member who is present in person has one vote.

(3)  On a poll every member present in person or by proxy or by attorney or other duly authorised representative has one vote for each share the member holds.

59.    (1)  In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2)  For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

60.    A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of the member, and any such person may vote by proxy or attorney.

61.    No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

62.    (1)  No objection may be raised as to the qualification of any voter except at the meeting or

12

adjourned meeting at which the vote objected to is given or tendered.

(2) Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3) Every vote not disallowed at the meeting is valid for all purposes.

63.  (1) The instrument appointing a proxy must be in writing, in the common or usual form and —

(a)  where the appointer is a corporation or a limited liability partnership, either under seal or under the hand of an officer or attorney duly authorised; or

(b)  in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2) A proxy may but need not be a member of the company.

(3) The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

64.  Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:

> "I/We*, [name(s)], of [address(es)], being a member/members* of the abovenamed company, appoint [name] of [address], or failing him/her, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.
>
> Signed on [date].
>
> This form is to be used in favour of/against* the resolution.
>
> *Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

65.  (1) The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a)  the instrument appointing a proxy;

(b)  the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2) For the purposes of paragraph (1), the time is —

(a)  in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b)  in any other case, not less than 72 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3) An instrument of proxy is not valid if paragraph (1) is not complied with.

66.  (1) Subject to paragraph (2), a vote given in accordance with the terms of an instrument of

13

proxy or attorney is valid despite —

(a)     the previous death or mental disorder of the principal;

(b)     the revocation of the instrument or of the authority under which the instrument was executed; or

(c)     the transfer of the share in respect of which the instrument is given.

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

### *Directors: Appointment, etc.*

67.     (1) At the first annual general meeting of the company, all the directors must retire from office.

(2) At every annual general meeting subsequent to the first annual general meeting of the company, one-third of the directors for the time being, or, if their number is not 3 or a multiple of 3, then the number nearest one-third, must retire from office.

68.     A retiring director is eligible for re-election.

69.     The directors to retire in every year must be those who have been longest in office since their last election, but, as between persons who became directors on the same day, those to retire must (unless they otherwise agree among themselves) be determined by lot.

70.     (1)  The company at the meeting at which a director retires may fill the vacated office by electing a person to fill the vacated office.

(2)  If the company does not fill the vacated office, the retiring director is, if he or she offers himself or herself for re-election and is not disqualified under the Act from holding office as a director, treated as re-elected, unless —

(a)     at that meeting it is expressly resolved not to fill the vacated office; or

(b)     a resolution for the re-election of that director is put to that meeting and lost.

71.     The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors, and may also determine in what rotation the increased or reduced number is to go out of office.

72.     (1)  The directors have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

(2)  Any director appointed under paragraph (1) holds office only until the next annual general meeting, and is then eligible for re-election.

(3)  Any director appointed under paragraph (1) must not be taken into account in determining the directors who are to retire by rotation at the next annual general meeting.

73.     (1)  The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

14

(2)  The person appointed in place of the removed director is subject to retirement at the same time as if the person had become a director on the day on which the director in whose place the person is appointed was last elected a director.

74.    (1)  The remuneration of the directors is, from time to time, to be determined by the company in general meeting.

(2)  The remuneration of the directors is treated as accruing from day to day.

(3)  The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

75.    The shareholding qualification for directors may be fixed by the company in general meeting.

76.    The office of director becomes vacant if the director —

(a)    ceases to be a director by virtue of the Act;

(b)    becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c)    becomes prohibited from being a director by reason of any order made under the Act;

(d)    becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under —

(i)      section 148, 149, 149A, 154, 155, 155A or 155C of the Act;

(ii)     section 50 or 54 of the Banking Act (Cap. 19);

(iii)    section 47 of the Finance Companies Act (Cap. 108);

(iv)    section 57 of the Financial Advisers Act (Cap. 110);

(v)     section 31, 31A, 35ZJ or 41(2)(a)(ii) of the Insurance Act (Cap. 142);

(vi)    section 30AAI of the Monetary Authority of Singapore Act (Cap. 186);

(vii)   section 12A of the Money-changing and Remittance Businesses Act (Cap. 187);

(viii)  section 22 of the Payment Systems (Oversight) Act (Cap. 222A);

(ix)    section 44, 46Z, 81P, 81ZJ, 97 or 292A of the Securities and Futures Act (Cap. 289); or

(x)     section 14 of the Trust Companies Act (Cap. 336);

(e)    being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f)    becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

15

(g)    subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h)    for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i)    without the consent of the company in general meeting, holds any other office of profit under the company except that of managing director or manager; or

(j)    is directly or indirectly interested in any contract or proposed contract with the company and fails to declare the nature of his or her interest in manner required by the Act.

### *Powers and duties of directors*

77.    (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in general meeting.

78.    Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a)    borrow money;

(b)    mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital;

(c)    issue debentures and other securities whether outright or as security.

79.    The directors may exercise all the powers of the company in relation to any official seal for use outside Singapore and in relation to branch registers of debenture holders kept in any place outside Singapore.

80.    (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

81.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, by any 2 directors or in such other manner as the directors from time to time determine.

82.    (1) The directors must cause minutes to be made of all of the following matters:

(a)    all appointments of officers to be engaged in the management of the company's affairs;

16

(b)    names of directors present at all meetings of the company and of the directors;

(c)    all proceedings at all meetings of the company and of the directors.

(2)  The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

### *Proceedings of directors*

83.    (1)  The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2)  A director may at any time summon a meeting of the directors.

(3)  The secretary must, on the requisition of a director, summon a meeting of the directors.

84.    (1)  Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2)  In case of an equality of votes the chairman of the meeting has a second or casting vote.

85.    (1)  A director must not vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction.

(2)  If a director referred to in paragraph (1) does vote in respect of any transaction or proposed transaction referred to in that paragraph, the director's vote must not be counted.

86.    The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2.

87.    (1)  Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2)  If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

88.    (1)  The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2)  If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose one of their number to be chairman of the meeting.

89.    (1)  The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

17

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

90.    (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose one of their number to be chairman of the meeting.

91.    (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

92.    All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that —

(a)    there was some defect in the appointment of any director or person acting as a director; or

(b)    the directors or person acting as a director or any of them were disqualified.

93.    (1) A resolution in writing, signed by all the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by one or more directors.

94.    Where the company has only one director, the director may pass a resolution by recording it and signing the record.

### *Managing directors*

95.    (1) The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

(2) A director appointed under paragraph (1) is not, while holding the office of managing director, subject to retirement by rotation or to be taken into account in determining the rotation of retirement of directors, but his or her appointment automatically determines if he or she ceases from any cause to be a director.

96.    A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by one or more of the following ways as the directors may determine:

18

(a)    salary;

(b)    commission;

(c)    participation in profits.

97.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

### Alternate directors and substitute directors

98.    (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

### Associate directors

99.    (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    does not have any right to attend or vote at any meeting of directors except by the invitation and with the consent of the directors.

### Secretary

100.    (1)  The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

19

(2)  Any secretary appointed under paragraph (1) may be removed by the directors.

*Seal*

101.  (1)  The directors must provide for the safe custody of the seal.

(2)  The seal must only be used by the authority of the directors or of a committee of the directors authorised by the directors to use the seal.

(3)  Every instrument to which the seal is affixed must be signed by a director and must be countersigned by the secretary or by a second director or by another person appointed by the directors for the purpose of countersigning the instrument to which the seal is affixed.

*Financial statements*

102.  (1)  The directors must —

(a)    cause proper accounting and other records to be kept;

(b)    distribute copies of financial statements and other documents as required by the Act; and

(c)    determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2)  No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

*Dividends and reserves*

103.  The company in general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

104.  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

105.  No dividend is to —

(a)    be paid otherwise than out of profits; or

(b)    bear interest against the company.

106.  (1)  The directors may, before recommending any dividend —

(a)    set aside out of the profits of the company sums as they think proper as reserves; or

(b)    carry forward any profits which they may think prudent not to divide, without placing the profits to reserve.

20

(2)  The reserves set aside under paragraph (1)(a) —

(a)    are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b)    may, pending any application under sub paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

107.  (1)  Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2)  For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3)  All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4)  If any share is issued on terms providing that it ranks for dividend as from a particular date, that share ranks for dividend accordingly.

108.  The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

109.  (1)  Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including —

(a)    paid-up shares of any other company;

(b)    debentures or debenture stock of any other company; or

(c)    any combination of any specific assets,

and the directors must give effect to the resolution.

(2)  Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a)    settle the distribution as they think expedient;

(b)    fix the value for distribution of the specific assets or any part of the specific assets;

(c)    determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d)    vest any specific assets in trustees as may seem expedient to the directors.

110.  (1)  Any dividend, interest, or other money payable in cash in respect of shares may be paid by

21

cheque or warrant sent through the post directed —

(a)    in the case of joint holders —

  (i)    to the registered address of the joint holder who is first named on the electronic register of members; or

  (ii)    to a person or to an address as the joint holders may in writing direct; or

(b)    in any other case —

  (i)    to the registered address of the holder; or

  (ii)    to a person or to an address as the holder may in writing direct.

(2)  Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3)  Any one of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

### *Capitalisation of profits*

111.  (1)  The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2)  The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a)    the capitalised amount must not be paid in cash;

(b)    the capitalised amount must be applied in or towards either or both of the following:

  (i)    paying up any amounts for the time being unpaid on any shares held by the members respectively;

  (ii)    paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

112.  (1)  Whenever a resolution under regulation 111(1) has been passed, the directors must —

(a)    make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b)    make all allotments and issues of fully paid shares or debentures, if any; and

(c)    do all acts and things required to give effect to the resolution.

(2)  The directors have full power to —

22

(a)   make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b)   authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing —

(i)   for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii)  for the payment up by the company on the member's behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

### *Notices*

113.  (1)  A notice may be given by the company to any member either personally or by sending it by post to the member —

(a)   at the member's registered address; or

(b)   if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2)  Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3)  Where a notice is sent by post, service of the notice is treated as effected —

(a)   in the case of a notice of a meeting, on the day after the date of its posting; and

(b)   in any other case, at the time at which the letter would be delivered in the ordinary course of post.

114.  (1)  A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2)  Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

115.  A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

116.  (1)  A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter

23

addressed to the persons by —

(a)    name;

(b)    the title of representatives of the deceased, or assignee of the bankrupt; or

(c)    any like description.

(2)  The notice referred to in paragraph (1) may be given —

(a)    at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b)    if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

117.  (1)  Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to —

(a)    every member;

(b)    every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c)    the auditor for the time being of the company.

(2)  No other person is entitled to receive notices of general meetings.

### Winding up

118.  (1)  If the company is wound up, the liquidator may, with the sanction of a special resolution of the company —

(a)    divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b)    set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c)    determine how the division of property is to be carried out as between the members or different classes of members; and

(d)    vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2)  No member is compelled to accept any shares or other securities on which there is any liability.

### Indemnity

119.  Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B(1)(*a*) or (*b*) of the Act) incurred by the

24

officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

120.   Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

## Exhibit H-72

**Reorganized Serifos Shipping (Pte.) Ltd. A&R Constitution**

THE COMPANIES ACT, CAP. 50

——————————

PRIVATE COMPANY LIMITED BY SHARES

——————————

CONSTITUTION

of

SERIFOS SHIPPING (PTE.) LTD.

——————————

1.  The name of the Company is "SERIFOS SHIPPING (PTE.) LTD."

2.  The registered office of the company is situated in the Republic of Singapore.

3.  The liability of the members is limited.

4.  The share capital of the company is SGD [1 / 1 / 1 / 5,000,000].

5.  We, the persons whose names and occupations are set out in this Constitution, desire to form a company in pursuance of this Constitution and we each agree to take the number of shares in the capital of the company set out against our respective names.

| NAME, ADDRESS AND OCCUPATION OF SUBSCRIBER(S) | NUMBER OF SHARE(S) TAKEN BY SUBSCRIBER(S) |
|---|---|
| [TO BE INSERTED] | [TO BE INSERTED] |
| TOTAL NUMBER OF SHARE(S) TAKEN | [TO BE INSERTED] |

DATED THIS [MARCH __, 2019]

*Interpretation*

6.    (1)  In this Constitution —

"Act" means the Companies Act (Cap. 50);

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"member" means a member of the company;

"Registrar" has the same meaning as in section 4(1) of the Act;

"seal" means the common seal of the company;

"secretary" means a secretary of the company appointed under section 171 of the Act.

(2)  In this Constitution —

(a)    expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form; and

(b)    words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company.

*Share capital and variation of rights*

7.    (1)  Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act and regulation 7(2A), shares in the company may be issued by the directors.

(2)  Subject to regulation 7(2A), shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors determine.

(2A)  **Nonvoting Shares.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares with effect from the date of the special resolution approving this Amended and Restated Constitution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or removed in accordance with applicable law from time to time in effect.  For purposes of this regulation 7(2A), any class or series of shares that has only such voting rights as are mandated by the Act shall be deemed to be nonvoting for purposes of the restrictions of this regulation 7(2A).

8.    (1)  If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with —

(a)    the consent in writing of the holders of 75% of the issued shares of that class; or

3

(b)    the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that —

(a)    the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of the class; and

(b)    any holder of shares of the class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

9.    The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which ranks equally with the shares of that class.

10.    The company may on any issue of shares pay any brokerage that is permitted by law.

11.    (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise —

(a)    any equitable, contingent, future or partial interest in any share or unit of a share; or

(b)    any other rights in respect of any share or unit of share,

other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(*a*) or (*b*).

12.    (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate under the seal of the company in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders is sufficient delivery to all such holders.

### *Lien*

13.    (1) The company has a first and paramount lien on —

(a)    every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b)    all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

4

(2)  The company's lien, if any, on a share extends to all dividends payable on the share.

(3)  The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

14.    (1)  Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2)  No sale may be made under paragraph (1) unless —

(a)      a sum in respect of which the lien exists is presently payable;

(b)      a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c)      a period of 14 days has expired after the giving of the notice in sub paragraph (b).

15.    (1)  To give effect to any sale of shares under regulation 14, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2)  Subject to regulations 25, 26 and 27, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3)  The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

16.    (1)  The proceeds of any sale of shares under regulation 14 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2)  Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

### *Calls on shares*

17.    (1)  The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a)      no call is payable at less than one month after the date fixed for the payment of the last preceding call;

(b)      at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2)  Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(*b*) the amount called on the member's shares.

(3)  The directors may revoke or postpone a call.

18.    (1)  A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

5

(2) A call may be required to be paid by instalments.

19. The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

20. (1) If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2) The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

21. (1) Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2) In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

22. The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

23. (1) The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2) Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

***Transfer of shares***

24. (1) Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2) The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

25. (1) To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(*a*) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a) the instrument of transfer;

(b) a fee not exceeding $1 as the directors from time to time may require;

(c) the certificate of the shares to which the instrument of transfer relates;

(d) any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2) Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 26, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 24.

6

26.   The directors may decline to lodge a notice of transfer of shares with the Registrar if —

(a)   the shares are not fully paid shares;

(b)   the directors do not approve of the transferee; or

(c)   the company has a lien on the shares.

27.   The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

### *Transmission of shares*

28.   (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

29.   (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to —

(a)   be registered as holder of the share in the electronic register of members; or

(b)   nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 26 and 27 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of the member.

30.   (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as holder of the share in the electronic register of members, the person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer to that other person a transfer of the share.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by the member.

7

31.    (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

### *Forfeiture of shares*

32.    If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on the member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

33.    The notice under regulation 32 must —

(a)    name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b)    state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

34.    (1) If the requirements of a notice referred to in regulation 33 are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

35.    A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition, the forfeiture may be cancelled on any terms as the directors think fit.

36.    (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2) Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

37.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

38.    (1) The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

8

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

39. The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

### *Conversion of shares into stock*

40. The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

41. (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

42. (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

43. Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

### *Alteration of capital*

44. The company may from time to time by ordinary resolution do any of the following:

(a) consolidate and divide all or any of its share capital;

(b) subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived;

(c) cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

45. (1) Subject to any direction to the contrary that may be given by the company in general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices from the company of general meetings, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are

9

entitled.

(2) The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3) After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4) The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

46. The company may, by special resolution and with any consent required by law, reduce its share capital in any manner.

### *General meeting*

47. (1) An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2) All general meetings other than the annual general meetings are called extraordinary general meetings.

48. (1) An extraordinary general meeting may be requisitioned by —

(a) any director, whenever the director thinks fit; or

(b) any requisitionist as provided for by the Act.

(2) Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

49. (1) Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2) A notice of a general meeting must specify the following:

(a) the place at which the general meeting is held;

(b) the date and time of the general meeting;

(c) in case of special business to be transacted at the general meeting, the general nature of that business.

50. (1) All business that is transacted at an extraordinary general meeting is special business.

(2) All business that is transacted at an annual general meeting is special business, except —

(a) the declaration of a dividend;

(b) the consideration of the financial statements, the reports of the auditors and the statements of the directors;

10

(c)   the election of directors in the place of retiring directors; and

(d)   the appointment and fixing of the remuneration of the auditors.

***Proceedings at general meetings***

51.   (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Except as otherwise provided in this Constitution, 2 members present in person form a quorum.

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

52.   If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting —

(a)   in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b)   in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

53.   The chairman of a general meeting is —

(a)   where the board of directors has appointed a chairman amongst the directors, the chairman; or

(b)   where —

(i)    the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii)   the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

(iii)  the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting.

54.   (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

55.   (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded —

11

(a)   by the chairman;

(b)   by at least 3 members present in person or by proxy;

(c)   by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d)   by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2)  Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3)  The demand for a poll may be withdrawn.

56.    (1)  Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2)  A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3)  The result of the poll is a resolution of the meeting at which the poll was demanded.

57.    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

58.    (1)  Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2)  On a show of hands every member or representative of a member who is present in person has one vote.

(3)  On a poll every member present in person or by proxy or by attorney or other duly authorised representative has one vote for each share the member holds.

59.    (1)  In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2)  For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

60.    A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of the member, and any such person may vote by proxy or attorney.

61.    No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

62.    (1)  No objection may be raised as to the qualification of any voter except at the meeting or

12

adjourned meeting at which the vote objected to is given or tendered.

(2)  Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3)  Every vote not disallowed at the meeting is valid for all purposes.

63.  (1)  The instrument appointing a proxy must be in writing, in the common or usual form and —

(a)  where the appointer is a corporation or a limited liability partnership, either under seal or under the hand of an officer or attorney duly authorised; or

(b)  in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2)  A proxy may but need not be a member of the company.

(3)  The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

64.  Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:

> "I/We*, [name(s)], of [address(es)], being a member/members* of the abovenamed company, appoint [name] of [address], or failing him/her, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.
>
> Signed on [date].
>
> This form is to be used in favour of/against* the resolution.
>
> *Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

65.  (1)  The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a)  the instrument appointing a proxy;

(b)  the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2)  For the purposes of paragraph (1), the time is —

(a)  in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b)  in any other case, not less than 72 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3)  An instrument of proxy is not valid if paragraph (1) is not complied with.

66.  (1)  Subject to paragraph (2), a vote given in accordance with the terms of an instrument of

13

proxy or attorney is valid despite —

(a)    the previous death or mental disorder of the principal;

(b)    the revocation of the instrument or of the authority under which the instrument was executed; or

(c)    the transfer of the share in respect of which the instrument is given.

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

### *Directors: Appointment, etc.*

67.    (1)  At the first annual general meeting of the company, all the directors must retire from office.

(2)  At every annual general meeting subsequent to the first annual general meeting of the company, one-third of the directors for the time being, or, if their number is not 3 or a multiple of 3, then the number nearest one-third, must retire from office.

68.    A retiring director is eligible for re-election.

69.    The directors to retire in every year must be those who have been longest in office since their last election, but, as between persons who became directors on the same day, those to retire must (unless they otherwise agree among themselves) be determined by lot.

70.    (1)  The company at the meeting at which a director retires may fill the vacated office by electing a person to fill the vacated office.

(2)  If the company does not fill the vacated office, the retiring director is, if he or she offers himself or herself for re-election and is not disqualified under the Act from holding office as a director, treated as re-elected, unless —

(a)    at that meeting it is expressly resolved not to fill the vacated office; or

(b)    a resolution for the re-election of that director is put to that meeting and lost.

71.    The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors, and may also determine in what rotation the increased or reduced number is to go out of office.

72.    (1)  The directors have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

(2)  Any director appointed under paragraph (1) holds office only until the next annual general meeting, and is then eligible for re-election.

(3)  Any director appointed under paragraph (1) must not be taken into account in determining the directors who are to retire by rotation at the next annual general meeting.

73.    (1)  The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

14

(2)  The person appointed in place of the removed director is subject to retirement at the same time as if the person had become a director on the day on which the director in whose place the person is appointed was last elected a director.

74.  (1)  The remuneration of the directors is, from time to time, to be determined by the company in general meeting.

(2)  The remuneration of the directors is treated as accruing from day to day.

(3)  The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

75.  The shareholding qualification for directors may be fixed by the company in general meeting.

76.  The office of director becomes vacant if the director —

(a)  ceases to be a director by virtue of the Act;

(b)  becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c)  becomes prohibited from being a director by reason of any order made under the Act;

(d)  becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under —

(i)  section 148, 149, 149A, 154, 155, 155A or 155C of the Act;

(ii)  section 50 or 54 of the Banking Act (Cap. 19);

(iii)  section 47 of the Finance Companies Act (Cap. 108);

(iv)  section 57 of the Financial Advisers Act (Cap. 110);

(v)  section 31, 31A, 35ZJ or 41(2)(a)(ii) of the Insurance Act (Cap. 142);

(vi)  section 30AAI of the Monetary Authority of Singapore Act (Cap. 186);

(vii)  section 12A of the Money-changing and Remittance Businesses Act (Cap. 187);

(viii)  section 22 of the Payment Systems (Oversight) Act (Cap. 222A);

(ix)  section 44, 46Z, 81P, 81ZJ, 97 or 292A of the Securities and Futures Act (Cap. 289); or

(x)  section 14 of the Trust Companies Act (Cap. 336);

(e)  being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f)  becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

15

(g)    subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h)    for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i)    without the consent of the company in general meeting, holds any other office of profit under the company except that of managing director or manager; or

(j)    is directly or indirectly interested in any contract or proposed contract with the company and fails to declare the nature of his or her interest in manner required by the Act.

### *Powers and duties of directors*

77.    (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in general meeting.

78.    Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a)    borrow money;

(b)    mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital;

(c)    issue debentures and other securities whether outright or as security.

79.    The directors may exercise all the powers of the company in relation to any official seal for use outside Singapore and in relation to branch registers of debenture holders kept in any place outside Singapore.

80.    (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

81.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, by any 2 directors or in such other manner as the directors from time to time determine.

82.    (1) The directors must cause minutes to be made of all of the following matters:

(a)    all appointments of officers to be engaged in the management of the company's affairs;

16

(b)     names of directors present at all meetings of the company and of the directors;

(c)     all proceedings at all meetings of the company and of the directors.

(2)  The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

### *Proceedings of directors*

83.    (1)  The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2)  A director may at any time summon a meeting of the directors.

(3)  The secretary must, on the requisition of a director, summon a meeting of the directors.

84.    (1)  Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2)  In case of an equality of votes the chairman of the meeting has a second or casting vote.

85.    (1)  A director must not vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction.

(2)  If a director referred to in paragraph (1) does vote in respect of any transaction or proposed transaction referred to in that paragraph, the director's vote must not be counted.

86.    The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2.

87.    (1)  Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2)  If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

88.    (1)  The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2)  If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose one of their number to be chairman of the meeting.

89.    (1)  The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

17

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

90. (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose one of their number to be chairman of the meeting.

91. (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

92. All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that —

(a) there was some defect in the appointment of any director or person acting as a director; or

(b) the directors or person acting as a director or any of them were disqualified.

93. (1) A resolution in writing, signed by all the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by one or more directors.

94. Where the company has only one director, the director may pass a resolution by recording it and signing the record.

### *Managing directors*

95. (1) The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

(2) A director appointed under paragraph (1) is not, while holding the office of managing director, subject to retirement by rotation or to be taken into account in determining the rotation of retirement of directors, but his or her appointment automatically determines if he or she ceases from any cause to be a director.

96. A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by one or more of the following ways as the directors may determine:

18

(a)    salary;

(b)    commission;

(c)    participation in profits.

97.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

### Alternate directors and substitute directors

98.    (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

### Associate directors

99.    (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    does not have any right to attend or vote at any meeting of directors except by the invitation and with the consent of the directors.

### Secretary

100.    (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

19

(2)  Any secretary appointed under paragraph (1) may be removed by the directors.

### *Seal*

101.  (1)  The directors must provide for the safe custody of the seal.

(2)  The seal must only be used by the authority of the directors or of a committee of the directors authorised by the directors to use the seal.

(3)  Every instrument to which the seal is affixed must be signed by a director and must be countersigned by the secretary or by a second director or by another person appointed by the directors for the purpose of countersigning the instrument to which the seal is affixed.

### *Financial statements*

102.  (1)  The directors must —

(a)    cause proper accounting and other records to be kept;

(b)    distribute copies of financial statements and other documents as required by the Act; and

(c)    determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2)  No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

### *Dividends and reserves*

103.  The company in general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

104.  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

105.  No dividend is to —

(a)    be paid otherwise than out of profits; or

(b)    bear interest against the company.

106.  (1)  The directors may, before recommending any dividend —

(a)    set aside out of the profits of the company sums as they think proper as reserves; or

(b)    carry forward any profits which they may think prudent not to divide, without placing the profits to reserve.

20

(2)  The reserves set aside under paragraph (1)(a) —

(a)    are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b)    may, pending any application under sub paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

107.    (1)  Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2)  For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3)  All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4)  If any share is issued on terms providing that it ranks for dividend as from a particular date, that share ranks for dividend accordingly.

108.    The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

109.    (1)  Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including —

(a)    paid-up shares of any other company;

(b)    debentures or debenture stock of any other company; or

(c)    any combination of any specific assets,

and the directors must give effect to the resolution.

(2)  Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a)    settle the distribution as they think expedient;

(b)    fix the value for distribution of the specific assets or any part of the specific assets;

(c)    determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d)    vest any specific assets in trustees as may seem expedient to the directors.

110.    (1)  Any dividend, interest, or other money payable in cash in respect of shares may be paid by

21

cheque or warrant sent through the post directed —

(a)    in the case of joint holders —

(i)    to the registered address of the joint holder who is first named on the electronic register of members; or

(ii)    to a person or to an address as the joint holders may in writing direct; or

(b)    in any other case —

(i)    to the registered address of the holder; or

(ii)    to a person or to an address as the holder may in writing direct.

(2)  Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3)  Any one of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

### *Capitalisation of profits*

111.    (1)  The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2)  The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a)    the capitalised amount must not be paid in cash;

(b)    the capitalised amount must be applied in or towards either or both of the following:

(i)    paying up any amounts for the time being unpaid on any shares held by the members respectively;

(ii)    paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

112.    (1)  Whenever a resolution under regulation 111(1) has been passed, the directors must —

(a)    make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b)    make all allotments and issues of fully paid shares or debentures, if any; and

(c)    do all acts and things required to give effect to the resolution.

(2)  The directors have full power to —

22

(a)  make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b)  authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing —

(i)  for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii)  for the payment up by the company on the member's behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

### *Notices*

113.  (1)  A notice may be given by the company to any member either personally or by sending it by post to the member —

(a)  at the member's registered address; or

(b)  if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2)  Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3)  Where a notice is sent by post, service of the notice is treated as effected —

(a)  in the case of a notice of a meeting, on the day after the date of its posting; and

(b)  in any other case, at the time at which the letter would be delivered in the ordinary course of post.

114.  (1)  A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2)  Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

115.  A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

116.  (1)  A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter

23

addressed to the persons by —

(a)    name;

(b)    the title of representatives of the deceased, or assignee of the bankrupt; or

(c)    any like description.

(2)  The notice referred to in paragraph (1) may be given —

(a)    at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b)    if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

117.  (1)  Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to —

(a)    every member;

(b)    every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c)    the auditor for the time being of the company.

(2)  No other person is entitled to receive notices of general meetings.

*Winding up*

118.  (1)  If the company is wound up, the liquidator may, with the sanction of a special resolution of the company —

(a)    divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b)    set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c)    determine how the division of property is to be carried out as between the members or different classes of members; and

(d)    vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2)  No member is compelled to accept any shares or other securities on which there is any liability.

*Indemnity*

119.  Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B(1)(*a*) or (*b*) of the Act) incurred by the

24

officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

120.   Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

**Exhibit H-73**

**Reorganized Tilos Shipping (Pte.) Ltd. A&R Constitution**

THE COMPANIES ACT, CAP. 50

––––––––––––––

PRIVATE COMPANY LIMITED BY SHARES

––––––––––––––

CONSTITUTION

of

TILOS SHIPPING (PTE.) LTD.

––––––––––––––

1.	The name of the Company is "TILOS SHIPPING (PTE.) LTD."

2.	The registered office of the company is situated in the Republic of Singapore.

3.	The liability of the members is limited.

4.	The share capital of the company is SGD [1 / 1 / 1 / 5,000,000].

5.	We, the persons whose names and occupations are set out in this Constitution, desire to form a company in pursuance of this Constitution and we each agree to take the number of shares in the capital of the company set out against our respective names.

| NAME, ADDRESS AND OCCUPATION OF SUBSCRIBER(S) | NUMBER OF SHARE(S) TAKEN BY SUBSCRIBER(S) |
|---|---|
| [TO BE INSERTED] | [TO BE INSERTED] |
| TOTAL NUMBER OF SHARE(S) TAKEN | [TO BE INSERTED] |

DATED THIS [MARCH __, 2019]

*Interpretation*

6.    (1)  In this Constitution —

"Act" means the Companies Act (Cap. 50);

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"member" means a member of the company;

"Registrar" has the same meaning as in section 4(1) of the Act;

"seal" means the common seal of the company;

"secretary" means a secretary of the company appointed under section 171 of the Act.

(2)  In this Constitution —

(a)    expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form; and

(b)    words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company.

*Share capital and variation of rights*

7.    (1)  Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act and regulation 7(2A), shares in the company may be issued by the directors.

(2)  Subject to regulation 7(2A), shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors determine.

(2A)  **Nonvoting Shares.** To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), the Company shall not issue any class or series of nonvoting shares with effect from the date of the special resolution approving this Amended and Restated Constitution; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or removed in accordance with applicable law from time to time in effect.  For purposes of this regulation 7(2A), any class or series of shares that has only such voting rights as are mandated by the Act shall be deemed to be nonvoting for purposes of the restrictions of this regulation 7(2A).

8.    (1)  If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with —

(a)    the consent in writing of the holders of 75% of the issued shares of that class; or

3

(b)    the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that —

(a)    the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of the class; and

(b)    any holder of shares of the class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

9.    The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which ranks equally with the shares of that class.

10.    The company may on any issue of shares pay any brokerage that is permitted by law.

11.    (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise —

(a)    any equitable, contingent, future or partial interest in any share or unit of a share; or

(b)    any other rights in respect of any share or unit of share,

other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(*a*) or (*b*).

12.    (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate under the seal of the company in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders is sufficient delivery to all such holders.

### *Lien*

13.    (1) The company has a first and paramount lien on —

(a)    every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b)    all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

4

(2)  The company's lien, if any, on a share extends to all dividends payable on the share.

(3)  The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

14.    (1)  Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2)  No sale may be made under paragraph (1) unless —

(a)      a sum in respect of which the lien exists is presently payable;

(b)      a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c)      a period of 14 days has expired after the giving of the notice in sub paragraph (b).

15.    (1)  To give effect to any sale of shares under regulation 14, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2)  Subject to regulations 25, 26 and 27, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3)  The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

16.    (1)  The proceeds of any sale of shares under regulation 14 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2)  Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

### Calls on shares

17.    (1)  The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a)      no call is payable at less than one month after the date fixed for the payment of the last preceding call;

(b)      at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2)  Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(*b*) the amount called on the member's shares.

(3)  The directors may revoke or postpone a call.

18.    (1)  A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

5

(2)  A call may be required to be paid by instalments.

19.    The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

20.    (1)  If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2)  The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

21.    (1)  Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2)  In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

22.    The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

23.    (1)  The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2)  Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

### *Transfer of shares*

24.    (1)  Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2)  The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

25.    (1)  To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(*a*) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a)    the instrument of transfer;

(b)    a fee not exceeding $1 as the directors from time to time may require;

(c)    the certificate of the shares to which the instrument of transfer relates;

(d)    any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2)  Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 26, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 24.

6

26.   The directors may decline to lodge a notice of transfer of shares with the Registrar if —

(a)   the shares are not fully paid shares;

(b)   the directors do not approve of the transferee; or

(c)   the company has a lien on the shares.

27.   The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

*Transmission of shares*

28.   (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

29.   (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to —

(a)   be registered as holder of the share in the electronic register of members; or

(b)   nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 26 and 27 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of the member.

30.   (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as holder of the share in the electronic register of members, the person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer to that other person a transfer of the share.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by the member.

7

31.    (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

### *Forfeiture of shares*

32.    If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on the member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

33.    The notice under regulation 32 must —

(a)    name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b)    state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

34.    (1)  If the requirements of a notice referred to in regulation 33 are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

35.    A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition, the forfeiture may be cancelled on any terms as the directors think fit.

36.    (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2)  Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

37.    A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

38.    (1)  The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

8

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

39.   The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

### *Conversion of shares into stock*

40.   The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

41.   (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

42.   (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

43.   Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

### *Alteration of capital*

44.   The company may from time to time by ordinary resolution do any of the following:

(a)   consolidate and divide all or any of its share capital;

(b)   subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived;

(c)   cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

45.   (1) Subject to any direction to the contrary that may be given by the company in general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices from the company of general meetings, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are

9

entitled.

(2)  The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3)  After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4)  The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

46.     The company may, by special resolution and with any consent required by law, reduce its share capital in any manner.

### *General meeting*

47.     (1)  An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2)  All general meetings other than the annual general meetings are called extraordinary general meetings.

48.     (1)  An extraordinary general meeting may be requisitioned by —

(a)     any director, whenever the director thinks fit; or

(b)     any requisitionist as provided for by the Act.

(2)  Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

49.     (1)  Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2)  A notice of a general meeting must specify the following:

(a)     the place at which the general meeting is held;

(b)     the date and time of the general meeting;

(c)     in case of special business to be transacted at the general meeting, the general nature of that business.

50.     (1)  All business that is transacted at an extraordinary general meeting is special business.

(2)  All business that is transacted at an annual general meeting is special business, except —

(a)     the declaration of a dividend;

(b)     the consideration of the financial statements, the reports of the auditors and the statements of the directors;

10

(c)    the election of directors in the place of retiring directors; and

(d)    the appointment and fixing of the remuneration of the auditors.

***Proceedings at general meetings***

51.    (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Except as otherwise provided in this Constitution, 2 members present in person form a quorum.

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

52.    If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting —

(a)    in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b)    in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

53.    The chairman of a general meeting is —

(a)    where the board of directors has appointed a chairman amongst the directors, the chairman; or

(b)    where —

(i)    the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii)    the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

(iii)    the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting.

54.    (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

55.    (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded —

11

(a)   by the chairman;

(b)   by at least 3 members present in person or by proxy;

(c)   by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d)   by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2)  Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3)  The demand for a poll may be withdrawn.

56.   (1)  Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2)  A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3)  The result of the poll is a resolution of the meeting at which the poll was demanded.

57.   In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

58.   (1)  Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2)  On a show of hands every member or representative of a member who is present in person has one vote.

(3)  On a poll every member present in person or by proxy or by attorney or other duly authorised representative has one vote for each share the member holds.

59.   (1)  In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2)  For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

60.   A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of the member, and any such person may vote by proxy or attorney.

61.   No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

62.   (1)  No objection may be raised as to the qualification of any voter except at the meeting or

12

adjourned meeting at which the vote objected to is given or tendered.

(2)  Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3)  Every vote not disallowed at the meeting is valid for all purposes.

63.    (1)  The instrument appointing a proxy must be in writing, in the common or usual form and —

(a)    where the appointer is a corporation or a limited liability partnership, either under seal or under the hand of an officer or attorney duly authorised; or

(b)    in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2)  A proxy may but need not be a member of the company.

(3)  The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

64.    Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:

> "I/We*, [name(s)], of [address(es)], being a member/members* of the abovenamed company, appoint [name] of [address], or failing him/her, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.
>
> Signed on [date].
>
> This form is to be used in favour of/against* the resolution.
>
> *Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

65.    (1)  The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a)    the instrument appointing a proxy;

(b)    the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2)  For the purposes of paragraph (1), the time is —

(a)    in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b)    in any other case, not less than 72 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3)  An instrument of proxy is not valid if paragraph (1) is not complied with.

66.    (1)  Subject to paragraph (2), a vote given in accordance with the terms of an instrument of

13

proxy or attorney is valid despite —

(a)    the previous death or mental disorder of the principal;

(b)    the revocation of the instrument or of the authority under which the instrument was executed; or

(c)    the transfer of the share in respect of which the instrument is given.

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

### *Directors: Appointment, etc.*

67.    (1)  At the first annual general meeting of the company, all the directors must retire from office.

(2)  At every annual general meeting subsequent to the first annual general meeting of the company, one-third of the directors for the time being, or, if their number is not 3 or a multiple of 3, then the number nearest one-third, must retire from office.

68.    A retiring director is eligible for re-election.

69.    The directors to retire in every year must be those who have been longest in office since their last election, but, as between persons who became directors on the same day, those to retire must (unless they otherwise agree among themselves) be determined by lot.

70.    (1)  The company at the meeting at which a director retires may fill the vacated office by electing a person to fill the vacated office.

(2)  If the company does not fill the vacated office, the retiring director is, if he or she offers himself or herself for re-election and is not disqualified under the Act from holding office as a director, treated as re-elected, unless —

(a)    at that meeting it is expressly resolved not to fill the vacated office; or

(b)    a resolution for the re-election of that director is put to that meeting and lost.

71.    The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors, and may also determine in what rotation the increased or reduced number is to go out of office.

72.    (1)  The directors have power at any time, and from time to time, to appoint any person to be a director, either to fill a casual vacancy or as an addition to the existing directors, but the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

(2)  Any director appointed under paragraph (1) holds office only until the next annual general meeting, and is then eligible for re-election.

(3)  Any director appointed under paragraph (1) must not be taken into account in determining the directors who are to retire by rotation at the next annual general meeting.

73.    (1)  The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

14

(2)  The person appointed in place of the removed director is subject to retirement at the same time as if the person had become a director on the day on which the director in whose place the person is appointed was last elected a director.

74.  (1)  The remuneration of the directors is, from time to time, to be determined by the company in general meeting.

(2)  The remuneration of the directors is treated as accruing from day to day.

(3)  The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

75.  The shareholding qualification for directors may be fixed by the company in general meeting.

76.  The office of director becomes vacant if the director —

(a)  ceases to be a director by virtue of the Act;

(b)  becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c)  becomes prohibited from being a director by reason of any order made under the Act;

(d)  becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under —

(i)  section 148, 149, 149A, 154, 155, 155A or 155C of the Act;

(ii)  section 50 or 54 of the Banking Act (Cap. 19);

(iii)  section 47 of the Finance Companies Act (Cap. 108);

(iv)  section 57 of the Financial Advisers Act (Cap. 110);

(v)  section 31, 31A, 35ZJ or 41(2)(a)(ii) of the Insurance Act (Cap. 142);

(vi)  section 30AAI of the Monetary Authority of Singapore Act (Cap. 186);

(vii)  section 12A of the Money-changing and Remittance Businesses Act (Cap. 187);

(viii)  section 22 of the Payment Systems (Oversight) Act (Cap. 222A);

(ix)  section 44, 46Z, 81P, 81ZJ, 97 or 292A of the Securities and Futures Act (Cap. 289); or

(x)  section 14 of the Trust Companies Act (Cap. 336);

(e)  being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f)  becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

15

(g)    subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h)    for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i)    without the consent of the company in general meeting, holds any other office of profit under the company except that of managing director or manager; or

(j)    is directly or indirectly interested in any contract or proposed contract with the company and fails to declare the nature of his or her interest in manner required by the Act.

### Powers and duties of directors

77.    (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in general meeting.

78.    Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a)    borrow money;

(b)    mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital;

(c)    issue debentures and other securities whether outright or as security.

79.    The directors may exercise all the powers of the company in relation to any official seal for use outside Singapore and in relation to branch registers of debenture holders kept in any place outside Singapore.

80.    (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

81.    All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, by any 2 directors or in such other manner as the directors from time to time determine.

82.    (1) The directors must cause minutes to be made of all of the following matters:

(a)    all appointments of officers to be engaged in the management of the company's affairs;

16

(b)    names of directors present at all meetings of the company and of the directors;

(c)    all proceedings at all meetings of the company and of the directors.

(2)  The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

### *Proceedings of directors*

83.    (1)  The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2)  A director may at any time summon a meeting of the directors.

(3)  The secretary must, on the requisition of a director, summon a meeting of the directors.

84.    (1)  Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2)  In case of an equality of votes the chairman of the meeting has a second or casting vote.

85.    (1)  A director must not vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction.

(2)  If a director referred to in paragraph (1) does vote in respect of any transaction or proposed transaction referred to in that paragraph, the director's vote must not be counted.

86.    The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2.

87.    (1)  Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2)  If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

88.    (1)  The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2)  If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose one of their number to be chairman of the meeting.

89.    (1)  The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

17

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

90.    (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose one of their number to be chairman of the meeting.

91.    (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

92.    All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that —

(a)    there was some defect in the appointment of any director or person acting as a director; or

(b)    the directors or person acting as a director or any of them were disqualified.

93.    (1) A resolution in writing, signed by all the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by one or more directors.

94.    Where the company has only one director, the director may pass a resolution by recording it and signing the record.

*Managing directors*

95.    (1) The directors may from time to time appoint one or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

(2) A director appointed under paragraph (1) is not, while holding the office of managing director, subject to retirement by rotation or to be taken into account in determining the rotation of retirement of directors, but his or her appointment automatically determines if he or she ceases from any cause to be a director.

96.    A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by one or more of the following ways as the directors may determine:

18

(a)    salary;

(b)    commission;

(c)    participation in profits.

97.    The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

### *Alternate directors and substitute directors*

98.    (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

### *Associate directors*

99.    (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director —

(a)    is not required to hold any shares to qualify him or her for appointment; and

(b)    does not have any right to attend or vote at any meeting of directors except by the invitation and with the consent of the directors.

### *Secretary*

100.    (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

19

(2)  Any secretary appointed under paragraph (1) may be removed by the directors.

***Seal***

101.  (1)  The directors must provide for the safe custody of the seal.

(2)  The seal must only be used by the authority of the directors or of a committee of the directors authorised by the directors to use the seal.

(3)  Every instrument to which the seal is affixed must be signed by a director and must be countersigned by the secretary or by a second director or by another person appointed by the directors for the purpose of countersigning the instrument to which the seal is affixed.

***Financial statements***

102.  (1)  The directors must —

(a)    cause proper accounting and other records to be kept;

(b)    distribute copies of financial statements and other documents as required by the Act; and

(c)    determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2)  No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

***Dividends and reserves***

103.  The company in general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

104.  The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

105.  No dividend is to —

(a)    be paid otherwise than out of profits; or

(b)    bear interest against the company.

106.  (1)  The directors may, before recommending any dividend —

(a)    set aside out of the profits of the company sums as they think proper as reserves; or

(b)    carry forward any profits which they may think prudent not to divide, without placing the profits to reserve.

20

(2)  The reserves set aside under paragraph (1)(a) —

(a)    are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b)    may, pending any application under sub paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

107.  (1)  Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2)  For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3)  All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4)  If any share is issued on terms providing that it ranks for dividend as from a particular date, that share ranks for dividend accordingly.

108.  The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

109.  (1)  Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including —

(a)    paid-up shares of any other company;

(b)    debentures or debenture stock of any other company; or

(c)    any combination of any specific assets,

and the directors must give effect to the resolution.

(2)  Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a)    settle the distribution as they think expedient;

(b)    fix the value for distribution of the specific assets or any part of the specific assets;

(c)    determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d)    vest any specific assets in trustees as may seem expedient to the directors.

110.  (1)  Any dividend, interest, or other money payable in cash in respect of shares may be paid by

21

cheque or warrant sent through the post directed —

(a)    in the case of joint holders —

(i)    to the registered address of the joint holder who is first named on the electronic register of members; or

(ii)    to a person or to an address as the joint holders may in writing direct; or

(b)    in any other case —

(i)    to the registered address of the holder; or

(ii)    to a person or to an address as the holder may in writing direct.

(2)  Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3)  Any one of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

### *Capitalisation of profits*

111.  (1)  The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2)  The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a)    the capitalised amount must not be paid in cash;

(b)    the capitalised amount must be applied in or towards either or both of the following:

(i)    paying up any amounts for the time being unpaid on any shares held by the members respectively;

(ii)    paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

112.  (1)  Whenever a resolution under regulation 111(1) has been passed, the directors must —

(a)    make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b)    make all allotments and issues of fully paid shares or debentures, if any; and

(c)    do all acts and things required to give effect to the resolution.

(2)  The directors have full power to —

22

(a) make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b) authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing —

(i) for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii) for the payment up by the company on the member's behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

### *Notices*

113. (1)  A notice may be given by the company to any member either personally or by sending it by post to the member —

(a) at the member's registered address; or

(b) if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2)  Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3)  Where a notice is sent by post, service of the notice is treated as effected —

(a) in the case of a notice of a meeting, on the day after the date of its posting; and

(b) in any other case, at the time at which the letter would be delivered in the ordinary course of post.

114. (1)  A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2)  Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

115.  A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

116. (1)  A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter

23

addressed to the persons by —

(a)    name;

(b)    the title of representatives of the deceased, or assignee of the bankrupt; or

(c)    any like description.

(2)  The notice referred to in paragraph (1) may be given —

(a)    at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b)    if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

117.  (1)  Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to —

(a)    every member;

(b)    every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c)    the auditor for the time being of the company.

(2)  No other person is entitled to receive notices of general meetings.

### Winding up

118.  (1)  If the company is wound up, the liquidator may, with the sanction of a special resolution of the company —

(a)    divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b)    set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c)    determine how the division of property is to be carried out as between the members or different classes of members; and

(d)    vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2)  No member is compelled to accept any shares or other securities on which there is any liability.

### Indemnity

119.  Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B(1)(*a*) or (*b*) of the Act) incurred by the

24

officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

120.  Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

## **Exhibit H-74**

**Reorganized Aegean Bunkering Combustibles Las Palmas, SAU Shareholder Resolution**

**Acta**
**de consignación de decisiones del**
**Accionista Único de la entidad**
**Aegean Bunkering Combustibles**
**Las Palmas, S.A.U.**

**Minutes**
**of the resolutions of the Sole**
**Shareholder of**
**Aegean Bunkering Combustibles**
**Las Palmas, S.A.U.**

En Las Palmas de Gran Canaria, a ____ de _____ de 2019.

In Las Palmas de Gran Canaria, on ___ _____ 2019.

Hallándose debidamente representada la sociedad Ampni Holding Company Limited, accionista único (el "**Accionista Único**") de Aegean Bunkering Combustibles Las Palmas, S.A.U. (la "**Sociedad**"), decide ejercitar las competencias de la Junta General de la Sociedad, conforme al artículo 15 de la Ley de Sociedades de Capital, adoptando las siguientes

Being duly represented, the company Ampni Holding Company Limited, the sole shareholder (the "**Sole Shareholder**") of Aegean Bunkering Combustibles Las Palmas, S.A.U. (the "**Company**"), exercising the powers and authority of the General Meeting of Shareholders of the Company in accordance with section 15 of the Spanish Companies Act ("Ley de Sociedades de Capital"), adopted the following:

**Decisiones**

**Resolutions**

**Primera.- Introducción de un nuevo artículo 5 bis de los Estatutos Sociales de la Sociedad**

**First.- Introduction of a new article 5 bis of the Articles of Association of the Company**

El Accionista Único y la Sociedad se encuentran sujetos al procedimiento concursal en curso en Estados Unidos, en particular conforme al Capítulo 11 del Código de Bancarrota de los Estados Unidos (*United States Bankruptcy Code*) (el "**Código de Bancarrota de EEUU**"), relativo a la reestructuración de deudores. La Sociedad es una entidad deudora en el marco de dicho proceso.

The Sole Shareholder and the Company are subject to ongoing bankruptcy proceedings in the United States, in particular pursuant to Chapter 11 of the United States Bankruptcy Code (the "**US Bankruptcy Code**"), concerning reorganization of debtors. The Company is a debtor in such proceedings.

En particular, la Sociedad está sujeta a lo dispuesto en la Sección 1123, apartado (a) (6), del Título 11 del

In particular, the Company is subject to the provisions set out in Section 1123, paragraph (a) (6), of Title 11

Código de Bancarrota de EEUU (la "**Sección 1123**"), que establece que, sin perjuicio de lo previsto bajo cualquier otra legislación concursal aplicable, el convenio o plan de reestructuración (*reorganization plan*) debe establecer la inclusión en los estatutos del deudor, si el deudor es una sociedad, de una cláusula que prohíba la emisión de valores sin derecho a voto.

of the US Bankruptcy Code ("Section **1123**"), which foresees that notwithstanding any otherwise applicable non-bankruptcy law, a reorganization plan shall provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities.

Con el fin de dar cumplimiento a lo dispuesto en la citada Sección 1123, se acuerda crear e incorporar como nuevo artículo 5 bis de los Estatutos Sociales de la Sociedad, la siguiente disposición relativa a la prohibición de emitir acciones sin derecho de voto, cuyo tenor literal será el siguiente:

With the purpose of complying with Section 1123, it is agreed to create and incorporate as a new article 5 bis of the Articles of Association of the Company, a provision regarding the prohibition of issuing shares without voting rights, which shall read as follows:

*"Artículo 5° bis.- Acciones sin voto*

*"Article 5 bis.- Non-voting shares*

*Se prohíbe expresamente la emisión de acciones sin derecho de voto, tal y como estas se regulan en los artículos 98 y siguientes de la Ley de Sociedades de Capital."*

*It is expressly forbidden to issue shares without voting rights, as such shares are regulated in articles 98 and subsequent of the Spanish Companies' Act."*

El Accionista Único deja constancia a los efectos oportunos de que: (i) el nuevo artículo transcrito deberá permanecer en vigor solamente en tanto que la citada Sección 1123 continúe siendo aplicable a la Sociedad, y, en consecuencia, (ii) procederá a su modificación y/o eliminación de los Estatutos Sociales tan pronto como la Sociedad deje de estar sujeta a la Sección 1123, y/o si ello resultara obligatorio en virtud de la normativa aplicable y en vigor en cada momento.

The Sole Shareholder states, for any relevant purposes, that: (i) the new article set out above shall remain in force and effect only for so long as Section 1123 is in effect and applicable to the Company, and therefore (ii) shall amend and/or remove it from the Articles as soon as the Company ceases to be subject to Section 1123, and/or if otherwise mandatory in accordance with applicable law in effect from time to time.

**Segunda. - Delegación de facultades**

Facultar al administrador único, para que, en nombre y representación de la Sociedad, comparezca ante Notario de su elección con el objeto de otorgar la correspondiente escritura de elevación a público de los presentes acuerdos, pudiendo incluso (i) aclarar o subsanar cualesquiera de los extremos incluidos en la presente Acta; (ii) otorgar los documentos de subsanación, complementarios o aclaratorios que, en su caso, procedan hasta obtener la inscripción de los precedentes acuerdos en el Registro Mercantil; o (iii) solicitar, en su caso, del Registrador Mercantil la inscripción parcial de los acuerdos adoptados, si el mismo no accediera a su inscripción total.

**Y para que así conste,** se extiende la presente Acta bajo la firma del / de los representante(s) legal(es) del Accionista Único.

El Accionista Único

_____

Nombre:
Cargo:

_____

Nombre:
Cargo:

**Representante(s) legal(es) de AMPNI HOLDING CO. LIMITED**

**Second.- Delegation of Powers**

To authorize the sole director, so that he may, on behalf of and representing the Company, appear before the notary public of his choice for the purpose of executing the corresponding deed to notarise the resolutions above, with authority to (i) clarify or correct any of the terms set forth in these Minutes, (ii) grant such supplementary or clarifying deeds of rectification as may be required to place the foregoing resolutions on record with the Commercial Registry, or (iii) request, where necessary, the Registrar of the Commercial Registry to register the resolutions adopted in part, if such Registrar were opposed to registration of the foregoing in its entirety.

**In witness whereof,** these Minutes are executed by the legal representative(s) of the Sole Shareholder.

The Sole Shareholder

_____

Name:
Title:

_____

Name:
Title:

**Legal representative(s) of AMPNI HOLDING CO. LIMITED**

**Exhibit H-75**

**Reorganized Aegean Bunkering (Trinidad) Ltd Articles of Amendment**

FORM 5

REPUBLIC OF TRINIDAD AND TOBAGO

THE COMPANIES ACT, 1995

*(Sections 37 and 217)*

**ARTICLES OF AMENDMENT**

| | |
|---|---|
| 1. | Name of Company. **Aegean Bunkering (Trinidad) Ltd.** |
| 2. | Company No. **A 3728(95)** |

3.   The articles of the above named company are amended as follows:

Item 10 of the Articles of Incorporation is hereby amended by inserting the following:

"**Nonvoting Stock**.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"), Aegean Bunkering (Trinidad) Ltd (the Company) shall not issue any class or series of nonvoting equity securities as in effect on the date of filing this Articles of Amendment with the Registrar of Companies of Trinidad & Tobago provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Item 10, any class or series of equity securities that has only such voting rights as are mandated by the Companies Act, 1995 of Trinidad & Tobago shall be deemed to be nonvoting for purposes of the restrictions of this Item 10."

| Date | Name and Title | Signature |
|---|---|---|
| **, 2019** | **DIRECTOR** | |

THE COMPANIES ACT, 1995

**ARTICLES OF AMENDMENT**

FORM 5

INSTRUCTIONS

*Format*:

        Documents required to be sent to the Registrar pursuant to the Act must conform to regulation 3 of the Regulations under the Act.

*General*:

(a)    Any change in the Articles of the company must be made in accordance with section 37 or 217 of the Act.  If an amendment is to change a corporate name, the new name must comply with section 493 of the Act and with regulations 6 and 7 of the Regulations.  In the case of an amendment involving a change of name, a copy of the Request for Name Search and Name Reservation (Form 25) should be attached.

(b)    Each amendment must correspond to the appropriate provisions of the Articles being amended, e.g. sections, subsections, clauses, etc.

(c)    A director or authorized officer shall sign the Articles.

(d)    Articles of Amendment designating a series of shares shall be accompanied by a copy of the directors' resolution authorizing the issue of a series of shares under section 37 of the Act.

    The resolution may be attached as a schedule in accordance with regulation 3(5) of the Regulations.

(e)    Articles of Amendment except Articles referred to in (d) above, shall be accompanied by a copy of the authorizing special resolution required under sections 214 to 217 of the Act.  The resolution may be attached as a schedule in accordance with regulation 3(5) of the Regulations.

*Other Notices*:

        The Articles must be accompanied by Notice of Registered Office (Form 4) or Notice of Directors (Form 8) if there has been a change in registered office or a change of Directors.

        Completed documents, in duplicate, and the prescribed fees are to be filed at the office of the Registrar and one set of the duplicate originals would be returned to the company or its representative with the endorsement "Registered" and the date of registration.

**<u>Exhibit H-76</u>**

**Newco Articles of Incorporation**

# ARTICLES OF INCORPORATION

## OF

## [NEWCO]

## PURSUANT TO THE MARSHALL ISLANDS BUSINESS CORPORATIONS ACT

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Marshall Islands Business Corporations Act, does hereby make, subscribe, acknowledge and file with the Registrar of Corporations this instrument for that purpose, as follows:

A.      The name of the Corporation shall be:

[NEWCO]

B.      The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Marshall Islands Business Corporations Act, and without in any way limiting the generality of the foregoing, the Corporation shall have the power:

(1)      To carry on the business of an investment holding company or corporation and for such purpose to purchase or otherwise acquire, underwrite, hold, pledge, turn to account in any manner, sell, distribute, or otherwise dispose of and generally to deal in shares, stocks, bonds, debentures, notes, evidences of indebtedness, warrants, rights, certificates, receipts or any other instruments or interest in the nature of securities created or issued by any person, partnership, firm, corporation, company, association, or other business organizations, foreign or domestic, or by any domestic or foreign governmental, municipal or other public authority, and exercise as holder or owner of any such securities all rights, powers and privileges in respect thereof; to do any and all acts and things for the preservation, protection, improvement, and enhancement in value of any such securities and to aid by loan, subsidy, guaranty or otherwise those issuing, creating or responsible for any such securities, to acquire or become interested in any such securities by original subscription, underwriting, loan, participation in syndicates or otherwise, and irrespective of whether such securities be fully paid or subject to future payments; to make payments thereon as called for or in advance of calls or otherwise and to underwrite or subscribe for the same conditionally or otherwise and either with a view to resale or investment or for any other lawful purpose; and in connection therewith or otherwise to acquire and hold membership in or otherwise secure trading privileges on any board of trade, exchange or other similar institution where any securities are dealt in and to comply with the rules of any such institution; as used herein the term "securities" shall include bonds, debentures, notes, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts or any other instruments or interests in the nature of securities of any kind whatsoever which a corporation organized under the Marshall Islands Business Corporations Act is legally permitted to acquire or deal in, by whomsoever issued or created; the term "person" shall include any person, partnership, firm, corporation, company, association or other business organization, domestic or foreign; and the term "public authority" shall include any domestic or foreign governmental, municipal or other public authority.

(2)    To purchase or otherwise acquire, hold, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal property and real property of every kind, character and description whatsoever, and wheresoever situated, either as principal or as factor or broker, or as commercial, sales, business or financial agent or representative, general or special, or, to the extent permitted by the laws of the Marshall Islands, in any other capacity whatsoever for the account of any domestic or foreign person or public authority, and in connection therewith or otherwise to acquire trading privileges on any board of trade, exchange or similar institution where any such products or commodities or personal or real property are dealt in, and to comply with the rules of any such institution.

(3)    To borrow or raise money and contract debts, when necessary, for the transaction of its business or for the exercise of its corporate rights, privileges or franchise or for any other lawful purpose of its incorporation; to draw, make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures, and other instruments and evidences of indebtedness either secured by mortgage, pledge, deed of trust or otherwise, or unsecured.

(4)    To acquire, and take over as a going concern and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith to acquire the goodwill and all or any assets, and to assume or otherwise provide for all or any of the liabilities of any such business.

(5)    To cause to be formed, merged, reorganized or liquidated, and to promote, take charge of, in any way permitted by law, the formation, merger, reorganization or liquidation of any person, firm or corporation in the Republic of the Marshall Islands or abroad.

(6)    To lend or advance money to or for the account of any other person, firm or corporation and also to guarantee, endorse or give security for any promissory notes, bonds, or other instruments of indebtedness of such other person, firm or corporation; and to otherwise invest its funds as from time to time may be deemed advisable by the Board of Directors, but this corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(7)    To make and issue trust receipts, deposit receipts, certificates of deposit, interim receipts, or any other receipts for or certificates of deposit for, any proxies or powers of attorney or other privileges pertaining to any securities or interest therein, to hold in trust, issue on commission, make advances upon or sell, lease, license, transfer, organize, reorganize, incorporate or dispose of any of the undertakings or resulting investments aforesaid, or the stock or securities thereon; to act as agent for any of the above or like purposes, or any purpose herein mentioned, and to act as fiscal agent of any other person, firm or corporation.

(8)    To render advisory, investigatory, supervisory, managerial or other like services, permitted to corporations, in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person, firm or corporation or in connection with the issuance, underwriting, sale or distribution of any securities issued in connection therewith or incidental thereto; and to render general investment advisory or financial advisory or managerial services to any person or public authority.

(9)    To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority, in the carrying on of any similar business which the corporation is authorized to carry on, or any business or transaction deemed necessary, convenient or incidental to carrying out any of the purposes of this corporation.

(10)    To cause or allow the legal title, or any legal or equitable estate, right or interest in any property, whether real, personal, or mixed, owned, acquired, controlled or operated by this corporation, to remain or to be vested or registered in the name of, or operated by, any person, formed or to be formed, either upon trust for or as agents or nominees of, this corporation, or upon any other proper terms or conditions which the Board of Directors may consider for the benefit of this corporation.

(11)    To the extent suitable or necessary to carry out any of the purposes hereinbefore or hereinafter set forth, but only in so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act, to buy, sell and deal in foreign exchange.

(12)    To make and give any guarantee so far as the same may be permitted to be done by a corporation organized under the Marshall Islands Business Corporations Act and to mortgage, pledge or charge the property of the corporation, of whatsoever nature the property may be, as security for any such guaranty made or given and to assist financially or otherwise with or without consideration and on such terms as the corporation thinks fit any person, firm, company or corporation in any part of the world and in connection therewith undertake and guarantee the liabilities of that person, firm, company or corporation and to issue or procure the issue of indemnities in respect of the liabilities of such person, firm, company, or corporation and to mortgage and hypothecate the corporation's vessels or real or personal property or immovable or movable property or other form of property whatsoever as security for any such undertaking or guarantee or indemnity given or issued as aforesaid.

(13)    To issue, purchase, hold, sell, transfer, reissue, or cancel the shares of its own capital stock or any securities of the corporation in the manner and to the extent now or hereafter permitted by law; and provide further that shares of its own capital stock owned by the corporation shall not be voted upon directly or indirectly, nor counted as outstanding for the purpose of any stockholders' quorum or vote.

(14)    To invest its uninvested funds and/or surplus from time to time to such extent as the Board of Directors may deem advisable in securities or in call and/or in time loans or otherwise, upon such security, if any, as the Board of Directors may determine, but the corporation shall not engage in the banking business or exercise banking powers, and nothing in these Articles contained shall be deemed to authorize it to do so.

(15)    To purchase or otherwise acquire, own, use, operate, pledge, hypothecate, mortgage, lease, charter, subcharter, sell, build, and repair steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, and all other vessels and craft of any and all means of conveyance and transportation by land or water, together with engines, boilers, machinery, equipment and appurtenances of all kinds, including masts, sails, boats, anchors, cables, tackle, furniture and all other necessities thereunto appertaining and belonging, together with all materials, articles, tools, equipment and appliances necessary, suitable or convenient for the construction, use and operation thereof; and to equip, furnish, and outfit such vessels and ships.

(16)    To engage in ocean, coastwise and inland commerce, and generally in the carriage of passengers, mail, freight, goods, cargo in bulk and personal effects by water between the various ports of the world and to engage generally in waterborne commerce throughout the world.

(17)    To act as broker or agent in the chartering, sub-chartering, buying, and selling of steamships, motorships, tankers, sailing vessels, yachts, tugs, lighters, barges, scows, rafts, dredges, pontoons, hydroplanes, and all other vessels and craft of any and all motive power whatsoever, including landcraft and watercraft, and equipment and appurtenances of all kinds in connection therewith and to engage in the business of negotiation and concluding freighting or transportation contracts of every kind and description for its own account and as the agent for any other corporation, or any firm, association or individual, domestic or foreign.

(18)    To act as ship's agent, ship chandler, ship broker, ship's husband, manager of shipping property, custom house broker, forwarding agent, freight contractor, lighterman, stevedore, warehouseman and wharfinger, on its own behalf or as agent for any other corporation, or any firm, association or individual, domestic or foreign.

(19)    To purchase or otherwise acquire, own, use, operate, lease, build, repair, sell or in any manner dispose of docks, piers, quays, wharves, dry docks, warehouses and storage facilities of all kinds, and any property, real, personal and mixed, in connection therewith.

(20)    To engage in any mercantile, manufacturing or trading business of any kind or character whatsoever, outside of the Republic of the Marshall Islands, and to do all things incidental to such business.

(21)    To act as agent, attorney-in-fact, broker or representative, general or special, on commission or otherwise for corporations, firms, associations, or individuals, foreign or domestic, including governments or governmental authorities; to aid, assist, promote and serve the interests of and afford facilities for, the convenient transaction of business by its principals and partners in all parts of the world; and to appoint agents, brokers or representatives.

(22)    To carry on the business of warehousing and all business incidental thereto, including the issuing of warehouse receipts, negotiable or otherwise, and the making of advances or loans upon the security of goods warehoused.

(23)    To apply for, purchase, or any manner to acquire, hold, own, use and operate; to sell or in any manner dispose of, to grant, or license other rights in respect of, and in any manner deal with, any and all rights, interests, inventions, improvements and processes used in connection with or secured under letters patent, copyrights, or trademarks and to work, operate, or develop the same.

(24)    To purchase, lease or otherwise acquire, hold, own, mortgage, pledge, hypothecate, build, erect, construct, maintain and operate, develop, improve and sell, lease or otherwise dispose of lands, and improvements, warehouses, factories, buildings, structures, piers, wharves, mills, dams, stores and dwellings and all other property and things of whatsoever kind and nature, real, personal or mixed, tangible or intangible, without the Marshall Islands, and in any part of the world suitable or necessary in connection with any of the purposes hereinabove or hereinafter set forth, or otherwise deal with or in any such properties.

(25)    To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic, or government or colony or any dependency thereof.

(26)    To carry on its business, to have one or more offices, and to exercise its power in any and all foreign countries, subject to the laws of the particular country.

(27)    To carry on any other business in connection with the above or calculated directly or indirectly to enhance the value of or render profitable any of the corporation's property or rights.

(28)    To do all and everything necessary, suitable, or proper for the accomplishment of any of the purposes, the attainment of any of the objects of the furtherance of any of the powers hereinbefore set forth either alone or in connection with other corporations, firms, or individuals and either as principals, or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers or any of them.

C.    The registered address of the Corporation in the Marshall Islands is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960 and the name of the Corporation's registered agent at such address is The Trust Company of the Marshall Islands, Inc.

D.    The aggregate number of shares of stock that the Corporation is authorized to issue is Five Hundred (500) registered and/or bearer shares without par value.

The Corporation shall mail notices and information to holders of bearer shares to the address provided to the Corporation by the shareholder for that purpose.

The holder of a stock certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares, and the holder of shares issued in the name of the owner may cause his certificate to be exchanged for another certificate to bearer for a like number of shares.

Nonvoting Stock.  To the extent prohibited by Section 1123 of Title 11 of the United States Bankruptcy Code (as amended, the "***Bankruptcy Code***"), the Corporation shall not issue any class or series of nonvoting equity securities as in effect on the date of filing these Articles of Incorporation; provided, however, that the foregoing (a) will have such force and effect only for so long as Section 1123 of the Bankruptcy Code is in effect and may be applicable to the Corporation; (b) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code; and (c) may be amended or eliminated in accordance with applicable law from time to time in effect.  For purposes of this Section D, any class or series of equity securities that has only such voting rights as are mandated by the Marshall Islands Business Corporations Act shall be deemed to be nonvoting for purposes of the restrictions of this Section D.

E.    The Corporation shall have every power which a corporation now or hereafter organized under the Marshall Islands Business Corporations Act may have.

F.    The name and address of the incorporator is:

| **Name** | **Post Office Address** |
| --- | --- |
| [Reeder & Simpson, P.C. | P.O. Box 60 |
| | Majuro, MH 96960] |

G.    The board of directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

H.    Corporate existence shall begin upon filing these Articles of Incorporation with the Registrar of Corporations as of the filing date stated hereon.

IN WITNESS WHEREOF, I have executed this instrument on this _____ day of _____, 20_____.

by:  _____