| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: March 26, 2019<br>Hearing Time: 2:00 p.m. |

------------------------------------------------------- x
                                                        :
In re                                                   :   Chapter 11
                                                        :
AEGEAN MARINE PETROLEUM                                 :   Case No. 18-13374 (MEW)
NETWORK INC., et al.,                                   :
                                                        :   Jointly Administered
                            Debtors.                    :
                                                        x
-------------------------------------------------------

**OBJECTION OF THE UNITED STATES TRUSTEE TO
CONFIRMATION OF THE AMENDED JOINT CHAPTER
11 PLAN OF AEGEAN MARINE PETROLEUM
NETWORK INC. AND ITS DEBTOR AFFILIATES**

TO:    THE HONORABLE MICHEAL E. WILES,
       UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection (the "**Objection**") to confirmation of the Debtors' Amended Joint Chapter 11 Plan of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates (the "**Plan**"), filed by Aegean Marine Petroleum Network Inc. and its debtor affiliates ("**Debtors**"). ECF Doc No. 382. In support thereof, the United States Trustee respectfully states:

## I. PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Plan because the Plan fails to sustain its burden on a number of material issues. First and foremost, the Plan impermissibly provides for the payment of the fees and expenses of counsel to each of the Creditors' Committee's individual members. Section 503(b) of the Bankruptcy Code which governs the

payment of administrative expenses, makes it clear that professional fee expenses for official committee members are not permitted. 11 U.S.C. §503(b)(3), (4). As Judge Sullivan observed in Lehman Bros. Holdings Inc., 508 B.R. 283 (S.D.N.Y. 2014), section 503(b)(4) of the Bankruptcy Code was amended in order to prevent reimbursement for professional fee expenses on the basis of committee membership alone. Id. at 290-91; see also 11 U.S.C. 503(b)(3)(F).

To the extent that the Debtors and/or Committee members seek to argue that because the impermissible terms appear as a provision in a plan of reorganization, they may somehow avoid the requirements of Section 503(b), they are wrong. Inclusions in a proposed plan of reorganization of provisions that "override, undermine, or rewrite relevant Bankruptcy Code provisions" cannot be approved by the Court. See Lehman, 508 B.R. 283, 288-89. In short, there is no legal basis for the provision in the Plan that directs the reimbursement of Committee members for their attorney fees and expenses.

Secondly, the Debtors have failed to meet their burden to demonstrate that the Court has subject matter jurisdiction to grant the Plan's proposed wide-ranging third-party releases and exculpation. However, to the extent the Court determines that it has subject matter jurisdiction, the Debtors have not carried their burden of showing that the facts and circumstances of these cases constitute rare and unique circumstances such that the Plan's non-debtor third-party releases and exculpation are proper.

For all these reasons, the Plan cannot be confirmed.

## II. BACKGROUND[1]

**A.     General Background**

1.     On November 2, 2018, the Debtors commenced these cases by filing a voluntary petition under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2.     The Debtors are an international marine fuel logistics company. Utilizing a fleet of 56 owned and chartered vessels and a network of supply hubs, the Debtors deliver high grade fuels to customers in over 20 countries and more than 50 ports. Declaration of Tyler Baron ("Baron Decl."), ECF Doc. No. 2.

3.     The Debtors report that these chapter 11 cases were commenced in order to stabilize business operations, address near term debt maturities, and to facilitate a value-maximizing restructuring transaction. Baron Decl., Paras. 6-7.

4.     On January 16, 2019, the Debtors filed a Joint Chapter 11 Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates and the Disclosure Statement to the Plan. ECF Doc. Nos. 303 and 302, respectively.

5.     On February 15, 2019, the Court entered the Order (I) Approving the (A) Adequacy of Information in the Disclosure Statement [ECF No. 383], (B) Solicitation and Notice Procedures, (C) Forms of Ballots and Notices in Connection Therewith, And (D) Certain Dates With Respect Thereto, and (II) Granting Related Relief. (ECF No. 385)

---

[1] Capitalized terms not identified specifically in this Objection have the same meaning given to them in the Plan or Disclosure Statement.

6. The Plan contains broad injunction, release and exculpation provisions (pp. 50-53), which are referred to in the Disclosure Statement (pp. 66-67). The Debtors' explanation as to why the release, exculpations and injunctions in the Plan are appropriate is also set forth in the Disclosure Statement (pp. 67-71).

### III. OBJECTION

**A.    Legal Standards And Statutory Framework**

**1. Confirmation Standards and Statutory Framework**

There are two relevant statutes governing chapter 11 plan provisions and confirmation. Section 1123(b)(6) allows plan proponents to include terms that are "not inconsistent with the applicable provisions" of the Code. 11 U.S.C. § 1123(b)(6). Section 1129 of the Bankruptcy Code authorizes the bankruptcy court to confirm a plan only when it "complies with the applicable provisions of the Code." 11 U.S.C. § 1129. The plan proponent bears the burden of establishing compliance with section 1129. In re Charter Commc'ns, 419 B.R. 221, 243-44 (Bankr. S.D.N.Y. 2009) (citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 2993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown")); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing Briscoe).

4

**2. Sections 503(b)(3)(D) & (F) and 503(b)(4) of the Bankruptcy Code.**

Section 503(b)(3)(D) & (F) and (b)(4) provide, in pertinent part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—….

>   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—….
>
>>   (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;….[and]
>>
>>   (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;
>
>   (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(3)(D) & (F), (b)(4).

A creditor serving on a committee appointed under section 1102 of the Bankruptcy Code who incurs expenses in the performance of its duties on the committee cannot compel a debtor to pay for its legal expenses under section 503(b)(3)(F). See Lehman Bros Holdings, Inc., 508 B.R. at 294, 295. However, such member may qualify for an administrative expense payment under Section 503(b)(3)(D) if it has made a substantial contributions as a creditors, independent of committee activities:

>   Section 503(b)(3)(D) of the Bankruptcy Code is available to an individual committee member that makes a substantial contribution to the case "as a creditor or equity security holder, independent of the work of the committee"

5

Id. at 20 (citing 4 Collier on Bankruptcy ¶503.11[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011)).  As Judge Sullivan remarked in Lehman, official committee members may seek administrative priority expense under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, but it is their burden to demonstrate "extraordinary work" beyond the duties of committee membership.  See Id. at 295.  In other words, a committee member acting in its individual capacity may perform work that generates a substantial contribution to the estate.  For example, a committee member in its individual capacity may recover property for the estate's benefit.  This work, outside of committee work, may be compensable under sections 503(b)(3)(D) or 503(b)(4).

Under Second Circuit law, administrative expenses are to be "narrowly construed," and the party seeking an administrative expense has the burden of proving that the right to payment arises under section 503(b).  Supplee v. Bethlehem Steel Corp. *(*In re Bethlehem Steel Corp.*)*, 479 F.3d 167, 172 (2d Cir. 2007) (Sotomayor, J.).  See Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir. 1986) ("If one claimant is to be preferred over others, the purpose should be clear from the statute.") (internal quotation and citation omitted).  See also In re Am. Preferred Prescription, Inc.*,* 194 B.R. 721, 726 (Bankr. E.D.N.Y. 1996) (Section 503(b) administrative expenses "should be kept to a minimum" and "be narrowly construed."); and In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr. S.D.N.Y.2006) ("Claims for substantial contribution are ... narrowly construed and are subject to strict scrutiny").

The burden of proving "substantial contribution" under Section 503(b) is "exceedingly difficult," In re Villa Luisa, L.L.C., 354 B.R. at 348, with "the movant bearing the burden by a

6

preponderance of the evidence." In re Bayou Group, LLC, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010) (citing In re United States Lines, Inc., 103 B.R. 427, 429 (Bankr. S.D.N.Y.1989)).

Courts maintain the "integrity of section 503(b) …by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate." In re Bayou Group, LLC, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010) (citing In re Best Prods. Co., Inc., 173 B.R. 862, 866 (Bankr. S.D.N.Y.1994)). Extensive participation alone is insufficient to justify an award. In re Granite Partners, 213 B.R. 440, 445-46 (Bankr. S.D.N.Y. 1997) (citing In re Best Products Co., 173 B.R. at 866; In re Alert Holdings Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993); In re United States Lines, Inc., 103 B.R. at 430; and In re McLean Indus., Inc., 88 B.R. 36, 38 (Bankr. S.D.N.Y.1988)).

Factors considered by courts in the Second Circuit when analyzing a request for substantial contribution, include:

> (i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case.

In re AMR Corp., 11-15463 (SHL), 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014) (citing Trade Creditor Grp. v. L.J. Hooker Corp., Inc. (In re Hooker Invs., Inc.), 188 B.R. 117, 120 (S.D.N.Y.1995); and In re Best Prods. Co., Inc., 173 B.R. at 865). See also Bedford JV, LLC v. Sky Lofts, LLC, 12-CV-5850 DLI, 2013 WL 4735643, at *4 (E.D.N.Y. Sept. 3, 2013) (setting forth factors); and In re Dana Corp., 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) (same).

### 3. Sections 1102 and 1103

An official committee of unsecured creditors is "a creature of statute," that "deriv[es] its powers and duties from bankruptcy law." Off. Comm. of Unsecured Creditors of WorldCom,

7

Inc. v. S.E.C., 467 F.3d 73, 79 (2d Cir. 2006). See also Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 513 (S.D.N.Y. 1994) ("An official creditors committee is an entity that exists only as a matter of federal bankruptcy law").

The "principal source" of those powers and duties is Section 1103(c), which "grants, inter alia, the authority to consult regarding the administration of the bankruptcy case, perform certain investigations of the debtor's business, participate in the formulation of a bankruptcy plan, request the appointment of a trustee, and 'perform such other services as are in the interest of those represented.'" Off. Comm. of Unsecured Creditors of WorldCom, Inc., 467 F.3d at 79. Section 1103(c) provides:

> (c) A committee appointed under section 1102 of this title may—
>
> (1) consult with the trustee or debtor in possession concerning the administration of the case;
>
> (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
>
> (4) request the appointment of a trustee or examiner under section 1104 of this title; and
>
> (5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

While Section 1103(c) does not confer unlimited authority, "Congress consciously built a measure of flexibility into the scope of th[e] services" committees perform on behalf of the estate. Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 563 (3d Cir. 2003). Section 1103(c), and in particular the "catchall"

8

provision of Section 1103(c)(5), "reflects the broad parameters of a committee's functions, expressed in the legislative history of Code § 1102." 5 Norton Bankr. L. & Prac. 3d § 98:30. In implementing Section 1102, Congress envisioned that, creditors' committees "will be the primary negotiating bodies for the formulation of the plan of reorganization…will represent the various classes of creditors… from which they are selected…will also provide supervision of the debtor in possession and of the trustee, and will protect their constituents' interests." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 401 (1977). See also 11 U.S.C. § 1109(b) (a creditors' committee "may raise and may appear and be heard on any issue in a [chapter 11] case").

Section 1102(b)(3), which was more recently enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–08, 119 Stat. 23 (2005), imposes the additional obligation on a committee to provide unsecured creditors who are not members of the committee with access to information. In re Refco Inc., 336 B.R. 187, 189-90 (Bankr. S.D.N.Y. 2006). It states:

> (3) A committee appointed under subsection (a) shall—
>   (A) provide access to information for creditors who—
>     (i) hold claims of the kind represented by that committee; and
>     (ii) are not appointed to the committee;
>   (B) solicit and receive comments from the creditors described in subparagraph (A); and
>   (C) be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3).

An official creditors' committee not only has the power, but the duty, to "'use any tool available under section 1103' to accomplish [its] goal" of "act[ing] in the best interests of the creditors it represents." Advisory Comm. of Major Funding Corp. v. Sommers *(In re Advisory*

9

Comm. of Major Funding Corp.), 109 F.3d 219, 224-225 (5th Cir. 1997).  Accordingly, "[t]he actual role played by a committee in any particular case will depend on the size and nature of the particular case.  The larger and more complex the case, the greater the role that will be played by the committee." 7-1103 Collier on Bankruptcy ¶ 1103.05 (15th 2015).  See also 5 Norton Bankr. L. & Prac. 3d § 98:30 ("The scope of a committee's role will necessarily vary depending upon the type of debtor, the nature and complexity of the case, the amount and type of assets and liabilities, and whether a trustee has been appointed.").

**B.     The Court Should Not Approve Payment of Committee Members' Restructuring Expenses Because They Are Not Authorized Under Bankruptcy Code § 503(b)**

Article II.C of the Plan provides for the payment of the reasonable and documented fees and expenses of counsel for each Committee member.  While not specifically articulated, a fair reading of this Plan provision is that the Debtors seek to reimburse each Committee member for professional costs and expenses each incurred in their respective capacity as Committee members.  However, the reimbursement of counsel fees as allowed administrative expenses for individual committee members is not authorized by the Bankruptcy Code.  Section 503(b) of the Bankruptcy Code governs administrative expenses.  While some parties are entitled to recoup their respective professional fees, the structure of section 503(b)(3) and (4) "glaringly exclude professional fee expenses for official committee members."  See Lehman, 508 B.R. at 290.  In contrast to other named parties that may appear in a bankruptcy case, because Section 503(b)(4) does not cover individual committee members' fee expenses, individual members "must usually pay their own attorneys and accountants." Id. at 287-88.  Plainly, "official committee membership alone cannot be a sufficient condition for reimbursement of professional fee

10

expenses," In re Lehman Bros. Holdings Inc., 508 B.R. at 296. Here, no information is provided -- and nor have any committee members articulated any reasons for reimbursement of professional fees – for work above and beyond their Committee work. Accordingly, the attorneys fees and expenses of committee members cannot be reimbursed as administrative expenses.

To the extent that one or more of the Committee members intend to argue that Article II.C should be approved because it was a material term of the Restructuring Agreement and therefore incorporated into the Plan, this argument has been fully rejected by the Lehman court. As noted, "[u]nder section 1123(b)(6) of the Bankruptcy code, plans may include any … appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code." Therefore, "section 1123(b)(6) does not authorize plan provisions that override, undermine or rewrite relevant Bankruptcy Code provisions."  Id., citing RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2071 (2012) ("RadLAX") (holding that general authorizations in the Bankruptcy Code cannot be used to avoid specific statutory provisions and "[N]either the need for flexibility. . . can justify a plan provision that is merely a backdoor to administrative expenses . . . . [T]he federal scheme cannot remain comprehensive if interested parties . . . in each case are free to tweak the law to fit their preferences").

Accordingly, because committee members may not be reimbursed for their respective attorney fees and expenses, Article II© of the Plan must not be approved.

C.     **The Debtors Have Failed to Demonstrate that the Court Has Subject Matter Jurisdiction To Impose Third Party Releases**

The Plan, if confirmed, will provide a myriad of third parties with broad releases. For example, in addition to providing for third-party releases to entities such as Mercuria, the DIP

Agents and Lenders, the Prepetition Secured Credit Facility Agents and Lenders, the Unsecured Notes Indenture Trustees, and AmEx, also released are each of their current and former predecessors, successors, Affiliates (whether such interests are held directly or indirectly), subsidiary, portfolio companies, professional advisors, consultants, and so forth. See Article IX.C of the Plan; Amended Disclosure Statement, p. 66. In short, except for the released parties either mentioned by name or by their specific role in these cases, it is not known what connection, if any, some of these parties being released have to the Debtors or even to these chapter 11 cases other than some vague connection to a released party.

The Amended Disclosure Statement (ECF No. 383) ("DST") expressly reserved the right to seek the imposition of Third Party Release on a non-consensual basis at confirmation. DST, p. 71. To the extent third party releases will be imposed on any party, the Debtors must establish that this Court has subject matter jurisdiction to impose the third party releases. See e.g., In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) and Metromedia, 416 F.3d at 141; accord In re Dreier LLP, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010).

More specifically, a bankruptcy court must assess whether it has jurisdiction to enjoin a third-party dispute. "[T]he question is not whether the court has . . . jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party." In re SunEdison, Inc., 576 B.R. 453, 461 (Bankr.S.D.N.Y. 2017) (citing Manville II, 517 F.3d 52, 65). Rather, "the touchstone for bankruptcy jurisdiction [over a non-debtor's claim] remains whether its outcome might have any 'conceivable effect' on the bankruptcy estate." SunEdison, 576 B.R. at 461

12

(citing Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC), 740 F.3d 81, 88 (2d Cir. 2014). The party asserting that the Court has subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. SunEdison, 576 B.R. at 461 (citations omitted).

In Manville II, the Second Circuit held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate." Manville II, 517 F.3d at 66; see also Dreier, 429 B.R. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor third-party releases must be limited to claims that are derivative of the debtors). In fact, contrary to the assertion set forth by the Debtors that "each of the Released Parties has afforded value to the Debtors and aided in the reorganization process," see DST pp. 69, a bankruptcy court does not acquire subject matter jurisdiction "to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate." Manville II, 517 F.3d at 66. Otherwise, "a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions." Id. (quoting In re Combustion Eng'g, Inc., 391 F.3d 190, 228 (3d Cir 2004)).

Here, third party releases are to be given to parties defined as Released Parties. See Plan Article IX.C. As stated above, if confirmed, the Plan will bestow broad releases upon a wide range of third parties – some having at best only a tenuous connection with these cases. Whether this Court has subject matter to bestow such broad releases is a material issue, and based on its current showing, the Debtors have failed to meet their burden in this regard.

13

**D.      The Debtors Have Not Established that the Proposed Releases and
         <u>Exculpation Meet the Standard Required by the Second Circuit</u>**

Assuming the Debtors are successful in meeting their burden of proof to establish that the Court has subject matter jurisdiction to compel impaired creditors to provide non-consensual third party releases, the issue then becomes whether the Debtors are able to show that the facts of and circumstances of these cases are so rare and unique, that third-party releases are appropriate. <u>SunEdison</u>, 576 B.R. at 461-62 (citing <u>Metromedia</u>, 416 F.3d at 141).  In <u>Metromedia</u>, the Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] . . .
>
> Second, a non-debtor release is a device that lends itself to abuse.  By it, a non-debtor can shield itself from liability to third parties.  In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code.  The potential for abuse is heightened when releases afford blanket immunity.

<u>Id.</u> at 142.  <u>See</u> <u>also</u> <u>In re DBSD N. Am., Inc.</u>, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (footnotes omitted); <u>In re Motors Liquidation Co.</u>, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed.  But where those circumstances haven't been shown, third-party releases can't be found to be appropriate").[2]

---

[2] Other examples include: (i) In re <u>Adelphia Comm'ns Corp.</u>, 368 B.R. 140, 268–69 (Bankr. S.D.N.Y. 2007) (holding that three categories of non-debtor third-party releases are acceptable under <u>Metromedia</u>: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements, (2) persons involved in unique transactions, such as a party who makes a

14

The Debtors have not established that the circumstances of these cases is anywhere near rare or unique. Here, a projected recovery to Aegean general unsecured creditors of approximately fourteen cents on the dollar albeit with a hope of recovery of more in the future depending on the outcome of certain litigation by the Litigation Trustee, is hardly the type of rare and unique circumstance anticipated by the Second Circuit in Metromedia that would merit imposition of broad and sweeping third party releases to a host of mostly unknown parties.

E. **The Exculpation Provision is Unduly Broad**

The Plan contains a broad exculpation provision in Article IX.D. Exculpation provisions are meant to limit liability to the fiduciaries in the case. See In re Washington Mutual, Inc., 442 B.R. 314, 350-351 (Bankr. D. Del. 2011) (limiting exculpation clause to estate fiduciaries). Here, however, the exculpation provision's coverage extends way beyond the Debtors' fiduciaries. Furthermore, the exculpation provision fails to include a caveat that it should be limited to the extent permitted in Bankruptcy Code § 1125(e), while further making clear that the

---

substantial financial contribution to the estate; and (3) persons who consent to the releases); (ii) In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) (framing inquiry as "whether a significant non-debtor financial contribution plus other unusual factors render a situation so "unique" that the non-debtor third-party releases are appropriate"). Id. at 55; (iii) In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the equity committee had raised, but then abandoned, an objection to the validity of the non-debtor third-party releases, and the court found that the releases in that case were acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their willingness to grant the releases); (iv) In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (plan's non-debtor third-party releases and injunctions were critical components of the settlement that played a "vital part in the plan" and "were necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); and (v) In re XO Commc'ns, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtor third-party releases were permissible where the non-debtors provided significant consideration, the non-debtors were integral to the plan, and the non-debtors' interests aligned with those of the debtors with regard to the claims).

provision, as it applies to the parties' attorneys, is consistent with the New York Rules of Professional Conduct **("NYRPC")**.  The Plan, as written, does not adhere to the NYRPC provision that restricts attorneys from making agreements limiting their liability to a client for malpractice.  See N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1).

### IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court sustain the Objection of the United States Trustee, and grant such other relief as is just.

Dated: New York, New York
       March 19, 2019

                                      Respectfully Submitted,

                                      WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE

By:    /s/ *Brian S. Masumoto*
        Brian S. Masumoto
        Andrew D. Velez-Rivera
        Trial Attorneys
        201 Varick Street, Room 1006
        New York, New York 10004
        (212) 510-0500