**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | ) | Case No. 18-13374 (MEW) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION**
**OF AEGEAN MARINE PETROLEUM NETWORK INC. AND ITS DEBTOR**
**AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

WHEREAS Aegean Marine Petroleum Network Inc. and the other above-captioned debtors and debtors in possession (collectively, "Aegean" or the "Debtors") have, among other things:[2]

a.  commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 6, 2018 (the "Petition Date");

b.  continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on January 16, 2019, (i) the *Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 303], which plan and related documents were subsequently revised (as amended, supplemented, or otherwise modified from time to time, the "Plan"), (ii) the *Disclosure Statement for the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 302], and (iii) the

---

[1]  Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/aegean. The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

[2]  All capitalized terms used and not otherwise defined in this Confirmation Order (as defined herein) shall have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in Article I, Section B of the Plan shall apply to this Confirmation Order.

*Debtors' Motion for Entry of an Order (I) Approving the (A) Adequacy of Information in the Disclosure Statement, (B) Solicitation and Notice Procedures, (C) Forms of Ballots and Notices in Connection Therewith, and (D) Certain Dates with Respect Thereto, and (II) Granting Related Relief* [Docket No. 300] which order and related documents were subsequently revised (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement");

d.  filed, on February 13, 2019, the revised versions of (i) the Disclosure Statement [Docket No. 362], and (ii) the Plan [Docket No. 360]; and (iii) the *Debtors' Omnibus Reply in Support of their Motion for Entry of an Order (I) Approving the (A) Adequacy of Information in the Disclosure Statement, (B) Solicitation and Notice Procedures, (C) Forms of Ballots and Notices in Connection Therewith, and (D) Certain Dates with Respect Thereto, and (II) Granting Related Relief* [Docket No. 359];

e.  filed, on February 15, 2019, the further revised versions of (i) the Disclosure Statement [Docket No. 383], and (ii) the Plan [Docket No. 382][3];

f.  filed, on February 15, 2019, a *Notice of Filing of Revised Order (I) Approving the (A) Adequacy of Information in the Disclosure Statement, (B) Solicitation and Notice Procedures, (C) Forms of Ballots and Notices in Connection Therewith, and (D) Certain Dates with Respect Thereto, and (II) Granting Related Relief* [Docket No. 384];

g.  caused solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed by February 15, 2019, and continuing thereafter, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order (as defined herein), which Disclosure Statement Order also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages"), as evidenced by, among other things, the *Affidavit of Service* [Docket No. 392];

h.  caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to parties in interest in the Chapter 11 Cases on or before February 19, 2019, or as soon as reasonably practicable thereafter, in accordance with the Disclosure Statement Order (as defined herein) [Docket No. 386];

i.  filed, on March 5, 2019, the *Notice of Filing of Plan Supplement* [Docket No. 420] (as amended, supplemented, or otherwise modified from time to time, the "Plan Supplement"), which included the Rejected Executory Contracts and Unexpired Leases Schedule;

---

[3]  The Plan, which is confirmed as set forth herein, is attached hereto as **Exhibit 1**.

j.      served, on March 5, 2019, custom notices to applicable counterparties in relation to the *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if any, and (C) Related Procedures in Connection Therewith*, attached as <u>Exhibit 8</u> to the Disclosure Statement Order;

k.      filed, on March 12, 2019, the *Notice of Filing of Plan Supplement* [Docket No. 441], which included the following documents:  (A) a schedule of retained Causes of Action; (B) the Description of Restructuring Transactions; (C) the Litigation Trust Agreement; (D) the Litigation Trust Loan Agreement; (E) the Litigation Trust Backstop Commitment Agreement; and (F) the Form of Reorganized Debtor Organizational Documents;

l.      filed, on March 21, 2019, the *Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 470] (the "<u>Voting Certification</u>").

m.      filed, on March 25, 2019, the *Notice of Filing of Plan Supplement* [Docket No. 492], which included the following documents:  (A) Identities of the New Directors and Officers of the Reorganized Debtors; and (B) a revised schedule of retained Causes of Action;

n.      filed, on March 22, 2019, the *Amended Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 482];

o.      filed, on March 22, 2019, *Debtors'(A) Memorandum of Law in Support of Confirmation of the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (B) Omnibus Reply to Objections to Confirmation of the Plan* [Docket No. 476] (the "<u>Confirmation Brief</u>");

p.      filed, on March 22, 2019, *Debtors' Memorandum of Law in Support of Nonconsensual Third Party Release* [Docket No. 478] (the "<u>Nonconsensual Release Brief</u>");

q.      filed, on March 22, 2019, the *Declaration of Tyler Baron in Support of Confirmation of the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 479] (the "<u>Baron Declaration</u>");

r.      filed, on March 22, 2019, the *Declaration of Andrew Hede in Support of Confirmation of the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 480] (the "<u>Hede Declaration</u>");

s.    filed, on March 22, 2019, the *Declaration of Zul Jamal in Support of Confirmation of the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 481] (the "Jamal Declaration" and together with the Baron Declaration and the Hede Declaration, the "Confirmation Declarations"); and

t.    filed, on March 22, 2019, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of Reorganization of Aegean Marine Petroleum., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (this "Confirmation Order").

This Court having:

a.    entered the *Order (I) Approving the (A) Adequacy of Information in the Disclosure Statement, (B) Solicitation and Notice Procedures, (C) Forms of Ballots and Notices in Connection Therewith, and (D) Certain Dates with Respect Thereto, and (II) Granting Related Relief* [Docket No. 385] (the "Disclosure Statement Order");

b.    reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Confirmation Declarations, the Voting Certification, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c.    held the Confirmation Hearing;

d.    heard the statements, arguments, and objections made by counsel in respect of Confirmation;

e.    considered all testimony, documents, filings, and other evidence admitted at Confirmation; and

f.    declined to approve certain terms of a proposed settlement of a motion filed by Oaktree Capital Management, L.P. and Hartree Partners, LP seeking allowance and payment of certain professional fees and expenses in allegedly making a substantial contribution, as set forth in an Order issued by the Court on March 27, 2019;

g.    resolved certain objections to the Exculpation provisions of the Plan in the manner set forth in paragraph 87 of this Order;

h.    denied a request that nonconsensual releases be imposed as to potential third party claims against certain parties, for the reasons set forth on the record at the confirmation hearing and that will be incorporated into a written Bench Decision to be issued by the Court; and

i.    overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein.

4

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby (including the Restructuring Transactions), and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

## I. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**     **Findings and Conclusions.**

1.     The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**     **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).**

2.     The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a Final Order determining that the Plan and the Plan Documents (defined herein), including the Description of Restructuring Transactions and the transactions, transfers, and mergers contemplated in connection therewith and set forth in greater detail therein, comply with the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

C.      **Eligibility for Relief.**

3.      Each Debtor is, under section 109 of the Bankruptcy Code, a person eligible to be a debtor under chapter 11 of the Bankruptcy Code.

D.      **Judicial Notice.**

4.      The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing. Any resolutions of any objections explained on the record at the Confirmation Hearing are incorporated herein by reference.

E.      **Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

5.      The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "Ballots"), the Confirmation Hearing Notice, the Non-Voting Status Notices, the Debtors' Cover Letter, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and with the procedures set forth in the Disclosure Statement Order. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases. The transmittal and service of the Confirmation Materials complied with the approved Solicitation Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance with the provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**F.     Voting.**

6.     On March 21, 2019, the Debtors filed the Voting Certification.  As evidenced thereby, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

**G.     Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

7.     Based on the record before the Court in the Chapter 11 Cases, the Debtors, the other parties to the Restructuring Support Agreement, and each of their respective current and former Affiliates, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, controlling persons, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, together with their respective successors and assigns, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to the offer, issuance, sale, solicitation, and/or purchase of the securities offered, issued, sold, solicited, and/or purchased under the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**H.**    **Plan Supplement.**

8.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and no other or further notice is or shall be required.

**I.**    **Modifications to the Plan.**

9.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect or change the treatment of any other Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

10.    This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from various parties in interest.  Modifications to the Plan since the entry of the Disclosure Statement Order, if any, are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan submitted for Confirmation.

**J.**    **Objections.**

11.    To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, adjourned, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation

8

Hearing, they are hereby overruled on the merits based on the record before this Court. All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

**K.    Burden of Proof.**

12.    The Debtors, as the proponents of the Plan, have met their burden of proving satisfaction of each required element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**L.    Bankruptcy Rule 3016.**

13.    The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**M.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

14.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). As required by section 1123(a)(1), in addition to Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Credit Facility Claims which need not be classified, Article III of the Plan designates 8 Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Classes 1, 2, 3, and 4B are Unimpaired under the Plan, Classes 5 and 6 are either deemed Unimpaired or Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article III of the Plan specifies that Classes 4A, 7, and 8 are Impaired under the Plan, and that Classes 5 and 6 are either deemed Unimpaired or Impaired under the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d.      No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: (i) the general compromise or settlement of all Claims and Interests and controversies; (ii) the sources of consideration for distributions under the Plan; (iii) the issuance and redistribution of Reorganized Aegean Equity Interests; (iv) the issuance and distribution of the Litigation Trust Interests; (v) the corporate existence of each Reorganized Debtor pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, or as such documents are amended pursuant to the Plan; (vi) the continued vesting of the assets of the Debtors' Estates, other than the Litigation Claims, including all Executory Contracts and Unexpired Leases assumed by the Debtors, in the Reorganized Debtors and the vesting of Litigation Claims in the Litigation Trust; (vii) the cancellation of certain existing Interests, certificates, existing securities, and other documents; (viii) the authorization, upon the Effective Date, of corporate actions contemplated by the Plan, including those set forth in the Description of Restructuring Transactions; (ix) the consummation of the Restructuring Transactions; (x) the filing of each Reorganized Debtors respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation (including the Reorganized Debtor Organizational Documents); (xi) the exemption from certain taxes and fees for transfers of property pursuant to the Plan; (xii) the Reorganized Debtors' preservation of Non-Litigation Trust Causes of Action, whether arising before or after the Petition Date, but subject in all respects to Articles V and IX of the Plan; (xiii) the funding and distribution of the Aegean Unsecured Claims Cash Pool; (xiv) the creation of the Litigation Trust; (xv) the funding and disbursement of the Litigation Trust Loan; (xvi) the selection of the Litigation Trustee; (xvii) the assumption, subject to the provisions of the Plan, of all unexpired D&O Liability Insurance Policies and each of the Debtors' other insurance policies in existence as of the Effective Date by the applicable Reorganized Debtor; (xviii) the continuation of certain existing employee matters; (xix) the payment of all unpaid fees and reasonable and documented out-of-pocket costs and expenses of the DIP Agents and DIP Lenders that are payable in accordance with the terms of the DIP Financing Orders; (xx) the payment, in cash, of all reasonable and documented unpaid Unsecured Notes Indenture Trustee Fees and Expenses that are required to be paid

under the Unsecured Notes Indentures through the Effective Date; (xxi) the preservation of documents and transfer of certain privileges in connection with Litigation Claims and the Securities Litigation; and (xxii) all other actions that the Debtors determine, with the consent of the Committee, the Requisite Consenting Unsecured Noteholders, AmEx, and Mercuria (which consent is not to be unreasonably withheld, conditioned, or delayed), to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f.  <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  As required by section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor Organizational Documents include, among other things, a provision prohibiting the issuance of non-voting equity Securities.

g.  <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  The Plan Supplement discloses the individuals who will serve as the Reorganized Debtors' officers and directors.  The Plan and the Reorganized Debtor Organizational Documents, as applicable, are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the Reorganized Debtors' officers and directors.  Accordingly, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.

h.  <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i)  <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>.  As contemplated by section 1123(b)(1) of the Bankruptcy Code, pursuant to the Plan, Classes 1, 2, 3, and 4B are Unimpaired, Classes 4A, 7, and 8 are Impaired, and Classes 5 and 6 are either deemed Unimpaired or Impaired.

(ii)  <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  Article VI of the Plan provides that all Executory Contracts and Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (a) those that are identified on the Rejected Executory Contracts and Unexpired Leases Schedule (as may be amended, modified, or supplemented in accordance with the Plan); (b) those that have been previously rejected by an order of this Court; (c) those that have been previously assumed by an order of this Court; (d) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (e) those that are subject to a motion

11

to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

(iii)   Compromise and Settlement (11 U.S.C. § 1123(b)(3)(A)).  To the extent that the Plan incorporates settlements or compromises of specific Claims, Interests or controversies, those settlement sand compromises are approved as being in the best interests of the Debtors and the Estates, and are fair, equitable, and reasonable.

(iv)   Retention of Claims (11 U.S.C. § 1123(b)(3)(B)).  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Article IV, Section M, of the Plan provides that, among other things, subject to Article IX of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence, prosecute, pursue, and settle any and all Non-Litigation Trust Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Non-Litigation Trust Causes of Action against any Entity, except as otherwise expressly released in the Plan. Additionally, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Litigation Claims that a Debtor may hold against any Entity shall vest in the Litigation Trust on the Effective Date.  All Litigation Claims are expressly preserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Causes of Action prosecuted in relation to the Litigation Claims as a consequence of the Confirmation or Consummation of the Plan.

(v)   Other Appropriate Provisions (11 U.S.C. § 1123(b)(5)-(6)).  The Plan's other provisions (as modified by certain rulings by the Court that are set forth herein) are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (1) distributions to Holders of Claims and Interests, including Holders of Secured Claims, (2) resolution of Disputed Claims and Interests, (3) allowance of certain Claims, (4) releases by the Debtors of certain parties, (5) releases by certain third parties, (6) exculpation of certain parties, (7) the injunction of certain Claims and Causes of Action in order to implement the discharge, release and exculpation provisions, and (8) retention of this Court's jurisdiction, thereby satisfying the requirements of sections 1123(b)(5) and (6) of the Bankruptcy Code.

i.   Cure of Defaults (11 U.S.C. § 1123(d)).  Article VI, Section C, of the Plan, provides for the release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or

ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. The Debtors have provided notice of such assumption (or assumption and assignment) and proposed cure amounts to the non-Debtor counterparties to an Executory Contract or Unexpired Lease. As such, the Plan provides that the Debtors will cure, by paying the applicable Cure Claim, or provide adequate assurance that the Debtors will promptly cure by paying the applicable Cure Claim, defaults with respect to assumed Executory Contracts and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**N.**    **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

15.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

a.    the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

b.    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

**O.**    **Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3)).**

16.    The Debtors have proposed the Plan (including the Plan Documents (defined herein) and all other documents necessary or appropriate to effectuate the Plan) in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Confirmation Declarations, and the record of the Confirmation Hearing. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful restructuring of the

Debtors.  The Plan was the product of extensive negotiations conducted at arm's length among the Debtors, Mercuria, the Committee, and the other parties to the Restructuring Support Agreement, and resolves all disputed issues between these parties.  In addition, the Consenting Unsecured Noteholders, representing more than seventy percent (70%) in principal amount outstanding of the Unsecured Notes issued by Aegean, and AmEx, the largest individual non-Unsecured Noteholder unsecured creditor at Aegean, support the Plan.  Further, the Plan's classification, indemnification, settlement, discharge, exculpation, release, and injunction provisions (as modified pursuant to the rulings made by the Court) have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**P.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

17.      Any payment made or to be made under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be disclosed to the Bankruptcy Court, and any such payment made before the Confirmation of the Plan is reasonable, or is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**Q.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

18.      The Debtors have disclosed the identity and affiliations of all persons proposed to serve on the Reorganized Aegean Board and the officers of the Reorganized Debtors at or prior to the Confirmation Hearing.

19.      The Plan complies with section 1129(a)(5)(A)(ii) of the Bankruptcy Code because the appointment of the identified members of the Reorganized Aegean Board and officers of the Reorganized Debtors is consistent with the interests of the creditors and equity security holders

and with public policy.  Accordingly, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.

**R.**    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**

20.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.**    **Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7)).**

21.    Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

22.    The liquidation analysis attached as <u>Exhibit D</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing or in the Hede Declaration:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Allowed Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

**T.**    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

23.    Classes 1, 2, 3, and 4B are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively presumed

to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As reflected in the

Voting Certification, Classes 4A, 7, and 8 are Impaired by the Plan.  Classes 4A, 7, and 8 at Debtor

Aegean each have voted to accept the Plan.  Classes 5 and 6 are deemed Impaired or Unimpaired

by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims

in Classes 5 and 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f)

of the Bankruptcy Code or are conclusively deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of

section 1129(a)(8) of the Bankruptcy Code as to all Debtors.

**U.**    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims,
Other Secured Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).**

24.    The treatment of Administrative Claims, Professional Fee Claims, Committee

Members' Fees and Expenses, Priority Tax Claims, Payment of U.S. Trustee Statutory Fees, and

DIP Credit Facility Claims pursuant to Articles II and III of the Plan satisfies the requirements of,

and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the

Debtors have satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

**V.**    **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

25.    Claims in Classes 4A, 7, and 8 are Impaired and entitled to vote under the Plan.  As

set forth in the Voting Certification, Classes 4A, 7, and 8 each voted to accept the Plan at Debtor

Aegean and, with respect to Class 4A, without counting the vote of any insider (as such term is

defined in section 101(31) of the Bankruptcy Code).    Accordingly, the Plan satisfies

section 1129(a)(10) of the Bankruptcy Code.

**W.**    **Feasibility (11 U.S.C. § 1129(a)(11)).**

26.    The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

The evidence supporting the feasibility of the Plan proffered or adduced by the Debtors at or before

the Confirmation Hearing, including the Confirmation Declarations: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, as applicable; and (e) establishes the Debtors or the Reorganized Debtors, as applicable, will have access to sufficient funds and financial resources which will enable them to meet their obligations under the Plan.

**X.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).**

27.      As set forth in Article II, Section E of the Plan, all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first, by the Debtors or the Reorganized Debtors, as applicable.

**Y.      Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

28.      As set forth in Article IV, Section O of the Plan, from and after the Effective Date, all "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid by the Reorganized Debtors in accordance with applicable law.  Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**Z.      Non-Applicability of Certain Sections (Sections 1129(a)(14), (15), and (16)).**

29.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are moneyed, business, or commercial corporations.

**AA.** **Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b)).**

30.    The Plan may be confirmed as to any Class that is deemed to have rejected the Plan (collectively, the "Rejecting Class/es") pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Rejecting Classes, because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Rejecting Classes. The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Rejecting Classes are deemed to reject the Plan.

**BB.** **Only One Plan (11 U.S.C. § 1129(c)).**

31.    The Plan is the only plan filed in the Chapter 11 Cases, and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**CC.** **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

32.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any Governmental Unit asserting any such attempted avoidance. The Plan, therefore, satisfies section 1129(d) of the Bankruptcy Code.

**DD.** **Not Small Business Cases (11 U.S.C. § 1129(e)).**

33.    None of the Chapter 11 Cases are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**EE.**    **Satisfaction of Confirmation Requirements.**

34.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.**    **Valuation.**

35.    The valuation analysis attached as <u>Exhibit E</u> to the Disclosure Statement (the "<u>Valuation Analysis</u>") and the evidence adduced at the Confirmation Hearing and in the Jamal Declaration, including the estimated post-emergence enterprise value of the Reorganized Debtors, are reasonable and credible. All parties in interest have been given the opportunity to challenge the Valuation Analysis. The Valuation Analysis (a) is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered, and (b) uses reasonable and appropriate methodologies and assumptions.

**GG.**    **Plan Documents.**

36.    The terms of the Plan, including, without limitation, the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, including the Restructuring Transactions and the creation of the Litigation Trust in accordance with the Litigation Trust Documents, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "<u>Plan Documents</u>") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order.

**HH.**    **Binding and Enforceable.**

37.    The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or

Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

## II.    Vesting of Assets.

38.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Non-Litigation Trust Causes of Action, all Executory Contracts and Unexpired Leases assumed by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in Non-Debtor Subsidiaries, shall vest in each respective Reorganized Debtor, free and clear of all Liens, claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Non-Litigation Trust Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## JJ.    The Litigation Trust.

39.    The creation of the Litigation Trust and entry into the Litigation Trust Agreement was an integral component of the Plan and is in the best interests of the Debtors, the Debtors' Estates, and creditors.

**KK.**    **Executory Contracts and Unexpired Leases.**

40.    The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan, and as set forth in the Plan Supplement.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases, consistent with the Plan Supplement, the Debtors have satisfied the Cure Claim or provided adequate assurances that the Debtors and/or the Reorganized Debtors will satisfy the Cure Claim and thereby clear all defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assumed and assigned under the Plan, including pursuant to the Restructuring Transactions, such assignee has provided adequate assurance of future performance as required under section 365(f)(2)(B).

**LL.**    **Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**

41.    For the avoidance of doubt, the "Releasing Parties" for purposes of the Third Party Releases set forth in Article IX of the Plan shall include only the Holders of Claims and Interests identified in items (a) through (n) of the definition of "Releasing Party" in the Plan who have consented to those releases (or who, as set forth in the definition, are bound by other parties' consents to such releases), and no other Holder of a Claim or Interest shall be a Releasing Party for purposes of the Third Party Release.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases of claims by the Debtors, the exculpation provisions (as modified herein), and the third party releases (as modified herein).  The releases, exculpations and injunctions that are approved in this Order are consistent with the Bankruptcy Code and applicable law and are hereby authorized.

21

**MM.**    **Debtor Release.**

42.    The releases of claims and causes of action by the Debtors described in Article IX, Section B of the Plan, in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release"), represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' or the Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

43.    The Debtor Release is a result of an arm's length negotiation process before and after the Petition Date by sophisticated parties represented by able counsel and financial advisors.

44.    The Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Cases, and the Debtor Release in favor of the Released Parties is fair and appropriate.

45.    The scope of the Debtor Release is appropriate in light of the facts and circumstances of the Chapter 11 Cases.

**NN.**    **Third-Party Release.**

46.    The releases by the Releasing Parties (the "Third-Party Release"), set forth in Article IX, Section C of the Plan (as clarified herein), are fully consensual, were made after full disclosure of the terms of the releases, and were given and made after due notice and opportunity for a hearing.  Accordingly they are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code and are enforceable in accordance with their terms.

47.    **[Reserved]**

48.    **[Reserved]**

49.  **[Reserved]**

50.  **[Reserved]**

## OO.  <u>Exculpation.</u>

51.    The exculpation provision set forth in paragraph 87 of this Confirmation Order was proposed in good faith and is appropriate.  The Exculpation is appropriately narrowly tailored to exclude acts of actual fraud, gross negligence or willful misconduct, relates only to acts or omissions based on the negotiation, execution, and implementation of the Debtors' restructuring, and ultimately inures to the benefit of only those parties traditionally considered estate fiduciaries or those that have made similar contributions to the Debtors' restructuring.  For the avoidance of doubt, nothing in the exculpation provision set forth in paragraph 87 of this Confirmation Order shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

## PP.  <u>Injunction.</u>

52.    The injunction provisions set forth in Article IX, Section E of the Plan (the "<u>Plan Injunction</u>"):  (a) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors and other stakeholders; (e) are important to the overall objectives of the Plan, the intent of which is to finally resolve all claims or causes of action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law.  The Plan Injunction is necessary and narrowly tailored to effectuate and implement the Debtors' discharge under the Bankruptcy Code and to preserve and enforce the Debtor Release,

the Third-Party Release, and the Exculpation.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Plan Injunction set forth in Article IX, Section E of the Plan.

**QQ.    Retention of Jurisdiction.**

53.     Except as otherwise provided in any of the Plan Documents, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, but not limited to, the matters set forth in Article XII of the Plan.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**A.      Confirmation.**

54.     The Plan, together with the other Plan Documents, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan Documents are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved.  The Debtors are authorized to implement their provisions and consummate the Plan, including taking all actions necessary, advisable, or appropriate to finalize the Plan Documents and to effectuate the Plan and the Restructuring Transactions, without any further authorization except as may be expressly required by the Plan or this Confirmation Order.

**B.      Objections.**

55.     All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

C.    **Omission of Reference to Particular Plan Provisions.**

56.    The failure to specifically describe or include any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effects, and enforceability as every other provision of the Plan and the Plan Documents.

D.    **Deemed Acceptance of the Plan as Modified.**

57.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, subject to modifications, if any.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

E.    **Plan Implementation.**

58.    General Authorization.  The transactions described in the Plan, the Restructuring Support Agreement, the Plan Documents, and this Confirmation Order, including the Restructuring Transactions, are hereby approved.  On or before the Effective Date, and after the Effective Date, as necessary, and without any further order of the Court, other authority, or corporate action, the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable, and their respective directors, managers, officers, employees, members, agents (including stock transfer agents and Distribution Agents), attorneys, financial advisors, and investment bankers are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable laws to and shall (a) grant, issue, execute, deliver, file, record, or enter into any agreement, document, or security, and the documents contained in the Plan or the Plan Documents

or described in the definition of Restructuring Transactions (as modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements), or any other documents related thereto in furtherance of the Plan and (b) take any action necessary, advisable, or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, the Restructuring Transactions (as set forth in the Description of Restructuring Transactions or otherwise), or this Confirmation Order, including, but not limited to, the formation of the Reorganized Debtors, the contribution of the assets of Aegean to a newly formed and directly and wholly-owned subsidiary of Aegean (thereafter being the Reorganized Aegean), the creation of, and the transfer of the Litigation Claims to, the Litigation Trust, the funding of the Litigation Trust Loan, the execution, delivery, and filing, if applicable, of the Professional Fee Escrow, the Aegean Unsecured Claims Cash Pool Account, any documentation related to the Reorganized Aegean Equity Interests or the Restructuring Transactions, any actions necessary, advisable, or appropriate to effectuate the issuance and/or distribution of any shares of the Reorganized Aegean Equity Interests to be issued pursuant to the Plan (including issuing one hundred percent (100%) of such shares of Reorganized Aegean Equity Interests to Mercuria), and any actions necessary, advisable, or appropriate to effectuate the transfer of Interests in: (i) Aegean Bunkering (USA), LLC to Mercuria U.S. Asset Holdings, LLC, (ii) Aegean Oil Terminal Corp., Aegean (Fujairah) Bunkering S.A., and Aegean Marine Petroleum LLC to MPT Commodities Ltd., and (iii) Reorganized Aegean to Mercuria Asset Holdings (Hong Kong) Limited, and the dissolution of Aegean. For the avoidance of doubt, the Reorganized Aegean Equity Interests that are issued to Mercuria shall be shares of Newco and no shares of Aegean shall be distributed to Mercuria pursuant to the Plan. Aegean shall be dissolved, or deemed dissolved, on or as soon as reasonably practicable after the Effective Date without the need of filing any certificates of

dissolution or any other documents of dissolution as may be required by any such jurisdictions and concurrently with such dissolution each officer and director of Aegean shall cease to serve in such roles. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, among other things, (x) the incurrence of all obligations contemplated by the Plan, the Restructuring Transactions, the Plan Documents, or this Confirmation Order and the making of all distributions under the Plan, the Plan Documents, or this Confirmation Order; and (y) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors, the Reorganized Debtors, Mercuria, the Litigation Trustee, or any officer, director, agent, or manager thereof to take any and all actions necessary, advisable, or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents, or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law or the rules of any stock exchange, any of the foregoing actions that would otherwise require approval of the equity holders, directors, or managers (or any equivalent body) of the Debtors, the Reorganized Debtors, Mercuria, or the Litigation Trustee, as applicable, shall be deemed to have occurred and shall be in effect from and after the Effective Date without any further action by the equity holders, directors, or managers (or any equivalent body) of the Debtors, the Reorganized Debtors, or the Litigation Trustee. Prior to, on, or as reasonably practicable after the Effective Date, the Debtors, the Reorganized Debtors, Mercuria, or the Litigation Trustee shall be authorized to file any

27

documents as deemed necessary or otherwise required to be filed in such jurisdictions so as to effectuate the provisions of the Plan, the Plan Documents, and the Restructuring Transactions. Any or all documents contemplated herein shall be accepted by each of the respective filing offices and recorded, if required, in accordance with applicable law. All counterparties to any documents described in this paragraph are hereby authorized to execute such documents as may be required or provided by such documents, without any further order of the Court. Each of the Plan Documents, once executed, constitutes a legal, valid, binding, and authorized obligation of the respective parties thereto, enforceable in accordance with its terms, and the terms contained in each such executed Plan Document shall supersede any description of such terms contained in the Plan or the Plan Supplement or otherwise set forth in a term sheet or unexecuted version of such document.

59.    <u>No Action</u>.    Pursuant to section 1142(b) of the Bankruptcy Code and other applicable law, this Confirmation Order shall constitute authorization for the Debtors, the Reorganized Debtors, Mercuria, or the Litigation Trustee, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents, the Restructuring Transactions (as set forth in the Description of Restructuring Transactions or otherwise), this Confirmation Order, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, the Plan Documents, the Restructuring Transactions, or this Confirmation Order, and the respective directors, managers, stockholders, or members of the Debtors, the Reorganized Debtors, or the Litigation Trustee shall not be required to take any actions in connection with the implementation of the Plan, the Plan Documents, the Restructuring Transactions, or this

Confirmation Order.  The Plan Documents are hereby approved, adopted, and effective upon the Effective Date.

**F.    Issuance and Distribution of Reorganized Aegean Equity Interests.**

60.    The last paragraph of Article IV.C of the Plan shall be replaced in its entirety with the following.  On the Effective Date, Reorganized Aegean and each of the other Reorganized Debtors shall be private companies.  As such, upon the Effective Date, the Reorganized Aegean Equity Interests shall not be registered under the Securities Act, and shall not be listed for public trading on any securities exchange.  Reorganized Aegean and any of the Reorganized Debtors shall have taken all necessary action concurrent with or immediately after the Effective Date to suspend any requirement to (x) be a reporting company under the Securities Exchange Act and (y) file reports with the Securities and Exchange Commission or any other entity or party.  In order to prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the Reorganized Aegean Organizational Documents may impose certain trading restrictions, and the Reorganized Aegean Equity Interests shall be subject to certain transfer and other restrictions pursuant to the Reorganized Aegean Organizational Documents.

**G.    Binding Effect.**

61.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Documents, and this Confirmation Order shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not:  (a) the Claim or Interest is Impaired under the Plan; (b) such Holder has accepted or rejected the Plan; (c) such Holder has failed to vote to accept or reject the Plan; (d) such Holder is entitled to a distribution under the Plan; (e) such Holder will receive or retain any property or interests in property under the Plan; and (f) such Holder has filed a Proof of Claim in the

Chapter 11 Cases. The Plan, the Plan Documents, and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**H.    Plan Classification Controlling.**

62.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes. All rights of the Debtors, the Reorganized Debtors, and, solely with respect to Claims or Interests in Classes 4A, 7, and 8, the Litigation Trustee, as applicable, to challenge, object to, settle, or seek to reclassify Claims and Interests are expressly reserved as set forth in the Plan.

**I.    Effective Date.**

63.    Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are presumed to have accepted or deemed to have rejected the Plan), all Entities that are parties to or are subject

to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors or the Reorganized Debtors.

**J.    Restructuring Transactions.**

64.    The Debtors or the Reorganized Debtors, as applicable, are authorized to take all actions as may be necessary or appropriate as reasonably determined by the Debtors and Mercuria, to implement and consummate the Restructuring Transactions (as may be modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements) pursuant to the Plan, the Plan Documents, and this Confirmation Order and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder.    The Restructuring Transactions pursuant to the Plan and the Plan Documents are approved and authorized in all respects.    The Debtors, the Reorganized Debtors, as applicable, or Mercuria, are authorized, without the need for any future corporate action, to take all actions necessary, appropriate, or desirable to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Documents, and the Restructuring Transactions.

**K.    Distributions.**

65.    All distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved.    The Reorganized Debtors shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Reorganized Debtors, any and all documents applicable to such distributions in accordance with Article VII of the Plan.

L.    **Securities Registration Exemption.**

66.    All shares or units of Reorganized Aegean Equity Interests, including Reorganized Aegean Equity Interests to be issued to Holders of DIP Credit Facility Claims (or designated Affiliates thereof) hereunder, in each case in exchange for such Claims, will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon (i) section 1145 of the Bankruptcy Code or (ii) pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.  All shares or units of Reorganized Aegean Equity Interests issued under the Plan in reliance upon section 1145 of the Bankruptcy Code are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to or in connection with the offering, issuance, distribution, or sale of Securities.

67.    The Reorganized Aegean Equity Interests issued pursuant to section 1145 of the Bankruptcy Code:  (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any holder thereof that (1) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (2) has not been such an "affiliate" within ninety (90) days of such transfer, (3) has not acquired the Reorganized Aegean Equity Interests from an "affiliate" within one year of such transfer, and (4) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code, subject (in the case of the Reorganized Aegean Equity Interests) to any applicable restrictions on transfer as may be set forth in the Reorganized Debtor Organizational Documents or the Shareholders Agreement.  To the extent any shares or units of Reorganized Aegean Equity Interests are issued in reliance on section 4(a)(2) of the Securities Act or Regulation D thereunder, such shares or units will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an

32

applicable exemption from registration under the Securities Act and other applicable law.  The Debtors intend that the Litigation Trust Interests shall not be "securities" under applicable laws and believe the Litigation Trust Interests should not be deemed to be "securities," but to the extent such units are deemed to be "securities," the Debtors believe the issuance of such units under the Plan is exempt, pursuant to (i) section 1145 of the Bankruptcy Code or (ii) pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.

68.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no entity (including, for the avoidance of doubt, DTC or any stock transfer agent) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized Aegean Equity Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**M.**    **Retained Assets.**

69.    To the extent that the retention by the Debtors or the Reorganized Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors or the Reorganized Debtors (a) is or shall be a legal, valid, and effective transfer of property; (b) vests or shall vest the Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order; (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law; and (d) does not and shall not subject the Debtors or the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

N.    **Litigation Trust.**

70.    All provisions regarding the Litigation Trust under Article V of the Plan are hereby approved.

71.    Creation and Governance of the Litigation Trust.    On the Effective Date, the Litigation Trust shall be funded from the proceeds of the Litigation Trust Loan, the Debtors shall transfer to the Litigation Trust all of their rights, title, and interest in and to all of the Litigation Claims, and the Litigation Trustee shall execute the Litigation Trust Agreement and take all steps necessary to establish the Litigation Trust in accordance with the general terms set forth in the Plan and the Litigation Trust Agreement, which terms are hereby approved.  The Litigation Trustee shall then hold and distribute the Litigation Trust Assets in accordance with the provisions of the Plan and the Litigation Trust Agreement.  In the event of any conflict between the terms of the Plan, this Confirmation Order, and the Litigation Trust Agreement, each such document shall have the controlling effect in the following rank order:  the Confirmation Order, the Litigation Trust Agreement, and the Plan.

72.    Appointment of the Litigation Trustee and Litigation Trust Advisory Board.  The Litigation Trustee shall be the exclusive trustee of the assets of the Litigation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(4).  The powers, rights and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article V of the Plan.  The Litigation Trustee shall hold and distribute the Litigation Trust Assets in accordance with the provisions of the Plan and the Litigation Trust Agreement.  The Litigation Trust shall be governed by the Litigation Trust Advisory Board as set forth in the Litigation Trust Agreement.

**O.**     **Treatment of Executory Contracts and Unexpired Leases.**

73.     The assumption (or assumption and assignment) and rejection of Executory Contracts and Unexpired Leases as set forth in Article VI of the Plan is hereby authorized and approved.  Assumption (or assumption and assignment) of the Executory Contracts and Unexpired Leases listed in the Assumed Executory Contracts and Unexpired Leases Schedule are hereby authorized.

74.     To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control," "assignment," or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan, including the Restructuring Transactions, shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto.  For the avoidance of doubt, no Restructuring Transaction shall be deemed to violate the terms of any assumed Unexpired Lease of non-residential real property or any other Executory Contract.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

75.     The Debtors, with the reasonable consent of Mercuria, or the Reorganized Debtors, as applicable, may alter, amend, modify, or supplement the Rejected Executory Contracts and Unexpired Leases Schedules at any time through and including the date that is sixty (60) days after the Effective Date, which amended schedule shall be Filed with the Bankruptcy Court; *provided, however,* after the Effective Date, the Reorganized Debtors may not alter, amend, modify, or

supplement the Rejected Executory Contracts and Unexpired Leases with respect to Executory Contracts or Unexpired Leases of Aegean without the reasonable consent of the Litigation Trustee.

76.     The Debtors or Reorganized Debtors, as applicable, shall provide notice of any amendments to the Amended Rejected Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby, and such party will have fourteen (14) days following the Filing of such Amended Schedule to file an objection thereto. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, including any proposed cure amount, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption, including any proposed cure amount. Notwithstanding anything in the Plan to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Rejected Executory Contracts and Unexpired Leases Schedule after such 14-day deadline, a Cure Notice with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider such objection.

77.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court. Any disputed cure

amount shall be determined in accordance with the procedures set forth in Article VI, Sections C and D of the Plan, and applicable bankruptcy and nonbankruptcy law.

78.    Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be disallowed upon an order of the Bankruptcy Court, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, the Litigation Trust, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.

## P.    Exemption from Transfer Taxes.

79.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto (including to the Litigation Trust and the Disputed Claims Reserve and by the Litigation Trustee pursuant to the Litigation Trust Agreement) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept

for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**Q.**    **[Reserved]**

80.    **[Reserved]**

**R.**    **Filing and Recording.**

81.    This Confirmation Order is, and shall be, binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

**S.**    **Tax Withholding.**

82.    In accordance with the provisions of the Plan and subject to Article VII, Section F of the Plan, to the extent applicable, Reorganized Aegean, the Reorganized Debtors, and the Distribution Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent, as

applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, and (b) withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate, including using commercially reasonable efforts to obtain, if such information is not already in the possession of the Reorganized Debtors or the Distribution Agent, a properly executed Internal Revenue Service Form W-9 or Form W-8 (as applicable) and any other forms required by any applicable law (or such Holder otherwise establishes eligibility for an exemption).

**T.    Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies.**

83.    Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, including the Litigation Trust Documents, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all debts (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors) that arose before the date of confirmation of the Plan, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim has accepted the Plan.  In addition, Interests in the Debtors shall either be retained or cancelled in accordance with the provisions of the Plan.

84.     To the extent that the Plan specifically incorporates settlements or compromises of claims or controversies, those settlements and compromises are approved as fair, equitable, and reasonable.

**U.    The Releases, Injunction, Exculpation, Discharge, and Related Provisions under the Plan.**

85.     The releases, injunctions, exculpations, discharge, and related provisions set forth in Article IX of the Plan (as modified herein) are hereby approved and authorized, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:  (a) Discharge (Article IX.A); (b) Debtor Release (Article IX.B); (c) Third-Party Release (Article IX.C); (d) Exculpation (Article IX.D); (e) Injunction (Article IX.E); and (f) Release of Liens (Article IX.H).

86.     Notwithstanding anything to the contrary in this Confirmation Order or the Plan (including the Releases set forth in the Plan), nothing contained in this Confirmation Order or the Plan shall impair, effect, modify, or release (a) postpetition Administrative Claims that are (1) Professional Fee Claims (subject to Allowance pursuant to the Plan and/or the Interim Compensation Order if such Claims have not already been Allowed as of the Effective Date) or (2) Administrative Claims that may be Allowed for which requests for payment are timely Filed and served on the Reorganized Debtors pursuant to the procedures specified in this Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date, (b) Administrative Claims that are not required to be Filed and served on the Reorganized Debtors in accordance with Article II.A of the Plan and, in each case, subject to such Claims being Allowed, including, but not limited to, (1) Holders of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code timely filed in accordance with the Claims Bar Date Order; (2) Administrative Claims paid in full in Cash during the Chapter 11 Cases; and

(3) Holders of Administrative Claims expressly exempted from compliance with the Claims Bar Date Order.

87.     The exculpation provision set forth in Article IX.D of the Plan shall be replaced in its entirety with the following:

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING EITHER THE DEBTOR RELEASE OR THE THIRD-PARTY RELEASE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION BASED ON THE NEGOTIATION, EXECUTION, AND IMPLEMENTATION OF ANY TRANSACTIONS APPROVED BY THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES, INCLUDING THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE CONFIRMATION ORDER, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT (INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, AND THE IMPLEMENTATION OF THE RESTRUCTURING TRANSACTIONS CONTEMPLATED BY THE PLAN, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF, AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR IN THE PLAN, OTHER THAN WITH RESPECT TO THE REORGANIZED DEBTORS AND THE NON-DEBTOR SUBSIDIARIES THEMSELVES, THE EXCULPATION SET FORTH ABOVE SHALL NOT RELEASE OR BE AN EXCULPATION WITH RESPECT TO (I) ANY LITIGATION CLAIMS (SUBJECT TO THE LIMITATIONS SET FORTH IN ARTICLE IX.F HEREOF), OR (II) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**V.**    **Clarification Regarding Rights under D&O Liability Insurance Policy.**

88.    For the avoidance of doubt, nothing in the Plan, including Article V.O, is intended to or may be interpreted as enlarging or diminishing the Debtors', Reorganized Debtors', Litigation Trustee's, Lead Securities Plaintiff's (individually or in its capacity as such), or any other Entity's right to pursue any D&O Liability Insurance Policies for the satisfaction of a claim for which the proceeds any such D&O Liability Insurance Policies may be available.  The express terms and conditions of the applicable D&O Liability Insurance Policies shall control in all cases.  All rights, remedies, claims, and defenses of all parties in interest with respect to any such D&O Liability Insurance Policies (or the proceeds thereof) for satisfaction of any such claims are preserved, including, without limitation, the rights and defenses of each insured party, underwriter, carrier or other Entity who is an issuer or insurer under all D&O Liability Insurance Policies or who may have a responsibility for the payment of any proceeds therefrom.  Notwithstanding anything contained herein or in the Plan to the contrary, the advancement of Defense Costs by an Insurer (each as defined in the applicable D&O Liability Insurance Policies) after the Effective Date of the Plan pursuant to the terms of any applicable D&O Liability Insurance Policy will not violate any injunctions or stays in effect in the Chapter 11 Cases, including those pursuant to sections 105 or 362 of the Bankruptcy Code, contained in the Plan or this Confirmation Order, or any other order of this Court.

**W.**    **Securities Litigation Jurisdiction.**

89.    For the avoidance of doubt, nothing in the Plan or the Confirmation Order (a) enlarges or diminishes the jurisdiction of the District Court with respect to claims asserted or to be asserted against any non-Debtors in the Securities Litigation or (b) affects the rights (if any) of the Lead Plaintiff (on behalf of itself and/or the proposed class in the Securities Litigation) to seek withdrawal of the reference to the Bankruptcy Court or related relief with respect to any

Section 510(b) Claims, or the rights of any other party in interest to object to withdrawal of the reference.

## X.    **Certain Government Matters.**

90.     As to any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) of the United States or any State thereof, any U.S. Territory, or any local government within the United States (for purposes of this Section W, each, a "Domestic Governmental Unit"), nothing in the Plan or this Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or Reorganized Debtors are entitled to under the Bankruptcy Code. The discharge, release, and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar any such Domestic Governmental Unit from, subsequent to the entry of this Confirmation Order, pursuing any police or regulatory action.

91.     Accordingly, notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall discharge, release, impair or otherwise preclude:  (1) any liability to any Domestic Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any Domestic Governmental Unit arising on or after the Effective Date; (3) any valid right of setoff or recoupment of any Domestic Governmental Unit against any of the Debtors; or (4) any liability of the Debtors or Reorganized Debtors under police or regulatory statutes or regulations to any Domestic Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Effective Date.  Nor shall anything in this Confirmation Order or the Plan:  (i) enjoin or otherwise bar any Domestic Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest a court (including the Bankruptcy Court, to the extent applicable), commission, or

tribunal, if any, of jurisdiction to determine whether any liabilities asserted by any Domestic Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

92.    (a)    Moreover, nothing in the Confirmation Order or the Plan shall release or exculpate any non-debtor, including any Released Parties and/or Exculpated Parties, from any liability to any Domestic Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties and/or Exculpated Parties, nor shall anything in this Confirmation Order or the Plan enjoin any Domestic Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability to a Domestic Governmental Unit; *provided*, *however*, that this paragraph shall not (i) limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code; (ii) diminish the scope of any exculpation to which any party, including the Exculpated Parties, is entitled under section 1125(e) of the Bankruptcy Code; or (iii) diminish the scope of any release to which any Released Parties are entitled to the extent provided by and subject to the limitations of the provisions of 92(b) below.

(b)    In the event the Court concludes that any Released Parties are entitled to any nonconsensual third-party release in accordance with the standard in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), such release shall not bar any Domestic Governmental Unit from pursuing any police or regulatory action, or from pursuing any claim arising from the exercise or enforcement of any police or regulatory power or authority against any non-debtor (together, the "Police or Regulatory Actions and Claims"), or affect any aspect of such Police or Regulatory Actions and Claims, such as the standard for liability or any available defenses.  Police or Regulatory Actions and Claims include, but are not limited to, any criminal, civil or

44

administrative enforcement of any law, regulation, rule or other regulatory obligation, such as liabilities arising under tax laws (including the Internal Revenue Code), environmental laws, civil fraud or false claim laws, securities laws, criminal laws, and any statutory or common-law claims associated with any fraud on or misstatement made to a Domestic Governmental Unit; and further include the assessment and collection of any judgments, fines, taxes, penalties, or other monetary recoveries, as well as the pursuit and imposition of any non-monetary relief, associated with the exercise of these police or regulatory powers.  Furthermore, with respect to any potential release of any claim by a Domestic Governmental Unit against a non-debtor, this Order does not resolve, and each Domestic Governmental Unit explicitly reserves its right to dispute, whether: (i) this Court had jurisdiction to order such a release of the claims of the particular Domestic Governmental Unit, including whether this Court had jurisdiction over the Domestic Governmental Unit; (ii) the particular Domestic Governmental Unit waived its sovereign immunity for this Court to bind it; and/or (iii) the release of a claim complied with due process, including whether the particular Domestic Governmental Unit received sufficient notice of the release.

93.    Nothing contained in the Plan or this Confirmation Order shall be deemed to determine the federal tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Plan or this Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Plan or this Confirmation Order be deemed to expand or diminish the jurisdiction of the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment.

94.     For the avoidance of doubt, nothing contained in the foregoing paragraphs 90 - 94 shall modify the scope of the Debtor Release as set forth in Article IX, Section B.

**Y.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

95.     In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) days after the Effective Date, the Debtors shall cause a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Confirmation and Effective Date") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice.  To supplement the notice procedures described in the preceding sentence, no later than fourteen (14) days after the Effective Date, the Reorganized Debtors must cause the Notice of Confirmation and Effective Date, modified for publication, to be published in each of the *The New York Times* (National and International Editions), *Financial Times* (International Edition), and *Tradewinds*.  Mailing and publication of the notices described in this paragraph in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

96.     The Notice of Confirmation and Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order and occurrence of the Effective Date to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

97.     Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File an application for final allowance of such Professional Fee Claim no later than the first Business Day that is forty-five (45) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.  Professionals shall estimate in good faith their

unpaid Professional Fee Claims and other unpaid fees and unreimbursed expenses incurred in rendering services to the Debtors or the Committee, as applicable, before and as of the Effective Date and shall deliver such good faith estimate to the Debtors and Mercuria no later than five (5) Business Days prior to the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors, in consultation with Mercuria, shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.  The Reorganized Debtors shall pay Allowed Professional Fee Claims in Cash in the amount this Court allows, from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Claims Estimate on the Effective Date and otherwise in accordance with the Plan.

98.     Except as otherwise provided in the Plan, requests for payment of Administrative Claims, other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code which were required to be Filed by the Claims Bar Date, must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims, but do not File and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Litigation Trust, or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date

without the need for any objection from the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, or any action by the Court.

**Z.      Release of Liens.**

99.      Except (a) with respect to the Liens securing an Allowed Other Secured Claim in accordance with Article III.B.1 of the Plan, to the extent elected by the Debtors, in consultation with Mercuria,  of the Plan, or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, other than the Liens and security interests securing the DIP Facilities which, if not otherwise paid in full in Cash, shall remain in full force and effect and shall secure all obligations arising under, shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**AA.     DIP Credit Facility Claims.**

100.      To the extent not fully satisfied prior to the Effective Date in accordance with the terms of the DIP Financing Orders, all DIP Credit Facility Claims shall be deemed Allowed as of the Effective Date in an amount not less than (1) the principal amount outstanding under the DIP Credit Agreements on such date, (2) all accrued and unpaid interest thereon to the date of payment, and (3) all accrued and unpaid fees, expenses and noncontingent indemnification obligations, in each case as and to the extent payable under the DIP Credit Agreements and the DIP Financing Orders.  In full and final satisfaction, settlement, release, and discharge of, and in exchange for

each Allowed DIP Credit Facility Claim, Mercuria (or its designated affiliate(s)) shall receive

one hundred percent (100%) of the Reorganized Aegean Equity Interests in accordance with the

Description of the Restructuring Transactions provided with the Plan Supplement and approved

by the Court through this Confirmation Order.  For the avoidance of doubt, all fees, costs, and

expenses required to be paid under the terms of the DIP Facilities and the DIP Credit Facility

Documents, including the fees of Mercuria, the DIP Agents, and the DIP Lenders, and the fees and

expenses of counsel for each of Mercuria, the DIP Agents, and the DIP Lenders, shall be paid in

Cash or otherwise settled in the manner contemplated under the Restructuring Transactions.  For

the avoidance of doubt, in accordance with the applicable DIP Financing Orders, all parties' rights,

if any, to challenge or object to, among other things, the roll up of the Prepetition Secured Credit

Facilities shall be irrevocably extinguished, released, and discharged upon the occurrence of the

Effective Date.

**BB.    Intercompany Claims.**

101.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan,

any Claims of any Non-Debtor Subsidiary against any Debtor, Reorganized Debtor, and/or any of

their respective Estates shall be deemed an Intercompany Claim.

**CC.    Cancellation of Existing Securities and Agreements.**

102.    Except as otherwise provided in the Plan, the Restructuring Transactions, or any

agreement, instrument, or other document incorporated herein or to be put in place on the Effective

Date, on the Effective Date, all notes, instruments, certificates, equity security, share, bond,

indenture, purchase right, option, warrant, or other documents evidencing or creating any

indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or

Interest, including the obligations of the Debtors under the DIP Facility Documents, Prepetition

Secured Credit Documents, and the Unsecured Notes Indentures, shall be terminated and cancelled

49

and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that (a) the DIP Credit Facility Documents and all related agreements, documents and instruments executed by the Debtors, Mercuria, the DIP Agents, or the DIP Lenders shall continue in effect solely with respect to any obligations thereunder governing the relationships between any or all of the Debtors, Mercuria, the DIP Agents and the DIP Lenders that may survive termination or maturity of the DIP Facilities in accordance with the terms thereof (including but not limited to those provisions relating to the DIP Agents' and DIP Lenders' rights to expense reimbursement, indemnification and similar amounts) or as contemplated under the Restructuring Transactions; and (b) the Prepetition Secured Credit Facility Documents and all related agreements, documents and instruments executed by the Debtors, Mercuria, the Prepetition Secured Credit Facility Agents or the Prepetition Secured Credit Facility Lenders shall continue in effect solely with respect to any obligations thereunder governing the relationships between any or all of the Debtors, Mercuria, the Prepetition Secured Credit Facility Agents and the Prepetition Secured Credit Facility Lenders that may survive termination or maturity of the Prepetition Secured Credit Agreements in accordance with the terms thereof (including but not limited to those provisions relating to the Prepetition Secured Credit Facility Agents' and Prepetition Secured Credit Facility Lenders' rights to expense reimbursement, indemnification and similar amounts).  On the Effective Date, each Holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such Holder of such Claim.  Such surrendered certificate or instrument shall be deemed cancelled as set forth herein.

103.    Notwithstanding the foregoing or anything to contrary in the Plan or this Confirmation Order, the Unsecured Notes Indentures shall remain in effect for the purposes of (a) enabling Holders of Allowed Unsecured Notes Claims to receive distributions under the Plan as provided therein and (b) allowing and preserving the rights of the Unsecured Notes Indenture Trustees to (i) make distributions to Holders of Unsecured Notes Claims pursuant to this Plan, (ii) maintain and exercise their respective charging liens against any such distributions, (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making such distributions, (iv) allow and preserve the rights of the Unsecured Notes Indenture Trustees to maintain and enforce (A) any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim, entitlement, or protection that the Unsecured Notes Indenture Trustees may have under the applicable Unsecured Notes Indenture against any Person or Entity other than the Reorganized Debtors or Mercuria, and (B) any exculpations of the Unsecured Notes Indenture Trustees under the applicable Unsecured Notes Indenture, (v) exercise their rights and obligations relating to the interests of their holders pursuant to the applicable Unsecured Notes Indentures, and (vi) appear and be heard in these Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court.  For the avoidance of doubt, none of the Debtors, the Reorganized Debtors, nor Mercuria shall have any liability or funding obligations whatsoever for any of the foregoing costs, expenses, or liabilities incurred by the Unsecured Notes Indenture Trustees after the Effective Date.  On the Effective Date, all duties and responsibilities of the Unsecured Notes Indenture Trustees under the applicable Unsecured Notes Indenture shall be fully discharged unless otherwise specifically set forth in or provided for under the Plan or this Confirmation Order.  For the avoidance of doubt, the Unsecured Notes Indenture Trustees shall have no duties to the holders of Unsecured Notes under the Unsecured Notes Indentures following

51

the Effective Date other than to distribute amounts actually received by the Unsecured Notes Indenture Trustees from the Debtors or the Litigation Trustee in accordance with the Plan and each respective Unsecured Notes Indenture, subject to the right of the Unsecured Notes Indenture Trustees to exercise their respective charging liens against any such distribution, including for purposes of payment of the Unsecured Notes Indenture Trustees Fees and Expenses. The Unsecured Notes Indenture Trustees are authorized but not required to assist the Litigation Trustee in the distribution of Litigation Trust Interests and/or cash distributions made by the Litigation Trustee upon any such terms as each Unsecured Notes Indenture Trustee and the Litigation Trustee may agree to from time to time. For the avoidance of doubt, the Unsecured Notes Indenture Trustees shall have no role and no duties with respect to federal or state income tax compliance by the Litigation Trust or any Holders of Unsecured Notes Claims who receive distributions under the Plan or from the Litigation Trust, whether or not distributed by the Unsecured Notes Indenture Trustees, provided that if the Unsecured Notes Indenture Trustees make distributions under the Plan, they shall also provide to the distribute any tax reporting instructions received from the Litigation Trust.

**DD.    Return of Deposits.**

104.    All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Deposits"), whether pursuant to the *Order Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests and Granting Related Relief* [Docket No. 151] or otherwise, including, water, sewer service, telecommunications, data, cable, waste disposal, gas, electric, and other similar services, are directed to return such Deposits to the

52

Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, on the Effective Date, and the Reorganized Debtors are also entitled to withdraw and keep any and all Deposits. Nothing in this paragraph shall be deemed to constitute a ruling as to the rights of any utility, after the Effective Date, to require security or deposits under the provisions of applicable non-bankruptcy law.

**EE.** **Effect of Confirmation Order on Other Orders.**

105.    Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

**FF.** **Inconsistency.**

106.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control. In the event of an inconsistency between the Restructuring Support Agreement and the Plan, the Plan shall control. In the event of an inconsistency between this Confirmation Order and any other document, this Confirmation Order shall control.

**GG.** **Injunctions and Automatic Stay.**

107.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**HH.    Authorization to Consummate.**

108.    The Debtors are authorized to consummate the Plan and the Restructuring Transactions and finalize and implement the Plan Documents at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in Article X of the Plan.

**II.    Substantial Consummation.**

109.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**JJ.    No Waiver.**

110.    The failure to specifically include any particular Plan Document or provision of the Plan or Plan Document in this Confirmation Order will not diminish the effectiveness of such document or Plan provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

**KK.    Severability.**

111.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified except in accordance with Article XI, Section A of the Plan; and (c) nonseverable and mutually dependent.

**LL.    Effect of Non-Occurrence of Effective Date.**

112.    If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute

an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect; *provided*, that all provisions of the Restructuring Support Agreement and DIP Credit Facility Documents that survive termination of such agreement or order shall remain in effect in accordance with the terms thereof.

**MM.    Dissolution of the Committee.**

113.    On the Effective Date, the Committee will dissolve; *provided*, *however*, that, following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes:  (a) applications, and any relief related thereto, for compensation by Professionals and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeal to which the Committee is a party.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the Committee Members or advisors to the Committee after the Effective Date, except for the limited purposes identified above.

**NN.    Committee Members' Fees and Expenses.**

114.    The Committee Members shall file an application  reflecting their reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of counsel for Committee Members)  with the Bankruptcy Court by no later than March 29, 2019.  A hearing shall be held before the Bankruptcy Court to address any issues in connection therewith on April 1, 2019, at 11:00 a.m. (Eastern Time).

**OO.    Reports.**

115.    After the Confirmation Date, the Debtors have no obligation to File with the Bankruptcy Court or serve on any parties reports that the Debtors were obligated to File under the Bankruptcy Code or a prior order of the Bankruptcy Court, including monthly operating reports

(except for any periods for which a monthly operating report was not Filed before the Confirmation Date), ordinary course professional reports, and monthly or quarterly reports for Professionals; provided, however, that the Debtors will comply with the U.S. Trustee's quarterly reporting requirements.

**PP.    Conditions to Effective Date.**

116.    The Plan shall not become effective unless and until the conditions set forth in Article X of the Plan have been satisfied or waived pursuant to Article X, Section B of the Plan. Each of the conditions set forth in Article X of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

**QQ.    Reorganized Aegean Obligations.**

117.    For the avoidance of doubt, Newco shall be Reorganized Aegean for all purposes under the Plan, and on or as promptly as practicable after the Effective Date, Aegean shall be deemed dissolved and Reorganized Aegean shall have the obligations, if any, arising under the chapter 11 plan of reorganization.

**RR.    Waiver of 14-Day Stay.**

118.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062), this Confirmation Order is effective immediately and not subject to any stay.

**SS.    Modification of Plan Supplement.**

119.    Subject to the terms of the Plan, this Confirmation Order and the Restructuring Support Agreement, the Debtors are authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions necessary and appropriate to effect the transactions contemplated therein through, including and following the Effective Date.

**TT.**     **Post-Confirmation Modification of the Plan.**

120.     The Debtors are hereby authorized to amend or modify the Plan at any time prior

to the substantial consummation of the Plan, but only in accordance with section 1127 of the

Bankruptcy Code and Article XI, Section A of the Plan, without further order of this Court.

**UU.**     **Local Bankruptcy Rules 3021-1(b) and 3022-1**

121.     Pursuant to Local Bankruptcy Rule 3021-1(b), the time table for achieving

substantial consummation of the Plan and entry of a final decree closing the Chapter 11 Cases is

as follows:

a.     Substantial Consummation of the Plan.  The Debtors anticipate that the Effective Date and substantial consummation of the Plan will occur in April, 2019, or as soon as reasonably practicable thereafter.

b.     Distributions.  On the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), the Distribution Agent shall make initial distributions under the Plan on account of each Holder of an Allowed Claim in the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class, consistent with the provisions of Article IV of the Plan.

c.     Resolution of Claims.  The Debtors or Reorganized Debtors, as applicable, or the Litigation Trust shall resolve Disputed Claims against the Estates consistent with the provisions of Article VIII of the Plan.

d.     Post-Confirmation Status Reports.  The Reorganized Debtors shall file post-Confirmation disbursement and status reports every six (6) months until the Chapter 11 Cases are closed by means of a final decree, converted to a case under chapter 7, or dismissed, whichever happens earlier.

e.     Motion for Final Decree.  Consistent with Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1, no later than fourteen (14) days following the full administration of the applicable Estates, one or more Reorganized Debtors shall file, on notice to the United States Trustee, an application and a proposed order for a final decree.

**VV.**     **Retention of Jurisdiction**

122.     Notwithstanding the entry of this Confirmation Order, from and after the Effective

Date, this Court shall, to the fullest extent legally permissible, retain exclusive jurisdiction over

57

the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including all matters listed in Article XII of the Plan, as well as for the purposes set forth in section 1142 of the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.  To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible.

## WW.    **Survival of Final DIP Order.**

123.    Notwithstanding anything herein or the Plan or any Plan Document to the contrary, the Final DIP Order shall survive the Effective Date.

## XX.    **Final Order.**

124.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

Dated:  New York, New York
          March 29, 2019

                              s/Michael E. Wiles
                              THE HONORABLE MICHAEL E. WILES
                              UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Plan of Reorganization**

## <u>Exhibit 2</u>

**Notice of Confirmation and Effective Date**