| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | FOR PUBLICATION |
|---|---|

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AEGEAN MARINE PETROLEUM NETWORK<br>INC., *et al.*, | ) Case No. 18-13374 (MEW) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) |

# BENCH DECISION DENYING REQUEST FOR IMPOSITION OF NONCONSENSUAL THIRD-PARTY RELEASES IN CONNECTION WITH <u>CONFIRMATION OF A PROPOSED PLAN OF REORGANIZATION</u>

A P P E A R A N C E S :

KIRKLAND & ELLIS LLP
   Attorneys for Debtors and Debtors in Possession
   300 North LaSalle
   Chicago, IL 60654
     BY:  MARC KIESELSTEIN
          BEN WINGER

AKIN GUMP STRAUSS HAUER & FELD LLP
   Attorneys for the Creditors' Committee
   One Bryant Park
   New York, NY 10036
     BY:  KEVIN ZUZOLO
          ABID QURESHI

MILBANK, TWEED, HADLEY & MCCLOY LLP
   Attorneys for Mercuria Asset Holdings (Hong Kong) Limited
   55 Hudson Yards
   New York, NY 10001
     BY:  ALEXANDER B. LEES
          LAUREN C. DOYLE
          ABHILASH RAVAL

SILVERMAN ACAMPORA
   Attorneys for Mercuria US Asset Holdings, LLC
   100 Jericho Quadrangle, Suite 300
   Jericho, NY 11753
     BY:    RONALD J. FRIEDMAN

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
  3 World Financial Center
  New York, NY 10281
    BY:  ALAN S. MAZA

LOWENSTEIN SANDLER LLP
  Attorneys for Utah Retirement System
  1251 Avenue of the Americas
  New York, NY 10020
    BY:  MICHAEL S. ETKIN

WHITE & CASE LLP
  Attorneys for Oaktree/Hartree
  1221 Avenue of the Americas
  New York, NY 10020
    BY:  HARRISON DENMAN

UNITED STATES DEPARTMENT OF JUSTICE
  Attorneys for the U.S. Trustee
  201 Varick Street, Suite 1006
  New York, NY 10014
    BY:  BRIAN MASUMOTO

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

    I have before me the Debtors' request that I confirm their chapter 11 plan of reorganization (the "Plan").  Objections have been filed by the Securities and Exchange Commission and by the Office of the United States Trustee regarding certain third-party releases that the Debtors have asked me to impose on a non-consensual basis.

    By way of background: the Plan provides a number of protections to the Debtors' directors, officers, and various other parties.  These include both consensual and non-consensual releases, exculpation provisions and injunctions.

    First, the Plan provides for various consensual releases that will be binding only on the following persons as releasors: (i) creditors who were entitled to vote and who voted in favor of the Plan; (ii) creditors and holders of interests who did not vote for the Plan (or who were not

2

eligible to vote) but who nevertheless have submitted forms in which they affirmatively elected to grant the requested releases; and (iii) certain other parties who have agreed to give releases in connection with the Plan, including parties who consented to give releases through their joinder in a Plan Support Agreement that the Court previously approved. I have received no objections to the consensual releases.

Second, in section 9(b) of the Plan the Debtors have agreed to release all of their own claims against a broad group of released parties. The releases by the Debtors cover virtually any kind of claim that might have been asserted by the Debtors, although the releases do carve out certain defined litigation claims and securities law claims that parties will still have the right to pursue. The Debtors' releases of their own claims will have the effect of releasing any derivative claims that creditors or shareholders might have filed with respect to the released matters, and the Plan so states.

It is often the case that a Bankruptcy Court is asked to enforce a debtor's own releases by issuing an injunction that prevents third parties from asserting claims that belonged to the estate and that were released by the debtor, and the Plan in this case includes such an injunction. These are sometimes described as third-party releases or as injunctions against third-party claims, but that is not really an accurate characterization of what they are. Injunctions of this kind are more properly described as injunctions against interference with a debtor's court-approved decisions about the disposition of claims that belonged to the debtor. *See, e.g., MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89 (2d Cir. 1988) (confirming that it was appropriate to enjoin creditors from pursuing claims that belonged to the debtors and that the debtors had released). Injunctions of this kind do not take away claims that belong to third parties; they just enforce the debtors' releases of the debtors' own claims.

3

I have received no objections to the proposed releases of the Debtors' own claims, or to the injunction against efforts by third parties to enforce claims that belonged to the estate and that are being released by the Debtors.

Third, the Plan in this case includes an exculpation provision that is meant to insulate court-supervised fiduciaries and some other parties from claims that are based on actions that relate to the restructuring, with the exception of claims that are based on allegations of fraud, willful misconduct, or gross negligence. To some extent, these exculpation provisions are based on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions. *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *In re A.P.I., Inc.*, 331 B.R. 828, 868 (Bankr. D. Minn. 2005), *aff'd sub nom. OneBeacon Am. Ins. Co. v. A.P.I., Inc.*, No. CIV. 06-167 (JNE), 2006 WL 1473004 (D. Minn. May 25, 2006); *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994). While the reported case law is thin, however, I think that a proper exculpation provision is a protection not only of court-supervised fiduciaries, but also of court-supervised and court-approved transactions. If this Court has approved a transaction as being in the best interests of the estate and has authorized the transaction to proceed, then the parties to those transactions should be not be subject to claims that effectively seek to undermine or second-guess this Court's determinations. In the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing things that the Court authorized them to do and that the Court decided were reasonable things to do. *Cf. Airadigm Commc'ns., Inc. v. FCC (In Re Airadigm Communs., Inc.)*, 519 F.3d 640, 655-57 (7th Cir. 2008) (approving a plan provision that exculpated an entity that funded a plan from liability arising out of or in connection with the confirmation of the Plan, except for willful misconduct); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (approving exculpation provision that

was limited to conduct during the bankruptcy case and noting that the effect of the provision is to require "that any claims in connection with the bankruptcy case be raised in the case and not be saved for future litigation.").

In this case, the proposed definition of exculpated parties includes not only the Debtors, the Committee and their respective advisors and employees, but also Mercuria (which is the acquiring party and the debtor-in-possession lender), the debtor-in-possession agents and lenders, the prepetition secured credit facility agents and lenders, and the unsecured notes indenture trustees. The proposed exculpation provision in the Plan provides generally that each exculpated party shall have no liability to anyone for any claim "related to any act or omission based on" (1) the Chapter 11 cases, (2) the restructuring support agreement, (3) the court-approved disclosure statement, (4) the Plan, (5) the Plan supplement, or (6) "any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the disclosure statement or the Plan," all of which is subject to a general exclusion for claims that are determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.

I think, as I said during argument, that to some extent, the wording of this provision is too broad. Certainly, for example, the exculpation provision should not bar the enforcement of contracts that were entered into in the course of the case and that were approved by the Court, but literally that is what the proposed language would do. I believe that an appropriate exculpation provision should say that it bars claims against the exculpated parties based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court.

5

The United States Trustee does not object to the exculpation provision of the Plan insofar as it relates to the Debtors and the members of the Official Committee of Unsecured Creditors, and their respective advisors, but it has objected to the inclusion of parties such as Mercuria who are not estate fiduciaries. I believe that if the exculpation is limited, as described above, then it is not problematic, and that it is appropriate for the reasons that I have already stated.

The Plan in this case therefore provides for a number of consensual releases, which I have been told will be binding on ninety-nine percent of the unsecured creditors; it provides for broad releases of the Debtors' own claims, which thereby bar derivative claims; and it provides an exculpation provision which, under my rulings, protects people from claims based on their negotiation, execution and implementation of transactions that I approved.

In addition to all of the foregoing, however, the Debtors have asked me to impose certain non-consensual releases that would be binding even if the releasing parties did not agree to provide such releases. These proposed releases do not involve claims against the Debtors themselves. Nor are they limited to claims that are derivative in nature and that are pursued in the name and stead of the Debtors. They also are not limited to transactions that occurred during the bankruptcy case or that this Court has supervised and previously approved. Instead, the proposed involuntary releases would immunize certain parties from all claims that are owned directly by creditors, stockholders, or other parties in interest (not by the Debtors) and that relate in any way to the Debtors, with no exceptions for claims alleging fraud or willful misconduct.

There are two groups in whose favor the Debtors ask that these non-consensual releases be imposed. One group is Mercuria and its officers, advisors, and other associated professionals and entities. Mercuria, as I mentioned, provided prepetition credit to some of the Debtors. It also is the acquiring party under the Plan, and it provided debtor-in-possession financing during

this case. The other group is made up of three individuals who joined the audit committee of the Debtors' board of directors on or after May 2018. The Debtors ask me to rule that all claims that any creditor or stockholder may have against these entities and individuals should be released, barred and enjoined without the consent of the holders of those claims.

Some Circuit Courts of Appeal have held that bankruptcy courts lack the power to grant nonconsensual third-party releases of the kind that the Debtors seek here. *See, e.g, Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.),* 584 F.3d 229, 251-53 (5th Cir. 2009); *Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02, 1402 n. 6 (9th Cir. 1995); *Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995); *Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 600-02 (10th Cir. 1990) *modified sub nom. Abel v. West*, 932 F.2d 898 (10th Cir. 1991). Other Courts of Appeal, including the Second Circuit Court of Appeals, have held that bankruptcy courts have the power to impose involuntary releases, but that such involuntary releases should be imposed "only in rare cases." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-43 (2d Cir. 2005) (holding that involuntary releases should only be approved if they are an important part in a reorganization plan, and that they are proper "only in rare cases"); *see also SE Prop. Holdings, LLC v. Seaside Eng'g 7 Surveying (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070, 1078 (11th Cir. 2015) (holding that releases and bar orders are permitted but "ought not to be issued lightly, and should be reserved for those unusual cases in which such an order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all the facts and circumstances"); *Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 347-50 (4th Cir. 2014); *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712 (4th Cir. 2011) (holding that involuntary releases should be

7

imposed "cautiously and infrequently"); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 657-58 (6th Cir. 2002); *Mernard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694, 700-02 (4th Cir. 1989).

Debtors in chapter 11 cases before me frequently seek third-party releases, and they are often presented as though the involuntary imposition of a third-party release is no big deal. I disagree. In order to put the issue in context, it is worth pausing for a minute to note just what an extraordinary thing it is for a court to impose an involuntary third-party release and how different that is from what courts ordinarily do.

A bankruptcy court has *in rem* jurisdiction over a debtor's property and the disposition of that property. But third-party claims belong to third parties, not the estate. As a general rule, a bankruptcy court has no power to say what happens to property that belongs to a third party, even if that third party is a creditor or otherwise is a party in interest. *See Callaway v. Benton*, 336 U.S. 132, 136-41 (1949).

A bankruptcy court's *in rem* jurisdiction also gives it authority over claims that are made against an estate. However, the third-party claims that are the subject of the proposed releases in this case are not claims against the estate or against property of the estate. A bankruptcy court has no *in rem* jurisdiction over such third-party claims. *See Johns-Manville Corp. v. Chubb Ind. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 153-154 (2d Cir. 2010) (holding that a bankruptcy court did not have *in rem* jurisdiction over a third party's direct claims against a non-debtor insurer).

It is often argued that bankruptcy courts have broad subject matter jurisdiction over "civil proceedings" that are "related to" a bankruptcy case, *see* 28 U.S.C. §§ 157, 1334 – as though imposing an involuntary release is somehow analogous to an exercise of the court's power to

8

rule on a proceeding that is pending in front of it. But there are many problems with that reasoning and with that analogy.

<u>First</u>, sections 157 and 1334 gives bankruptcy courts subject matter jurisdiction over "civil proceedings" that are related to a bankruptcy case. However, when third-party releases are proposed there is rarely any "proceeding" pending at all. Instead, the court is asked to exercise power over a potential claim for which no actual proceeding exists.

<u>Second</u>, sections 157 and 1334 just describe the scope of a bankruptcy court's potential subject matter jurisdiction. Subject matter jurisdiction alone is not enough to give a court power over a litigation claim or over a proceeding. Instead, in addition to an actual proceeding, the court needs to have personal jurisdiction over the relevant parties.

We are very accustomed, in the bankruptcy court and during the bankruptcy process, to giving creditors notice of things we propose to do, and in the context of the exercise of our statutory "in rem" jurisdiction such notice is sufficient. But we are not talking here about a disposition of the Debtors' own assets, or of the resolution of claims over which we have *in rem* jurisdiction. Instead we are talking about issuing a ruling that extinguishes one non-debtor's claim against another non-debtor.

In other contexts, the Supreme Court has made clear that as a matter of due process, notice is not enough to confer personal jurisdiction over a party, or over its claims, or to give the court power over those claims. Instead, a formal service of process is required. *See, e.g., Martin v. Wilks*, 490 U.S. 755, 763-64 (1989) ("a party seeking a judgment binding on another cannot obligate that person to intervene; . . . Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree")(citations omitted); *see also Chase*

9

*Nat'l. Bank v. City of Norwalk, Ohio*, 291 U.S. 431 (1934) ("[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger"). The need for a formal service of process is a well-established prerequisite to the exercise of jurisdiction. *See Hansberry v. Lee*, 311 U.S. 32 (1940).

The Supreme Court has recognized some limited exceptions to the need for a formal service of process, but they do not apply here. The exercise of a bankruptcy court's *in rem* powers is one such exception. *See Martin v. Wilks*, 490 U.S. 755, 762 n. 2 (1989). But this exception applies only when the bankruptcy court is exercising *in rem* authority. As noted above, the bankruptcy court does not have *in rem* powers to enjoin one third party from enforcing claims it may have against another third party. *See Johns-Manville, supra,* 600 F.3d at 154.

Another exception exists for class actions, in which absent class members are bound by a judgment so long as they receive notice of the action and an opportunity either to "opt out" or to participate. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). But the exception for class actions is based on the unique characteristics of class actions – one of the most important of which is the fact that the interests of the absent class members are adequately protected by court-certified class representatives who hold similar claims, who have incentives to pursue them, and who can be trusted to litigate or settle the class of claims in a way that will fully protect the absent parties' interests. *Id.* at 43-44; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). When third-party releases are proposed, however, no such similar protections exist. In this case, for example, there was no court-certified representative who held claims of the kind that would be released and who acted on behalf of other parties holding similar claims. The Court does not have before it a proposed resolution of claims that has been negotiated by people

10

who hold such claims.  Instead, the Court has before it a motion to extinguish third party claims, made primarily at the behest of the people who would be the beneficiaries of the releases.

The Supreme Court's decision in *Stoll v. Gottlieb*, 305 U.S. 165 (1938) sometimes is cited for the proposition that a release of third-party claims, coupled only with notice and not with any other formal process, is sufficient to confer jurisdiction.  In *Stoll*, a court approved a plan of reorganization that provided for the cancellation of a third party's guaranty of a debt.  The affected creditor later filed a proceeding in state court seeking to enforce the guaranty, and also filed a request in the federal court for a modification of the order that had cancelled the guaranty, alleging that the court did not have the power to cancel the guaranty.  That request to modify the confirmation order was denied, and no appeal was taken.  However, the state court later held that the bankruptcy court had lacked jurisdiction to cancel the guaranty.

On review, the Supreme Court made clear that it expressed no opinion as to the power of the bankruptcy court to cancel the third-party guaranty or as to the propriety of the procedures that were followed by the court in doing so.  *Id*. at 171 n.8.  Instead, the Supreme Court presumed for purposes of its analysis that the lower court's exercise of jurisdiction to approve the release was improper.  *Id.* at 171.  The Supreme Court held that, even if the lower court had been incorrect when it found that it had jurisdiction to release the guaranty, the lower court's denial of the creditor's petition to modify the confirmation order – a determination from which the creditor never appealed – was *res judicata* and "settled the contest over jurisdiction." *Id.* at 171.  The disappointed creditor could only obtain review of that determination (even if it was incorrect) by direct appeal, and not through a collateral proceeding in a state court.  *Id*. at 171-72.

The decision in *Stoll* presumed that the bankruptcy court lacked jurisdiction to release a third-party claim. The Court did not endorse third-party releases, and did not endorse a "notice" procedure to effectuate them.

Third, even if there were a proceeding pending in front of me in which a third-party claim were asserted, and even if I had proper subject matter jurisdiction as well as personal jurisdiction over the affected parties, that would not mean that I would have the power to impose an involuntary release. In the American system, litigants have the right to assert claims so long as they meet pleading standards and Rule 11 standards. When a court has jurisdiction over a claim, that means the court has the power to resolve the claim on its merits. The Supreme Court has held that a court has no power to dictate settlement terms or to force parties to release their claims. *See United States v. Ward Baking Co.*, 376 U.S. 327, 334 (1964) (confirming that a court lacked authority to enter a "consent judgment" to which the Government did not consent, and that in the absence of the parties' agreement the court's power was limited to the resolution of the case on the merits). Similarly, the Supreme Court has held that two parties cannot, by agreement, dispose of claims that belong to a third party. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986). Instead, a claim that belongs to a third party may only be resolved through litigation on the merits, or on terms to which the third party agrees. *Id.*

Fourth, we should not lose sight of the fact that when we impose involuntary releases we do not provide claimants with other procedural and substantive rights that they ordinarily would have. The Federal Rules of Bankruptcy Procedure require the commencement of adversary proceedings, with formal service of process, when a money judgment is sought against a third party, or when a court is asked to rule upon a third party's interest in property, or when a court is

asked to make a declaration of the third party's rights, or when a court is asked to issue an injunction. But these procedures are not applied when third-party releases are sought. The court is asked to take a third party's property without any hearing on the merits and without any of the discovery or other rights that a litigant usually would have. *See In re Digital Impact,* 223 B.R. 1, 13 n. 6 (Bankr. N.D. Okla. 1998) (noting that a third-party release has "the effect of a judgment – a judgment against the claimant and in favor of the non-debtor, accomplished without due process."). Involuntary releases also result in a taking of property without a formal hearing to ensure that the affected party has received proper compensation. In fact, when a court is asked to award a third-party release in a bankruptcy case, it is often asked to do so based only on the contributions that a proposed releasee has purportedly made to the reorganization process generally, rather than the benefits to be provided directly to the persons whose claims are being released. But even in those instances in which powers of eminent domain authorize an involuntary taking of property, due process requires that the claimant receive compensation that is based on the actual value of the property being taken from them. *See*, *e.g.*, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304, 322 (1987).

Finally, proposed third party releases often present the anomalous situation in which the beneficiary of a third-party release asks for broader protection than he or she could have obtained in his or her own bankruptcy case. For example, debtors often seek to free officers and directors from potential securities law claims; in fact, that is one of the types of potential claims for which the Debtors seek involuntary releases in this case. Under Section 523(a)(19) of the Bankruptcy Code, however, liabilities for violations of the securities laws are not dischargeable so long as the violations result in a judgment or settlement either before or after the bankruptcy case is filed. We therefore have the odd situation where we are being asked to use an unwritten

authority to release non-debtor officers and directors from claims when the Bankruptcy Code would bar us from giving similar relief to those persons if they were debtors in their own cases. *See Metromedia*, 416 F.3d at 142 (noting the potential abuse of using third-party releases to permit a non-debtor to shield itself from liability without a bankruptcy filing and without the safeguards of the Bankruptcy Code).

The issues I have described above ought to illustrate just how extraordinary a thing it is for us to impose involuntary releases and why, as commanded by the Second Circuit in *Metromedia*, we should do so only in those extraordinary cases where a particular release is essential and integral to the reorganization itself.

Unfortunately, in actual practice the parties usually ignore this portion of the *Metromedia* decision, and often seek to impose involuntary releases based solely on the contention that anybody who makes a contribution to the case has earned a third-party release. Almost every proposed Chapter 11 Plan that I receive includes proposed releases. Instead of targeting particular claims and explaining why the release of those particular claims is necessary to some feature of the reorganization, the proposed releases usually are as broad as possible in their scope. Parties rare identify any particular claim that they are even worried about or that has been threatened, and almost never explain why an order extinguishing a particular third-party claim is fair to the party whose claim is being extinguished. Instead, I am usually told that various people have made contributions to the process that have been important in producing a successful outcome, and that they should be rewarded by being given third-party releases.

Frankly, if this were enough then releases would never be limited to the "rare" and "unusual" circumstances that the court required in *Metromedia*. As I observed in the transcript from argument in the *Fairway* cases (which one of the parties cited here), and as I said earlier

14

during argument today, third-party releases are not a merit badge that somebody gets in return for making a positive contribution to a restructuring. They are not a participation trophy, and they are not a gold star for doing a good job. Doing positive things in a restructuring case – even important positive things – is not enough. Nonconsensual releases are not supposed to be granted unless barring a particular claim is important in order to accomplish a particular feature of the restructuring. *See Metromedia*, 416 F.3d at 143 (holding that a finding that a party had made a "material contribution" to a case was not enough and that the approval of releases requires a finding that the releases themselves are "important" and "necessary" to a plan).

In the *Residential Capital* case that was cited to me, for example, there was a huge overlap between claims that Residential Capital was making against its parent company and claims that various other parties were making against the parent. In that case, the parent company did not want to settle the claims made by Residential Capital unless the overlapping third-party claims were also barred. In that context, the Court was able to make a determination as to whether the settlement with the debtor, and the funds that would be made available to the third parties as a result of that settlement, justified the third-party release. *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) [Docket No. 6065]. Similarly, in the original *Johns-Manville* bankruptcy the court channeled certain future claims to a court-approved trust, in order to induce insurers to contribute policy proceeds to the trust. The court was able to assess the claims that were being released, to see the direct connection between those claims and the contributions that were being made, and to decide not only whether the rights of affected parties were being protected, but whether the terms of the restructuring really depended on those releases.

I do not have any of that here. I have only suggestions that Mercuria and the members of the audit committee did things that were positive to the process. I have no suggestion that what they did provided a specific recovery to the people whose claims would be taken, or any evidence that would allow me to judge the value of the claims that would be taken away.

Parties often argue to me that claims being released would just be nuisance claims and that I should go ahead and order a release without worrying that I am doing anything that is really harmful to the releasing parties. The parties in this case have made that argument before me today. But if the claims that are the subject of the proposed releases would be without merit, that begs the question of why they should be released at all. The teaching of *Metromedia* is that releases should be given only when they are an important part of a reorganization. By definition, it cannot be said that the release of a meritless or nuisance claim is essential or integral to anything. Getting a release may be a comfort the parties would like to have, but releases are not supposed to be imposed involuntarily just to make people feel better. They are supposed to be ordered only when they are actually important and necessary to the accomplishment of the transaction before the Court.

I will turn now to the particular releases that the Debtors seek in this case. For the most part the Debtors have not identified specific claims that they believe must be barred in order to enable the reorganization. *Metromedia* cautioned that the bankruptcy courts are to be particularly skeptical of broad and general releases that are not tied, in a demonstrated way, to something that the reorganization needs to accomplish. Here, no particular third-party claims have been identified that, if pursued, would undermine the restructuring and the deals that are part of that restructuring.

As to Mercuria, the Debtors themselves have released their claims based on pre-petition activities. The Plan also includes an exculpation provision that covers Mercuria's involvement in transactions that I approved during the course of the bankruptcy case. Many of the parties in interest have agreed to release their claims against Mercuria, and I have been told today that ninety-nine percent of the unsecured creditors have consensually released their claims against Mercuria. The Debtors have cited to pre-bankruptcy loans and to an exclusivity agreement to which Mercuria was a party prior to the bankruptcy case. But given that the Debtors have released their own claims, which has the effect of barring derivative claims, I am at a loss to understand what claim is left as to which Mercuria needs protection. The creditors of the entities to whom Mercuria made pre-bankruptcy loans are being paid in full. The indenture trustees, who represent the parent company's unsecured noteholders, have granted releases to Mercuria, and as I noted, an overwhelming percentage of the individual noteholders have done so too.

The parties are not able today even to identify a specific claim against Mercuria that is outstanding and that could be pursued. I am left with the suggestion that nobody can really think of anything, or certainly not anything that they think would have merit, but that it is nevertheless somehow important to this reorganization for me to impose a broad third-party release. In substance, this amounts to a suggestion that I should give releases unless I can come up with a good reason not to do so. I think that is the opposite of the approach that *Metromedia* commands me to take, and that ordinary due process considerations require me to take.

The governing case law requires me to consider not only the contributions made by the proposed releasees, but also the particular claims that are to be released, whether the releasing parties are otherwise getting recoveries on those released claims, and the fairness of the releases from the point of view of the people upon whom the releases are to be imposed. *See, e.g., Dow-*

*Corning, supra.* If, as is the case here, the relevant claims and the owners of the claims cannot even be identified, then there is a failure of proof of the facts necessary to support the proposed involuntary releases.

The Debtors have also argued that the members of the audit committee could be subjected to amended securities law claims based on certain events that occurred prior to the bankruptcy case. I am told that these would be without merit, and that I should bar them to give the directors peace of mind as a reward for the service that they provided during the case. However, I have no record in front of me that would permit me to conclude that any and all potential claims against the audit committee members for their pre-bankruptcy conduct would be without merit.

I am told that the directors in this case had to navigate through many troubles, and that in return they have earned the right to be freed of litigation claims relating to pre-bankruptcy matters. Frankly, that just does not follow. There are plenty of officers and directors of non-bankrupt companies who have to steer their companies through difficult situations. I am sure that they would also like to dispose of potential litigation claims against them as a reward for the work that they have done. But that is not recognized as a ground on which to terminate litigation claims outside of bankruptcy. There is no reason why it should constitute an excuse to terminate litigation claims just because a company is emerging from bankruptcy.

If the argument is that the directors have done a spectacular job, then maybe they should ask for a bonus, and maybe they would be entitled to one. At least such a bonus would be payable by the entities for whom the relevant directors did their work. When the Debtors argue that the audit committee members have earned peace of mind here, they essentially are saying that the audit committee members should be given a bonus that would not be paid by the

18-13374-mew    Doc 520    Filed 04/08/19    Entered 04/08/19 13:44:50    Main Document
Pg 19 of 20


Debtors, but that instead would be involuntarily assessed against the third parties who own the claims to be released. Some of those might be shareholders who, as things stand, are likely getting no benefit from the Plan and from the underlying work that allegedly justifies the releases.

This is not a proper way to reward good work. I do not mean to demean the work done by the members of the audit committee. I have no reason to doubt that they did exceptional work and that they faced extraordinary challenges. But the directors did what they were paid to do, and that does not mean they are entitled to releases of third-party claims, particularly when those releases really are not necessary or important to the accomplishment of the restructuring transactions. *See Nat'l Heritage Found., Inc., v. Highbourne Found.*, 760 F.3d 344, 348 (4th Cir. 2014) (services by officers and directors did not constitute the sort of contribution that would justify third-party releases); *Gillman v. Continental Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 215 (3d Cir. 2000) (denying approval to third-party releases of claims against officers and directors when there was no evidence that the success of a reorganization bore any relationship to the proposed releases); *In re Washington Mut., Inc.*, 442 B.R. 314, 349-350 (Bankr. D. Del. 2011).

I have also been told that the audit committee members are beneficiaries of indemnifications from the Debtors as to claims that might be made against them. This just means that, to the extent the directors believe they have earned protections against lawsuits, the directors already have them. Some courts have justified releases of officers and directors on the ground that the releases are necessary to protect the debtors from indemnification claims that the directors and officers might make. However, I fail to see how the possibility of an

19

indemnification claim is a proper justification to take away the rights that claimants may have to pursue claims that they own directly against the officers and directors.

Assume here, for example, that shareholders might have securities law claims against the audit committee members. If the Debtors were liable for against any similar claims, the Debtors presumably would argue that their own liabilities are subordinated under section 510(b) of the bankruptcy code. If claimants have the right to recover from individual directors, there is no reason why they should be deprived of those potential recoveries. That does not change just because the Debtors have elected, for their own reasons, to affirm their indemnification obligations to the members of the audit committee. If anyone believes that the indemnifications would have the effect of making the Debtors liable for claims that otherwise should have been subordinated, then perhaps the correct answer should be to subordinate the indemnity claims – not to extinguish the third-party claims against the directors.

To the extent that the directors in this case have indemnification rights, that just makes clear that there is no reason from their perspective why a release of the claims against them is necessary or important to the reorganization process.

For the foregoing reasons, I will not approve the consensual releases. I will approve a modified version of the exculpation provision that I have described, but the request for the imposition of involuntary third-party releases will be denied.

Dated: New York, New York
April 8, 2019

                                               **s/Michael E. Wiles**
                                               Honorable Michael E. Wiles
                                               United States Bankruptcy Judge