WILMER CUTLER PICKERING
  HALE AND DORR LLP
Christopher Davies
George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, New York  10007
Tel:    (212) 230-8800
Fax:    (212) 230-8888

*Counsel to PricewaterhouseCoopers Auditing Company S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*[1] | Case No. 18-13374 (MEW) |
| Debtors. | (Jointly Administered) |
| | Related ECF No. 617 |

**LIMITED OPPOSITION OF PRICEWATERHOUSECOOPERS AUDITING COMPANY S.A. TO APPLICATION BY THE AEGEAN LITIGATION TRUST FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 <u>AUTHORIZING EXAMINATION AND RELATED DISCOVERY OF PWC</u>**

---

[1]    Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of each Debtor's tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/aegean.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.....................................................................................................3

LIMITED OPPOSITION .........................................................................................................7

I.    This Court Does Not Have Personal Jurisdiction Over PwC Greece ................................7

II.   This Court Does Not Need To Exert Jurisdiction Over PwC Greece, As Rule 2004
      Discovery Is Inappropriate In Any Event ........................................................................11

   A.   Standard For Rule 2004 Discovery.............................................................................11

   B.   Rule 2004 Discovery Is Inappropriate At This Stage Of The Bankruptcy Case ...........12

   C.   The Proposed Rule 2004 Discovery Here Is An Attempt To End-Run The Greek
        Courts.......................................................................................................................17

CONCLUSION.....................................................................................................................20

APPENDIX 1 .......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re ADPT DFW Holdings LLC*,
No. 17-31432 (Bankr. N.D. Tex. Apr. 26, 2018) .......................................................13

*In re Advance Watch Co.*,
587 B.R. 598 (Bankr. S.D.N.Y. 2018) ......................................................................9

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
No. 1:18-cv-04993-NRB (S.D.N.Y. Feb. 1, 2019) .....................................6, 7, 16, 17

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi.*
*(In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993) ............................13

*United States v. Afram Lines (USA), Ltd.*,
159 F.R.D. 408 (S.D.N.Y. 1994) ................................................................................9

*In re Baycol Prods. Litig.*,
348 F. Supp. 2d 1058 (D. Minn. 2004) ....................................................................19

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*,
137 S. Ct. 1773 (2017)..............................................................................................8

*In re China Fishery Group Limited (Cayman)*, No. 16-11895,
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ...............................................8

*In re Cinderella Clothing Indus., Inc.*,
93 B.R. 373 (Bankr. E.D. Pa. 1988) .......................................................................12

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991) ....................................................................15

*In re Correra*,
589 B.R. 76 (Bankr. N.D. Tex. 2018).......................................................................8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................................................................7

*In re Drexel Burnham Lambert Grp.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991).............................................................11, 17

*Dubai Islamic Bank v. Citibank, N.A.*,
2002 WL 1159699 (S.D.N.Y. 2002).........................................................................9

*In re Ecam Publ'ns, Inc.*,
   131 B.R. 556 (Bankr. S.D.N.Y. 1991) ....................................................................15

*In re Enron Corp.*,
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ....................................................................15

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
   318 B.R. 263 (S.D.N.Y. 2004).................................................................................12

*In re Express One Int'l, Inc.*,
   217 B.R. 215 (Bankr. E.D. Tex. 1998) ...................................................................12

*In re Fin. Oversight & Mgmt. Bd.*,
   2019 U.S. Dist. LEXIS 172316 (D.P.R. Apr. 18, 2019)..........................................17

*In re Gawker Media LLC*, No. 16-11700
   2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017).................................13, 14, 15

*In re GHR Energy Corp.*,
   35 B.R. 534 (Bankr. D. Mass. 1983) ......................................................................15

*In re Glitnir banki hf.*, No. 08-14757,
   2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ............................................14

*In re Good Hope Refineries, Inc.*,
   9 B.R. 421 (D. Mass. 1981) ...............................................................................11, 12

*Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*,
   No. 14-mc-00318, 2015 WL 728463 (S.D.N.Y. Feb. 19, 2015) .............................10

*In re Hilsen*,
   No. 87-11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ....................12, 17

*International Shoe Co. v. State of Washington*,
   326 U.S. 310 (1945)...................................................................................................8

*Kramer v. Time Warner Inc.*,
   937 F.2d 767, 774 (2d Cir. 1991) .............................................................................6

*Kravitz v. Tavlarios*,
   No. 1:19-cv-8438 (S.D.N.Y. Sept. 12, 2019) ......................................................6, 16

*Leibovitch v. Islamic Republic of Iran*,
   852 F.3d 687 (7th Cir. 2017) .....................................................................................8

*In re Madison Williams and Co., LLC*,
   No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ............................11

*In re Marc Rich & Co., A.G.*,
  707 F.2d 663 (2d Cir. 1983)....................................................................................8

*Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*,
  No 06-1446, 2007 WL 1875560 (E.D.N.Y. June 25, 2007) ...................................19

*In re Millennium Lab Holdings II, LLC*,
  562 B.R. 614 (Bankr. D. Del. 2016) ...........................................................11, 12, 14

*Nissan Fire & Marine Ins. Co. v. Fortress Re, Inc. (In re Application for Order
  Quashing Deposition Subpoenas)*, No. M8-85, 2002 WL 1870084
  (S.D.N.Y. Aug. 14, 2002) ........................................................................................10

*Philip Morris Inc. v. Otamedia*, No. 02 Civ. 7575,
  2004 WL 1348987 (S.D.N.Y. June 15, 2004) ...........................................................8

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018).................................................................14, 15

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004)..................................................................11, 17

*Seaton Ins. Co. v. Cavell USA*,
  No. 3:07-cv-356, 2007 WL 9657277 (D. Conn. Mar. 21, 2007)............................10

*Trade Development Bank v. Continental Ins. Co.*,
  469 F.2d 35 (2d Cir. 1972).......................................................................................17

*In re Transmar Commodity Group Ltd.*,
  No. 16-13625, 2018 WL 4006324 (Bankr. S.D.N.Y. Aug. 17, 2018).................11, 15

*Water Splash, Inc. v. Menon*,
  137 S. Ct. 1504, 1513 (2017) ....................................................................................9

**Federal Statutes**

11 U.S.C. § 510....................................................................................................................16

15 U.S.C. § 78j.......................................................................................................................6

28 U.S.C. § 1783....................................................................................................................9

**Federal Regulations**

17 C.F.R. § 240.10b-5............................................................................................................6

**Federal Rules**

Fed. R. Bankr. P. 2004 ............................................................................................... *passim*

Fed. R. Bankr. P. 9016 ................................................................................................9

Fed. R. Bankr. P. 9017 ..............................................................................................18

Fed. R. Civ. P. 4 .........................................................................................................9

Fed. R. Civ. P. 44.1 ...................................................................................................18

Fed. R. Civ. P. 45 ................................................................................................ *passim*

**Greek Statutes**

Astikos Kodikas [A.K.] [Civil Code] 37:902 (Greece) .........................................18

Kodikas Politikis Dikonomias [KPolD] [Code of Civil Procedure]
        12:450-452 (Greece) ........................................................................................18

Nomos (1983:1134) Kyrose tin apo 15 Noemvrious 1965 Symvasi tis Xagis
        [Ratification of the 15th November 1965 Hague Convention] 1983 (Greece) .......................9

Nomos (2017:4449) Ipoxreotikos Elegxos ton Etision kai ton Enopoiimenon
        Xrimatooikonomikon Katastaseon, Dimosia Epopteia epi tou Elegktikou Ergou
        [Statutory Audit of the Annual and Consolidated Financial Statements,
        Public Oversight of Audit Work and Other Provisions] 2017, A:2 (Greece) ..........................18

**Other Authorities**

Aegean Marine Petroleum Network Inc., Form 6-K, at Ex. 99-1 (Nov. 2, 2018) ..........................4

*Convention on the Service Abroad of Judicial and Extrajudicial Documents in
        Civil or Commercial Matters, done* Nov. 15, 1965, 20 U.S.T. 361,
        658 U.N.T.S. 163 (the "Hague Convention") ................................................ *passim*

*Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
        done* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 744 ............................................19

Gen. Data Protection Reg. (EU) 2016/679 §§ 44-50 .....................................................19

Hague Conference on Private International Law, Declarations, ....................................19

Hague Conference on Private International Law, Greece – Central Authority &
        Practical Information (Oct. 16, 2018) ..............................................................10

Nikolaos M. Katiforis, Evidence in Civil Law – Greece (2015) ..................................18

TO THE HONORABLE MICHAEL E. WILES,

UNITED STATES BANKRUPTCY JUDGE:

PricewaterhouseCoopers Auditing Company S.A. ("PwC Greece") submits this limited opposition (the "Limited Opposition") to the *Application by the Aegean Litigation Trust for Entry of an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Examination and Related Discovery of PwC*, dated November 8, 2019 [ECF No. 617] (the "2004 Application" or "App."). In support of this Limited Opposition, PwC Greece respectfully states as follows:

## PRELIMINARY STATEMENT

1.      At the outset, PwC Greece notes that it was not served with the 2004 Application, and, as discussed further below, could only be served with the 2004 Application (or any resulting subpoena or letter of request), if at all, through compliance with the *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, *done* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"). Moreover, even if properly served, PwC Greece would contend, among other things, that the Court lacks personal jurisdiction over PwC Greece and may not properly compel production of documents from PwC Greece, again as discussed further below. However, because PwC Greece has actual knowledge of the 2004 Application, and in the interest of judicial economy and to preserve fully its personal jurisdiction defenses and other rights and defenses, PwC Greece makes a special appearance and submits this Limited Opposition.[2]

---

[2]      PwC Greece is aware that certain of the other putative examinees in the 2004 Application are also filing objections. PwC Greece hereby joins such objections, to the extent applicable and not expressly set forth herein.

2.       The Litigation Trust seeks pre-litigation discovery from PwC Greece in U.S. bankruptcy court.  But it is clear from the prior proceedings in the chapter 11 cases of Aegean Marine Petroleum Network Inc. ("Aegean") and its affiliates (the "Chapter 11 Cases") that the Litigation Trust will commence an adversary proceeding against PwC Greece in the near future, raising alleged claims that were described in Aegean's chapter 11 plan.  In other words, there is already a known dispute between the Litigation Trust and PwC Greece.  If that dispute belongs anywhere, it belongs in Greece.

3.       PwC Greece is a Greek corporation, whose board members and shareholders reside in Greece, that performs audit work in Greece.  This Court, respectfully, has no personal jurisdiction over it, a point PwC Greece intends to raise further at the appropriate time.  PwC Greece provided audit services in Greece, to its client Aegean, which was also located in Greece. In addition, PwC Greece's engagement agreement with Aegean clearly compels any disputes relating to the audit to be resolved exclusively in Greek courts.  Any pre-litigation discovery in the United States is a false start.  Not only is such discovery inappropriate in its own right, but it would sever a key part of a Greek action from the rest of that action—and would accelerate that part of the Greek action to a time well in advance of its proper place in the Greek civil procedure.

4.       The caselaw is clear that the use of Rule 2004 discovery is inappropriate at this stage of a bankruptcy case and under the circumstances at issue here.  Aegean's Chapter 11 Cases stand post-confirmation and post-effective date.  The only thing left to be done in the Chapter 11 Cases is the pursuit of legal claims by the Litigation Trust.  And as is required under the Bankruptcy Code, Aegean's chapter 11 plan specifically anticipated and described alleged claims against auditors like PwC Greece and assigned those alleged claims to the Litigation Trust.  Not only that, but the alleged claims that the Litigation Trust will assert against PwC

2

Greece arise from the same factual background that propelled Aegean into chapter 11 in the first

place.  Simply put, the only job of the Litigation Trust is to commence suit, and the Litigation

Trust already knows whom it will sue and for what—no pre-litigation discovery is required for

the Litigation Trust to commence suit.

5.      Notwithstanding all that, the Litigation Trust seeks permission to serve discovery

on PwC Greece under Rule 2004 of the Federal Rules of Bankruptcy Procedure.  Allowing that

to occur will not advance the ball.  It will result in a long process of Hague Convention service.

If that service is effected, it will result in litigation in this Court over a motion to quash any

subpoena properly served, on the basis of personal and subject matter jurisdiction defenses,

among others.  It will require this Court to consider issues of Greek law.  And after all of that

process, either this Court will prohibit pre-litigation discovery or permit it.  But in the meantime,

months will have passed without any real progress to resolve a known dispute that should instead

be filed and allowed to proceed along its proper course in the Greek courts.

## FACTUAL BACKGROUND

6.      PwC Greece is a corporation (*anonymi etaireia*) organized under the laws of

Greece and provides assurance services, including integrated audit services, to clients in Greece.

7.      On June 30, 2016, PwC Greece executed an engagement letter with Aegean, by

and through its Audit Committee (the "Engagement Letter").  PwC Greece has attached a copy

of this Engagement Letter as **Exhibit A** to the Declaration of Christopher D. Hampson, filed

contemporaneously with this Limited Opposition (the "Hampson Declaration").  The

Engagement Letter, executed in Greece, sets out the terms of PwC Greece's engagement as

Aegean's independent accountants.  Most importantly here, the Engagement Letter states that it

"shall be governed by, and construed in accordance with the laws of Greece" and that the courts

of Greece "shall have exclusive jurisdiction to settle any claim, difference or dispute ... which may arise out of or in connection with" the contract arising out of the Engagement Letter.  *See* Hampson Decl. Ex. A at 5.  The audit services were provided in Greece.

8.      Aegean is an international marine fuel logistics company, whose corporate offices are located in Piraeus, Greece.  *See* Declaration of Tyler Baron, Director of Aegean Marine Petroleum Network Inc., in Support of Chapter 11 Petitions and First Day Motions ¶¶ 4, 46 [ECF No. 2] (the "Baron Declaration").

9.      In the spring of 2018, Aegean's access to credit was constricted sharply when Aegean announced the proposed acquisition of a company controlled by Aegean's founder.  *Id.* ¶ 9.  On June 4, 2018, Aegean Marine disclosed that $200 million of its accounts receivable would likely be written off as without economic substance.  *Id.* ¶ 11.  Aegean conducted an internal investigation, and on November 2, 2018 it confirmed that $200 million of its accounts receivable were uncollectable, and further announced that up to $300 million of its cash and assets had been "misappropriated through fraudulent activities."  Aegean Marine Petroleum Network Inc., Report of Foreign Private Issuer (Form 6-K), at Ex. 99-1 (Nov. 2, 2018).

10.     On November 6, 2018, Aegean and 74 of its affiliates (collectively, the "Debtors") filed petitions seeking bankruptcy relief in this Court.  The Chapter 11 Cases are jointly administered under the above-captioned proceeding.

11.     On March 29, 2019, the Court entered an order (the "Confirmation Order"), ECF No. 503, confirming the *Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan").  ECF No. 482.  The Plan became effective on April 3, 2019.  ECF No. 514.

12.      The Plan provides that certain litigation claims would be transferred from certain of the Debtors to a litigation trust (the "Litigation Trust").  The Litigation Trust was formed on April 3, 2019 pursuant to a litigation trust agreement (the "Litigation Trust Agreement").

13.      On November 22, 2019, the Debtors filed an application for a final decree and order that would close 70 of the 75 jointly administered cases.  ECF No. 629.

14.      Aegean and its founder were not the only ones blamed for Aegean's accounting problems.  The Chapter 11 Cases, the Plan, and the Litigation Trust agreement foreshadowed claims of alleged deficiencies in the PwC Greece audit work.  The First Day Declaration noted that the Chapter 11 Cases followed on the heels of Aegean's internal investigation, for which Aegean had engaged independent advisors.  Baron Decl. ¶¶ 7, 69.  Ten days later, the Debtors sought to engage Kobre & Kim LLP for "asset recovery and claim monetization strategies" related to the investigation.  *See Debtors' Application for Entry of an Order Authorizing and Approving Employment and Retention of Kobre & Kim LLP as Special Counsel for the Debtors* ¶ 6, ECF No. 96.  Kobre & Kim LLP confirmed that it had no conflict of interest with PwC Greece.  *Id.* Declaration of D. Farrington Yates ¶ 14 & Schedule 2.

15.      The claims assigned to the Litigation Trust included claims and causes of action concerning "improper accounting for or recordation of accounts receivable," "misstated accounting records," and "***claims against auditors*** and other professionals related to misappropriation of funds ...."  Plan, art. I(A), ¶ 87 (emphasis added).  Indeed, in its 2004 Application, the Litigation Trust concedes that it is "considering bringing claims against PwC Greece for failing to detect and report those financial irregularities thereby causing loss to Aegean."  App. at 2.

16.     The Litigation Trust would not be the first to bring claims against PwC Greece. On June 5, 2018, a class action was filed against Aegean's former directors and officers (the "Securities Litigation").  The amended complaint, filed on February 1, 2019, asserts claims against Aegean's former auditors, including PwC Greece.  *See* Consolidated Class Action Complaint, ¶¶ 360, 379, 434-435, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, No. 1:18-cv-04993-NRB (S.D.N.Y. Feb. 1, 2019) (the "Class Action Complaint").[3]  The Class Action Complaint attacks PwC Greece's 2016 audit opinion.  *Id.* ¶ 467.  It also attacks PwC Greece for not "making sufficient inquiries ... to determine whether to accept the [2016] Aegean audit engagement."  *Id.* ¶ 466.  It raises claims against PwC Greece for violation of Section 10(b) of the Exchange Act and Rule 10b-5(b).  *Id.* ¶¶ 541-550.

17.     Following the commencement of the Securities Litigation, on August 2, 2019, the Litigation Trust sued Aegean's former officers and directors, among others, in the District Court of Luxembourg (the "Luxembourg Litigation").  *See* ECF No. 620, Ex. A ¶ 6.  And on September 12, 2019, the Litigation Trust sued four of Aegean's former officers and directors in the United States District Court for the Southern District of New York for breach of fiduciary duty (the "Southern District Litigation").  It is fair to assume that the Litigation Trust will pursue discovery, on the same matters described in its proposed Rule 2004 subpoena, in the Luxembourg Litigation and in the Southern District Litigation.

18.     The 2004 Application, as applied to PwC Greece, broadly seeks the production of documents related to the preparation and filing of Aegean's financial statements for the years

---

[3]     PwC Greece requests that this Court take judicial notice of the allegations in the Class Action Complaint.  The document is not reasonably subject to dispute, it is relevant to the issues before the Court on the 2004 Application, and PwC Greece does not offer it for the truth of the allegations therein, but rather to show that the Litigation Trust is in a position to commence litigation.  *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

2016 through 2018, as well as all communications concerning Aegean during the same period.
*See* App. Ex. 5 (the "Document Requests").  It seeks testimony from PwC Greece on related
topics "at a location in New York City" unless PwC Greece and the Litigation Trust agree
otherwise.  *See* App. ¶ 21; *id.* Ex. A ¶ 4 (proposed order); *id.* Ex. 6 (the "Topics for
Examination").

**LIMITED OPPOSITION**

19.     PwC Greece vehemently denies any liability to Aegean or the Litigation Trust or
otherwise in respect of Aegean, and it will respond at the appropriate time and in the appropriate
fora, both as to the Securities Litigation and as to any litigation filed against it by the Litigation
Trust.  PwC Greece files this limited opposition to preserve its rights to contest any assertion of
this Court's personal jurisdiction over it, and to argue that—even apart from personal jurisdiction
and service issues—Rule 2004 discovery is inappropriate where the Litigation Trust is already
positioned to bring its claims against PwC Greece and where the Greek courts have exclusive
jurisdiction over that litigation.  The Litigation Trust's proposed use of Rule 2004 discovery is an
attempt to end-run the procedural and substantive protections of the Federal Rules of Civil
Procedure and, more importantly, their Greek equivalent.

I.     **This Court Does Not Have Personal Jurisdiction Over PwC Greece**

20.     This Court would not have personal jurisdiction over PwC Greece to hear the
underlying dispute that the Litigation Trust is poised to file against it.  There is no general
jurisdiction over PwC Greece because it is not "fairly regarded as at home" in the United States.
*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations,
S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Nor has the Litigation Trust established anything
close to the sort of "minimum contacts" with the United States that would make specific

7

jurisdiction appropriate under *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780-1781 (2017).  PwC Greece provided audit services in Greece, to its client whose corporate offices are located in Greece, under an Engagement Letter executed in Greece and which gives exclusive jurisdiction to the Greek courts.  While this issue is not ripe for adjudication, PwC Greece reserves all rights to contest personal jurisdiction if the Litigation Trust commences litigation against it in a United States court.

21.    For similar reasons, with all due respect, this Court would not have personal jurisdiction over PwC Greece to enforce any subpoena issued pursuant to the 2004 Application. This issue is not ripe either, since "personal jurisdiction over a ***non-debtor third party witness in a Rule 2004 context*** is properly established by serving a subpoena ... under Rule 45." *In re Correra*, 589 B.R. 76, 109 (Bankr. N.D. Tex. 2018) (emphasis in original).

22.    But personal jurisdiction is required.  "A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction." *Marc Rich & Co., A.G v. United States (In re Marc Rich & Co., A.G.)*, 707 F.2d 663, 669 (2d Cir. 1983).  And courts have applied the standard personal jurisdiction analysis to the recipient of a subpoena.  As this Court noted in the Rule 2004 context in *In re China Fishery Group Limited (Cayman)*, "[a]bsent consent, a foreign defendant will be subject to the jurisdiction of a U.S. court only if the court has either general or specific jurisdiction over the defendant."  No. 16-11895, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).  Indeed, in *Philip Morris Inc. v. Otamedia*, the District Court quashed a subpoena for lack of personal jurisdiction.  No. 02 Civ. 7575, 2004 WL 1348987, at *4 (S.D.N.Y. June 15, 2004); *see also Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017) (Posner, J.) (same).

23.     The 2004 Application also asks the Court to bless a series of procedural shortcuts. The Court should decline the invitation:

24.     *First*, the 2004 Application—with no discussion—seeks entry of an order that would allow for service by "first-class international mail or as otherwise required by law." App. Ex. A ¶ 6. Attempting to serve a subpoena on PwC Greece by first-class international mail would not comply with law. Indeed, Rule 45, made applicable by Bankruptcy Rule 9016, has no mechanism for service of a subpoena outside the United States for entities that are not United States nationals or residents. *See* Fed. R. Civ. P. 45(b)(2)-(3); 28 U.S.C. § 1783.

25.     Instead, as with service of process,[4] the subpoena would need to be translated and served through the Hague Convention by delivery to the Public Prosecutor. *See, e.g.*, *Dubai Islamic Bank v. Citibank, N.A.*, No. 99 Civ. 1930, 2002 WL 1159699, at *2 (S.D.N.Y. 2002) ("[I]f the witness is overseas, the procedures of the Hague Convention or other applicable treaty must be utilized."); *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994) (same); *see also* **Exhibit B** to the Hampson Decl. (Hague Convention); Nomos (1983:1134) Kyrose tin apo 15 Noemvrious 1965 Symvasi tis Xagis [Ratification of the 15th November 1965 Hague Convention] 1983 (Greece). These rules are mandatory in bankruptcy cases as well. *See, e.g.*, *In re Advance Watch Co.*, 587 B.R. 598, 603 (Bankr. S.D.N.Y. 2018).

26.     Where a receiving state has objected to service by mail, the Hague Convention does not permit such service. *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). Greece is a signatory to the Hague Convention but has objected to Article 10 and thus does not

---

[4]     *See* Fed. R. Civ. P. 4(f) (requiring service of process outside any judicial district of the United States to be done "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents").

allow international mail as a means of service.  *See* Hague Conference on Private International

Law, Greece – Central Authority & Practical Information (Oct. 16, 2018), https://www.hcch.net/

en/states/authorities/details3/?aid=258.

27.    *Second*, the 2004 Application seeks depositions of witnesses from PwC Greece in

New York City.  The Litigation Trust does not cite Rule 45 as a ground for this relief.  Nor could

it, as Rule 45 allows a subpoena to command a person to attend a deposition only within 100

miles of where the person resides or within the state where the person resides.  Fed. R. Civ. P.

45(c)(1).  Numerous courts in this district have quashed Rule 45 subpoenas (in whole or in part)

that seek examination of a witness outside the 100 miles set forth in the rule.  *See, e.g.*,

*Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*, No. 14-mc-00318, 2015 WL

728463, at *4 (S.D.N.Y. Feb. 19, 2015); *Seaton Ins. Co. v. Cavell USA*, No. 3:07-cv-356, 2007

WL 9657277, at *3 (D. Conn. Mar. 21, 2007); *Nissan Fire & Marine Ins. Co. v. Fortress Re, Inc.*

*(In re Application for Order Quashing Deposition Subpoenas)*, No. M8-85, 2002 WL 1870084,

at *5 (S.D.N.Y. Aug. 14, 2002).

28.    While these issues are concerning, they are most appropriately raised when and if

the Litigation Trust attempts to serve PwC Greece with a Rule 45 subpoena, instead of following

the Hague Convention.  PwC Greece files this limited objection to preserve its rights to contest

personal jurisdiction and the propriety of service once attempted, should the Litigation Trust

attempt to avoid the Hague Convention's procedures.  But in addition, PwC Greece emphasizes

that the Litigation Trust's attempt to use Rule 2004 to effect pre-litigation discovery

will get it nowhere.

II.     **This Court Does Not Need To Exert Jurisdiction Over PwC Greece, As Rule 2004 Discovery Is Inappropriate In Any Event**

29.     The jurisdictional aspects of alleged claims by the Litigation Trust against PwC Greece are complex, but they need not be considered by the Court at this time or in the context of the Rule 2004 Application.  Rule 2004 discovery is inappropriate for a host of other reasons.

A.     **Standard For Rule 2004 Discovery**

30.     Rule 2004 discovery is a powerful tool in the debtor's toolbox.  It enables a party in interest to determine the nature and extent of the bankruptcy estate, including revealing assets, examining transactions, and assessing whether wrongdoing has occurred.  *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

31.     But Rule 2004 discovery is not unlimited.  It must match the purposes of Rule 2004.  *See, e.g.*, *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (D. Mass. 1981) (noting that the predecessor rule to Rule 2004 was "not intended to give a rehabilitated debtor postconfirmation a strategic advantage in fishing for potential private litigation").  Nor is the debtor entitled to unbounded discovery.  The Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *see also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (same).

32.     The Court must make a finding of "good cause for the examination" in order to grant a Rule 2004 request.  *In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at *4 (Bankr. S.D.N.Y. Jan. 7, 2014).  The party seeking discovery under Rule 2004 bears the burden of showing good cause for the examination it seeks."  *In re Transmar Commodity Grp. Ltd.*, No. 16-13625, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018).  Good cause exists where the Rule 2004 discovery is "necessary to establish the claim of the party seeking the

examination, or if denial of such request would cause the examiner undue hardship or injustice."

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

33.     These principles counsel strongly against Rule 2004 discovery under the

circumstances present here.

## B.     Rule 2004 Discovery Is Inappropriate At This Stage Of The Bankruptcy Case

34.     *First*, courts are reluctant to allow unbounded Rule 2004 discovery in the post-

confirmation context.  Rule 2004 is "generally a pre-confirmation discovery tool."  *In re*

*Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988).  And courts have been

careful to limit Rule 2004 discovery when it extends too far beyond what is needed for the

administration of the case post-confirmation.  *See, e.g.*, *Millennium Lab Holdings II*, 562 B.R. at

629 (limiting the use of Rule 2004 exams to "legitimate post-confirmation inquir[ies]"); *In re*

*Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) (denying Rule

2004 discovery after full case administration had been completed); *In re Express One Int'l, Inc.*,

217 B.R. 215 (Bankr. E.D. Tex. 1998); *Good Hope Refineries*, 9 B.R. at 423.

35.     Here, the Confirmation Order was entered last March, and the Plan specifically

authorizes the Litigation Trust to pursue "claims against auditors."  Plan, art. I(A), ¶ 87.  While it

may affect the fortunes of the Litigation Trust, this 2004 Application, whether granted or denied,

does not affect the core administration of the Chapter 11 Cases.[5]

36.     *Second*, courts have long recognized that the purpose of Rule 2004 is not to

impart a post-confirmation strategic advantage.  *See Good Hope Refineries*, 9 B.R. at 423.  While

the Litigation Trust will no doubt cite caselaw describing Rule 2004 discovery as a "fishing

---

[5]     Indeed, any claims brought as part of an adversary proceeding would be non-core, a point which further underscores the impropriety of the 2004 Application in this instance.

expedition," *e.g.*, *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd sub nom. Sobchack v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600 (2d Cir. 1994), Rule 2004 discovery is really meant to help a debtor "acquire information it lacks," *In re Gawker Media LLC*, No. 16-11700, 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017).

37.     Litigation trusts, in particular, often do not need Rule 2004 discovery.  Typically, such trusts already have access to a great deal of information, including privileged or confidential documents from the debtors or creditors' committee.  In *ADPT DFW Holdings LLC*, for example, the court noted that claims and causes of action were sufficiently investigated during the case "where their information sharing with the Liquidating Trustee could enable the drafting of claims and causes of action in a complaint." **Exhibit C** to the Hampson Decl., Mar. 27, 2018 Hr'g Tr. at 94:10-95:3, *In re ADPT DFW Holdings LLC*, No. 17-31432 (Bankr. N.D. Tex. Apr. 26, 2018), Dkt. No. 1268.  The court even looked at the fee applications of the equity committee and the creditors' committee to support the idea that Rule 2004 discovery of the debtor's former auditor was unnecessary. *Id.* at 95:7-19.

38.     Here, the Litigation Trust simply does not need Rule 2004 discovery.[6]  It already has access to the Debtors' information, including the results of Aegean's internal investigation. *See supra* ¶¶ 9, 14.  Indeed, Kobre & Kim LLP, counsel to the Litigation Trust, has already filed five fee applications in the Chapter 11 Cases for work done prior to the effective date of the Plan.

---

[6]     On the other side of the ledger, the proposed Rule 2004 subpoena broadly seeks all documents related to Aegean, and would impose an undue burden on PwC Greece, particularly in light of its obligations under Greek and European Union privacy law. *See infra* at ¶¶ 51-53. Should it be properly served with a subpoena or request for documents, PwC Greece reserves the right to object on all appropriate grounds, including undue burden.

In the aggregate, the firm has already billed the Debtors' estates close to $1.2 million in fees for work conducted in categories like "investigation/factual development" and "claims assessment and development." *See infra* Appendix 1.[7]

39.    The cases on which the Litigation Trust relies, *Millennium Lab Holdings* and *Gawker Media LLC*, are not to the contrary.  In *Millennium Lab Holdings*, the trustee was appointed after a "prepackaged" bankruptcy filing that went from petition to confirmation in little over a month.  562 B.R. at 618-619.  In support of his Rule 2004 request, the trustee testified that examinations were necessary to "enable the Plan Trusts to determine the scope of viable claims."  *Id.* at 627.  That is nowhere close to the months of work and millions of dollars spent by counsel so far in the Chapter 11 Cases.  In *Gawker Media LLC*, the Rule 2004 motion was pending and under negotiation before the plan was filed.  *Gawker Media*, 2017 WL 2804870, at *3.  Even so, the debtors conceded that they could not file a claim without the information they sought—a reason the court identified as the "purpose" of Rule 2004.  *Id.* at *5-6.  Here, of course, the Litigation Trust has sufficient information.

40.    *Third*, the Litigation Trust has already commenced litigation on related issues and is poised to file a complaint against PwC Greece.  Courts have long acknowledged that Rule 2004 discovery is inappropriate when there is a pending adversary proceeding or civil action on the same issues.  *See, e.g.*, *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 810-811 (Bankr. S.D.N.Y. 2018); *In re Glitnir banki hf.*, No. 08-14757, 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011).  This "pending proceeding" rule derives from the concern that

---

[7]    Appendix 1 draws from the Monthly Fee Statements of Kobre & Kim LLP as follows: First Monthly Fee Statement, ECF No. 253, at 7; Second Monthly Fee Statement, ECF No. 321, at 8; Third Monthly Fee Statement, ECF No. 393, at 8; Fourth Monthly Fee Statement, ECF No. 472, at 8; Fifth Monthly Fee Statement, ECF No. 539, at 8.

Rule 2004 examinations not be used to circumvent the safeguards of the Federal Rules of Civil Procedure.  *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002).  As the Court observed in *Platinum Partners*, parties should not be permitted to "circumvent an adversary's rights by using Rule 2004 rather than obtaining discovery through the rules applicable to such other adversary proceeding."  583 B.R. at 811.

41.    Similarly, many courts find that Rule 2004 discovery can be improper when the putative plaintiff is in a position to commence a civil action.  In *Transmar Commodity Group Ltd.*, the trustee had already received millions of documents.  *See Transmar Commodity Grp.*, 2018 WL 4006324, at *2.  This Court noted that "resort to Rule 2004 discovery of a third party ... may be improper if the Trustee has identified [the third party] as a litigation target and is using Rule 2004 to skirt the more stringent discovery rules applicable" in the other venue.  *Id.* at *5; *see also In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) ("From the evidence presented to me, it seems that the debtors are now in a position to file an action against certain of the individuals and entities if they so choose.  It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure (or where appropriate any other similar state discovery rules).").  As noted in *Coffee Cupboard*, "Rule 2004 examinations should not be used to obtain information for use in ... [a] proceeding before another tribunal."  *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515-517 (Bankr. E.D.N.Y. 1991).

42.    Where courts have declined to extend the pending proceeding rule in this manner, the context is clear that the trustee was not poised to file a complaint.  *See, e.g.*, *Gawker Media*, 2017 WL 2804870, at *5-6 (discussed *supra* ¶ 39); *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559-560 (Bankr. S.D.N.Y. 1991).

15

43.    Here, the Litigation Trust is openly "considering bringing claims against PwC Greece." *See* App. at 2.  Indeed, the Plan defines "Litigation Claims" to include "claims and Causes of Action" ... "concerning improper accounting for or recordation of accounts receivable" and "misstated accounting records, fraudulent misappropriation of funds by Dimitris Melissanidis [sic], claims against auditors and other professionals related to misappropriation of funds ..."  Plan at art. I(A), ¶ 87; *see also* App. ¶¶ 4, 31.

44.    In fact, the Litigation Trust has already commenced litigation against individual officers; its claims in the Luxembourg Litigation and the Southern District Litigation arise out of the same fraud that would underlie any litigation against "auditors."  *See, e.g.*, Compl., *Kravitz v. Tavlarios*, No. 1:19-cv-8438 (S.D.N.Y. Sept. 12, 2019), Dkt. No. 6.

45.    The Securities Litigation further cuts against Rule 2004 discovery.  It shows that other plaintiffs, without the same informational access of the Litigation Trust, have already raised claims similar to those purportedly being investigated in the Rule 2004 application.  Indeed, the plaintiffs in the Securities Litigation are potential beneficiaries of the Litigation Trust.  And the Debtors' Amended Disclosure Statement cited the Securities Litigation, noted that former auditors had been sued, and stated that "the Litigation Trustee reserves the right to seek appropriate relief to recharacterize any alleged direct claims asserted in the Securities Litigation as derivative claims or Section 510(b) Claims ... or seek such other relief it deems necessary or appropriate to maximize the value of the Litigation Claims."  *Disclosure Statement for the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, at 32, ECF No. 383.

16

46.     Notably, the same discovery disputes triggered by this Rule 2004 application will be adjudicated in the Securities Litigation as well, leading to duplicative litigation if the 2004 Application is allowed to proceed.

47.     The cases cited by the Litigation Trust are distinguishable.  In *Drexel*, the court allowed the Federal Deposit Insurance Corporation to receive Rule 2004 discovery being conducted by others.  *Drexel*, 123 B.R. at 703-704.  In *Hilsen*, while this Court did comment on the "considerable leeway" in Rule 2004, it declined to allow a Rule 2004 exam to be used for a "private investigation under the guise of bankruptcy-related discovery" where a case had been fully administered and was ready for a final decree.  *Hilsen*, 2008 WL 2945996, at *5.

48.     And in *Recoton*, the court allowed Rule 2004 discovery, but only where the committee had "unequivocally and convincingly" stated that it had not yet determined whether to pursue litigation.  307 B.R. at 756.  Here, the Litigation Trust has made no such unequivocal statement—nor could it do so convincingly.

C.     **The Proposed Rule 2004 Discovery Here Is An Attempt To End-Run The Greek Courts**

49.     Lastly, courts hesitate to order sweeping discovery when compliance could cause the examinee to run afoul of the rules and procedures of foreign jurisdictions.  *See, e.g.*, *Trade Dev. Bank v. Continental Ins. Co.*, 469 F.2d 35, 41-42 (2d Cir. 1972) (affirming district judge who did not order production of client information that would violate Swiss bank secrecy laws); *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir. 1962) (modifying subpoena to comply with Panamanian law); *In re Fin. Oversight & Mgmt. Bd.*, No. 17-3283, 2019 U.S. Dist. LEXIS 172316 (D.P.R. Apr. 18, 2019) (ordering parties to meet and confer and submit a proposed confidentiality agreement to deal with matters of foreign data privacy).

50.     Here, the Litigation Trust's 2004 Application is an attempt to end-run the Greek courts.  As noted above, PwC Greece is a Greek entity, which operates in Greece, whose directors and shareholders reside in Greece, and which would not be subject to the Court's personal jurisdiction, whether for the Rule 45 subpoena or for the underlying claim that the Litigation Trust is poised to bring.  Beyond that, the Engagement Letter, which was executed in Greece, gives exclusive jurisdiction over disputes arising out of the contract created between PwC Greece and Aegean to the Greek courts.  If this dispute belongs anywhere, it belongs in a Greek court.

51.     Yet Greek discovery law is more sharply circumscribed than its American equivalent.[8]  Prior to litigation, a putative plaintiff must seek an injunction by showing eminent risk or urgency.  *See* **Exhibit D** to the Hampson Decl., Nikolaos M. Katiforis, Evidence in Civil Law – Greece 8 (2015) (excerpt); ASTIKOS KODIKAS [A.K.] [CIVIL CODE] 37:902 (Greece).  During litigation, a party must clearly specify the documents to be viewed, *see* KODIKAS POLITIKIS DIKONOMIAS [KPolD] [CODE OF CIVIL PROCEDURE] 12:450-452 (Greece), a departure from broad-sweeping American discovery.

52.     In addition to that, PwC Greece must comply with Greek and European Union privacy regulations, which will further constrain its ability to comply with the Rule 2004 discovery sought by the Litigation Trust.  PwC Greece must operate under Greek confidentiality regulations for auditors, which contains only limited waivers.  *See* Nomos (2017:4449) Ipoxreotikos Elegxos ton Etision kai ton Enopoiimenon Xrimatooikonomikon Katastaseon, Dimosia Epopteia epi tou Elegktikou Ergou [Statutory Audit of the Annual and Consolidated

---

[8]     This Court may consider "any relevant material or source" when determining foreign law.  Fed. R. Civ. P. 44.1 (made applicable by Bankruptcy Rule 9017).

Financial Statements, Public Oversight of Audit Work and Other Provisions] 2017, A:2
(Greece).   The European Union contains additional restrictions.  *See* Regulation 2016/679 of
Apr. 27, 2016, on the protection of natural persons with regard to the processing of personal data
and on the free movement of such data, and repealing Directive 95/46/EC (General Data
Protection Regulation), 2016 O.J. (L 119) 44-50, https://eur-lex.europa.eu/legal-content/
EN/TXT/PDF/?uri=CELEX:32016R0679&from=EN (providing that personal data cannot be
transferred outside the European Union).

53.    Further, Greece is a signatory to the *Convention on the Taking of Evidence
Abroad in Civil or Commercial Matters*, *done* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 744
(the "1970 Convention"), attached as **Exhibit E** to the Hampson Declaration.  However, Greece
exempted itself from Article 23 of the 1970 Convention, declaring that it "shall not execute
judicial assistance requests for pretrial discovery of documents."  *See* Hague Conference on
Private International Law, Declarations, https://www.hcch.net/en/instruments/conventions/status-
table/ notifications/?csid=933&disp=resdn.  Courts have held that the foreign authority (here,
Greece), should determine the propriety of document requests under such declarations.  *See, e.g.*,
*Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No 06-1446, 2007 WL 1875560, at *2-3
(E.D.N.Y. June 25, 2007); *In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058, 1060 (D. Minn.
2004).  A Rule 45 subpoena in this case is pretrial discovery—precisely what Greece has
determined not to execute.  Thus, attempting to serve PwC Greece through the Hague
Convention is an end-run around Greece's sovereign position.  Any discovery from PwC Greece
should, again, be supervised by the Greek courts where, not incidentally, any action by the
Litigation Trust against PwC Greece must be commenced.

54.    The Litigation Trust should not be allowed to avoid the rules of the road for

Greece, the forum it agreed to.  It tries to get around this clear result by seeking Rule 2004

discovery of PwC Greece, and by joining PricewaterhouseCoopers International Limited ("PwC

International") and PricewaterhouseCoopers LLP ("PwC U.S."), in a transparent attempt to

tighten the sense of connection to the U.S. court system.  This Court should see through this

tactic.

### **CONCLUSION**

55.    The 2004 Application is wholly inappropriate at this stage of the Chapter 11

Cases and would entangle this Court with Greek law, when the underlying dispute squarely

belongs in Greek courts in the first instance.  The Court should deny the 2004 Application as

applied to PwC Greece.


Dated:  November 27, 2019
           New York, New York

/s/ *George W. Shuster, Jr.*
Christopher Davies
George W. Shuster, Jr.
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York  10007
Tel.:    (212) 230-8800
Fax:    (212) 230-8888
Email:  christopher.davies@wilmerhale.com
            george.shuster@wilmerhale.com

*Counsel to PricewaterhouseCoopers
  Auditing Company S.A.*

**APPENDIX 1**

| | T101 Investigation/ Factual Development | T102 Claims Assessment and Development | T103 - Witness Interviews/Depos /2004 Exam. | T104 – Doc. Preservation/ Discovery | T105 – Doc. Review and Analysis |
|---|---|---|---|---|---|
| First Monthly Fee Application | $16,453.50 | $46,959.00 | – | $1,994.00 | $5,838.50 |
| Second Monthly Fee Application | $24,671.00 | $32,170.00 | $358.00 | $6,121.50 | – |
| Third Monthly Fee Application | $23,481.50 | $210,067.50 | $1,869.00 | $13,490.50 | $5,002.00 |
| Fourth Monthly Fee Application | $17,348.50 | $174,510.00 | $3,090.00 | $626.50 | $447.50 |
| Fifth Monthly Fee Application | $55,549.50 | $542,655.00 | $2,529.00 | $5,440.00 | $8,605.50 |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 27, 2019, I caused a true and correct copy of this *Limited Opposition of PricewaterhouseCoopers Auditing Company S.A. to Application by The Aegean Litigation Trust for Entry of an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Examination and Related Discovery of PwC* to be served via email and first-class mail on the parties listed below, in addition to those parties receiving electronic notification through the ECF filing system.

D. Farrington Yates
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
Tel.: (212)-488-1200
Email: farrington.yates@kobrekim.com

*Counsel to Peter Kravitz, as the
Litigation Trustee for the Aegean Litigation
Trust*

John Emmett Murphy
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Tel.: (212) 556-2100
Email: jemurphy@kslaw.com

*Counsel for PricewaterhouseCoopers
International Limited*

Brian S. Masumoto & Andrew Velez-Rivera
Office of the United States Trustee
201 Varick Street, Suite 1006
New York, NY 10014

*United States Trustee for the Southern District
of New York*

Jason Craig Hegt
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Tel.: (212) 906-1200
Email: jason.hegt@lw.com

*Counsel for PricewaterhouseCoopers
LLP*

Dated:  November 27, 2019
         New York, New York

By:    /s/ *George W. Shuster, Jr.*
       George W. Shuster, Jr.