> YOU ARE RECEIVING THESE DOCUMENTS BECAUSE YOUR CLAIM AGAINST AEGEAN MARINE
> PETROLEUM NETWORK, INC., *ET AL.* IS BEING CHALLENGED FOR THE REASONS DESCRIBED IN
> THE ATTACHED OBJECTION. YOU ARE NOT REQUIRED TO RESPOND TO THE OBJECTION, BUT IF
> YOU DO NOT RESPOND, YOUR CLAIM MAY BE REDUCED, EXPUNGED OR RECHARACTERIZED.
> YOU SHOULD CONSIDER CONSULTING WITH AN ATTORNEY REGARDING THE OBJECTION AND
> YOUR RIGHTS.

SILVERMANACAMPORA LLP
Attorneys for the Reorganized Debtors,
Unsecured Creditor Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers

Hearing Date: **January 12, 2021**
Time: **10:00 a.m.**

Objection Due: **January 5, 2021**
Time: **4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:

AEGEAN MARINE PETROLEUM
NETWORK, INC., *et al.*[1]

                Reorganized Debtors.
------------------------------------------------------------------x

Chapter 11

Case No: 18-13374 (MEW)

### NOTICE OF HEARING ON AEGEAN MARINE PETROLEUM S.A.'S OBJECTION TO PROOFS OF CLAIM NUMBER 10097, 10142, & 10149

**PLEASE TAKE NOTICE**, on **January 12, 2021 at 10:00 a.m.**, or as soon thereafter as counsel can be heard, a telephonic hearing (the "Hearing") will be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, on the claims objection (the "Objection") filed by Aegean Marine Petroleum S.A. ("AMPSA"), a reorganized debtor in the above-captioned chapter 11 cases,

---

[1] Due to the large number of Reorganized Debtors in these chapter 11 cases, a complete list of the Reorganized Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/Aegean. The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Reorganized Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

1

seeking entry of an order disallowing proofs of claim number 10097, 10142, and 10149 (the "Objectionable Claims" and each an "Objectionable Claim") filed by certain claimants (the "Claimants") against AMPSA, and granting such further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that, prior to the Hearing, all parties interested in participating in the Hearing must sign up with Court Solutions at www.courtsolutions.com in order to participate in the Hearing and follow the Court's guidelines according to General Order M-543.

**PLEASE TAKE FURTHER NOTICE**, that opposition to the Objection, if any, must be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York 10004-1408, with a hard copy delivered directly to the Chambers of the Honorable Michael E. Wiles, and served in accordance with General Order M-399 or other form upon: (i) attorneys for the Reorganized Debtors, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Brian Powers; and (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Brian S. Masumoto, Esq., so as to be received no later than **4:00 p.m. on January 5, 2021**.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than the filing of a notice on the Court's electronic docket for this case or the announcement of such adjournment in open Court.

Dated: Jericho, New York
November 24, 2020

**SILVERMANACAMPORA LLP**
Attorneys for the Reorganized Debtors

By: *s/ Ronald J. Friedman*
Ronald J. Friedman
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

YOU ARE RECEIVING THESE DOCUMENTS BECAUSE YOUR CLAIM AGAINST AEGEAN MARINE PETROLEUM NETWORK, INC., *ET AL.* IS BEING CHALLENGED FOR THE REASONS DESCRIBED IN THE ATTACHED OBJECTION. YOU ARE NOT REQUIRED TO RESPOND TO THE OBJECTION, BUT IF YOU DO NOT RESPOND, YOUR CLAIM MAY BE REDUCED, EXPUNGED OR RECHARACTERIZED. YOU SHOULD CONSIDER CONSULTING WITH AN ATTORNEY REGARDING THE OBJECTION AND YOUR RIGHTS.

SILVERMANACAMPORA LLP
Attorneys for the Reorganized Debtors,
Unsecured Creditor Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers

Hearing Date: January 12, 2021
Time: 10:00 a.m.

Objection Due: January 5, 2021
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:

AEGEAN MARINE PETROLEUM
NETWORK, INC., *et al.*[1]

          Reorganized Debtors.
---------------------------------------------------------------x

Chapter 11

Case No: 18-13374 (MEW)

## AEGEAN MARINE PETROLEUM S.A.'S OBJECTION TO PROOF OF CLAIM NUMBERS 10097, 10142, & 10149

Aegean Marine Petroleum S.A., a reorganized debtor in the above-captioned chapter 11 cases (the "AMPSA"), by its attorneys, SilvermanAcampora LLP, respectfully submits this objection (the "Objection") seeking entry of an order, in substantially the form annexed hereto as Exhibit 1 (the "Proposed Order"), disallowing or reducing certain proofs of claim filed by certain

---

[1] Due to the large number of Reorganized Debtors in these chapter 11 cases, a complete list of the Reorganized Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/Aegean. The location of Debtor Aegean Bunkering (USA) LLC's principal place of business and the Reorganized Debtors' service address in these chapter 11 cases is 52 Vanderbilt Avenue, Suite 1405, New York, New York 10017.

1

claimants (each a "Claimant", and collectively, the "Claimants") against AMPSA, and granting such further relief as this Court deems just and proper, and respectfully represents as follows:

## BACKGROUND

1. On November 6, 2018 (the "Petition Date"), AMPSA, along with Aegean Marine Petroleum Network Inc. ("Aegean Marine") and together with certain direct and indirect subsidiaries of Aegean Marine (collectively, the "Reorganized Debtors," and together with Aegean Marine's direct and indirect non-Debtor subsidiaries, collectively "Aegean") filed a voluntary petition (the "Bankruptcy Petition") for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2. Prior to the Petition Date, Aegean was an international marine fuel logistics company and independent physical suppliers of marine fuel and lubricants (the "Products") to vessels in port, at sea, on rivers and other waterways around the globe. Aegean provided customers with an integrated supply chain comprised of fuel sourcing, storage (onshore and offshore), vessel-to-vessel delivery, and post-delivery customer care.

3. Additional information about Aegean's business and the events leading up to the filing of the Bankruptcy Petition can be found in the "Declaration of Tyler Baron, Director of Aegean Marine Petroleum Network Inc., in Support of Chapter 11 Petitions and First Day Motions," dated November 6, 2018 (ECF Doc. No. 2).

4. On December 18, 2018, the Court entered an order (ECF Doc. No. 240) establishing February 8, 2019 as the date by which proof of claims or interests (collectively, the "Claims") were required to be filed in the Reorganized Debtor's cases (the "Bar Date"); and establishing May

6, 2019 as the governmental bar date (the "Governmental Bar Date"), and collectively with the Bar Date, the "Bar Dates").

5. On March 29, 2019, the Court entered an order confirming the Joint Plan of Reorganization of Aegean Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") (ECF Doc. No. 482).

6. The Effective Date of the Plan occurred on April 3, 2019 (the "Effective Date"). On April 3, 2019, the Reorganized Debtors filed and served the *Notice of (A) Entry of Order Confirming The Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc and It's Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (B) Occurrence of Effective Date Under Plan,* advising the Court and interested parties that all conditions precedent to the Effective Date of the Plan were satisfied. Pursuant to the Plan, the Reorganized Debtors are authorized and empowered to file objections to Claims filed against any of the Debtors' estates except for Claims filed against Aegean Marine Petroleum Network, Inc.

**The Objectionable Claims**

7. On February 20, 2020, The National Shipping Company of Saudi Arabia filed a claim against AMPSA as proof of claim number 10097 (the "Wedyan Objectionable Claim"). A copy of Wedyan Objectionable Claim is annexed to the Rigakos Declaration as Exhibit A.

8. On February 21, 2020, Ariadmar Limited filed a claim against AMPSA as proof of claim number 10142 (the "Ariadmar Objectionable Claim"). A copy of Ariadmar Objectionable Claim is annexed to the Rigakos Declaration as Exhibit B.

9. On February 21, 2020, Alcesmar Limited filed a claim against AMPSA as proof of claim number 10149 (the "Alcesmar Objectionable Claim"). A copy of Alcesmar Objectionable Claim is annexed to the Rigakos Declaration as Exhibit C.

10. Each of the Objectionable Claims asserts that certain Products delivered by the Reorganized Debtors to Claimants (the "Delivered Products") did not comport with the specifications set forth in each of the Claimants' respective Bunkering Agreements (defined below) with AMPSA and allegedly caused damages to each of the Claimants.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

11. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein are Sections 105 and 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules").

## RELIEF REQUESTED

12. By this Objection, AMPSA respectfully seeks entry of the Proposed Order disallowing or reducing each of the Objectionable Claims on the basis that the amounts asserted by each Objectionable Claim should be disallowed or reduced because (i) the laboratory results demonstrate that the quality of the Delivered Products delivered to Claimants met the required specifications under the AMPSA's relevant general terms and conditions for the sale of marine bunker fuels and lubricants (the "Terms"), which are incorporated by reference into and form a part of each of the Bunkering Agreements (as defined herein), (ii) the Claimants failed to assert their quality-related claims within fifteen (15) days of delivery from AMPSA as required by the Terms, (iii) the Claimants allege claims for damages that violate the Terms incorporated into all bunkering agreements entered into with AMPSA, and/or (iv) the Claimants incorrectly classified their proofs of claim as secured claims against AMPSA.

4

## BASIS FOR OBJECTIONS

13. Bankruptcy Code § 502 provides that a proof of claim filed under Bankruptcy Code § 501 is "deemed allowed" unless a party in interest objects. 11 U.S.C. §502(a).

14. Bankruptcy Rule 3007(a) states, in relevant part, that:

> [a]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing.

15. "Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Residential Capital, LLC*, No. 12-12020, 2014 Bankr. LEXIS 646, at *9 (Bankr. S.D.N.Y. Feb. 18, 2014) (citing *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). "By producing 'evidence equal in force to the prima facie case,' an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to 'prove by a preponderance of the evidence that under applicable law the claim should be allowed.'" *In re Residential Capital, LLC*, No. 12-12020, 2014 Bankr. LEXIS 646, at *9 (Bankr. S.D.N.Y. Feb. 18, 2014) (citing *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12-13 (S.D.N.Y. Sept. 26, 2013)).

16. Pursuant to section 502(b)(1) of the Bankruptcy Code, claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. 502(b)(1). Bankruptcy courts may look to applicable nonbankruptcy law to determine whether a claim is allowable. *In re Residential Capital, LLC*, No. 12-12020, 2014 Bankr. LEXIS 646, at *10 (Bankr. S.D.N.Y. Feb. 18, 2014).

17. AMPSA and its retained professionals have reviewed and analyzed the Objectionable Claims. As explained below, the Objectionable Claims should be should be disallowed or reduced because (i) the Delivered Products met the required specifications under each respective Bunkering Agreement (defined herein), (ii) the Claimants failed to assert their quality-related claims within fifteen (15) days of delivery of the Delivered Product from AMPSA as required by the Terms, which are incorporated by reference into each Bunkering Agreement, (iii) with respect to certain of the Objectionable Claims, Claimant acted at its own peril and could have caused the alleged damages which Claimant seeks to recover, (iv) the Claimants allege impermissible consequential damages that exceed the limits of liability against AMPSA set forth in the Terms, and/or (v) certain Claimants incorrectly classified their proof of claim as secured.

18. In support of this Objection, AMPSA submits the Declaration of George Rigakos (the "Rigakos Declaration"), the representative of AMPSA tasked with analyzing the proofs of claims filed against AMPSA, annexed hereto as Exhibit 2.

**The Objectionable Claims Should Be Disallowed Because the
Product Delivered to Claimant Satisfied the Specifications Set Forth in the Terms**

19. Each of the Objectionable Claims alleges damages stemming from the delivery of the Delivered Products, which allegedly failed to meet the specifications set forth in the Claimants' contracts with AMPSA. However, contrary to the Claimants' assertions, laboratory reports prove that the Delivered Products meet the required specification at the time of delivery to the Claimants, and thus the Objectionable Claims must be disallowed in their entirety.

20. On March 28, 2018, The National Shipping Company of Saudi Arabia entered into a bunkering agreement with AMPSA for the purchase of Products to be delivered to the M/V Wedyan (the "Wedyan Bunkering Agreement").[2]

---

[2] A copy of the Wedyan Bunkering Agreement is annexed to the Wedyan Objectionable Claim as Exhibit 1.

21. On April 6, 2018, Ariadmar Limited entered into a bunkering agreement with AMPSA for the purchase of Products to be delivered to the M/V Seaways Ariadmar (the "Ariadmar Limited Bunkering Agreement").[3]

22. On April 6, 2018, Alcesmar Limited entered into a bunkering agreement with AMPSA for the purchase of Products to be delivered to the M/V Seaways Alcesmar (the "Alcesmar Limited Bunkering Agreement,"[4] and together with the Wedyan Bunkering Agreement and the Ariadmar Limited Bunkering Agreement, the "Bunkering Agreements" and each a "Bunkering Agreement").

23. On April 3, 2018, prior to the Delivery Dates (as defined herein), samples of the Delivered Products were submitted to routine testing by NMK Resources on behalf of AMSPA. On April 21, 2018, NMK Resources issued a report demonstrating that the test samples of the Delivered Products satisfied the requisite specifications set forth in the Bunkering Agreements (the "Products Report"). A copy of the Products Report is annexed to the Rigagkos Declaration as Exhibit D.

**Certain of The Objectionable Claims Should
Be Disallowed Because Claimant Acted At Its Own Peril**

24. The Wedyan Objectionable Claim should be disallowed in its entirety because The National Shipping Company of Saudi Arabia, the Claimant, acted at its own peril and the alleged damages Claimant seeks to recover were the result of Claimant's actions.

25. Exhibit 4 to the Wedyan Objectionable Claim states that prior to the use of the Delivered Products, the M/V Wedyan sent samples of the Delivered Products to Shore Lab on

---

[3] A copy of the Ariadmar Limited Bunkering Agreement is annexed to the Ariadmar Objectionable Claim.

[4] A copy of the Alcesmar Limited Bunkering Agreement is annexed to the Alcesmar Objectionable Claim

April 18, 2018 and April 23, 2018. While the Wedyan Objectionable Claim fails to include results from the tests of the Delivered Products, the Wedyan Objectionable Claim alleges that the tests indicated that the tested samples of the Delivered Products suffered from deficiencies. M/V Wedyan was then advised by The National Shipping Company of Saudi Arabia and Shore Lab to mix the Delivered Products with certain other fuel additives despite receiving the reports from Shore Lab that allegedly found the Delivered Products suffered from deficiencies. Claimant acted at its own peril when it chose to alter the Delivered Products and mix the Delivered Products with other fuel additives. The additional fuel products or additives the M/V Wedyan mixed with the Delivered Products could be responsible for the damages Claimant seeks to recover.

26. As set forth above, the Wedyan Objectionable Claim should be disallowed in its entirety because Claimant acted at its own peril and could have caused the alleged damages Claimant seeks to recover.

**The Objectionable Claims Should Be Disallowed For Failure
To Timely Notify AMPSA Concerning the Quality of the Delivered Products**

27. Even assuming *arguendo* that the Delivered Products were not to the specifications set forth in the relevant Bunkering Agreements, certain of the Objectionable Claims must still be disallowed because certain Claimants failed to provide AMPSA with timely notice of claims concerning the quality of the Delivered Products.

28. The Terms provide the general standard terms and conditions under which AMPSA agrees to enter into all of the relevant Bunkering Agreements, and were also generally available to all parties for inspection via Aegean's website. A copy of the Terms is annexed the Rigakos Declaration as <u>Exhibit E</u> and are also set forth as exhibits to certain of the Objectionable Claims.

29. Section 13.2 of the Terms sets forth as follows:

Claims concerning quality shall have to be submitted to the Seller in writing within *15 days from delivery*, failing which the rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all times. If it is alleged that any equipment or machinery has been damaged by defective Products, full details must be given to the Seller at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Seller or its representative, otherwise no such claim shall be accepted by the Seller.

30. The purpose of this time limitation, which is commonplace in the industry and reasonable under the circumstances, is to provide AMPSA with the ability to investigate any quality-related claims prior to either the fuel being (i) depleted through usage; or (ii) mixed with delivery of another fuel or additives changing the character of the Delivered Products. The ability to perform such an investigation permits AMPSA to effectively defend against any quality-related claims specifically to the Delivered Products.

31. Pursuant to the bunker delivery receipt issued by AMPSA to Ariadmar Limited dated April 12, 2018, AMPSA delivered the Delivered Products to the M/V Seaways Ariadmar on April 12, 2018 (the "Ariadmar Delivery Date"),[5] and thus the fifteen (15) day quality-claim deadline set forth in the Terms was April 27, 2018 (the "Ariadmar Limited Quality Claim Deadline"). Ariadmar Limited first notified AMSPA of its quality-related claim under the Ariadmar Limited Bunkering Agreement on May 10, 2018 (the "Ariadmar Limited Quality-Related Claim Date"), thirteen (13) days after the Ariadmar Limited Quality Claim Deadline.

32. Pursuant to the bunker delivery receipt issued by AMPSA to Alcesmar Limited dated April 9, 2018, AMPSA delivered the Delivered Products to the M/V Seaways Alcesmar on

---

[5] A copy of the bunker delivery receipt issued by AMPSA to Ariadmar Limited dated April 12, 2018 is annexed to the Ariadmar Objectionable Claim.

April 9, 2018 (the "Alcesmar Delivery Date"),[6] and thus the fifteen (15) day quality-claim deadline set forth in the Terms was April 25, 2018 (the "Alcesmar Limited Quality Claim Deadline"). Alcesmar Limited first notified AMPSA of its quality-related claim under the Alcesmar Limited Bunkering Agreement on May 10, 2018 (the "Alcesmar Limited Quality-Related Claim Date"), fifteen (15) days after the Alcesmar Limited Quality Claim Deadline.

33. As set forth above, Claimants – Alcesmar Limited and Ariadmar Limited – failed to provide AMPSA with timely notice of their quality-related claims prior to the expiration of each of their respective quality claim deadlines. Accordingly, pursuant to Section 13.2 of the Terms, Claimants Alcesmar Limited and Ariadmar Limited waived their rights and are forever barred from asserting any quality-related claims relating to their respective receipt of Delivered Product under their respective Bunkering Agreements. Therefore, each of their respective Objectionable Claims must be disallowed.

**Portions of Certain of the Objectionable Claims Should Be Disallowed Because Claimant Alleges Claims for Damages Impermissible Pursuant to the Terms**

34. Even if the Court finds that the Objectionable Claims of Claimants Alcesmar Limited and Ariadmar Limited should not be disallowed in their entirety, the Objectionable Claims of all Claimants should also be disallowed by the Court to the extent Claimants seeks consequential damages because such claims are impermissible pursuant to Sections 14.1 and 14.2 of the Terms.

35. Section 14.1 of the Terms provides that,

> [t]o the extent permitted by Law the Seller shall not be liable to the Buyer for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Seller, its servants, agents or subcontractors.

---

[6] A copy of the bunker delivery receipt issued by AMPSA to Alcesmar Limited dated April 9, 2018 is annexed to the Alcesmar Objectionable Claim.

36. Section 14.2 of the Terms provides that,

> [n]otwithstanding the foregoing in the event that the Seller is found to be liable to the Buyer, the total amount payable by way of compensation shall not exceed the value charged to the Buyer for the Products supplied under this Agreement. It is a precondition to the payment of any compensation by the Seller that all sums standing due to the Seller from the Buyer are first paid and settled.

37. Claimants Ariadmar Limited and Alcesmar Limited cite that the losses suffered as a result of the allegedly off-specification Delivered Products included off-hire time, extra bunkers consumed, miscellaneous bunkering and repair costs. Additionally, Claimants Ariadmar Limited and Alcesmar Limited further seek interest at the New York statutory rate of prejudgment interest provided by Sections 5001 and 5004 of the New York Civil Practice. However, Section 14.1 of the Terms, which were agreed to by these particular Claimants when entering into the Bunkering Agreements, explicitly state that AMPSA is not liable "for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise."

38. Moreover, the Ariadmar Objectionable Claim and Alcesmar Objectionable Claim exceed the liability cap established by Section 14.2 of the Terms, which provides that any claim for damages is limited to the amount paid for the Delivered Products.

39. On April 13, 2018, AMPSA issued an invoice to Ariadmar Limited in the amount of Four Hundred Thirty-Five Thousand Six Hundred Ninety-Six and 94/100 ($435,696.94) Dollars for the sale and delivery of the specified Products in the Ariadmar Limited Bunkering Agreement (the "Ariadmar Limited Invoice").[7] The Ariadmar Objectionable Claim asserts damages in the amount of Nine Hundred Ninety-Six Thousand Six Hundred Thirty-Nine and 99/100

---

[7] A copy of the Ariadmar Limited Invoice is annexed to the Rigakos Declaration as Exhibit F.

($996,639.99) Dollars, exceeding Ariadmar Limited Invoice amount by Five Hundred Sixty Thousand Nine Hundred Fifty-Three and 05/100 ($560,953.05). Accordingly, the Ariadmar Objectionable Claim must, at a minimum, be reduced by Five Hundred Sixty Thousand Nine Hundred Fifty-Three and 05/100 ($560,953.05).

40. On April 10, 2018, AMPSA issued an invoice to Alcesmar Limited in the amount of Two Hundred Ten Thousand Nine Hundred Eighty-Nine and 32/100 ($210,989.32) Dollars for the sale and delivery of the specified Products in the Alcesmar Limited Bunkering Agreement (the "Alcesmar Limited Invoice").[8] The Alcesmar Objectionable Claim asserts damages in the amount of One Million Seventy Thousand Five Hundred Ten and 99/100 ($1,070,510.99) Dollars, exceeding Alcesmar Limited Invoice amount by Eight Hundred Fifty-Nine Thousand Five Hundred Twenty-One and 60/100 ($859,521.60) Dollars. Accordingly, the Alcesmar Objectionable Claim must, at a minimum, be reduced by Eight Hundred Fifty-Nine Thousand Five Hundred Twenty-One and 60/100 ($859,521.60) Dollars.

**Certain Objectionable Claims Should be Disallowed Because The Objectionable Claims Are Incorrectly Classified as a Secured Claim**

41. Finally, the Ariadmar Objectionable Claim and Alcesmar Objectionable Claim must be disallowed because the proofs of claim are incorrectly classified as secured when those Objectionable Claims are unsecured. Both Objectionable Claims lack documentation to support a finding that those proofs of claim are secured claims against AMPSA, and thus must be disallowed.

## RESERVATION OF RIGHTS

42. The Reorganized Debtors expressly reserve their rights to amend, modify, or supplement this Objection and to file additional objections to the Objectionable Claims or any other claims (filed or not) which may be asserted against the Claimants. Should one or more of

---

[8] A copy of the Alcesmar Limited Invoice is annexed to the Rigakos Declaration as Exhibit G.

the grounds for objection stated in this Objection be dismissed, the Reorganized Debtors reserve their right to object on other stated grounds or on any other grounds that the Reorganized Debtors discover.

43. Notice of this Objection has been provided to the Office of the United States Trustee and the Claimants. In light of the nature of the relief requested, the Reorganized Debtors submit that no other or further notice is necessary.

## CONCLUSION

44. Based upon the foregoing, AMPSA respectfully requests that the Court enter the Proposed Order disallowing each of the Objectionable Claims as set forth herein, and grant AMPSA such other and further relief as is just and proper.

Dated: Jericho, New York
November 24, 2020

SILVERMANACAMPORA LLP
Attorneys for the Reorganized Debtors

By: *s/ Ronald J. Friedman*
Ronald J. Friedman
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

13

HTRUST/2505023.3/067904.1