AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Philip C. Dublin
Abid Qureshi
Kevin Zuzolo
Edan Lisovicz

*Counsel to the Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-13374 (MEW)<br><br>Jointly Administered |

**NOTICE OF HEARING ON THE LITIGATION TRUST'S MOTION**
**TO EXTEND THE TERMINATION DATE OF THE LITIGATION TRUST**

**PLEASE TAKE NOTICE** that, on January 22, 2024, the litigation trust (the "Litigation Trust") established pursuant to the *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 22, 2019, filed the *Litigation Trust's Motion to Extend the Termination Date of the Litigation Trust* (the "Motion"), and a hearing to consider the Motion shall be held before the Honorable Michael E. Wiles, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on

---

[1] Pursuant to orders of the Court, the chapter 11 cases of the Reorganized Debtors have been closed. Aegean Marine Petroleum Network Inc. (Case No. 18-17334 (MEW)) is not a Reorganized Debtor.

**February 6, 2024 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing"), or at such other time as the Court may determine.

PLEASE TAKE FURTHER NOTICE that the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing telephonically must refer to and comply with the Court's guidelines for telephonic appearances[2] and register with Court Solutions at: www.court-solutions.com.[3]

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

PLEASE TAKE FURTHER NOTICE that any objections or responses to the Motion must be filed with the Court in accordance with the *Order Establishing Certain Notice, Case Management, and Administrative Procedures* [ECF No. 109] (the "Case Management Order") and served so as to be actually received by: (i) Province, Inc., 2360 Corporate Circle, Suite 330, Henderson NV, 89074, Attn: Peter Kravitz and Amanda Demby, Email: ademby@provincefirm.com; (ii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Philip C. Dublin, Email: pdublin@akingump.com, Abid Qureshi, Email: aqureshi@akingump.com, Kevin Zuzolo, Email: kzuzolo@akingump.com, and Edan Lisovicz, Email: elisovicz@akingump.com, counsel to the Litigation Trust; and (iii) those parties on the Master Service List (as defined in the Case Management Order), no later than **January 30, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

---

[2] The Court's procedures for telephonic appearances are available at: https://www.nysb.uscourts.gov/content/judge-michael-e-wiles.

[3] Information on how to register for, and use, the Court Solutions platform is available at: https://help.court-solutions.com/hc/en-us.

**PLEASE TAKE FURTHER NOTICE** that any parties filing an objection are required to attend the Hearing, and failure to appear may result in relief being granted upon default, *provided* that objecting parties may attend the Hearing telephonically.

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, the Litigation Trust may, on or after the Objection Deadline, submit to the Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website: https://dm.epiq11.com/case/aegean/dockets. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: New York, New York
January 22, 2024

**AKIN GUMP STRAUSS HAUER & FELD LLP**
By: /s/ *Abid Qureshi*
Philip C. Dublin
Abid Qureshi
Kevin Zuzolo
Edan Lisovicz
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Litigation Trust*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Philip C. Dublin
Abid Qureshi
Kevin Zuzolo
Edan Lisovicz

*Counsel to the Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) Chapter 11 |
| AEGEAN MARINE PETROLEUM NETWORK INC., *et al.*,[1] | ) ) 18-13374 (MEW) ) |
| Debtors. | ) Jointly Administered ) |

**LITIGATION TRUST'S MOTION TO EXTEND THE**
**TERMINATION DATE OF THE LITIGATION TRUST**

The litigation trust (the "Litigation Trust") established pursuant to the *Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 22, 2019 [ECF No. 503-1] (the "Plan"),[2] hereby files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), extending the termination date (the "Termination Date") of

---

[1] Pursuant to orders of the Court, the chapter 11 cases of the Reorganized Debtors have been closed. Aegean Marine Petroleum Network Inc. (Case No. 18-17334 (MEW)) ("Aegean") is not a Reorganized Debtor.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

the Litigation Trust for two years from April 3, 2024 through and including April 3, 2026. In support of this Motion, the Litigation Trust respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105 and 1142 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Article V.L of the Plan and section 11.1 of the Litigation Trust Agreement, dated as of April 3, 2019 (the "Trust Agreement"),[3] by and among Aegean, on behalf of itself, the other Debtors and the Non-Debtor Subsidiaries, as settlors, and Peter Kravitz, as trustee of the Litigation Trust (the "Litigation Trustee").

## BACKGROUND

4. On November 6, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors filed for bankruptcy after it was discovered that significant assets of the Debtors had been misappropriated through a fraudulent accounting scheme orchestrated by their founder and former CEO, Dimitris Melissanidis ("Melissanidis"), a convicted criminal.[4] This conduct first came to light in the spring of 2018, when Aegean reported to the SEC that it would be unable to timely file audited financial statements for fiscal year 2017, which contributed to a severe operational and liquidity crisis that nearly forced the Debtors to liquidate. *See* Disclosure Statement Art. V. On November 2, 2018, following the appointment of new

---

[3] A copy of the Trust Agreement is attached hereto as **Exhibit A**.

[4] The facts and circumstances surrounding the Debtors' bankruptcy filing are discussed in greater detail in the *Disclosure Statement for the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 383] (the "Disclosure Statement"), Art. V.

independent directors and an investigation conducted by the audit committee of the Debtors'

board, the Debtors disclosed that up to $300 million of cash and other assets appeared to have been

misappropriated through fraudulent activities involving fake accounting entries, fictitious

documentation and over a dozen employees, including members of senior management of. *Id.*

The principal beneficiaries of the misappropriation of the Debtors' assets were entities controlled

by Melissanidis or related parties in various jurisdictions across the world.

5. Approximately two months after the commencement of the Chapter 11 Cases, the

Debtors filed the Plan. The Plan contemplated, among other things, the sale of the Debtors'

business to Mercuria Asset Holdings (Hong Kong) Limited and certain affiliated entities

(collectively, "Mercuria") and the establishment of the Litigation Trust to pursue all claims and

causes of action of the Debtors or their Non-Debtor Subsidiaries related to the fraudulent

accounting scheme and misappropriation of assets (collectively, the "Litigation Claims"), the

proceeds of which would be used to fund recoveries for Aegean's unsecured creditors.[5] The Court

confirmed the Plan on March 29, 2019,[6] and the effective date of the Plan occurred on April 3,

2019 (the "Effective Date").[7]

6. On the Effective Date, the Litigation Trust was established pursuant to the Plan and

the Trust Agreement for the purpose of prosecuting and liquidating the Litigation Claims and

distributing the proceeds thereof in accordance with the Plan and the Trust Agreement. *See* Plan

---

[5] The Plan also provided for Mercuria to make a $40 million cash payment for the benefit of Aegean's unsecured creditors and provide a $15 million loan to the Litigation Trust to fund the pursuit of the Litigation Claims.

[6] *See Findings of Fact, Conclusions of Law, and Order Confirming the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 503] (the "Confirmation Order")

[7] *See Notice of (A) Entry of Order Confirming the Joint Plan of Reorganization of Aegean Marine Petroleum Network Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (B) Occurrence of the Effective Date* [ECF No. 514].

Art. V.B; Trust Agreement § 2.5. The Litigation Trustee's duties include, among other things (and subject to the approval of the Litigation Trust Advisory Board as provided in the Trust Agreement), to (a) manage, supervise and protect the Litigation Trust Assets, (b) object to, compromise or settle certain Disputed Claims or Interests, (c) investigate, prosecute, pursue, compromise, abandon or otherwise deal with and settle all Litigation Claims and (d) distribute the proceeds of the Litigation Claims in accordance with the Plan and the Trust Agreement. *See* Plan Art. V; Trust Agreement Art. IV. The Litigation Trust is intended to qualify as a liquidation trust pursuant to Treasury Regulation section 301.7701-4(d) for U.S. federal income tax purposes, with no objective to engage in the conduct of a trade or business. *Id.*; *see also* Treas. Reg. § 301.7701-4 (2023).

7.     Following the Effective Date, the Litigation Trust commenced a global asset recovery effort to pursue the Litigation Claims, including retaining professionals (including local counsel in certain foreign jurisdictions) to develop and implement strategies to recover value in connection with damages suffered by Aegean due to the conduct of Melissanidis and other parties. The Litigation Trust has also worked to review and reconcile proofs of claim filed against Aegean. While the Litigation Trust has completed the process of reconciling proofs of claim and making distributions to the Litigation Trust Beneficiaries from the disputed claims reserve and has resolved certain of the Litigation Claims, more time is needed to continue to pursue and monetize the Litigation Claims. Although the Litigation Trust commenced litigation and/or asset recovery efforts in 2019 in various jurisdictions where misappropriated assets were transferred or where entities involved in the fraud are incorporated, including Luxembourg, Cyprus and the Republic of the Marshall Islands, such efforts currently remain ongoing in various stages of litigation.[8]

---

[8]  These asset recovery efforts are described in greater detail in the quarterly reports filed by the Litigation Trust. *See, e.g.*, *Notice of Litigation Trust's Quarterly Report for the Period from July 1, 2023 through September 30, 2023* [ECF No. 819].

While the Litigation Trust has sought to monetize the Litigation Claims as expeditiously as possible for the benefit of the Litigation Trust Beneficiaries, due to circumstances beyond the control of the Litigation Trust, it is unclear when such litigation ultimately will be resolved. Thus, the Litigation Trust requires an extension of the current Termination Date of the Litigation Trust given the additional time that will be needed to complete the process of liquidating the Litigation Claims and distributing the proceeds thereof.[9]

8. Specifically, the Plan and the Trust Agreement provide for the dissolution of the Litigation Trust no later than five years after its creation (*i.e.*, April 3, 2024), unless the Court authorizes a fixed period extension to facilitate or complete the liquidation of the Litigation Trust Assets.[10] These provisions are based on Treasury Regulation section 301.7701-4(d) and related I.R.S. guidance, which provide that, to qualify as a liquidating trust for tax purposes, the trust instrument must contain a fixed termination date generally not more than five years after the creation of the trust, which date may be extended with the approval of the bankruptcy court upon a finding that an extension is necessary to the liquidating purpose of the trust.[11]

---

[9] The Litigation Trust's recovery efforts have encountered delays due to, among other things, various appeals, the COVID-19 pandemic and procedural delays in foreign legal proceedings.

[10] *See* Trust Agreement § 11.1 ("The Litigation Trust Advisory Board and the Litigation Trust shall be dissolved at such time as (i) all of the Litigation Trust Loan Payments and the Litigation Trust Assets have been distributed pursuant to the Plan and this Agreement or (ii) the Litigation Trustee determines, following the approval of the Litigation Trust Advisory Board, that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional Litigation Trust Proceeds to justify further pursuit; provided, however, that *in no event shall the Litigation Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed two years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the Litigation Trust Assets*.") (emphasis added); Plan Art. V.L (same).

[11] *See, e.g.,* I.R.S. Priv. Ltr. Rul. 202226004 (July 1, 2022) ("Section 3.06 of Rev. Proc. 94-45 provides that the trust instrument must contain a fixed or determinable termination date that is generally not more than 5 years from the date of creation of the trust and that is reasonable based on all the facts and circumstances. If warranted by the facts and circumstances, provided for in the plan and trust instrument, and subject to the approval of the bankruptcy court with jurisdiction over the case upon a finding that the extension is necessary to the liquidating purpose of the trust,

9. Accordingly, to provide the necessary additional time to pursue the Litigation Claims, distribute the proceeds thereof and wind down the remaining matters of the Litigation Trust, the Litigation Trust seeks a two-year extension of the Termination Date. To be clear, a two-year extension may well prove insufficient to monetize the Litigation Claims and distribute the proceeds thereof despite the best efforts of the Litigation Trust. Accordingly, the request for a two-year extension is being made without prejudice to the Litigation Trust's right to seek further extensions in the future.

## RELIEF REQUESTED

10. Pursuant to Bankruptcy Code sections 105 and 1142, the Litigation Trust respectfully requests entry of the Proposed Order, attached hereto as **Exhibit B**, extending the Termination Date of the Litigation Trust for two years from April 3, 2024 to April 3, 2026, without prejudice to the Litigation Trust's rights to request a further extension in accordance with the Trust Agreement.[12]

## BASIS FOR RELIEF

11. Pursuant to the Plan and the Trust Agreement, the Court has the express authority to extend the Termination Date of the Litigation Trust, which is necessary to allow the Litigation Trust to continue to pursue the Litigation Claims and to the liquidating purpose of the Litigation Trust.[13] In addition, extending the Termination Date is consistent with the Court's broad authority,

---

the term of the trust may be extended for a finite term based on its particular facts and circumstances. The trust instrument must require that each extension be approved by the court within 6 months of the beginning of the extended term.").

[12] For the avoidance of doubt, the extension sought herein should remain subject to earlier termination of the Litigation Trust pursuant to section 11.1 of the Trust Agreement, to the extent appropriate.

[13] *See* Plan Art. XII.24 (the Court has jurisdiction to "decide and resolve all matters related to the Litigation Trust Documents."); Confirmation Order ¶ 122 (the Court retains exclusive jurisdiction over "the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including all matters listed in Article XII of the Plan, as well as for the purposes set forth in section 1142 of the Bankruptcy Code."); Trust Agreement § 11.1.

pursuant to Bankruptcy Code sections 105(a) and 1142(b), to issue orders necessary to ensure the orderly conduct of bankruptcy proceedings and to implement the provisions of the Plan. *See* 11 U.S.C. § 105(a) ("The court may issue any order or process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); 11 U.S.C. § 1142(b) ("The court may direct the debtor or any other party . . . to perform any other act . . . that is necessary for the consummation of the plan."); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. §1142(b) . . . and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.'") (internal citations omitted).

12.     The relief requested herein is necessary to allow the Litigation Trust to continue to pursue the Litigation Claims and distribute any proceeds thereof in accordance with the Plan and the Trust Agreement. The extension sought is not for delay but rather to ensure that the Litigation Trust is properly and timely administered, consistent with the terms of the Plan and the Trust Agreement that permit the Court to extend the Termination Date to the extent necessary to facilitate or complete the liquidation of the trust assets. Moreover, extending the Termination Date will avoid the significant prejudice to the Litigation Trust Beneficiaries that would occur if the Litigation Trust were forced to terminate and dissolve before the Litigation Claims can be monetized, and no party in interest will be prejudiced by such an extension. Courts in this and other districts have granted similar relief to that requested herein in other chapter 11 cases. *See, e.g., In re Lehman Bros. Holdings Inc.,* No. 08-13555 (SCC) (Bankr. S.D.N.Y. Aug. 13, 2020)

[ECF No. 60770] (granting five-year extension of post-confirmation liquidating trust); *In re Lehman Bros. Holdings Inc.,* No. 08-13555 (SCC) (Bankr. S.D.N.Y. Mar. 6, 2017) [ECF No. 55012] (granting three-year extension of post-confirmation liquidating trust); *In re MF Global Holdings Ltd.*, No. 11-15059 (MG) (Bankr. S.D.N.Y. May 22, 2018) [ECF No. 2372] (granting three-year extension of post-confirmation litigation trust); *In re Lyondell Chemical Co.,* No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 6, 2018) [ECF No. 7532] (granting three-year extension of post-confirmation litigation trust); *In re Lyondell Chemical Co.,* No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 27, 2015) [ECF No. 7385] (granting five-year extension of post-confirmation liquidating trust); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2018) [ECF No. 566] (granting three-year extension of post-confirmation litigation trust).

13. Finally, while the Litigation Trust hopes to complete the liquidation of the Litigation Claims and recover and distribute proceeds thereof before the end of the two-year extension sought herein, given the particular facts and circumstances of these cases, the Litigation Trust may need to seek further extensions of the Termination Date in the future. Accordingly, the Litigation Trust requests that the extension be granted without prejudice to the rights of the Litigation Trust to seek any further extensions.[14]

<u>**NOTICE**</u>

14. Notice of this Motion will be provided by electronic mail, facsimile, first-class or overnight mail and/or hand delivery to the parties identified on the Master Service List (as defined in the *Order Establishing Certain Notice, Case Management, and Administrative Procedures*

---

[14] Although the only remaining material matters for the Litigation Trust to resolve involve the liquidation of the Litigation Claims in foreign jurisdictions, given that the Plan, the Trust Agreement and applicable I.R.S. guidance require the Court to authorize any extensions of the Termination Date, the Litigation Trust believes it would be inappropriate to close this Chapter 11 Case before such time as it is clear that no further extensions of the Termination Date will be needed.

[ECF No. 109]). Given the nature of the relief requested, the Litigation Trust respectfully submits that no further notice is necessary.

**NO PRIOR REQUEST**

15. No prior request for the relief sought herein has been made by the Litigation Trust to this Court or any other court.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Litigation Trust respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit B**, extending the Termination Date of the Litigation Trust through and including April 3, 2026, and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 22, 2024

**AKIN GUMP STRAUSS HAUER & FELD LLP**
By: _/s/ Abid Qureshi_
Philip C. Dublin
Abid Qureshi
Kevin Zuzolo
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
pdublin@akingump.com
aqureshi@akingump.com
kzuzolo@akingump.com
elisovicz@akingump.com

*Counsel to the Litigation Trust*

# EXHIBIT A

## Trust Agreement

## LITIGATION TRUST AGREEMENT

This LITIGATION TRUST AGREEMENT is made this 3rd day of April, 2019 (this "<u>Agreement</u>"), by and among Aegean Marine Petroleum Network, Inc. ("<u>Aegean</u>") on behalf of itself, the other Debtors and the Non-Debtor Subsidiaries (collectively, the "<u>Aegean Parties</u>"), as settlors, and Peter Kravitz, as trustee of the Litigation Trust referred to herein (in such capacity, the "<u>Litigation Trustee</u>"), and creates and establishes the Litigation Trust (the "<u>Litigation Trust</u>") referenced herein in order to facilitate the implementation of the *Joint Plan of Reorganization of Aegean Marine Petroleum Network, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 22, 2019 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "<u>Plan</u>"). Each Aegean Party and the Litigation Trustee are sometimes referred to herein individually as a "<u>Party</u>" and, collectively, as the "<u>Parties</u>."

## RECITALS

WHEREAS, each of the Debtors filed a voluntary petition for relief (collectively, the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on November 6, 2018 (the "<u>Petition Date</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"); and

WHEREAS, on March 29, 2019, the Bankruptcy Court entered its order confirming the Plan (the "<u>Confirmation Order</u>"); and

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "<u>Effective Date</u>"), for (a) the creation and establishment of the Litigation Trust for the benefit of holders of Class A Litigation Trust Units and Class B Litigation Trust Units (such units, collectively, the "<u>Litigation Trust Interests</u>" and such holders, collectively, the "<u>Litigation Trust Beneficiaries</u>"), (b) the automatic transfer to the Litigation Trust of the Litigation Trust Assets, as well as the rights and powers of each Aegean Party in such Litigation Trust Assets, free and clear of all Claims and Interests, (c) the prosecution and settlement of the Litigation Claims by the Litigation Trustee and the distribution of the proceeds therefrom to the Litigation Trust Beneficiaries, in accordance with the Plan, the Confirmation Order and this Agreement and (d) the establishment of (i) a Disputed Aegean Unsecured Claims Reserve for the benefit of holders of Disputed Aegean Unsecured Claims in Class 4A (the "<u>Disputed Class 4A Claims</u>") and (ii) one or more reserves for the holders of any Disputed Section 510(b) Claims in Class 7 and any Disputed Aegean Interests in Class 8 (the "<u>Disputed Class 7 and 8 Claims and Interests</u>" and together with the Disputed Class 4A Claims, the "<u>Disputed Claims or Interests</u>"); and

WHEREAS, the Litigation Trust is intended to qualify as (i) a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>") and the regulations promulgated thereunder ("<u>Treasury Regulations</u>"), including Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or another business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust and (ii) as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671-677 of the IRC; and

WHEREAS, the Litigation Trust shall not be deemed a successor in interest of the Aegean Parties for any purpose other than as specifically set forth in the Plan, the Confirmation Order or this Agreement, and upon the transfer by the Aegean Parties of the Litigation Trust Assets to the Litigation Trust, neither the Aegean Parties nor the Reorganized Debtors will have a reversionary or further interest in or with respect to the Litigation Trust Assets or the Litigation Trust; and

WHEREAS, the Litigation Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Litigation Trust as provided herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION TRUST

2.1     Establishment of the Litigation Trust and Appointment of the Litigation Trustee and the Litigation Trust Advisory Board.

(a)     The Aegean Parties and the Litigation Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a trust on behalf of the Litigation Trust Beneficiaries, which shall be known as the "Aegean Litigation Trust," on the terms set forth herein.  In connection with the exercise of the Litigation Trustee's powers hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit or as may otherwise be authorized by the Litigation Trust Advisory Board.

(b)     The Litigation Trustee is hereby appointed as trustee of the Litigation Trust effective as of the Effective Date.

(c)     In accordance with Section 7.1 of this Agreement, the initial members of the Litigation Trust Advisory Board (each such Person and any other Person appointed to be a member of the Litigation Trust Advisory Board pursuant to this Agreement, a "Member") are identified on Exhibit A hereto and were appointed jointly by the Committee and the Required Consenting Unsecured Noteholders pursuant to the Plan.  At all times a majority of the Members of the Litigation Trust Advisory Board shall be "United States persons" as such term is defined in Section 7701(a)(30) of the IRC.

(d)     The Litigation Trustee agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries, subject to the provisions of the Plan, the

Confirmation Order and this Agreement, and shall serve at the direction of the Litigation Trust Advisory Board in accordance with the terms of this Agreement, including Section 7.2 hereof.

(e)     The Litigation Trustee and each successor trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(f)     The Litigation Trustee is, and any successor trustee serving from time to time hereunder shall be, a "United States person" as such term is defined in Section 7701(a)(30) of the IRC.

(g)     The Litigation Trustee and the Members may serve without bond.

(h)     Subject to the terms of this Agreement, any action by the Litigation Trustee and/or the Litigation Trust Advisory Board that affects the interests of more than one Litigation Trust Beneficiary shall be binding and conclusive on all Litigation Trust Beneficiaries even if such Litigation Trust Beneficiaries have different or conflicting interests.

(i)     For the avoidance of doubt, (x) none of the Litigation Trustee or any Member is or shall be deemed an officer, director, or fiduciary of any of the Reorganized Debtors or their respective subsidiaries and (y) none of the Aegean Parties or Reorganized Debtors is or shall be deemed a fiduciary or agent of the Litigation Trust, and such parties owe no duties or obligations to the Litigation Trust except as are expressly set forth in the Plan, the Confirmation Order, this Agreement or other future written agreement between such Persons and the Litigation Trust.

2.2     Transfer of the Litigation Trust Assets.

(a)     Pursuant to the Plan, as of the Effective Date, in partial satisfaction of all Allowed Class 4A Aegean Unsecured Claims, and in full satisfaction of all Allowed Section 510(b) Claims and Allowed Aegean Interests, the Aegean Parties and the Estates shall irrevocably transfer, assign and deliver, and shall be deemed to have transferred, assigned and delivered, to the Litigation Trust, without recourse, all of their respective rights, title and interest in the Litigation Trust Assets, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Litigation Trust Beneficiaries, including, without limitation, all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges or immunity (collectively, the "Transferred Privileges") in respect of the Litigation Claims that, prior to the Effective Date, belonged to the Aegean Parties or the Estates pursuant to applicable federal, state and other law, which shall vest in the Litigation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Trustee and the Litigation Trust Beneficiaries, *provided* that, the Litigation Trust may not intentionally waive any Transferred Privileges in respect of records, documents, or information related to the Litigation Trust Assets without first providing to the Reorganized Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure.  The Reorganized Debtors may not intentionally make disclosure in a manner that would effectuate a waiver of any Transferred Privileges in respect of records, documents, or information related to the Litigation

Trust Assets without first providing to the Litigation Trustee reasonable advance written notice and an opportunity to protect the Litigation Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the Litigation Trustee, on one hand, or the Reorganized Debtors, on the other, object to an action proposed to be taken by the other with regard to records, documents or information related to the Litigation Trust Assets that are covered by the Transferred Privileges (or a disclosure that would result in a waiver), the Parties shall be permitted to raise the issue with the Bankruptcy Court on no less than seven (7) days' written notice to the other Parties or such shorter notice as approved by the Bankruptcy Court. The Party providing advance written notice of a proposed action may take such action unless the Bankruptcy Court determines that (a) such action would cause material adverse harm to the other Party, or (b) the harm to the objecting party would substantially outweigh the benefit to the Party seeking to take the proposed action. The objecting Party shall bear the burden of proof. Each of the Parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute. Notwithstanding anything to the contary contained herein, nothing in this Agreement shall operate as a waiver of any privileges held and retained by the Reorganized Debtors, including, but not limited to, the Transferred Privileges that are being transferred to the Litigation Trust hereunder. In no event shall any part of the Litigation Trust Assets revert to or be distributed to the Aegean Parties; *provided*, *however*, the foregoing shall not prohibit the Trust, pursuant to the terms and conditions of this Agreement, from making distributions to any Litigation Trust Beneficiary that is or becomes a successor in interest to any one or more of the Aegean Parties (including, as applicable, any successor in interest to any one or more of the Reorganized Debtors). The Litigation Trust's receipt of the Transferred Privileges shall be without waiver in recognition of the joint/successorship interest in prosecuting claims on behalf of the Aegean Parties or the Estates.

(b)     From and after the Effective Date, the Parties shall provide reasonable access to copies of the Aegean Parties' and Reorganized Debtors' records and information relating to the Litigation Trust Assets, including electronic records or documents, copies of which shall be provided by the Aegean Parties or the Reorganized Debtors, as applicable, to the Litigation Trust and its advisors, at the cost and expense of the Litigation Trust, all in compliance with applicable law. Following the Effective Date, the Parties shall use their reasonable best efforts to enter into a written agreement memorializing the common legal interest that exists among the Parties. For the avoidance of doubt, the failure of the Parties to enter into a formal written common interest agreement shall not operate to waive any common legal interests that exist among the Parties or otherwise constitute a breach of this Agreement.

(c)     At the reasonable request and upon reasonable advance written notice of the Litigation Trustee, the Aegean Parties, the Reorganized Debtors and any party under their control shall, at the cost and expense of the Litigation Trust: (i) execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed); *provided* that neither the Aegean Parties, the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; and (ii) take, or cause to be taken, such further actions necessary to evidence or effectuate the transfer of the Litigation Trust Assets to the Litigation Trust. Notwithstanding anything to the contrary herein, nothing contained in this Agreement shall restrict the Aegean Parties' or the Reorganized Debtors' ability to use any instruments, documents, books, records, and work product of the Aegean Parties or the Reorganized Debtors.

(d)     At the reasonable request and upon reasonable advance written notice of the Litigation Trustee, the Aegean Parties, the Reorganized Debtors and any party under the control of such parties shall promptly transfer or make readily available to the Litigation Trustee and its advisors all records, documents, information, and work product in respect of the Litigation Claims (including all electronic records, documents, information and work product) (the "Litigation Claims Materials") in the possession of the Debtors, the Estates, or the Reorganized Debtors; *provided* that neither the Aegean Parties, the Reorganized Debtors nor any party under their control shall have any obligation to share information in violation of applicable law; *provided further*, that the Aegean Parties and Reorganized Debtors will work in good faith and take commercially reasonable steps to share information with the Litigation Trustee and its advisors in a manner that complies with applicable law.  Any such Litigation Claims Materials provided by the Aegean Parties or the Reorganized Debtors pursuant to this Agreement shall be used solely in connection with the Litigation Trustee's efforts to investigate, prosecute, compromise, settle and/or recover proceeds from the Litigation Claims and any related trial court and appellate proceedings and not for any other purpose, including without limitation for any business or competitive function.  The Reorganized Debtors shall preserve all Litigation Claims Materials until the earlier of (x) such time as the Litigation Trustee notifies the Reorganized Debtors in writing that such records are no longer required to be preserved or (y) the Termination Date (the "Preservation Termination Date").  Following the occurrence of the Preservation Termination Date, upon the Reorganized Debtor's written request (a "Document Return/Destruction Request"), the Litigation Trust, in its discretion, shall either return to the Reorganized Debtors or destroy all copies of the Litigation Claims Materials in its possession, custody, or control including copies retained by the Litigation Trustee and the Litigation Trust Professionals; *provided*, that the Litigation Trust and the Litigation Trust Professionals may retain copies of the Litigation Claims Materials (i) that are stored on their respective IT backup and disaster recovery systems until the ordinary course deletion thereof or (ii) as required by Law or the Litigation Trust's or the Litigation Trust Professionals' respective document retention policies; *provided*, *further*, that any Litigation Trust Professional may retain work product that may contain or reflect Litigation Claims Materials if prepared in connection with any representation of or engagement by the Litigation Trust.  Within 30 days of the Litigation Trust's receipt of a Document Return/Destruction Request, the Litigation Trustee shall certify in writing to the Aegean Parties and Reorganized Debtors that the Litigation Trust has complied with the obligations in the foregoing sentence.

(e)     The Aegean Parties, the Reorganized Debtors and any party under the control of such Parties shall take, or cause to be taken, all such further actions as the Litigation Trustee may reasonably request (including, with respect to reasonably cooperating with the Litigation Trustee for requests for telephone conferences, interviews, and appearances of current directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing the last known address of any such individual, to the extent reflected in the books and records of Aegean Parties or the Reorganized Debtors and to the extent permissible under applicable law), in each case in order to permit the Litigaiton Trustee to investigate, prosecute, protect and preserve all Litigation Claims; *provided*, that the Reorganized Debtors shall be reimbursed by the Litigation Trust for any reasonable and documented out-of-pocket expenses in connection with such cooperation.

(f)     To the extent reasonably requested by the Litigation Trustee, the Aegean Parties shall use commercially reasonable efforts to cause the professionals retained by the Aegean

Parties during the Chapter 11 Cases (the "Aegean Professionals") to, subject to any applicable professional rules of responsibility or any non-transferred privileges, use commercially reasonable efforts to cooperate with the Litigation Trustee in the investigation and prosecution of the Litigation Claims, including, without limitation, by providing access to those attorneys, accountants and other professionals with knowledge of matters relevant to the Litigation Claims. The Aegean Parties or the Aegean Professionals, as applicable, shall be reimbursed by the Litigation Trust for any reasonable and documented out-of-pocket expenses in connection with such cooperation by the Aegean Professionals.

(g)     If at any point the Litigation Trustee disputes the Reorganized Debtors' decision to withhold Litigation Claims Materials, the Litigation Trustee shall notify the Reorganized Debtors of such dispute in writing. If the parties are unable to agree, either Party shall be entitled to submit the dispute to the Bankruptcy Court on no less than seven (7) days' written notice to the other Parties, or such shorter period as approved by the Bankruptcy Court, for a determination of whether the Reorganized Debtors may withhold any such Litigation Claims Materials. Until such time as the matter is resolved by the Bankruptcy Court, the Reorganized Debtors may continue to withhold any such Litigation Claims Materials pending the outcome of such dispute.

(h)     The Aegean Parties and the Reorganized Debtors shall be reimbursed for any reasonable and documented out-of-pocket expenses incurred in connection with providing any cooperation or assistance to the Litigation Trust in accordance with the terms of this Agreement, which reimbursement shall include the reasonable and documented out-of-pocket expenses paid to any Aegean Professionals after the Effective Date or any other advisors or professionals retained by the Aegean Parties or the Reorganized Debtors for the foregoing purposes and shall constitute, for all purposes herein, costs and expenses of the Litigation Trust. Under no circumstances shall any one or more of the Aegean Parties or Reorganized Debtors have any liability or responsibility for the payment of any such cost or expenses of the Litigation Trust Professionals.

(i)     All of the proceeds received by the Litigation Trust from the pursuit of any Litigation Claims, net of any amounts payable out of any such proceeds to any Litigation Trust Professional pursuant to a contingency fee arrangement (such amounts, "Contingency Fees") and which are payable under such agreement only upon collection of any such proceeds (such proceeds net of any Contingency Fees, the "Litigation Trust Proceeds") shall be added to the Litigation Trust Assets and held as a part thereof (and title thereto shall be vested in the Litigation Trust).

(j)     For all federal, state and local income tax purposes, all parties (including, without limitation, the Aegean Parties, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust in accordance with Section 10.1 hereof.

(k)     Such transfers pursuant to the Plan shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(l)     Notwithstanding the foregoing or anything in the Plan, for purposes of section 553 of the Bankruptcy Code, the transfer of the Litigation Claims to the Litigation Trust

shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer nor shall the transfer of the Litigation Claims to the Litigation Trust diminish, but shall fully preserve, any defenses a defendant would have if such Litigation Claims had been retained by the Aegean Parties.

2.3     Funding of the Litigation Trust; Payment of Fees and Expenses.

(a)     On the Effective Date, the Litigation Trust Funders shall provide a loan to the Litigation Trust in the aggregate principal amount of $15,000,000 (the "Litigation Trust Loan"), which shall be deposited into the Litigation Trust Account (as defined in Section 4.5(c) below).  The Litigation Trust shall initially be funded with the Litigation Trust Loan, the proceeds of which shall be used to administer the Litigation Trust Assets and pay the reasonable, documented, out-of-pocket fees, expenses and costs of the Litigation Trust, including, without limitation, reasonable, documented, out-of-pocket fees and expenses incurred by advisors or professionals retained by the Litigation Trustee (collectively, the "Litigation Trust Professionals"). The Litigation Trust Funders shall have no further obligation to provide any funding with respect to the Litigation Trust.

(b)     For the avoidance of doubt and notwithstanding any provision herein to the contrary, the Litigation Trust Proceeds will first be applied to the repayment of the Litigation Trust Loan in full plus the $3,000,000 Litigation Trust Funding Fee for an aggregate payment to the Litigation Trust Funders in the amount of $18,000,000 (the "Litigation Trust Loan Payments"). For the further avoidance of doubt, amounts payable in respect of Contingency Fees shall not be applied towards the payment of the Litigation Trust Loan Payments, and the Litigation Trust may pay any Contingency Fees to the applicable Litigation Trust Professional in accordance with the terms and conditions of the applicable fee agreement between the Litigation Trust and such Litigation Trust Professional, which payment shall not be considered a breach of the previous sentence.

(c)     The Litigation Trustee may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan, the Confirmation Order and this Agreement, including in connection with retaining Litigation Trust Professionals and/or entering into agreements pursuant to Section 4.6 and Section 4.7 herein.  All reasonable, documented, out-of-pocket fees, expenses, and costs of the Litigation Trust shall be paid by, and solely be the obligation of, the Litigation Trust.  In accordance with and subject to Sections 2.3(a) and 2.3(b) hereof, all reasonable, documented, out-of-pocket fees, expenses and costs of the Litigation Trust, including, without limitation, all reasonable, documented, out-of-pocket fees and expenses incurred by Litigation Trust Professionals, shall be paid by the Litigation Trust from the proceeds of the Litigation Trust Loan and, after payment in full of the Litigation Trust Loan Payments, the Litigation Trust Proceeds.  After payment in full of the Litigation Trust Loan Payments, the Litigation Trust Advisory Board may elect to withhold such amounts from the Litigation Trust Proceeds as the Litigation Trust Advisory Board, in its business judgement, deems necessary and proper to fund reasonable and necessary expenses (including fees of the Litigation Trust Professionals and any fees and out-of-pocket expenses of the Aegean Parties or the Reorganized Debtors that may be reimbursable under this Agreement) incurred, or reasonably projected to be incurred, in connection with prosecuting or settling the Litigation Claims, monetizing the Litigation Trust Assets and distributing the Litigation Trust Proceeds; *provided*, that to the extent

the Litigation Trust Proceeds are insufficient to satisfy in full all such fees and expenses, then the Litigation Trust Proceeds shall be allocated ratably among such parties entitled to reimbursement hereunder unless the Litigation Trust Advisory Board determines otherwise in the exercise of its fiduciary duties.  For the avoidance of doubt, the Litigation Trustee may pay accrued and unpaid reasonable and documented expenses of the Litigation Trust with proceeds of the Litigation Trust Loan prior to the receipt of any Litigation Trust Proceeds.

(d)     Any failure or inability of the Litigation Trust to obtain funding for the Litigation Trust will not affect the enforceability of the Litigation Trust.

(e)     The fees to be paid to the Litigation Trustee shall, subject to Sections 2.3(a) and 2.3(b), be paid by the Litigation Trust from the proceeds of the Litigation Trust Loan and, after repayment in full of the Litigation Trust Loan Payments, from the Litigation Trust Proceeds.

2.4     <u>Title to the Litigation Trust Assets</u>.  The transfer of the Litigation Trust Assets to the Litigation Trust pursuant to Section 2.2 hereof is being made for the sole benefit, and on behalf, of the Litigation Trust Beneficiaries.  Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the Aegean Parties', the Estates' and the Litigation Trust Beneficiaries' rights, title and interest in the Litigation Trust Assets and no other Person shall have any interest, legal, beneficial or otherwise, in the Litigation Trust or the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust (other than as provided in the Plan, the Confirmation Order or this Agreement).

2.5     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>.  The Litigation Trust is organized and established as a trust pursuant to which the Litigation Trustee, subject to the terms and conditions of this Agreement and subject to the approval of the Litigation Trust Advisory Board, shall implement the Plan with respect to all Aegean Parties on behalf, and for the benefit, of the Litigation Trust Beneficiaries. The Litigation Trust shall (i) serve as a mechanism for prosecuting all Litigation Claims, resolving all Disputed Claims or Interests, monetizing the Litigation Trust Assets and distributing the Litigation Trust Proceeds in a timely fashion (A) to pay the Litigation Trust Loan Payments and (B) for the benefit of the Litigation Trust Beneficiaries in accordance with the Plan, the Confirmation Order and this Agreement and (ii) liquidate and administer the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust.  The primary purpose of the Litigation Trust is to, in an expeditious and orderly manner, monetize and convert the Litigation Trust Assets to Cash and make timely distributions to Holders of Allowed Claims and Interests in accordance with the Plan with no objective to continue or engage in the conduct of, or to further, any trade or business.  The Litigation Trustee shall be obligated to make continuing reasonable efforts to timely resolve all claims related to or comprising the Litigation Claims and not unreasonably prolong the duration of the Litigation Trust.  The liquidation of the Litigation Claims may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims or Causes of Action or otherwise, in accordance with the Plan, the Confirmation Order and this Agreement.

(b)     Relationship.  This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Litigation Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Trustee, the Litigation Trust Advisory Board (or any Member thereof) or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trustee and the Litigation Trust Advisory Board, on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal and agency relationship, and their rights shall be limited to those conferred upon them by the Plan, the Confirmation Order and this Agreement.

(c)     No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, including, for the avoidance of doubt, Article IX.F of the Plan, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Litigation Claims and objections to and resolution of Disputed Claims or Interests after the Effective Date.  No Person or Entity may rely on the absence of a specific reference in the Plan to any Litigation Claim against it as any indication that the Litigation Trustee will not pursue any and all Litigation Claims against such Person or Entity; nor may any Person or Entity rely on the absence of a specific reference in the Plan to any Disputed Claim or Interest as any indication that the Litigation Trustee will not pursue any objections thereto.  Unless any Litigation Claims against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court (including the Confirmation Order), the Litigation Trustee expressly reserves all Litigation Claims for later adjudication, resolution or settlement and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Litigation Claims upon, after or as a consequence of the Confirmation Order.

(d)     Relationship to and Incorporation of the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference.  To that end and subject to the provisions of the Plan, including, for the avoidance of doubt, Article IX.F of the Plan, the Litigation Trustee shall have full power and authority to take any action consistent with the provisions of the Plan and the Confirmation Order, to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan that directly affect the interests of the Litigation Trust, and to seek any orders from the Bankruptcy Court solely in furtherance of this Agreement.  As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board, the Litigation Trust Beneficiaries, the Reorganized Debtors, and the Aegean Parties, if any provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: the Confirmation Order, this Agreement and the Plan.

2.6     Appointment as Representative.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Trustee shall be the duly appointed representative of the Estates for certain limited purposes and, as such, to the extent provided herein, the Litigation Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution,

resolution and settlement of the Litigation Claims and the Disputed Claims or Interests. To the extent that any of the Litigation Claims or any right to prosecute, settle or dispose of a Disputed Claim or Interest cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Claims and rights shall be deemed to have been retained by the Aegean Parties and the Reorganized Debtors (other than for tax purposes) and the Litigation Trustee shall be deemed to have been designated as a representative of the Aegean Parties to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Litigation Claims on behalf of the Aegean Parties, the Reorganized Debtors, and the Estates for the benefit of the Litigation Trust Beneficiaries or settle or otherwise dispose of Disputed Claims or Interests. Notwithstanding the foregoing, all Litigation Trust Proceeds shall be distributed to the Litigation Trust Beneficiaries consistent with the provisions of the Plan, Confirmation Order, and this Agreement. For the avoidance of doubt, any of the Litigation Claims subject to this Section 2.6 shall be treated by the Parties for U.S. federal, state and local income tax purposes as a disposition of the Litigation Claims and Disputed Claims or Interests by the Aegean Parties as described in Section 2.2 herein.

2.7 <u>Valuation of the Litigation Trust Assets</u>. As soon as reasonably practicable following the establishment of the Litigation Trust, the Litigation Trustee, at the direction of and in consultation with the Litigation Trust Advisory Board, shall determine the value of the Litigation Trust Assets transferred to the Litigation Trust, based on the good-faith determination of the Litigation Trustee, and the Litigation Trustee shall apprise, in writing, the Litigation Trust Beneficiaries of such valuation. The valuation shall be used consistently by all Parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) for all federal income tax purposes. In connection with the preparation of the valuation contemplated hereby and by the Plan, the Litigation Trust shall be entitled to retain such Litigation Trust Professionals as the Litigation Trust shall determine to be appropriate or necessary, and the Litigation Trustee, subject to the direction of the Litigation Trust Advisory Board, shall take such other actions in connection therewith as it determines to be appropriate or necessary. The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Litigation Trust Professionals retained in connection therewith.

## ARTICLE III
## LITIGATION TRUST INTERESTS

3.1 <u>Litigation Trust Interests</u>. On the date hereof, the Litigation Trust shall issue the Litigation Trust Interests to the Litigation Trust Beneficiaries in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Litigation Trust Beneficiaries shall be entitled to distributions from the Litigation Trust Proceeds in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The beneficial interests in the Litigation Trust will be represented by book entries on the books and records of the Litigation Trust. The Litigation Trust will not issue any certificate or certificates to evidence any beneficial interests in the Litigation Trust.

3.2 <u>Interests Beneficial Only</u>. The ownership of the beneficial interests in the Litigation Trust shall not entitle the Litigation Trust Beneficiaries to any title in or to the Litigation Trust

Assets as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

3.3 <u>Transferability of Litigation Trust Interests</u>. No transfer, assignment, pledge, hypothecation or other disposition of a Litigation Trust Interest may be effected until (i) such action is unanimously approved by the Litigation Trust Advisory Board, (ii) the Litigation Trustee and the Litigation Trust Advisory Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Litigation Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Litigation Trustee and the Litigation Trust Advisory Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not require the Litigation Trust to comply with the registration and reporting requirements of the Securities Action of 1933, as amended (the "<u>Securities Act</u>"), the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), the Trust Indenture Act of 1939, as amended (the "<u>TIA</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), or (y) the Litigation Trust Advisory Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Litigation Trust to become a public reporting company and/or make periodic reports under the Exchange Act in order to enable such disposition to be made. In the event that any such disposition is allowed, the Litigation Trust Advisory Board and the Litigation Trustee may add such restrictions upon transfer and other terms to this Agreement as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

3.4 <u>Registry of Beneficial Interests</u>.

(a) The Litigation Trustee shall appoint a registrar, which may be the Litigation Trustee (the "<u>Registrar</u>"), for the purpose of recording ownership of the Litigation Trust Interests as herein provided. The Registrar, if other than the Litigation Trustee, shall be an institution acceptable to the Litigation Trust Advisory Board. For its services hereunder, the Registrar, unless it is the Litigation Trustee, shall be entitled to receive reasonable compensation from the Litigation Trust as a cost of administering the Litigation Trust.

(b) The Litigation Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Litigation Trust Advisory Board, a registry of the Litigation Trust Beneficiaries (the "<u>Trust Register</u>"), which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee and the Registrar may prescribe.

3.5 <u>Exemption from Registration</u>. The Parties hereto intend that the rights of the Litigation Trust Beneficiaries arising under this Litigation Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to the issuance of the Litigation Trust Interests to the Litigation Trust Beneficiaries under the Plan. Subject to Section 3.3 hereof, the Litigation Trust Advisory Board, acting unanimously, and the Litigation

Trustee may amend this Agreement in accordance with Article XII hereof to make such changes as are deemed necessary or appropriate, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act or the Investment Company Act. The Litigation Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Litigation Trust Advisory Board and/or the Litigation Trustee in connection with the Litigation Trust. Subject to Section 3.3 hereof, neither the Litigation Trust Advisory Board nor the Litigation Trustee shall take any action to establish or support the establishment of an active trading market with respect to the Litigation Trust Interests. Notwithstanding anything in this Agreement to the contrary (including in this Section 3.5), no amendment, modification or change to the form of the Litigation Trust or this Agreement shall be made which will have any material adverse impact on the Transferred Privileges or cause or result in any required disclosure of the Litigations Claims Materials without the prior written consent of the Parties hereto.

3.6     <u>Effect of Death, Incapacity or Bankruptcy</u>. The death, incapacity or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Agreement.

3.7     <u>Change of Address</u>. Any Litigation Trust Beneficiaries may, after the Effective Date, select an alternative distribution address by providing notice to the Litigation Trustee or, as applicable, the Registrar, identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Litigation Trustee or, as applicable, the Registrar. Absent actual receipt of such notice by the Litigation Trustee or, as applicable, the Registrar, the Litigation Trustee shall not recognize any such change of distribution address.

3.8     <u>Absolute Owners</u>. The Litigation Trustee may deem and treat any Litigation Trust Beneficiary reflected as the owner of a Litigation Trust Interest on the applicable Trust Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof, for federal and state income tax purposes and for all other purposes whatsoever.

3.9     <u>Standing</u>. No Litigation Trust Beneficiary shall have standing to direct the Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Litigation Trust Assets.

**ARTICLE IV**
**<u>RIGHTS, POWERS AND DUTIES OF LITIGATION TRUSTEE</u>**

4.1     <u>Role of the Litigation Trustee</u>. In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Litigation Trustee shall, subject to the direction and approval of the Litigation Trust Advisory Board as provided in this Agreement, (i) receive,

manage, supervise and protect the Litigation Trust Assets upon its receipt of same on behalf of and for the benefit of the Litigation Trust Beneficiaries; (ii) investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise the Litigation Claims and any objections to the Disputed Claims or Interests; (iii) prepare and file all required tax returns and pay all taxes and all other obligations of the Litigation Trust; (iv) liquidate and convert the Litigation Trust Assets to Cash and pay the Litigation Trust Loan Payments in accordance with this Agreement and the other Litigation Trust Documents and make timely distributions to the Litigation Trust Beneficiaries in accordance with Section 4.5 herein; and (v) have all such other responsibilities as may be vested in the Litigation Trustee pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment of the Disputed Aegean Unsecured Claims Reserve. The Litigation Trustee in consultation with, and subject to the approval of, the Litigation Trust Advisory Board as provided in this Agreement, shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets, and such decisions and duties shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court. In all circumstances, the Litigation Trustee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall use commercially reasonable efforts to prosecute, settle or otherwise resolve the Litigation Claims and to make timely distributions of any Litigation Trust Proceeds realized therefrom and to otherwise monetize the Litigation Trust Assets and not unreasonably prolong the duration of the Litigation Trust.

4.2     _Fiduciary Duties_.  The Litigation Trustee shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her or its responsibilities accordingly; _provided_, _however_, that the Litigation Trustee shall not owe fiduciary obligations to any defendants of or adverse parties to the Litigation Claims or the Disputed Claims or Interests in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trustee's obligations are to maximize the value of the Litigation Trust Assets, including the Litigation Claims.

4.3     _Authority to Prosecute and Settle Litigation Claims and Objections to Disputed Claims or Interests_.

(a)     Subject to the provisions of this Agreement, the Plan, the Confirmation Order, and direction by the Litigation Trust Advisory Board, the Litigation Trustee shall prosecute, pursue, compromise, settle, or abandon any and all Litigation Claims that have not already been resolved as of the Effective Date. The Litigation Trustee, upon direction by the Litigation Trust Advisory Board, shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Litigation Claims (including any counterclaims asserted against the Litigation Trust) as it determines in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision except for any damages caused by fraud, willful misconduct or gross negligence.

(b)     Subject to the provisions of this Agreement, the Plan and the Confirmation Order, the Litigation Trustee shall have sole authority to reconcile, prosecute objections,

compromise, abandon or settle any and all Disputed Claims or Interests that have not already been resolved as of the Effective Date; *provided*, that for the avoidance of doubt, settlement of Disputed Claims or Interests will not require Bankruptcy Court approval. The Litigation Trustee, upon the direction of the Litigation Trust Advisory Board, shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Disputed Claims or Interests (including any counterclaims asserted against the Litigation Trust) as it determines in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision except for any damages caused by fraud, willful misconduct or gross negligence.

(c)     To the extent that any action has been taken to prosecute or otherwise resolve any Litigation Claims prior to the Effective Date by the Aegean Parties, the Litigation Trustee shall be substituted for the Aegean Parties in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the litigation by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Trust: "[Name of Trustee], as Trustee for the Aegean Litigation Trust v. [Defendant]" or "Aegean Litigation Trust v. [Defendant]." Without limiting the foregoing, the Litigation Trustee shall take any and all actions necessary or prudent to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Litigation Claim. For purposes of exercising its powers, the Litigation Trustee shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(d)     Any determinations by the Litigation Trustee, under the direction of the Litigation Trust Advisory Board, with regard to the amount or timing of settlement or other disposition of any Litigation Claims or Disputed Claims or Interests settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Trust Beneficiaries and all other parties of interest following the entry of an order of a court of competent jurisdiction (including a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

4.4     <u>Liquidation of Litigation Trust Assets</u>. The Litigation Trustee, upon direction by the Litigation Trust Advisory Board and in the exercise of their collective reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement, liquidate and convert to Cash the Litigation Trust Assets, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Litigation Trust. The Litigation Trustee shall exercise reasonable business judgment and liquidate the Litigation Trust Assets to maximize net recoveries to the Litigation Trust Beneficiaries, *provided*, *however*, that the Litigation Trustee shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries. Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Litigation Claims or otherwise or through the sale or other disposition of the Litigation Trust Assets (in whole or in combination). Pursuant to an agreed-upon budget in accordance with Section 4.13(b) of this Agreement, if any, the Litigation Trustee may incur any reasonable and necessary expenses in connection with the liquidation of the Litigation Trust Assets and distribution of the Litigation Trust Proceeds.

4.5     Distributions.

(a)     The Litigation Trustee shall make distributions of the Litigation Trust Proceeds to the Litigation Trust Beneficiaries only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, net of any applicable Disputed Claims Reserve and after the Litigation Trust Proceeds are received by the Litigation Trust, and only to the extent that the Litigation Trust has sufficient Litigation Trust Proceeds available to make such distributions subsequent to the payment of the Litigation Trust Loan Payments in accordance with and to the extent provided for in this Agreement and after any reserves deemed necessary or appropriate by the Litigation Trustee.

(b)     Unless and until the Litigation Trust Loan Payments have been paid in full to the Litigation Trust Funders, no distributions from the Litigation Trust Proceeds shall be made by the Litigation Trustee on account of the Litigation Trust Interests or for the reimbursement of costs or expenses incurred by the Litigation Trust (including the costs and expenses of all the Litigation Trust Professionals and the Litigation Trustee Fees (as defined below)).  After the Litigation Trust Loan Payments have been paid in full to the Ligation Trust Funders, in the reasonable discretion of the Litigation Trustee and subject to the requirements of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and the direction of the Litigation Trust Advisory Board, the Litigation Trustee shall distribute all Cash on hand (including, but not limited to, the net income and the Litigation Trust Proceeds, if any, from any disposition of Litigation Claims, any Cash received on account of or representing Litigation Trust Proceeds, and treating as Cash for purposes of this Section 4.5 any permitted investments under Section 4.9 below) (i) to the holders of Class A Litigation Trust Units on a Pro Rata basis until such holders of Class A Litigation Trust Units shall have received Payment in Full and (ii) thereafter, to the holders of Class B Litigation Trust Units on a Pro Rata basis; *provided, however*, that the Litigation Trust Advisory Board may authorize the Litigation Trustee to retain Litigation Trust Proceeds to fund additional litigation with respect to the Litigation Claims in accordance with Section 2.3 of this Agreement and to satisfy other obligations of the Litigation Trust under the Plan and this Agreement.  For the avoidance of doubt, this Section 4.5(b) shall not prohibit the Litigation Trustee from using the Litigation Trust Assets to timely pay obligations and liabilities of the Litigation Trust duly incurred in accordance with this Agreement, including with respect to the payment of any taxes or other amounts owed to Governmental Units and to timely compensate Litigation Trust Professionals engaged by the Litigation Trust in accordance with this Agreement to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities, subject, in all applicable cases, to the provisions of Section 2.3.

(c)     The Litigation Trustee shall make distributions to Litigation Trust Beneficiaries at the last-known address for each such Litigation Trust Beneficiary as indicated on the Litigation Trust's or Registrar's records as of the applicable distribution date (which, subject to Section 3.7 hereof, for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder).  Any distribution of Cash by the Litigation Trust shall be made by the Litigation Trustee via (i) a check drawn on, or (ii) wire transfer from, a bank account established in the name of the Litigation Trust on or subsequent to the Confirmation Date at a domestic bank selected by the Litigation Trustee (the "Litigation Trust Account"), the option of which shall be in the sole discretion of the Litigation Trustee.  If any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the

Litigation Trustee or, as applicable, the Registrar, is notified in writing of the then-current address of such holder, at which time such distribution shall be made as soon as reasonably practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable distribution date. After such date, all "unclaimed property" or interests in property shall revert to the Litigation Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Agreement, and the claim of any holder to such property or interest in property shall be forever barred. Nothing contained herein shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

(d)     The Litigation Trustee shall have the authority, in consultation with the Litigation Trust Advisory Board, to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan and this Agreement. The Litigation Trustee may pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents. For the avoidance of doubt, the reasonable and documented fees of the Distribution Agents will be paid by the Litigation Trustee subsequent to the payment of the Litigation Trust Loan Payments and will not be deducted from distributions to be made under the Plan to Holders of Allowed Claims or Allowed Interests entitled to receive distributions from the Distribution Agent.

(e)     The Litigation Trustee may withhold (but not, except as set forth below, set off) from the distribution called for on account of any Allowed Claim or Allowed Interest an amount equal in value to any claim or Cause of Action of any nature (including in respect of any Litigation Claim) that an Aegean Party may hold against the Holder of such Claim or Interest. In the event that the value of an Aegean Party's claim or Cause of Action against a particular Holder of an Allowed Claim is undisputed, resolved by settlement or has been adjudicated by Final Order of any court, the Litigation Trustee may set off such undisputed, resolved or adjudicated amount against distributions that would otherwise be due to such Holder of an Allowed Claim or Allowed Interest. Neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Aegean Parties or the Litigation Trustee of any claims or Causes of Action that the Aegean Parties or the Litigation Trust may possess against any Holder of an Allowed Claim or Allowed Interest, except to the extent of any waiver, relinquishment, exculpation, release, compromise, or settlement set forth in the Plan or an order of the Bankruptcy Court (including the Confirmation Order).

(f)     The Litigation Trustee may deduct and withhold taxes from amounts otherwise distributable to any Entity any and all amounts, determined in the Litigation Trustee's sole discretion, required by this Agreement, any law, regulation, rule, ruling, directive, treaty or other governmental requirement in accordance with Section 10.4 hereof.

(g)     Notwithstanding anything herein to the contrary, the Litigation Trustee shall not be required to make on account of an Allowed Claim or Allowed Interest (i) partial distributions or payments of fractions of dollars; (ii) partial distributions or payments of fractions of Litigation Trust Interests; or (iii) a distribution if the amount to be distributed is or has an economic value of less than $50. Any funds so withheld and not distributed shall be held in reserve

and distributed in subsequent distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

(h)     Any check issued by the Litigation Trust on account of an Allowed Claim or Allowed Interest shall be null and void if not negotiated within 120 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Litigation Trustee by the Holder of the relevant Allowed Claim or Allowed Interest with respect to which such check originally was issued. If any Holder of an Allowed Claim or Allowed Interest holding an un-negotiated check does not request reissuance of that check within six months after the date the check was mailed or otherwise delivered to the Holder, that Allowed Claim or Allowed Interest shall be released and the Holder thereof shall be forever barred, estopped and enjoined from asserting any claim against any of the Aegean Parties, the Reorganized Debtors, the Litigation Trust, or the Litigation Trustee. In such cases, any Cash or Litigation Trust Interests held for payment on account of such Claims or Interests shall be property of the Litigation Trust, free of any Claims or Interests of such Holder with respect thereto. No later than 150 days after the issuance of such checks, the Litigation Trustee shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks. For the avoidance of doubt, such list shall not include the Holders of any checks that have not been negotiated within six months after the date the check was mailed or otherwise delivered to the Holder. Nothing contained herein shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

(i)     For the avoidance of doubt, the Litigation Trustee shall have no obligation to pay any amounts in respect of prepetition deductibles or self-insured retention amounts with respect to Claims or Causes of Action covered by the Aegean Parties' D&O Liability Insurance Policies.

(j)     Subject to Sections 4.8, 4.9 and 4.10 hereof, and the provisions of this Section 4.5, any non-Cash property of the Litigation Trust may be sold, transferred, abandoned or otherwise disposed of by the Litigation Trustee. Prior to payment of the Litigation Trust Loan Payments, any such sale or disposition must be on arms'-length terms for fair value. Notice of such sale, transfer, abandonment or disposition shall be provided to the Litigation Trust Beneficiaries pursuant to the reporting obligations provided in Section 4.13 of this Agreement. If, in the Litigation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Litigation Trustee believes, in good faith, such property has no value to the Litigation Trust, the Litigation Trustee shall have the right, subject to the approval of the Litigation Trust Advisory Board, to abandon or otherwise dispose of such property. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a Cause of Action against the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board, any Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.5(j).

(k)     Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

4.6     Retention of Counsel and Other Professionals. The Litigation Trustee, upon the prior written consent of the Litigation Trust Advisory Board, without further order of the Bankruptcy Court but subject to this Section 4.6 in all cases, may employ Litigation Trust

Professionals as the Litigation Trustee deems necessary to aid it in fulfilling its obligations under this Agreement and the Plan, and on whatever reasonable and/or customary fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements, for the liquidation of the Litigation Trust Assets. Litigation Trust Professionals engaged by the Litigation Trustee shall not be required to file applications in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. Unless an alternative fee arrangement has been agreed to (either by order of the Bankruptcy Court or with the consent of the Litigation Trustee following the approval of the Litigation Trust Advisory Board, as applicable), Litigation Trust Professionals retained by the Litigation Trustee shall be compensated by the Litigation Trust Loan and thereafter, in accordance with Sections 2.3 and 4.3 hereof, from the Litigation Trust Proceeds. For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, the Committee, or any creditors shall not, subject to Article V.N of the Plan and compliance with applicable rules of professional conduct, preclude the Litigation Trust's retention of such professionals, consultants, or other persons.

4.7     Agreements. Pursuant to the Plan, the Confirmation Order and the other provisions of this Agreement, the Litigation Trustee may enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order or this Agreement and perform all of the Litigation Trust's obligations thereunder.

4.8     Management of Litigation Trust Assets.

(a)     Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Trustee may, subject to the direction of the Litigation Trust Advisory Board, control and exercise authority over the Litigation Trust Assets, over the management and disposition thereof, and over the management and conduct of the Litigation Trust, in each case, as necessary or advisable to enable the Litigation Trustee to fulfill the intents and purposes of this Agreement. No Person dealing with the Litigation Trust will be obligated to inquire into the authority of the Litigation Trustee in connection with the acquisition, management or disposition of the Litigation Trust Assets.

(b)     In connection with the management and use of the Litigation Trust Assets and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the Litigation Trust will have, in addition to any powers conferred upon the Litigation Trust by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Trustee's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Litigation Trust, subject to any approvals or direction of the Litigation Trust Advisory Board as set forth herein, including, without limitation, the power and authority to (i) pay taxes and other obligations owed by the Litigation Trust or incurred by the Litigation Trustee; (ii) engage and compensate from the Litigation Trust Loan, and then, to the extent necessary and subject to Sections 2.3 and 4.3 hereof, from the Litigation Trust Proceeds, to the extent provided herein, the Litigation Trust Professionals to assist the Litigation Trustee with respect to the Litigation Trustee's responsibilities; (iii) object to, compromise, and settle Disputed Claims or Interests, subject to Bankruptcy Court approval, if applicable; (iv) commence and/or pursue any and all actions involving the Litigation Claims that could arise or be asserted at any time, unless otherwise

limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, or this Agreement; and (v) act and implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

4.9     <u>Investment of Cash</u>.  The right and power of the Litigation Trustee to invest the Litigation Trust Assets, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such Litigation Trust Assets only in Cash and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided*, *however*, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise, (b) the Litigation Trustee may retain any Litigation Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets, and (c) the Litigation Trustee may expend the Litigation Trust Assets (i) as reasonably necessary to meet contingent liabilities and maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable and documented administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with liquidating the Litigation Trust Assets), subject in all cases to Section 2.3 of this Agreement, and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Assets are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.3).

4.10     <u>Additional Powers of the Litigation Trustee</u>.  In addition to any and all of the powers enumerated above, and except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, the Litigation Trustee, subject to the direction and approval of the Litigation Trust Advisory Board as provided in this Agreement, shall be empowered to:

(a)     hold legal title to any and all rights in or arising from the Litigation Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Trust (including any Litigation Trust Proceeds);

(b)     perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code with respect to the Litigation Trust Assets, including the right to assert claims, defenses, offsets, and privileges, subject in all cases to Section 2.2 hereof;

(c)     protect and enforce the rights of the Litigation Trust in and to the Litigation Trust Assets by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(d)     determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Trust;

(e)　　subject to Section 2.2, assert, enforce, release, or waive any privilege (including the Transferred Privileges) or  defense on behalf of the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Beneficiaries, as applicable;

(f)　　make all payments relating to the Litigation Trust;

(g)　　expunge from the Claims Register Disputed Claims or Interests that have been paid, satisfied, superseded, or released and adjust on the Claims Register any Disputed Claims or Interests that have been amended without having to file an objection to such Disputed Claims or Interests and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, that beginning at the end of the first full calendar quarter that is at least 90 days after the Effective Date, the Litigation Trustee shall file with the Bankruptcy Court each calendar quarter a list of all Disputed Claims or Interests  that have been paid, satisfied, superseded, released, or amended during such prior calendar quarter;

(h)　　obtain reasonable insurance coverage with respect to the potential liabilities and obligations of the Litigation Trust, the Litigation Trustee, the Litigation Trust Advisory Board and the Members under this Agreement (in the form of a directors and officers policy, an errors and omissions policy, or otherwise, all at the sole cost and expense of the Litigation Trust);

(i)　　(x) receive, manage, invest, supervise, protect, and liquidate the Litigation Trust Assets, withdraw and make distributions from and pay taxes and other obligations owed by the Litigation Trust from funds held by the Litigation Trustee and/or the Litigation Trust in the Litigation Trust Account and (y) withdraw and make distributions from and pay taxes and other obligations owed in respect of any Disputed Claims or Interests from the applicable Disputed Claims Reserve in accordance with the Plan, in each case as long as such actions are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and are merely incidental to its liquidation and dissolution;

(j)　　prepare, or have prepared, and file, if necessary, with the appropriate Governmental Unit any and all tax returns, information returns, and other required documents with respect to the Litigation Trust (including, without limitation, U.S. federal, state, local or foreign tax or information returns required to be filed by the Litigation Trust) and the Disputed  Claims Reserves and pay taxes properly payable by the Litigation Trust and the Disputed Claims Reserves, if any, and cause all taxes payable by the Litigation Trust and the Disputed Claims Reserves, if any, to be paid exclusively out of the Litigation Trust Assets or the relevant Disputed Claims Reserve, as applicable;

(k)　　request any appropriate tax determination with respect to the Litigation Trust and the Disputed Claims Reserves, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(l)　　make tax elections by and on behalf of the Litigation Trust and the Disputed Claims Reserves, which are deemed by the Litigation Trustee, either independently or with the advice of Litigation Trust Professionals, to be in the best interest of maximizing the liquidation value of the Litigation Trust Assets;

(m)     investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, the Litigation Claims and all Causes of Action in favor of or against the Litigation Trust ;

(n)     without expanding the scope of the definition of "Litigation Claims" in the Plan, take appropriate actions to recover transfers of any Aegean Parties' property as provided for in the Plan as may be permitted by the Bankruptcy Code or applicable state law;

(o)     execute offsets or assert counterclaims against Holders of Aegean Unsecured Claims in Class 4A, Section 510(b) Claims in Class 7, and Aegean Interests in Class 8 (except to the extent of any releases, waivers, settlements, compromises or relinquishments set forth in the Plan or the Confirmation Order) and make distributions as provided for in the Plan and this Agreement;

(p)     subject to applicable law, seek the examination of any Entity or Person, with respect to the Litigation Claims;

(q)     retain and reasonably compensate for services rendered and expenses incurred by Litigation Trust Professionals to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be appropriate in the Litigation Trustee's reasonable discretion and to prepare and file any tax returns or informational returns for the Litigation Trust as may be required;

(r)     take or refrain from taking any and all actions the Litigation Trustee reasonably deems necessary for the continuation, protection, and maximization of the Litigation Trust Assets consistent with the purposes hereof;

(s)     take all steps and execute all instruments and documents the Litigation Trustee reasonably deems necessary to effectuate the Litigation Trust;

(t)     liquidate any remaining Litigation Trust Assets, and provide for the distributions therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement;

(u)     take all actions the Litigation Trustee reasonably deems necessary to comply with the Plan, the Confirmation Order, and this Agreement (including all obligations thereunder);

(v)     in the event that the Litigation Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), take any and all necessary actions as it shall reasonably deem appropriate to have such assets treated as held by an entity classified as a partnership for federal tax purposes; and

(w)     exercise such other powers as may be vested in the Litigation Trustee pursuant to the Plan, the Confirmation Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Trustee to be reasonably necessary and proper to carry out the obligations of the Litigation Trustee in relation to the Litigation Trust.

4.11     Limitations on Power and Authority of the Litigation Trustee.  Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee will not have the authority to do any of the following:

(a)     take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)     take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)     possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)     prosecute any Litigation Claim that would result in a payment obligation, or any other liability, directly or indirectly, by the Reorganized Debtors, any of their subsidiaries, Mercuria, or David Gallagher;

(e)     cause or permit the Litigation Trust to engage in any trade or business;

(f)     receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business; *provided, however*, that in no event shall the Litigation Trustee receive any such investment that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(g)     receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; *provided, however*, that in no event shall the Litigation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof;

(h)     take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a liquidating trust for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(i)     take any action with respect to the Transferred Privileges in contravention of Section 2.2 of this Agreement; or

(j)     commence, continue, prosecute, or seek to pursue any Non-Litigation Trust Causes of Action.

4.12     Books and Records.  The Litigation Trustee shall maintain books and records relating to and income realized from the Litigation Trust Assets (including the Litigation Trust Proceeds) and the payment of, costs and expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable him/her/it to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance

with the tax reporting requirements of the Litigation Trust. Nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Litigation Trust Assets, except as may otherwise be set forth in the Plan or the Confirmation Order.

4.13    Reports.

(a)    Financial and Status Reports. The fiscal year of the Litigation Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter) and as soon as practicable upon termination of the Litigation Trust, the Litigation Trustee shall make available, upon request, to the Litigation Trust Beneficiaries appearing in the Trust Registry as of the end of such period or such date of termination, a written report including: (i) financial statements of the Litigation Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Trust which, in the judgment of the Litigation Trustee, materially affects the Litigation Trust and of which notice has not previously been given to the Litigation Trust Beneficiaries; (iii) a description of the progress of liquidating the Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries, which description shall include a written report detailing, among other things, the litigation status of the Litigation Claims transferred to the Litigation Trust, any settlements entered into by the Litigation Trust with respect to the Litigation Claims, the Litigation Trust Proceeds recovered to date, and the distributions made by the Litigation Trust to date; and (iv) any other material information relating to the Litigation Trust Assets and the administration of the Litigation Trust deemed appropriate to be disclosed by the Litigation Trustee or required to be included in the written report by the Litigation Trust Advisory Board. In addition, the Litigation Trust shall provide unaudited financial statements to each Litigation Trust Beneficiary on a quarterly basis (which may be quarterly operating reports filed with the Bankruptcy Court). The Litigation Trustee may post any such report on a website maintained by the Litigation Trustee or electronically file it with the Bankruptcy Court in lieu of actual notice to each Litigation Trust Beneficiary (unless otherwise required by law).

(b)    Annual Plan and Budget. If instructed by the Litigation Trust Advisory Board, the Litigation Trustee shall prepare and submit to the Litigation Trust Advisory Board for approval an annual plan and budget in such detail as is reasonably requested.

## ARTICLE V
## DISPUTED CLAIMS RESERVES

5.1    Establishment of Disputed Claims Reserves. Until such time as each Disputed Claim or Interest has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or disallowed by Final Order, the Litigation Trustee shall maintain, for the benefit of each Holder of a Disputed Claim or Interest, the applicable Disputed Claims Reserve consisting of Cash and any dividends, gains or income

attributable thereto, in an amount equal to the Pro Rata share of distributions that would have been made to the Holder of such Disputed Claim or Interest if it were an Allowed Claim or Interest in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim or Interest relating to such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court as constituting and representing the maximum amount in which such Claim or Interest may ultimately become an Allowed Claim or Allowed Interest or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim or Interest and the Litigation Trustee.

5.2     Cash and Litigation Trust Interests held in the Disputed Claims Reserves.  Cash held in the Disputed Claims Reserves (including any earnings that have accrued on such Cash, net of any expenses, including any taxes, relating thereto) shall be retained by the Litigation Trustee for the benefit of such Holders pending determination of their entitlement thereto under the terms of the Plan.  Cash shall be either (x) held by the Litigation Trustee in an interest-bearing account or (y) invested in interest-bearing obligations issued by the U.S. government and guaranteed by the U.S. government, and having (in either case) a maturity date of not more than 30 days.  All such Cash or investments shall be held by the Litigation Trustee in an account at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Litigation Trustee and bearing the name "Disputed [Aegean Unsecured Claims] [510(b) Claims] [Aegean Interests] Reserve Account" or words of similar import (the "Disputed Claims Reserve Accounts").  No payments or distributions shall be made from the Disputed Claims Reserve Accounts with respect to all or any portion of any Disputed Claim or Interest pending the entire resolution thereof.  Cash held in the Disputed Claims Reserve Accounts will (i) be held in trust, pending distribution by the Litigation Trustee, for the benefit of Holders of Disputed Claims or Interests until such time as such Claims or Interests become Allowed Claims or Interests, (ii) be accounted for separately from the funds held in the Litigation Trust Account, and (iii) not constitute property of the Litigation Trust.

5.3     Distributions After Allowance of Disputed Claims or Disputed Interests.  At such time as a Disputed Claim or Interest becomes Allowed, the Litigation Trustee shall distribute to the holder thereof the distributions, if any, to which such Holder is then entitled under the Plan (including, with respect to Cash held in the applicable Disputed Claims Reserve Account, any earnings that have accrued on the amount of Cash so retained, net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim or Allowed Interest.  Such distribution, if any, shall be made as soon as reasonably practicable after the date upon which such Disputed Claim or Interest becomes Allowed, whether by settlement, compromise or Final Order or judgment of the Bankruptcy Court, but in no event more than 90 days thereafter.  The balance of any Cash thereafter retained in a Disputed Claims Reserve Account shall be allocated to and included in future distributions to Holders of the remaining applicable Disputed Claims or Interests on a Pro Rata basis at such time as any such Disputed Claim or Interest become an Allowed Claim or Allowed Interest.

5.4     Distributions After Disallowance of Disputed Claims or Interests.  If a Disputed Claim or Interest is disallowed, in whole or in part, the Litigation Trustee shall cancel the reserve Litigation Trust Interest, if applicable, and distribute the Cash held in the applicable Disputed Claims Reserve Account with respect to such Claim or Interest to the holders of the applicable series of Litigation Trust Interests in accordance with the terms of the Plan.

# ARTICLE VI
## THE LITIGATION TRUSTEE GENERALLY

6.1     Independent Litigation Trustee.  The Litigation Trustee, in accordance with the Plan and the Confirmation Order, shall be a professional natural person or financial institution with experience administering other litigation trusts and may not be a Member of the Litigation Trust Advisory Board.

6.2     Litigation Trustee's Compensation and Reimbursement.

(a)     Compensation.  The Litigation Trustee shall receive compensation from the Litigation Trust as provided on Exhibit B, hereto (the "Litigation Trustee Compensation").  The compensation of the Litigation Trustee may be modified from time to time by the Litigation Trust Advisory Board.  Notice of any modification of the Litigation Trustee's compensation shall be filed with the Bankruptcy Court promptly.

(b)     Expenses.  The Litigation Trust will reimburse the Litigation Trustee for all actual, reasonable and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of the duties of the Litigation Trustee hereunder or under the Confirmation Order or the Plan, including but not limited to, actual, reasonable and documented fees and disbursements of the Litigation Trustee's legal counsel incurred in connection with the review, execution, and delivery of this Agreement and related documents (collectively, the "Litigation Trustee Expenses" and, together with the Litigation Trustee Compensation, the "Litigation Trustee Fees").

(c)     Payment.  The Litigation Trustee Fees shall be paid to the Litigation Trustee upon approval of such fees and expenses by the Litigation Trust Advisory Board without necessity for review or approval by the Bankruptcy Court or any other Person.  Payment of the Litigation Trustee Fees shall be initially payable out of the Litigation Trust Loan and, after repayment in full of the Litigation Trust Loan Payments, payable from the Litigation Trust Proceeds.  The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute between the Litigation Trustee and the Litigation Trust Advisory Board regarding the Litigation Trustee Fees.

6.3     Resignation.  The Litigation Trustee may resign by giving not less than 90 days' prior written notice thereof to the Litigation Trust Advisory Board and the Litigation Trust Beneficiaries.  Such resignation shall become effective on the later to occur of: (a) the day specified in such notice, and (b) the appointment of a successor satisfying the requirements set out in Section 6.1 by a majority of the Members and the acceptance by such successor of such appointment.  If a successor Litigation Trustee is not appointed or does not accept its appointment within 90 days following delivery of notice of resignation by the then current Litigation Trustee, such Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and a hearing, for the appointment of a successor Litigation Trustee satisfying the requirements set out in Section 6.1 hereof, during which time the then-serving Litigation Trustee shall be entitled to receive the Litigation Trustee Compensation provided for in Section 6.2(a) hereof. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 11.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided for in Section 11.2 herein.

6.4    Removal.

(a)    The Litigation Trustee (or any successor Litigation Trustee) may be removed by the Litigation Trust Advisory Board, for Cause (as defined in Section 7.8 herein), immediately upon notice thereof, or without Cause, upon not less than 90 days' prior written notice.

(b)    The Bankruptcy Court, on its own initiative, may (i) for Cause, and after notice and a hearing, remove the Litigation Trustee or (ii) issue an order requiring interested parties to show cause why the Litigation Trustee should not be removed.

(c)    To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any portion of the Litigation Trustee Fees), the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute. Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when appointment of a successor Litigation Trustee will become effective in accordance with Section 6.5 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

6.5    Appointment of Successor Litigation Trustee.

(a)    In the event of the death or Disability (as defined in Section 7.8 herein) (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency or removal of the Litigation Trustee, the Litigation Trust Advisory Board shall designate a successor Litigation Trustee satisfying the requirements set forth in Section 6.1 hereof by majority vote.  If the Members of the Litigation Trust Advisory Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee satisfying the requirements set forth in Section 6.1 hereof on motion of the Members.  Such appointment shall specify the date on which such appointment shall be effective.  Every successor Litigation Trustee appointed hereunder shall execute, acknowledge and deliver to the Litigation Trust Advisory Board an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee hereto, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Trustee and the successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee; *provided, however*, that a predecessor Litigation Trustee shall, nevertheless, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under the Litigation Trust all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption by the successor Litigation Trustee of his/her/its obligations and functions hereunder.

(b)    During any period in which there is a vacancy in the position of Litigation Trustee, the Litigation Trust Advisory Board shall appoint one of its Members to serve as interim Litigation Trustee (the "Interim Trustee").  The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder; *provided, however*, any such Interim

Trustee shall not be entitled to receive the Litigation Trustee Compensation unless approved by the Litigation Trust Advisory Board, but shall be entitled to receive payment for the Litigation Trustee Expenses. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Trust Advisory Board merely by such Person's appointment as Interim Trustee, but shall be limited in the exercise of such rights or powers as a Litigation Trustee to the extent a majority of the Litigation Trust Advisory Board shall, to the extent applicable in this Agreement, fail to approve any such action or undertaking by the Interim Trustee.

6.6    <u>Effect of Resignation or Removal</u>. The death, Disability, dissolution, bankruptcy, resignation, incompetency, incapacity or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court or reasonably requested by Litigation Trust Advisory Board or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement, (b) deliver to the Bankruptcy Court (if required), the Litigation Trust Advisory Board and/or the successor Litigation Trustee all documents, instruments, records and other writings related to the Litigation Trust as may be in the possession of such Litigation Trustee, including any Litigation Claims Materials, and shall not retain any copies of such materials, even for archival purposes, and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

6.7    <u>Confidentiality</u>. The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and for a period of two (2) years following the termination of this Agreement or following such Litigation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Litigation Trustee may be employed any non-public information of or pertaining to any Person to which any of the Litigation Claims Materials or Litigation Trust Assets relates or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee (including information contained or reflected in the Litigation Trust Materials), until (a) such information is made public other than by disclosure by the Litigation Trust, the Litigation Trustee, or any Litigation Trust Professionals in violation of this Agreement; (b) the Litigation Trust is required by law to disclose such information (in which case the Litigation Trust shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); or (c) the Litigation Trust obtains a waiver of confidentiality from the applicable Person.

**ARTICLE VII**
**LITIGATION TRUST ADVISORY BOARD**

7.1    <u>Litigation Trust Advisory Board</u>. On or prior to the effective date of this Agreement, a three-person Litigation Trust Advisory Board shall be appointed jointly by the Committee and the Required Consenting Unsecured Noteholders, which initial Members are identified on <u>Exhibit A</u> hereto. No Member shall be the Litigation Trustee.

7.2     Authority and Responsibilities.

(a)     The Litigation Trust Advisory Board shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with the Plan, the Confirmation Order, and this Agreement and shall have the other responsibilities and powers as set forth herein.  The Litigation Trust Advisory Board shall have the authority and responsibility to oversee, review, govern, and, as specifically set forth herein, to direct the activities of the Litigation Trust and the performance of the Litigation Trustee and shall have the authority to remove the Litigation Trustee in accordance with Section 6.4 hereof; *provided, however,* that the Litigation Trust Advisory Board may not direct the Litigation Trustee to nor shall the Members act in a manner inconsistent with their respective duties and obligations under the Plan, the Confirmation Order, or this Agreement.

(b)     The Litigation Trust Advisory Board shall also (a) monitor and oversee the administration of the Litigation Trust and the Litigation Trustee's performance of his/her/its responsibilities under the Plan, the Confirmation Order, and this Agreement and (b) perform such other tasks as are set forth in the Plan, the Confirmation Order, and this Agreement.

(c)     The Litigation Trustee shall consult with and provide information to the Litigation Trust Advisory Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement sufficient in scope and detail to enable the Litigation Trust Advisory Board to meet its obligations hereunder.

(d)     Notwithstanding any provision of this Agreement to the contrary, the Litigation Trustee shall not be required to obtain the approval or follow the directions of the Litigation Trust Advisory Board to the extent that (i) the Litigation Trust Advisory Board has not authorized the Litigation Trustee to take any action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law or (ii) the Litigation Trust Advisory Board directs the Litigation Trustee to take action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is prohibited by applicable law.

7.3     Fiduciary Duties.  The Litigation Trust Advisory Board and its Members shall have fiduciary duties to the Litigation Trust Beneficiaries consistent with the fiduciary duties that the members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have to the creditor constituents represented by such committee and shall exercise its responsibilities accordingly; *provided, however,* that the Litigation Trust Advisory Board shall not owe fiduciary obligations to any defendants of Litigation Claims in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trust Advisory Board's obligations are to maximize the value of the Litigation Trust Assets, including the Litigation Claims.  In all circumstances, the Litigation Trust Advisory Board shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

7.4　　Meetings of the Litigation Trust Advisory Board.　Meetings of the Litigation Trust Advisory Board are to be held not less often than quarterly.　Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any Member; *provided*, *however*, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members).　Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Advisory Board.　Unless the Litigation Trust Advisory Board decides otherwise (which decision shall rest in the reasonable discretion of the Litigation Trust Advisory Board), the Litigation Trustee and the Litigation Trustee's designated Litigation Trust Professional(s) may, but are not required to, attend meetings of the Litigation Trust Advisory Board.

7.5　　Manner of Acting.

(a)　　A quorum for the transaction of business at any meeting of the Litigation Trust Advisory Board shall consist of at least two Members.　Except as set forth in Sections 3.3, 3.5, 7.5(c) and 7.9(a) herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Litigation Trust Advisory Board except as otherwise required by law or as provided for in this Agreement.　Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.　Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) maybe conducted by electronic mail or individual communications by the Litigation Trustee and each Member.

(b)　　Any Member who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board (including any meeting of the Litigation Trustee and the Litigation Trust Advisory Board) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such Member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation Trust Advisory Board before its adjournment. The right of dissent or abstention is not available to any Member of the Litigation Trust Advisory Board who votes in favor of the action taken.

(c)　　Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member of the Litigation Trust Advisory Board shall report to the Litigation Trust Advisory Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue,

other than solely as a holder of Litigation Trust Interests). A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (i) shall be deemed to be a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Advisory Board who are not Conflicted Members and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members of the Litigation Trust Advisory Board who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Advisory Board; *provided*, *however*, that a Member shall not be deemed to be a Conflicted Member with respect to a particular matter or issue if such Member merely has an economic interest in the outcome of such matter or issue solely as a holder of Litigation Trust Interests.

7.6     Tenure of the Members of the Litigation Trust Advisory Board. The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 11.1 hereof. The Members will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 7.7 below, or removal pursuant to Section 7.8 below.

7.7     Resignation. Subject to Section 7.13 hereof, a Member may resign by giving not less than 90 days' prior written notice thereof to the Litigation Trustee and the other Members. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 7.9 below.

7.8     Removal.

(a)     (x) A majority of the Litigation Trust Advisory Board may remove any Member for Cause or Disability. Notwithstanding the foregoing, upon the occurrence of the Termination Date (as defined in Section 11.1 below), any or all of the Members shall be deemed to have resigned.

(b)     For purposes of Section 6.4 hereof and this Section 7.8:

(i)     "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Member or, to the extent applicable, the Litigation Trustee, regular attendance at meetings of the Litigation Trust Advisory Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft or embezzlement during the performance of his/her/its duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; and

(ii)     "Disability" of the Litigation Trustee or a Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Trustee or

the Member, as applicable, and reasonably acceptable to the Litigation Trust Advisory Board, the Litigation Trustee or the Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

7.9     Appointment of a Successor Member.

(a)     Subject to Section 7.13 hereof, in the event of a vacancy on the Litigation Trust Advisory Board (whether by removal, death or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously. The appointment of a successor Member will be further evidenced by the Litigation Trustee's filing with the Bankruptcy Court and posting on the Litigation Trustee's website of a notice of appointment, at the direction of the Litigation Trust Advisory Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, all rights, powers, duties, authority and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound hereto, and thereupon the successor Member without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Member.

7.10    Ex Officio Members.

(a)     The Reorganized Debtors shall have the right to designate up to one (1) non-voting *ex officio* member to the Litigation Trust Advisory Board (the "Ex Officio Member"). For the avoidance of doubt, the Ex Officio Member shall not be permitted to vote at any meeting of the Litigation Trust Advisory Board or be counted for purposes of determining whether there is a sufficient quorum for the Litigation Trust Advisory Board to conduct its business. The Reorganized Debtors may remove the Ex Officio Member at any time, with or without cause and appoint a successor Ex Officio Member following two (2) days' prior written notice to the Litigation Trust Advisory Board and the Litigation Trustee.

(b)     The Ex Officio Member shall have the right to attend all meetings of the Litigation Trust Advisory Board, and the Litigation Trustee shall give the Ex Officio Member copies of all notices, minutes, consents and other materials that it provides to the Members, it being understood that the rights of the Ex Officio Member to receive such notices or materials or to attend such meetings shall be conditional upon the Litigation Trustee, the Ex Officio Member and the Reorganized Debtors, entering into a customary confidentiality and restriction on usage agreement in form and substance reasonably satisfactory to the Litigation Trust Advisory Board and the Reorganized Debtors. Notwithstanding the foregoing, the Litigation Trustee and the Litigation Trust Advisory Board reserve the right to withhold any information and to exclude the Ex Officio Member from any meeting of the Litigation Trust Advisory Board or portion thereof if

access to such information or attendance at such meeting could adversely affect the attorney-client privilege between the Litigation Trust and any one or more of the Litigation Trust Professionals, serve to waive the work product doctrine or any other similarly protective privilege or doctrine, result in disclosure of trade secrets or a conflict of interest or otherwise not be in the best interests of the Litigation Trust, in each case upon the affirmative vote of a majority of the members of the Litigation Trust Advisory Board, acting in good faith.

7.11    Compensation and Reimbursement of Expenses.    Unless determined by the Litigation Trust Advisory Board, no Member shall be entitled to compensation in connection with his or her service to the Litigation Trust Advisory Board. However, the Litigation Trust will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder (including reasonable fees, costs and expenses of legal counsel only as set forth in this Agreement).

7.12    Confidentiality.    Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Litigation Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law. To the extent applicable, the foregoing provisions shall also apply to the Ex Officio Member.

7.13    Class B Litigation Trust Unit Members.    Within 30 days of the date that the holders of the Class A Litigation Trust Units have received Payment in Full, or anytime thereafter, a majority in interest of the holders of Class B Litigation Trust Units may, by written notice to the Litigation Trustee and the Litigation Trust Advisory Board, replace any or all of the then-sitting Members, which Members shall promptly resign, with individuals designated by a majority in interest of the holders of the Class B Litigation Trust Units. Such initial individuals, and any successors thereto, designated to serve on the Litigation Trust Advisory Board by the majority in interest of the holders of the Class B Trust Units, shall be considered "Members" for all intents and purposes under this Agreement from and after the date such individuals agree to serve on the Litigation Trust Advisory Board as "Members". Notwithstanding the foregoing, the holders of Class B Litigation Units shall not have the authority to dismiss or replace any then-sitting Ex Officio Member previously designated by the Debtors or, following the Effective Date, the Reorganized Debtors.

**ARTICLE VIII**
**Reserved**

**ARTICLE IX**
**LIABILITY AND INDEMNIFICATION**

9.1    No Further Liability.    Each of the Litigation Trustee, the Members and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Trust unless arising out of such Person's own fraud, willful misconduct or gross negligence. Unless arising out of such Person's own fraud, willful misconduct or gross negligence, in performing its duties under this Agreement, the Litigation

Trustee, the Members and their representatives (as applicable) shall have no liability for any action taken by such Person in accordance with the advice of the Litigation Trust Professionals retained by the Members or the Litigation Trust or who may be separately retained by any one or more of the Members. Without limiting the generality of the foregoing, the Litigation Trustee, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon. None of the provisions of this Agreement shall require the Litigation Trustee, the Members or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Each of the Litigation Trustee, the Members and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan or the Confirmation Order that such Person reasonably believes to be genuine and to have been properly given. Notwithstanding the foregoing, nothing in this Section 9.1 shall relieve the Litigation Trustee, the Members or their representatives from any liability for any actions or omissions arising out of such Person's fraud, willful misconduct or gross negligence. Any action taken or omitted to be taken in the case of the Litigation Trustee or the Litigation Trust Advisory Board with the express approval of the Bankruptcy Court and, in the case of the Litigation Trustee, with the express approval of the Litigation Trust Advisory Board will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence. No termination of this Agreement or amendment, modification or repeal of this Section 9.1 shall adversely affect any right or protection of the Litigation Trustee, the Members of the Litigation Trust Advisory Board or their respective designees, professional agents or representatives that exists at the time of such amendment, modification or repeal.

9.2    Indemnification of the Litigation Trustee and Litigation Trust Advisory Board.

(a)    From and after the Effective Date, each of the Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, the Litigation Trust Professionals and each of the Litigation Trustee's and Members' representatives (each, a "Litigation Trust Indemnified Party," and collectively, the "Litigation Trust Indemnified Parties") shall be, and hereby is, indemnified by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Trust Indemnified Party's exercise of what such Litigation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Trust Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Trust Indemnified Party's own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Trustee; or (iv) proceedings by or on behalf of any creditor. The Litigation Trust shall, on demand, advance or pay promptly, at the election of the Litigation Trust Indemnified Party, solely out of the Litigation Trust Assets, on behalf of each Litigation Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Litigation

Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; *provided, however*, that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct or gross negligence. Any indemnification claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Litigation Trust Assets, ahead of the Litigation Trust Interests and any other claim to or interest in such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Trust's expense, subject to the foregoing terms and conditions. In addition, the Litigation Trust shall purchase insurance coverage as set forth in Section 4.11(h) hereof, including fiduciary liability insurance using funds from the Litigation Trust Assets for the benefit of the Litigation Trustee and the Members. The indemnification provided under this Section 9.2 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Advisory Board, any Member or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member's and each other Litigation Trust Indemnified Party's respective heirs, successors and assigns.

(b)     The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not affect any indemnification rights or obligations set forth herein.

(c)     The Litigation Trust may, with the approval of the Litigation Trust Advisory Board, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 9.2.

(d)     Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 9.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)     The rights to indemnification under this Section 9.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 9.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. Further, the Litigation Trust hereby agrees: (i) that the Litigation Trust is the indemnitor of first resort (*i.e.*, in the event any Litigation Trust Indemnified Party has the right to receive indemnification from one or more third party, the Litigation Trust's obligations to such Litigation Trust Indemnified Party are primary); (ii) that the Litigation Trust shall be required to pay the full amount of expenses (including attorneys' fees) actually incurred by such Litigation Trust Indemnified Party in connection with any proceeding as to which the Litigation Trust Indemnified Party is entitled to indemnification hereunder in advance of the final disposition of such proceeding from the Litigation Trust Proceeds; (iii) that the Litigation Trust irrevocably waives, relinquishes and releases such third parties from any and all claims by the Litigation Trust against such third parties for contribution, subrogation or any other recovery of any kind in respect thereof; and (iv) no

Litigation Trust Indemnified Party shall have the obligation to reduce, offset, allocate, pursue or apportion any indemnification advancement, contribution or insurance coverage among multiple parties owing indemnification obligations to such Litigation Trust Indemnified Party prior to the Litigation Trust's satisfaction of its indemnification obligations hereunder. For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article IX.

9.3     <u>Litigation Trust Liabilities</u>. All liabilities of the Litigation Trust, including, without limitation, indemnity obligations under Section 9.2 of this Agreement, will be liabilities of the Litigation Trust as an Entity and will be paid or satisfied solely from the Litigation Trust Assets and paid on a priority basis. No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employees, agent, affiliate or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee or their respective affiliates. Under no circumstances shall the Ex Officio Member or any of his/her representatives (including the Entity employing such Ex Officio Member, nor any of its affiliates who are the Debtors or, following the Effective Date, the Reorganized Debtors (or any of their affiliates)), be responsible in any respect for the payment of any liability under this Article IX, it being expressly recognized that any Litigation Trust Indemnified Parties shall look solely to the Litigation Trust for the indemnity obligations set forth herein, including, but not limited to, the payment of any costs and expenses agreed by the Litigation Trustee to be reimbursable, whether by advance or otherwise, to any Litigation Trust Indemnified Party.

9.4     <u>Limitation of Liability</u>. None of the Litigation Trust Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Trust Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order.

9.5     <u>Burden of Proof</u>. In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

**ARTICLE X**
**TAX MATTERS**

10.1     <u>Treatment of Litigation Trust Assets Transfer</u>. For all federal income tax purposes, all parties (including, without limitation, the Aegean Parties, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims or Interests are

Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets) directly to the Litigation Trust Beneficiaries and, to the extent the Litigation Trust Assets are allocable to Disputed Claims or Interests that are the responsibility of the Litigation Trust to resolve, to the applicable Disputed Claims Reserve, followed by (ii) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Litigation Trust Assets (other than the Litigation Trust Assets allocable to the Disputed Claims Reserves) in exchange for Litigation Trust Interests. Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Disputed Claims Reserves). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

10.2   Tax Treatment of Disputed Claims Reserves.

(a)   Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (A) timely elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. The Litigation Trustee and the Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(b)   With respect to any Litigation Trust Assets and any other income or gain of the Litigation Trust allocable to Disputed Claims or Interests, the Litigation Trustee shall cause the Litigation Trust to pay any taxes imposed on the Litigation Trust by any federal, state or local, or any non-U.S. Governmental Unit. The amount of such taxes paid by the Litigation Trust with respect to a Disputed Claim or Interest (i) will reduce the amount distributed with respect to such Disputed Claim or Interest to the extent it becomes an Allowed Claim and (ii) to the extent such Disputed Claim or Interest does not become an Allowed Claim or Allowed Interest, will reduce distributions ratably to all Holders in the same Class as such Disputed Claim or Interest; *provided*, *however*, that any taxes that reduce distributions pursuant to the foregoing clauses (i) and (ii) shall, for all purposes of this Agreement, be treated as amounts distributed to those Holders of Claims or Interests whose distributions are so reduced.

10.3   Tax Reporting.

(a)   The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC. The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10.3 and Article V.M of the Plan. The Litigation Trustee also will annually send to each Litigation Trust Beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the Litigation Trust) as relevant for U.S. federal income tax purposes

and will instruct all such Litigation Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns; *provided,* that if the Litigation Trustee elects to make distributions through an intermediary (such as DTC or Unsecured Notes Indenture Trustees, it shall provide such statement to such intermediaries for them to provide to such Litigation Trust Beneficiaries. The Litigation Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Litigation Trust that is required by any Governmental Unit.

(b) Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries (other than taxable income allocable to the Disputed Claims Reserves) shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time, and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserves) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purposes of this Section 10.3(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(c) The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets, including the Disputed Claims Reserves. In the event, and to the extent, any Cash retained on account of Disputed Claims or Interests in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims or Interests, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of such Disputed Claims or Interests, or (ii) to the extent such Disputed Claims or Interests have subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such Disputed Claims or Interests.

10.4    <u>Withholding of Taxes</u>. (a) The Litigation Trustee shall deduct and withhold and pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Litigation Trust Beneficiaries. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution. All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Agreement.

(b) The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or

other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receive distributions under the Plan, all Litigation Trust Beneficiaries may be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including an IRS Form W-9 or, in the case of Litigation Trust Beneficiaries that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8.

(c)      The Litigation Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest; and, *provided*, *further*, that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Trustee for such liability.  The identification requirements in Section 10.4(b) and this Section 10.4(c) may, in certain cases, extend to holders who hold their securities in street name. If a Litigation Trust Beneficiary fails to comply with such a request for tax information within 180 days, the Litigation Trustee may file a document with the Bankruptcy Court that will provide twenty-one (21) days' notice before such distribution may be deemed an unclaimed distribution and treated in accordance with Article VII.D.5 of the Plan.

(d)      In the event that the Litigation Trustee elects to make distributions through an intermediary (such as DTC or the Unsecured Notes Indenture Trustees), the party who would be the withholding agent with respect to distributions to the Litigation Trust Beneficiary under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Trustee.

(e)      The Litigation Trustee (and not the Unsecured Notes Indenture Trustees) shall be responsible for responding to any inquiries from DTC regarding tax withholding or other tax information requests with respect to any distributions from the Litigation Trust.

10.5      Valuation.  The valuation of the Litigation Trust Assets prepared pursuant to Section 2.7 of this Agreement shall be used consistently by all parties (including, without limitation, the Litigation Trust) for all federal income tax purposes.  The Litigation Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any governmental unit.

10.6      Expedited Determination of Taxes.  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

10.7      Foreign Tax Matters.  The Litigation Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Litigation Trustee or the Litigation Trust under non-United States law relating to taxes.  The Litigation Trustee, or any other legal

representative of the Litigation Trust, shall not distribute the Litigation Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to taxes.

## ARTICLE XI
## TERMINATION OF LITIGATION TRUST

11.1    Termination.  The Litigation Trust Advisory Board and the Litigation Trust shall be dissolved at such time as (i) all of the Litigation Trust Loan Payments and the Litigation Trust Assets have been distributed pursuant to the Plan and this Agreement or (ii) the Litigation Trustee determines, following the approval of the Litigation Trust Advisory Board, that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional Litigation Trust Proceeds to justify further pursuit; *provided*, *however*, that in no event shall the Litigation Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed two years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the liquidation of the Litigation Trust Assets.  If at any time the Litigation Trustee determines, in reliance upon the advice of the Litigation Trust Professionals (or any one or more of them), that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Funders or, if the obligation to pay the Litigation Trust Loan Payments has been satisfied in full, the Litigation Trust Beneficiaries, is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC and (D) that is unrelated to the Aegean Parties, the Litigation Trust, the Litigation Trustee, the Members, any Litigation Trust Professionals and any insider of any of the foregoing and (iii) dissolve the Litigation Trust (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Dissolution Process").  Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "Termination Date."

11.2    Continuance of Litigation Trust for Winding Up.  During the Dissolution Process, the Litigation Trustee, solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, shall continue to act as such until its duties have been fully performed.  During the Dissolution Process, the Litigation Trustee shall continue to be entitled to receive the Litigation Trustee Fees called for by Section 6.2(a) hereof and subject to Section 2.3 hereof.  Upon distribution of all the Litigation Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been delivered or created by the Litigation Trustee to the extent not otherwise required to be handled by the Litigation Trustee in accordance with Section 2.2 hereof.  At the Litigation Trustee's discretion, but subject in all cases to Section 2.2 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Litigation Trustee deems appropriate (unless such records and documents are necessary to fulfill the Litigation Trustee's obligations hereunder).  Except as otherwise specifically provided

herein, upon the Termination Date, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

## ARTICLE XII
## AMENDMENT AND WAIVER

12.1    Subject to Sections 12.2 and 12.3 of this Agreement, the Litigation Trustee, with the prior approval of the Litigation Trust Advisory Board, may seek Bankruptcy Court approval of any amendment, supplement or waiver with respect to any provision of this Agreement and provision of reasonable notice to the Reorganized Debtors; *provided*, *however*, that in no event shall any Party seek approval of any amendment, supplement, or waiver that would conflict with Article IX of the Plan, the Plan's definition of "Litigation Claims", or Section 2.3(b) hereof. Technical amendments to this Agreement may be made, as necessary to clarify this Agreement or enable the Litigation Trustee to effectuate the terms of this Agreement, by the Litigation Trustee with approval by a majority of the Litigation Trust Advisory Board.

12.2    Notwithstanding Section 12.1 of this Agreement, no amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order or this Agreement, (b) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust" or (c) be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

12.3    No failure by the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

13.2    <u>Jurisdiction</u>.  Subject to the proviso below, the Parties agree that the Bankruptcy Court shall have  jurisdiction over the Litigation Trust and the Litigation Trustee, including, without limitation, the administration and activities of the Litigation Trust and the Litigation Trustee to the fullest extent permitted by law; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Litigation Claims and pursue any recoveries in respect of any Litigation Claims.  Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non*

*conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the borough of Manhattan in the state of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement).  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

      13.3    <u>Reserved</u>.

      13.4    <u>Severability</u>.  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

      13.5    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

      (i)     if to the Litigation Trustee, to:

Province, Inc.
2360 Corporate Circle, Suite 330
Henderson, NV 89074
Attn: Peter Kravitz
Email: pkravitz@provincefirm.com

      (ii)    if to any Litigation Trust Beneficiary, to the last known address of such Litigation Trust Beneficiary according to the Litigation Trustee's records;

(iii)     if to the Aegean Parties, to:

Aegean Marine Petroleum Network Inc.
52 Vanderbilt Avenue, Suite 1405
Attn: Tyler Baron
Email: tbaron@sentinelrockcapital.com

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Marc Kieselstein
Email: mkieselstein@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: W. Benjamin Winger
Email: benjamin.winger@kirkland.com

(iv)     if to the Reorganized Debtors:

Mercuria Energy Trading Inc.
20 East Greenway Plaza
Suite 650
Houston, TX 77046
Attn: Mark Greenberg
Email: mgreenberg@mercuria.com

and

Mercuria Energy Trading, SA
50 Rue du Rhone
Geneva 1204 Switzerland
Attn:  François Sornay
Email: fsornay@mercuria.com

and

Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Attn:  Abhilash M. Raval, Lauren C. Doyle, and Alex Lees
Email: ARaval@milbank.com

LDoyle@milbank.com
ALees@milbank.com

(v)     if to a Member of the Litigation Trust Advisory Board, to the applicable address(es) set forth on Exhibit A.

13.6    <u>Headings</u>.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

13.7    <u>Plan and Confirmation Order</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and, is subject to the provisions of the Plan and the Confirmation Order.  In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Agreement shall govern and control.  In the event of any direct conflict or inconsistency between any provision in this Agreement, on the one hand, and the provisions of the Confirmation Order, on the other hand, the provisions of the Confirmation Order shall govern and control.

13.8    <u>Entire Agreement</u>.  This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

13.9    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

13.10    <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

13.11    <u>Successors in Interest</u>.  This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the Aegean Parties, including, but not limited to, the Reorganized Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof, including, specifically, the terms of Section 2.2 hereto.  The obligations of the Litigation Trust and Litigation Trustee to any one or more of the Aegean Parties pursuant to this Agreement shall also be obligations of the Litigation Trust and Litigation Trustee to any such successor in interest, including, but not limited to, the Reorganized Debtors, including their

obligations under Section 2.2 hereto.  For the avoidance of doubt, in the event that any Person (including, as applicable, the Reorganized Debtors) becomes a successor in interest to an Aegean Party, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements of this Agreement (including Section 2.2) prior to such Person becoming a successor in interest to the applicable Aegean Party, shall not become subject to the provisions and requirements of this Agreement (including Section 2.2) solely because such Person becomes a successor in interest to the applicable Aegean Party.

13.12  <u>Limitations</u>.  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement and notwithstanding anything in this Agreement, the Parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

13.13  <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

13.14  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

13.15  <u>Authority</u>.  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement, the performance by such Party of its obligations hereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

PETER KRAVITZ, AS TRUSTEE OF THE AEGEAN LITIGATION TRUST

By: _____
Name: Peter Kravitz
Title:

AEGEAN MARINE PETROLEUM NETWORK, INC., ON BEHALF OF ITSELF, THE DEBTORS AND THE NON-DEBTOR SUBSIDIARIES

By: _____
Name: Tyler Baron
Title: Authorized Signatory

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

PETER KRAVITZ, AS TRUSTEE OF THE AEGEAN LITIGATION TRUST

By: _____
Name:
Title:

AEGEAN MARINE PETROLEUM NETWORK, INC., ON BEHALF OF ITSELF, THE DEBTORS AND THE NON-DEBTOR SUBSIDIARIES

By: _____
Name: Tyler Baron
Title: Authorized Signatory

## EXHIBIT B

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| )<br>)<br>In re:                 )<br>)<br>AEGEAN MARINE PETROLEUM )<br>NETWORK INC., *et al.*,[1]    )<br>)<br>             Debtors. )<br>) | Chapter 11<br><br>Case No. 18-13374 (MEW)<br><br>Jointly Administered |

## ORDER GRANTING MOTION OF THE LITIGATION TRUST TO
## EXTEND THE TERMINATION DATE OF THE LITIGATION TRUST

Upon consideration of the motion (the "Motion")[2] of the Litigation Trust for entry of an order, pursuant to Bankruptcy Code sections 105 and 1142, extending the Termination Date of the Litigation Trust through and including April 3, 2026; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and the Court having found and determined that the relief sought in the Motion is necessary to the liquidating purpose of the Litigation Trust and that legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1.      The Motion is granted to the extent provided herein.

---

[1] Pursuant to orders of the Court, the chapter 11 cases of the Reorganized Debtors have been closed. Aegean Marine Petroleum Network Inc. (Case No. 18-17334 (MEW)) is not a Reorganized Debtor.

[2] Capitalized terms used and not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

2.      The Termination Date of the Litigation Trust is extended through and including April 3, 2026.

3.      The extension provided by this Order is (i) subject to earlier termination pursuant to section 11.1 of the Trust Agreement, to the extent applicable, and (ii) without prejudice to the rights of the Litigation Trust to seek further extensions of the Termination Date of the Litigation Trust upon motion filed with the Court.

4.      This Order shall be immediately effective and enforceable upon its entry.

5.      The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2024
       New York, New York

_____
The Honorable Michael E. Wiles
United States Bankruptcy Judge